1  G. SCOTT SOBEL, Esq., SBN 124818
   LAW OFFICE OF G. SCOTT SOBEL
2  1180 S. Beverly Drive, Suite 610
   Los Angeles, CA 90035-1158
3  Tel: (310) 422-7067; Fax: (888) 863-5630
   GScottSobel@gmail.com
4
5  Attorney for Rovier Carrington

6
                **UNITED STATES DISTRICT COURT**
7
           **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**
8

9
10 ROVIER CARRINGTON,                        Case No:

11      Plaintiff,                           **EXHIBITS TO VERIFIED COMPLAINT**
                                             **FOR DECLARATORY RELIEF AND**
12                                           **DAMAGES**

13      vs.
                                             **DECLARATION OF G. SCOTT SOBEL,**
14                                           **ESQ.**
   HON. KATHERINE POLK FAILLA (In her
15 official and individual capacities) HARVEY
   WEINSTEIN; ESTATE OF SUMNER
16 REDSTONE; NATIONAL AMUSEMENTS,
   INC.; BRIAN GRADEN; BRIAN GRADEN
17 MEDIA LLC; VIACOMCBS INC.;
   PARAMOUNT PICTURES CORP.;
18 TRUSTEES OF THE BRAD ALAN GREY
   TRUST; STANTON "LARRY" STEIN;
19 DIANA A. SANDERS; RUSS AUGUST &
   KABAT LLP; WOOK HWANG; LOEB &
20 LOEB LLP; CHRISTOPHER LLOYD
   LAVIGNE; STEPHEN ROBERT FISHBEIN;
21 SHEARMAN & STERLING LLP; and DOES
   1-100,
22
23
        Defendants.
24
25
26
27
28

DECLARATION OF G. SCOTT SOBEL

G. Scott Sobel declares:

1.  I am an attorney licensed to practice law in all courts of the State of California, including this court, California State Bar No. 124818.  I am the attorney of record for Plaintiff Rovier Carrington.  The following facts are within my personal knowledge.  If called as a witness, I could and would competently testify thereto.

2.  Each of the documents attached hereto as EXHIBITS 001-015 is a true and correct copy of the documents it purports to be.

3.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed October 26, 2020 at Los Angeles, California.

_____

G. Scott Sobel

INDEX OF EXHIBITS

| EX # | Source / Location | Description | Page |
|------|-------------------|-------------|------|
| 001 | Doc 147 | 10-11-19 Order of Dismissal with Prejudice_Terminating Sanctions | 4 |
| 002 | Doc 180 | 9-11-20 Order of Permanent Injunction | 7 |
| 003 | Doc 13 | 6-4-18 Notice and Order of Pre Trial Conference | 22 |
| 004 | uscourts.gov | Judge Failla "Individual Rules of Practice in Civil Cases" | 26 |
| 005 | Doc 102 | 2-13-19_Order for Further Discovery | 45 |
| 006 | Doc 127 | 5-22-19_LETTER addressed to Judge Katherine Polk Failla from R. Carrington, dated 7-20-19 | 78 |
| 007 | Doc 136 | 7-19-2019 LETTER addressed to Judge Katherine Polk Failla from R. Carrington, dated 7-18-19 Request to Restore Doc 114 | 173 |
| 008 | Doc 137 | 7--19-19_Carrington Objections to Graden Declaration | 384 |
| 009 | Doc 138 | 7-23-19_Order re absence of Doc 114 | 386 |
| 010 | Doc 114 | 4-10-2019_LETTER MOTION for Conference addressed to Judge Katherine Polk Failla from Stanton L Stein dated 4-10-2019_and EXHIBITS 1-6 | 389 |
| 011 | Doc 109 | 2-25-2019_Order Denying File Turnover | 507 |
| 012 | Doc 64 | Order of Limited Discovery Re Emails | 511 |
| 013 | reuters.com | 6-30-2020_Reuters Special Report: "Thousands of U.S. judges who broke laws or oaths remained on the bench" | 516 |
| 014 | Doc 86 | 9-18-2018_Transcript Excerpt_48 line 23 – 67 line 17 | 538 |
| 015 | Stanton L. Stein | 02-12-2019 Stein Letter to Judge_p1-2 | 608 |

# EXHIBIT 001

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                             :

ROVIER CARRINGTON,                  :
                                             :

                       Plaintiff,    :       18 Civ. 4609 (KPF)
                                             :

                    v.               :          <u>ORDER</u>
                                           :

BRIAN GRADEN, BRIAN GRADEN MEDIA :
LLC, VIACOM INC., VIACOM        :
INTERNATIONAL INC., PARAMOUNT  :
PICTURES CORPORATION, BRAD GREY, :
BRAD GREY ESTATE, BRAD ALAN GREY :
TRUST,                               :
                                           :

                    Defendants. :
                                         :
------------------------------------------------------X

KATHERINE POLK FAILLA, District Judge:

On October 11, 2019, the Court held a hearing on the Defendants' joint motion for terminating sanctions. (Dkt. #123-124). Plaintiff did not appear at the conference, despite the Court's prior orders that he attend in person. (Dkt. #144, 145, 146). Although the Court had warned Plaintiff that his failure to appear could result in the Court deciding Defendants' motion unopposed, the Court in fact reviewed and considered all the submissions that Plaintiff provided in opposition to Defendants' motion. (Dkt. #127, 136, 137). For the reasons set forth on the record at the hearing, the Court GRANTS Defendants' motion for terminating sanctions with costs. Plaintiff's claims are hereby dismissed with prejudice against all Defendants. The Clerk of Court is directed to terminate the motion at docket entry 123. On or before December 2, 2019, Defendants' attorneys shall submit their applications for fees and costs. The Court declines at this time to issue a criminal referral to the United States Attorney's Office for the Southern District of New York.

The Court notes that shortly after the conference, the Court received a telephone call from Mr. Greg Loomis, who had previously indicated that he sought to appear as counsel for Mr. Carrington.  (*See* Dkt. #145).  Mr. Loomis indicated that he was returning a call from the Court.  Neither the Court nor any of its staff made such a call, and the Court's staff advised Mr. Loomis of this fact.

SO ORDERED.

Dated:      October 11, 2019
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

*A copy of this Order was mailed by Chambers to:*

Rovier Carrington
5901 Encina Road
Suite C-2
Goleta, CA 93117

# EXHIBIT 002

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROVIER CARRINGTON,

                          Plaintiff,

                    -v.-

BRIAN GRADEN; BRIAN GRADEN MEDIA, LLC;
VIACOM, INC.; VIACOM INTERNATIONAL,
INC.; PARAMOUNT PICTURES CORPORATION;
BRAD GREY; BRAD GREY ESTATE; and BRAD
ALAN GREY TRUST,

                          Defendants.

18 Civ. 4609 (KPF)

**ORDER**

---

KATHERINE POLK FAILLA, District Judge:

    Plaintiff Rovier Carrington filed an action in state court that was removed to this Court in May 2018.  After 17 months of protracted litigation, the Court dismissed the action with prejudice after determining that Carrington had fabricated, or caused to be fabricated, several key emails, and then lied about their provenance.  Undeterred, Carrington then sought to pursue an order of protection in state court on related claims, again with fabricated documents, and again without success.  Carrington's efforts have resulted in Defendants incurring nearly $1 million in legal fees to prove Carrington's perfidy, to say nothing of the reputational damage caused by his allegations.

    The Court understands that Carrington wishes to restart the cycle of litigation with new counsel, and to bring another lawsuit alleging substantially overlapping claims in another jurisdiction.  Defendants have moved for injunctive relief on an expedited basis, and the Court held a hearing on their motion on September 10, 2020.  As set forth in the remainder of this Order, the

Court retains the authority to enjoin Carrington from engaging in further vexatious litigation, and it does so here by enjoining him from commencing, without express prior leave of this Court, any new action in federal or state court arising from or relating to the same subject matter that was addressed in the instant action.

## BACKGROUND

### A. The Instant Case and Its Resolution

#### 1. The Concerns Regarding Fabricated Emails

Carrington filed his initial Complaint in New York County Supreme Court on May 1, 2018, and it was removed to this Court on May 24, 2018. (Dkt. #1). Carrington then filed an Amended Complaint on June 20, 2018. (Dkt. #40). The Amended Complaint included, among others, claims of antitrust violations, fraud, breach of contract, unfair competition, theft of trade secrets, and tortious interference. Such anodyne descriptions, however, fail to capture the heart of Carrington's claims, which was that he was passed around among powerful figures in Hollywood and coerced into sexual relationships, only to see his career prospects stalled and his intellectual property stolen when he refused.

Carrington's allegations were noteworthy for their salaciousness. Very shortly after being served, however, Defendants announced that certain key emails appended by Carrington to his Complaint were fabricated. Between the filing of the original and the amended complaints, Defendants presented evidence of fabrication to Carrington and the Court. (*See, e.g.*, Dkt. #34; *see*

*also* Dkt. #170 at 34-35 (referencing efforts by counsel for the Graden Defendants on May 3, 2018, to explain falsity of allegations to Carrington's counsel)).  Carrington nonetheless continued to include those emails in his Amended Complaint.

From there, the parties and the Court embarked upon a 15-month saga investigating the provenance of the challenged emails.  Defendants presented evidence in support of a request for targeted discovery on this topic (Dkt. #56), and after listening to both sides at a pretrial conference held on July 17, 2018 (Minute Entry for July 17, 2018), the Court signed an Order for Limited Discovery Concerning the Authenticity of Communications (Dkt. #64).  Over the period from August 2018 until October 2019, Carrington's counsel withdrew; Carrington attempted to transfer venue; Carrington attempted to withdraw his lawsuit without prejudice; the parties presented evidence and competing expert testimony on the issue of the emails' provenance; and the Court scheduled, and repeatedly rescheduled, a hearing at which the issue of sanctions could be discussed.  (*See, e.g.*, Dkt. #70, 71, 73-145).  On August 27, 2019, after learning from Carrington that (i) he was no longer experiencing the issues that rendered him unable to travel to this Court, and (ii) counsel would soon be entering an appearance on his behalf, the Court scheduled a hearing on Defendants' sanctions application for October 11, 2019, and made clear that Carrington would be required to attend even if his counsel had failed to appear by that time.  (Dkt. #144).

### 2.     The October 11, 2019 Sanctions Hearing

Carrington's counsel did not enter a notice of appearance, and the

hearing went on without Carrington or his counsel on October 11, 2019.  (Dkt.

#170 (transcript)).  At its conclusion, the Court dismissed Carrington's case

with prejudice after making the following findings about the resources

Defendants, and the Court, were forced to expend because of Carrington's

fraud:

> [T]here was an effort made to undertake — to figure out
> how these emails came to be.  There was a subpoena
> return from Google, which confirmed that the
> Trendsetter account was, in fact, deactivated on June
> 19th of 2018, one day after the amended complaint was
> filed and after the first preservation order was sent.
>
> We also found out, during the course of the hearing in
> February of 2019, that the plaintiff turned in his iPhone
> 7, which he represented to me to be the vehicle used to
> transmit all of the communications after the initial
> preservation order.
>
> After that, I received several declarations from
> nonparties, along with the forensic expert declaration,
> suggesting that these emails did not, in fact, exist in Mr.
> Graden's, Mr. Logan's, or Darren Stein's accounts. I
> asked for — I ordered limited discovery and the
> preservation of any communications concerning any
> portion of the at-issue communications.  I then selected
> FTI as a neutral examiner.
>
> FTI's investigation found — of the Gmail account and
> the Carrington Diaries account, found none of the
> native versions besides the one whose validity was not
> contested.  And plaintiff informed the Court that the
> Trendsetter account had been deactivated for years,
> which is why no effort was undertaken to review it.
>
> The investigation by FTI did find the forwards that
> Carrington sent to the Landau firm, his prior counsel,
> but none of the underlying emails.  Plaintiff provided an

affidavit from his own expert, stating that he had transferred the contents of the Trendsetter account to the Carrington Diaries account in 2017, but no natives of the emails purportedly sent from the Trendsetter account were found in the Carrington Diaries account, and the defendants assert that the absence of these native emails, coupled with the existence of the forwarded emails, just could not be explained.

Plaintiff responded that he had been the victim of a hack. The defendants observed that a hack could not explain why the one valid email still existed and why the forwarded emails from Mr. Carrington to the Landau group remained.

***

In February of 2019, I issued an order that subpoenas be issued to GoDaddy, Microsoft, and Google, the Internet service providers for plaintiff's three email accounts, to obtain subscriber information, nonsubscriber information, and that FTI conduct an analysis of the iPhone 10, plaintiff's phone, and emails produced to or by the ISPs. The subpoena to Google revealed that the Trendsetter account had only been deactivated the day after the amended complaint was filed and not years earlier, as had been repeatedly represented.

The GoDaddy returns, which it should be noted are not — I'll be brief about this, because they're not in the public filings, but there was an indication that the Carrington Diaries account had been closed and deleted by plaintiff on or about September 8th of 2018, one month after the Court's order to preserve evidence.

The GoDaddy production also revealed that plaintiff reached out to GoDaddy to confirm that a subpoena would not return information about emails within a deleted account. The returns also show repeated password changes throughout 2018, undercutting a previous claim that had been made that one of the defendants might have known of Mr. Carrington's password and hacked into his account.

> The returns for the Gmail account produced no instances of the at-issue communications. FTI [reviewed] the plaintiff's most recent and current iPhone, and it concluded that Mr. Carrington's data had migrated from the previous iPhone, but, again, found no evidence of the at-issue communications in any of those accounts.

(Dkt. #170 at 35-39).

In explaining its decision to dismiss the Amended Complaint with prejudice, the Court emphasized Carrington's evolving, but consistently false, explanations for the emails:

> Mr. Carrington has never provided an explanation for how the forwards exist in the accounts for emails that were sent — let me say that more precisely. The explanation he has not provided is an explanation of how the forwards exist in the Carrington Diaries account for emails that were sent by the Trendsetter account when there is no evidence of the emails being sent from the Trendsetter account to the Carrington Diaries account. It makes no sense to me.
>
> I also do not understand what possessed Mr. Carrington to turn over his iPhone in the middle of this litigation, in the middle of this dispute about the authenticity of these emails. All that I can conclude is that in every instance where the plaintiff appears, again, to use the vernacular, to be caught, he attempts to argue something new, that these issues are the result of someone else's doing, that they are the result of the hacking by one of the defendants or by defense counsel, and it's all just one large conspiracy. I have difficulty, and indeed I cannot, credit that. I have enough sworn statements and enough exploration of what I do have to suggest that this is not the case.
>
> And as I've mentioned, the purported hack does not explain why Mr. Graden has similar-looking emails that match in part, but not in whole, the at-issue communications.

Instead, there is an explanation from plaintiff, but I just don't credit it. It's another coverup involving Mr. Graden and Mr. Stein. Every time the defense has produced compelling evidence of spoliation, of fabrication, of obstruction of the litigation in this case, the plaintiff has provided an explanation. And I believe that going forward, every time it happens, he will provide yet another explanation. They are of increasingly tenuous credibility, and they can't explain what I have in the record.

For these reasons, I can find, even under a clear and convincing evidence standard, that Mr. Carrington has sentiently set in motion some unconscionable scheme, calculated to interfere with the judicial system's ability impartially to adjudicate the action, referring to the *Scholastic* decision I cited earlier to the parties.

(Dkt. #170 at 48-49).

### 3.   The Explanations for Carrington's Non-Appearance

As noted, Carrington did not appear for the October 11 hearing, though an individual purporting to be his attorney requested an adjournment two days prior to the hearing, which request was denied. Two months later, in January 2020, Carrington emailed the Court to advise that he had in fact failed to appear because he had been threatened by Defendant Graden with murder, and that he had instead spent the day obtaining an *ex parte* restraining order in Los Angeles.[1] The news struck the Court as implausible, given the procedural history that had immediately preceded the hearing; it advised Carrington that it could not accept his *ex parte* submission, but that he could

---

[1]   The Court repeats this information in this Order because the underlying allegations of threats by Graden are now known to all Defendants.

file it under seal, where it would be viewable to the Court and parties only.

(Dkt. #172).  Carrington elected not to file anything under seal.

## B.      The Proceedings in Los Angeles Superior Court

At a telephonic hearing held on September 10, 2020, on Defendants'
motion for injunctive relief, to which Carrington and his current counsel (the
Court understands that he prefers the term "future," in part to explain why
counsel declined to appear at the hearing) were invited, the Court learned more
about Carrington's order of protection, and his *modus operandi* was brought
into sharper relief.  A transcript of the September 10 telephonic hearing has
not yet been prepared, and so the Court presents this information from its own
notes:

Counsel for Graden represented — as an officer of the Court and without
dispute from anyone else at the hearing — that Carrington obtained a
temporary order of protection on or about October 11, 2019.  Graden filed his
opposition on or about November 1, 2019.  The opposition included, among
other things, evidence that Graden had had no contact with Carrington during
the relevant time period; that Graden's phone records evidenced no contact;
and that Graden had work-related meetings with others at times he was
supposed to be communicating with Carrington.  At a hearing on the order of
protection held on or about November 5, 2019, the presiding judge observed
the disconnect in the parties' phone records and asked counsel to exchange the
records.  Thereafter, an expert witness in cellular telephones explained to
Graden's counsel how Carrington had "spoofed," or caused to be "spoofed,"

Graden's telephone number(s) to make it appear that Graden had contacted
Carrington, when in fact the calls had been placed through a web application.
For this reason, Carrington (the putative recipient) showed Graden's phone
numbers in his records, while Graden (the putative caller) showed nothing in
his.  After counsel for Graden provided this information to prior counsel for
Carrington, the latter "stopped responding."

At the next hearing on the order of protection, held in February 2020,
neither Carrington nor his counsel appeared.  The court advised counsel for
Graden that counsel for Carrington had contacted the court to advise it of
Carrington's intention to withdraw his application without prejudice to its
refiling.  After hearing from counsel for Graden, the court dismissed the matter
with prejudice, and scheduled briefing on Graden's application for sanctions.

Whether to justify his failure to appear in this Court or to start over in a
different court, Carrington resorted, again, to a trifecta of obstructive conduct:
fabrication of evidence, efforts to withdraw his litigation without prejudice
when the fraud was uncovered, and, ultimately, non-appearance in court.
Though the conduct was limited to only one of the Defendants in this case, the
litigation and reputational costs remained significant.

**C.     The Threatened Litigation**

By letters dated September 4 and 8, 2020 (Dkt. #174, 178), Defendants
advised the Court that Carrington intends to sue them again.  The Court has
reviewed the demand letters from Carrington's current counsel.  In large
measure, the contemplated causes of action, and the factual support therefor,

replicate those in the Amended Complaint; however, Carrington's additional

claims are no less troubling.  Carrington accuses counsel for Graden of acting

in a manner that, if true, would assuredly subject him to not just professional

discipline, but also disbarment and perhaps even criminal prosecution.  Worse

yet, Carrington puts a false gloss on the sanction proceedings in this Court,

suggesting among other things that the Court either colluded with, or was

bribed by, one or more Defendants.  At the September 10 hearing, Defendants

explained at length the toll — financial and emotional — that Carrington's

conduct had exacted from their clients, and sought redress.

## DISCUSSION

### The Court Grants Defendants' Request for Injunctive Relief

It "is beyond peradventure" that this Court possesses the authority to

enjoin Carrington from further vexatious litigation.  *Safir* v. *U.S. Lines, Inc.*, 792

F.2d 19, 23 (2d Cir. 1986).  "In determining whether to restrict a litigant's

future ability to sue, a court must consider 'whether a litigant who has a

history of vexatious litigation is likely to continue to abuse the judicial process

and harass other parties.'"  *Eliahu* v. *Jewish Agency for Israel*, 919 F.3d 709,

713-14 (2d Cir. 2019) (quoting *Safir*, 792 F.2d at 24).  Specifically, the Second

Circuit has required district courts to consider the following factors:

> [i] the litigant's history of litigation and in particular
> whether it entailed vexatious, harassing[,] or duplicative
> lawsuits;  [ii]  the  litigant's  motive  in  pursuing  the
> litigation, e.g., does the litigant have an objective good
> faith expectation of prevailing?; [iii] whether the litigant
> is  represented  by  counsel;  [iv]  whether  the  litigant  has
> caused needless expense to other parties or has posed
> an  unnecessary  burden  on  the  courts  and  their

> personnel; and [v] whether other sanctions would be
> adequate to protect the courts and other parties.

*Id.* at 714 (quoting *Iwachiw* v. *N.Y. State Dep't of Motor Vehicles*, 396 F.3d 525,

528 (2d Cir. 2005) (per curiam)).

Upon consideration of the above factors, the Court finds that an

injunction enjoining Carrington from filing further lawsuits is both warranted

and necessary. *First*, the Court finds that Carrington's past and present

behavior evinces a clear intent to further abuse the judicial process. Although

the Court acknowledges that Carrington has, as of yet, only filed two lawsuits

against Defendants, the Second Circuit has been clear that "[t]here is no[] …

strict numerosity requirement that must be met … to enjoin a litigant from

filing future actions. Rather, the court must consider the record as a whole

and the likelihood that the litigant will continue to abuse the judicial process."

*Eliahu*, 919 F.3d at 714 (citing *Safir*, 792 F.2d at 24). Carrington has now

twice engaged in a pattern of filing outrageous claims, fabricating evidence,

attempting to escape the consequences of such fabrication, and then refusing

to appear in court, and all evidence indicates that he is preparing for a third

attempt. The first factor therefore weighs in favor of granting the injunction.

*Second*, there is no reason to afford Carrington any special solicitude, as

the Court would were he a *pro se* litigant. *See Eliahu*, 919 F.3d at 715 (noting

that, "[i]n considering a litigant's status, we have recognized that *pro se*

litigants, in many cases, are entitled to special solicitude"). Although

Carrington has at times been unrepresented, his vexatious conduct cannot be

attributed to lack of counsel. Indeed, Carrington had the assistance of counsel

when he fabricated evidence in the instant action and when he filed the protective action in California, and he seemingly is represented by counsel now. The third factor therefore similarly weighs in favor of injunctive relief.

*Third*, it is beyond dispute that Carrington's actions have caused needless expense to Defendants and placed an unnecessary burden on this Court. As represented by Defendants' counsel in their pending applications for attorneys' fees, Carrington's actions in just the instant case have resulted in almost $1 million in legal fees. (*See* Dkt. #151-58). Moreover, both this Court and the California state court have been burdened with adjudicating Carrington's increasingly salacious claims, and then managing the fallout from his perfidy. The fourth factor, too, favors precluding Carrington from further burdening Defendants and the judicial system.

*Fourth*, and finally, the Court is persuaded that other sanctions are inadequate. The Court has already deployed one of the most severe sanctions in its arsenal — the dismissal with prejudice of the instant action (*see* Dkt. #147) — and has pending before it applications for attorneys' fees amounting to almost $1 million. None of this has hindered Carrington from making ever more outrageous claims, and even going so far as to impugn the integrity of this Court. Given Carrington's recent threat to begin anew his deceitful pattern of behavior, the Court believes that the only path available to it is to preempt

Carrington from carrying out his threat.  Therefore, the fifth factor weighs in favor of granting Defendants' request for an injunction.

To summarize, four of the five factors outlined by the Second Circuit counsel in favor of enjoining Carrington from filing future lawsuits arising out of or relating to the subject matter in the instant action.  Moreover, the second factor — Carrington's motive in bringing his various lawsuits — is, at best, neutral.  Due to Carrington's dishonest behavior, the Court never had, and will never have, the opportunity to learn which, if any, of Carrington's claims are meritorious.  However, Carrington's repeated fabrications and obstructive behavior do lead the Court to view his claims with a skeptical eye.  The Court therefore finds that an injunction enjoining Carrington from filing, without the express approval of this Court, future claims arising from or relating to the subject matter of the instant litigation is more than justified.[2]

## CONCLUSION

For the reasons set forth in this Order, the Court GRANTS Defendants' request for a permanent injunction against Carrington.  The Court hereby ORDERS that Carrington be forbidden from filing any future suits in federal or state court arising from or relating to the subject matter in the instant action

---

[2]   The Court makes this finding with the understanding that such injunctions should be narrowly tailored to the specific circumstance.  *See Safir* v. *U.S. Lines, Inc.*, 792 F.2d 19, 25 (2d Cir. 1986) (modifying a district court's injunction due to it being "overly broad").  The Court believes that it has tailored its injunction to the extent required to prevent Carrington from doing further harm to Defendants and the judicial system.

without the prior authorization of this Court.  The Clerk of Court is directed to terminate the motion at docket entry 174.

Counsel for Defendants are directed to serve this Order on Carrington and his current counsel by whatever means they have used to communicate with each of them in the past.

SO ORDERED.

Dated:      September 11, 2020
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

*Sent by First Class Mail to:*
Rovier Carrington
5901 Encina Road
Suite C-2
Goleta, CA 93117

14

# EXHIBIT 003

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                                          :
ROVIER CARRINGTON,                                        :
                                                          :
                              Plaintiff,                  :
              v.                                          :
                                                          :
BRIAN GRADEN, *et al.*,                                   :
                                                          :
                              Defendants.                 :
                                                          :
--------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: June 4, 2018____
```

18 Civ. 4609 (KPF)

NOTICE OF INITIAL
PRETRIAL CONFERENCE

KATHERINE POLK FAILLA, District Judge:

     This case has been assigned to me for all purposes.  It is hereby ORDERED
that counsel for all parties appear for an initial pretrial conference with the Court on
**July 20, 2018, at 3:00pm**, in Courtroom 618 of the Thurgood Marshall Courthouse,
40 Foley Square, New York, New York.

     All counsel are required to register promptly as filing users on ECF.  All pretrial
conferences must be attended by the attorney who will serve as principal trial
counsel.  Counsel are further required to review and comply with the Court's
Individual Rules of Practice in Civil Cases ("Individual Rules") available at
http://nysd.uscourts.gov/judge/Failla.

     Counsel are directed to confer with each other prior to the conference regarding
settlement and each of the other subjects to be considered at a Federal Rule of Civil
Procedure 16 conference.  Additionally, in accordance with the Court's Individual
Rules, the parties are hereby ORDERED to submit via e-mail
(Failla_NYSDChambers@nysd.uscourts.gov) a Proposed Civil Case Management Plan
and Scheduling Order in PDF format by Thursday of the week prior to the initial
pretrial conference.  The parties shall use this Court's form Proposed Civil Case
Management Plan and Scheduling Order, which is also available at
http://nysd.uscourts.gov/judge/Failla.  Any open legal issues can be addressed at
the conference.

IT IS FURTHER ORDERED that included with the Proposed Civil Case Management Plan and Scheduling Order, the parties jointly submit a letter, not to exceed five pages, providing the following information in separate paragraphs:

(1)     A brief statement of the nature of the action, the principal defenses thereto, and the major legal and factual issues that are most important to resolving the case, whether by trial, settlement, or dispositive motion;

(2)     A brief explanation of why jurisdiction and venue lie in this Court.  In any action in which subject matter jurisdiction is founded on diversity of citizenship pursuant to Title 28, United States Code, Section 1332, the letter must explain the basis for the parties' belief that diversity of citizenship exists.  Where any party is a corporation, the letter shall state both the place of incorporation and the principal place of business.  In cases where any party is a partnership, limited partnership, limited liability company, or trust, the letter shall state the citizenship of each of the entity's members, shareholders, partners, and/or trustees.  *See, e.g.*, *Handelsman* v. *Bedford Vill. Assocs. L.P.*, 213 F.3d 48 (2d Cir. 2000).

(3)     A statement of all existing deadlines, due dates, and/or cut-off dates;

(4)     A brief description of any outstanding motions;

(5)     A brief description of any discovery that has already taken place and of any discovery that is necessary for the parties to engage in meaningful settlement negotiations;

(6)     A statement describing the status of any settlement discussions and whether the parties would like a settlement conference; and

(7)     Any other information that the parties believe may assist the Court in advancing the case to settlement or trial, including, but not limited to, a description of any dispositive issue or novel issue raised by the case.

If this case has been settled or otherwise terminated, counsel are not required to submit such letter or to appear, provided that a stipulation of discontinuance, voluntary dismissal, or other proof of termination is sent prior to the date of the conference via e-mail to the Orders and Judgments Clerk at the following e-mail address: judgments@nysd.uscourts.gov.

In accordance with the Court's Individual Rules and Practices, requests for an extension or adjournment may be made only by letter and must be received at least 48 hours before the deadline or conference.  The written submission must state (1) the original date(s); (2) the number of previous requests for adjournment or

extension; (3) whether these previous requests were granted or denied; (4) the reason for the current request; and (5) whether the adversary consents and, if not, the reasons given by the adversary for refusing to consent.  Unless counsel are notified that the conference has been adjourned, it will be held as scheduled.

Counsel who have noticed an appearance as of the issuance of this order are directed (1) to notify all other parties' attorneys in this action by serving upon each of them a copy of this order and the Court's Individual Rules forthwith, and (2) to file proof of such notice with the Court.  If unaware of the identity of counsel for any of the parties, counsel receiving this order must forthwith send a copy of this order and the Court's Individual Rules to that party personally.

SO ORDERED.

Dated:     June 4, 2018
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 25

# EXHIBIT 004

Revised: January 9, 2020

**INDIVIDUAL RULES OF PRACTICE IN CIVIL CASES**
**Katherine Polk Failla, United States District Judge**

**Chambers**
United States District Court
Southern District of New York
40 Foley Square, Room 2103
New York, NY 10007
(212) 805-0290
Failla_NYSDChambers@nysd.uscourts.gov

**Courtroom**
40 Foley Square, Courtroom 618
Talena Noriega, Courtroom Deputy
(212) 805-0290

**Pro Se Intake Office**
United States District Court
Southern District of New York
40 Foley Square, Room 105
New York, NY 10007
(212) 805-0175

1. **Procedural Rules**

    A. **Generally.**  The Court's procedures are governed by the Federal Rules of Civil Procedure, the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Local Rules"), and the Individual Practices set forth below. Unless otherwise ordered, these Individual Practices apply to all civil matters before Judge Failla.

    B. **Pilot Projects and Plans.**  If a case is designated by Order of the Court to be part of one of the Court's pilot projects or plans (including the protocols set forth in Local Civil Rule 83.10), the procedures in such project or plan shall govern to the extent that they are inconsistent with these Individual Practices.

2. **Communications with Chambers**

    A. **ECF.**  In accordance with the Electronic Case Filing ("ECF") Rules and Instructions, counsel are required to register as ECF filers and to enter a notice of appearance in the case promptly.  Instructions are available on the Court website, at https://nysd.uscourts.gov/electronic-case-filing.  Counsel are responsible for updating their contact information on ECF as needed, and counsel remain responsible for checking the docket sheet regularly, regardless of whether they receive an ECF notification of case activity.

**B.     Letters.**  Except as otherwise provided below, communications with the Court should be by letter.  Unless there is a request to file a letter under seal or a letter contains sensitive or confidential information, letters should be filed electronically on ECF, with a courtesy copy, clearly marked as such, delivered to the Court via e-mail (Failla_NYSDChambers@nysd.uscourts.gov).  E-mails shall state clearly in the subject line: (i) the caption of the case, including the lead party names and docket number; and (ii) a brief description of the contents of the letter.  Parties shall not include substantive communications in the body of the e-mail; such communications shall be included only in the body of the letter.  Copies of correspondence between counsel shall not be filed on ECF or otherwise sent to the Court (except as exhibits to an otherwise properly filed document).  The courtesy copy of any letter filed on ECF must be an electronic copy of the filed version of the letter and must include the automatically generated ECF header (that is, the text — e.g., "Case 1:19-cv-01234-KPF Document 100 Filed 1/1/19 Page 1 of 1" — appearing at the top of each page of a document on the ECF system).

   **i.     By a *Pro Se* Party.**  All communications with the Court by a *pro se* party must be sent to the Pro Se Intake Office.  You may contact the Pro Se Intake Office at (212) 805-0175 during normal business hours, 8:30am - 5:00pm, Monday – Friday.  No documents or filings should be sent directly to Chambers.  Copies of correspondence between a *pro se* party and counsel should not be sent to the Court.

      **1.     *Pro Se* Legal Clinic.**  For interested *pro se* parties, the NYLAG Legal Clinic for Pro Se Litigants in the Southern District of New York is a free legal clinic staffed by attorneys and paralegals to assist those who are representing themselves or planning to represent themselves in civil lawsuits in the Southern District of New York.  The Clinic, which is not part of or run by the Court, has offices at 40 Foley Square, Room LL22.  More information is available on the Court's website at: https://nysd.uscourts.gov/attorney/legal-assistance.

**C.     Letter Motions.**  Letter motions may be filed via ECF if they comply with the Local Rules and the S.D.N.Y. Electronic Case Filing Rules and Instructions.  All requests for adjournments, extensions, and pre-motion conferences should be filed as letter motions.  If the letter motion is not on consent, any opposing party should submit a letter setting forth its position, within three

business days after the initial letter motion is received.  A courtesy copy of each letter motion must also be provided to Chambers via e-mail.

**D.**    **Requests for Adjournments or Extensions of Time.**  Letter motions for adjournments or extensions of time should state: (i) the original due date; (ii) the number of previous requests for adjournment or extension of time; (iii) whether these previous requests were granted or denied; (iv) the reason for the current request; and (v) whether the adversary consents, and, if not, the reasons given by the adversary for refusing to consent.  If the requested adjournment or extension affects any other scheduled dates, a proposed Revised Scheduling Order must be attached.  If the request is for an adjournment of a court appearance, absent an emergency, the request shall be made at least 48 hours prior to the scheduled appearance.

    **i.**    **By a *Pro Se* Party.**  Requests for extensions by *pro se* parties should be submitted to the Pro Se Office, and shall include the information specified in Rule 2(D), except that a *pro se* party may, but is not required to, submit a proposed Revised Scheduling Order.

**E.**    **Proposed Orders and Stipulations.**  All stipulations and proposed orders — with the exception of emergency applications, including preliminary injunctions and temporary restraining orders — should be filed electronically using the Court's ECF system.  Emergency applications should be filed with the Orders and Judgments Clerk, in person at 40 Foley Square, Room 105.  Courtesy copies need not be sent to Chambers.  For further information, parties are directed to consult the SDNY Electronic Case Filing Rules & Instructions, available at https://nysd.uscourts.gov/electronic-case-filing.

**F.**    **Related Cases.**  After an action has been accepted as related to a prior filing, all future court papers and correspondence must contain the docket number of the new filing as well as the docket number of the case to which it is related (e.g., 19 Civ. 1234 [rel. 18 Civ. 4321]).

**G.**    **Cases Removed from State Court.**  Counsel for the removing party or parties must, in addition to providing a copy of all process, pleadings, and papers served upon the defendants pursuant to 28 U.S.C. § 1446(a), provide the Court with a courtesy copy of any pleading filed or served while the case remained in state court.

Counsel for all parties must file notices of appearance in this Court promptly upon removal.

**H.**    **Urgent Communications.**  Materials filed via ECF are generally reviewed within one business day of filing.  If a given submission requires immediate attention, please notify Chambers by telephone after it is filed by ECF.

**I.**    **Telephone Calls.**  For docketing, scheduling, and calendar matters, call Chambers at (212) 805-0290.  Otherwise, telephone calls to Chambers are permitted only for urgent matters.

    **i.**    **By a *Pro Se* Party.**  *Pro se* parties are not permitted to telephone Chambers.  *Pro se* parties are directed to contact the Pro Se Intake Office at (212) 805-0175.

**J.**    **Faxes.**  Faxes to Chambers are not permitted.

**K.**    **Hand Deliveries.**  Where requested by the Court, hand-delivered mail should be left with the Court Security Officers at the Worth Street entrance of the Daniel Patrick Moynihan United States District Courthouse at 500 Pearl Street, New York, NY 10007, and may not be brought directly to Chambers.  Hand deliveries are continuously retrieved from the Worth Street entrance by Courthouse mail staff and then taken to Chambers.  If the hand-delivered letter is urgent and requires the Court's immediate attention, however, ask the Court Security Officers to notify Chambers that an urgent package has arrived that needs to be retrieved by Chambers staff immediately.

**3.**    **Conferences**

**A.**    **Attendance by Principal Trial Counsel.**  The attorney who will serve as principal trial counsel must appear at all conferences with the Court.

**B.**    **Initial Case Management Conference.**  The Court will generally schedule a Fed. R. Civ. P. 16(c) conference to take place within three months of the filing of the Complaint.  The conference will be scheduled by means of a Notice of Initial Pretrial Conference that is filed on ECF.  Plaintiff's counsel is responsible for distributing the Notice of Initial Pretrial Conference to those parties who have not yet appeared in the case.  Pursuant to that Notice, the parties are required to submit via e-mail a joint letter and Proposed Civil Case Management Plan and Scheduling Order in PDF format by Thursday of the week prior to the initial pretrial conference.

*The Court schedules initial pretrial conferences with the expectation that one or more of the parties would like an in-person opportunity to bring matters to the Court's attention, and it welcomes that opportunity.  However, the Court recognizes that in certain circumstances — as, for example, where the parties are in agreement about the proposed discovery schedule and have no issues to raise with the Court — such conferences may represent less-efficient uses of the parties' time and resources.  If the parties agree on a schedule that calls for the close of all discovery within six months, and have no other issues to raise with the Court, the parties can, if they wish, submit a Proposed Civil Case Management Plan and Scheduling Order and request in their joint letter that the initial pretrial conference be cancelled. The Court will ordinarily grant such requests.*

C.     **Discovery Disputes.**  The parties are to follow Local Civil Rule 37.2 with the following modifications:  Any party wishing to raise a discovery dispute with the Court must first confer in good faith with the opposing party, in person or by telephone, in an effort to resolve the dispute.  If this meet-and-confer process does not resolve the dispute, the party seeking discovery shall promptly file on ECF a letter motion, no longer than three pages, explaining the nature of the dispute and requesting an informal conference.  Such a letter must include a representation that the meet-and-confer process occurred and was unsuccessful.  If the opposing party wishes to respond to the letter, it must submit a responsive letter, not to exceed three pages, within three business days after the request is received.  Counsel should seek relief in accordance with these procedures in a timely fashion; if a party waits until near the close of discovery to raise an issue that could have been raised earlier, the party is unlikely to be granted the relief that it seeks, let alone more time for discovery.

D.     **Participation by Junior Attorneys:** The Court encourages the participation of less experienced attorneys in all proceedings — including pretrial conferences, hearings on discovery disputes, oral arguments, and examinations of witnesses at trial — particularly where that attorney played a substantial role in drafting the underlying filing or in preparing the relevant witness.  The Court is amenable to permitting more than one lawyer to argue for one party if this creates an opportunity for a junior lawyer to participate.

## 4. Motions

    A.    **Pre-Motion Submissions in Civil Cases.**  Pre-motion submissions are required for motions to dismiss, motions for summary judgment, motions for judgment on the pleadings, motions for sanctions, and motions concerning discovery.  Motions concerning discovery are discussed in Section 3(C) above.

    To request a pre-motion conference for motions to dismiss, motions for summary judgment, motions for judgment on the pleadings, and motions for sanctions, the putative moving party shall file a letter, not to exceed three pages, describing the grounds for the proposed motion, and whether the motion is on consent of all parties.  If the motion is not on consent, any opposing party should file a letter setting forth its position, not to exceed three pages, within three business days after the request is received.  The Court will then determine whether to hold a pre-motion conference in the matter.  A courtesy copy of each letter must also be provided to Chambers via e-mail.

    The submission of a pre-motion letter does not stay any future deadlines, except that submission of a pre-motion letter concerning a motion to dismiss will stay a defendant's time to answer or otherwise move with respect to the Complaint.

        i.    **By a *Pro Se* Party.**  Pre-motion submissions are not required from *pro se* parties.  If the *pro se* party's adversary files a pre-motion submission, the *pro se* party may, but is not required to, file a response to the pre-motion submission.  Any such response shall be due three business days after the pre-motion submission is received by the *pro se* party.

    B.    **Memoranda of Law.**  The typeface, margins, and spacing of motion papers must conform to Local Civil Rule 11.1.  Unless prior permission has been granted, memoranda of law in support of and in opposition to motions are limited to 25 pages, and reply memoranda are limited to 10 pages.  All memoranda of law shall be in 12-point font or larger, double-spaced, and text-searchable.  Memoranda of 10 pages or more shall contain a table of contents and a table of authorities, neither of which shall count against the page limit.  Sur-reply memoranda will not be accepted without prior permission of the Court.  All appendices to memoranda of law must be indexed.

C. **Filing of Motion Papers.**  Motion papers shall be filed with the Clerk's Office promptly after service.

D. **Courtesy Copies.**  One courtesy copy of all motion papers, marked as such, shall be mailed or hand-delivered to the Court by the movant at the time the reply is served.  All courtesy copies should be double-sided, three-hole-punched, tabbed, and placed in binders.

E. **Oral Argument on Motions.**  Parties may request oral argument by letter at the time their moving or opposing or reply papers are filed.  The Court will determine whether argument will be heard and, if so, will advise counsel of the argument date.

F. **Preliminary Injunction Motions.**  The Court generally follows the procedure for the conduct of non-jury trials described in Section 7(C) below.

G. **Motions to Exclude the Testimony of Experts.**  Pursuant to Rules 702-705 of the Federal Rules of Evidence and the line of cases beginning with *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), motions to exclude testimony of experts must be made by the deadline for dispositive motions and should not be treated as motions *in limine*.

H. ***Pro Se* Notices.**  Parties who file a motion to dismiss, a motion for judgment on the pleadings, or a motion for summary judgment must provide the *pro se* party with a copy of the notices required under Local Civil Rules 12.1 or 56.2.

I. **Default Judgments.**  A plaintiff seeking a default judgment must proceed by way of an Order to Show Cause pursuant to the procedure set forth in Attachment A.

5. **Special Rules for Summary Judgment Motions.**

A. **Generally Not Available in Non-Jury Cases.**  Absent good cause, the Court will not have summary judgment practice in a non-jury case.

B. **Courtesy Copy of Deposition Transcript.**  Except in *pro se* cases, the parties shall provide the Court with an electronic, text-searchable courtesy copy of any hearing or deposition transcript on which the parties rely, if such a copy is available, unless doing so would be unduly burdensome.  Parties should provide these materials on a CD only, not on a DVD or memory stick and not by

e-mail.  Where parties rely on deposition testimony, they should not include excerpts of deposition transcripts as exhibits, but rather should include (only once) the entire deposition transcript as an exhibit.

C. **Local Rule 56.1 Statements.**  Pursuant to Local Civil Rule 56.1, a movant for summary judgment shall file a statement of material undisputed facts and the opposing party shall respond.

    i. **Electronic Copy to Other Parties.**  Except in *pro se* cases, the moving party should provide all other parties with an electronic copy, in Microsoft Word format, of the moving party's Statement of Material Facts Pursuant to Local Civil Rule 56.1.

    ii. **Organization of 56.1 Statements.**  The 56.1 Statement must be organized into numbered paragraphs and each numbered paragraph must contain only one factual assertion.  Each factual assertion must be followed by a citation to the portion(s) of the evidentiary record relied upon.

        Except in *pro se* cases, opposing parties must reproduce each entry in the moving party's 56.1 Statement, and set out the opposing party's response directly beneath it.  The response must state specifically what is admitted and what is disputed, and the basis for any dispute, citing specific portions of the evidentiary record relied upon.  The response may go on to make additional factual allegations in paragraphs numbered consecutively to those of the moving party (*i.e.*, they do not begin re-numbering at 1).  If additional factual allegations are made by the opposing party, the moving party must file its own responsive 56.1 Statement addressing the additional assertions.

    iii. **Multiple Parties Must Coordinate Statements.**  If multiple parties are submitting 56.1 Statements, they must coordinate their statements to provide for consecutive, non-overlapping, numbered paragraphs in their respective statements.

    iv. **Statement of Facts.**  Each memoranda of law must include a statement of facts, and may not simply incorporate by reference the entirety of a party's 56.1 Statement.

**6.    Other Pretrial Guidance**

    **A.    Applications for a Temporary Restraining Order.**  A party must confer with his or her adversary before making an application for a temporary restraining order unless the requirements of Fed. R. Civ. P. 65(b) are met.  As soon as a party decides to seek a temporary restraining order, he or she must call Chambers at (212) 805-0290 and state clearly whether (i) he or she has notified the adversary, and whether the adversary consents to temporary injunctive relief; or (ii) the requirements of Fed. R. Civ. P. 65(b) are satisfied and no notice is necessary.  If a party's adversary has been notified but does not consent to temporary injunctive relief, the party seeking a restraining order must bring the application to the Court at a time mutually agreeable to the party and its adversary, so that the Court may have the benefit of advocacy from both sides in deciding whether to grant temporary injunctive relief.

    **B.    Settlement Agreements.**  The Court will not retain jurisdiction to enforce confidential settlement agreements.  If the parties wish that the Court retain jurisdiction to enforce the agreement, the parties must place the terms of their settlement agreement on the public record.  The parties may either provide a copy of the settlement agreement for the Court to endorse or include the terms of their settlement agreement in their stipulation of settlement and dismissal.

    **C.    Diversity Jurisdiction Cases.**  In any action in which subject matter jurisdiction is founded on diversity of citizenship pursuant to 28 U.S.C. § 1332, the party asserting the existence of such jurisdiction shall, prior to the Initial Pretrial Conference, e-mail to the Court a letter no longer than three pages explaining the basis for that party's belief that diversity of citizenship exists.  In cases where any party is a corporation, the letter shall state both the place of incorporation and the principal place of business.  In cases where any party is a partnership, limited partnership, limited liability company, or trust, the letter shall state the citizenship of each of the entity's members, shareholders, partners, and/or trustees.

    **D.    Bankruptcy Appeals.**  The briefing schedule and format and length specifications set forth in the applicable provisions of Federal Rules of Bankruptcy Procedure shall govern unless otherwise ordered by the Court.  Counsel may extend the default deadlines by stipulation submitted to the Court no later than two business days before the brief is due.

**7.    Trial Procedures**

**A.    Joint Pretrial Order.**  The Court will set the deadline for the submission of the Joint Pretrial Order at a conference that will follow either the close of discovery or the resolution of dispositive motions.  On the date ordered by the Court, the parties shall file on ECF, and e-mail to the Court, a proposed joint pretrial order, which shall include the following:

**i.**    The full caption of the action;

**ii.**    The names, law firms, addresses, and telephone and fax numbers of trial counsel;

**iii.**    A brief statement by plaintiff as to the basis of subject matter jurisdiction, and a brief statement by each other party as to the presence or absence of subject matter jurisdiction.  Such statements shall include citations to all statutes relied on and relevant facts as to citizenship and jurisdictional amount;

**iv.**    A brief summary by each party of the claims and defenses that the party asserts remain to be tried, including citations to any statutes on which the party relies.  Such summaries shall also identify all claims and defenses previously asserted which are not to be tried.  The summaries should not recite any evidentiary matter;

**v.**    A statement as to the number of trial days needed and whether the case is to be tried with or without a jury;

**vi.**    A joint statement summarizing the nature of the case, to be read to potential jurors during jury selection;

**vii.**    A list of people, places, and institutions that are likely to be mentioned during the course of the trial, to be read to potential jurors during jury selection;

**viii.**    A statement as to whether all parties have consented to trial by a magistrate judge, without identifying which parties do or do not consent;

**ix.**    Any stipulations or agreed statements of fact or law to which all parties consent;

**x.** A list of all trial witnesses, indicating whether such witnesses will testify in person or by deposition, and a brief summary of the substance of each witness's testimony;

**xi.** A designation by each party of deposition testimony to be offered in its case in chief and any counter-designations and objections by any other party;

**xii.** A list by each party of exhibits to be offered in its case in chief, with one star indicating exhibits to which no party objects on grounds of authenticity, and two stars indicating exhibits to which no party objects on any ground;

**xiii.** A statement of the damages claimed and any other relief sought, including the manner and method used to calculate any claimed damages and a breakdown of the elements of such claimed damages; and

**xiv.** A statement of whether the parties consent to less than a unanimous verdict.

**B.** **Required Pretrial Filings.**  Each party shall file and serve with the joint pretrial order:

**i.** In both jury and non-jury cases, motions addressing any evidentiary issues or other matters that should be resolved *in limine.*  Opposition papers shall be filed within seven days thereafter, and reply papers, if any, shall be filed within four days of any opposition;

**ii.** In all cases where a party believes it would be useful to the Court, a pretrial memorandum of law;

**iii.** In jury cases, requests to charge and proposed *voir dire* questions that shall be submitted as both .pdf and Microsoft Word documents; and

**iv.** In non-jury cases, proposed findings of fact and conclusions of law. The proposed findings of fact should be detailed and should include citations to the proffered trial testimony and exhibits, as there may be no opportunity for post-trial submissions.

**C.** **Additional Submissions in Non-Jury Cases.**  At the time the joint pretrial order is filed, each party shall e-mail to the Court and serve on opposing counsel, but not file on ECF, the following:

**i.**   Copies of affidavits constituting the direct testimony of each trial witness, except for the direct testimony of an adverse party, a person whose attendance is compelled by subpoena, or a person for whom the Court has agreed to hear direct testimony live at the trial.  Three business days after submission of such affidavits, counsel for each party shall submit a list of all affiants whom he or she intends to cross-examine at the trial.  Only those witnesses who will be cross-examined need to appear at trial.  The original signed affidavits should be brought to trial to be marked as exhibits;

**ii.**   All deposition excerpts which will be offered as substantive evidence, as well as a one-page synopsis of those excerpts for each deposition.  Each synopsis shall include page citations to the pertinent pages of the deposition transcripts; and

**iii.**   All documentary exhibits.

**D.**   **Filings in Opposition.**  Any party may file on ECF, and e-mail to the Court, the following documents within one week after the filing of the pretrial order, but in no event less than two days before the scheduled trial date:

**i.**   Objections to another party's requests to charge or proposed *voir dire* questions;

**ii.**   Opposition to any motion *in limine*, due within seven days of the filing of the motion; and

**iii.**   Opposition to any legal argument in a pretrial memorandum.

**E.**   **Courtesy Copies.**  Two courtesy copies of all documents identified in Sections 7(A), (B), (C)(i-ii), and (D) above should be mailed or hand-delivered to Chambers on the date on which they are to be served or filed.  Only one set of documentary exhibits is required.  Voluminous material may be organized either in binders or manila file folders, but in any event, the courtesy copies shall be separately arranged into two independent sets.

**F.**   **Trial Schedule.**  Trials will generally be conducted Monday through Friday from 9:00 a.m. to 2:45 p.m., with one short break from approximately 12:30 p.m. to 1:00 p.m.

**G.**   **Jury Selection.**  The jury will be selected by the struck panel method.

**8.     Trial Procedures in *Pro Se* Cases**

**A.     Generally.**  Rule 7 applies equally to cases involving a *pro se* party, with the following exceptions:

**i.     Pretrial Statement.**  Unless otherwise ordered by the Court, within 30 days of the completion of discovery, a *pro se* party shall file a concise, written Pretrial Statement.  This Statement need take no particular form, but it must contain the following: (i) a statement of the facts the *pro se* party hopes to prove at trial; (ii) a list of all documents or other physical objects that the *pro se* party plans to put into evidence at trial; and (iii) a list of the names and addresses of all witnesses the *pro se* party intends to have testify at trial.  The Statement must be sworn by the *pro se* party to be true and accurate based on the facts known by the *pro se* party.  The *pro se* party shall file an original of this Statement with the Pro Se Intake Office.  Two weeks after service of the *pro se* party's Statement, counsel for any represented party must file and serve a similar Statement containing the same categories of information.

**ii.     Pretrial Filings.**  The *pro se* party may also file either proposed findings of fact and conclusions of law or a proposed jury charge, but is not required to do so.  Counsel for any represented party is directed to follow Rule 7(B)-(D).

**9.     Electronic Filing Under Seal in Civil and Miscellaneous Cases**

**A.     Redactions Not Requiring Court Approval.**  Federal Rule of Civil Procedure 5.2 describes sensitive information that must be redacted from public court filings without seeking prior permission from the Court.  The parties are also referred to the E-Government Act of 2002 and the Southern District's ECF Privacy Policy ("Privacy Policy").  There are two categories of information that may be redacted from public court filings without prior permission from the Court: "sensitive information" and information requiring "caution."  Parties should not include in their public filings, unless necessary, the five categories of "sensitive information" (i.e., social security numbers [use the last four digits only], names of minor children [use the initials only], dates of birth [use the year only], financial account numbers [use the last four digits only], and home addresses [use only the City and State]).  Parties may also, without prior Court approval, redact from their public filings the six categories of information requiring caution described in the Privacy

Policy (i.e., any personal identifying number, medical records [including information regarding treatment and diagnosis], employment history, individual financial information, proprietary or trade secret information, and information regarding an individual's cooperation with the government).

**B.** **Redactions Requiring Court Approval.** Except for redactions permitted by the previous paragraph, all redactions or sealing of public court filings require Court approval. To be approved, any redaction or sealing of a court filing must be narrowly tailored to serve whatever purpose justifies the redaction or sealing and must be otherwise consistent with the presumption in favor of public access to judicial documents. *See, e.g., Lugosch* v. *Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006). In general, the parties' consent or the fact that information is subject to a confidentiality agreement between litigants is not, by itself, a valid basis to overcome the presumption in favor of public access to judicial documents. *See, e.g., In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2015 WL 4750774, at *4 (S.D.N.Y. Aug. 11, 2015).

**i.** **Procedures for Filing Documents with Redactions.** Any party seeking to file a document with partial redactions should file on ECF a letter motion seeking leave to file the document with those redactions. The letter motion must be filed in public view, must explain the purpose of the redactions and why the redactions are consistent with the standards discussed in Paragraph 9(B) above, and should not include the confidential information sought to be redacted. Supporting papers must be separately filed electronically and may be filed under seal or redacted only to the extent necessary to safeguard information sought to be redacted. (If, however, the party believes that the letter motion itself should be redacted, the party should include an unredacted copy of the letter motion as an attachment to the email described in Paragraph 9(C)(iii) below.)

Where the motion seeks approval to redact information from a document that is to be publicly filed, the filing party shall: (a) publicly file the document with the proposed redactions, and (b) electronically file under seal a copy of the unredacted document with the proposed redactions highlighted. Both documents must be electronically filed on ECF and related to the motion.

   **ii.**   **E-mailing of Documents to Chambers**.  At the same time, the party should e-mail to Chambers (Failla_NYSDChambers@nysd.uscourts.gov) (i) a clean (i.e., unredacted) copy of the document; (ii) a copy of the document highlighting the information that has been redacted in the ECF filing; and (iii) an unredacted copy of the letter motion described in Paragraph 9(c)(i), should the party also be seeking leave to file that letter motion with redactions.

**C.**   **Procedure for Filing Sealed Documents**

   **i.**   **Sealing Exhibits.**  Any party seeking leave to file an unsealed or redacted document with a fully sealed exhibit attached thereto should file the main document (in accordance with the procedures above, if the party seeks to do so with redactions) on ECF, accompanied by a single page marked "SEALED" in place of any exhibit that the party seeks leave to file under seal, regardless of the actual length of such exhibit.  The party should simultaneously file a letter motion seeking leave to file in that manner according to the procedure described in Paragraphs 9(B)(i)-(ii) above.

   **ii.**   **Sealing Entire Documents.**  Any party seeking leave to file under seal an entire submission (with or without exhibits) should file on ECF a letter motion seeking leave to file the document under seal.

The motion must be filed in public view, must explain the particular reasons for seeking to file that information under seal and should not include confidential information sought to be filed under seal.  Supporting papers must be separately filed electronically and may be filed under seal or redacted only to the extent necessary to safeguard information sought to be filed under seal.

The proposed sealed document must be contemporaneously filed under seal on ECF and electronically related to the motion. The summary docket text, but not the sealed document, will be open to public inspection and should not include confidential information sought to be filed under seal.

Any party unable to comply with the requirement for electronic filing under seal through the ECF system, or who has reason to believe that a particular document should not be electronically

filed, must move for leave of the Court to file in the traditional manner, on paper.

**10.    Policy on the Use of Electronic Devices**

Attorneys' use of electronic devices (including mobile telephones, personal electronic devices, computers, and printers) within the Courthouse and its environs is governed by the Court's Standing Order M10-468, available at https://nysd.uscourts.gov/sites/default/files/pdf/standing-order-electronic-devices.pdf.  If required by the Standing Order, counsel seeking to bring a device into the Courthouse shall submit a copy of the Electronic Devices General Purpose Form, available at https://nysd.uscourts.gov/node/766, to the Court by e-mail at least 24 hours prior to the relevant trial or hearing.  Untimely requests may be denied on that basis alone.  If permitted by the Standing Order, mobile telephones are permitted inside the Courtroom, but they **must** be kept turned off at all times.  Non-compliance with this rule may result in forfeiture of the device for the remainder of the proceedings.

**ATTACHMENT A**

**DEFAULT JUDGMENT PROCEDURE**

1.  Obtain a Certificate of Default from the Clerk's Office for each defaulting party stating that no answer or response has been filed.

2.  Prepare an Order to Show Cause for default judgment and make the Order returnable before Judge Failla in Courtroom 618.  Leave blank the date and time of the conference. Judge Failla will set the date and time when she signs the Order.

3.  Provide the following supporting papers with the Order to Show Cause.

    a.  An attorney's affidavit setting forth:

        i.   the basis for entering a default judgment, including a description of the method and date of service of the Summons and Complaint;

        ii.  the procedural history beyond service of the Summons and Complaint, if any;

        iii. whether, if the default is applicable to fewer than all of the defendants, the Court may appropriately order a default judgment on the issue of damages prior to resolution of the entire action;

        iv.  the proposed damages and the basis for each element of damages, including interest, attorney's fees, and costs; and

        v.   the legal authority for why an inquest into damages would be unnecessary.

    b.  A proposed default judgment.

    c.  Copies of all of the pleadings.

    d.  A copy of the Affidavit of Service of the Summons and Complaint.

    e.  If failure to answer is the basis for the default, a Certificate of Default from the Clerk of Court.

4.  Bring the Order to Show Cause and supporting papers to the Orders and Judgments Clerk (Room 105, 40 Foley Square) for approval.

5.   After the Orders and Judgments Clerk approves the Order to Show Cause, promptly contact Chambers at (212) 805-0290 to arrange for delivery of the papers to Chambers for the Judge's signature.  Also bring a courtesy copy of the supporting papers to leave with Chambers.

6.   After the Judge signs the Order, serve a conforming copy of the Order and supporting papers on the defendant.  Chambers will retain the original signed Order for docketing purposes, but will supply you with a copy.

7.   At the same time, unless otherwise instructed by the Court, electronically file the Order to Show Cause and supporting papers via ECF, in accordance with the SDNY Electronic Case Filing Rules & Instructions, available at https://nysd.uscourts.gov/electronic-case-filing.

8.   Prior to the return date, file an affidavit of service, reflecting that the defendant was served with the Order to Show Cause and supporting papers, via ECF.

9.   Prior to the return date, take the proposed judgment, separately backed, to the Orders and Judgments Clerk for the Clerk's approval. The proposed judgment, including all damage and interest calculations, must be approved by the Clerk prior to the conference and then brought to the conference for the Judge's signature.

# EXHIBIT 005

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROVIER CARRINGTON, <br><br>                   Plaintiff, <br><br>       v. <br><br>BRIAN GRADEN, BRIAN GRADEN MEDIA, LLC, VIACOM INC., VIACOM INTERNATIONAL INC., PARAMOUNT PICTURES CORPORATION, BRAD GREY, BRAD GREY ESTATE, and BRAD ALAN GREY TRUST , <br><br>                   Defendants. | 18 Civ. 4609 <br><br> ORDER FOR FURTHER DISCOVERY |

KATHERINE POLK FAILLA, United States District Judge:

Defendants Brian Graden, Brian Graden Media, LLC, Viacom Inc., Viacom International Inc., Paramount Pictures Corporation, Brad Grey, Brad Grey Estate and Brad Alan Grey Trust (collectively, "Defendants"), having requested discovery regarding the authenticity of the emails attached as Exhibits 2-11 of the Amended Complaint (Dkt. #40) filed by Plaintiff Rovier Carrington ("Plaintiff"), and this Court having previously ordered such discovery (Dkt. #64);

NOW, in consideration of the materials submitted by all parties, and following the parties' court conference held on February 7, 2019, having found that Defendants have presented sufficient evidence to warrant further discovery;

IT IS HEREBY ORDERED that Defendants are permitted to serve Court-Ordered subpoenas on Google LLC ("Google"), Microsoft Corporation ("Microsoft"), and GoDaddy.com, LLC ("GoDaddy") for domain related information related to www.thecarringtondiaries.com and subscriber-related information for

the following email accounts, as set forth in Exhibits A-C: (1)

trendsetterrovheir@gmail.com; (2) roviercarrington@gmail.com; and (3)

Rovier@thecarringtondiaries.com (the "Accounts").

IT IS FURTHER ORDERED that, within fourteen (14) days of receipt of the

subpoenas, Google, Microsoft and GoDaddy shall provide responsive information

for such accounts.

IT IS FURTHER ORDERED that, within seven (7) days of the entry of this

Order, Plaintiff Rovier Carrington shall provide written consent to Google,

Microsoft and GoDaddy in the form attached hereto as Exhibit D, which shall

permit Google, Microsoft and GoDaddy to produce to FTI Consulting, Inc. ("FTI"),

at the address, 350 S. Grand Ave. Suite 3000, Los Angeles, California 90071, the

content of any and all available and/or recoverable email communications in the

above-referenced Accounts, including, without limitation, all emails recoverable

from deactivated or inactive Accounts, as well as all recoverable emails

previously deleted from the Accounts.  Plaintiff must file a copy of this written

consent with the Court within seven (7) days of the entry of this Order.  Plaintiff

is further ordered to cooperate (to the extent necessary) with Google's,

Microsoft's, and GoDaddy's recovery, collection and transmission of the content

of the above-referenced accounts to FTI.  Upon receipt of the content of the

above-referenced accounts, FTI shall search the content so produced for evidence

of any At-Issue Communications (as defined in the Court's August 7, 2018

Order, Dkt. # 64), and thereupon shall produce any and all At-Issue

Communications produced by Google, Microsoft and GoDaddy (and only such

At-Issue Communications), in original native format and with all accompanying metadata, together with a report of FTI's findings to Plaintiff and Defendants within seven (7) days of receipt of this information.

IT IS FURTHER ORDERED that Plaintiff shall provide to FTI, by February 28, 2019, Plaintiff's iPhone X previously identified by Plaintiff for mirror-imaging, whereupon FTI shall be permitted to forensically examine such mirror-image for evidence pertaining to the At-Issue Communications, including the transmission and/or deletion thereof, as well as non-content user activity associated with the Accounts and/or concerning the dates of operation of such device, and thereupon shall produce the results of such examination by providing any and all At-Issue Communications in original native format and with all accompanying metadata, together with a report of its findings concerning the foregoing examination to Plaintiff and Defendants within seven (7) days thereof.

SO ORDERED.

Dated:      February 13, 2019
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of New York

| | |
|---|---|
| Rovier Carrington | ) |
| *Plaintiff* | ) |
| v. | ) |
| Brian Graden et al. | ) |
| | ) |
| *Defendant* | ) |

Civil Action No.   18-cv-04609 (KPF)

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                      GoDaddy.com, LLC

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Schedule A attached hereto.

| Place: Russ August & Kabat | Date and Time: |
|---|---|
| 12424 Wilshire Boulevard, 12th Floor Los Angeles, California 90025 | 02/26/2019 10:00 am |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

SO ORDERED.

Date:   February 13, 2019

*CLERK OF COURT*

OR

*Signature of Clerk or Deputy Clerk*

HON. KATHERINE POLK FAILLA
UNITED STATES DISTRICT JUDGE

*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Brian Graden and Brian Graden Media, LLC                          , who issues or requests this subpoena, are:

Stanton Stein; 12424 Wilshire Boulevard, 12th Floor Los Angeles, California 90025
(310) 826-7474; lstein@raklaw.com

### Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 18-cv-04609 (KPF)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date: _____        _____

*Server's signature*

_____

*Printed name and title*

_____

*Server's address*

Additional information regarding attempted service, etc.:

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 50

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 51

## SCHEDULE A

## DEFINITIONS AND RULES OF CONSTRUCTION

1)      The definitions and rules of construction set forth in Rules 34 and 45 of the

Federal Rules of Civil Procedure, and Civil Rule 26.3 of the Local Rules for the United States

District Court for the Sothern District of New York are hereby incorporated and shall apply to

these Requests.

2)      "Communication(s)" shall mean the transmittal of information (in the form of

facts, ideas, inquiries or otherwise).

3)      "Rovier Carrington" shall mean the individual named as plaintiff in this Action,

and who is also known by various aliases, including, but not limited to, Trend Rovheir, Trend

Rovier, TieLonzo Rovheir, Rovier Jase Carrington, and Antwon Dwayne Smith.

4)      "Plaintiff" shall mean plaintiff Rovier Carrington and any representatives,

advisors, associates, or any other person acting on his behalf.

5)      "Document(s)" shall have the full meaning ascribed to it in Rule 34 of the Federal

Rules and includes "electronically stored information" ("ESI") as also defined in Rule 34.

Examples of documents include, without limitation, all writings in any form, call logs, calendars,

correspondence, diaries, manuals, memoranda, notes (including handwritten notes), reports,

records, drawings, graphs, charts, photographs, sound recordings, images, video recordings,

telephone records, Bloombergs, electronic mail messages, instant messages, spreadsheets,

databases, all other forms of electronic communication, and other data or data compilations,

including subscriber information, of whatever nature stored in any medium (including those from

which information can be obtained or translated if necessary into a reasonably useable form.)

For the avoidance of doubt, "document(s)" includes all originals of any nature whatsoever and

1

all non-identical copies thereof, whether different from the originals by reason of any notation made on such copies or otherwise.

6)      "Native format" with respect to any ESI shall mean the original electronic file format in which such ESI is stored or maintained, without alteration or conversion to another format, and with all original attributes and original metadata.

7)      "Person(s)" shall mean and include natural persons, firms, associations, corporations, institutions, partnerships, government agencies, or other organizations cognizable at law, and their agents and employees.

8)      To bring within the scope of these Definitions and Requests all information that might otherwise be construed to be outside of their scope, the following rules of construction apply:

a.  the masculine, feminine, or neuter pronoun shall not exclude other genders;

b.  the word "including" shall be read to mean including without limitation;

c.  the present tense shall be construed to include the past tense and vice versa;

d.  references to employees, officers, directors, or agents shall include both current and former employees, officers, directors, and agents;

e.  the use of the singular form of any word includes the plural and vice versa;

f.  "Concerning," "evidence," "refer," "relate to," "evidencing," "referring" or "relating to" any given subject means all documents which assess, concern, constitute, contain, describe, discuss, embody, evidence, identify, record, reflect, regard, show, state, refer or relate, directly or indirectly, in any way, to the subject matter identified;

g.  the terms "any," "all," and "each" shall be read to mean any, all, each and every; and

2

h. the connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Requests any information that might otherwise be construed to be outside their scope.

## **INSTRUCTIONS**

1) For the purpose of reading, interpreting, or construing the scope of these Requests, the terms used shall be given their most expansive and inclusive interpretation.

2) Unless otherwise indicated, the time period encompassed by these Requests is from January 1, 2010 through the present.

3) These Requests extend to all responsive documents or things that are in your possession, custody, or control, wherever located, regardless of whether they are possessed directly or indirectly by you or your agents, representatives, employees, accountants, lawyers, or other persons acting or purporting to act on your behalf.

4) A Request for a document or thing includes a request for any and all file folders or binders within which the document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document or thing in addition to the document or thing itself.

5) Produce all documents in their entirety, along with any attachments, drafts, and non-identical copies, including copies that differ due to handwritten notes or other notes or markings.

6) All documents should be produced as they are kept in the ordinary course of business, or shall be organized and labeled to correspond to the specific request(s) to which they are responsive. Specifically, in producing the documents requested herein, you shall produce the documents in the original file folders and file cartons in which they have been maintained, or attach a copy of the documents to copies of the file folders from which they came. The integrity and internal sequence of the requested documents within each folder shall not be disturbed or

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 54

commingled with the contents of another folder. All documents should be stored, clipped, stapled, or otherwise arranged in the same form and manner as they were found.

7)      All electronically stored information produced in response to these Requests shall be produced in their original electronic form (i.e. native format) on electronic media. All such items, including e-mails, shall be produced in the form in which it is ordinarily maintained with original electronic folder structure, folder names, and associated metadata, and should include data sufficient to reasonably indicate the following: (i) which request(s) the item is responsive to; (ii) where items (including attachments) and folders begin and end; (iii) the original file name; and (iv) the original time stamps and attributes.

8)      If you object to any Request, state with specificity the grounds for each such objection. If you object to a portion of a Request, provide all documents and things requested by any portion of the Request to which you do not object and specifically identify the respect in which the remainder of the Request is allegedly objectionable.

9)      If any portion of any document or thing is responsive to any Request, the entire document or thing must be produced.

10)    If there are no documents or things responsive to any particular Request or part thereof, you shall state so in writing.

11)    If you withhold any document or thing, or any portion of any document or thing, under a claim of privilege, immunity, or protection, including the attorney-client privilege or work product doctrine, you shall provide a written privilege log that sets forth the information required by Federal Rule of Civil Procedure 26(b)(5). If you redact information from a document produced in response to a Request, you shall identify the redaction by stamping the word

"Redacted" on the document at each place where information has been redacted and separately log each redaction on a written privilege log.

12) If any document or thing responsive to these Requests has been but is no longer in your possession, custody, or control because it has been destroyed, discarded, or placed outside of your custody or control, you shall furnish a list specifying each such document or thing and setting forth the type of document or thing, the general subject matter of the document or thing, the date of the document, the existence and nature of any attachments or appendices, the name(s) and address(es) of each person who prepared, received, viewed, or has or has had possession, custody, or control of the document or thing, the date on which the document or thing was destroyed, discarded, or placed outside of your possession, custody, or control, the manner in which and reason for which the document or thing was destroyed, discarded, or placed outside of your possession, and the person(s) authorizing and carrying out such destruction or discard.

13) These Requests shall be deemed continuing in nature and therefore, in accordance with Federal Rule of Civil Procedure 26(e), require you to promptly supplement responses if you learn of additional information responsive to these Requests between the time of the initial response to these Requests and the time of final judgment in this Action.

14) Unless instructed otherwise, each Request shall be construed independently and not by reference to any other Request for the purpose of limitation or exclusion.

15) These Requests are propounded without prejudice to, or waiver of, Defendants' right to conduct further discovery at a later date relevant to any issue raised in the Complaint in this Action or in any other relevant pleading.

5

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 56

## <u>REQUESTS FOR PRODUCTION</u>

**REQUEST NO. 1:**

    All non-content information related to the domain name www.thecarringtondiaries.com
and/or the subscriber associated with the email account Rovier@thecarringtondiaries.com,
including, without limitation:

1. Name(s);

2. Address(es) and other contact information;

3. Associated backup or account recovery contact information, including telephone
   number(s) and other email address(es);

4. IP addresses associated with all account logins, together with session dates, times and
   durations;

5. Local and long distance telephone connection records;

6. Length of service for each of the above-identified domain and email accounts
   (including start date and, if any, deactivation date);

7. Other types of service utilized by the domain or associated subscribers; and

8. Other subscriber number or identity, including any temporarily assigned network
   address.

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 57

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of New York

|  |  |  |
|---|---|---|
| Rovier Carrington | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   18-cv-04609 (KPF) |
| Brian Graden et al. | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                    Microsoft Corporation

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Schedule A attached hereto.

| Place: Russ August & Kabat<br>12424 Wilshire Boulevard, 12th Floor<br>Los Angeles, California 90025 | Date and Time:<br>02/26/2019 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
|  |  |

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

SO ORDERED.

Date: February 13, 2019

|  |  |  |
|---|---|---|
| *CLERK OF COURT* | OR | *Katherine Polk Failla* |
| | | HON. KATHERINE POLK FAILLA<br>UNITED STATES DISTRICT JUDGE |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Brian Graden and Brian Graden Media, LLC _____, who issues or requests this subpoena, are:

Stanton Stein; 12424 Wilshire Boulevard, 12th Floor Los Angeles, California 90025
(310) 826-7474; lstein@raklaw.com

**Notice to the person who issues or requests this subpoena**
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   18-cv-04609 (KPF)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date: _____                    _____
                                                                    *Server's signature*

                                                        _____
                                                                    *Printed name and title*

                                                        _____
                                                                    *Server's address*

Additional information regarding attempted service, etc.:

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 59

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**SCHEDULE A**

**DEFINITIONS AND RULES OF CONSTRUCTION**

1)      The definitions and rules of construction set forth in Rules 34 and 45 of the Federal Rules of Civil Procedure, and Civil Rule 26.3 of the Local Rules for the United States District Court for the Sothern District of New York are hereby incorporated and shall apply to these Requests.

2)      "Communication(s)" shall mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

3)      "Rovier Carrington" shall mean the individual named as plaintiff in this Action, and who is also known by various aliases, including, but not limited to, Trend Rovheir, Trend Rovier, TieLonzo Rovheir, Rovier Jase Carrington, and Antwon Dwayne Smith.

4)      "Plaintiff" shall mean plaintiff Rovier Carrington and any representatives, advisors, associates, or any other person acting on his behalf.

5)      "Document(s)" shall have the full meaning ascribed to it in Rule 34 of the Federal Rules and includes "electronically stored information" ("ESI") as also defined in Rule 34. Examples of documents include, without limitation, all writings in any form, call logs, calendars, correspondence, diaries, manuals, memoranda, notes (including handwritten notes), reports, records, drawings, graphs, charts, photographs, sound recordings, images, video recordings, telephone records, Bloombergs, electronic mail messages, instant messages, spreadsheets, databases, all other forms of electronic communication, and other data or data compilations, including subscriber information, of whatever nature stored in any medium (including those from which information can be obtained or translated if necessary into a reasonably useable form.) For the avoidance of doubt, "document(s)" includes all originals of any nature whatsoever and

1

all non-identical copies thereof, whether different from the originals by reason of any notation made on such copies or otherwise.

      6)     "Native format" with respect to any ESI shall mean the original electronic file format in which such ESI is stored or maintained, without alteration or conversion to another format, and with all original attributes and original metadata.

      7)     "Person(s)" shall mean and include natural persons, firms, associations, corporations, institutions, partnerships, government agencies, or other organizations cognizable at law, and their agents and employees.

      8)     To bring within the scope of these Definitions and Requests all information that might otherwise be construed to be outside of their scope, the following rules of construction apply:

        a.   the masculine, feminine, or neuter pronoun shall not exclude other genders;

        b.   the word "including" shall be read to mean including without limitation;

        c.   the present tense shall be construed to include the past tense and vice versa;

        d.   references to employees, officers, directors, or agents shall include both current and former employees, officers, directors, and agents;

        e.   the use of the singular form of any word includes the plural and vice versa;

        f.   "Concerning," "evidence," "refer," "relate to," "evidencing," "referring" or "relating to" any given subject means all documents which assess, concern, constitute, contain, describe, discuss, embody, evidence, identify, record, reflect, regard, show, state, refer or relate, directly or indirectly, in any way, to the subject matter identified;

g.  the terms "any," "all," and "each" shall be read to mean any, all, each and every; and

h.  the connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Requests any information that might otherwise be construed to be outside their scope.

## <u>INSTRUCTIONS</u>

1)  For the purpose of reading, interpreting, or construing the scope of these Requests, the terms used shall be given their most expansive and inclusive interpretation.

2)  Unless otherwise indicated, the time period encompassed by these Requests is from January 1, 2010 through the present.

3)  These Requests extend to all responsive documents or things that are in your possession, custody, or control, wherever located, regardless of whether they are possessed directly or indirectly by you or your agents, representatives, employees, accountants, lawyers, or other persons acting or purporting to act on your behalf.

4)  A Request for a document or thing includes a request for any and all file folders or binders within which the document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document or thing in addition to the document or thing itself.

5)  Produce all documents in their entirety, along with any attachments, drafts, and non-identical copies, including copies that differ due to handwritten notes or other notes or markings.

6)  All documents should be produced as they are kept in the ordinary course of business, or shall be organized and labeled to correspond to the specific request(s) to which they are responsive. Specifically, in producing the documents requested herein, you shall produce the documents in the original file folders and file cartons in which they have been maintained, or

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 63

attach a copy of the documents to copies of the file folders from which they came. The integrity

and internal sequence of the requested documents within each folder shall not be disturbed or

commingled with the contents of another folder. All documents should be stored, clipped,

stapled, or otherwise arranged in the same form and manner as they were found.

7)       All electronically stored information produced in response to these Requests shall

be produced in their original electronic form (i.e. native format) on electronic media. All such

items, including e-mails, shall be produced in the form in which it is ordinarily maintained with

original electronic folder structure, folder names, and associated metadata, and should include

data sufficient to reasonably indicate the following: (i) which request(s) the item is responsive to;

(ii) where items (including attachments) and folders begin and end; (iii) the original file name;

and (iv) the original time stamps and attributes.

8)       If you object to any Request, state with specificity the grounds for each such

objection. If you object to a portion of a Request, provide all documents and things requested by

any portion of the Request to which you do not object and specifically identify the respect in

which the remainder of the Request is allegedly objectionable.

9)       If any portion of any document or thing is responsive to any Request, the entire

document or thing must be produced.

10)      If there are no documents or things responsive to any particular Request or part

thereof, you shall state so in writing.

11)      If you withhold any document or thing, or any portion of any document or thing,

under a claim of privilege, immunity, or protection, including the attorney-client privilege or

work product doctrine, you shall provide a written privilege log that sets forth the information

required by Federal Rule of Civil Procedure 26(b)(5). If you redact information from a document

produced in response to a Request, you shall identify the redaction by stamping the word "Redacted" on the document at each place where information has been redacted and separately log each redaction on a written privilege log.

12)     If any document or thing responsive to these Requests has been but is no longer in your possession, custody, or control because it has been destroyed, discarded, or placed outside of your custody or control, you shall furnish a list specifying each such document or thing and setting forth the type of document or thing, the general subject matter of the document or thing, the date of the document, the existence and nature of any attachments or appendices, the name(s) and address(es) of each person who prepared, received, viewed, or has or has had possession, custody, or control of the document or thing, the date on which the document or thing was destroyed, discarded, or placed outside of your possession, custody, or control, the manner in which and reason for which the document or thing was destroyed, discarded, or placed outside of your possession, and the person(s) authorizing and carrying out such destruction or discard.

13)     These Requests shall be deemed continuing in nature and therefore, in accordance with Federal Rule of Civil Procedure 26(e), require you to promptly supplement responses if you learn of additional information responsive to these Requests between the time of the initial response to these Requests and the time of final judgment in this Action.

14)     Unless instructed otherwise, each Request shall be construed independently and not by reference to any other Request for the purpose of limitation or exclusion.

15)     These Requests are propounded without prejudice to, or waiver of, Defendants' right to conduct further discovery at a later date relevant to any issue raised in the Complaint in this Action or in any other relevant pleading.

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 65

## <u>REQUESTS FOR PRODUCTION</u>

**REQUEST NO. 1:**

All non-content subscriber information related to the subscriber associated with the email account Rovier@thecarringtondiaries.com, including, without limitation:

1. Name(s);

2. Address(es) and other contact information;

3. Associated backup or account recovery contact information, including telephone number(s) and other email address(es);

4. IP addresses associated with all account logins, together with session dates, times and durations;

5. Local and long distance telephone connection records;

6. Length of service for each of the above-identified email accounts (including start date and, if any, deactivation date);

7. Other types of service utilized by the associated subscribers; and

8. Other subscriber number or identity, including any temporarily assigned network address.

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 66

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of New York

| Rovier Carrington | ) | |
|---|---|---|
| *Plaintiff* | ) | Civil Action No.  18-cv-04609 (KPF) |
| v. | ) | |
| Brian Graden et al. | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                     Google LLC

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Schedule A attached hereto.

| Place: Russ August & Kabat<br>12424 Wilshire Boulevard, 12th Floor<br>Los Angeles, California 90025 | Date and Time:<br><br>02/26/2019 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.   SO ORDERED.

Date:    February 13, 2019

| *CLERK OF COURT* | | OR | |
|---|---|---|---|
| | | | *Katherine Polk Failla* |
| _____ | | | HON. KATHERINE POLK FAILLA |
| *Signature of Clerk or Deputy Clerk* | | | UNITED STATES DISTRICT JUDGE |
| | | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Brian Graden and Brian Graden Media, LLC_____, who issues or requests this subpoena, are:

Stanton L. Stein; 12424 Wilshire Boulevard, 12th Floor Los Angeles, California 90025
(310) 826-7474; lstein@raklaw.com

**Notice to the person who issues or requests this subpoena**
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   18-cv-04609 (KPF)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____  on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ 

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____ .      _____
                                              *Server's signature*

                                              _____
                                              *Printed name and title*

                                              _____
                                              *Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2) For Other Discovery.** A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2) Command to Produce Materials or Permit Inspection.**
    **(A) Appearance Not Required.** A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B) Objections.** A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3) Quashing or Modifying a Subpoena.**
    **(A) When Required.** On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B) When Permitted.** To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C) Specifying Conditions as an Alternative.** In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
    **(A) Documents.** A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B) Form for Producing Electronically Stored Information Not Specified.** If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C) Electronically Stored Information Produced in Only One Form.** The person responding need not produce the same electronically stored information in more than one form.
    **(D) Inaccessible Electronically Stored Information.** The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2) Claiming Privilege or Protection.**
    **(A) Information Withheld.** A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B) Information Produced.** If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**SCHEDULE A**

**DEFINITIONS AND RULES OF CONSTRUCTION**

1)      The definitions and rules of construction set forth in Rules 34 and 45 of the

Federal Rules of Civil Procedure, and Civil Rule 26.3 of the Local Rules for the United States

District Court for the Sothern District of New York are hereby incorporated and shall apply to

these Requests.

2)      "Communication(s)" shall mean the transmittal of information (in the form of

facts, ideas, inquiries or otherwise).

3)      "Rovier Carrington" shall mean the individual named as plaintiff in this Action,

and who is also known by various aliases, including, but not limited to, Trend Rovheir, Trend

Rovier, TieLonzo Rovheir, Rovier Jase Carrington, and Antwon Dwayne Smith.

4)      "Plaintiff" shall mean plaintiff Rovier Carrington and any representatives,

advisors, associates, or any other person acting on his behalf.

5)      "Document(s)" shall have the full meaning ascribed to it in Rule 34 of the Federal

Rules and includes "electronically stored information" ("ESI") as also defined in Rule 34.

Examples of documents include, without limitation, all writings in any form, call logs, calendars,

correspondence, diaries, manuals, memoranda, notes (including handwritten notes), reports,

records, drawings, graphs, charts, photographs, sound recordings, images, video recordings,

telephone records, Bloombergs, electronic mail messages, instant messages, spreadsheets,

databases, all other forms of electronic communication, and other data or data compilations,

including subscriber information, of whatever nature stored in any medium (including those from

which information can be obtained or translated if necessary into a reasonably useable form.)

For the avoidance of doubt, "document(s)" includes all originals of any nature whatsoever and

1

all non-identical copies thereof, whether different from the originals by reason of any notation made on such copies or otherwise.

6)      "Native format" with respect to any ESI shall mean the original electronic file format in which such ESI is stored or maintained, without alteration or conversion to another format, and with all original attributes and original metadata.

7)      "Person(s)" shall mean and include natural persons, firms, associations, corporations, institutions, partnerships, government agencies, or other organizations cognizable at law, and their agents and employees.

8)      To bring within the scope of these Definitions and Requests all information that might otherwise be construed to be outside of their scope, the following rules of construction apply:

    a.   the masculine, feminine, or neuter pronoun shall not exclude other genders;

    b.   the word "including" shall be read to mean including without limitation;

    c.   the present tense shall be construed to include the past tense and vice versa;

    d.   references to employees, officers, directors, or agents shall include both current and former employees, officers, directors, and agents;

    e.   the use of the singular form of any word includes the plural and vice versa;

    f.   "Concerning," "evidence," "refer," "relate to," "evidencing," "referring" or "relating to" any given subject means all documents which assess, concern, constitute, contain, describe, discuss, embody, evidence, identify, record, reflect, regard, show, state, refer or relate, directly or indirectly, in any way, to the subject matter identified;

2

g. the terms "any," "all," and "each" shall be read to mean any, all, each and every; and

h. the connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Requests any information that might otherwise be construed to be outside their scope.

## **INSTRUCTIONS**

1) For the purpose of reading, interpreting, or construing the scope of these Requests, the terms used shall be given their most expansive and inclusive interpretation.

2) Unless otherwise indicated, the time period encompassed by these Requests is from January 1, 2010 through the present.

3) These Requests extend to all responsive documents or things that are in your possession, custody, or control, wherever located, regardless of whether they are possessed directly or indirectly by you or your agents, representatives, employees, accountants, lawyers, or other persons acting or purporting to act on your behalf.

4) A Request for a document or thing includes a request for any and all file folders or binders within which the document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document or thing in addition to the document or thing itself.

5) Produce all documents in their entirety, along with any attachments, drafts, and non-identical copies, including copies that differ due to handwritten notes or other notes or markings.

6) All documents should be produced as they are kept in the ordinary course of business, or shall be organized and labeled to correspond to the specific request(s) to which they are responsive. Specifically, in producing the documents requested herein, you shall produce the documents in the original file folders and file cartons in which they have been maintained, or

3

attach a copy of the documents to copies of the file folders from which they came. The integrity

and internal sequence of the requested documents within each folder shall not be disturbed or

commingled with the contents of another folder. All documents should be stored, clipped,

stapled, or otherwise arranged in the same form and manner as they were found.

7)      All electronically stored information produced in response to these Requests shall

be produced in their original electronic form (i.e. native format) on electronic media. All such

items, including e-mails, shall be produced in the form in which it is ordinarily maintained with

original electronic folder structure, folder names, and associated metadata, and should include

data sufficient to reasonably indicate the following: (i) which request(s) the item is responsive to;

(ii) where items (including attachments) and folders begin and end; (iii) the original file name;

and (iv) the original time stamps and attributes.

8)      If you object to any Request, state with specificity the grounds for each such

objection. If you object to a portion of a Request, provide all documents and things requested by

any portion of the Request to which you do not object and specifically identify the respect in

which the remainder of the Request is allegedly objectionable.

9)      If any portion of any document or thing is responsive to any Request, the entire

document or thing must be produced.

10)     If there are no documents or things responsive to any particular Request or part

thereof, you shall state so in writing.

11)     If you withhold any document or thing, or any portion of any document or thing,

under a claim of privilege, immunity, or protection, including the attorney-client privilege or

work product doctrine, you shall provide a written privilege log that sets forth the information

required by Federal Rule of Civil Procedure 26(b)(5). If you redact information from a document

produced in response to a Request, you shall identify the redaction by stamping the word

"Redacted" on the document at each place where information has been redacted and separately

log each redaction on a written privilege log.

12)     If any document or thing responsive to these Requests has been but is no longer in

your possession, custody, or control because it has been destroyed, discarded, or placed outside

of your custody or control, you shall furnish a list specifying each such document or thing and

setting forth the type of document or thing, the general subject matter of the document or thing,

the date of the document, the existence and nature of any attachments or appendices, the name(s)

and address(es) of each person who prepared, received, viewed, or has or has had possession,

custody, or control of the document or thing, the date on which the document or thing was

destroyed, discarded, or placed outside of your possession, custody, or control, the manner in

which and reason for which the document or thing was destroyed, discarded, or placed outside of

your possession, and the person(s) authorizing and carrying out such destruction or discard.

13)     These Requests shall be deemed continuing in nature and therefore, in accordance

with Federal Rule of Civil Procedure 26(e), require you to promptly supplement responses if you

learn of additional information responsive to these Requests between the time of the initial

response to these Requests and the time of final judgment in this Action.

14)     Unless instructed otherwise, each Request shall be construed independently and

not by reference to any other Request for the purpose of limitation or exclusion.

15)     These Requests are propounded without prejudice to, or waiver of, Defendants'

right to conduct further discovery at a later date relevant to any issue raised in the Complaint in

this Action or in any other relevant pleading.

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 74

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1:**

All non-content subscriber information related to the subscribers associated with the email accounts trendsetterrovheir@gmail.com and roviercarrington@gmail.com, including, without limitation:

1. Name(s);

2. Address(es) and other contact information;

3. Associated backup or account recovery contact information, including telephone number(s) and other email address(es);

4. IP addresses associated with all account logins, together with session dates, times and durations;

5. Local and long distance telephone connection records;

6. Length of service for each of the above-identified email accounts (including start date and, if any, deactivation date);

7. Other types of service utilized by the associated subscribers; and

8. Other subscriber number or identity, including any temporarily assigned network address.

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 75

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ROVIER CARRINGTON,

                    Plaintiff,

          -against-

BRIAN GRADEN, BRIAN GRADEN
MEDIA, LLC, VIACOM INC., VIACOM
INTERNATIONAL INC., PARAMOUNT
PICTURES CORPORATION, BRAD GREY,
BRAD GREY ESTATE, BRAD ALAN GREY
TRUST

                    Defendants.

Case No. 18-cv-04609 (KPF)

<u>**WRITTEN CONSENT TO ACCESS CONTENTS OF EMAIL COMMUNICATIONS**</u>

  I, ROVIER CARRINGTON, plaintiff in the above-captioned matter, hereby declare the

following under penalty of perjury:

  1. At all relevant times, I have been the subscriber and user associated with the following

three email accounts:

    a. trendsetterrovheir@gmail.com;

    b. roviercarrington@gmail.com; and

    c. Rovier@thecarringtondiaries.com.

  2. Pursuant to U.S.C. § 2702(b)(3), and in connection with the above-captioned matter, I

hereby consent to the disclosure of the content of the above-referenced email accounts to FTI

Consulting, Inc. at the address, 350 S. Grand Ave. Suite 3000, Los Angeles, California 90071.

  3. Accordingly, I authorize Google LLC ("Google") and Microsoft Corporation

("Microsoft"), the internet service providers associated with the above-referenced accounts, as

well as GoDaddy.com, LLC ("GoDaddy"), the domain host associated with the above-referenced

accounts, to disclose and produce all available and/or recoverable content of the above-

referenced email accounts (including, but not limited to, all sent, received, stored, draft, and

1

deleted email communications in the possession, custody or control of  Google, Microsoft,

and/or GoDaddy) to FTI Consulting, Inc. at the address, 350 S. Grand Ave. Suite 3000, Los

Angeles, California 90071.


Dated: Los Angeles, California                Duly sworn,
           February __, 2019


                                                By:   _____
                                                        Rovier Carrington


2

# EXHIBIT 006

# Rovier Carrington

May 20, 2019

**Via Email**: (Failla_NYSDChambers@nysd.uscourts.gov)
The Honorable Katherine Polk Failla
United States District Court - Southern District of New York
40 Foley Square, Courtroom 618

     RE:    *Carrington v. Graden et al, Case No. 1:18-cv-04609-KPF*

Dear Judge Failla,

Please consider this letter my:

1.    Notice of Defendants', and Defendants' attorneys', Obstruction of 2-13-19 Court Order for Further Discovery (the "2-13-19 Order") [Dckt #102] in violation of 18 U.S.C. Section 1509;
2.    Request to hold Defendants, and Defendants' attorneys', in Contempt of the 2-13-19 Order;
3.    Request to void the 4-12-19 Court's Order [Dckt #116] procured by Defendants', and Defendants' attorneys', fraud; and
4.    Request for other relief.

## I.    Introduction.

The Defendants have finally showed their true colors.

The emails are authentic. However, I never needed the emails to prevail on my case. This case is about (i) multiple rapes/sexual assaults, by multiple Defendants, over a time span of years; and (ii) claims against the Defendants arising out of television shows that I created. I have dozens and dozens of witnesses. The Court is aware of at least six witnesses *vis-à-vis* their declarations[1] filed with the Court [Dckt #76-1, Ex. 10]. The emails help my case, but they are not necessary.

On the other hand, the emails are extremely damaging to Defendants' case (and reputations), they create substantial liability, and potential felonious criminal liability[2].

---

[1] Copies of my six witnesses declarations, and my declaration and my supplemental declarations are attached as Exhibit A for the Court's convenience.

[2] Exhibit 8 to the Amended Complaint is an email dated 5-15-15 from Defendant Brian Graden to me wherein he states: *"Babe, all I think about is pounding you like I did when you were a boy. Daddy owns you. My boy… :)"*. Mr. Graden is referring to the first time I met him in the Summer of 2006. That evening at his residence in Hollywood Hills, CA. Mr. Graden slipped the drug GHB into my drink and raped me – *when I was a minor*. Under CA Penal Code, Section 803(f), Mr. Graden can still be prosecuted for statutory rape with aggravated assault because there is corroborate admissible evidence that exists to prove Mr. Graden's crime. Exhibit 8 is one piece of corroborating evidence, by way of a written admission, of Mr. Graden's crime. Further, any of Defendants' attorneys who were aware of Mr. Graden's

1

The Defendants **need** to have the emails perceived as unauthentic.  Defendants cannot even permit *normal discovery* to occur or its *game-over* for them.  Too many witnesses, too much admissible evidence.

Defendants had the means to access my email accounts and deleted the emails. Defendants devised a sophisticated, well-planned defense strategy (supported by existing case law) to solve their email problem, and get them out of the case – *unscathed:* (i) send preservation of E-Discovery letter, (ii) challenge authenticity; (iii) hack, delete emails, and cover trail (iv) stay this action pending the resolution of email authenticity preventing all other discovery; (v) seek discovery knowing I could no longer produce the emails in their native form; (vi) blame me for deletion every time discovery result were fruitless, and (vii) then seek terminating sanctions.  However, Defendants' strategy is also illegal, unethical, and is a fraud on the Court – *and it almost worked.*

When my previous counsel informed the Court and the Defendants that: (1) Defendant Brian Graden had the means to access all three of my email accounts; and (2) we had knowledge of hack - the Court authorized subpoenas that instructed Google, Microsoft and GoDaddy to provide documents directly to FTI for FTI to provide reports of its findings.

The Court indicated that the subpoenas could reveal the IP addresses and information that will allow FTI to determine who was responsible for the hacks and deletion of the emails.

*Desperate people do desperate things*:

After the Court issued its 2-13-19 Order, Defendants, and Defendants' attorneys, Obstructed the 2-13-19 Order in violation of 18 U.S.C. Section 1509.  Specifically, Defendants egregiously violated the 2-13-19 Order by:

      1.    *Intercepting* and the documents responsive to the subpoenas issued to GoDaddy, Microsoft, and one of the two email accounts for Google;

      2.    *Withholding* the documents from FTI, thus preventing FTI from performing its three Court ordered unbiased reports;

      3.    *Concealing* the documents for approximately 35 days from me, the Court, and FTI causing unnecessary delay in contravention of the expedited schedule contained in the 2-13-19 Order – and Defendants *only* revealed that they had the documents *when they had to*; and

      4.    *Misusing* the information in the *alleged unaltered* documents by fabricating evidence, making intentionally false and misleading statements, and using false citations - in order to make *feigned definitive conclusions* - while they are actually mere *self-serving and unsubstantiated conjecture.*

---

email in Exhibit 8, and now claim it does not exist, are Accessories After-the-Fact.  Mr. Graden has a compelling reason to hack, delete, and lie; and he has even a more compelling reason *not* to submit a declaration in this lawsuit.  A copy of Exhibit 8 is attached as Exhibit B for the Court's convenience.

Defendants 4-9-19 and 4-10-19 Motion Letters were engineered to intentionally mislead the Court, and paint themselves in a positive light - as victims, while disparaging me, in the press.[3] Defendants' conduct is repugnant.

Defendants made a calculated business decision. A cost/risk v. benefit analysis. Whether to violate the 2-13-19 Order and make false representations to the Court in order to avoid liability, and publicly protect their images amidst the growing number of gay sex scandals emerging in Hollywood after the "Me Too" movement started; OR deal with whatever ramifications this Court would shell out for their illegal conduct – *if* they got caught by an *In Pro Se* Plaintiff – without access to his file. Defendants chose the latter; *and* they got caught.

As for Defendants' veteran attorneys, they advised and permitted their clients to willfully disobey the 2-13-19 Order. Further, Defendants' attorneys were active participants in the contempt of the 2-13-19 Order, and subsequent fraudulent conduct.

Defendants' actions can perhaps best be described as: "*Defendants' campaign to perpetrate a fraud on the Court that Plaintiff has perpetrated a fraud on the Court*". Defendants have thumb their noses at the judicial process. Moreover, Defendants have made a mockery of this Court-room. By the time the Court is done reading this letter, the Defendants' substantiated wrongful and deceptive conduct will shock the conscious of the Court.

## II.     The 2-13-19 Order and its attached Consent Form.

### 1.     Discussions leading up to the 2-13-19 Order.

#### A.     The September 18, 2018 Hearing.

At the hearing on September 18, 2018, regarding the discussions about the Google subpoena, the Court addressed in the issue of the "hack" that occurred on May 24, 2018, and subsequent deletion of the emails authored by Defendant Brian Graden listed in Exhibits 8, 9, and 10 of the At-Issue Communications [Dckt #86, Transcript of 9-18-19 Hearing]. Specifically:

The Court expressed its skepticism asking one of Defendant Brian Graden's counsel, Diana Sanders, Esq., if Mr. Graden ever had the capability to access my email accounts in light of my long relationship with Mr. Graden:

> "*But you're saying to me, as an officer of the court, [Brian Graden] never, not ever, was given or otherwise obtained the information that would permit him to*

---

[3] A copy of the 4-10-19 article by Variety Magazine discussing Defendants' 4-10-19 Motion Letter that I obtained online just a few hours after Defendants filed their 4-10-19 Motion Letter is attached as Exhibit "C". A copy of an article the 4-11-19 Hollywood Reporter discussing Defendants' 4-10-19 Motion Letter that I obtained online is attached as Exhibit "D".

3

*access any of Mr. Carrington's e-mail accounts?"* [Dckt #86, pg. 31, lns. 23-25; pg. 32, ln. 1].

The Court stated that a subpoena to Google might:

> *"give you IP addresses and information that will allow us to figure out who accessed what and we either will or will not be able to rule out Mr. Graden or anyone else as the putative hacker."* [pg. 28, lns. 20-23].

My previous counsel expressed my concern that, if the documents responsive to the subpoenas would go directly to the Defendants, the Defendants could obtain (and misuse) information beyond the At-Issue Communications. Thus, security measures should be in place with whoever receives the documents. Specifically, my previous counsel stated that:

> *"[we'll] we want to keep the contents confidential so we can provide it to the e-discovery vendor to the extent that there is certain information that is irrelevant to this case because if [Defendants] go into the account they may, you know, obtain more than just the at-issue communications."* – and *"to ensure that there is some type of security around who receives it as opposed to the parties."* [pg. 48, lns. 19-23; pg. 49, lns. 15-16].

Thereafter, the Court further expressed its concern by stating:

> *"I also don't like and am concerned about the way in which this is evolving, that I'm being given one explanation and then being given another explanation, and then still another. They are not yet fantastical, but they are also beginning to strain credulity."* [pg. 67, lns. 5-9]

The Court admonished the parties, and stated that:

> ***"[it doesn't] want anyone touching what comes from Google."*** [pg. 49, lns. 1-3].

My previous counsel asked the Court if the Court could directly receive the documents, and the Court denied the request explaining that the Court is not FTI. The Court stated that it did not think that the Court had technical capability to interpret and analyze such data. Specifically, my previous counsel and the Court stated:

> "MR LANDAU: *Your honor is there a way that Google can supply the court directly?*
> THE COURT: *To me?*
> MR. LANDAU: *Well- -*
> THE COURT: *No.*
> MR. LANDAU: *To the tech department here.*
> THE COURT: *No. With all respect to our tech department, I don't want them - - I don't know that they have the capability of doing this. And why would - - no - -*

4

MR. LANDAU:  *OK.*

THE COURT:  *- - is the short answer.  We are not FTI and I'm not going to make myself that."* [pg. 60, lns. 7-18].

The Court asked the Defendants if they were amenable for FTI to directly receive the documents responsive to the subpoenas.  The Defendants agreed, and specifically stated:

> *"What we propose in our letter, Judge, and I'm sensitive to that, is that Google would be **directed to turn over the content to FTI** and we handle it using the same protocol. So essentially FTI would conduct the same searches as a neutral e-discovery vendor and would look in the trendsetter account for any evidence of the at-issue communications. On our side we're fine with that. Because all we're looking to do is focus on authentication. We want to keep this as narrow as possible."* [pg. 59, lns. 22-25; pg. 60, lns. 1-5].

Last, the Court stated that it was:

> ***"authorizing the subpoena to Google with the contents to be delivered to the FTI."*** [pg. 67, lns. 10-14].

### B.     The September 26, 2018 Letter signed by all Defendants' counsel.

On September 26, 2018, Defendants filed a letter, *signed by all of Defendants' counsel*, regarding the proposed Order for Further Discovery wherein all Defendants agreed that the documents responsive to the Google and Microsoft subpoenas will go directly to FTI. Specifically, Defendants' letter stated:

> "(2) provides for **Plaintiff's authorization to have Google and Microsoft turn over the available and recoverable emails in Plaintiff's three known emails accounts *to FTI*,** which in turn is directed to locate any At-Issue Communications in those emails and produce them in native format to the parties, together with a report of its findings." [Dckt #81].

### 2.     The Express Terms of the 2-13-19 Order and its Expedited Scheduled.

After I filed my Request for Dismissal without Prejudice on January 18, 2019 [Dckt #95], the Court withheld granting my Request for Dismissal without Prejudice.  Instead, the Court issued the 2-13-19 Order, that set forth an expedited schedule, which stated that all documents responsive the Google, Microsoft, and GoDaddy subpoenas were to go directly to FTI.  Specifically, the 2-13-19 Order, expressly states that:

> **A.**     "within 14 days of receipt of the subpoenas, Google, Microsoft and GoDaddy shall provide responsive information for such accounts" [Dckt #102, pg. 2, para 1];

5

**B.** "Plaintiff… shall provide written consent to Google, Microsoft, and GoDaddy,…which shall permit Google, Microsoft, and GoDaddy to **produce to FTI**… at the address…"[Dckt #102, pg. 2, para 2]; and

**C.** "Upon receipt of content of the… accounts, FTI shall search the content so produced of any At-Issue Communications, and thereupon shall produce any and all At-Issue Communications produced by Google, Microsoft and GoDaddy **(and only such At-Issue Communications)**, in original native format and with all accompanying metadata, together with **a report of FTI's findings to Plaintiff and Defendants** [Dckt #102, pgs. 2-3, para 2].

### 3.   The Consent Form only authorizes FTI to receive the documents responsive to the Google, Microsoft, and GoDaddy subpoenas.

On February 27, 2019, I signed a Consent Form for Google, Microsoft, and GoDaddy to disclose and produce all available and/or recoverable content to my emails accounts only **"to FTI Consulting, Inc."** [Dckt #118].  I would have never signed the Consent Form if the information regarding my email accounts were to be produced to the Defendants – and for good cause – Defendants intercepted the documents used the information from the documents to create fabricated information that I deleted emails as shown below.

## III.   Relevant Procedural History from February 26, 2019 through April 15, 2019.

### 1.   Defendants intercepted and concealed the Withheld Documents responsive to the Google, Microsoft, and GoDaddy subpoenas.

Defendant Brian Graden's attorney, Mr. Larry Stein, Esq., wrongfully intercepted the documents responsive to the three subpoenas as follows:  **(i) on 3-4-19**, Larry Stein, Esq. intercepted Microsoft's documents, **(ii) on 3-5-19**, Larry Stein, Esq. intercepted GoDaddy's documents, and **(iii) on 3-11-19**, Larry Stein, Esq. intercepted the Google's documents for trendsetterrovheir@gmail.com (the "Withheld Documents").

Larry Stein, Esq. was not able to intercept documents responsive to the Google subpoena for my roviercarrington@gmail.com because that account was still active.  **On 3-11-19**, Google sent me an email asking if I wanted to object to the subpoena they received for my roviercarrington@gmail.com account.[4]  **On 3-13-19**, Google's counsel informed Larry Stein, Esq. that it would not be producing documents earlier 3-21-19 because I had an opportunity to object to the subpoena.  However, **on 3-15-19**, I sent Google an email stating that *I would not object to the subpoena for roviercarrington@gmail.com as long as Google was in strict compliance with the 2-13-19 Order. In particular, that the responsive documents be produced directly to FTI, and not the Defendants.*  As a result,

---

[4] Google did not send an email to me asking if I wanted to object to the subpoena for my TrendsetterRovheir@gmail.com because that email account was not active (and thus Google was unable to give me notice).

Larry Stein was not able to intercept documents responsive to the Google subpoena for my roviercarrington@gmail.com.

**There is <u>only one reason</u> for Defendants to intercept and conceal the Withheld Documents, in order that FTI would never receive the Withheld Documents, and disregard the Court's instruction, violate the 2-13-19 Order, and violate the Consent Form:**

> *Defendants were concerned that the documents responsive to the subpoenas would reveal Brian Graden's (or the other Defendants') IP addresses and information, and reveal that he (they) are responsible for hacking into my email accounts and deleting the At-Issue Communications.*

### 2.   My filings informing the Court.

**On 2-27-19**, I filed a letter with the Court informing, and providing proof, that I have fully complied with the 2-13-19 Order by (i) submitting my iPhone X to FTI, and (ii) signing the Consent Form for the three subpoenas.  **On 3-14-19**, I filed FTI's report regarding my iPhone X.  **On 4-1-19**, I filed FTI's report for documents responsive to the Google subpoena regarding the roviercarrington@gmail.com account.

**On 4-4-19**, I filed a letter with the Court (without knowledge of the Withheld Documents) stating that: (i) Defendants did not object/oppose my notice of full compliance with the 2-13-19 Order filed on 2-27-19, (ii) it has been approximately 20 days after the date in the 2-13-19 Order wherein Microsoft and GoDaddy where to produce documents responsive to the subpoenas, and FTI would not contact Microsoft or GoDaddy to obtain the documents, (iii) Neither FTI reports filed with Court demonstrated any evidence of my wrongdoing, (iv) there is no evidence produced in response to the 2-13-19 Order that would warrant Defendants to bring a motion for sanctions, and (v) I renewed my Request for Dismissal without Prejudice.

### 3.   Defendants' 4-9-19 and 4-10-19 Motion Letters.

**On April 9, 2019**, Larry Stein, Esq. filed his 4-9-19 Motion Letter regarding the GoDaddy documents wherein he requested "permission to file publicly a redacted version of [Defendants' 4-10-19 Motion letter], and the supporting materials thereto, that details *the findings* of the discovery ordered by the [Order]" [Dckt #112].  *However, the 2-13-19 Order required a report of FTI's findings – not Defendants' findings.*  Larry Stein, Esq.'s statement is intentionally misleading – in order to falsely portray that he is following the requirements for the discovery ordered by the 2-13-19 Order.

**On April 10, 2019**, Defendants' filed their 4-10-19 Motion Letter.[5]  The 4-10-19 Motion Letter Defendants is not an analysis of the Court ordered findings of the FTI reports (that were limited in scope to be <u>solely</u> findings regarding the At-Issue Communications).

---

[5] Although Larry Stein, Esq., drafted the 4-10-19 Motion Letter, *all Defendants' counsel signed the letter*.

7

Rather, the 4-10-19 Motion Letter is a purported analysis of the attached Exhibits A- F, which is a "data-dump" of 105 pages - that include documents that were not responsive to the subpoena.

Exhibits B, E, and F are comprised of 80 pages of technical data (allegedly unaltered) that Defendants filed directly with the Court.  The Court specifically informed the parties it does not have the technical capacity to interpret and analyze IT data – *the Court "[is] not FTI"* [Dckt #86, pg. 60, lns. 7-18].  These documents should have gone directly to FTI for FTI's unbiased reports.  However, the Defendants disrespectfully ignored the Court's instructions in order to spin their own false and misleading interpreting of the IT data– which is demonstrated in detail herein.  *Now, Larry Stein, Esq. wears the hat of Defendants' IT expert.*

By way of Defendants 4-9-19 and 4-10-19 Motion Letters [Dckt #112 and 114], Defendants finally disclosed the Withheld Documents.  However, neither I or the Court know that these are actually the documents responsive to the subpoenas, or they are documents – but Defendants altered the documents.  Defendants broke the chain-of-custody for the documents, which the Court admonished the parties not to do [cite].  If Defendants can violate the 2-13-19 Order, conceal the documents from FTI, fabricate evidence and citations in their 4-10-19 Motion Letter etc., then Defendants cannot be trusted that their Exhibits to their 4-10-19 Motion Letter are authentic.  For that reason alone, the Court should strike, and throw out, Defendants' 4-9-19 and 4-10-19 Motion Letters in their entirety.

It should also be recognized that Defendants filed their 4-9-19 and 4-10-19 Motion Letters *only because they were forced to react* to the events that occurred before them.  In particular, Defendants were forced to react to my 4-4-19 Letter wherein I stated that it has been over 20 days since GoDaddy and Microsoft were required to respond to the subpoenas pursuant to the 2-13-19 Order [Dckt #117].  *In other words, Defendants were about to get caught for intercepting and concealing the Withheld Documents.*

Last, it is not just that Defendants', and Defendants' attorneys', violated the express terms of the 2-13-19 Order and not giving the Withheld Documents to FTI, *it is the egregious illegal conduct of - misusing the information* contained in the Withheld Documents by fabricating evidence, making intentionally false and misleading statements, and using false citations to the Court in an attempt to *shift blame* and disparage me – *that wrongfully and materially prejudices my rights.*

**There is __only one reason__ for Defendants to misuse the information contained in the Withheld Documents by fabricating evidence, making intentionally false and misleading statements, and using false citations:**

> *The emails referenced as At-Issue Communications are authentic, and I did not fabricate the emails.*

For a detailed and accurate procedural history from February 26, 2019 through April 15,

8

2019, please see "Appendix B".

**IV.**     **Defendants, and Defendants' attorneys, violations/contempt of the 2-13-19
       Order.**

**1.**     Defendants, by way of Defendants' attorneys, violated the 2-13-19 Order
by taking unlawful possession of the documents responsive to (i) the GoDaddy subpoena
[Dckt #114, Ex. F], (ii) the Microsoft subpoena [Dckt #114, Ex. E], and (iii) the Google
subpoena regarding trendsetterrovheir@gmail.com [Dckt #114, Ex. B] (the "Withheld
Documents").

**2.**     Defendants, by way of Defendants' attorneys, further violated the 2-13-19
Order when they intercepted the Withheld Documents and did not give them to FTI to
perform its Court ordered reports.  The Withheld Documents were not intended for
Defendants' eyes.  The Withheld Documents contain information beyond the limited
scope of the Order regarding At-Issue Communications, and Defendants have mis-used
the Withheld Documents in their 4-10-19 Motion Letter as described in section VII.  In
addition, Defendants' action has prevented FTI to perform it Court's ordered unbiased
reports on the Withheld Documents.

**3.**     Defendants, by way of Defendants' attorneys, further violated the 2-13-19
Order when they sat on their hands for *30 days* causing unnecessary delay before they
filed all the Withheld Documents responsive the 3 subpoenas, and selected other
documents in their 4-10-19 Motion Letter.  Thereafter, Defendants used Withheld
Documents to create false interpretations and conclusions, *that were not FTI's findings*,
in order to perpetrate a fraud on the Court in to order to paint a false self-serving
narrative through the use of numerous intentionally false and misleading statements.  In
particular, a false narrative that I deleted and spoiled evidence as shown more fully
below.

**4.**     Not only did Defendants' attorneys advise their clients to willfully disobey
the 2-13-19 Order as described herein, Defendants' attorneys, and each of them, played
an active role and were the main participants in the violations and contempt of the 2-13-
19 Order.

There is *conclusive proof* that Defendants, and Defendants' attorneys, Obstructed the 2-
13-19 Order in violation of 18 U.S.C. Section 1509.  Moreover, as a result of
Defendants', and Defendants' attorneys', violation of the 2-13-19 Order, *Defendants'
conduct have materially prejudiced my rights as described herein.*

**The Court cannot permit the Defendants to pick and choose which Court Order
they want to follow because it is not good for their case - without any repercussions.
The Court should fashion an appropriate remedy/punishment for the Defendants
and the Defendants' attorneys.  To do otherwise would render any Court Order
meaningless.**

9

### V.     Defendants' Malfeasance in their 4-9-19 and 4-10-10 Motion Letters.

#### 1.     Defendants' claims are based on intentionally false and misleading statements to support Defendants' untruthful narrative.

The Court should not drink Defendants' Kool-Aid when they waive the bloody shirt of my alleged "Spoliation of evidence! Fraud on the Court!" [Dckt #114, pgs. 1-4]. *Defendants' claims are pure sophistry*. Even when Defendants present the alleged results of the subpoenas - *in Defendants' best-light*, the results of the subpoenas still *only* prove that the At-Issue Communications were not obtainable *as requested*.

There will *never be any evidence* before the Court that At-Issue Communications are "unauthentic" – *because* they are "authentic". Unfortunately, I will never be able to produce the meta-data to see the emails in their native format that comprise the At-Issue Communication *due to Defendants' actions*. However, *it is Defendants' burden of proof* to prove the emails are unauthentic – which they have failed to do.

The lack of responsive meta-data to view the At-Issue Communications in their native form from the discovery that *Defendants' requested* - is not evidence, yet alone conclusive evidence, that I fabricated the emails.

Defendants' litigation defense strategy has been partially based on ignoring the following two realities - of which they are fully aware of:

1.     You cannot delete an email that has already been deleted.
2.     You cannot recover a deleted email after the date the hosting company's email retention policy expires.  For Google, it is 30 days after deletion.  For, Microsoft/Office 360, it is 14 days after deletion.[6]

Defendants have unexplainably refused to provide a declaration from Brian Graden (not even to lay a foundation for the emails that were allegedly sent to my previous counsel on 8-24-18 [although not submitted to FTI for the 9-6-18 FTI Report, and not in the Court's record – even after Defendants recently filed their motion for sanctions].  Defendants have refused to provide access to Brian Graden's and Reno Logan's email accounts and devices.  The 7-20-18 Declaration of Reno Logan and the 7-23-18 Supplemental Declaration of Darren Stein were not submitted to FTI for the 9-6-18 FTI Report, nor were they in the Court's record until Defendants recently filed motion for sanctions. Absent those self-serving declarations that have been rebutted/contradicted by my declarations described below, Defendants' evidence is a *nothing burger*.

It is not a stretch to infer that Defendants acted in bad-faith by intentionally propounding discovery they knew would come up short, considering the proof presented in this letter that Defendants willfully violated 2-13-19 Order, and fabricated evidence, made false and

---

[6] Copies of excerpts that I obtained online from Google's and Microsoft's/Office 360's websites demonstrating Google's 30-day retention policy after deletion, and Microsoft's/Office 360's 14-day retention policy after deletion, are attached as Exhibit "E" and Exhibit "F", respectively.

misleading statements, etc. to the Court.  To the contrary, it demonstrates that Defendants' behavior is consistent.

Further, Larry Stein, Esq. has a history of making "phantom" citations.  In the 4-10-19 Motion Letter, Larry Stein, Esq. makes over a dozen *phantom citations* to evidence that does not exist, or he intentionally misstates the substance of the evidence cited [Dckt #114, pgs. 1-4] – in order to perpetrate a fraud on the Court to match Defendants' untruthful narrative.  *Any citations made by Larry Stein, Esq. must be verified with scrutiny.*

### VI.    PART ONE:  Defendants' 4-10-19 Motion Letter regarding Defendants' wrongful conduct *PRIOR* to the 2-13-19 Order:  Defendants' Misinformation Highway.

Defendants have fabricated and mischaracterized evidence, made intentionally false and misleading statements, and using false or misleading citations - in order to make *feigned definitive conclusions* that I deleted the emails - while they are actually mere *self-serving and unsubstantiated conjecture*

Now, please consider *all* the *actual* evidence before this Court:

### 1.    Experts Reports/Declarations before the 2-13-19 Order (in chronological order):

#### A.    Defendants' Expert: TransPerfect, Inc.'s 7-11-18 Declaration of James Keslaw, and the 7-13-18 Supplemental Declaration of James Keslaw.

It should be recognized that both of Keslaw's Declarations only evaluated Exhibits 9, 10 [emails between me and Brian Graden], and Exhibit 11 [emails between me and Darren Stein].  Mr. Keslaw *did not examine*:  (i) any emails between me and Reno Logan [Exhibits 2–6]; or (ii) emails between me and Garret McKay [Exhibit 7]; or (iii) *the emails between me and Brian Graden [Exhibit 8]*.

TransPerfect, Inc.'s 7-11-18 Declaration of James Keslaw *only concluded* that my emails needed to be preserved and analyzed in order for Mr. Keslaw to form an opinion as to their authenticity [Dckt 56-2, Ex C, para. 10 "In conclusion…"].  The 7-13-18 Supplemental Declaration of James Keslaw (while acknowledging that my email attached Amended Compliant had different times stamps than the email submitted by Darren Stein) *only concluded* that he stood by his conclusion stated in his 7-11-18 Declaration - wherein he concludes that my emails needed to be preserved and analyzed in order for Mr. Keslaw to form an opinion as to their authenticity [Dckt 75-1, Ex F, para. 3 "In conclusion…"].

In short, both declarations from Mr. Keslaw concluded that Mr. Keslaw found no

11

evidence of my alleged wrongdoing, and that my emails needed to be preserved and analyzed for him to form an opinion as to their authenticity. Mr. Keslaw's declarations have no probative value, and Defendants' reliance on them gets them nowhere.

Last, it should be acknowledged that Mr. Keslaw did not submit a declaration regarding the Supplemental Declaration of Darren Stein or Declaration of Reno Logan.

### B.    Plaintiff's Expert:  8-22-18 PTG Report – submitted on 9-17-18.

The most significant part of the 8-22-18 PTG Report is the conclusion of the fact that my roviercarrington@gmail.com account was hacked on May 24, 2018, corroborating the hack with Google' 5-24-18 Notice of unauthorized use my email account [Dckt #76-1, inadvertently *not* labeled as Exhibit 2, at pages 7-8] and my 8-24-18 Supplemental Declaration [Dckt #76-2, Ex. 10, paras. 2-5]. This gave rise to the discussions at the 9-18-18 Court hearing discussed in Section II(1)(a) [Dckt #86].

### C.    The 9-6-18 FTI Initial Report – submitted on 9-17-18.

The 9-6-18 FTI Initial Report details the emails it found, but does not conclude, whether those emails are authentic, only if they were found, and if they were forwarded or originals. FTI found that the emails were forwarded to my previous counsel and corroborated my position that the emails could have been deleted when forwarded. In sum, the 9-6-18 FTI Initial Report did not find any evidence of my wrongdoing, yet alone that I perpetrated a fraud on the Court.

It is significant to acknowledge that Defendants submitted the original 7-12-18 Declaration of Darren Stein which has no probative value [See Section IV(2)(a)(ii)]. However, Defendants failed to submit the 7-23-18 Supplemental Declaration of Darren Stein to FTI for the 9-6-18 FTI Report. Defendants failed to submit the 7-20-18 Declaration of Reno Logan to FTI for the 9-6-18 FTI Report. Defendants failed to submit Brian Graden's emails that were allegedly emailed to previous counsel on 8-24-18 (without a declaration from Brian Graden establishing the foundation for the emails) to FTI for the 9-6-18 FTI Report. Those emails were not in the Court's record even after Defendants recently filed their motion for sanctions.

Is this Defendants' attorneys' sloppy lawyering? Defendants' failures to submit their allegedly most important evidence to FTI for the 9-6-18 FTI Report *does not pass the smell test.*

Considering Defendants' submission failures to FTI for the 9-6-18 FTI Report, in conjunction with Defendants intercepting the Withheld Documents in order to prevent FTI to perform the three Court ordered reports, *it is painfully obvious that Defendants are desperately attempting to hide the truth of their actions.*

In summary: The expert reports, whether individually or collectively, demonstrate that

12

Defendants have failed to meet their burden of producing any evidence whatsoever that I have engaged in any wrongdoing, yet alone perpetrate a fraud on the Court.

**2.    The Parties and Witnesses Declarations submitted before the 2-13-19 Order.**

    **A.    Defendants' Party and Witness Declarations.**

        **(i)    NO Declaration from Defendant Brian Graden.**

The At-Issue Communications contained in Exhibits 8, 9 and 10 are emails between me and Defendant Brian Graden. The authenticity of Exhibits 8, 9, and 10 are germane to Defendants' pre-discovery defensive strategy. However, Mr. Graden did _not_ submit a declaration contesting the authenticity of (or simply that he did not author) the emails contained in Exhibits 8, 9, and 10. Mr. Graden did not submit a declaration stating that he did not "hack" into my email account on May 24, 2018. *Why?... Enough said.*

Further, Brian Graden did submit a declaration to lay a foundation for the emails that were allegedly sent to my previous counsel on 8-24-18 but not submitted to FTI for the 9-6-18 FTI Report – and not in the Court's record.

        **(ii)    The 6-12-18 Declaration of Darren Stein.**

The 6-12-18 Declaration of Darren Stein is based on the original compliant, <u>and proves nothing</u>. Darren Stein <u>never</u> expressly states that he did not author the emails quoted verbatim in Exhibit 11 on the Amended Complaint. Rather, with the help of some below-average *legalese*, Darren Stein only states that: (1) "I came to find in paragraph 127 of the *complaint"* [the Complaint filed in 5-1-18 NY State Court [Dckt #8-1, Ex. A]" [Dckt #56-2, para. 4, 1st sentence]; (2) that "I did not recall having such a conversation with Brian Graden" [Dckt #56-2, para 4, 2nd sentence]; and (3) "I did not send Mr. Carrington any other emails with text similar to which appears in paragraph 127 or Exhibit A." [Dckt #56-2, para. 6]. Exhibit A is Darren Stein's follow-up email he sent to cover himself that bears a date and time after the date and time of the email in Exhibit 11.

Nonetheless, Defendants elected to submit the 6-12-18 Declaration of Darren Stein (which has no probative value) to FTI for the 9-6-18 FTI Report – instead of submitting the 7-23-18 Supplemental Declaration of Darren Stein to FTI for the 9-6-18 FTI Report.

        **(iii)    The 7-20-18 Declaration of Reno Logan and the 7-23-18 Supplemental Declaration of Darren Stein.**

Defendants *did not* submit their *ever so important* 7-20-18 Declaration of Reno Logan[7] and the 7-23-18 Supplemental Declaration of Darren Stein to FTI in order to include

---

[7] Indeed, it is ironic that Reno Logan's new 2019 television drama series that he created is entitled **"Blacklisted"**. Copies of pages that I obtained from the website IMBD regarding Reno Logan's show "Blacklisted" are attached as Exhibit "G".

13

those declarations in the findings of the initial FTI's Report – as stated in the 9-6-18 FTI Report under the section "Information Considered". However, Defendants *did* submit the 7-12-18 Declaration of Darren Stein [Dckt #76, Ex 1, pg. 8].

Defendants did not submit these declarations to the their expert, James Keslaw, for analysis to render an opinion. The declarations were not even in the Court record until Defendants recently filed their motions for sanctions. In any event, these are self-serving declarations that have been rebutted/contracted by my declarations as shown below.

### B.   Plaintiff's Party and Witness Declarations.

#### (i)   My 6-21-18 Declaration – submitted on 9-17-18.

In my initial 6-21-18 Declaration[8]: (1) I attested that I sent and received the emails in the At-Issues Communications in the same conditions that I sent and received them [Dckt #76-1, Ex. 9, para 3]; and (2) I attested that I did not doctor, fabricate, or alter any of the emails, or the emails' contents, in the At-Issue Communications [Dckt #76-1, Ex. 9, paras. 4-5]. Defendants have not submitted any expert witness declarations, or expert reports, that rebut or contradict any of my sworn statements contained in my initial declaration. Nor does any FTI report rebut or contradict any of my sworn statements contained in my initial declaration. Defendants have not submitted any expert witness reports, or party, third party witness, or expert witness declarations to refute Exhibit 8. *Exhibit 8 is entirely unchallenged by any evidence.*

#### (ii)   My 8-24-18 Supplemental Declaration- submitted on 9-17-18.

In my 8-24-18 Supplemental Declaration, I attest that: (1) I gave Brian Graden the password to my email accounts; (2) Mr. Graden entrusted me with his security code to his residence (attached as exhibit A is a copy of text message between me and Brian Graden reflecting the same); (3) on 5-24-18, Google sent me notice[9] that my active Gmail account was accessed by an unknown party - and sometime thereafter I realized that many of the emails were deleted without my prior knowledge or consent; (4) I reiterated that I did not delete any At-Issue Communications; and (5) I requested that Court issue subpoenas to both my email accounts and Defendant Brian Graden's email accounts. [Dckt #76-2, Ex. 10, paras. 2-5].

#### (iii)   The 8-3-18 Declaration of Jeremy Escherich – submitted on 9-17-18.

---

[8] My initial declaration was signed and notarized on 6-31-18. My 6-31-18 Declaration attached as Exhibit 9 to my former counsel's 9-17-18 Letter [Dckt #76, Ex. 9 pgs. 33-34]. However, the page with notary's stamp and signature was inadvertently omitted. Accordingly, I have attached a complete copy of my 6-31-18 Declaration (including the previously omitted page for the notary) as Exhibit "H".

[9] Documentary proof of Google's actual written notification of the unauthorized use of my Gmail accounts is before the Court at Docket #76-1, [inadvertently *not* labeled as Exhibit 2], at pages 7-8 – in support of my Supplemental Declaration - as referenced in Section VI(2)(B)(ii).

14

The Declaration of Jeremy Escherich attests to having personal knowledge of the details of one of Brad Grey's rapes, as well as corroborates the authenticity of Exhibits 3 and 6 [Dckt #76-1, Ex. 10].

(iv)   **The 8-3-18 Declaration of Daniel Jackson – submitted on 9-17-18.**

The Declaration of the Daniel Jackson attests to having personal knowledge of Brad Grey's rapes, sexual assaults, and physical assaults [Dckt #76-1, Ex. 10].

(v)   **The 8-1-18 Declaration of Mercedes Stanley – on submitted until 9-17-18.**

The Declaration of Mercedes Stanley attests to my veracity regarding the truth about Brad Grey's rapes/sexual assaults, and threats to have me black-listed from Hollywood [Dckt #76-1, Ex. 10].

(vi)   **The 8-2-18 Declaration of Alex Vega – submitted on 9-17-18.**

The Declaration of Alex Vega attests to my veracity regarding the truth about Brian Graden's rapes/sexual assault, as well having personal knowledge of Brad Grey rapes, sexual/physical assaults, and threats to have me black-listed from Hollywood [Dckt #76-1, Ex. 10].

(vii)   **The 8-2-18 Declaration of Nadia Stanley – submitted on 9-17-18.**

The Declaration of Nadia Stanley attests to my veracity regarding the truth about Brad Grey's sexual assaults, and threats to have me black-listed from Hollywood [Dckt #76-1, Ex. 10].

(viii)   **The 8-2-18 Declaration of [redacted] – submitted on 9-17-18.**

The Declaration of [redacted] attests to having personal knowledge when Reno Logan began massaging his penis under his pants, rubbed his penis against my anus, and asked me if I was good at "sucking dick". In his declaration, the declarant asked to have his name redacted at this time in fear of retaliation by Defendants – "who have exceptional power and influence throughout the entertainment industry" [Dckt #76-1, Ex. 10]

## VII.   **PART TWO: Defendants' 4-10-19 Motion Letter *after* the 2-13-19 Order: Defendants' intentional false statements, fabrications and mischaracterizations of evidence, and self-serving unsubstantiated conjecture.**

15

1.      **The GoDaddy Section.**

The GoDaddy Section can be broken down into four statements:

**Statement #1:** "GoDaddy,… supplied data confirming that the www.thecarringtondiaries.com domain was used through and terminated on September 26, 2018.  GoDaddy records further show that Plaintiff submitted his cancellation request for the domain and email address on September 8, 2018.  See Exhibit F."  *Statement #1 is intentionally misleading to persuade the Court I engaged in wrongdoing.*

In Statement #1 has two sub-parts.  The Defendants claim that the GoDaddy documents confirm that:
  (1)      the domain was *used through*, and *terminated* on 9-26-18; and
  (2)      that I submitted my *cancellation request* for the *domain* and *email* address on 9-8-18.

To begin with, Defendants fail to mention what pages of the 76 pages of the GoDaddy documents do these allegation occur.  Defendants did not designate specific pages because the Court informed the parties it did not think it had the technical capacity to interpret and analyze raw IT data in the documents.  The Court stated that "we are not FTI" [Dckt #86, pg. 60, lns. 7-18].

Regarding the 9-26-18 date, it appears once GD 000005 which indicates that the website was created on 9-26-15 and it expires 9-26-18.  A subscriber to GoDaddy must renew (and pay) for his website prior to the annual expiration of his website.

Regarding the 9-8-18 date, it appears on GD 000008 at the last entry, and GD 000009 at the top twelve entries.  Of those 13 entries, 7 of them contain the word "cancelling" or cancellation".  The entries on GD 000008-000009 are highly technical in nature and laymen cannot make sense of those entries without the assistance of an IT expert - *such as FTI.*

After the filing of this lawsuit, my previous counsel advised me to take the website down because it contained allegations regarding this lawsuit.  In early September 2018, GoDaddy sent me a request to renew the website account, which I opted not do because the website was no longer is use.  The Defendants claim that the 9-8-18 date and 9-26-18 date have legal significance of my alleged wrongdoing because those dates "occurred *after* the Court's orders for further discovery and specifically after the Court's authorization of the subpoenas to Microsoft and GoDaddy" [Dckt #114, pg. 3, para 4].

Defendants claim that is nonsense, the Court's orders for further discovery (and specifically after the Court's authorization of the subpoenas to Microsoft and GoDaddy) did not occur until 2-13-19.  Statement #1 is a red-herring.

16

**Statement #2:** "The GoDaddy records also contain notes that show that Mr. Carrington contacted GoDaddy on September 20, 2018 asking if GoDaddy has backups of his emails, to which the representative responded, "we don't." *Id.* at GD00008." *Statement #2 misrepresented the contents of documents to defraud the Court.*

GD00008 *actually* states that:

> "[Carrington] needed to know if we have a backup of his ***deleted O365 email***, we don't"

Defendants misrepresented the contents of DG00008 by omitting the words "deleted O365 email". By omitting these words, Defendants were trying to mislead the Court by claiming that the 2-13-19 Order produced new/corroborated evidence that I was attempting to obtain emails from my website after the Court issued the 2-13-19 Order (and presumably destroy/hide those emails from Defendants and the Court). However, the inclusion of my actual words, "deleted 0356 email", materially change the meaning of the statement to be: I was asking GoDaddy if they had a document retention policy for deleted emails – to which GoDaddy responded that they do not.[10] <u>You cannot delete an email that has already been deleted</u> – a reality that Defendants have conveniently ignored since this lawsuit began.

**Statement #3:** "Mr. Carrington contacted GoDaddy again on February 23, 2019 and the notes read: "involved in a matter where someone is trying to get a subpoena for the contents of an O365 account that was removed 5 months ago, wanted an email stating that the data wasn't recoverable at this point. Showed where to find subpoena info on the legal section of our site, advised to go there for anything official." *Id.* However, these events occurred *after* the issuance of the 2-13-19 Order. *Statement #3 is a mischaracterization of evidence to the defraud the Court.*

The statement contained in GD00008 portrays me in a positive light. Pursuant to my obligations in the 2-13-19 Order that I should cooperate with the subpoenaed companies to retrieve the emails, including recover emails that have been previously deleted from the accounts, I was advising GoDaddy where to find the 2-13-19 Order, to follow the 2-13-19 Order's instructions. I was already told by GoDaddy on 9-20-18 that GoDaddy does not have back-ups (aka keep) emails that were already deleted. GoDaddy informed me that because the emails were no longer on their servers, they would not be producing any documents responsive to the subpoena regarding those emails. Thereafter, I asked GoDaddy if they would state that in an email. I thought an email from GoDaddy that stated the same would assist and clarify to the Court why no documents will be produced regarding those emails. Defendants are attempting to somehow claim that my inquiries, and request for an email from GoDaddy is evidence that I was trying to destroy evidence/emails. Rather, it is the opposite. I was trying to make a record of it.

---

[10] It should be noted that the exhibits to Defendants' 4-10-19 Motion Letter contain numerous emails dated after the issuance of the 2-13-19 Order. In those emails, Defendants ask Google, Microsoft, and GoDaddy questions in order to shape a narrative to advance their self-interests.

17

**Statement #4:** "It is significant to note that the GoDaddy records also reveal numerous instances of password change requests initiated by Mr. Carrington between 2016 and 2018. This puts to bed Mr. Carrington's contention that Mr. Graden had hacked into his account in 2018, as it is now obvious that Mr. Carrington changed his password more than once between the time he allegedly shared the password with Mr. Graden in 2015 (which Mr. Graden denies in all events[11]) and when the purported "hack" occurred." *Statement #4 is a false statement fabricated to mischaracterize evidence to defraud the Court.*

It should be noted that in Defendants' Statement #2 referenced above, Defendants specifically identify which GoDaddy document they based their statement on (*i.e.* GD00008). However, *it is significant to note* that Defendants fail to identify any specific document within GD00001 – GD00076 (aka GD Docs 1-76) that indicates a change in an email password has occurred.

It is an intentionally false statement that I changed my email password between 2016 through 2018 – before the (Graden's) hack. There is evidence in the Court record that the hack occurred on May 24, 2018 [Dckt 76-2, Ex. 10 and Section IV(1)(B), . I changed my the **Office 365 password** for the Rovier@thecarringtondiaries.com five times on:

| | |
|---|---|
| 6-29-18 | 8-15-18 |
| 8-10-18 | 8-31-18 |
| 8-12-18 | |

Wherein each *identical* line item entry states:

"request submitted to update **Office365 password** for the emails address Rovier@thecarringtondiaries.com by Rovier Carrington". [See GD00009 – GD000010 (aka GD Docs 9-10)].

All password changes to the Office365 password occurred *after* the (Graden's) hack on May 24, 2018.

On GD000010 (aka GD Doc 10), there appears to be a 2-18-18 entry that states:

"request submitted to update password for email address: Rovier@thecarringtondiaries.com by Rovier Carrington"

There are three types of passwords associated with emails on GoDaddy:

1.    Office365 passwords.
2.    cPanel emails passwords.
3.    GoDaddy account passwords.[12]

We do not know what the line item entry from 2-18-18 on DG 000010 means. We do not

---

[11] Mr. Graden has *denied nothing* - as he has failed to submit a declaration in this lawsuit.
[12] A copy of pages from the GoDaddy.com website, regarding how to re-set a user's email password, describing the three types of passwords associated with emails on GoDaddy are attached as Exhibit I.

18

know if it means passwords, other than Office365 passwords, as described above in #2 and/or #3.  We do not know if it means something entirely different, such as an attempt to add another type of email account to the password I used for all three of my accounts.

We *do know* that it means *something different* than what is stated on the post-hack line entries on 6-29-18, 8-10-18, 8-12-18, 8-15-18, and 8-31-18 – that all identically state it was for an "Office365 password".  Further, I know that I did not change my password on any of my emails account on 2-18-18.

This issue that Brian Graden hacked the email accounts *is not* put to rest.  To the contrary, Brian Graden (and the other Defendants) just went out of his way to make intentionally false representations in order to deceive the Court about the issue.[13]  Brian Graden's hack is now at "center stage", and he appears to be *guilty as sin*.

Last, Exhibit F should have been given to FTI in order for FTI to perform it Court order report for unbiased information regarding the At-Issue Communications.  Larry Stein, *Esq.* has not been qualified as an IT expert in order to interpret and analyze the IT data contained in the GoDaddy documents.

Accordingly, the Court should not consider Defendants' false, misleading, and ambiguous statements contained in their GoDaddy Section.

> **3.      The Microsoft Section.**

This section can be broken down into 2 statements, in which a conclusion is derived.

**Statement #1**:  This is a correct quote from Exhibit E that rovier@thecarringtondiaries.com does not currently exist but was used through September 2018 before being closed.

**Statement #2:**  "Microsoft further indicated that Office 365 accounts such the Carrington Diaries Account are controlled completely by the user, who has the power to delete the account and the content therein."  *Statement #2 is a fabrication of evidence made to defraud the Court.*  Statement #2 is nowhere to be found in Exhibit E or any other of the other exhibits.  Defendants fabricated Statement #2 to derive its conclusion.

**Conclusion Statement:**  By adding Statement #2 to Statement #1, Defendants conclude that I closed my website account in September 2018.  Since Microsoft never stated Statement #2, Defendants conclusion is only wishful conjecture.  *More importantly, "usage" does not equate to "deletion"; and FTI accessed and used the website when FTI generated its 9-6-18 Initial Report.* [Dckt #76-1, Ex. 1].

---

[13] Defendants' 4-10-19 Motion Letter claims that "Mr. Graden denies in all events…" that he had the passwords to all 3 email accounts [Dckt #114, pg. 4].  However, *Mr. Graden has not denied anything* because he failed to submit a declaration amidst the eight declarations that I submitted that support my claims – while defeating Defendants' claims.

19

Is should be noted that I did not receive any notification of any unauthorized use of my Office365 because when the account was set up, an audit log function was not turned on. A copy of the first page of from Microsoft's webpage regarding the audit log function is attached as Exhibit J.

### 4. The Google Section.

Of the two Google email accounts, trendsetterrovheir@gmail.com is no longer active. However, roviercarrington@gmail.com is active. This is the reason why Google contacted me on 3-11-19 and I responded on 3-15-19 [See Appendix A]. It is also the reason why Defendants could not intercept the documents responsive to the Google subpoena for the roviercarrington@gmail.com account. It is also the reason why Defendants were able to intercept usurp the documents responsive to the Google subpoena for the trendsetterrovheir@gmail.com. Last, it is the reason why FTI was only able to provide a report for the roviercarrington@gmail.com account.

### (A) The 3-28-19 FTI Report for roviercarrington@gmail.com account [aka the Existing Account].

Defendants are correct that the 3-28-19 FTI Report for roviercarrington@gmail.com did not identify any instances for At-Issue Communications. There were not any instances of At-Issue Communications found because the emails were deleted during the hack(s). Google's retention policy only permits an email to be recovered within 30 days after it has been deleted [See Ex. E]. Thus, the 3-28-19 FTI Report for did not conclude that I deleted the emails – as you cannot delete an email that has already been deleted. Defendants' conclusion that this somehow proves I purged the emails is self-serving conjecture, and not based in fact or reality. In sum, the 3-28-19 FTI Report did not find any evidence of my wrongdoing, yet alone that I perpetrated a fraud on the Court.

### (B) The trendsetterrovheir@gmail.com account.

The **trendsetterrovheir@gmail.com** section is a ruse, filed with false and misleading statements.

Defendants have made the false representation that "Google-produced information that this account was "actually deactivated" on June 19, 2018. *See* Exhibit B". Defendant's 4-10-19 Motion Letter, Exhibit B, pg. 6, is an IT data print-out that states: 6-19-18 was the *"end of service date"* for the trendsetterrovheir@gmail.com account.

The "end of service date" is *different* from a "deactivation date". A Google account's "end of service date" occurs approximately 2-3 weeks after it has been deactivated.[14] Thus, the trendsetterrovheir@gmail.com account was deactivated in approximately late May/early June 2018 – which *pre-dates* the filing of the Amended Complaint on 6-18-18 [Dckt #40 and #40-1] – and *coincides* with the date of the hack on May 24, 2018. Of

---

[14] A copy of an article that I obtained from the internet that explains the process of Google's approximate 2-3 week deletion (aka deactivation) of a Google account is attached as Exhibit K.

course, if Defendants had given the documents responsive to the Google subpoena for the
trendsetterrovheir@gmail.com account to FTI to generate its report, FTI would have
explained all of the this.

*To put Defendant's erroneous deactivation date into context*:  now Defendants' self-
serving fabricated narrative that I deleted the emails based on the dates of other
occurrences – utterly fails.  Rather, the actual date of deactivation/deletion
(approximately 2-3 weeks prior to the end of service date) – reasonably supports the
premise that Defendants are responsible for the hacks/email deletions.[15]

Defendants' made an <u>intentionally false representation</u> to the Court stating that the
Affidavit of K. Gus Dimitrelos, paragraph 13, was "deactivated" several years ago and
the original emails thus could not be recovered [Dckt #114, pg. 3, para. 1].

The Affidavit of K. Gus Dimitrelos, paragraph 13, *actually* states:

> "As relayed to me, <u>Trendsetterrovheir@gmail.com</u> was created in January 2010
> but the Google mail account was last accessed early 2015 and all email was
> transferred from the account in October 2017 to
> Rovier@TheCarringtonDiaries.com."[16]

Last, Defendants' statement that "this account was *linked* to Plaintiff's iPhone X account,
which was released in 11-17, long after plaintiff claims account was deactivated" is false,
misleading, and irrelevant.  FTI's iPhone X Report does *not* state that the ,
<u>Trendsetterrovheir@gmail.com</u> account is *linked* to my iPhone X.  Rather, FTI's iPhone
X Report states that *multiple* "Apple ID" accounts are *associated* with my iPhone X, and
*two of multiple Apple ID accounts (i.e.* <u>Trendsetterrovheir@gmail.com</u> and
<u>roviercarrington@gmail.com)</u> are *associated* with the At-Issue Communications. [Dckt
#114, Ex. A, pg. 3].

### 5.   The FTI report for the iPhone X.

As early as 2-26-19, Defendants have been fully aware that FTI stated:

> "FTI will not capture any data residing within the native email application due to
> inherent limitations [FTI is] unable to bypass in forensically sound
> manner.  Given the at-issue communications are emails, [FTI does not] know that

---

[15] My previous counsel misunderstood me, and made the erroneous statement(s) that
trendsetterrovhier@gmail.com account was deactivated years ago.  The subject emails were deleted (by
Brian Graden) from the trendsetterrovhier@gmail.com account in 2015.  Clarifying the record, was one of
reasons I retained my own expert witness.  Mr. Dimitrelos' Affidavit, paragraph 13, states that I "relayed"
to Mr. Dimitrelos that "account was last accessed early 2015…" [See Exhibit L].
[16] A copy of the Affidavit of K. Gus Dimitrelos is attached as Exhibit L.  My 2-6-19 Letter had the
Affidavit of K. Gus Dimitrelos attached to it.  However, my 2-6-19 Letter was inadvertently not submitted
to the Court's *In Pro Se* office; and thus it was not placed on the Court's Docket.  However, my 2-6-19
Letter with attachments was submitted to the *In Pro Se* Office with this letter, and it should it appear on the
Court's Dockets in due course.

[FTI is] technologically able to comply with the order." [Dckt #118, Ex. A, pgs. 5-6]

As such, Defendants admit that FTI's iPhone X Report regarding concluded that "no instances of the At-Issue Communications were identified".   This is because the meta-data required to view the At-Issue Communications is not stored on iPhones.

The fact that the trendsetterrovheir@gmail.com and roviercarrington@gmail.com accounts were associated with the At-Issue Communications, my iPhone X is associated with multiple Apple ID accounts, two of which are trendsetterrovheir@gmail.com and roviercarrington@gmail.com - does not mean anything.  In no way whatsoever can it even be inferred that I "purged any and all data that may be relevant in this litigation…" based on the foregoing.  More nonsense.

FTI's Report further states that "[it] appears that Mr. Carrington's data was migrated from his previous iPhone…"  In other words, if my previous iPhone 7 had instances of the At-Issues Communications, then the data regarding the At-Issue Communications would have been transferred to my iPhone X.  As a result, *if* no instances of the At-Issue Communications were identified on my iPhone X, *then* no instances of the At-Issue Communications could have been identified on my iPhone 7.  Accordingly, assuming *arguendo*, that the fact that I turned in my iPhone 7 was a breach of Defendants' litigation hold on electronic discovery, it is a *"no harm, no foul"* situation because no meta-data was lost in order to see the At-Issue Communications in the native form by turning in my iPhone 7.

Defendants claim that I misrepresented to the Court that "I" did not migrate data form my iPhone 7 to my iPhone X - is false and misleading.  When I received my iPhone X in the mail by Verizon, *I personally did not attempt to transfer the data from my iPhone 7 to my iPhone X.*  If data was transferred from my iPhone7 to my iPhone X somehow in "The Cloud", or by some Information Technology Administrator, it was unbeknownst to me (just like any other average person when they purchase a new phone).

Last, Defendants claims that, "based on FTI's findings, it appears that Mr. Carrington purged any and all data that may be relevant in this litigation…" is more nonsense, and unsubstantiated conjecture.  FTI findings demonstrate the Defendants propounded discovery that they knew (or should have known) would not produce meta-data to view the At-Issue Communications in their native form.  Again, Defendants failed to meet their burden that I engaged in any wrongdoing, yet alone did not that I perpetrated a fraud on the Court.

## VIII.   The 4-12-19 Order was procured by Defendants' fraud.

Defendants' 4-9-19 and 4-10-19 Motion Letters intentionally created a labyrinth of misinformation by way of false citations, fabricated and mischaracterized evidence, and false and misleading statements.  In order to respond to Defendants' 4-10-19 Motion Letter, Part I, it required fact checking throughout the Court's Docket.  In order to

22

respond to Defendants' 4-10-19 Motion Letter, Part II, it required fact checking the 105 page "data-dump" contained in Exhibits A-F (much of which contained IT data).  As a result, I was not given a reasonable amount of time to respond before the Court issued its 4-12-19 Order.[17]

The 4-12-19 Order further states that the Court has concerns regarding the materials contained in the unredacted submission, thus it will proceed directly to set a briefing schedule on Defendants' requested motion for sanctions.  Last, the Order requires the Plaintiff (who resides in LA) to fly 3000 miles to personally appear at a hearing scheduled on 7-25-19 [Dckt #116].

Section VII (1) of this letter provides conclusive proof that all four statements contained in the GoDaddy section demonstrate that Defendants' intentionally committed fraud on the Court using information they wrongfully obtained by violating the 2-13-19 Order (the same is true for remaining sections in Defendants' Motion Letters).  In the light of the foregoing, as well as the Defendants' other fraudulent conduct exposed in this letter, the 4-12-19 Order was procured through Defendants' fraud, and the 4-12-19 Order should be voided, *nunc pro tunc*.

Last, because the Court required me to personally appear at the hearing on Defendants' future Motion for Sanctions based on lies contained in the Defendants' Motion Letters, *it is only fair and appropriate to require all the Defendants, and Defendants' attorneys, to personally appear at the hearing on my Motion for Sanctions* (should the Court grant me the right to bring one) based on (i) Defendants' egregious violations of the 2-13-19 Order; (ii) Defendants' attorneys advising Defendants to willfully disobey the 2-13-19 Order, and Defendants' attorneys' active participation in violating the 2-13-19 Order; and (iii) Defendants', and Defendants' attorneys', shameful fraud on this Court.

## IX.    <u>Conclusory Thoughts.</u>

### 1.    <u>Consider the absurdity of Defendants' claims:</u>

Aside from being an actor/screen-writer/producer, I have highly sophisticated IT skills wherein I can manipulate the meta-data of emails.  Despite having dozens of witnesses to corroborate my rape/sexual assault case, and case arising out of the television shows that I created, I used my IT skills to master-mind legal strategy against a billion-dollar corporation and very wealthy individuals to create fake emails to appear like certain defendants and adverse witnesses actually authored the emails.  I did so despite the fact that emails are a two-way street, and the feigned authors could disprove the authenticity of the emails by simply providing their receiving devices.

I did not attach the emails to a draft complaint and send to Defendants with a demand for

---

[17] It has taken me well over a month to fact check Defendants 4-10-19 Motion Letter, and reverse-engineer Defendants' fabricated evidence, intentionally false and misleading statements, false citations, feigned definitive conclusions – *vis-à-vis* the actual facts contained in the Court's Docket

a monetary settlement. Rather, I had the audacity to attach the emails to a complaint and file the compliant in this Federal Court. Despite months of planning my diabolical plan to defraud the Court, *I somehow overlooked* the simple undeniable fact that if you fake the contents of an email by an author, that author will necessarily immediately challenge the authenticity of that email. However, in about the same odds for lighting to strike in the exact same place twice, *Defendant Brian Graden*[18] *somehow overlooked* to submit a declaration stating that he did *not* author the incriminating emails contained in Exhibits 8, 9, and 10. So, when I served the Compliant in this matter, I was taken by surprise that the Defendants were challenging the authenticity of the emails. In response, I feverishly started deleting the emails over and over again, for months and months, in an attempt to cover my tracks.

2. <u>**I would like to propose a more credible hypothesis:**</u>

Defendants Brian Graden and Brad Grey are sexual predators who rape and commit sexual assault abusing their power positions in Hollywood by oppressing their victims. Defendants Viacom and Paramount are complicit by protecting their golden geese Hollywood executives/producers – which in turns: (1) permits Brian Graden and Brad Grey to continue to rape and sexually assault with impunity; and (2) promotes a disgusting stereotype that all gay men are extremely sexually promiscuous – so you cannot *really* rape or sexually assault them.[19]

The emails are authentic and brutal to Defendants' case. However, liability does not end with the individual defendant rapists. For example, in March 2011, I directly complained of the rapes to one of Viacom's Board of Directors, Shari Redstone. Ms. Redstone assured me that rapes and sexual assaults would stop – but they did not. Further, in March 2011, Brad Grey's successor CEO – Mr. Tony DiSanto, offered me a part on MTV's television series "Teen Wolf" in exchange for my silence regarding the rapes – an offer I declined.

The Defendants, and the Defendants' attorneys, have perpetrated a fraud on the Court regarding the authenticity of the emails. Reno Logan deleted his At-Issue Communications emails in 2011, and advised me to do the same. I refused and kept them. Viacom/Paramount knew I had them and feared I would expose them.

When I re-met up with Brian Graden in 2014, Mr. Graden questioned me about the emails Reno Logan. Mr. Graden informed me that he had strict instructions from Viacom's then CEO, Sumner Redstone, to delete the emails that mentioned himself (Sumner Redstone), Shari Redstone, Brad Grey, Harvey Weinstein, and Reno Logan. All those emails were associated with the trendsetterrovheir@gmail.com account.

Brian Graden did not follow through with his instruction until 2015, when I signed

---

[18] Defendant Brian Graden is the only living individual defendant who authored the At-Issue Communications contained in Exhibits 8, 9, and 10.
[19] This is the counter-part to the disgusting female stereotype that you cannot *really* rape a prostitute or slutty woman because, inside, they really want it.

24

contracts with Brian Graden Media.  One of the contacts being an NDA.  As part of the deal, Mr. Graden asked for my password for the trendsetterrovheir@gmail.com account. He also asked for me iPhone, and Mr. Graden deleted the At-Issue Communications from the trendsetterrovheir@gmail.com account.  However, to protect myself I had to, and unbeknownst to Mr. Graden, I previously forwarded the At-Issue Communications associated with the trendsetterrovheir@gmail.com account to the my roviercarrington@gmail.com account.

On August 7, 2017, I sent the email attached as Exhibit 10 to the Amended Complaint to Brian Graden that he had stolen my show (*i.e.* "Finding Prince Charming").  On August 8, 2017, Brian Graden invited me to his house and we discussed that he would produce new dark comedy show that I created entitled "Heiristocracy" in exchange for my silence and to fix the emails regarding Mr. Graden stealing Finding Prince Charming.  Mr. Graden told me that *Larry Stein, Esq[20]. instructed* him to have me send Mr. Graden several emails about how Audience Network was about to steal my show Heiristrocracy (the Cover-Up Emails).  Darren Stein was to executive produce Heiristrocracy with Brian Graden (who I reached out to produce the show independently in late October 2017.  This is why the Cover-Up Emails attached to the 7-11-18 Declaration of James Keslaw are dated after the 8-7-17 email Exhibit 10 – and to make it appear as if I cut and pasted sections of the Cover-Up Emails in order to create Exhibit 10.

In the wake of the Me Too movement, I decided I wanted to tell my story and go public about the rapes.  In or around late September and through October 2017, I went to a journalist at the New York Post, Mr. Keith Kelly.  I gave the emails that comprise of two of the At-Issue-Communications contained in Exhibit 8 and 10 (*i.e.* Brian Graden referring to having sex with me I was a minor, and Brian Graden stealing my television show, respectively), as well as other documentary evidence to Mr. Kelly, and Mr. Kelly was going to run my story in the New York Post. Larry Stein, Esq. contacted Mr. Kelly on behalf of Brian Graden and told Mr. Kelly that Brian Graden denied all of the allegations.  Mr. Kelly wanted to have the story corroborated by a third party witness before running the story in the New York Post.  That third party witness was taking too long to get back to Mr. Kelly.  As a result, I decided to take my story to Variety Magazine.

Around the same time I went to the New York Post, I took my story to Variety Magazine. Ms. Debra Birnbaum was the executive editor of Variety in the LA Office, and my contact person at Variety.  *I gave all the emails that comprise the two of the At-Issue-Communications contained in Exhibits 8 and 10*, numerous text messages, as well as other documentary evidence to Ms. Debra Birnbaum (much more documentary evidence than I gave to the New York Post).  Ms. Birnbaum was going to run my story in Variety Magazine.  Approximately 2-3 weeks after went to Variety (the day before Variety was going to publish my story), Ms. Birnbaum contacted me to apologize that Variety

---

[20] I first met Larry Stein, Esq. in 2008 at several parties thrown by Viacom and other Hollywood producers and directors in the Beverly Hills and Santa Monica areas in California.  Thereafter, I have met Larry Stein, Esq. in person approximately ten other times at social gatherings.

Magazine could no longer run my story. Ms. Birnbaum indicated that "off the record, it was out of her hands now, and Gene Maddaus has taken over the story. Gene Maddaus is a close of personal friend of Larry Stein, Esq., and *Gene Maddaus gave all of my documentary evidence (Variety's entire file on my story including Exhibits 8 and 10) to Larry Stein, Esq.*

Brain Graden deleted the At-Issue Communications email between himself and I from *his account*. At this juncture Brian Graden and Larry Stein, Esq. thought that my email threat was gone – *until* I filed the instant lawsuit. All Brian Graden had to do is remove the At-Issue Communications emails from my accounts (which he had the means to do), and then *initiate an authenticity email challenge using the Cover-Up Emails.* Everything was removed from Defendants' servers, and they knew that when forensics stepped in to look at mine, it would reveal that the At-Issue Communications emails were no longer there.

Larry Stein, Esq. has relationships with the publications Hollywood Reporter and Variety Magazine.[21] Directly after the filing of Defendants' 4-10-19 Letter, Larry Stein, Esq. used his influence with Hollywood Reporter and Variety Magazine to publish articles to disparage me and damage my credibility in this lawsuit. As stated in 5-13-19 Letter [soon to be on the Court's Docket], Defendants intended to have another publication released directly after they filed their Motion for Sanction. On 5-14-19, Larry Stein, Esq. caused a publication to be released in the Hollywood Reporter disparaging me and attempting to damage my credibility in this lawsuit.[22] All of Defendants' attorneys were complicit in these publications in violation <u>California Rules of Professional Conduct</u>, Rule 3.6 and <u>New York Rules of Professional Conduct</u>, Rule 3.6

Defendants, and Defendants' attorneys, have known about the At-Issue Communications long before I ever initiated this lawsuit. For Defendants, and Defendants' attorneys, to claim that that this lawsuit was the first time they have seen or heard of the At-Issue Communications is fraud on the Court.

In particular, Larry Stein, Esq. knew about Exhibit 8 regarding Brian Graden's statutory rape in at least as early October 2017. All of Larry Stein, Esq. efforts to claiming that Exhibits 8 does not exist in this litigation, makes Larry Stein, Esq. an Accessory After-the-Fact to Brian Graden's statutory rape – and gives Larry Stein, Esq. a compelling reason to make false representations to this Court.

This letter has revealed the Larry Stein, Esq., and the Defendants' attorneys, willful and arrogant violation of the 2-13-19 Order and their numerous other intentional false representations to this Court. The Defendants, and Defendants' attorneys', have wasted the Court's time and resources, spit in the face of this Court-Room, and disrespected the

---

[21] A copy Larry Stein, Esq.'s biography from Russ August & Kabat's website that refers to Larry Stein, Esq.'s relationship with the Hollywood Reporter and Variety Magazine is attached as Exhibit M.
[22] A copy of the 5-14-19 Hollywood Reporter article is attached as Exhibit N.

entire judicial process.[23]

Even worse, Larry Stein, Esq. has the audacity to brag about his illegal and unethical conduct by listing this case as one of his top achievements in his biography on Russ August and Kabat's website [See Exhibit N].

I implore the Court to ask Larry Stein, Esq. that "As an officer of the Court, …" and inquire about his conduct described above.  If Larry Stein, Esq. denies those allegations, I will have evidence to impeach him.  Larry Stein, Esq. and Brian Graden try to avoid giving testimony at all costs.  Larry Stein, Esq. is also a percipient witness in this lawsuit. As to Defendants' request for an investigation by the USDA in their motion for sanctions, I will call their bluff and publicity stunt.  I welcome the investigation.

The conduct of the Defendants described in this letter is not the conduct of an innocent person who was wrongfully accused of rape and was being framed *vis-à-vis* forged emails.  Rather, it is the conduct of someone desperately trying to hide the truth of their wrongful acts.

## XI.    Conclusion.

It takes a lot of courage to come forward with a lawsuit like this.  People told me that the Defendants would try to villainize me.  I knew that going into this.  I did not know that the Defendants were going to disobey the law, violate the Court's orders, violate my due process rights, fabricate the existence of evidence, and defraud the Court.

I relied on the Court to protect my rights.  I relied on the 2-13-19 Order to protect my privacy rights, or I would have never signed the Consent Form.  I am now relying on the Court one more time to not permit the Defendants to engage in their conduct described in this letter.

Courts are the only place victims can go redress their grievances.  This is a highly publicized case.  If the Court does not fashion a punishment for Defendants, and Defendants attorneys, then it will send a message to all other victims of rape and sexual assault that the Courts will not protect you, and that defendant assailants will get away with it.  In sum, I respectfully request that the Court not let them get away with it.

## RELIEF REQUESTED:

The Court has withheld granting on my Request for Dismissal without Prejudice since 1-18-18 [Dckt #95]. In light of recent events, I respectfully request the Court to continue with withhold granting my Request for Dismissal without Prejudice until after the Court rules on the Relief Requested herein.  Thereafter, I would like to make determination if I

---

[23] Larry Stein, Esq., has spear-headed this litigation.  If the other Defendants' attorneys are truly innocent and Larry Stein, Esq. concealed the facts described herein from them, then the other Defendants' attorneys should perform their legal obligation to conduct a thorough investigation into these facts - and publicly state their good cause to disavow these wrongful acts.

want to proceed or withdraw my Request for Dismissal without Prejudice.

**RELIEF REQUESTED:**

Please see Appendix B.

Yours truly,

Rovier Carrington

28

# APPENDIX A

1.      **On February 26, 2019**, at 12:33 p.m. PST, FTI's Senior Director of Digital Forensics and Investigation, Mr. Erik Hammerquist, sent email to me and *all Defendants' attorneys* regarding the 2-13-19 Order's section about my iPhone X examination – stating that the meta-data required to the see email in their native form cannot be retrieved from iPhones.  Specifically, Mr. Hammerquist of FTI stated that:

> "Understood.  I will proceed with this collection using Cellebrite's UFED Physical Analyzer which is an industry leader in mobile forensics software.  As discussed before, this *will not capture any data residing within the native email* application due to inherent limitations I'm unable to bypass in forensically sound manner.  *Given the at-issue communications are emails, I don't know that I'm technologically able to comply with the order*.  To whom may we escalate this for clarity?"

[Dckt #118, Ex. A, pgs. 4-5 (email string between FTI and me/Defendants' attorneys)]

2.      **On February 27, 2019**, I filed a letter with Court, and attached documentary evidence as Exhibits A and B, demonstrating that, on February 27, 2019, I have fully complied with Order by (1) submitting my iPhone X to FTI (including FTI's email string), and (2) executing and filing the Consent Form for the subpoenas, respectively` [Dckt #118].

3.      **On March 4, 2019**, Microsoft informed Defendant Brian Graden's counsel, Stanton Larry Stein, Esq. ("Larry Stein, Esq."), that (1) it "has no data associated with the target account" (i.e. Rovier@thecarringtondiaries.com); (2) without the data to produce, the consent form you provided won't be necessary; and (3) "this concludes Microsoft's obligations under the subpoena".  Defendants failed to inform me, FTI, and the Court that Microsoft had no data to produce regarding the Rovier@thecarringtondiaries.com account (which necessarily means that Microsoft had no data to produce regarding the At-Issue Communications).  Neither I, nor the Court, became aware of this information until after Defendants filed their April 9th and 10th Motion Letters.  FTI never received this information.

4.      **On March 4, 2019**, GoDaddy sent a letter to Larry Stein, Esq. indicating that the 76 documents responsive to GoDaddy's subpoena (the "GD Docs") contain the account owner's [my] "confidential, proprietary, trade secret, and/or private information that warrants the special protection from public disclosure and from use for any purpose other than prosecuting or defending the action in which the subpoena is served." (the "3-4-19 GoDaddy Letter").  Further, 3-4-19 GoDaddy Letter stated that it will designate documents that contain confidential information as "CONFIDENTIAL" in order that I have the opportunity to give those documents confidential treatment, such as having

29

those documents sealed.  GoDaddy designated all 76 GD Docs as "CONFIDENTIAL".
Neither I, nor the Court, became aware of the 3-4-19 GoDaddy Letter until Defendants
filed their 4-19-19 Motion Letter [Dckt #112, attaching the 3-4-19 GoDaddy Letter].

     **5.**     **On March 5, 2019**, Defendants received 76 documents from GoDaddy
responsive to its subpoena (the "GD Docs").  Defendants never gave the GD Docs to FTI
in order for FTI to perform its Court ordered unbiased report.  Defendants failed to
inform me, FTI, and the Court that they received the GD Docs.  GoDaddy did not inform
me directly of the same because I no longer had any active accounts with GoDaddy.
Neither I, nor the Court, became aware of Defendants' wrongful concealment of the 3-4-
19 GoDaddy Letter and the GD Docs *until after* Defendants filed their April 9th and 10th
Motion Letters [Dckt #112, 114].  FTI has never received the GD Docs.

     **6.**     **On March 11, 2019**, Microsoft, in response Larry Stein, Esq.'s "request
to find out when the target account was opened and closed…" stated that "since the
account does not exist in any of our systems, we have very limited data available.  The
information we have is that the Office 365 domain was opened 10/12/15 and showed
usage through 9/2018."  [Dckt #114, Ex. E, pg. 29].

     **7.**     **On March 11, 2019**, in response to the subpoena to Google regarding the
trendsetterrovheir@gmail.com email account (and in response to Larry Stein's request for
"subscriber and recent login information"), Google sent Larry Stein, Esq. a letter stating
that it produced the attached:  (i) the "Hash Values for Production Values, (ii) the
"Certificate of Authenticity", and (iii) the "Google Subscriber Information [Dckt #114,
Ex. B, pgs. 3-6]

     **8.**     **On March 11, 2019**, Google sent me an email asking me if I wanted to
object the subpoena regarding my email account roviercarrington@gmail.com, and to
direct further inquiries to Defendant's counsel Larry Stein, Esq. (my account
roviercarrington@gmail.com was still in use in order to receive Google's email).  [A
copy of an email string between me and Google is attached as Exhibit "E"]

     **9.**     **On March 13, 2019**, Google's counsel sent Larry Stein, Esq. a letter
stating (I) it already produced documents for trendsetterrovheir@gmail.com, and it will
not be producing documents until 3-21-19 because the account owner (i.e. me) has a
statutory time to object {para. 1}; and (II) denying Larry Stein's request for content
information regarding the trendsetterrovheir@gmail.com because (i) Google does not
possess any content for trendsetterrovheir@gmail.com, and (ii) that the Consent Form
that I signed does not authorize/permit content information, and content information can
only be provided by use another type of consent order {para. 2} [Dckt #114, Ex. B, pgs.
1-2].

     **10.**     **On March 14, 2019**, I filed a letter with the Court (copying all counsel)
informing the Court that FTI has completed its report on my iPhone X, with the attached
the report of FTI's findings on my iPhone X [A copy of my 3-14-19 Letter is attached as

Exhibit "F"][24]

**11.**    **On March 15, 2019**, I replied to Google's 3-11-19 email stating that I had signed a Consent Form subject to the 2-13-29 Order, and I quoted the exact procedures [*i.e.* the documents go directly to FTI, and not to the Defendants] and limited scope of the subpoena.  Specifically, my email stated that:

> "Last, I would like to reserve my right to object should Google or the defendants act in manner that is not in strict compliance with the Order, Subpoena, and Consent Form."  [*See* Exhibit E].

**12.**    **On April 1, 2019**, I filed a letter with the Court stating that FTI has completed its report regarding the information (for only the roviercarrington@gmail.com account) that Google provided to FTI in response to the Google subpoena, with the attached the report of FTI's findings [Dckt #119].

**13.**    **On April 4, 2019**, (unaware that the Defendants had already received, and were concealing for over 30 days, the documents responsive to the subpoenas sent to GoDaddy, Microsoft, and Google for the trendsetterrovheir@gmail.com account) I filed a letter with the Court indicating that:

>    **A.**    Defendants did not make any objection that I fully complied with the Order as stated in my letter of February 27, 2019;
>    **B.**    I informed FTI that both GoDaddy and Office365 (aka Microsoft) informed me that, since the accounts were deleted, all data has been removed from their servers.  I requested that FTI ask those companies to provide something to FTI stating that there is no evidence/data.  However, FTI responded that they will not contact GoDaddy or Office365 about the recoverability of data, because it is outside the scope of the Court Order of 2-7-19.  I attached FTI's email that demonstrates FTI had not received any information in response to the Microsoft or GoDaddy subpoenas;
>    **C.**    No information contained the findings of the FTI's reports regarding my iPhone X and the Google subpoena indicated that I engage in any wrongdoing, yet alone perpetrating a fraud on the Court;
>    **D.**    It had been approximately 20 days since Microsoft and GoDaddy failed to comply with the Order by failing to respond the subpoenas, and it does not appear that they were going to comply;
>    **E.**    There is no evidence responsive to the Order that would warrant the Defendants to bring a motion for sanctions; and
>    **F.**    I renewed my Request for Dismissal without Prejudice.
> [Dckt #117; my 4-4-19 Letter that attached the email string between me and FTI

---

[24] My 3-14-19 Letter was inadvertently not mailed to the In Pro Se office of this Court.  As a result, my 3-14-19 Letter does not appear on the Court's Docket.  On 4-30-19, I mailed a copy of my 3-14-19 Letter to the In Pro Se office of this Court.  Thus, my 3-14-19 Letter should appear on the Court's Docket within a few days.

referenced in section B above].[25]

**14.** **On April 9, 2019**, Defendants' filed their 4-9-19 Motion Letter requesting "permission to file publicly a redacted version of [Defendants' April 10, 2019 Motion letter], and the supporting materials thereto, that details ***the findings* of the discovery ordered by the [Order]"**.  It is significant to recognize that the 2-13-19 Order requires the unbiased *findings* of the FTI reports regarding the At-Issue Communications derived from the documents received that were responsive to the subpoenas.  The Order ***does not*** permit Defendants to make their own false interpretations of the documents that they unlawfully possess – together with selected documents that they interpret in order to fit their untruthful narrative [Dckt 114, Exs. A-F].  {Defendants' 4-9-19 Letter  attached the 3-4-19 GoDaddy Letter regarding the confidentiality of the GD Docs [Dckt #112]}.

**15.** **On April 10, 2019,** *in under 24 hours and before I had an opportunity to respond,* the Court granted Defendants' request in their 4-9-19 Motion Letter to file redacted portions of their 4-10-19 Motion Letter and supporting materials [Dckt #113].

**16.** **On April 10, 2019**, Defendants' filed their 4-10-19 Motion Letter.[26]  The 4-10-19 Motion Letter Defendants is not an analysis of the Court ordered findings of the FTI reports (that were limited in scope to be *solely* findings regarding the At-Issue Communications).  Rather, the 4-10-19 Motion Letter is a purported analysis of the attached Exhibits A- F, which is a "data-dump of 105 pages as follows:

**Ex. A:**  FTI's Report on the iPhone X which I already filed with the Court on 3-14-19.
**Ex. B:**  Regarding Google's account for trendstetterrovheir@gmail.com: Selected communications between Mr. Stein and Google, the Hash Values for Production Values, the Certificate of Authenticity, and the Google Subscriber Information.

**Ex. C:**  During August 2018, various emails between FTI and the parties' counsel.
**Ex. D:**  FTI's Report on Google's account for roviercarrington@gmail.com.
**Ex. E:** Selected communications between Mr. Stein and Microsoft.
**Ex. F:**  GoDaddy's 4-4-19 Letter re: confidential documents that were attached to Defendants' 4-9-19 Motion Letter; GoDaddy's Certificate of Authenticity; GoDaddy's responsive documents to the subpoena [GD docs 1-76].[27]

---

[25] It should be noted, that FTI never received any documents responsive the 3 subpoenas, except for Google's documents responsive to 1 of the 2 Gmail accounts – roviercarrington@gmail.com.  For all other documents that were responsive to the 3 subpoenas, Defendants took wrongful possession of them and concealed them from FTI, the Court, and me for approximately 30 days in violation of the 2-13-19 Order.
[26] Although Larry Stein, Esq., drafted the 4-10-19 Motion Letter, *all Defendants' counsel signed the letter*.
[27] Defendants' 4-10-19 Motion Letter was the first time both the Court and I received Exhibits B, C, E, and F.  FTI has never received Exhibits B, C, E, and F.  Thus, Defendants prevented FTI from performing their unbiased Court ordered reports pursuant to the 2-13-19 Court Order.

Defendants' 4-10-19 Motion Letter also requested that the Court hold a pre-motion conference regarding Defendants' intent to file a Motion for Sanctions [Dckt# 114, pg.1, para. 1].

17.     **On April 12, 2019,** the Court, *on its own initiative and before I had a reasonable opportunity to respond*, terminated the pre-motion conference request in Defendants' 4-10-19 Motion Letter, and entered an Order stating that it will proceed directly to set a briefing schedule on Defendants' requested motion for sanctions, and requiring me to appear in this NY Court-room at a hearing scheduled on 7-25-19 (the "4-12-19 Order [Dckt #116].

33

# APPENDIX B
## [RELIEF REQUESTED]

**1.**      Defendants, and Defendants' attorneys, are found that they have obstructed the 2-13-19 Order [Dckt #102] in violation of 18 U.S.C. Section 1509.

**2.**      Defendants, and Defendants attorneys, are deemed/held in Contempt of Court/2-13-19 Order.

**3.**      The Court's Order of 4-12-19 [Dckt #116] is deemed void, *nunc pro tunc*.

**4.**      The Court issue Evidentiary Sanctions forthwith, against all Defendants that all At-Issue Communications shall be deemed authentic and admissible.

**5.**      Defendants' attorneys: (1) RUSS AUGUST & KABAT, Stanton L. Stein, Esq., Diana S. Sanders, Esq.; (2) LOEB & LOEB, LLP, Wook Hwang, Esq., Sarah Schacter, Esq.; and (3) SHERMAN & STERLING LLP, Stephen Fishbein, Esq., Christopher LaVigne, Esq. – are barred from practicing law in the United States District Court, Southern District of New York (Foley Square).

**6.**      Defendants' attorneys: (1) RUSS AUGUST & KABAT, Stanton L. Stein, Esq., Diana S. Sanders, Esq.; (2) LOEB & LOEB, LLP, Wook Hwang, Esq., Sarah Schacter, Esq.; and (3) SHERMAN & STERLING LLP, Stephen Fishbein, Esq., Christopher LaVigne, Esq. – are barred from representing any of the Defendants in this action, or any other action, against Plaintiff Rovier Carrington.

**7.**      The Court grants Plaintiff the right to bring a Motion for Terminating and Monetary Sanctions [and Evidentiary Sanctions if the Court does not impose them forthwith] ("Motion for Sanctions") against, and a Prove-up Hearing. The Court will set a shortened briefing schedule for Defendants' Oppositions and Plaintiff's Reply. Defendants and Defendants' counsel:

      1.    Brian Graden.
      2.    An authorized representative of Brian Graden Media, LLC
      3.    An authorized representative of Viacom, LLC.
      4.    An authorized representative of Viacom International, Inc.
      5.    An authorized representative of Paramount Pictures Corporation
      6.    An authorized representative of the Brad Grey Estate
      7.    An authorized representative of the Brad Alan Grey Trust
      8.    Stanton L. Stein, Esq.
      9.    Diana A. Sanders, Esq.
    10.    Wook Hang, Esq.
    11.    Sarah Schacter, Esq.
    12.    Stephen Fishbein, Esq.

13.     Christopher LaVigne, Esq.

Shall all be required to personally attend the hearing on Plaintiff's Motion for Sanctions.
Plaintiff will not be required to, but has the option, to personally attend the hearing of his
Motion for Sanctions.  Plaintiff shall be permitted to appear at the hearing telephonically.
If the Court grants the Motion for Terminating Sanctions, the Court shall shortly
thereafter set a date for a Prove-up Hearing.

**8.**     The Court recommends attorneys Stanton L. Stein, Esq. (aka Larry Stein, Esq.)
and Diana A. Sanders, Esq. to the California State Bar for discipline.  The Court
recommends attorneys Wook Hwang, Esq., Sarah Schacter, Esq., Stephen Fishbein, Esq.,
and Christopher LaVigne, Esq. to the New York State Bar for discipline.

**9.**     The Court reserves me the right to proceed or withdraw my Request for Dismissal
without Prejudice until after the Court rules in the Relief Requested herein.

35

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 113

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
ROVIER CARRINGTON,

        Plaintiff,

    -   against -

BRIAN GRADEN,
BRIAN GRADEN MEDIA, LLC,
VIACOM, INC.,
VIACOM INTERNATIONAL, INC.,
PARAMOUNT PICTURES CORPORATION,
BRAD GREY, BRAD GREY ESTATE,
BRAD ALAN GREY TRUST,

        Defendants.
---------------------------------------------------------------X

Case No. 18-CV-04609-KPF

Hon. Katherine Polk Failla

**AFFIDAVIT**

COUNTY OF _____     )
                         )
STATE OF _____     )

    I, ROVIER CARRINGTON, being duly sworn, deposes and says the following under

penalties of perjury, and criminal sanction.

    1.   I have personal knowledge of the matters set forth below, and the exhibits annexed hereto

are true copies of the original documents.

    2.   Annexed hereto, and to Plaintiff's Amended Complaint, as **Exhibit(s) Two through**

**Eleven,** are a series of emails I received, or exchanged, from third parties to my lawsuit, or from

Defendant Brian Graden, over the course of the past eight years.

    3.   Each and every email annexed to my Amended Complaint, and hereto, are forwarded

copies of the original email I received, or exchanged, in the exact same condition, upon which

the email was received, or exchanged.

1



4.   I have not doctored, fabricated, or altered, any of the emails annexed to my Amended Complaint, and hereto.

5.   I have not doctored, fabricated, or altered, any of the content contained in any of the emails annexed to my Amended Complaint, and hereto.

Further affiant sayeth not.

By: _____

ROVIER CARRINGTON

Sworn to before me this
_ day of June, 2018

SEE ATTACHED

Notary Public  _____  _____

2

### DECLARATION OF JEREMY ESCHERICH

I, Jeremy Escherich, declare as follows:

1. I have personal knowledge of the facts set forth herein.

2. I served as Rovier Carrington's manager from on or about October 2010 to on or about October 2011.

3. During most of the time I served as Mr. Carrington's manager, he went by the performing name of Trend Rovheir.

4. During all times that Mr. Carrington worked with Reno Logan on the Paramount studio lot, he went by the name Trend Rovheir.

5. I have Mr. Logan on multiple occasions, and had multiple meetings with him, and Mr. Carrington, at Mr. Logan's office on the Paramount studio lot.

6. Mr. Carrington had an extensive relationship with Reno Logan, from October 2010 to June 2011.

7. During this period, Mr. Carrington exchanged hundreds of text messages with Mr. Logan, and corresponded with him on a daily basis. Further, Mr. Carrington and Mr. Logan, met with each other, at Mr. Logan's office, on the Paramount studio lot, at least 30 times.

8. Mr. Carrington's meetings with Mr. Logan were principally related to the production of his reality show, and the direction of the pilot thereto.

9. During these meetings, Mr. Logan began introducing Mr. Carrington to executives of Paramount and Viacom, including, some of the key executives and officers of the companies, such as; Sumner Redstone, the majority owner, and then Executive Chairman of the Board of Directors of Viacom.

1



EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 116

10. Mr. Logan wanted production on Mr. Carrington's reality show to start and even signed a letter with him and Mr. Carrington's then publicist, to entice investors to fund the reality show pilot and place their products in the show.

11. Mr. Carrington was also working on a dark comedy series at the time entitled "Inheritance". Mr. Carrington had created a television show "Bible" for the series and registered it with the Writers Guild of America (WGA). The idea was to effectively have a multi-show deal with Viacom subsidiaries, whereby Inheritance would be produced by Paramount, while Trendsetter (also registered with WGA) would remain under the auspices of MTV for distribution.

12. Upon information and belief, Mr. Carrington was introduced to Brad Grey, the then CEO and Chairman, of Paramount Pictures, in December of 2010.

13. In January 2011, Mr. Grey invited Mr. Carrington to attend the Golden Globe Awards - After Party, at the Beverly Hills Hilton. I went with Mr. Carrington to this party.

14. At the party, Mr. Grey came up to Mr. Carrington, and demanded that he leave, and go wait for him in his hotel room, to discuss studio business.

15. Mr. Carrington of course agreed, as he had no other choice, since Mr. Grey was the head of Paramount.

16. Myself and Daniel Jackson, a friend of Mr. Carrington's, who was also attending the event, went with Mr. Carrington to Mr. Grey's hotel room.

17. When Mr. Grey arrived, he ordered both Mr. Jackson and myself to leave the room, so that he could be alone with Mr. Carrington.

18. While outside the hotel room, I could hear Mr. Carrington screaming, crying, and begging Mr. Grey to stop. This went on for around 15 to 20 minutes.

2

19. I saw Mr. Grey leave the hotel room, and then I went inside, and saw Mr. Carrington.

20. His clothes were ripped, and his pants were down, and he was bruised throughout his body, and bleeding from his face and anus.

21. Mr. Carrington's pants, and underwear, were down around his ankles, and he was wearing briefs, not boxers.

22. Mr. Carrington explained to me that Mr. Grey had just raped him, and had anal sex with him, without a condom. I believe Rovier Carrington is telling the truth, and that Brad Grey raped him.

23. Mr. Carrington informed me that he notified Mr. Logan the next day about what had occurred via email. I have viewed the email annexed as **Exhibit Three** to the Amended Complaint, and based on what I know of the incident, and the relationship Mr. Carrington had with Mr. Logan, I believe that to be a true and correct copy of the emails they would have exchanged.

24. Mr. Logan had a vested interest in his relationship with Paramount and Viacom, and therefore, Mr. Carrington's refusal to abide by Mr. Grey's commands, would have greatly affected this relationship, as well as the money he would have made from production of Mr. Carrington's shows, which is why Mr. Logan cautioned Mr. Carrington to do whatever Mr. Grey, and others, such as Mr. Redstone, were ordering him to do. This is also why, I can confirm, based on my understanding, and knowledge of their relationship, that the emails annexed to Mr. Carrington's complaint, are true and correct, and have likely been deleted by Mr. Logan.

3

25. I can confirm that the incident complained of by Mr. Carrington from June 8, 2011, at the "Super Eight" premiere, occurred because I was there. This led to Mr. Carrington sending Mr. Logan the email, annexed to the complaint, as **Exhibit Six**.

26. Following this incident, Mr. Carrington received multiple calls from representatives of Viacom or Paramount, requesting him to sign a non-disclosure agreement, and accept money, to not report the incident. When Mr. Carrington refused, his relationship with Paramount, and Reno Logan, was effectively terminated, and ended.

I declare under penalty of perjury pursuant to the laws of the State of New York, the State of California, and the United States that the foregoing is true and correct.

Executed this 3rd day of August, 2018 at __10:14am__ __Nevada__.

Jeremy Escherich

4

## DECLARATION OF DANIEL JACKSON

I, Daniel Jackson, declare as follows:

1. I have personal knowledge of the facts set forth herein.

2. I have known Mr. Rovier Carrington since at least 2004, and I am proud to call him a friend.

3. Mr. Carrington used to go by the performing name Trend Rovheir.

4. In January 2011, Mr. Carrington invited me to attend the Golden Globe Awards – After Party, at the Beverly Hills Hilton. I went with Mr. Carrington to this party.

5. At the party, Mr. Brad Grey came up to Mr. Carrington, and demanded that he leave, and go wait for him in his hotel room, to discuss studio business.

6. Mr. Carrington agreed, and went to Mr. Grey's hotel room.

7. Myself, along with Jeremy Escherich, went with Mr. Carrington to Mr. Grey's hotel room.

8. When Mr. Grey arrived, he ordered both me and Jeremy Escherich to leave the room, so that he could be alone with Mr. Carrington.

9. Mr. Escherich waited outside of the hotel room waiting for Mr. Carrington, when we began to hear Rovier screaming, crying and begging Mr. Grey to "stop". I banged on the hotel room door outside to let me in. This went on for 15 to 20 minutes.

10. I saw Mr. Grey leave the hotel room, and then I went inside, and saw Mr. Carrington.

11. His clothes were ripped, and his pants were down, and he was bruised throughout his body, and bleeding from his face and anus.

12. Mr. Carrington's pants, and underwear, were down around his ankles, and he was wearing briefs, not boxers.

13. It is my belief that Mr. Grey raped Mr. Carrington.

14. I am also aware of Mr. Carrington's relationship with Mr. Brian Graden.

15. Mr. Carrington told me that Mr. Graden drugged and had unprotected sex with him, and that he recorded videos of some of their sexual encounters, without his consent.

16. I went with Mr. Carrington, and actor Brad Bufanda, to



Mr. Graden's house on one occasion. Mr. Graden was having, what appeared to be, a "sex party", with over two dozen males, of all ages, having group sex.

17. Upon information and belief, it was in June of 2015, between the 8th and 9th.

18. Mr. Carrington, and I felt extremely uncomfortable at this party, did not want to participate, whatsoever, and wanted to leave.

19. When we attempted to exit, Mr. Graden screamed at Mr. Carrington, physically attacking him, and threatened that if he left the party, his reality show would never be made.

20. Mr. Graden grabbed Rovier by the neck, and pushed him to the side of the party, near the front of the house. I followed them, and got into an argument with Graden, and we were about ready to get into a physical altercation and fight. At that point, Rovier interceded, and the two of us backed down, and I dragged Rovier out of Graden's house, and we left.

I declare under penalty of perjury pursuant to the laws of the State of New York, the State of California, and the United States that the foregoing is true and correct.

Executed this **3** day of August, 2018 at ____**SC**____.

Daniel Jackson

1

## DECLARATION OF MERCEDES STANLEY

I, Mercedes Stanley, declare as follows:

1. I have personal knowledge of the facts set forth herein.

2. In June or July 2010, I was a part of the cast for the reality show "The Life of a Trendsetter", and went to several meetings with an MTV representative, regarding the production of the show.

3. During our relationship, Mr. Rovier Carrington, who at the time went by the name Trend Rovheir, confided in me, and explained that Mr. Brad Grey had sexually assaulted him on at least two occasions.

4. When Mr. Carrington revealed this to me, he was extremely upset, crying, and did not know what he should do, because if he reported it, he feared no one would believe him, and that he would be blacklisted throughout Viacom, and the entertainment industry in general.

I declare under penalty of perjury pursuant to the laws of the State of New York, the State of California, and the United States that the foregoing is true and correct.

Executed this 1 day of August, 2018 at Nevada

Mercedes Stanley

Exhibit A    Exhibit 4

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 122

## DECLARATION OF ALEX VEGA

I, Alex Vega, declare as follows:

1. I have personal knowledge of the facts set forth herein.

2. I was a part of the cast for the reality show "The Life of a Trendsetter" in 2014, with Ross Breitenbach, as producer.

3. My involvement with the show ended when Mr. Rovier Carrington agreed to work with Mr. Brian Graden instead of Mr. Breitenbach.

4. I am also aware of Mr. Carrington's relationship with Mr. Brian Graden.

5. Throughout 2015 and 2016, Mr. Carrington told me on multiple occasions, that Mr. Graden had drugged him, and had unprotected sex with him, and that he had recorded videos of their sexual encounters, without his consent.

6. On or about the evening of November 6, 2016, I was with Mr. Carrington, and witnessed Brad Grey, with a woman, who I assume was his wife, outside the Dan Tanas restaurant in West Hollywood, yelling at Mr. Carrington, and threatening him.

7. Mr. Grey offered to take Mr. Carrington to China to the premiere of the movie Allied. When Mr. Carrington refused this invitation, Mr. Grey became argumentative, and threatened him, and I distinctly remember him saying to Mr. Carrington, stated that "Without me or Paramount fucking you, your career will never succeed." Mr. Grey stated this while holding Mr. Carrington's penis. Grey's wife laughed at this.

I declare under penalty of perjury pursuant to the laws of the State of New York, the State of California, and the United States that the foregoing is true and correct.

Executed this 2 day of August, 2018 at California

Alex Vega

Exhibit A   Exhibit 5

## DECLARATION OF NADIA STANLEY

I, Nadia Stanley, declare as follows:

1. I have personal knowledge of the facts set forth herein.

2. I served as one of Rovier Carrington's managers from on or about June 2010 to on or about June 2011.

3. During most of the time I served as Mr. Carrington's manager, he went by the performing name of Trend Rovheir.

4. In June/July 2010, I went to several meetings with a Viacom representative regarding MTV signing Mr. Carrington's reality show, "The Life of a Trendsetter."

5. I was apart of Mr. Carrington pitching this reality show to MTV's Liz Gateley, and her assistant, Heather.

6. Mr. Reno Logan requested Mr. Carrington to fire me because I would have received a profit, or up to a 15% interest, from any shows or projects, that Mr. Carrington was involved in with Viacom, or that was produced by Viacom, or any of its related properties, such as MTV or Paramount. Consequently, Mr. Carrington allowed my contract with him to expire, around June 2011.

7. During our relationship, Mr. Carrington told me that Mr. Brad Grey sexually assaulted him and that Mr. Grey threatened to destroy his relationship with Paramount/Viacom, and have him blacklisted, if he reported that Brad Grey had sexually assaulted him.

I declare under penalty of perjury pursuant to the laws of the State of New York, the State of California, and the United States that the foregoing is true and correct.

Executed this **2** day of August, 2018 at ___**Nevada**___ .

_____
Nadia Stanley



## DECLARATION OF ███████████

I, ███████████ declare as follows:

1. I have personal knowledge of the facts set forth herein.

2. I am a professional actor and have appeared in various television shows, and pilots.

3. In November 2010, I had a meeting with Rovier Carrington and Reno Logan on the Paramount Studio lot, at Reno Logan's office. At the time, Mr. Carrington went by the performing name, Trend Rovheir. I will never forget this meeting.

4. Mr. Carrington requested of me to attend this meeting with him because his manager did not want him going to the lot by himself.

5. When Mr. Logan found out that I was an actor, he had me audition for a movie he supposedly casting.

6. At the meeting, Mr. Logan requested that Mr. Carrington and I, play a game.

7. The game consisted of Mr. Carrington and I supposedly showing off our acting abilities, in case Paramount wanted us to be a part of a movie Mr. Logan was involved in casting.

8. First, Mr. Logan asked Mr. Carrington to fall down and pretend to be dead.

9. The next exercise involved Mr. Carrington seducing a man. Mr. Logan had Mr. Carrington demonstrate how he would seduce a man.

10. Mr. Logan then instructed Mr. Carrington and myself, to take a couple shots of liquor, whereupon Mr. Logan began massaging his penis (under his pants), and asked Mr. Carrington if he was good at "sucking dick", and if Mr. Carrington could handle Mr. Logan's penis. Mr. Logan then hugged Mr. Carrington from behind, and rubbed his penis against his anus.

11. The individuals and companies involved in Mr. Carrington's lawsuit, have exceptional power, and influence, throughout the entertainment industry, and therefore, I request that my Declaration, and testimony, not be filed, and kept under seal, for fear of retaliation.

Executed this 2 day of August, 2018 at ███████████ 



# ROVIER CARRINGTON
## SUPPLEMENTAL DECLARATION

I, Rovier Carrington, supplement my previous affidavit, and on this 24th day of August 2018, declare as follows:

1. I am the plaintiff in this matter, and have personal knowledge of the facts set forth herein.

2. On or about April 2015, I gave to Defendant Brian Graden my email password to the accounts used for our correspondence.

3. Mr. Graden's also entrusted me with the security code to his house. Annexed hereto as **Exhibit A** is a text message exchanged between Mr. Graden and myself reflecting this security code.

4. On May 24, 2018, my active email accounts were accessed by an unauthorized party, and upon a subsequent review, I discovered that many of the emails I exchanged with Brian Graden, and the other defendants, were deleted without my prior knowledge or consent.

5. I state again, under penalties of perjury, that I did not delete any emails or attempt to hide valuable information. I am telling the truth and would very much appreciate if the court will issue subpoenas to obtain the information from my email accounts, as well as Mr. Graden's.

The declarant further sayeth not.

Executed: Los Angles, California, this 24th day of August 2018.

Rovier Carrington

Exhibit A    Exhibit 8



**From:** Brian Graden <brian.graden@gmail.com>
**Date:** May 15, 2015 at 11:17:46 PM PDT
**To:** Rovier Carrington <roviercarrington@gmail.com>
**Subject: Re: Build a Show "Reality Show"**

Babe, all I can think about is pounding you like I did when you were a boy. Daddy owns you. My boy... :)

b

On Fri, May 15, 2015 at 10:40 PM, Rovier Carrington <roviercarrington@gmail.com> wrote:
Brian,

Thank you for reviewing my reality concept. I have so many ideas like a bisexual love interest and I could seek a third whose fully gay, but pick only one during the finale. Major right ? Hopefully that doesn't take away from the public's interest in my dramatic series, which I'll send you. I'll discuss with Jane and Simon for the press. Omg, we could totally pitch to MTV due to you convincing Sumner to release me - I just request you protect me from him and Brad who ruined my HBO deal. I must mention, I pondered if you had me eradicate my business relationship with Ross just so you could own me and not really produce my shows... You totally request sex before business so just thoughts.



Exhibit
B



variety.com

# Hollywood 'It Boy' Faked Emails in Rape Lawsuit, Defense Says

*Gene Maddaus*

5-7 minutes

A self-described Hollywood "It boy" concocted fake emails to support a $100 million sexual assault lawsuit against Viacom, the defense alleged on Wednesday.

Rovier Carrington filed suit in May 2018, accusing former MTV executive Brian Graden of exploiting him for sex. Carrington also alleged that he was raped by Brad Grey, the late chairman and CEO of Paramount Pictures, and was subsequently "blacklisted" at Viacom.

Carrington has since asked the court's permission to drop the lawsuit, but the defense is not letting the matter go that easily. In a letter to Judge Katherine Polk Failla on Wednesday, attorney Larry Stein alleges that a forensic examination has determined that Carrington faked 39 emails to support his suit. The emails, many of which were purported to be between Graden and Carrington, were intended to show contemporaneous corroboration for his sexual abuse claims.

"Not one of 39 contested emails that Plaintiff filed in support of his claims exists in native form in any of his accounts," Stein writes.

Carrington claimed to have developed various ideas for reality shows, including one based on his own life, to be called "The Life of a Trendsetter." He alleged that Graden used the promise of developing his ideas to exploit him for sex, and then stole his pitch for a gay dating show.

Stein alleges that Carrington deleted two email accounts in order to try to thwart discovery in the case. According to the letter, Carrington's attorney, Kevin Landau, had previously claimed that Carrington had deactivated the primary email account in question years earlier, and that he could not recover the original emails.

But the defense obtained discovery from Google, showing that the account was deactivated on June 19, 2018, a day after Carrington filed copies of the emails along with an amended complaint. Another email account, hosted by Microsoft, was also deleted in September 2018, well after notices to preserve evidence and the commencement of court-ordered discovery.

"In short, Plaintiff has affirmatively sought to delete all traces of the email records that he filed as exhibits to the amended complaint in this action," Stein writes.

Landau backed out of the case in September, saying he had not been paid for his legal work. Carrington has since represented himself.

Stein said he would file a motion for monetary sanctions against Carrington for his "fraud on the Court and spoliation" of evidence.

- 



Netflix just went deeper into hock: The company announced the pricing of unsecured bonds in a transaction raising around $2.2 billion, giving it more cash to invest in content, real estate and infrastructure. The streamer had said Tuesday that it planned to raise $2 billion through a new debt offering, bringing its long-term debt to [...]



- When New Mexico's new governor, Democrat Michelle Lujan Grisham, signed SB2 in late March, the headline was that it more than doubled the annual cap on the state's 25%- to 30%-per-project refundable film and TV tax credit, from $50 million to $110 million. Arguably more noteworthy, however, was the new law's provision that the cap [...]





Actress Gabrielle Union said she was nearly 17 years past the expiration date of her mass appeal when she got the brand partnership of her dreams. "They tell you that after 26, 'Honey, hang it up,'" Union said on the latest episode of the Variety podcast "Strictly Business." The episode was recorded during a keynote [...]



- Just weeks after Spotify launched in India without securing rights from Warner/Chappell Music Publishing, it is being sued by the country's oldest record label, Saregama, and will remove that company's 120,000-song catalog from its platform within 10 days, according to reports in Inc42 and Music Business Worldwide. The streaming giant had approached the label for [...]

- 



Def Jam Recordings has appointed industry veterans DJ Mormile and Jeff Burroughs (pictured above, right and left, respectively) to senior executive roles in its Los Angeles and New York offices, respectively. The announcement was made today by label Chairman & CEO Paul Rosenberg. Mormile — the L.A.-based manager who counts producer Mike Will Made It and [...]



- Sony/ATV Music Publishing has signed Grammy-winning songwriter, artist and producer Mustard (formerly known as DJ Mustard) to a worldwide deal. The Los Angeles-based hitmaker has worked with artists including YG, Rihanna, 2 Chainz, Drake, Migos, Chris Brown, Nipsey Hussle, Big Sean and many others, and won Best R&B Song at this year's Grammy Awards for [...]

-





AT&T believes it will hang on to DirecTV's exclusive rights for the NFL Sunday Ticket, even as the league has said it's considering ending the satellite operator's exclusivity to extend the out-of-home games package to streaming platforms. "The exclusivity [of Sunday Ticket] should remain as we go forward on DirecTV," AT&T CEO and chairman Randall [...]



hollywoodreporter.com

# Inside Hollywood Reporter's New York Party With Trevor Noah, Sam Bee, CNN, 'Today' Stars and More

*Hilary Lewis , Katie Kilkenny*

6-7 minutes

---

**The event, held in conjunction with the publication of the magazine's annual New York issue, also hosted Gayle King, Susan Zirinsky, Michael Strahan, Andy Lack, Naomi Watts and the team behind Showtime's upcoming Roger Ailes series.**

Though the 2020 presidential election is still over a year away, President Donald Trump's future Democratic challenger was a hot topic at *The Hollywood Reporter*'s annual New York Power event on Thursday night.

*CBS This Morning* co-host Gayle King is still hoping her best friend Oprah Winfrey throws her hat in the ring, though Winfrey has repeatedly said she won't run: "Oprah says to me many times, 'The only way I'm running is if I get a call from Jesus,'" King told *THR*. "And I said to her, 'Jesus called me, what should I tell him?'"

"I would say Kamala Harris' rollout was probably one of the best; I think Mayor Pete Buttigieg has surprised everyone, but Joe Biden

is an old pro and we have to see his rollout," *The View* co-host Sunny Hostin added of the impending presidential contest.

*Full Frontal* host Samantha Bee couldn't decide who she thought might end up going head-to-head with Trump, but in terms of media savvy, "Beto works it pretty hard. Kamala is great. Elizabeth Warren, I love her. She's personally calling every single person who sends her $5."

The gathering of news and political insiders, co-hosted by the Committee to Protect Journalists and Reporters Committee for Freedom of the Press, took place at The Pool in midtown Manhattan in conjunction with the publication of *THR*'s ninth annual 35 Most Powerful People in New York Media list.

This year's honorees turned out in force for the celebration, sponsored by Breguet. Newly minted CBS News topper Susan Zirinsky and *60 Minutes* head Bill Owens made the scene as did networkmates Gayle King, Lesley Stahl and Jeff Glor, who was joined by a CNN contingent that included Chris Cuomo, anchor Kate Bolduan and Brian Stelter with wife, NY1's Jamie Stelter — NY1 anchor Pat Kiernan and CNN alum and *Savage News* novelist Jessica Yellin also worked the room. *The Daily* host Michael Barbaro, who was there with *New York Times* assistant managing editor Sam Dolnick, took questions on the red carpet, and recently appointed *People* editor-in-chief Dan Wakeford, Fox News' Brian Kilmeade and Juan Williams, *The Daily Beast*'s editor-in-chief Noah Shachtman and Vice Media CEO Nancy Dubuc also made an appearance.

Barbaro commented on the plethora of Democratic candidates vying for the 2020 primary, which he saw an asset for journalists:

"Incumbency is, by definition, kind of a simple story, even when it's complicated, there's one person. The Democratic field is now almost in the dozens, so it's just extremely interesting," he said.

CBS' sister network Showtime, whose upcoming limited series about Roger Ailes, *The Loudest Voice*, graces the cover of this week's issue, was well-represented with CEO David Nevins and stars Naomi Watts and Annabelle Wallis alongside writer-producers Gabe Sherman and Jennifer Stahl.

Late-night hosts Trevor Noah and Samantha Bee made the scene with *Late Show* producer Chris Licht and *Last Week Tonight With John Oliver* producer Katie Thomson; Bee caught up with Watts for a chat during the red-carpet portion of the event.

NBC's *Today* show was well represented with co-hosts Savannah Guthrie and Hoda Kotb joined by morning colleagues Al Roker, Craig Melvin, Carson Daly, Dylan Dreyer, Sheinelle Jones and executive producer Libby Leist. Melvin, his wife Lindsay Czarniak and NBC News correspondent Stephanie Ruhle partied until nearly the end of the night.

On the red carpet, Kotb talked about the last day of her *Today* fourth-hour co-host Kathie Lee Gifford, who she called a "legend." "I don't know that I've ever worked with someone that loved me that much," she said. On her way off the carpet, she exchanged a hug with Guthrie, who had just arrived.

Meanwhile, ABC's morning and early afternoon contingent of Michael Strahan and *View* co-host Sunny Hostin made the rounds along with MSNBC anchors Lawrence O'Donnell and Ari Melber and MSNBC president Phil Griffin, NBC News execs Andrew Lack and Noah Oppenheim and ABC chief legal affairs anchor Dan

Abrams.

Also spotted at the event was Martha Stewart, who at one point toasted another guest who asked her how she felt about Lori Loughlin's current infamy due to the college admissions cheating scandal. She raised a glass as the guest said Loughlin's "going to be in the big house."

Keegan-Michael Key could be found, at one point, in a huddle with Noah, Strahan and *The Hollywood Reporter*'s Matthew Belloni (Key's wife Elisa Pugliese was also in attendance). Ann Coulter chatted with Carolines on Broadway owner Caroline Hirsch about the challenges of comedy in the #MeToo era, while *Sex and the City* author Candace Bushnell gave Watts a hug for the cameras and Brooke Shields, who attended with husband Chris Henchy, could be seen talking with fellow former models Carol Alt and Karen Duffy and staying late into the night.

Ironically, PayPal co-founder Peter Thiel, famous for helping to fund Hulk Hogan's (Terry Bollea's) lawsuit against Gawker, mingled at the event among the New York media types as Coulter's date. Thiel was overheard discussing Ryan Holiday's 2018 book *Conspiracy: Peter Thiel, Hulk Hogan, Gawker, and the Anatomy of Intrigue*. Gawker shut down in August 2016 after a judge awarded Bollea $140 million in damages.

Other Hollywood names at the party included *The Good Fight*'s Christine Baranski, former *Girls* actress Jemima Kirke, *Law and Order: True Crime*'s Josh Charles, *Acts of Violence* actress Sophia Bush and New York Dolls lead singer David Johansen.


VIEW *THR'S* COMPLETE COVERAGE    *The New York Issue 2019*   〉

**April 12, 7:46 a.m.** This story has been updated to state that it was another guest, not Martha Stewart, who said Lori Loughlin's "going to be in the big house."

Delete or recover deleted Gmail messages - Computer - Gmail Help

**Exhibit E**

4/24/19, 8:32 PM

Help Center    Community

Gmail

**Read emails**

- Delete or recover deleted Gmail messages
- Print Gmail messages
- Open & download attachments in Gmail
- Mark messages as read or unread
- Star emails in Gmail
- Archive or mute Gmail messages
- Mark or unmark Spam in Gmail
- Importance markers in Gmail
- Turn images on or off in Gmail
- Snooze emails until later
- Send & open confidential emails

# Delete or recover deleted Gmail messages

When you delete a message, it stays in your Trash for 30 days. After that time, it will be permanently deleted from your account and can't be recovered.

Computer    Android    iPhone & iPad

## Delete messages

When you delete a message, it stays in your Trash for 30 days. After that time, it will be permanently deleted. If you want to remove a message from your inbox but you don't want to delete it, you can archive the message.

Delete a single message

Delete multiple messages

Empty your Trash

## Undelete messages

You can move messages out of your Trash if



EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 139

Delete or recover deleted Gmail messages - Computer - Gmail Help

4/24/19, 8:32 PM

you deleted them in the last 30 days.

See the messages in your
Trash

Recover messages from the
Trash

Want to find new ways to use Gmail?

Browse for ideas in the Transformation
Gallery—from prioritizing and organizing
incoming messages to translating
outbound messages into other
languages.

**Was this article helpful?**

Yes          No

©2019 Google · Privacy Policy · Terms of Service

· Program Policies

English        ▼

Send feedback about
our Help Center

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 140



Go gle    office 365 email deletion policy

All    News    Images    Videos    Shopping    More    Settings    Tools

About 4,670,000 results (0.38 seconds)

**Office 365** users are now able to use the same option as On-premises Exchange Administrators who have been able to extend their **retention** period anywhere from 30 to 24,855 days. ... By default, messages stay in the **Deleted** subfolder for 15 days in on-premises Exchange and for 14 days in **Office 365**.

The new Office 365 retains deleted emails longer - MessageOps
https://messageops.com/office-365-retains-deleted-emails-longer/

About this result    Feedback

Exhibit
F

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 141

Blacklisted (TV Series) - IMDb                                                    4/25/19, 11:44 PM



Find Movies, TV shows, Celebrities and more...        All        Pro

Watchlist        Sign in

Watch more of what you love with Prime Video
Start watching now                                                    prime video

FULL CAST AND CREW  |  TRIVIA  |  USER REVIEWS  |  IMDbPro  |  MORE        SHARE



ad feedback

## Blacklisted

Drama  |  TV Series

0 episodes



Blacklisted is an American action drama television series created by
Reno Logan and William Derick which is scheduled to debut on
January, 2019. It is being filmed in Los Angeles, the show is set in
the late 1990's and 2000's.

**Creator:**  Reno Logan

View production, box office, & company info on IMDbPro ☑

### Anna Chlumsky Reveals the Best Moment From "Veep"



"Veep" star Anna Chlumsky reminisces about
the show and picks the Disney movie that
always makes her cry during our Take 5
challenge.

Watch now »

## Photos

Add an image
**Do you have any images for
this title?**

Add Image

## Storyline                                                    Edit

Blacklisted is an American action drama television series created by Reno Logan and William
Derick which is scheduled to debut on January, 2019. It is being filmed in Los Angeles, the
show is set in the late 1990's and 2000's.

Plot Summary | Add Synopsis

**Genres:**  Drama

**Parents Guide:**  Add content advisory for parents »



### Around The Web                    Powered by ZergNet

https://www.imdb.com/title/tt8666296/?ref_=nv_sr_4?ref_=nv_sr_4

**Exhibit G**

Page 1 of 3

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 142

Blacklisted (TV Series) - IMDb

4/25/19, 11:44 PM

## Details

**Country:** USA

## Company Credits

**Production Co:** OLA Productions See more »
Show more on IMDbPro »

## Frequently Asked Questions

This FAQ is empty. Add the first question.

## Contribute to This Page

Getting Started | Contributor Zone »

Edit page    Add episode



## Rent or Buy Popular Movies With Prime Video

    

Explore popular movies available to rent or buy on Prime Video.

Visit Prime Video to explore more titles »

## Recently Viewed

   Reno Logan

 

Tragic On-Screen Deaths We Still Haven't Recovered From

Actors We Lost in 2019

 

The Most Anticipated Movies of 2020

J.K. Rowling Confirms the Hermione Theory We Suspected All

## Related Items

 Search for "Blacklisted" on Amazon.com



Clear your history

https://www.imdb.com/title/tt8666296/?ref_=nv_sr_4?ref_=nv_sr_4

Page 2 of 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ROVIER CARRINGTON,

        Plaintiff,

    -  against -

BRIAN GRADEN,
BRIAN GRADEN MEDIA, LLC,
VIACOM, INC.,
VIACOM INTERNATIONAL, INC.,
PARAMOUNT PICTURES CORPORATION,
BRAD GREY, BRAD GREY ESTATE,
BRAD ALAN GREY TRUST,

        Defendants.
-------------------------------------------------------------X

Case No. 18-CV-04609-KPF

Hon. Katherine Polk Failla

**AFFIDAVIT**

COUNTY OF _____   )
                 )
STATE OF _____   )

    I, ROVIER CARRINGTON, being duly sworn, deposes and says the following under penalties of perjury, and criminal sanction.

    1.  I have personal knowledge of the matters set forth below, and the exhibits annexed hereto are true copies of the original documents.

    2.  Annexed hereto, and to Plaintiff's Amended Complaint, as **Exhibit(s) Two through Eleven,** are a series of emails I received, or exchanged, from third parties to my lawsuit, or from Defendant Brian Graden, over the course of the past eight years.

    3.  Each and every email annexed to my Amended Complaint, and hereto, are forwarded copies of the original email I received, or exchanged, in the exact same condition, upon which the email was received, or exchanged.



Exhibit
H

1

**CALIFORNIA JURAT WITH AFFIANT STATEMENT**      GOVERNMENT CODE § 8202

☑ See Attached Document (Notary to cross out lines 1–6 below)
☐ See Statement Below (Lines 1–6 to be completed only by document signer[s], *not* Notary)

1.
2.
3.
4.
5.
6.

*Signature of Document Signer No. 1*      *Signature of Document Signer No. 2 (if any)*

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of *Los Angeles*

Subscribed and sworn to (or affirmed) before me
on this 21st day of June , 20 18
                 *Date*          *Month*          *Year*
by

(1) Rovier Carrington

(and (2)_____ ),
                 *Name(s) of Signer(s)*

proved to me on the basis of satisfactory evidence
to be the person(s) who appeared before me.

DANIEL KIRK BAKER
Commission # 2151693
Notary Public · California
Los Angeles County
My Comm. Expires Oct 25, 2019

Signature *Daniel Kirk Baker*
                 *Signature of Notary Public*

*Seal*
Place Notary Seal Above

——————————— OPTIONAL ———————————
*Though this section is optional, completing this information can deter alteration of the document or
fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: *Affidavit*                    Document Date: *6-21-18*
Number of Pages: *3*   Signer(s) Other Than Named Above: *N/A*

©2014 National Notary Association · www.NationalNotary.org · 1-800-US NOTARY (1-800-876-6827)   Item #5910

4.  I have not doctored, fabricated, or altered, any of the emails annexed to my Amended Complaint, and hereto.

5.  I have not doctored, fabricated, or altered, any of the content contained in any of the emails annexed to my Amended Complaint, and hereto.

Further affiant sayeth not.

By: _____

ROVIER CARRINGTON

Sworn to before me this
___ day of June, 2018

SEE ATTACHED

_____
Notary Public

2

Help

**Help**   Getting Started   Community   System Status

Help / Workspace Email

# Workspace Email Help

Tell us what you're looking for.   🔍

## Reset a user's email password

Learn how you, a Workspace account administrator, can reset user passwords in the Workspace Control Center (including your own).



> ❓ **Note:** This article is specific to Workspace email passwords.
> Help for Office 365 passwords
> Help for cPanel email passwords
> Help for your GoDaddy account password

If you are not a Workspace account admin, send these instructions to the account owner so they can reset your password for you.

1. Log in to your Workspace email account. (Need help logging in?)

2. Click the **expand** icon in the row of the email address you want to change.

## Related Articles

Change my Workspace email password   >

Android: Troubleshooting Email   >

https://www.godaddy.com/help/reset-a-users-email-password-75...



Page 1 of 4

Reset a user's email password | Workspace Email - GoDaddy Help US                    4/24/19, 4:24 PM



Set up my
email on            >
Apple Mail

Troubleshooting
iPhone email       >
setup

3. Click the **Edit** to open the **Edit Account** options.



Mail server
addresses and
ports for          >
Business
Email

4. Enter the new password in the **Change Password**
   and in the **Confirm Password** fields.

Traceroutes        >
on Windows



Moving an
email address
from one plan      >
to another

5. Click **Save**. You may need to close the **Edit Account**
   page. You should see confirmation notices as that
   password update applies to other account areas
   such as calendar.

Android:
Troubleshooting    >
Email

   �) **Note:** It can take up to 30 minutes for your
   new password to that effect. After 30 minutes
   have passed, have your user try logging into
   their email again.

You may
also like...

https://www.godaddy.com/help/reset-a-users-email-password-7593                    Page 2 of 4

Reset a user's email password | Workspace Email - GoDaddy Help US                                                    4/24/19, 4:24 PM

# More info

- Change my Workspace email password

- Create strong passwords

- Configuring my personal settings in web-based email

Was This Article Helpful?        **Yes**        **No**

# Community Related


resetting cpanel email account name

*1 Replies*

*Latest posted 5 months ago*


Changing email password – requesting admin to reset but I am the admin

*1 Replies*        *Latest posted a year ago*


Email Sending Limits

*1 Replies*        *Latest posted a year ago*


Locked out of email every morning

*4 Replies*        *Latest posted a year ago*


Email Forwarding – GMail "Send mail as"

*1 Replies*

*Latest posted 11 months ago*

Don't see what you are looking for? Search

Help! My GoDaddy account was targeted by an email scam

.email Domain | Register your .email Name

The best email newsletters: Whispering over email

GoDaddy customers: Beware of email phishing attempts

Email 101: What is an email client?

https://www.godaddy.com/help/reset-a-users-email-password-7593                                                    Page 3 of 4



# Search the audit log in the Security & Compliance Center

05/17/2019 • 58 minutes to read • Contributors 🎮 🌑 🌑 🌑

**In this article**

Introduction

Before you begin

Search the audit log

Audited activities

Frequently asked questions

## Introduction

Need to find if a user viewed a specific document or purged an item from their mailbox? If so, you can use the Office 365 Security & Compliance Center to search the unified audit log to view user and administrator activity in your Office 365 organization. Why a unified audit log? Because you can search for the following types of user and admin activity in Office 365:

- User activity in SharePoint Online and OneDrive for Business

- User activity in Exchange Online (Exchange mailbox audit logging)

  ⓘ **Important**

  Mailbox audit logging must be turned on for each user mailbox before user activity in Exchange Online will be logged. For more information, see **Enable mailbox auditing in Office 365**.

- Admin activity in SharePoint Online

- Admin activity in Azure Active Directory (the directory service for Office 365)

- Admin activity in Exchange Online (Exchange admin audit logging)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

**ROVIER CARRINGTON,**

**Plaintiff,**

**v.**

**BRIAN GRADEN, BRIAN GRADEN MEDIA, LLC, VIACOM INC., VIACOM INTERNATIONAL INC., PARAMOUNT PICTURES CORPORATION, BRAD GREY, BRAD GREY ESTATE, BRAD ALAN GREY TRUST,**

**Defendants.**

## <u>AFFIDAVIT OF K. GUS DIMITRELOS</u>

1. My name is Konstantinos "Gus" Dimitrelos. I have been retained as a consulting computer forensics expert by Plaintiff, Rovier Carrington.

### My Experience and Expertise

2. I am co-Founder and President of Cyber Forensics, Inc., an international digital forensics consulting and training company, located in Casper, Wyoming. My company provides a broad range of digital forensic services and training. We provide services and/or develop and teach courses in digital forensics to U.S. government agencies, including the Department of Justice, the U.S. Attorney's Office, the Department of State, Anti-Terrorism Assistance Program, and the Department of Defense, Regional Counterdrug Training Academy, as well as cyber services to Fortune 500 companies. Please find attached document marked as ATTACHMENT which is my Curriculum Vitae.



Exhibit
'L

3. I am a certified expert having testified in State, Federal, and International courts in cyber forensics matters for prosecutors, defense attorneys, and civil lawyers, who represent or prosecute individuals.

4. I am a retired Secret Service agent who began the Cyber Forensics program in 1997 as part of the U.S. Secret Service / U.S. Treasury CIS2000 cyber-crimes training program and was previously certified as a computer forensics expert by the Royal Canadian Mounted Police (RCMP) in 1996. I have conducted thousands of computer and mobile device examinations since 1996 and have held many technical special agent roles while in the U.S. Secret Service, including as a supervisor for all 15 Electronic Crimes Task Forces throughout the United States. I have attached my Curriculum Vitae as Exhibit A to this affidavit.

**The Documents and Information Addressed in this Affidavit**

5. On February 2, 2019, I received and reviewed discovery documents from Plaintiff, Rovier Carrington which included 5 documents of which a court order from Katherine Polk Failla United States District Judge requesting electronic discovery from the Plaintiff.

6. As relayed by **Plaintiff, Rovier Carrington** and on the court order by United States District Judge Katherine Polk Failla, it is requested electronic mail and other communications in connection with this matter was to be produced.

**The  Plaintiff's Electronic Storage Device(s) and Cloud Storage Does not Contain and Requested Electronic Stored Information**

7. As relayed to me Plaintiff's iPhone X was not a device utilized to send the at issue communications to his counsel and thus is not subject to the court order.

2

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 152

8. As relayed to me by Plaintiff, the hosted webmail for account Rovier@TheCarringtonDiaries.com was created in September 2015 through Plaintiff's website TheCarringtonDiaries.com, which showcased stories involving my current lawsuit through characters. According to Plaintiff, at the request of the Landau firm he was requested to delete the site however, I do not have any electronic evidence to confirm the statements made by Plaintiff.

9. Below is a snapshot of the domain that was last active, accessible and contained content on or about May 3, 2018. For specific Domain history please find attached document marked as ATTACHMENT B for specific domain history.



10. I confirmed the web domain www.thecarringtondiaries.com was deactivated on or before and repurchased and registered by unknown person(s) below on December 15, 2018. The current domain registrar is listed below:

| Domain Name | THECARRINGTONDIARIES.COM |
| --- | --- |

3

| Registry Domain ID | 2343504105_DOMAIN_COM-VRSN |
| --- | --- |
| Registrar WHOIS Server | grs-whois.hichina.com |
| Registrar URL | http://www.net.cn |
| Updated Date | 2018-12-15T16:57:18Z |
| Creation Date | 2018-12-15T16:54:16Z |
| Registry Expiry Date | 2019-12-15T16:54:16Z |
| Registrar | Alibaba Cloud Computing (Beijing) Co., Ltd. |

11. Based on my review of the domain, any potential domain recovery and any and all court ordered and requested communications or any other electronically stored information pertaining to this matter is not possible.  This would include electronic mail (email) in native or other formats, SMS, or any other electronic communications or electronic discovery.  However, a subpoena to original domain host may provide domain metadata such as IP addresses which may have created, accessed, modified or deleted domain data to include webmail may be obtainable.  The retention policy of the original domain host should be requested in order to identify if any such recovery is possible.

12. Should the domain account history and user actions be available, it is likely to identify any third party actions such as accessing of hosted email after the lawsuit went public in May 2018.

13. As relayed to me, TrendsetterRovheir@gmail.com was created in January 2010 but the Google mail account was last accessed early 2015 and all email was transferred from the account in October 2017 to Rovier@TheCarringtonDiaries.com.

4

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 154

Google

## Sign in

to continue to Google Drive

Email or phone
TrendsetterRovheir@gmail.com

🛇 Couldn't find your Google Account

Forgot email?

Not your computer? Use Guest mode to sign in privately.
Learn more

Create account                    Next

14. The RovierCarrington@gmail.com was created in early 2015. The account is currently
    active, however no emails related to the lawsuit currently resides in the account.

15. A current audit by me on the RovierCarrington@gmail.com is currently being conducted
    to reveal if any third parties accessed this account on or after May of 2018.

5

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 155





**EXPERT OPINION**

It is my opinion the requested discovery listed in the court order signed by United States District Judge Katherine Polk Failla is not obtainable and can not be produced based on previous Plaintiff domain(s), previous cloud hosted data, previous webmail and current devices used or owned by the Plaintiff.

I declare under penalty of perjury that the statements in this affidavit are true and correct.

K. Gus Dimitrelos

<u>February 6, 2019</u>
Date Signed

6

RUSS AUGUST & KABAT 

# Stanton "Larry" Stein



Los Angeles

lstein@raklaw.com

310.826.7474

Bio

vCard

## PRACTICE AREAS

Media & Entertainment

Litigation & Trial

Apparel & Fashion

## EDUCATION

University of Southern California (J.D., 1969, Editor of *The Law Review*, Winner of Moot Court Competition, and recipient of an academic scholarship)

University of Southern California (B.A. with Honors, 1966, Phi Beta Kappa and recipient of a debate scholarship)

**Exhibit M**

Stanton ("Larry") Stein is a partner and the head of Russ August & Kabat's Media & Entertainment group. Larry's clients include actors, writers, directors, producers, musicians, high-net-worth individuals, entertainment guilds, talent agencies, personal and business management companies, independent production companies, and interactive gaming companies. Larry is widely known in the entertainment industry for his work taking on Hollywood studios. Throughout the last decades, Larry created legal theories for challenging the film and television accounting practices of vertically integrated studios and media conglomerates through litigation. He is literally the father of vertical integration accounting lawsuits. His efforts have changed the face of talent and rights holders' contract negotiations with studios, networks, and their affiliated production companies, seeking to more evenly allocate revenue to profit participants including actors, directors, writers and producers. Larry has brought countless lawsuits on behalf of his clients against companies that were self-dealing on licensing fees and a variety of other revenue streams. In addition to his groundbreaking litigation in the profit participation space, Larry has also fought to establish copyright protection for formats in reality television, bringing the seminal lawsuit in that area of law.

Larry also has a long history of bringing defamation, right of privacy, and right of publicity actions against publications and private individuals while dealing with the media and governmental agencies. He has secured dozens of confidential settlements and retractions.

Larry is a frequent author and lecturer in the field of entertainment law. He is an adjunct Professor at USC Gould School of Law, where he teaches Entertainment Law. He has also taught a class at Stanford Law School and lectured at Yale Law School, Harvard Law School, and the

University of California's Boalt Hall School of Law.

Regularly called on by journalists and legal scholars for comment regarding legal issues facing the entertainment industry, he has been quoted in such publications as: *The Hollywood Reporter*, *Buzzfeed News*, *Law360*, *IPWatchdog*, *USA Today*, *Los Angeles Daily Journal*, *Deadline*, *Variety*, *Billboard*, and many more.

Throughout his career, Larry has been recognized by leading legal, business, and entertainment industry publications and organizations for the successes he has achieved on behalf of his clients. He is ranked as a "Top Media and Entertainment Litigator" by *Chambers USA*, regularly recognized as a "Power Lawyer" by *The Hollywood Reporter* and recently recognized as a Legal Legend, rated AV Preeminent by Martindale-Hubbell, and has been named a "Southern California Super Lawyer" from 2004-2009 and 2011-2019. In 2019, Larry was recognized as a Southern California Top 100 Super Lawyer. The *Daily Journal* named Larry one of the "100 Most Influential Lawyers in California," while the *Los Angeles Business Journal* profiled him in "Who's Who in LA Law," and *California Lawyer* featured him as a top five "A-list Entertainment Lawyers." Nationally, Larry has been recognized as a "Best Lawyer" by *The Best Lawyers in America* and in "Lawdragon 500: Leading Lawyers in America." Larry has received the "Entertainment Lawyer of the Year" awards from both the Beverly Hills and Century City Bar Associations, as well as the ACLU Foundation's "Pro Bono Civil Liberties Award."

## Recent Matters

The following is just a sample of Larry's ongoing and recently concluded matters:

**Defamation, Privacy, and Rights of Publicity Litigation:**

- Larry is currently representing many high-profile individuals in #metoo related disputes.

- Larry defended Fred Savage in litigation against a wardrobe stylist claiming gender-related misconduct.

- On behalf of Aubrey Drake Graham p/k/a Drake, Larry filed a pre-emptive lawsuit for civil extortion and defamation against a woman who falsely claimed Drake assaulted and impregnated her. On the heels of the filing, she consented to a stipulated judgment and permanent injunction.

- Larry is defending Brian Graden and his production company, Brian Graden Media, in litigation brought by Rovier Carrington, a man claiming, among other things, sexual misconduct and theft of ideas against Graden, the late Bray Grey, Paramount and Viacom. Stein's defense helped discover that the explosive allegations were likely supported by fabricated evidence, leading SDNY judge Katherine Failla to grant preliminary discovery on the authenticity of plaintiff's evidence before allowing the case to move forward.

- Larry is defending comedian Iliza Shlesinger in a class action suit brought by men for allegedly being turned away from Shlesinger's interactive *Girls Night In* show that occurred in LA in late 2017.

- Larry represented reality television Camille Grammer in defense of a defamation and malicious prosecution lawsuit filed by her ex-boyfriend after she reported that he assaulted her in 2013. A jury issued a unanimous verdict for Ms. Grammer, completely denying Mr. Charalambopoulos's claims, rejecting his request for more than $25 million in damages, and awarding Ms. Grammer damages on her counterclaims.

- Larry successfully represented and advised *Gossip Girl* actor Ed Westwick through criminal investigation of claims of sexual misconduct brought by several women. When the DA's office decided not to prosecute Westwick, Stein guided Westwick's return back to work in Hollywood.

- Larry represented Blake Shelton in his defamation action against Bauer Publishing in connection with *In Touch* magazine's publication of the false and defamatory cover story "REHAB For Blake." Shelton defeated Bauer's anti-SLAPP motion to dismiss and the matter was resolved.

- On behalf of Drake, Larry secured the anti-SLAPP dismissal of a trade libel case against him regarding various statements he made on Twitter about a theatrically released documentary.

- Larry represented NCIS actress Pauley Perrett in connection with her criminal and civil litigation against her ex-husband involving violation of a restraining order and use of the Internet to harass.

- Civil Code Section 3344 (Right of Publicity): Larry successfully represented rapper William Roberts p/k/a Rick Ross in a suit brought by "Freeway" Ricky Ross, a former Los Angeles drug kingpin, who alleged Mr. Ross misappropriated his name and persona. Mr. Roberts' use of the name "Rick Ross" was held to be creative expression protected by the First Amendment. This ruling was a significant victory not only for Mr. Ross but for all those involved in the industry, as it reaffirmed the First Amendment's protection of creativity.

**Breach of Contract:**

- Larry is representing film maker Sharad Patel in a contract claim against the Estate of Michael Jackson regarding the making of a documentary motion picture about Jackson's life and life story.

- Larry defended Kylin Pictures in a breach of contract action brought by actor Kevin Costner in connection with the motion picture *Shanghai Sojourners*.

- Larry successfully concluded a matter for NASCAR Sprint Cup Champion Kurt Busch, who sued Luke Burrett and his clothing companies for breach of contract and fraud in connection with a dispute related to Mr. Busch's investment in Mr. Burrett's

companies.

- Larry successfully represented film producers Dan Lin, Roy Lee and Doug Davison in their dispute against Legendary Pictures regarding credit and compensation in connection with the feature film *Godzilla*.

**Intellectual Property Protection and Litigation:**

- Larry is representing Harry Shearer, Rob Reiner, Christopher Guest and Michael McKean, creators of the iconic "mockumentary" film *This Is Spinal Tap,* in a federal action against Vivendi and its subsidiaries StudioCanal and Universal Music Group, regarding the creators' revenue share and ownership interests in the film and associated music. The case involves claims concerning defendants' accountings, as well as cutting-edge legal issues regarding the co-creators' rights to terminate their copyright grants and regain ownership of the trademarks and other intellectual property rights in connection with *This is Spinal Tap*.

- Larry represents the Trustees of The Carroll Hall Shelby Trust in a number of litigation matters against a trust beneficiary. The iconic race car driver and designer of the Cobra and Shelby Mustang 350 and 500 developed a wide range of businesses, and Larry is also assisting the Trustees with an array of matters that pertain to protecting Shelby intellectual property and continuing Mr. Shelby's legacy.

- Larry represented Tokyo Broadcasting System in a dispute with American Broadcasting Companies, Inc. and Endemol USA, alleging that their program *Wipeout* infringed format copyrights in six Tokyo Broadcasting System programs (*Takeshi's Castle*, *MXC*, *Sasuke*, *Kunoichi*, *Ninja Warrior* and *Women of Ninja Warrior*), and that ABC improperly promoted Wipeout by trading on consumer goodwill associated with Tokyo Broadcasting System's shows to divert viewers to *Wipeout*.

**Profit Participation and Vertical Integration Litigation:**

- Larry brought the first vertical integration suit on behalf of the showrunners of *Home Improvement* against ABC, which he quickly followed with suits for Alan Alda on *M.A.S.H.* and for David Duchovny on *The X-Files*.

- As the first attorney to bring vertical integration lawsuits, Larry is currently reviewing, on a confidential basis, numerous audits of

television shows and films involving vertical integration issues.

- Larry represented Little Star Films in connection with its profit participation in the hit motion picture *Mamma Mia*.

**Television Series Negotiations:**

- Larry represented Harry Shearer in the negotiations leading to his return to *The Simpsons*. Although the terms are confidential, the negotiations involved complicated issues concerning Shearer's services and compensation in connection with the series.

- Larry has been instrumental in negotiating for the rights of participants in reality television shows and in revising their contractual obligations. For example, Larry represents Camille Grammer and Adrienne Maloof, the former stars of the reality television show *The Real Housewives of Beverly Hills*.

**Recording Industry:**

- Larry represented the Frank Zappa Family Trust in litigation against Rykodisc, Inc. (a subsidiary of Warner Music) over the scope of grant of rights that the trust made to Rykodisc to release certain classic Frank Zappa albums. One of the main issues in dispute was whether Rykodisc was transferred rights to exploit the Frank Zappa recordings by releasing them in mp3 format on iTunes. Also at issue were Rykodisc's royalty accountings. The case was resolved, with the Zappa Family Trust reacquiring the catalog.

- On behalf of rapper Chief Keef, Larry defended a claim alleging that Chief Keef breached a contract to perform at a venue. Larry successfully argued that Chief Keef was a minor when he entered the contract and should be dismissed from the case. Larry also brought a jurisdictional challenge with regard to allegedly related entities and the matter settled before hearing on the jurisdiction issue.

- Larry represented record producer and executive Jolene Cherry and her label The Cherry Party in cases against artist Judith Hill and Prince for, respectively, breach of contract and interference with contract. The Cherry Party alleged that Prince interfered with its recording agreement with Hill by recording and releasing Hill's music to the public as a free download.

- Larry represented Post Malone in his dispute with his former manager, resulting in termination of the relationship.

---

**Home     About Us     Practice Areas     Attorneys     Firm News**

**Contact Us     Privacy Policy**



© 2019 Russ August & Kabat

12424 Wilshire Boulevard, 12th Floor | Los Angeles, California 90025 | Telephone **310.826.7474** | Fax

310.826.6991

Photography by **Kimball Hall Photo & Video** | Web & Graphic Design by **Innerspace Marketing**



Exec Suite

MAY 14, 2019
7:09am PT by Eriq Gardner

# Rovier Carrington Rape Suit Falls Apart as Defendants Demand Criminal Investigation



Paul Redmond/Getty Images; Alberto E. Rodriguez/Getty Images



Viacom and Brian Graden accuse Carrington of fabricating and destroying evidence. They call for consequences for bringing a bad faith lawsuit alleging sexual abuse.

Exhibit N




Exec Suite

Viacom, Brian Graden and the Brad Grey Estate told a New York federal judge to refer the matter to the United States Attorney's Office for criminal investigation.

When Carrington filed his complaint a year ago demanding $100 million in damages over a purported corporate cover-up in connection with an alleged rape by former Paramount CEO Brad Grey and alleged exploitation by former MTV chief Brian Graden, the story he conveyed was both outrageous and bizarre. Putting himself forward as "Hollywood royalty," the supposed great grandson of Moe Howard of *Three Stooges* fame claimed being tricked into a nondisclosure agreement and blacklisted from the entertainment industry. What caused his case to be treated seriously was a lawyer by his side as well as emails he documented in court that were described as supporting his claims.

But nearly from the get-go, the authenticity of those emails became questioned, and while his attorney initially stood by Carrington's side, that didn't last long. After U.S. District Court Judge Katherine Failla warned Carrington's attorney Kevin Landau about the potential ramifications of submitting fabricated evidence — including referring any fraud to prosecutors at the Southern District of New York — Carrington lost his attorney.

Later, Carrington attempted to withdraw his lawsuit, but the defendants weren't satisfied with a dismissal without prejudice. They requested — and got — the go-ahead to conduct an investigation into Carrington's purported evidence.

A new brief in support of terminating sanctions and attorneys'





Exec Suite

Graden's attorney Larry Stein took lead on the probe and



analysis from forensic experts confirms the fabrication of emails. Stein also attacks Carrington's later explanation that his accounts were "hacked" and details discovery collected from Google, Microsoft and GoDaddy, all subject to subpoenas in further efforts to trace the purported origins of communications.

At one point, for instance, Carrington attempted to claim that he sent communications from an iPhone 7 that he no longer had in his possession.

"By making the absurd claims that he used only the iPhone 7 to transmit or receive all At-Issue Communications over a seven year period (spanning from 2010 to 2017), that the iPhone 7 was discarded in June 2018, and that all relevant email communications had been hacked and/or deleted, Plaintiff hoped the inquiry would end," states the brief. "Critically, however, Apple did not even release the iPhone 7 to the consuming public until September 7, 2016."

The evidence put forward by Stein is substantial.

Carrington couldn't be reached for comment. Many of his social media accounts have now been deleted.

He may face the prospect of serious consequences even beyond monetary sanctions.

According to the brief, "In light of the fraudulent and egregious conduct that has been uncovered to date, Defendants submit that a referral to the United States Attorney's Office for criminal investigation is warranted."

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 168



Exec Suite

Plaintiff Rovier Carrington, In Pro Se.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK


| | | |
|---|---|---|
| ROVIER CARRINGTON, | ) | **AFFIRMATION OF SERVICE** |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| BRIAN GRADEN, et al. | ) | Case No.:  18 – CV – 04609 - KPF |
| Defendant(s) | ) | |
| | ) | |
| | ) | |

I, Rovier Carrington, declare under penalty of perjury under the laws of the United States
that I served a copy of the 05.20.19 Carrington Motion Letter upon all other parties in this
case on May 20, 2019 via e-mail and by placing the document in an envelope and placing
in the U.S. Mail to the following persons/entities:

See attached service list.


Date:  5/20/2019

_____
Plaintiff Rovier Carrington, In Pro Se.


EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 170

**Service List**

U.S. District Court
Southern District of New York (Foley Square)
Court's Pro Se Intake
Unit, 500 Pearl Street, Room 200, New York, NY 10007

Stanton Lawrence Stein, Esq.
Diana Arielle Sanders, Esq.
Russ August & Kabat
12424 Wilshire Blvd, 12th Floor
Los Angeles, CA 90025
(310) 826-7474
Fax: (310) 979-8222
Email: lstein@raklaw.com
Email: dsanders@raklaw.com

Stephen Robert Fishbein, Esq.
Christopher Lloyd LaVigne, Esq.
Shearman & Sterling LLP (NY)
599 Lexington Avenue
New York, NY 10022
212 848-4424
Fax: 212 848-7179
Email: sfishbein@shearman.com
Email: christopher.lavigne@shearman.com

Sarah Schacter, Esq.
Wook J Hwang, Esq.
Loeb & Loeb LLP
345 Park Avenue
New York, NY 10154
212-407-4000
Fax: 212-407-4990
Email: sschacter@loeb.com
Email: whwang@loeb.com



# EXHIBIT 007



**Rovier Carrington**

July 18, 2019

~~Via Email: (Failla_NYSDChambers@nysd.uscourts.gov)~~
The Honorable Katherine Polk Failla
United States District Court - Southern District of New York
40 Foley Square, Courtroom 618

RE:   ***Carrington v. Graden et al, Case No. 1:18-cv-04609-KPF***
***Request to restore Docket #114 (5-10-19 Defendants' Motion Letter)***
***back to the Court's Docket.***

Please consider this letter my Request to restore Docket #114, the 4-10-19 Defendants'
Motion Letter, (which was surreptitiously deleted from the Court's Docket on 5-22-19)
back to the Court's Docket.

15 U.S.C. Sec. 1501 states:

"Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or
makes a false entry in any record, document, or tangible object with the intent to
impede, obstruct, or influence the investigation or proper administration of any
matter within the jurisdiction of any department or agency of the United States or
any case filed under title 11, or in relation to or contemplation of any such matter
or case, shall be fined under this title, imprisoned not more than 20 years, or
both."

Defendants filed their 4-10-19 Defendants' Motion Letter through ECF which
contemporaneously appeared on the Court's Docket [Dckt #114].[1]

On 5-20-19, I sent my 5-20-19 Carrington Motion Letter [aka Opposition], which
addressed the 4-10-19 Defendants' Motion Letter, *via* email to the Court and all parties
(non-attorneys are not permitted to use the ECF system).  Further, I sent my 5-20-19
Motion Letter to the In Pro Se Office of this Court *via* FedEx to arrive in the morning of
5-21-19  It takes approximately 1-2 days for the In Pro Se office to post a court filing on
the Court's Docket [Dckt# 127].

On 5-21-19, the Court ruled on my 5-20-19 Carrington Motion Letter [Dckt #126].

On 5-22-19, the In Pro Se Office posted my 5-20-19 Carrington Motion Letter on the
Court's Docket [Dckt #127].  *However, at the same time/day my 5-20-19 Carrington*

---

[1] A copy of the Court's Docket on 4-23-19 that demonstrates that Docket #114 (the 4-10-19 Defendants'
Motion Letter) *is on the Court's Docket* is attached as Exhibit A.

1

*Motion Letter was posted on the Court's Docket, someone deleted the 4-10-19
Defendants' Motion Letter, Dckt #114, from the Court's Docket.[2]*

The 4-10-19 Defendants' Motion Letter contained allegations which the Court based its
decision to grant Defendants the right to bring their Motion for Sanction without even
having an oral hearing to hear argument whether or not the Court should grant
Defendants the right to bring a Motion for Sanctions in contravention of departmental
rules/protocol.

My 5-20-19 Carrington Motion Letter demonstrated that, in the 4-10-19 Defendants'
Motion Letter, Defendants cited fabricated evidence that did not exist in their actual
exhibits and other documents referred to, provided proof that Defendants made
intentionally false and misleading statements to the Court, and other lies, etc.  Despite the
foregoing, the Court denied my request for sanctions after exposing Defendants' fraud on
the Court, and still permitted Defendants to proceed with their Motion for Sanctions
based on the false premises contained in the 4-10-19 Defendants' Motion Letter.  The
Court also did not to address that Defendants failed to give the documents responsive to
the subpoenas to FTI in violation of the Court's 2-13-19 Discovery Order without any
explanation whatsoever. [Dckt #127]

Without preserving the integrity of the Court's Docket, the entire judicial system would
fall apart, especially appellate review.  In the event Defendants prevail on their Motion
for Sanctions, I have every intention to appeal this matter for judicial review to the
Circuit Court.  If Docket #114 is not restored back to the Court's Docket, it will
materially prejudice my right for appellate review.[3]

Defendants have attempted to litigate this case in the court of public opinion by way of
the press (Hollywood Reporter, Variety Magazine, etc.) and is responsible, at least in
substantial part, of making this a high-profile case (which has recently even grown to be
more high-profile).

As a result of the foregoing:

> If someone/press were to view the Court's file on 5-21-19, they could review the
> Court's Ruling on the 5-20-19 Carrington Motion Letter [Dckt #126].  However,
> they would have no ability to review my 5-20-19 Carrington Motion Letter [Dckt
> #127] in order to understand the basis for the Court's Ruling and form an
> opinion/report on it.

> If someone/press were to view the Court's file on 5-23-19 (or anytime thereafter),
> they could read my 5-20-19 Carrington Motion Letter [Dckt #127].  However,

---

[2] A copy of the Court's Docket on 5-24-19 that demonstrates that Docket #114 has been *deleted* from the
Court's Docket is attached as Exhibit B.
[3] A current copy of the Court Docket on 7-18-19 that demonstrates that Docket #114 is *still deleted* from
the Court's Docket is attached as Exhibit C.

2

they would have no ability to review the 4-10-19 Defendants' Motion Letter [Dckt #114] in order to see the actual Defendants' fraud and malfeasance that was exposed (because someone deleted from Docket #114), and form and opinion/report on it.

I am waiving my privacy/confidentiality rights only with respect the redacted Go-Daddy section of the 4-10-19 Defendants' Motion Letter and its exhibit for the Go-Daddy documents (with the exception of certain personal information of the Go Daddy documents #67-76).  As a result, I have attached as Exhibit D the unredacted version of the 4-10-19 Defendants' Motion Letter and the unredacted versions of the exhibits, including the Go-Daddy documents (excluding the exception referenced above).  The public has a right to know.

One must ask, who would benefit from deleting Docket #114 from the Court's Docket?

Last, I will join Defendants' request that U.S. District Attorney look into this matter, and have investigate the violation of 15 U.S.C. Sec. 1501 (that is if the FBI or U.S. District Attorney is not already conducting an investigation into this issue).

Respectfully submitted,

Rovier Carrington

4/22/2019

SDNY CM/ECF NextGen Version 1.2

International Inc.. (Attachments: # 1 Exhibit A)(Fishbein, Stephen) Modified on 5/25/2018 (jgo). (Entered: 05/24/2018)

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 04/23/2019 01:50:45 | | |
| **PACER Login:** | Gregloomis | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:18-cv-04609-KPF |
| **Billable Pages:** | 19 | **Cost:** | 1.90 |

Ex.  A

32/32

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 177

4/22/2019                                                  SDNY CM/ECF NextGen Version 1.2

| | | |
|---|---|---|
| | | Action code 15:2; Fee Status code due (due);. The following correction(s) have been made to your case entry: the Cause of Action code has been modified to 15:1; the Fee Status code has been modified to pd (paid);. (jgo) (Entered: 05/25/2018) |
| 05/25/2018 | | ***NOTICE TO ATTORNEY REGARDING DEFICIENT PLEADING. Notice to Attorney Stephen Robert Fishbein to RE-FILE Document No. 1 Notice of Removal. The filing is deficient for the following reason(s): pursuant to Rule 13.3, exhibits to pleading must be labeled (i.e. Summons and Complaint). Re-file the pleading using the event type Notice of Removal found under the event list Complaints and Other Initiating Documents - attach the correct signed PDF - select the individually named filer/filers - select the individually named party/parties the pleading is against. (jgo) (Entered: 05/25/2018) |
| 05/24/2018 | 7 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent Viacom Inc. for Viacom International Inc.. Document filed by Viacom International Inc..(Fishbein, Stephen) (Entered: 05/24/2018) |
| 05/24/2018 | 6 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent No Parent Corporation for Viacom Inc.. Document filed by Viacom Inc..(Fishbein, Stephen) (Entered: 05/24/2018) |
| 05/24/2018 | 5 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent Viacom Inc. for Paramount Pictures Corporation. Document filed by Paramount Pictures Corporation.(Fishbein, Stephen) (Entered: 05/24/2018) |
| 05/24/2018 | 4 | NOTICE OF APPEARANCE by Christopher Lloyd LaVigne on behalf of Paramount Pictures Corporation, Viacom Inc., Viacom International Inc.. (LaVigne, Christopher) (Entered: 05/24/2018) |
| 05/24/2018 | 3 | NOTICE OF APPEARANCE by Stephen Robert Fishbein on behalf of Paramount Pictures Corporation, Viacom Inc., Viacom International Inc.. (Fishbein, Stephen) (Entered: 05/24/2018) |
| 05/24/2018 | 2 | CIVIL COVER SHEET filed. (Fishbein, Stephen) (Entered: 05/24/2018) |
| 05/24/2018 | 1 | FILING ERROR - PDF ERROR - NOTICE OF REMOVAL from Supreme Court, County of New York. Case Number: 154060/2018. (Filing Fee $ 400.00, Receipt Number 0208-15112108).Document filed by Paramount Pictures Corporation, Viacom Inc., Viacom |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 178

| | | |
|---|---|---|
| | | on May 24, 2018. Service was made by Overnight Mail. Document filed by Paramount Pictures Corporation, Viacom Inc., Viacom International Inc.. (Fishbein, Stephen) (Entered: 05/29/2018) |
| 05/25/2018 | 10 | MEMO ENDORSEMENT on re: 9 Letter, filed by Brian Graden Media, LLC, Brian Graden. Application GRANTED. Brian Graden Media, LLC answer due 6/14/2018; Brian Graden answer due 6/14/2018; Paramount Pictures Corporation answer due 6/14/2018; Viacom Inc. answer due 6/14/2018; Viacom International Inc. answer due 6/14/2018. (Signed by Judge Katherine Polk Failla on 5/25/2018) (rro) (Entered: 05/25/2018) |
| 05/25/2018 | 9 | LETTER addressed to Judge Katherine Polk Failla from Stanton L. Stein and Diana A. Sanders dated May 25, 2018 re: Request for Two Week Extension of Time to Respond to Complaint Made with Consent of All Defendants. Document filed by Brian Graden Media, LLC, Brian Graden.(Sanders, Diana) (Entered: 05/25/2018) |
| 05/25/2018 | 8 | NOTICE OF REMOVAL from Supreme Court, County of New York. Case Number: 154060/2018..Document filed by Paramount Pictures Corporation, Viacom Inc., Viacom International Inc.. (Attachments: # 1 Exhibit A - Summons and Complaint)(Fishbein, Stephen) (Entered: 05/25/2018) |
| 05/25/2018 | | Case Designated ECF. (jgo) (Entered: 05/25/2018) |
| 05/25/2018 | | Magistrate Judge Stewart D. Aaron is so designated. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: http://nysd.uscourts.gov/forms.php. (jgo) (Entered: 05/25/2018) |
| 05/25/2018 | | CASE OPENING INITIAL ASSIGNMENT NOTICE: The above-entitled action is assigned to Judge Katherine Polk Failla. Please download and review the Individual Practices of the assigned District Judge, located at http://nysd.uscourts.gov/judges/District. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Please download and review the ECF Rules and Instructions, located at http://nysd.uscourts.gov/ecf_filing.php. (jgo) (Entered: 05/25/2018) |
| 05/25/2018 | | ***NOTICE TO ATTORNEY REGARDING CIVIL CASE OPENING STATISTICAL ERROR CORRECTION: Notice to attorney Stephen Robert Fishbein. The following case opening statistical information was erroneously selected/entered: Cause of |

| | | |
|---|---|---|
| | | Carrington. Filing fee $ 200.00, receipt number 0208-15163273. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Rovier Carrington. (Attachments: # 1 Affidavit Zachary Landau Declaration in Support of Pro Hac Vice, # 2 Exhibit Cert of Good Standing, # 3 Text of Proposed Order Proposed Pro Hac Vice Order)(Landau, Zachary) Modified on 6/6/2018 (jc). (Entered: 06/06/2018) |
| 06/06/2018 | 14 | **FILING ERROR - DEFICIENT DOCKET ENTRY -** MOTION for Kevin Aaron Landau to Appear Pro Hac Vice for Plaintiff Rovier Carrington. Filing fee $ 200.00, receipt number 0208-15163132. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Rovier Carrington. (Attachments: # 1 Affidavit Landau Declaration in Support of Pro Hac Vice, # 2 Exhibit Good Standing Cert., # 3 Text of Proposed Order Proposed Pro Hac Vice Order)(Landau, Kevin) Modified on 6/6/2018 (jc). (Entered: 06/06/2018) |
| 06/04/2018 | 13 | NOTICE OF INITIAL PRETRIAL CONFERENCE: This case has been assigned to me for all purposes. It is hereby ORDERED that counsel for all parties appear for an initial pretrial conference with the Court on July 20, 2018, at 3:00pm, in Courtroom 618 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York. IT IS FURTHER ORDERED that included with the Proposed Civil Case Management Plan and Scheduling Order, the parties jointly submit a letter, not to exceed five pages, providing the following information in separate paragraphs as further set forth in this Order. SO ORDERED. (Initial Conference set for 7/20/2018 at 03:00 PM in Courtroom 618, 40 Centre Street, New York, NY 10007 before Judge Katherine Polk Failla.) (Signed by Judge Katherine Polk Failla on 6/4/18) (yv) (Entered: 06/04/2018) |
| 05/29/2018 | 12 | CERTIFICATE OF SERVICE of Notice of Removal, Corporate Disclosure Statements, Notices of Appearance, SDNY ECF Rules and Instructions, and Judge Failla's Individual Rules of Practice in Civil Cases served on Stanton Stein attorney for Brian Garden and Brian Garden Media, LLC on May 24, 2018. Service was made by Email. Document filed by Paramount Pictures Corporation, Viacom Inc., Viacom International Inc.. (Fishbein, Stephen) (Entered: 05/29/2018) |
| 05/29/2018 | 11 | CERTIFICATE OF SERVICE of Notice of Removal, Corporate Disclosure Statements, Notices of Appearance, SDNY ECF Rules and Instructions, and Judge Failla's Individual Rules of Practice in Civil Cases served on Kevin Landau attorney for plaintiff Rovier Carrington |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 180

4/22/2019                                    SDNY CM/ECF NextGen Version 1.2

| | | Document filed by Rovier Carrington. (Landau, Zachary) (Entered: 06/09/2018) |
|---|---|---|
| 06/09/2018 | 17 | AFFIDAVIT OF SERVICE of Summons and Complaint served on Paramount Pictures Corporation on May 10, 2018. Service was accepted by Michael Donegan, Legal Coordinator. Document filed by Rovier Carrington. (Landau, Zachary) (Entered: 06/09/2018) |
| 06/09/2018 | 16 | AFFIDAVIT OF SERVICE. Viacom Inc. served on 5/9/2018, answer due 6/14/2018; Viacom International Inc. served on 5/9/2018, answer due 6/14/2018. Service was accepted by CSC Corp. (Registered Agent, Patricia Coleman, Process Receiving Agent for CSC). Document filed by Rovier Carrington. (Landau, Zachary) (Entered: 06/09/2018) |
| 06/06/2018 | | **>>>NOTICE REGARDING DEFICIENT MOTION TO APPEAR PRO HAC VICE. Notice to RE-FILE Document No. 15 MOTION for Zachary Ryan Landau to Appear Pro Hac Vice for Plaintiff Rovier Carrington. Filing fee $ 200.00, receipt number 0208-15163273. Motion and supporting papers to be reviewed by Clerk's Office staff. The filing is deficient for the following reason(s): missing Certificate of Good Standing from Michigan Supreme Court (our court does not accept state bar certificates). Re-file the motion as a Motion to Appear Pro Hac Vice - attach the correct signed PDF - select the correct named filer/filers - attach valid Certificates of Good Standing issued within the past 30 days - attach Attorney Affidavit - attach Proposed Order. (jc) (Entered: 06/06/2018)** |
| 06/06/2018 | | **>>>NOTICE REGARDING DEFICIENT MOTION TO APPEAR PRO HAC VICE. Notice to RE-FILE Document No. 14 MOTION for Kevin Aaron Landau to Appear Pro Hac Vice for Plaintiff Rovier Carrington. Filing fee $ 200.00, receipt number 0208-15163132. Motion and supporting papers to be reviewed by Clerk's Office staff.</FONT.. The filing is deficient for the following reason(s): missing Certificates of Good Standing from Michigan Supreme Court and New York Appellate Department (our court does not accept state bar certificates or computer printouts). Re-file the motion as a Motion to Appear Pro Hac Vice - attach the correct signed PDF - select the correct named filer/filers - attach valid Certificates of Good Standing issued within the past 30 days - attach Attorney Affidavit - attach Proposed Order. (jc) (Entered: 06/06/2018)** |
| 06/06/2018 | 15 | **FILING ERROR - DEFICIENT DOCKET ENTRY -** MOTION for Zachary Ryan Landau to Appear Pro Hac Vice for Plaintiff Rovier |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 181

SDNY CM/ECF NextGen Version 1.2

| | | |
|---|---|---|
| | | **15189928. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (ma) (Entered: 06/12/2018)** |
| 06/12/2018 | 24 | MOTION for Diana A. Sanders to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number 0208-15190097. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Brian Graden Media, LLC, Brian Graden. (Attachments: # 1 Affidavit of Diana A. Sanders, # 2 Exhibit Certificate of Good Standing from California Supreme Court, # 3 Exhibit Certificate of Good Standing from New York Supreme Court, # 4 Exhibit Certificate of Admission to SDNY, # 5 Text of Proposed Order Proposed Order Granting Pro Hac Vice Motion)(Sanders, Diana) (Entered: 06/12/2018) |
| 06/12/2018 | 23 | MOTION for Stanton L. Stein to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number 0208-15189928. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Brian Graden Media, LLC, Brian Graden. (Attachments: # 1 Affidavit of Stanton L. Stein, # 2 Exhibit Certificate of Good Standing from Supreme Court of California, # 3 Text of Proposed Order Proposed Order Granting Pro Hac Vice Motion)(Stein, Stanton) (Entered: 06/12/2018) |
| 06/09/2018 | 22 | DEMAND for Trial by Jury. Document filed by Rovier Carrington(Landau, Zachary) (Entered: 06/09/2018) |
| 06/09/2018 | 21 | AFFIDAVIT OF SERVICE. Brad Grey Estate served on 5/5/2018, answer due 5/29/2018; Brad Grey served on 5/5/2018, answer due 5/29/2018. Service was accepted by Robert Westman, Personal Body Guard and Security. Service was made by MAIL. Document filed by Rovier Carrington. (Landau, Zachary) (Entered: 06/09/2018) |
| 06/09/2018 | 20 | AFFIDAVIT OF SERVICE of Summons and Complaint served on Cassandra Husentruyt-Grey on May 5, 2018. Service was accepted by Robert Westman, Personal Body Guard and Security. Service was made by MAIL. Document filed by Rovier Carrington. (Landau, Zachary) (Entered: 06/09/2018) |
| 06/09/2018 | 19 | AFFIDAVIT OF SERVICE. Brian Graden Media, LLC served on 5/3/2018, answer due 6/14/2018. Service was accepted by Ethan Cohan (Registered Agent). Document filed by Rovier Carrington. (Landau, Zachary) (Entered: 06/09/2018) |
| 06/09/2018 | 18 | AFFIDAVIT OF SERVICE. Brian Graden served on 5/3/2018, answer due 5/24/2018. Service was accepted by L.B. Horschler, (Executive in Charge/Authorized to Accept Service). Service was made by MAIL. |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 182

4/22/2019                                    SDNY CM/ECF NextGen Version 1.2

|            |    | (Entered: 06/14/2018) |
|------------|----|-----------------------|
| 06/14/2018 | 31 | LETTER MOTION for Leave to File Motion to Dismiss addressed to Judge Katherine Polk Failla from Stanton L. Stein dated June 14, 2018. Document filed by Brian Graden Media, LLC, Brian Graden.(Stein, Stanton) (Entered: 06/14/2018) |
| 06/14/2018 | 30 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Brian Graden Media, LLC.(Stein, Stanton) (Entered: 06/14/2018) |
| 06/14/2018 | 29 | NOTICE OF CHANGE OF ADDRESS by Diana Arielle Sanders on behalf of Brian Graden Media, LLC, Brian Graden. New Address: Russ August & Kabat, 12424 Wilshire Blvd., 12th Floor, Los Angeles, California, United States 90025-1052, 3108267474. (Sanders, Diana) (Entered: 06/14/2018) |
| 06/14/2018 | 28 | LETTER MOTION for Leave to File Motion to Dismiss addressed to Judge Katherine Polk Failla from Stephen Fishbein dated June 14, 2018. Document filed by Paramount Pictures Corporation, Viacom Inc., Viacom International Inc..(Fishbein, Stephen) (Entered: 06/14/2018) |
| 06/14/2018 | 27 | NOTICE OF CHANGE OF ADDRESS by Stanton Lawrence Stein on behalf of Brian Graden Media, LLC, Brian Graden. New Address: Russ August & Kabat, 12424 Wilshire Blvd., 12th Floor, Los Angeles, California, United States 90025-1052, 3108267474. (Stein, Stanton) (Entered: 06/14/2018) |
| 06/13/2018 | 26 | ORDER FOR ADMISSION PRO HAC VICE granting 24 Motion for Diana A. Sanders to Appear Pro Hac Vice. (Signed by Judge Katherine Polk Failla on 6/13/2018) (ne) (Entered: 06/13/2018) |
| 06/13/2018 | 25 | ORDER FOR ADMISSION PRO HAC VICE granting 23 Motion for Stanton L. Stein to Appear Pro Hac Vice. (Signed by Judge Katherine Polk Failla on 6/13/2018) (ne) (Entered: 06/13/2018) |
| 06/13/2018 |    | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 24 MOTION for Diana A. Sanders to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number 0208-15190097. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bcu)** (Entered: 06/13/2018) |
| 06/12/2018 |    | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 23 MOTION for Stanton L. Stein to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number 0208-** |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 183

| | | Landau dated June 19, 2018 re: Responsive Letter to Graden Defendants Pre-Motion to Dismiss Letter. Document filed by Rovier Carrington.(Landau, Zachary) (Entered: 06/19/2018) |
|---|---|---|
| 06/19/2018 | 37 | LETTER addressed to Judge Katherine Polk Failla from Kevin A. Landau dated June 19, 2018 re: Responsive Letter to Grey Defendants Pre-Motion Letter to Dismiss. Document filed by Rovier Carrington. (Landau, Zachary) (Entered: 06/19/2018) |
| 06/19/2018 | 36 | **FILING ERROR - DEFICIENT PLEADING - FILED AGAINST PARTY ERROR -**FIRST AMENDED COMPLAINT amending 35 Amended Complaint, against All Defendants with JURY DEMAND.Document filed by Rovier Carrington. Related document: 35 Amended Complaint,. (Attachments: # 1 Exhibit Exhibits 1-11) (Landau, Kevin) Modified on 6/20/2018 (pc). (Entered: 06/19/2018) |
| 06/19/2018 | | **\*\*\*NOTICE TO ATTORNEY REGARDING DEFICIENT PLEADING. Notice to Attorney Zachary R Landau to RE-FILE Document No. 35 Amended Complaint. The filing is deficient for the following reason(s): the wrong party/parties whom the pleading is against were selected. Re-file the pleading using the event type Amended Complaint found under the event list Complaints and Other Initiating Documents - attach the correct signed PDF - select the individually named filer/filers - select the individually named party/parties the pleading is against. (sj)** (Entered: 06/19/2018) |
| 06/18/2018 | 35 | **FILING ERROR - DEFICIENT PLEADING - FILED AGAINST PARTY ERROR** FIRST AMENDED COMPLAINT against Rovier Carrington with JURY DEMAND.Document filed by Rovier Carrington. (Attachments: # 1 Exhibit Exhibits 1 to 11 of Am. Complaint)(Landau, Zachary) Modified on 6/19/2018 (sj). (Entered: 06/18/2018) |
| 06/14/2018 | 34 | LETTER MOTION for Conference (Pre-Motion) in advance of "Grey Defendants" anticipated motion to dismiss addressed to Judge Katherine Polk Failla from Wook Hwang dated 06/14/2018. Document filed by Brad Alan Grey Trust, Brad Grey Estate, Brad Grey.(Hwang, Wook) (Entered: 06/14/2018) |
| 06/14/2018 | 33 | NOTICE OF APPEARANCE by Wook J Hwang on behalf of Brad Alan Grey Trust, Brad Grey Estate, Brad Grey. (Hwang, Wook) (Entered: 06/14/2018) |
| 06/14/2018 | 32 | NOTICE OF APPEARANCE by Sarah Schacter on behalf of Brad Alan Grey Trust, Brad Grey Estate, Brad Grey. (Schacter, Sarah) |

|  |  | and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (ma) (Entered: 06/20/2018) |
|---|---|---|
| 06/20/2018 | 42 | MOTION for Zachary Ryan Landau to Appear Pro Hac Vice Corrected per clerk's instruction. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Rovier Carrington. (Attachments: # 1 Affidavit Z. Landau Aff., # 2 Exhibit Letter of Good Standing (Mich. Sup. Ct), # 3 Text of Proposed Order Proposed Pro Hac Vice Order)(Landau, Kevin) (Entered: 06/20/2018) |
| 06/20/2018 | 41 | **FILING ERROR - DEFICIENT DOCKET ENTRY** - MOTION for Kevin Aaron Landau to Appear Pro Hac Vice Corrected per clerk's instruction. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Rovier Carrington. (Attachments: # 1 Affidavit K. Landau Aff., # 2 Exhibit Letter of Good Standing (NYS Sup. Ct.), # 3 Text of Proposed Order Proposed Pro Hac Vice Order)(Landau, Kevin) Modified on 6/20/2018 (ma). (Entered: 06/20/2018) |
| 06/20/2018 | 40 | AMENDED COMPLAINT amending 35 Amended Complaint, 36 Amended Complaint, against Brad Alan Grey Trust, Brad Grey Estate, Brian Graden Media, LLC, Brian Graden, Brad Grey, Paramount Pictures Corporation, Viacom Inc., Viacom International Inc. with JURY DEMAND.Document filed by Rovier Carrington. Related document:. 35 Amended Complaint, 36 Amended Complaint,. (Attachments: # 1 Exhibit Exs. 1 -11 of Am. Compl.)(Landau, Kevin) (Entered: 06/20/2018) |
| 06/20/2018 |  | **\*\*\*NOTICE TO ATTORNEY REGARDING DEFICIENT PLEADING. Notice to Attorney Kevin Landau to RE-FILE Document No. 36 Amended Complaint,. The filing is deficient for the following reason(s): the All Defendant radio button was selected. Re-file the pleading using the event type Amended Complaint found under the event list Complaints and Other Initiating Documents - attach the correct signed PDF - select the individually named filer/filers - select the individually named party/parties the pleading is against. (pc)** (Entered: 06/20/2018) |
| 06/19/2018 | 39 | LETTER addressed to Judge Katherine Polk Failla from Kevin A. Landau dated June 19, 2018 re: Responsive Letter to Viacom Defendants Pre-Motion to Dismiss Letter. Document filed by Rovier Carrington.(Landau, Zachary) (Entered: 06/19/2018) |
| 06/19/2018 | 38 | LETTER addressed to Judge Katherine Polk Failla from Kevin A. |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 185

| | | |
|---|---|---|
| | | Exhibit Letter of Good Standing (Mich. Sup. Ct.), # 4 Text of Proposed Order Proposed Order for Pro Hac Vice)(Landau, Kevin) (Entered: 06/25/2018) |
| 06/21/2018 | 44 | ORDER terminating 28 Letter Motion for Leave to File Document; terminating 31 Letter Motion for Leave to File Document; terminating 34 Letter Motion for Conference. The Court is in receipt of Defendants' letter, dated June 21, 2018, advising the Court that Defendants have withdrawn their requests for a pre-motion conference. In light of Defendants' letter, the Clerk of Court is directed to terminate Docket Entries 28, 31, and 34. (Signed by Judge Katherine Polk Failla on 6/21/2018) (rro) (Entered: 06/21/2018) |
| 06/21/2018 | 43 | LETTER REPLY to Response to Motion addressed to Judge Katherine Polk Failla from Wook Hwang dated 6/21/2018 re: 34 LETTER MOTION for Conference (Pre-Motion) in advance of "Grey Defendants" anticipated motion to dismiss addressed to Judge Katherine Polk Failla from Wook Hwang dated 06/14/2018., 28 LETTER MOTION for Leave to File Motion to Dismiss addressed to Judge Katherine Polk Failla from Stephen Fishbein dated June 14, 2018., 31 LETTER MOTION for Leave to File Motion to Dismiss addressed to Judge Katherine Polk Failla from Stanton L. Stein dated June 14, 2018. Requesting the withdrawal of all requests for a pre-motion conference regarding a motion to dismiss the complaint. Document filed by Brad Alan Grey Trust, Brad Grey Estate, Brad Grey. (Hwang, Wook) (Entered: 06/21/2018) |
| 06/20/2018 | | **>>>NOTICE REGARDING DEFICIENT MOTION TO APPEAR PRO HAC VICE. Notice to RE-FILE Document No. 41 MOTION for Kevin Aaron Landau to Appear Pro Hac Vice Corrected per clerk's instruction. Motion and supporting papers to be reviewed by Clerk's Office staff... The filing is deficient for the following reason(s): missing Certificate of Good Standing from THE SUPREME COURT OF MICHIGAN. http://www.nysd.uscourts.gov/file/forms/certificate-of-good-standing-contact-list; . Re-file the motion as a Motion to Appear Pro Hac Vice - attach the correct signed PDF - select the correct named filer/filers - attach valid Certificates of Good Standing issued within the past 30 days - attach Proposed Order.. (ma) (Entered: 06/20/2018)** |
| 06/20/2018 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 42 MOTION for Zachary Ryan Landau to Appear Pro Hac Vice Corrected per clerk's instruction. Motion** |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 186

4/22/2019                                    SDNY CM/ECF NextGen Version 1.2

| 07/05/2018 | 51 | LETTER addressed to Judge Katherine Polk Failla from Kevin Landau dated July 5, 2018 re: Responsive Letter to Grey Defendants Pre-Motion Letter to Dismiss. Document filed by Rovier Carrington. (Landau, Zachary) (Entered: 07/05/2018) |
| 07/02/2018 | 50 | LETTER MOTION for Leave to File Motion to Dismiss addressed to Judge Katherine Polk Failla from Stanton L. Stein dated July 2, 2018. Document filed by Brian Graden Media, LLC, Brian Graden.(Stein, Stanton) (Entered: 07/02/2018) |
| 07/02/2018 | 49 | LETTER MOTION for Conference re: 40 Amended Complaint, (Pre-Motion) in advance of "Grey Defendants" anticipated motion to dismiss addressed to Judge Katherine Polk Failla from Wook Hwang dated July 2, 2018. Document filed by Brad Alan Grey Trust, Brad Grey Estate, Brad Grey.(Hwang, Wook) (Entered: 07/02/2018) |
| 07/02/2018 | 48 | LETTER MOTION for Leave to File Motion to Dismiss addressed to Judge Katherine Polk Failla from Stephen Fishbein dated July 2, 2018. Document filed by Paramount Pictures Corporation, Viacom Inc., Viacom International Inc..(Fishbein, Stephen) (Entered: 07/02/2018) |
| 06/26/2018 | 47 | ORDER: On June 4, 2018, the Court scheduled the initial pretrial conference for July 20, 2018. Due to a scheduling conflict, the Court hereby RESCHEDULES the conference to July 17, 2018, at 3:30 p.m., in Courtroom 618 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York. SO ORDERED. (Initial Conference set for 7/17/2018 at 03:30 PM in Courtroom 618, 40 Centre Steet, New York, NY 10007 before Judge Katherine Polk Failla.) (Signed by Judge Katherine Polk Failla on 6/26/2018) (rro) (Entered: 06/27/2018) |
| 06/26/2018 | 46 | ORDER FOR ADMISSION PRO HAC VICE granting 45 Motion for Kevin Aaron Landau to Appear Pro Hac Vice. So ordered. (Signed by Judge Katherine Polk Failla on 6/26/2018) (rjm) (Entered: 06/26/2018) |
| 06/26/2018 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 45 MOTION for Kevin Aaron Landau to Appear Pro Hac Vice (corrected per Clerk's instruction). Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bcu)** (Entered: 06/26/2018) |
| 06/25/2018 | 45 | MOTION for Kevin Aaron Landau to Appear Pro Hac Vice (corrected per Clerk's instruction). **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Rovier Carrington. (Attachments: # 1 Affidavit K. Landau Aff. in Support of Pro Hac Vice, # 2 Exhibit Letter of Good Standing (NYS Sup. Ct.), # 3 |

| | | |
|---|---|---|
| | | Stein dated July 16, 2018 re: Joint Status Letter. Document filed by Brian Graden Media, LLC, Brian Graden. (Attachments: # 1 Exhibit F) (Stein, Stanton) (Entered: 07/16/2018) |
| 07/12/2018 | 56 | STATUS REPORT. Document filed by Paramount Pictures Corporation, Viacom Inc., Viacom International Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E) (Fishbein, Stephen) (Entered: 07/12/2018) |
| 07/10/2018 | 55 | ORDER: Due to a scheduling conflict, the pre-motion conference, previously scheduled for July 17, 2018, at 3:00 p.m., is hereby ADJOURNED to July 17, 2018, at 4:00 p.m., in Courtroom 618 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York. (Pre-Motion Conference set for 7/17/2018 at 04:00 PM in Courtroom 618, 40 Centre Street, New York, NY 10007 before Judge Katherine Polk Failla.) (Signed by Judge Katherine Polk Failla on 7/10/2018) (jwh) (Entered: 07/10/2018) |
| 07/06/2018 | | Set/Reset Hearings: Pre-Motion Conference set for 7/17/2018 at 03:30 PM in Courtroom 618, 40 Centre Street, New York, NY 10007 before Judge Katherine Polk Failla. (ne) (Entered: 07/06/2018) |
| 07/06/2018 | 54 | ORDER granting 48 Letter Motion for Leave to File Document. The Court has carefully reviewed each of the Defendants' pre-motion letters, filed July 2, 2018 (Dkt. #48-50), as well as Plaintiff's replies thereto, filed July 5, 2018 (Dkt. #51-53). The Court finds that a premotion conference is warranted. Because an initial pretrial conference has already been scheduled in this matter, the Court declines to schedule the pre-motion conference at a new date. Instead, the Court will hold the pre-motion conference in lieu of the initial pretrial conference, on July 17, 2018, at 3:30 p.m., in Courtroom 618 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York. The Clerk of Court is directed to terminate Docket Entries 48, 49, and 50. SO ORDERED. (Signed by Judge Katherine Polk Failla on 7/6/2018) (ne) (Entered: 07/06/2018) |
| 07/05/2018 | 53 | LETTER addressed to Judge Katherine Polk Failla from Kevin Landau dated July 5, 2018 re: Responsive Letter to Graden Defendants Pre-Motion to Dismiss Letter. Document filed by Rovier Carrington. (Landau, Zachary) (Entered: 07/05/2018) |
| 07/05/2018 | 52 | LETTER addressed to Judge Katherine Polk Failla from Kevin Landau dated July 5, 2018 re: Responsive Letter to Viacom Defendants Pre-Motion to Dismiss Letter. Document filed by Rovier Carrington. (Landau, Zachary) (Entered: 07/05/2018) |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT   p. 188

| | | |
|---|---|---|
| | | by Judge Katherine Polk Failla on 8/7/2018) (rjm) (Entered: 08/08/2018) |
| 08/06/2018 | 63 | LETTER addressed to Judge Katherine Polk Failla from Wook Hwang dated 8/6/2018 re: Response to Plaintiff's Letter dated 8/3/18. Document filed by Brad Alan Grey Trust, Brad Grey Estate, Brad Grey. (Attachments: # 1 Redline Enclosure)(Hwang, Wook) (Entered: 08/06/2018) |
| 08/03/2018 | 62 | LETTER addressed to Judge Katherine Polk Failla from Kevin A. Landau dated August 3, 2018 re: Proposed Order. Document filed by Rovier Carrington. (Attachments: # 1 Text of Proposed Order Proposed Order, # 2 Exhibit Yahoo Compliance Guide for Law Enforcement, # 3 Exhibit Yahoo Article on Lost or Deleted Emails) (Landau, Kevin) (Entered: 08/03/2018) |
| 08/01/2018 | 61 | MEMO ENDORSEMENT on re: 60 Letter filed by Rovier Carrington. Application GRANTED. (Signed by Judge Katherine Polk Failla on 8/1/2018) (cf) (Entered: 08/01/2018) |
| 08/01/2018 | 60 | LETTER addressed to Judge Katherine Polk Failla from Kevin A. Landau dated August 1, 2018 re: Proposed Order Submitted by Defendants (re Dkt. No. 58). Document filed by Rovier Carrington. (Landau, Zachary) (Entered: 08/01/2018) |
| 07/31/2018 | 59 | LETTER addressed to Judge Katherine Polk Failla from Wook Hwang dated 7/31/2018 re: submission of Proposed Order permitting limited discovery into the authenticity of certain communications at issue in this action in compliance with Court's 7/24/18 Order. Document filed by Brad Alan Grey Trust, Brad Grey Estate, Brian Graden Media, LLC, Brian Graden, Brad Grey, Paramount Pictures Corporation, Viacom Inc., Viacom International Inc.. (Attachments: # 1 Proposed Order)(Hwang, Wook) (Entered: 07/31/2018) |
| 07/24/2018 | 58 | ORDER: Defendants are ORDERED to file a proposed order on or before August 1, 2018, in Word format, for the Court's consideration. The proposed order should reflect Plaintiff's request for reciprocal discovery obligations, as discussed at the July 17 conference. SO ORDERED. (Signed by Judge Katherine Polk Failla on 7/24/2018) (rro) (Entered: 07/24/2018) |
| 07/17/2018 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Pre-Motion Conference held on 7/17/2018. (Court Reporter Martha Martin) (Lopez, Jose) (Entered: 07/19/2018) |
| 07/16/2018 | 57 | LETTER addressed to Judge Katherine Polk Failla from Stanton L. |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 189

4/22/2019                                    SDNY CM/ECF NextGen Version 1.2

| 08/17/2018 | 67 | ORDER denying without prejudice 66 Letter Motion for Conference. After Defendants filed the above letter, the parties wrote to the Court, indicating that they have resolved the dispute. The Court therefore DENIES Defendants' request, without prejudice to its refiling at a later date. SO ORDERED. (Signed by Judge Katherine Polk Failla on 8/17/2018) (rro) (Entered: 08/20/2018) |
| --- | --- | --- |
| 08/16/2018 | 66 | LETTER MOTION for Conference Request for Expedited Teleconference re dispute in complying with Court's 8/7/18 order addressed to Judge Katherine Polk Failla from Wook Hwang dated 8/16/18. Document filed by Brad Alan Grey Trust, Brad Grey Estate, Brad Grey. (Attachments: # 1 Exhibit E-mail Chain)(Hwang, Wook) (Entered: 08/16/2018) |
| 08/09/2018 | 65 | ORDER: Due to a scheduling conflict, the conference, previously scheduled for September 11, 2018, is hereby ADJOURNED to September 18, 2018, at 2:00 p.m., in Courtroom 618 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York. SO ORDERED. (Status Conference set for 9/18/2018 at 02:00 PM in Courtroom 618, 40 Centre Street, New York, NY 10007 before Judge Katherine Polk Failla.) (Signed by Judge Katherine Polk Failla on 8/9/2018) (rro) (Entered: 08/09/2018) |
| 08/07/2018 | 64 | ORDER FOR LIMITED DISCOVERY CONCERNING THE AUTHENTICITY OF COMMUNICATIONS. IT IS HEREBY ORDERED, without prejudice to or limiting any existing duty to preserve relevant materials that has arisen in connection with this action, that Plaintiff and Defendants, and their respective counsel, shall immediately preserve each and every document constituting or containing any portion of any of the communications that are attached as: (i) Exhibits 2-11 to the Amended Complaint (Dkt. #40-1); (ii) Exhibit A to the Declaration of Darren Stein (Dkt. #56-2); or (iii) Exhibits 1-4 to the Declaration of James Kelshaw (Dkt. #56-3), including, without limitation, all earlier emails in any email chains constituting such communications (collectively, the "At-Issue Communications") and all email forwards of any and all such communications, in original native format as well as any and all electronic or paper copies thereof, and as further specified and set forth in this Order. IT IS FURTHER ORDERED that the parties' counsel shall appear for a status conference before the Court on September 11, 2018, at 2:00 p.m. SO ORDERED. (Status Conference set for 9/11/2018 at 02:00 PM before Judge Katherine Polk Failla.) (Signed |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 190

SDNY CM/ECF NextGen Version 1.2

| | | |
|---|---|---|
| | | before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 9/19/2018. Redacted Transcript Deadline set for 10/1/2018. Release of Transcript Restriction set for 11/27/2018.(McGuirk, Kelly) (Entered: 08/29/2018) |
| 08/22/2018 | 70 | ORDER granting 68 LETTER MOTION for Conference Request for Expedited Teleconference re dispute in complying with Court's 8/7/18 Order addressed to Judge Katherine Polk Failla from Wook Hwang dated 8/21/2018. Document filed by Brad Alan Grey Trust, Bra d Grey Estate, Brad Grey. Application GRANTED. The Court is in receipt of Defendants' letter, dated August 21, 2018 (Dkt. #68), regarding the parties' ongoing dispute over the selection of a neutral e-discovery vendor pursuant to the Court's August 7, 2018 Order (Dkt. #64). The Court has carefully reviewed that letter, along with Plaintiff's response thereto, dated August 21, 2018. (Dkt. #69). Based on the parties' submissions, it is the Court's understanding that the parties had agreed -- perhaps only tentatively so -- to select FTI Consulting ("FTI") as the vendor, but that Plaintiff's counsel is now unwilling to move forward with FTI due to concerns over possible conflicts of interest. (Dkt. #68, 69). Having reviewed the parties' submissions, including each of the exhibits appended to Plaintiff's letter, the Court finds that there is no credible evidence of any actual or potential conflicts of interest. Accordingly, the parties are directed to proceed with FTI as the e-discovery vendor and to work expeditiously to comply with the August 7 Order. In light of the parties' delay in selecting the e-discovery vendor, the Court hereby EXTENDS the interim deadlines referenced in the August 7 Order -- i.e., those originally set for fourteen (14) days from the entry of the Order -- to August 24, 2018. All other deadlines in the August 7 Order shall remain unchanged. So ordered. (Signed by Judge Katherine Polk Failla on 8/22/2018) (rjm) (Entered: 08/22/2018) |
| 08/21/2018 | 69 | LETTER addressed to Judge Katherine Polk Failla from Kevin A. Landau dated August 20, 2018 re: Neutral Discovery Vendor (Dkt. No. 64). Document filed by Rovier Carrington. (Attachments: # 1 Exhibit Exhibit(s) 1-5, # 2 Exhibit Exhibit Six (Email))(Landau, Zachary) (Entered: 08/21/2018) |
| 08/21/2018 | 68 | LETTER MOTION for Conference Request for Expedited Teleconference re dispute in complying with Court's 8/7/18 Order addressed to Judge Katherine Polk Failla from Wook Hwang dated 8/21/2018. Document filed by Brad Alan Grey Trust, Brad Grey Estate, Brad Grey. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Hwang, Wook) (Entered: 08/21/2018) |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 191

SDNY CM/ECF NextGen Version 1.2

| | | |
|---|---|---|
| | | Status Conference held on 9/18/2018. (Court Reporter Karen Gorlaski) (Lopez, Jose) (Entered: 09/18/2018) |
| 09/17/2018 | 76 | LETTER addressed to Judge Katherine Polk Failla from Kevin A. Landau dated September 17, 2017 re: Order and Status Conference. Document filed by Rovier Carrington. (Attachments: # 1 Exhibit Exhibit 1 to 10 of Letter (incl. PTG Report, Texts, and Declarations), # 2 Affidavit Includes Ex A (Text Message with Graden))(Landau, Zachary) (Entered: 09/17/2018) |
| 09/17/2018 | 75 | LETTER MOTION for Discovery addressed to Judge Katherine Polk Failla from Stephen Fishbein dated September 17, 2018. Document filed by Paramount Pictures Corporation, Viacom Inc., Viacom International Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C - Text of Proposed Order)(Fishbein, Stephen) (Entered: 09/17/2018) |
| 09/14/2018 | 74 | MEMO ENDORSEMENT on re: 73 Letter filed by Brian Graden Media, LLC, Brian Graden. ENDORSEMENT: Application GRANTED. So long as Ms. Sanders appears at the conference on behalf of Defendants Brian Graden and Brian Graden Media, LLC, Mr. Stein will be permitted to listen in on the conference telephonically. However, Mr. Stein will not be permitted to participate in the conference. At the scheduled time, Mr. Stein is directed to call (212) 805-0166. SO ORDERED. (Signed by Judge Katherine Polk Failla on 9/14/2018) (anc) (Entered: 09/14/2018) |
| 09/13/2018 | 73 | LETTER addressed to Judge Katherine Polk Failla from Stanton L. Stein dated September 13, 2018 re: September 18, 2018 Status Conference. Document filed by Brian Graden Media, LLC, Brian Graden.(Stein, Stanton) (Entered: 09/13/2018) |
| 08/29/2018 | 72 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 7/17/18 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(McGuirk, Kelly) (Entered: 08/29/2018) |
| 08/29/2018 | 71 | TRANSCRIPT of Proceedings re: CONFERENCE held on 7/17/2018 before Judge Katherine Polk Failla. Court Reporter/Transcriber: Martha Martin, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 192

4/22/2019                                    SDNY CM/ECF NextGen Version 1.2

|  |  | Stein dated September 26, 2018 re: Order for Further Discovery. Document filed by Brad Alan Grey Trust, Brad Grey Estate, Brian Graden Media, LLC, Brian Graden, Brad Grey, Paramount Pictures Corporation, Viacom Inc.. (Attachments: # 1 Text of Proposed Order Proposed Order, # 2 Exhibit A - Google Subpoena, # 3 Exhibit B - Microsoft Subpoena, # 4 Exhibit C - Consent Order)(Stein, Stanton) (Entered: 09/26/2018) |
| --- | --- | --- |
| 09/24/2018 | 79 | ORDER: The Court is in receipt of The Landau Group, PCs motion to withdraw as counsel for Plaintiff Rovier Carrington. (Dkt. #78). In connection with that motion, Kevin Landau and Zachary Landau are hereby ORDERED to appear with their client, Rovier Carrington, for a telephonic conference on October 5, 2018, at 2:30 p.m. At that time, Kevin Landau, Zachary Landau, and Rovier Carrington shall call Chambers at (212) 805-0290, with all parties on a single line. SO ORDERED. (Telephone Conference set for 10/5/2018 at 02:30 PM before Judge Katherine Polk Failla.) (Signed by Judge Katherine Polk Failla on 9/24/2018) (jca) Modified on 9/25/2018 (jca). (Entered: 09/24/2018) |
| 09/24/2018 | 78 | **FILING ERROR - DEFICIENT DOCKET ENTRY** - MOTION for The Landau, P.C., Kevin A. Landau, and Zachary R. Landau to Withdraw as Attorney for Plaintiff Rovier Carrington (corrected). Document filed by Rovier Carrington. (Attachments: # 1 Affidavit K. Landau Affirmation, # 2 Text of Proposed Order Proposed Order of Withdrawal, # 3 Memorandum of Law in Support)(Landau, Zachary) Modified on 9/27/2018 (db). (Entered: 09/24/2018) |
| 09/24/2018 |  | **\*\*\*NOTICE TO ATTORNEY TO RE-FILE DOCUMENT - DEFICIENT DOCKET ENTRY ERROR. Notice to Attorney Zachary R Landau to RE-FILE Document 77 MOTION for The Landau, P.C., Kevin A. Landau, and Zachary R. Landau to Withdraw as Attorney for Plaintiff Rovier Carrington. ERROR(S): Supporting Documents are filed separately, each receiving their own document #'s. (db)** (Entered: 09/24/2018) |
| 09/22/2018 | 77 | **FILING ERROR - DEFICIENT DOCKET ENTRY** - MOTION for The Landau, P.C., Kevin A. Landau, and Zachary R. Landau to Withdraw as Attorney for Plaintiff Rovier Carrington. Document filed by Rovier Carrington. (Attachments: # 1 Affidavit Kevin A. Landau Affirmation, # 2 Text of Proposed Order Proposed Order of Withdrawal)(Landau, Zachary) Modified on 9/24/2018 (db). (Entered: 09/22/2018) |
| 09/18/2018 |  | Minute Entry for proceedings held before Judge Katherine Polk Failla: |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 193

| | | |
|---|---|---|
| | | Plaintiff Rovier Carrington. (Dkt. #78). Kevin Landau and Zachary Landau are hereby instructed to remain on the docket and to transmit any communications to Plaintiff until October 12, 2018. By this date, new counsel for Mr. Carrington shall file a notice of appearance or Mr. Carrington will explain that he wishes to proceed pro se. The Court expects new counsel will proceed expeditiously to respond to Defendants' most recent letter regarding discovery dated September 28, 2018. SO ORDERED. (Signed by Judge Katherine Polk Failla on 10/5/2018) (jca) Modified on 10/9/2018 (jca). (Entered: 10/09/2018) |
| 10/05/2018 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Telephone Conference held on 10/5/2018. Plaintiff Rovier Carrington with attorneys Kevin Landau and Zachary R. Landau present. Attorneys Stanton Stein and Diana Sanders representing Brian Graden and related entities present. Attorneys Stephen Fishbein and Christopher LaVigne representing Viacom Inc. and related entities present. Attorneys Sarah Schacter and Wook J. Hwang representing Brad Grey and related entities present. (Court Reporter Andrew Walker) (tn) (Entered: 10/05/2018) |
| 09/27/2018 | 81 | MEMO ENDORSEMENT on re: 80 Letter, filed by Viacom Inc., Brian Graden Media, LLC, Paramount Pictures Corporation, Brad Grey Estate, Brad Alan Grey Trust, Brad Grey, Brian Graden. ENDORSEMENT: The Court is in receipt of Defendants' letter, dated September 26, 2018, as well as the proposed order and subpoenas attached thereto. (Dkt. #80). The Court shares Defendants' suspicion that the Landau Group, PC's motion to withdraw as Plaintiff's counsel may affect Plaintiff's compliance with the Court's discovery directives. Accordingly, the Court will permit Defendants to participate in the initial portion of the telephonic conference, scheduled for October 5, 2018. Defense counsel is advised that they will likely be required to drop off the call if the Court needs to discuss any privileged or sensitive matters with Zachary Landau, Kevin Landau, and Rovier Carrington. Given the present uncertainty around Plaintiff's representation by counsel, the Court will refrain from determining whether to issue, as presently drafted, the proposed order and subpoenas attached to Defendants' September 26 letter. Kevin Landau, Zachary Landau, and Rovier Carrington -- and any defense counsel wishing to participate in the initial portion of the telephonic conference -- are directed to call Chambers at (212) 805-0290 on October 5 at 2:30 p.m., with all parties on a single line. SO ORDERED. (Signed by Judge Katherine Polk Failla on 9/27/2018) (rro) (Entered: 09/28/2018) |
| 09/26/2018 | 80 | LETTER addressed to Judge Katherine Polk Failla from Stanton L. |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 194

| 11/19/2018 | 87 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a conference proceeding held on 9/18/18 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(McGuirk, Kelly) (Entered: 11/19/2018) |
| --- | --- | --- |
| 11/19/2018 | 86 | TRANSCRIPT of Proceedings re: conference held on 9/18/2018 before Judge Katherine Polk Failla. Court Reporter/Transcriber: Karen Gorlaski, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/10/2018. Redacted Transcript Deadline set for 12/20/2018. Release of Transcript Restriction set for 2/17/2019.(McGuirk, Kelly) (Entered: 11/19/2018) |
| 11/14/2018 | 85 | MOTION FOR CHANGE OF VENUE. Document filed by Rovier Carrington.(sc) (Entered: 11/15/2018) |
| 10/17/2018 | 84 | SEALED DOCUMENT placed in vault.(mhe) (Entered: 10/17/2018) |
| 10/16/2018 | 83 | ENDORSED LETTER addressed to Judge Katherine Polk Failla from Rovier Carrington dated Undated re: Request to Proceed Pro Se in order to motion for change of venue. ENDORSEMENT: Application GRANTED. The Court has reviewed Plaintiff's submission and ORDERS the following briefing schedule for Plaintiff's proposed motion to change venue. Plaintiff's motion shall be due on November 16, 2018, and Defendant's Opposition to the motion shall be due on November 30, 2018. The Court ORDERS Plaintiff to submit his motion papers and any future communication by mail to this Court's Pro Se Intake Unit, 500 Pearl Street, Room 200, New York, NY 10007. The Court ORDERS Defendants to mail copies of their opposition memoranda and any cases cited therein to Plaintiff's address. The Clerk of Court is directed to update the docket to reflect Plaintiff's mailing address as provided in this letter. SO ORDERED. (Motions due by 11/16/2018, Responses due by 11/30/2018) (Signed by Judge Katherine Polk Failla on 10/12/2018) Copies Mailed By Chambers. (jca) (Entered: 10/16/2018) |
| 10/05/2018 | 82 | ORDER granting 78 Motion to Withdraw as Attorney. Pursuant to the discussions at the telephonic conference on October 5, 2018, the Court GRANTS The Landau Group, PCs motion to withdraw as counsel for |

| | | he must comply strictly with the orders of the Court in litigating his case. Further communications must comply with the Court's orders, or they will be disregarded. Finally, the Court understands that Plaintiff expects to be represented by counsel moving forward. Given that his request to transfer venue was based partly on the availability of counsel in California and not the Southern District of New York, any new counsel should be prepared to address whether their appearance will moot the issue of venue. SO ORDERED. (Replies due by 1/11/2019.) (Signed by Judge Katherine Polk Failla on 1/2/2019) Copies Mailed By Chambers. (mml) (Entered: 01/02/2019) |
|---|---|---|
| 12/11/2018 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Telephone Conference held on 12/11/2018. Pro se plaintiff Rovier Carrington present. Attorneys Stanton Lawrence Stein and Diana Arielle Sanders representing Brian Graden and Brian Graden Media, LLC present. Attorneys Stephen Robert Fishbein and Christopher Lloyd LaVigne representing Viacom Inc., Viacom International Inc., and Paramount Pictures Corporation present. Attorneys Sarah Schacter and Wook J. Hwang representing Brad Grey, Brad Grey Estate and Brad Alan Grey Trust present. Docket to reflect Plaintiff's address as listed on Document 85. (Court Reporter Alena Lynch) (tn) (Entered: 12/12/2018) |
| 12/07/2018 | 90 | ORDER: The Court is in receipt of Defendants' joint letter regarding issues relating to service with respect to Plaintiff Rovier Carrington. (Dkt. #89). In connection with that motion, the parties are hereby ORDERED to appear for a telephonic conference on December 11, 2018, at 4:00 p.m. At that time, a representative of each Defendant, and Rovier Carrington shall call Chambers at (212) 805-0290, with all parties on a single line. (Telephone Conference set for 12/11/2018 at 04:00 PM before Judge Katherine Polk Failla.) (Signed by Judge Katherine Polk Failla on 12/7/2018) (rro) (Entered: 12/07/2018) |
| 12/07/2018 | 89 | JOINT LETTER addressed to Judge Katherine Polk Failla from Christopher LaVigne dated December 7, 2018 re: plaintiffs refusal to accept service. Document filed by Paramount Pictures Corporation, Viacom Inc., Viacom International Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Certificate of Service) (LaVigne, Christopher) (Entered: 12/07/2018) |
| 11/30/2018 | 88 | MEMORANDUM OF LAW in Opposition re: 85 MOTION to Change Venue. . Document filed by Paramount Pictures Corporation, Viacom Inc., Viacom International Inc.. (Attachments: # 1 Certificate of Service)(LaVigne, Christopher) (Entered: 11/30/2018) |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 196

4/22/2019                                   SDNY CM/ECF NextGen Version 1.2

| | | |
|---|---|---|
| | | Graden, Brad Grey, Paramount Pictures Corporation, Viacom Inc., Viacom International Inc.. Document filed by Rovier Carrington. **Proposed document to be reviewed and processed by Clerk's Office staff (No action required by chambers).** (vn) (Entered: 01/23/2019) |
| 01/18/2019 | 93 | REQUEST TO TAKE MOTION TO TRANSFER VENUE OFF THE COURT'S CALENDAR. Document filed by Rovier Carrington.(vn) (Entered: 01/18/2019) |
| 01/17/2019 | 92 | ORDER TO SHOW CAUSE: Accordingly, this Court ORDERS Plaintiff to show cause in writing why his claims should not be dismissed with prejudice for failure to prosecute. Plaintiff is hereby ORDERED to file a letter with the Court explaining his failure to comply with Court-ordered deadlines by February 6, 2019. To clarify, a dismissal of the case with prejudice would not necessarily resolve the outstanding applications by Defendants for sanction under Federal Rule of Civil Procedure 11. "It is well established that a federal court may consider collateral issues after an action is no longer pending.... [An] imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether [a party] has abused the judicial process, and, if so, what sanction would be appropriate." Willy v. Coastal Corp., 503 U.S. 131, 138 (1992) (quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 395-96 (1990)). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962). SO ORDERED. (Signed by Judge Katherine Polk Failla on 1/16/2019) Copies Mailed By Chambers. (rro) (Entered: 01/17/2019) |
| 01/02/2019 | | Mailed a copy of 91 Endorsed Letter, to Rovier Carrington, 5901 Encina Road, Suite C-2, Goleta, CA 93117. (tn) (Entered: 01/02/2019) |
| 01/02/2019 | 91 | ENDORSED LETTER addressed to Judge Katherine Polk Failla from Rovier Carrington dated 12/28/2018 re: Plaintiff requests an extension of time. ENDORSEMENT: Application GRANTED. Despite the late-filed and informal nature of the request, the Court takes into account Plaintiff's pro se status in granting this extension. Plaintiff's deadline to file a reply is hereby extended until January 11, 2019. No further extensions will be granted. While the Court grants Plaintiff's request for an extension, Plaintiff is reminded that by order of October 16, 2018, Plaintiff was directed to file all communications by mail with the Court's pro se intake unit. (Dkt. 83). The Court reminds Plaintiff that |

Defendants provide a copy of this Order to Plaintiff via email. A copy of this Order was mailed by Chambers to: Rovier Carrington, 5901 Encina Road, Suite C-2, Goleta, CA 93117. SO ORDERED., (Telephone Conference set for 2/7/2019 at 04:30 PM before Judge Katherine Polk Failla.) (Signed by Judge Katherine Polk Failla on 1/23/19) Copies Mailed By Chambers. (yv) (Entered: 01/24/2019)

| 01/23/2019 | 96 | LETTER addressed to Judge Katherine Polk Failla from Stephen Fishbein dated January 23, 2019 re: Defendants' response to Plaintiff's filing of a notice of voluntary dismissal of this action without prejudice. Document filed by Paramount Pictures Corporation, Viacom Inc., Viacom International Inc.. (Attachments: # 1 Certificate of Service)(Fishbein, Stephen) (Entered: 01/23/2019) |
| --- | --- | --- |
| 01/23/2019 | | **\*\*\*NOTICE TO COURT REGARDING NOTICE OF VOLUNTARY DISMISSAL Document No. 95 Notice of Voluntary Dismissal was reviewed and referred to Judge Katherine Polk Failla for approval for the following reason(s): the plaintiff(s) filed their voluntary dismissal in a Pro Se case. (km)** (Entered: 01/23/2019) |
| 01/22/2019 | | Set/Reset Hearings: Telephone Conference set for 2/7/2019 at 04:30 PM before Judge Katherine Polk Failla. (rro) (Entered: 01/22/2019) |
| 01/22/2019 | 94 | MEMO ENDORSEMENT granting 93 Motion. transfer venue is GRANTED. ENDORSEMENT: The Clerk of Court is directed to terminate the motion at docket entry 85. The Court understands Plaintiff's submission to be limited to this request to withdraw his motion to transfer and will for now ignore that portion of the caption suggesting that Plaintiff is requesting the Court voluntarily dismiss this case. If Plaintiff wishes to seek dismissal, he must file a specific motion to that effect. As Plaintiff's motion to transfer venue is hereby withdrawn, the Court must now address Defendants' outstanding demands for discovery. (Dkt. #80). The parties are hereby ORDERED to appear for a telephone conference on February 7, 2019, at 4:30 p.m (Eastern Time). At that time, a representative of each Defendant and Rovier Carrington shall call Chambers at (212) 805-0290, with all parties on a single line. (Signed by Judge Katherine Polk Failla on 1/22/2019) Copies Mailed By Chambers. (rro) (Entered: 01/22/2019) |
| 01/18/2019 | 95 | NOTICE OF VOLUNTARY DISMISSAL pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, the plaintiff(s) and or their counsel(s), hereby give notice that the above-captioned action is voluntarily dismissed, without prejudice against the defendant(s) Brad Alan Grey Trust, Brad Grey Estate, Brian Graden Media, LLC, Brian |

| | | |
|---|---|---|
| | | Katherine Polk Failla on 2/8/19) Copies Mailed By Chambers. (yv) (Entered: 02/08/2019) |
| 02/07/2019 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Telephone Conference held on 2/7/2019. Pro se Plaintiff Rovier Carrington present. Attorneys Stanton Lawrence Stein and Diana Arielle Sanders representing Brian Graden and Brian Graden Media, LLC, present. Attorneys Stephen Robert Fishbein and Michelena Hallie representing Viacom Inc., Viacom International Inc., and Paramount Pictures Corporation present. Attorneys Sarah Schacter and Wook J. Hwang representing Brad Grey defendants present. Defendants' deadlines to answer complaint are stayed. Viacom defendants are to order a copy of the transcript, and send a copy to Plaintiff. (See transcript). (Court Reporter Karen Gorlaski) (tn) (Entered: 02/11/2019) |
| 02/04/2019 | 99 | MEMO ENDORSEMENT on re: 98 Letter filed by Brad Grey Estate, Brad Alan Grey Trust, Brad Grey. ENDORSEMENT: Application GRANTED. The Defendants are hereby granted leave to file a motion for sanctions at the conclusion of further investigation and discovery. The Court will address the next steps in relation to the predicted motion at the February 7, 2019 conference. SO ORDERED. (Signed by Judge Katherine Polk Failla on 2/1/2019) (jca) (Entered: 02/04/2019) |
| 02/01/2019 | 98 | LETTER addressed to Judge Katherine Polk Failla from Wook Hwang dated 2/1/2019 re: February 7, 2019 teleconference. Document filed by Brad Alan Grey Trust, Brad Grey Estate, Brad Grey.(Hwang, Wook) (Entered: 02/01/2019) |
| 01/29/2019 | | Mailed a copy of 94 Order on Motion for Miscellaneous Relief, 97 Memo Endorsement, to Rovier Carrington, 5901 Encina Road, Suite C-2, Goleta, CA 93117. (tn) (Entered: 01/29/2019) |
| 01/23/2019 | 97 | MEMO ENDORSEMENT on re: 96 Letter response to Plaintiff's filing of a notice of voluntary dismissal of this action without prejudice, filed by Viacom Inc., Viacom International Inc., Paramount Pictures Corporation. ENDORSEMENT: Application GRANTED. The Court is in receipt of Plaintiff's request to dismiss the case. (Dkt. #95). The Court will hold the telephone conference as scheduled on February 7, 2019, at 4:30 p.m. The Court will address the Plaintiff's request for a voluntary dismissal without prejudice, as well as the Defendants' outstanding discovery requests regarding the authenticity of the emails filed along with the Amended Complaint. The Court will mail a copy of this Order to Plaintiff at the address provided, and requests that the |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 199

| | | |
|---|---|---|
| | | www.thecarringtondiaries.com and subscriber-related information for the following email accounts, as set forth in Exhibits A-C: (1) trendsetterrovheir@gmail.com; (2) roviercarrington@gmail.com; and (3) Rovier@thecarringtondiaries.com (the "Accounts"). IT IS FURTHER ORDERED that, within fourteen (14) days of receipt of the subpoenas, Google, Microsoft and GoDaddy shall provide responsive information for such accounts as further set forth in this order. (Signed by Judge Katherine Polk Failla on 2/13/2019) (ks) (Entered: 02/13/2019) |
| 02/12/2019 | 101 | CERTIFICATE OF SERVICE of Telephonic Conference Transcript served on Rovier Carrington on February 12, 2019. Service was made by Mail. Document filed by Paramount Pictures Corporation, Viacom Inc., Viacom International Inc.. (Fishbein, Stephen) (Entered: 02/12/2019) |
| 02/11/2019 | | NOTICE EXTENDING RESPONSE DEADLINE re: 100 Order: Landau Group's time to respond to Plaintiff's February 7, 2019 email, is extended to February 20, 2019. The Landau Group shall file its response with the Court and mail a copy of its response to Plaintiff at the address provided, as directed in the Court's Order dated February 8, 2019. (tn) Modified on 2/11/2019 (tn). ***No PDF is attached to this entry. (Entered: 02/11/2019) |
| 02/11/2019 | | Mailed a copy of 100 Order, to Rovier Carrington, 5901 Encina Road, Suite C-2, Goleta, CA 93117. (tn) (Entered: 02/11/2019) |
| 02/08/2019 | 100 | ORDER. Plaintiff is reminded that he is not permitted to file documents by email, and that he is to mail any documents to the Court's Pro Se Intake Unit, located at the Thurgood Marshall U.S. Courthouse, 40 Foley Square, Room 105, New York, New York 10007. Having reviewed Plaintiff's submission, the Court hereby ORDERS the Landau Group to file a response to it on or before February 15, 2019. The Landau Group shall file its response with the Court and mail a copy of its response to Plaintiff at the address provided. Because the Landau Group is no longer counsel of record, the Court will provide a copy of this Order to the Landau Group via email along with the unredacted version of Plaintiff's letter. The Court has reviewed the letter and does not consider the redacted material contained therein to be subject to the attorney-client privilege or any other privilege. That said, the Court also does not consider the redacted material to be relevant to any of the issues in this litigation, and will therefore not publicly docket the unredacted versions of any of Plaintiff's most recent submissions to the Court. SO ORDERED. (Signed by Judge |

| | | |
|---|---|---|
| | | Subpoena package served on Rovier Carrington on 02/21/2019. Service was made by Mail. Document filed by Brian Graden Media, LLC, Brian Graden. (Sanders, Diana) (Entered: 02/21/2019) |
| 02/21/2019 | 107 | CERTIFICATE OF SERVICE of (1) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action; (2) Order for Further Discovery; and, (3) Written Consent to Access Contents of Email Communications served on GOOGLE, LLC on 2/15/2019. Service was accepted by Becky DeGeorge, registered agent. Document filed by Brian Graden Media, LLC, Brian Graden. (Stein, Stanton) (Entered: 02/21/2019) |
| 02/21/2019 | 106 | CERTIFICATE OF SERVICE of (1) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action; (2) Order for Further Discovery; and, (3) Written Consent to Access Contents of Email Communications served on MICROSOFT CORPORATION on 2/15/19. Service was accepted by Becky DeGeorge, registered agent. Document filed by Brian Graden Media, LLC, Brad Grey. (Stein, Stanton) (Entered: 02/21/2019) |
| 02/21/2019 | 105 | CERTIFICATE OF SERVICE of (1) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action; (2) Order for Further Discovery; and, (3) Written Consent to Access Contents of Email Communications served on GODADDY, LLC on 02/15/2019. Service was accepted by Becky DeGeorge, registered agent. Document filed by Brian Graden Media, LLC, Brian Graden. (Stein, Stanton) (Entered: 02/21/2019) |
| 02/20/2019 | 104 | RESPONSE in Opposition to Motion re: 93 MOTION. The Landau Group, PC opposition to Plaintiff's Letters (document filed by The Landau Group, PC).. Document filed by Rovier Carrington. (Attachments: # 1 Exhibit Exhibits 1-10 of Response to Plaintiff's Letters (with Ex. 2 not included))(Landau, Zachary) (Entered: 02/20/2019) |
| 02/20/2019 | 103 | CERTIFICATE OF SERVICE of Order for Further Discovery (docket no. 102) served on Rovier Carrington on February 20, 2019. Service was made by Mail. Document filed by Brian Graden Media, LLC, Brian Graden. (Sanders, Diana) (Entered: 02/20/2019) |
| 02/13/2019 | 102 | ORDER FOR FURTHER DISCOVERY granting 75 Letter Motion for Discovery. IT IS HEREBY ORDERED that Defendants are permitted to serve Court- Ordered subpoenas on Google LLC ("Google"), Microsoft Corporation ("Microsoft"), and GoDaddy.com, LLC ("GoDaddy") for domain related information related to |

| | | |
|---|---|---|
| | | public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 3/29/2019. Redacted Transcript Deadline set for 4/8/2019. Release of Transcript Restriction set for 6/6/2019.(McGuirk, Kelly) (Entered: 03/08/2019) |
| 02/26/2019 | | Mailed a copy of 109 Order Regarding Plaintiff's Request for Turnover Order, to Rovier Carrington, 5901 Encina Road, Suite C-2, Goleta, CA 93117. (tn) (Entered: 02/26/2019) |
| 02/25/2019 | 109 | ORDER REGARDING PLAINTIFF'S REQUEST FOR TURNOVER ORDER: In this case, the Court granted the Landau Group leave to withdraw. (Dkt. #82). As the Landau Group notes, the Court specifically made a finding that the termination was without cause in an ex parte hearing on the withdrawal motion. (Dkt. #104 (Exhibit 2, Transcript of Withdrawal Hearing, 10-5-18)). Plaintiff does not address the prior orders of the Court. Plaintiff's arguments are largely focused on a breakdown in communications of which the Court was aware when making findings at the October 5, 2018 hearing at which it granted the motion to withdraw. Therefore, the Court finds that the retaining lien remains, and the Landau Group is entitled to "reasonable value" for the costs incurred in litigating this case. Plaintiff also objects to the total cost breakdown provided by the Landau Group. The Court has reviewed the material provided by the Landau Group in response. (Dkt. 104, Exhibits 1-10). The Court finds that the Landau Group has adequately provided justification for the costs in their billing statement, with a single exception. The Landau Group's bill includes a line item of $250 for "meals and entertainment." Plaintiff objects to this cost, and the Landau Group's response does not address this item. Therefore, the Court finds that the Landau Group has not provided an adequate explanation of these costs, and ORDERS the retaining lien reduced to $14,295.00. The Court DENIES Plaintiff's request for a turnover order and for termination of the Landau Group's liens. SO ORDERED. (Signed by Judge Katherine Polk Failla on 2/25/2019) Copies Mailed By Chambers. (rro) (Entered: 02/25/2019) |
| 02/22/2019 | | Mailed a copy of 102 Order on Motion for Discovery, to Rovier Carrington, 5901 Encina Road, Suite C-2, Goleta, CA 93117. (tn) (Entered: 02/22/2019) |
| 02/21/2019 | 108 | CERTIFICATE OF SERVICE of (1) Proofs of Service of GoDaddy, LLC Subpoena package; (2) Proof of Service of Microsoft Corporation Subpoena package; and, (3) Proof of Service of Google, LLC |

| | | |
|---|---|---|
| | | Failla on 4/12/2019) Copies Mailed By Chambers. (rro) (Entered: 04/12/2019) |
| 04/11/2019 | | Mailed a copy of 113 Order on Motion to Seal Document, to Rovier Carrington, 5901 Encina Road, Suite C-2, Goleta, CA 93117. (tn) (Entered: 04/11/2019) |
| 04/10/2019 | 115 | CERTIFICATE OF SERVICE of Letter and Exhibits served on Rovier Carrington on April 10, 2019. Service was made by Mail. Document filed by Brian Graden Media, LLC, Brian Graden. (Stein, Stanton) (Entered: 04/10/2019) |
| 04/10/2019 | 114 | LETTER MOTION for Conference addressed to Judge Katherine Polk Failla from Stanton L. Stein dated April 10, 2019. Document filed by Brian Graden Media, LLC, Brian Graden. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F)(Stein, Stanton) (Entered: 04/10/2019) |
| 04/10/2019 | 113 | ORDER granting 112 Motion to Seal Document, Application GRANTED. Defendants are hereby permitted to file a redacted version of their forthcoming letter and supporting exhibits on the public docket. The Court ORDERS Defendants to submit an unredacted version to the Court both electronically and via regular mail. Defendants shall provide Plaintiff with redacted and unredacted versions of the letter and exhibits via regular mail to the address provided by the Plaintiff. (Signed by Judge Katherine Polk Failla on 4/10/2019) Copies Mailed By Chambers. (rro) (Entered: 04/10/2019) |
| 04/09/2019 | 112 | LETTER MOTION to Seal Document addressed to Judge Katherine Polk Failla from Stanton L. Stein dated April 9, 2019. Document filed by Brian Graden Media, LLC, Brian Graden. (Attachments: # 1 Exhibit A, # 2 Affidavit of Service)(Stein, Stanton) (Entered: 04/09/2019) |
| 03/08/2019 | 111 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 2/7/19 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(McGuirk, Kelly) (Entered: 03/08/2019) |
| 03/08/2019 | 110 | TRANSCRIPT of Proceedings re: CONFERENCE held on 2/7/2019 before Judge Katherine Polk Failla. Court Reporter/Transcriber: Karen Gorlaski, (212) 805-0300. Transcript may be viewed at the court |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT   p. 203

|  |  | CONSENT/SUBPOENAS(Purs. to Court Discovery Order dated 2/17/19). Document filed by Rovier Carrington.(sc) (Entered: 04/16/2019) |
| --- | --- | --- |
| 04/15/2019 | 118 | LETTER addressed to Judge Katherine Polk Failla from R. Carrington, dated 2/27/19 re: COMPLIANCE WITH DISCOVERY ORDER OF 2/7/19(for iPhone X and Consent Form). Document filed by Rovier Carrington.(sc) (Entered: 04/16/2019) |
| 04/15/2019 | 117 | LETTER addressed to Judge Katherine Polk Failla from R. Carrington, dated 4/4/19 re: NOTICE OF NO OBJECTION/OPPOSITION TO PLAINTIFF'S COMPLIANCE WITH DISCOVERY ORDER. NO EVIDENCE OF PLAINTIFF'S WRONGDOING. RENEWED REQUEST OF DISMISSAL WITHOUT PREJUDICE. Document filed by Rovier Carrington.(sc) (Entered: 04/16/2019) |
| 04/15/2019 |  | Mailed a copy of 116 Order on Motion for Conference, to Rovier Carrington, 5901 Encina Road, Suite C-2, Goleta, CA 93117. (tn) (Entered: 04/15/2019) |
| 04/12/2019 |  | Set/Reset Deadlines as to Motion Hearing set for 7/25/2019 at 03:30 PM in Courtroom 618, 40 Centre Street, New York, NY 10007 before Judge Katherine Polk Failla. (rro) (Entered: 04/12/2019) |
| 04/12/2019 |  | Set/Reset Deadlines: (Motions due by 5/13/2019., Responses due by 6/27/2019, Replies due by 7/8/2019.) (rro) (Entered: 04/12/2019) |
| 04/12/2019 | 116 | ORDER terminating 114 Letter Motion for Conference. The Court is in receipt of Defendants' joint letter requesting a pre-motion conference for an anticipated motion for sanctions due to the information returned from an examination of Plaintiff's phone and subpoenas to Plaintiff's email and website providers. (Dkt. #114). The Court has received both redacted and unredacted versions of this submission. The Court views this material with concern, particularly the material contained in the unredacted submission. Therefore, the Court will proceed directly to set a briefing schedule on Defendants' requested motion for sanctions, with a hearing to follow the briefing. Defendants' motion shall be due on or before May 13, 2019. Plaintiff's opposition shall be due on or before June 27, 2019, and Defendants' reply, if any, shall be due on or before July 8, 2019. The Court will hold a hearing on the motion on July 25, 2019, at 3:30 p.m. in Courtroom 618, Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York. Plaintiff will be required to appear in person for this hearing. (Signed by Judge Katherine Polk |

4/22/2019                                    SDNY CM/ECF NextGen Version 1.2

212-407-4000
Fax: 212-407-4990
Email: sschacter@loeb.com
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

**Wook J Hwang**
Loeb & Loeb LLP
345 Park Avenue
New York, NY 10154
(212) 407-4967
Fax: (212) 202-5183
Email: whwang@loeb.com
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

**Defendant**
**Brad Grey Estate**                 represented by **Sarah Schacter**
                                     (See above for address)
                                     LEAD ATTORNEY
                                     ATTORNEY TO BE NOTICED

                                     **Wook J Hwang**
                                     (See above for address)
                                     LEAD ATTORNEY
                                     ATTORNEY TO BE NOTICED

**Defendant**
**Brad Alan Grey Trust**             represented by **Sarah Schacter**
                                     (See above for address)
                                     LEAD ATTORNEY
                                     ATTORNEY TO BE NOTICED

                                     **Wook J Hwang**
                                     (See above for address)
                                     LEAD ATTORNEY
                                     ATTORNEY TO BE NOTICED

| Date Filed | # | Docket Text |
|---|---|---|
| 04/15/2019 | 119 | LETTER addressed to Judge Katherine Polk Failla from R. Carrington, dated 4/1/19 re: FILING OF FTI REPORT REGARDING |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 205

4/22/2019                                    SDNY CM/ECF NextGen Version 1.2

New York, NY 10022
212 848-4424
Fax: 212 848-7179
Email: sfishbein@shearman.com
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

~~Christopher Lloyd LaVigne~~
Shearman & Sterling LLP (NY)
599 Lexington Avenue
New York, NY 10022
(212) 848-4432
Fax: (646) 848-4432
Email:
christopher.lavigne@shearman.com
ATTORNEY TO BE NOTICED

**Defendant**

**Viacom International Inc.**        represented by **Stephen Robert Fishbein**
(See above for address)
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

**Christopher Lloyd LaVigne**
(See above for address)
ATTORNEY TO BE NOTICED

**Defendant**

**Paramount Pictures Corporation**        represented by **Stephen Robert Fishbein**
(See above for address)
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

**Christopher Lloyd LaVigne**
(See above for address)
ATTORNEY TO BE NOTICED

**Defendant**

**Brad Grey**        represented by **Sarah Schacter**
Loeb & Loeb LLP
345 Park Avenue
New York, NY 10154

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 206

4/22/2019                                    SDNY CM/ECF NextGen Version 1.2

Fax: (248)-671-0884
Email: zach@thelandaugroup.com
TERMINATED: 10/12/2018

V.

**Defendant**

~~**Brian Graden**~~                       represented by ~~**Stanton Lawrence Stein**~~
Russ August & Kabat
12424 Wilshire Blvd, 12th Floor
Los Angeles, CA 90025
(310) 826-7474
Fax: (310) 979-8222
Email: lstein@raklaw.com
LEAD ATTORNEY
PRO HAC VICE
ATTORNEY TO BE NOTICED

**Diana Arielle Sanders**
Russ August & Kabat
12424 Wilshire Blvd, 12th Floor
Los Angeles, CA 90025
(310) 826-7474
Fax: (310) 979-8222
Email: dsanders@raklaw.com
ATTORNEY TO BE NOTICED

**Defendant**

**Brian Graden Media, LLC**            represented by **Stanton Lawrence Stein**
(See above for address)
LEAD ATTORNEY
PRO HAC VICE
ATTORNEY TO BE NOTICED

**Diana Arielle Sanders**
(See above for address)
ATTORNEY TO BE NOTICED

**Defendant**

**Viacom Inc.**                        represented by **Stephen Robert Fishbein**
Shearman & Sterling LLP (NY)
599 Lexington Avenue

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 207

4/22/2019                          SDNY CM/ECF NextGen Version 1.2

**Query**   Reports   **Utilities**   Help   **Log Out**

ECF

# U.S. District Court
## Southern District of New York (Foley Square)
### CIVIL DOCKET FOR CASE #: 1:18-cv-04609-KPF

Carrington v. Graden et al                    Date Filed: 05/24/2018
Assigned to: Judge Katherine Polk Failla      Jury Demand: Plaintiff
Case in other court:  New York State Supreme Court,   Nature of Suit: 410 Anti-Trust
                      County of New York, 154060-     Jurisdiction: Federal Question
                      2018
Cause: 15:1 Antitrust Litigation (Monopolizing
Trade)

**Plaintiff**

**Rovier Carrington**                 represented by   **Rovier Carrington**
                                                       5901 Encina Road
                                                       Suite C-2
                                                       Goleta, CA 93117
                                                       424-332-2488
                                                       PRO SE

                                                       **Kevin Landau**
                                                       The Landau Group, PC
                                                       1221 Ave. of The Americas, 42nd
                                                       Floor
                                                       New York, NY 10020
                                                       (917)-584-2293
                                                       Fax: (248)-671-0884
                                                       Email: kevin@thelandaugroup.com
                                                       TERMINATED: 10/12/2018
                                                       LEAD ATTORNEY

                                                       **Zachary R Landau**
                                                       The Landau Group, PC
                                                       45 Rockefeller Plaza, Ste. 2000
                                                       New York, NY 10111
                                                       (248)-535-2869

5/24/2019                                                    SDNY CM/ECF NextGen Version 1.2

|  | | finds no grounds to rescind the Order. Plaintiff is still required to appear in person for a hearing on this issue on July 25, 2019, at 3:30 p.m. If Plaintiff has retained counsel, such counsel may of course accompany Plaintiff to this hearing. The scope of the hearing remains limited to Defendants' motion for sanctions. The Court denies Plaintiff's request for an order requiring the Defendants to appear personally for this hearing, as the Court does not find that Plaintiff has identified any misconduct by a particular Defendant in the course of this motion practice. Defendants' attorneys are required to attend this hearing, and the Court expects that they will appear, as further set forth in this Order. (Signed by Judge Katherine Polk Failla on 5/20/2019) Copies Mailed By Chambers. (mml) (Entered: 05/21/2019) |
|---|---|---|
| 05/21/2019 | | Mailed a copy of 126 Order, to Rovier Carrington, 5901 Encina Road, Suite C-2, Goleta, CA 93117. (tn) (Entered: 05/21/2019) |
| 05/22/2019 | 127 | LETTER addressed to Judge Katherine Polk Failla from R. Carrington, dated 5/20/19 re: Plaintiff requests that the Court consider in this letter Notice of Defendants' and Defendants' attorneys' Obstruction of 2/13/19 Court Order for Further Discovery(Dkt.#102; Request to hold Defendants' and Defendants' attorneys' in Contempt of the 2/13/19 Order etc. Document filed by Rovier Carrington.(sc) (Entered: 05/23/2019) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 05/24/2019 01:52:33 | | |
| PACER Login: | gregloomis | Client Code: | |
| Description: | Docket Report | Search Criteria: | 1:18-cv-04609-KPF |
| Billable Pages: | 21 | Cost: | 2.10 |



EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 209

5/24/2019                        SDNY CM/ECF NextGen Version 1.2

| | | |
|---|---|---|
| | | of filings. Furthermore, Defendants are instructed to be careful in submitting text marked with highlighting, as Defendants have also used highlighting to specify redacted material. (Signed by Judge Katherine Polk Failla on 5/13/2019) Copies Mailed By Chambers. (rro) (Entered: 05/13/2019) |
| 05/13/2019 | 123 | JOINT MOTION for Sanctions *Against Plaintiff*. Document filed by Brian Graden Media, LLC, Brian Graden.(Stein, Stanton) (Entered: 05/13/2019) |
| 05/13/2019 | 124 | JOINT MOTION for Sanctions , *MEMORANDUM OF LAW IN SUPPORT OF MOTION (Dkt no. 123)*. Document filed by Brian Graden Media, LLC, Brian Graden. (Attachments: # 1 Affidavit Declaration of Stanton L. Stein in Support of Motion for Sanctions, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit N, # 16 Exhibit O, # 17 Exhibit P, # 18 Exhibit Q, # 19 Exhibit R, # 20 Exhibit S)(Stein, Stanton) (Entered: 05/13/2019) |
| 05/13/2019 | 125 | CERTIFICATE OF SERVICE of (1) Notice of Defendants Motion for Terminating Sanctions and Attorneys Fees Against Plaintiff; (2) Memorandum of Law in Support of Defendants Motion for Terminating Sanctions and Attorneys Fees Against Plaintiff (with redactions); (3) Declaration of Stanton L. Stein in Support of Defendants Motion for Terminating Sanctions and Attorneys Fees Against Plaintiff, with Exhibits A through S (with redactions); (4) Memorandum of Law in Support of Defendants Motion for Terminating Sanctions and Attorneys Fees Against Plaintiff (UNREDACTED); (5) Declaration of Stanton L. Stein in Support of Defendants Motion for Terminating Sanctions and Attorneys Fees Against Plaintiff, with Exhibits A through S (UNREDACTED) served on Rovier Carrington on May 13, 2019. Service was made by Mail. Document filed by Brian Graden Media, LLC, Brian Graden. (Stein, Stanton) (Entered: 05/13/2019) |
| 05/14/2019 | | Mailed a copy of 122 Endorsed Letter, 121 Order on Motion to Seal Document, to Rovier Carrington, 5901 Encina Road, Suite C-2, Goleta, CA 93117. (tn) (Entered: 05/14/2019) |
| 05/21/2019 | 126 | ORDER: To begin with, Plaintiff is reminded that he is not permitted to file documents by email, and that he is to mail any documents to the Court's Pro Se Intake Unit, located at the Thurgood Marshall U.S. Courthouse, 40 Foley Square, Room 105, New York, New York 10007. The Court has reminded Plaintiff of this requirement on several occasions. (See Dkt. #91, 100). The Court may disregard any future submissions from Plaintiff that do not comply with this mailing requirement. However, having reviewed Plaintiff's submission, the Court denies his various requests. Much of Plaintiff's letter is occupied with allegations of misconduct against defense counsel regarding the Courts discovery orders. Having reviewed the letter and the docket, the Court does not see any evidence of misconduct by Defendants' attorneys. The Court authorized subpoenas on Plaintiff's accounts with GoDaddy, Microsoft, and Google, with the returns to be delivered to Defendant Brian Graden's attorney, Mr. Stein, for transmission to FTI. Defendants do not appear to have exceeded the Court's prior orders or hidden evidence from the Court. The Court denies Plaintiff's requests for investigation into alleged misconduct by Defendants' attorneys, as it does not consider Plaintiff to have pointed to any evidence of misconduct. The Court denies all requests concerning contempt of court, disbarment, misconduct reports to various state bar associations, and disqualification of Defendants' attorneys. And the Court denies Plaintiff's request for sanctions. Another large section of Plaintiff's submission consists of his opposition to Defendants' interpretation of the subpoena returns and their description of the litigation history of this case. Plaintiff provides his own analysis of what the subpoena returns demonstrate. Plaintiff is certainly entitled to offer such arguments. The Court has provided Plaintiff until June 27, 2019, to provide his opposition to Defendants' motion for sanctions. If Plaintiff has not filed a separate document before that date, the Court will determine that he wishes for this to be his opposition brief and will accept it as such. Plaintiff asks the Court to rescind its Order of April 12, 2019, and the Court |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 210

5/24/2019                                    SDNY CM/ECF NextGen Version 1.2

| 04/15/2019 | 117 | LETTER addressed to Judge Katherine Polk Failla from R. Carrington, dated 4/4/19 re: NOTICE OF NO OBJECTION/OPPOSITION TO PLAINTIFF'S COMPLIANCE WITH DISCOVERY ORDER. NO EVIDENCE OF PLAINTIFF'S WRONGDOING. RENEWED REQUEST OF DISMISSAL WITHOUT PREJUDICE. Document filed by Rovier Carrington.(sc) (Entered: 04/16/2019) |
|---|---|---|
| 04/15/2019 | 118 | LETTER addressed to Judge Katherine Polk Failla from R. Carrington, dated 2/27/19 re: COMPLIANCE WITH DISCOVERY ORDER OF 2/7/19(for iPhone X and Consent Form). Document filed by Rovier Carrington.(sc) (Entered: 04/16/2019) |
| 04/15/2019 | 119 | LETTER addressed to Judge Katherine Polk Failla from R. Carrington, dated 4/1/19 re: FILING OF FTI REPORT REGARDING CONSENT/SUBPOENAS(Purs. to Court Discovery Order dated 2/17/19). Document filed by Rovier Carrington.(sc) (Entered: 04/16/2019) |
| 05/09/2019 | 120 | LETTER MOTION to Seal Document addressed to Judge Katherine Polk Failla from Stanton L. Stein dated May 9, 2019. Document filed by Brian Graden Media, LLC, Brian Graden. (Attachments: # 1 Affidavit Affidavit of Service)(Stein, Stanton) (Entered: 05/09/2019) |
| 05/10/2019 | 121 | ORDER granting 120 Motion to Seal Document. Application GRANTED. Defendants are hereby permitted to file a redacted version of their forthcoming motion and supporting exhibits on the public docket. The Court ORDERS Defendants to submit an unredacted version to the Court both electronically and via regular mail. Defendants shall provide Plaintiff with redacted and unredacted versions of the letter and exhibits via regular mail to the address provided by the Plaintiff. (Signed by Judge Katherine Polk Failla on 5/10/2019) Copies Mailed By Chambers. (rro) Transmission to Sealed Records Clerk for processing. (Entered: 05/13/2019) |
| 05/13/2019 | 122 | ENDORSED LETTER addressed to Judge Katherine Polk Failla from Rovier Carrington dated 5/13/2019 re: Objection/Response to Defendant Brian Gradens 5-9-19 Motion Letter [Dkt #120]. ENDORSEMENT: submissions of the Defendants. (Dkt. #112-114, 120-121). Plaintiff appears to object to the publication of certain material produced to the Defendants in response to a subpoena to GoDaddy, which is marked as Exhibit F to Defendants' April 10, 2019 letter motion. (Dkt. #114-6). However, the only material that is unredacted on the public docket from this exhibit is a cover letter from GoDaddy, describing the need for redaction. Specifically, Plaintiff objects to the publication of "GD Docs. 67-76". However, the items that have this Bates label are already redacted. Adding to the confusion, Plaintiff claims that Defendants have improperly redacted material in Exhibit C. (Dkt. #114-3). No material is redacted in Exhibit C, and the Court believes Plaintiff's confusion may stem from the fact that some material in the exhibit is highlighted in yellow. (Id. at 6-7). In this exhibit, this highlighting is not indicative of redactions. Finally, the Court does not consider Defendants to have wrongfully obtained the GoDaddy material, which was produced to them in response to subpoenas approved by the Court. In reviewing the unredacted material on the public docket, the Court does not find material containing "credit cards, phone numbers, personal residence, billing address,... [or] IP addresses." While Plaintiff's email addresses are unredacted, the Court does not find that Plaintiff's email addresses are sensitive personal information. Plaintiff has included an email address in several of his own submissions. (Dkt. #117-119). Nevertheless, to allay Plaintiff's concerns, the Court will limit the access of the public to certain documents. The Clerk of Court is directed to limit access to docket entry 114 and its accompanying exhibits to court users and case participants only. The Court will do the same for Defendants' forthcoming motion. At the hearing on July 8, 2019, the Court will address what items will remain restricted moving forward. Additionally, to alleviate further confusion, the Court ORDERS Defendants to more clearly delineate what material is redacted when providing Plaintiff unredacted versions |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 211

| 5/24/2019 | | SDNY CM/ECF NextGen Version 1.2 |
|---|---|---|
| | | obtained through PACER. Redaction Request due 3/29/2019. Redacted Transcript Deadline set for 4/8/2019. Release of Transcript Restriction set for 6/6/2019.(McGuirk, Kelly) (Entered: 03/08/2019) |
| 03/08/2019 | 111 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 2/7/19 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(McGuirk, Kelly) (Entered: 03/08/2019) |
| 04/09/2019 | 112 | LETTER MOTION to Seal Document addressed to Judge Katherine Polk Failla from Stanton L. Stein dated April 9, 2019. Document filed by Brian Graden Media, LLC, Brian Graden. (Attachments: # 1 Exhibit A, # 2 Affidavit of Service)(Stein, Stanton) (Entered: 04/09/2019) |
| 04/10/2019 | 113 | ORDER granting 112 Motion to Seal Document, Application GRANTED. Defendants are hereby permitted to file a redacted version of their forthcoming letter and supporting exhibits on the public docket. The Court ORDERS Defendants to submit an unredacted version to the Court both electronically and via regular mail. Defendants shall provide Plaintiff with redacted and unredacted versions of the letter and exhibits via regular mail to the address provided by the Plaintiff. (Signed by Judge Katherine Polk Failla on 4/10/2019) Copies Mailed By Chambers. (rro) (Entered: 04/10/2019) |
| 04/10/2019 | 115 | CERTIFICATE OF SERVICE of Letter and Exhibits served on Rovier Carrington on April 10, 2019. Service was made by Mail. Document filed by Brian Graden Media, LLC, Brian Graden. (Stein, Stanton) (Entered: 04/10/2019) |
| 04/11/2019 | | Mailed a copy of 113 Order on Motion to Seal Document, to Rovier Carrington, 5901 Encina Road, Suite C-2, Goleta, CA 93117. (tn) (Entered: 04/11/2019) |
| 04/12/2019 | 116 | ORDER terminating 114 Letter Motion for Conference. The Court is in receipt of Defendants' joint letter requesting a pre-motion conference for an anticipated motion for sanctions due to the information returned from an examination of Plaintiff's phone and subpoenas to Plaintiff's email and website providers. (Dkt. #114). The Court has received both redacted and unredacted versions of this submission. The Court views this material with concern, particularly the material contained in the unredacted submission. Therefore, the Court will proceed directly to set a briefing schedule on Defendants' requested motion for sanctions, with a hearing to follow the briefing. Defendants' motion shall be due on or before May 13, 2019. Plaintiff's opposition shall be due on or before June 27, 2019, and Defendants' reply, if any, shall be due on or before July 8, 2019. The Court will hold a hearing on the motion on July 25, 2019, at 3:30 p.m. in Courtroom 618, Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York. Plaintiff will be required to appear in person for this hearing. (Signed by Judge Katherine Polk Failla on 4/12/2019) Copies Mailed By Chambers. (rro) (Entered: 04/12/2019) |
| 04/12/2019 | | Set/Reset Deadlines: (Motions due by 5/13/2019., Responses due by 6/27/2019, Replies due by 7/8/2019.) (rro) (Entered: 04/12/2019) |
| 04/12/2019 | | Set/Reset Deadlines as to Motion Hearing set for 7/25/2019 at 03:30 PM in Courtroom 618, 40 Centre Street, New York, NY 10007 before Judge Katherine Polk Failla. (rro) (Entered: 04/12/2019) |
| 04/15/2019 | | Mailed a copy of 116 Order on Motion for Conference, to Rovier Carrington, 5901 Encina Road, Suite C-2, Goleta, CA 93117. (tn) (Entered: 04/15/2019) |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 212

SDNY CM/ECF NextGen Version 1.2

| | | |
|---|---|---|
| | | Communications served on GODADDY, LLC on 02/15/2019. Service was accepted by Becky DeGeorge, registered agent. Document filed by Brian Graden Media, LLC, Brian Graden. (Stein, Stanton) (Entered: 02/21/2019) |
| 02/21/2019 | 106 | CERTIFICATE OF SERVICE of (1) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action; (2) Order for Further Discovery; and, (3) Written Consent to Access Contents of Email Communications served on MICROSOFT CORPORATION on 2/15/19. Service was accepted by Becky DeGeorge, registered agent. Document filed by Brian Graden Media, LLC, Brad Grey. (Stein, Stanton) (Entered: 02/21/2019) |
| 02/21/2019 | 107 | CERTIFICATE OF SERVICE of (1) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action; (2) Order for Further Discovery; and, (3) Written Consent to Access Contents of Email Communications served on GOOGLE, LLC on 2/15/2019. Service was accepted by Becky DeGeorge, registered agent. Document filed by Brian Graden Media, LLC, Brian Graden. (Stein, Stanton) (Entered: 02/21/2019) |
| 02/21/2019 | 108 | CERTIFICATE OF SERVICE of (1) Proofs of Service of GoDaddy, LLC Subpoena package; (2) Proof of Service of Microsoft Corporation Subpoena package; and, (3) Proof of Service of Google, LLC Subpoena package served on Rovier Carrington on 02/21/2019. Service was made by Mail. Document filed by Brian Graden Media, LLC, Brian Graden. (Sanders, Diana) (Entered: 02/21/2019) |
| 02/22/2019 | | Mailed a copy of 102 Order on Motion for Discovery, to Rovier Carrington, 5901 Encina Road, Suite C-2, Goleta, CA 93117. (tn) (Entered: 02/22/2019) |
| 02/25/2019 | 109 | ORDER REGARDING PLAINTIFF'S REQUEST FOR TURNOVER ORDER: In this case, the Court granted the Landau Group leave to withdraw. (Dkt. #82). As the Landau Group notes, the Court specifically made a finding that the termination was without cause in an ex parte hearing on the withdrawal motion. (Dkt. #104 (Exhibit 2, Transcript of Withdrawal Hearing, 10-5-18)). Plaintiff does not address the prior orders of the Court. Plaintiff's arguments are largely focused on a breakdown in communications of which the Court was aware when making findings at the October 5, 2018 hearing at which it granted the motion to withdraw. Therefore, the Court finds that the retaining lien remains, and the Landau Group is entitled to "reasonable value" for the costs incurred in litigating this case. Plaintiff also objects to the total cost breakdown provided by the Landau Group. The Court has reviewed the material provided by the Landau Group in response. (Dkt. 104, Exhibits 1-10). The Court finds that the Landau Group has adequately provided justification for the costs in their billing statement, with a single exception. The Landau Group's bill includes a line item of $250 for "meals and entertainment." Plaintiff objects to this cost, and the Landau Group's response does not address this item. Therefore, the Court finds that the Landau Group has not provided an adequate explanation of these costs, and ORDERS the retaining lien reduced to $14,295.00. The Court DENIES Plaintiff's request for a turnover order and for termination of the Landau Group's liens. SO ORDERED. (Signed by Judge Katherine Polk Failla on 2/25/2019) Copies Mailed By Chambers. (rro) (Entered: 02/25/2019) |
| 02/26/2019 | | Mailed a copy of 109 Order Regarding Plaintiff's Request for Turnover Order, to Rovier Carrington, 5901 Encina Road, Suite C-2, Goleta, CA 93117. (tn) (Entered: 02/26/2019) |
| 03/08/2019 | 110 | TRANSCRIPT of Proceedings re: CONFERENCE held on 2/7/2019 before Judge Katherine Polk Failla. Court Reporter/Transcriber: Karen Gorlaski, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT   p. 213

5/24/2019                                    SDNY CM/ECF NextGen Version 1.2

| | | order a copy of the transcript, and send a copy to Plaintiff. (See transcript). (Court Reporter Karen Gorlaski) (tn) (Entered: 02/11/2019) |
|---|---|---|
| 02/08/2019 | 100 | ORDER. Plaintiff is reminded that he is not permitted to file documents by email, and that he is to mail any documents to the Court's Pro Se Intake Unit, located at the Thurgood Marshall U.S. Courthouse, 40 Foley Square, Room 105, New York, New York 10007. Having reviewed Plaintiff's submission, the Court hereby ORDERS the Landau Group to file a response to it on or before February 15, 2019. The Landau Group shall file its response with the Court and mail a copy of its response to Plaintiff at the address provided. Because the Landau Group is no longer counsel of record, the Court will provide a copy of this Order to the Landau Group via email along with the unredacted version of Plaintiff's letter. The Court has reviewed the letter and does not consider the redacted material contained therein to be subject to the attorney-client privilege or any other privilege. That said, the Court also does not consider the redacted material to be relevant to any of the issues in this litigation, and will therefore not publicly docket the unredacted versions of any of Plaintiff's most recent submissions to the Court. SO ORDERED. (Signed by Judge Katherine Polk Failla on 2/8/19) Copies Mailed By Chambers. (yv) (Entered: 02/08/2019) |
| 02/11/2019 | | Mailed a copy of 100 Order, to Rovier Carrington, 5901 Encina Road, Suite C-2, Goleta, CA 93117. (tn) (Entered: 02/11/2019) |
| 02/11/2019 | | NOTICE EXTENDING RESPONSE DEADLINE re: 100 Order: Landau Group's time to respond to Plaintiff's February 7, 2019 email, is extended to February 20, 2019. The Landau Group shall file its response with the Court and mail a copy of its response to Plaintiff at the address provided, as directed in the Court's Order dated February 8, 2019. (tn) Modified on 2/11/2019 (tn). ***No PDF is attached to this entry. (Entered: 02/11/2019) |
| 02/12/2019 | 101 | CERTIFICATE OF SERVICE of Telephonic Conference Transcript served on Rovier Carrington on February 12, 2019. Service was made by Mail. Document filed by Paramount Pictures Corporation, Viacom Inc., Viacom International Inc.. (Fishbein, Stephen) (Entered: 02/12/2019) |
| 02/13/2019 | 102 | ORDER FOR FURTHER DISCOVERY granting 75 Letter Motion for Discovery. IT IS HEREBY ORDERED that Defendants are permitted to serve Court- Ordered subpoenas on Google LLC ("Google"), Microsoft Corporation ("Microsoft"), and GoDaddy.com, LLC ("GoDaddy") for domain related information related to www.thecarringtondiaries.com and subscriber-related information for the following email accounts, as set forth in Exhibits A-C: (1) trendsetterrovheir@gmail.com; (2) roviercarrington@gmail.com; and (3) Rovier@thecarringtondiaries.com (the "Accounts"). IT IS FURTHER ORDERED that, within fourteen (14) days of receipt of the subpoenas, Google, Microsoft and GoDaddy shall provide responsive information for such accounts as further set forth in this order. (Signed by Judge Katherine Polk Failla on 2/13/2019) (ks) (Entered: 02/13/2019) |
| 02/20/2019 | 103 | CERTIFICATE OF SERVICE of Order for Further Discovery (docket no. 102) served on Rovier Carrington on February 20, 2019. Service was made by Mail. Document filed by Brian Graden Media, LLC, Brian Graden. (Sanders, Diana) (Entered: 02/20/2019) |
| 02/20/2019 | 104 | RESPONSE in Opposition to Motion re: 93 MOTION. *The Landau Group, PC opposition to Plaintiff's Letters (document filed by The Landau Group, PC)..* Document filed by Rovier Carrington. (Attachments: # 1 Exhibit Exhibits 1-10 of Response to Plaintiff's Letters (with Ex. 2 not included))(Landau, Zachary) (Entered: 02/20/2019) |
| 02/21/2019 | 105 | CERTIFICATE OF SERVICE of (1) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action; (2) Order for Further Discovery; and, (3) Written Consent to Access Contents of Email |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 214

5/24/2019                                    SDNY CM/ECF NextGen Version 1.2

| | | |
|---|---|---|
| | | p.m (Eastern Time). At that time, a representative of each Defendant and Rovier Carrington shall call Chambers at (212) 805-0290, with all parties on a single line. (Signed by Judge Katherine Polk Failla on 1/22/2019) Copies Mailed By Chambers. (rro) (Entered: 01/22/2019) |
| 01/22/2019 | | Set/Reset Hearings: Telephone Conference set for 2/7/2019 at 04:30 PM before Judge Katherine Polk Failla. (rro) (Entered: 01/22/2019) |
| 01/23/2019 | | ***NOTICE TO COURT REGARDING NOTICE OF VOLUNTARY DISMISSAL Document No. 95 Notice of Voluntary Dismissal was reviewed and referred to Judge Katherine Polk Failla for approval for the following reason(s): the plaintiff(s) filed their voluntary dismissal in a Pro Se case. (km) (Entered: 01/23/2019) |
| 01/23/2019 | 96 | LETTER addressed to Judge Katherine Polk Failla from Stephen Fishbein dated January 23, 2019 re: Defendants' response to Plaintiff's filing of a notice of voluntary dismissal of this action without prejudice. Document filed by Paramount Pictures Corporation, Viacom Inc., Viacom International Inc.. (Attachments: # 1 Certificate of Service)(Fishbein, Stephen) (Entered: 01/23/2019) |
| 01/23/2019 | 97 | MEMO ENDORSEMENT on re: 96 Letter response to Plaintiff's filing of a notice of voluntary dismissal of this action without prejudice, filed by Viacom Inc., Viacom International Inc., Paramount Pictures Corporation. ENDORSEMENT: Application GRANTED. The Court is in receipt of Plaintiff's request to dismiss the case. (Dkt. #95). The Court will hold the telephone conference as scheduled on February 7, 2019 at 4:30 p.m. The Court will address the Plaintiff's request for a voluntary dismissal without prejudice, as well as the Defendants' outstanding discovery requests regarding the authenticity of the emails filed along with the Amended Complaint. The Court will mail a copy of this Order to Plaintiff at the address provided, and requests that the Defendants provide a copy of this Order to Plaintiff via email. A copy of this Order was mailed by Chambers to: Rovier Carrington, 5901 Encina Road, Suite C-2, Goleta, CA 93117. SO ORDERED., (Telephone Conference set for 2/7/2019 at 04:30 PM before Judge Katherine Polk Failla.) (Signed by Judge Katherine Polk Failla on 1/23/19) Copies Mailed By Chambers. (yv) (Entered: 01/24/2019) |
| 01/29/2019 | | Mailed a copy of 94 Order on Motion for Miscellaneous Relief, 97 Memo Endorsement, to Rovier Carrington, 5901 Encina Road, Suite C-2, Goleta, CA 93117. (tn) (Entered: 01/29/2019) |
| 02/01/2019 | 98 | LETTER addressed to Judge Katherine Polk Failla from Wook Hwang dated 2/1/2019 re: February 7, 2019 teleconference. Document filed by Brad Alan Grey Trust, Brad Grey Estate, Brad Grey.(Hwang, Wook) (Entered: 02/01/2019) |
| 02/04/2019 | 99 | MEMO ENDORSEMENT on re: 98 Letter filed by Brad Grey Estate, Brad Alan Grey Trust, Brad Grey. ENDORSEMENT: Application GRANTED. The Defendants are hereby granted leave to file a motion for sanctions at the conclusion of further investigation and discovery. The Court will address the next steps in relation to the predicted motion at the February 7, 2019 conference. SO ORDERED. (Signed by Judge Katherine Polk Failla on 2/1/2019) (jca) (Entered: 02/04/2019) |
| 02/07/2019 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Telephone Conference held on 2/7/2019. Pro se Plaintiff Rovier Carrington present. Attorneys Stanton Lawrence Stein and Diana Arielle Sanders representing Brian Graden and Brian Graden Media, LLC, present. Attorneys Stephen Robert Fishbein and Michelena Hallie representing Viacom Inc., Viacom International Inc., and Paramount Pictures Corporation present. Attorneys Sarah Schacter and Wook J. Hwang representing Brad Grey defendants present. Defendants' deadlines to answer complaint are stayed. Viacom defendants are to |

| 01/02/2019 | 91 | ENDORSED LETTER addressed to Judge Katherine Polk Failla from Rovier Carrington dated 12/28/2018 re: Plaintiff requests an extension of time. ENDORSEMENT: Application GRANTED. Despite the late-filed and informal nature of the request, the Court takes into account Plaintiff's pro se status in granting this extension. Plaintiff's deadline to file a reply is hereby extended until January 11, 2019. No further extensions will be granted. While the Court grants Plaintiff's request for an extension, Plaintiff is reminded that by order of October 16, 2018, Plaintiff was directed to file all communications by mail with the Court's pro se intake unit. (Dkt. 83). The Court reminds Plaintiff that he must comply strictly with the orders of the Court in litigating his case. Further communications must comply with the Court's orders, or they will be disregarded. Finally, the Court understands that Plaintiff expects to be represented by counsel moving forward. Given that his request to transfer venue was based partly on the availability of counsel in California and not the Southern District of New York, any new counsel should be prepared to address whether their appearance will moot the issue of venue. SO ORDERED. (Replies due by 1/11/2019.) (Signed by Judge Katherine Polk Failla on 1/2/2019) Copies Mailed By Chambers. (mml) (Entered: 01/02/2019) |
| 01/02/2019 | | Mailed a copy of 91 Endorsed Letter, to Rovier Carrington, 5901 Encina Road, Suite C-2, Goleta, CA 93117. (tn) (Entered: 01/02/2019) |
| 01/17/2019 | 92 | ORDER TO SHOW CAUSE: Accordingly, this Court ORDERS Plaintiff to show cause in writing why his claims should not be dismissed with prejudice for failure to prosecute. Plaintiff is hereby ORDERED to file a letter with the Court explaining his failure to comply with Court-ordered deadlines by February 6, 2019. To clarify, a dismissal of the case with prejudice would not necessarily resolve the outstanding applications by Defendants for sanction under Federal Rule of Civil Procedure 11. "It is well established that a federal court may consider collateral issues after an action is no longer pending.... [An] imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether [a party] has abused the judicial process, and, if so, what sanction would be appropriate." Willy v. Coastal Corp., 503 U.S. 131, 138 (1992) (quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 395-96 (1990)). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962). SO ORDERED. (Signed by Judge Katherine Polk Failla on 1/16/2019) Copies Mailed By Chambers. (rro) (Entered: 01/17/2019) |
| 01/18/2019 | 93 | REQUEST TO TAKE MOTION TO TRANSFER VENUE OFF THE COURT'S CALENDAR. Document filed by Rovier Carrington.(vn) (Entered: 01/18/2019) |
| 01/18/2019 | 95 | NOTICE OF VOLUNTARY DISMISSAL pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, the plaintiff(s) or their counsel(s), hereby give notice that the above-captioned action is voluntarily dismissed, without prejudice against the defendant(s) Brad Alan Grey Trust, Brad Grey Estate, Brian Graden Media, LLC, Brian Graden, Brad Grey, Paramount Pictures Corporation, Viacom Inc., Viacom International Inc.. Document filed by Rovier Carrington. **Proposed document to be reviewed and processed by Clerk's Office staff (No action required by chambers).** (vn) (Entered: 01/23/2019) |
| 01/22/2019 | 94 | MEMO ENDORSEMENT granting 93 Motion. transfer venue is GRANTED. ENDORSEMENT: The Clerk of Court is directed to terminate the motion at docket entry 85. The Court understands Plaintiff's submission to be limited to this request to withdraw his motion to transfer venue and will for now ignore that portion of the caption suggesting that Plaintiff is requesting the Court voluntarily dismiss this case. If Plaintiff wishes to seek dismissal, he must file a specific motion to that effect. As Plaintiff's motion to transfer venue is hereby withdrawn, the Court must now address Defendants' outstanding demands for discovery. (Dkt. #80). The parties are hereby ORDERED to appear for a telephone conference on February 7, 2019, at 4:30 |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 216

| | | |
|---|---|---|
| | | ORDERS Plaintiff to submit his motion papers and any future communication by mail to this Court's Pro Se Intake Unit, 500 Pearl Street, Room 200, New York, NY 10007. The Court ORDERS Defendants to mail copies of their opposition memoranda and any cases cited therein to Plaintiff's address. The Clerk of Court is directed to update the docket to reflect Plaintiff's mailing address as provided in this letter. SO ORDERED. (Motions due by 11/16/2018, Responses due by 11/30/2018) (Signed by Judge Katherine Polk Failla on 10/12/2018) Copies Mailed By Chambers. (jca) (Entered: 10/16/2018) |
| 10/17/2018 | 84 | SEALED DOCUMENT placed in vault.(mhe) (Entered: 10/17/2018) |
| 11/14/2018 | 85 | MOTION FOR CHANGE OF VENUE. Document filed by Rovier Carrington.(sc) (Entered: 11/15/2018) |
| 11/19/2018 | 86 | TRANSCRIPT of Proceedings re: conference held on 9/18/2018 before Judge Katherine Polk Failla. Court Reporter/Transcriber: Karen Gorlaski, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/10/2018. Redacted Transcript Deadline set for 12/20/2018. Release of Transcript Restriction set for 2/17/2019.(McGuirk, Kelly) (Entered: 11/19/2018) |
| 11/19/2018 | 87 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a conference proceeding held on 9/18/18 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days... (McGuirk, Kelly) (Entered: 11/19/2018) |
| 11/30/2018 | 88 | MEMORANDUM OF LAW in Opposition re: 85 MOTION to Change Venue. . Document filed by Paramount Pictures Corporation, Viacom Inc., Viacom International Inc.. (Attachments: # 1 Certificate of Service)(LaVigne, Christopher) (Entered: 11/30/2018) |
| 12/07/2018 | 89 | JOINT LETTER addressed to Judge Katherine Polk Failla from Christopher LaVigne dated December 7, 2018 re: plaintiffs refusal to accept service. Document filed by Paramount Pictures Corporation, Viacom Inc., Viacom International Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Certificate of Service)(LaVigne, Christopher) (Entered: 12/07/2018) |
| 12/07/2018 | 90 | ORDER: The Court is in receipt of Defendants' joint letter regarding issues relating to service with respect to Plaintiff Rovier Carrington. (Dkt. #89). In connection with that motion, the parties are hereby ORDERED to appear for a telephonic conference on December 11, 2018, at 4:00 p.m. At that time, a representative of each Defendant, and Rovier Carrington shall call Chambers at (212) 805-0290, with all parties on a single line. (Telephone Conference set for 12/11/2018 at 04:00 PM before Judge Katherine Polk Failla.) (Signed by Judge Katherine Polk Failla on 12/7/2018) (rro) (Entered: 12/07/2018) |
| 12/11/2018 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Telephone Conference held on 12/11/2018. Pro se plaintiff Rovier Carrington present. Attorneys Stanton Lawrence Stein and Diana Arielle Sanders representing Brian Graden and Brian Graden Media, LLC present. Attorneys Stephen Robert Fishbein and Christopher Lloyd LaVigne representing Viacom Inc., Viacom International Inc., and Paramount Pictures Corporation present. Attorneys Sarah Schacter and Wook J. Hwang representing Brad Grey, Brad Grey Estate and Brad Alan Grey Trust present. Docket to reflect Plaintiff's address as listed on Document 85. (Court Reporter Alena Lynch) (tn) (Entered: 12/12/2018) |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 217

5/24/2019                                SDNY CM/ECF NextGen Version 1.2

| | | |
|---|---|---|
| 09/24/2018 | 79 | ORDER: The Court is in receipt of The Landau Group, PCs motion to withdraw as counsel for Plaintiff Rovier Carrington. (Dkt. #78). In connection with that motion, Kevin Landau and Zachary Landau are hereby ORDERED to appear with their client, Rovier Carrington, for a telephonic conference on October 5, 2018, at 2:30 p.m. At that time, Kevin Landau, Zachary Landau, and Rovier Carrington shall call Chambers at (212) 805-0290, with all parties on a single line. SO ORDERED. (Telephone Conference set for 10/5/2018 at 02:30 PM before Judge Katherine Polk Failla.) (Signed by Judge Katherine Polk Failla on 9/24/2018) (jca) Modified on 9/25/2018 (jca). (Entered: 09/24/2018) |
| 09/26/2018 | 80 | LETTER addressed to Judge Katherine Polk Failla from Stanton L. Stein dated September 26, 2018 re: Order for Further Discovery. Document filed by Brad Alan Grey Trust, Brad Grey Estate, Brian Graden Media, LLC, Brian Graden, Brad Grey, Paramount Pictures Corporation, Viacom Inc.. (Attachments: # 1 Text of Proposed Order Proposed Order, # 2 Exhibit A - Google Subpoena, # 3 Exhibit B - Microsoft Subpoena, # 4 Exhibit C - Consent Order)(Stein, Stanton) (Entered: 09/26/2018) |
| 09/27/2018 | 81 | MEMO ENDORSEMENT on re: 80 Letter, filed by Viacom Inc., Brian Graden Media, LLC, Paramount Pictures Corporation, Brad Grey Estate, Brad Alan Grey Trust, Brad Grey, Brian Graden. ENDORSEMENT: The Court is in receipt of Defendants' letter, dated September 26, 2018, as well as the proposed order and subpoenas attached thereto. (Dkt. #80). The Court shares Defendants' suspicion that the Landau Group, PC's motion to withdraw as Plaintiff's counsel may affect Plaintiff's compliance with the Court's discovery directives. Accordingly, the Court will permit Defendants to participate in the initial portion of the telephonic conference, scheduled for October 5, 2018. Defense counsel is advised that they will likely be required to drop off the call if the Court needs to discuss any privileged or sensitive matters with Zachary Landau, Kevin Landau, and Rovier Carrington. Given the present uncertainty around Plaintiff's representation by counsel, the Court will refrain from determining whether to issue, as presently drafted, the proposed order and subpoenas attached to Defendants' September 26 letter. Kevin Landau, Zachary Landau, and Rovier Carrington -- and any defense counsel wishing to participate in the initial portion of the telephonic conference -- are directed to call Chambers at (212) 805-0290 on October 5 at 2:30 p.m., with all parties on a single line. SO ORDERED. (Signed by Judge Katherine Polk Failla on 9/27/2018) (rro) (Entered: 09/28/2018) |
| 10/05/2018 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Telephone Conference held on 10/5/2018. Plaintiff Rovier Carrington with attorneys Kevin Landau and Zachary R. Landau present. Attorneys Stanton Stein and Diana Sanders representing Brian Graden and related entities present. Attorneys Stephen Fishbein and Christopher LaVigne representing Viacom Inc. and related entities present. Attorneys Sarah Schacter and Wook J. Hwang representing Brad Grey and related entities present. (Court Reporter Andrew Walker) (tn) (Entered: 10/05/2018) |
| 10/05/2018 | 82 | ORDER granting 78 Motion to Withdraw as Attorney. Pursuant to the discussions at the telephonic conference on October 5, 2018, the Court GRANTS The Landau Group, PCs motion to withdraw as counsel for Plaintiff Rovier Carrington. (Dkt. #78). Kevin Landau and Zachary Landau are hereby instructed to remain on the docket and to transmit any communications to Plaintiff until October 12, 2018. By this date, new counsel for Mr. Carrington shall file a notice of appearance or Mr. Carrington will explain that he wishes to proceed pro se. The Court expects new counsel will proceed expeditiously to respond to Defendants' most recent letter regarding discovery dated September 28, 2018. SO ORDERED. (Signed by Judge Katherine Polk Failla on 10/5/2018) (jca) Modified on 10/9/2018 (jca). (Entered: 10/09/2018) |
| 10/16/2018 | 83 | ENDORSED LETTER addressed to Judge Katherine Polk Failla from Rovier Carrington dated Undated re: Request to Proceed Pro Se in order to motion for change of venue. ENDORSEMENT: Application GRANTED. The Court has reviewed Plaintiff's submission and ORDERS the following briefing schedule for Plaintiff's proposed motion to change venue. Plaintiff's motion shall be due on November 16, 2018, and Defendant's Opposition to the motion shall be due on November 30, 2018. The Court |

| | | |
|---|---|---|
| | | through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 9/19/2018. Redacted Transcript Deadline set for 10/1/2018. Release of Transcript Restriction set for 11/27/2018.(McGuirk, Kelly) (Entered: 08/29/2018) |
| 08/29/2018 | 72 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 7/17/18 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days... (McGuirk, Kelly) (Entered: 08/29/2018) |
| 09/13/2018 | 73 | LETTER addressed to Judge Katherine Polk Failla from Stanton L. Stein dated September 13, 2018 re: September 18, 2018 Status Conference. Document filed by Brian Graden Media, LLC, Brian Graden.(Stein, Stanton) (Entered: 09/13/2018) |
| 09/14/2018 | 74 | MEMO ENDORSEMENT on re: 73 Letter filed by Brian Graden Media, LLC, Brian Graden. ENDORSEMENT: Application GRANTED. So long as Ms. Sanders appears at the conference on behalf of Defendants Brian Graden and Brian Graden Media, LLC, Mr. Stein will be permitted to listen in on the conference telephonically. However, Mr. Stein will not be permitted to participate in the conference. At the scheduled time, Mr. Stein is directed to call (212) 805-0166. SO ORDERED. (Signed by Judge Katherine Polk Failla on 9/14/2018) (anc) (Entered: 09/14/2018) |
| 09/17/2018 | 75 | LETTER MOTION for Discovery addressed to Judge Katherine Polk Failla from Stephen Fishbein dated September 17, 2018. Document filed by Paramount Pictures Corporation, Viacom Inc., Viacom International Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C - Text of Proposed Order)(Fishbein, Stephen) (Entered: 09/17/2018) |
| 09/17/2018 | 76 | LETTER addressed to Judge Katherine Polk Failla from Kevin A. Landau dated September 17, 2017 re: Order and Status Conference. Document filed by Rovier Carrington. (Attachments: # 1 Exhibit Exhibit 1 to 10 of Letter (incl. PTG Report, Texts, and Declarations), # 2 Affidavit Includes Ex A (Text Message with Graden))(Landau, Zachary) (Entered: 09/17/2018) |
| 09/18/2018 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Status Conference held on 9/18/2018. (Court Reporter Karen Gorlaski) (Lopez, Jose) (Entered: 09/18/2018) |
| 09/22/2018 | 77 | **FILING ERROR - DEFICIENT DOCKET ENTRY** - MOTION for The Landau, P.C., Kevin A. Landau, and Zachary R. Landau to Withdraw as Attorney *for Plaintiff Rovier Carrington*. Document filed by Rovier Carrington. (Attachments: # 1 Affidavit Kevin A. Landau Affirmation, # 2 Text of Proposed Order Proposed Order of Withdrawal)(Landau, Zachary) Modified on 9/24/2018 (db). (Entered: 09/22/2018) |
| 09/24/2018 | | ***NOTICE TO ATTORNEY TO RE-FILE DOCUMENT - DEFICIENT DOCKET ENTRY ERROR. Notice to Attorney Zachary R Landau to RE-FILE Document 77 MOTION for The Landau, P.C., Kevin A. Landau, and Zachary R. Landau to Withdraw as Attorney *for Plaintiff Rovier Carrington*. ERROR(S): Supporting Documents are filed separately, each receiving their own document #'s. (db) (Entered: 09/24/2018) |
| 09/24/2018 | 78 | **FILING ERROR - DEFICIENT DOCKET ENTRY** - MOTION for The Landau, P.C., Kevin A. Landau, and Zachary R. Landau to Withdraw as Attorney *for Plaintiff Rovier Carrington (corrected)*. Document filed by Rovier Carrington. (Attachments: # 1 Affidavit K. Landau Affirmation, # 2 Text of Proposed Order Proposed Order of Withdrawal, # 3 Memorandum of Law in Support)(Landau, Zachary) Modified on 9/27/2018 (db). (Entered: 09/24/2018) |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 219

5/24/2019                                                                 SDNY CM/ECF NextGen Version 1.2

|  |  | September 11, 2018, at 2:00 p.m. SO ORDERED. (Status Conference set for 9/11/2018 at 02:00 PM before Judge Katherine Polk Failla.) (Signed by Judge Katherine Polk Failla on 8/7/2018) (rjm) (Entered: 08/08/2018) |
|---|---|---|
| 08/09/2018 | 65 | ORDER: Due to a scheduling conflict, the conference, previously scheduled for September 18, 2018, is hereby ADJOURNED to September 18, 2018, at 2:00 p.m., in Courtroom 618 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York. SO ORDERED. (Status Conference set for 9/18/2018 at 02:00 PM in Courtroom 618, 40 Centre Street, New York, NY 10007 before Judge Katherine Polk Failla.) (Signed by Judge Katherine Polk Failla on 8/9/2018) (rro) (Entered: 08/09/2018) |
| 08/16/2018 | 66 | LETTER MOTION for Conference *Request for Expedited Teleconference re dispute in complying with Court's 8/7/18 order* addressed to Judge Katherine Polk Failla from Wook Hwang dated 8/16/18. Document filed by Brad Alan Grey Trust, Brad Grey Estate, Brad Grey. (Attachments: # 1 Exhibit E-mail Chain)(Hwang, Wook) (Entered: 08/16/2018) |
| 08/17/2018 | 67 | ORDER denying without prejudice 66 Letter Motion for Conference. After Defendants filed the above letter, the parties wrote to the Court, indicating that they have resolved the dispute. The Court therefore DENIES Defendants' request, without prejudice to its refiling at a later date. SO ORDERED. (Signed by Judge Katherine Polk Failla on 8/17/2018) (rro) (Entered: 08/20/2018) |
| 08/21/2018 | 68 | LETTER MOTION for Conference *Request for Expedited Teleconference re dispute in complying with Court's 8/7/18 Order* addressed to Judge Katherine Polk Failla from Wook Hwang dated 8/21/2018. Document filed by Brad Alan Grey Trust, Brad Grey Estate, Brad Grey. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Hwang, Wook) (Entered: 08/21/2018) |
| 08/21/2018 | 69 | LETTER addressed to Judge Katherine Polk Failla from Kevin A. Landau dated August 20, 2018 re: Neutral Discovery Vendor (Dkt. No. 64). Document filed by Rovier Carrington. (Attachments: # 1 Exhibit Exhibit(s) 1-5, # 2 Exhibit Exhibit Six (Email))(Landau, Zachary) (Entered: 08/21/2018) |
| 08/22/2018 | 70 | ORDER granting 68 LETTER MOTION for Conference Request for Expedited Teleconference re dispute in complying with Court's 8/7/18 Order addressed to Judge Katherine Polk Failla from Wook Hwang dated 8/21/2018. Document filed by Brad Alan Grey Trust, Brad Grey Estate, Brad Grey. Application GRANTED. The Court is in receipt of Defendants' letter, dated August 21, 2018 (Dkt. #68), regarding the parties' ongoing dispute over the selection of a neutral e-discovery vendor pursuant to the Court's August 7, 2018 Order (Dkt. #64). The Court has carefully reviewed that letter, along with Plaintiff's response thereto, dated August 21, 2018. (Dkt. #69). Based on the parties' submissions, it is the Court's understanding that the parties had agreed -- perhaps only tentatively so -- to select FTI Consulting ("FTI") as the vendor, but that Plaintiff's counsel is now unwilling to move forward with FTI due to concerns over possible conflicts of interest. (Dkt. #68, 69). Having reviewed the parties' submissions, including each of the exhibits appended to Plaintiff's letter, the Court finds that there is no credible evidence of any actual or potential conflicts of interest. Accordingly, the parties are directed to proceed with FTI as the e-discovery vendor and to work expeditiously to comply with the August 7 Order. In light of the parties' delay in selecting the e-discovery vendor, the Court hereby EXTENDS the interim deadlines referenced in the August 7 Order -- i.e., those originally set for fourteen (14) days from the entry of the Order -- to August 24, 2018. All other deadlines in the August 7 Order shall remain unchanged. So ordered. (Signed by Judge Katherine Polk Failla on 8/22/2018) (rjm) (Entered: 08/22/2018) |
| 08/29/2018 | 71 | TRANSCRIPT of Proceedings re: CONFERENCE held on 7/17/2018 before Judge Katherine Polk Failla. Court Reporter/Transcriber: Martha Martin, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 220

5/24/2019                                       SDNY CM/ECF NextGen Version 1.2

|  |  |  |
|---|---|---|
|  |  | New York, NY 10007 before Judge Katherine Polk Failla.) (Signed by Judge Katherine Polk Failla on 7/10/2018) (jwh) (Entered: 07/10/2018) |
| 07/12/2018 | 56 | STATUS REPORT. Document filed by Paramount Pictures Corporation, Viacom Inc., Viacom International Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Fishbein, Stephen) (Entered: 07/12/2018) |
| 07/16/2018 | 57 | LETTER addressed to Judge Katherine Polk Failla from Stanton L. Stein dated July 16, 2018 re: Joint Status Letter. Document filed by Brian Graden Media, LLC, Brian Graden. (Attachments: # 1 Exhibit F)(Stein, Stanton) (Entered: 07/16/2018) |
| 07/17/2018 |  | Minute Entry for proceedings held before Judge Katherine Polk Failla: Pre-Motion Conference held on 7/17/2018. (Court Reporter Martha Martin) (Lopez, Jose) (Entered: 07/19/2018) |
| 07/24/2018 | 58 | ORDER: Defendants are ORDERED to file a proposed order on or before August 1, 2018, in Word format, for the Court's consideration. The proposed order should reflect Plaintiff's request for reciprocal discovery obligations, as discussed at the July 17 conference. SO ORDERED. (Signed by Judge Katherine Polk Failla on 7/24/2018) (rro) (Entered: 07/24/2018) |
| 07/31/2018 | 59 | LETTER addressed to Judge Katherine Polk Failla from Wook Hwang dated 7/31/2018 re: submission of Proposed Order permitting limited discovery into the authenticity of certain communications at issue in this action in compliance with Court's 7/24/18 Order. Document filed by Brad Alan Grey Trust, Brad Grey Estate, Brian Graden Media, LLC, Brian Graden, Brad Grey, Paramount Pictures Corporation, Viacom Inc., Viacom International Inc.. (Attachments: # 1 Proposed Order)(Hwang, Wook) (Entered: 07/31/2018) |
| 08/01/2018 | 60 | LETTER addressed to Judge Katherine Polk Failla from Kevin A. Landau dated August 1, 2018 re: Proposed Order Submitted by Defendants (re Dkt. No. 58). Document filed by Rovier Carrington.(Landau, Zachary) (Entered: 08/01/2018) |
| 08/01/2018 | 61 | MEMO ENDORSEMENT on re: 60 Letter filed by Rovier Carrington. Application GRANTED. (Signed by Judge Katherine Polk Failla on 8/1/2018) (cf) (Entered: 08/01/2018) |
| 08/03/2018 | 62 | LETTER addressed to Judge Katherine Polk Failla from Kevin A. Landau dated August 3, 2018 re: Proposed Order. Document filed by Rovier Carrington. (Attachments: # 1 Text of Proposed Order Proposed Order, # 2 Exhibit Yahoo Compliance Guide for Law Enforcement, # 3 Exhibit Yahoo Article on Lost or Deleted Emails)(Landau, Kevin) (Entered: 08/03/2018) |
| 08/06/2018 | 63 | LETTER addressed to Judge Katherine Polk Failla from Wook Hwang dated 8/6/2018 re: Response to Plaintiff's Letter dated 8/3/18. Document filed by Brad Alan Grey Trust, Brad Grey Estate, Brad Grey. (Attachments: # 1 Redline Enclosure)(Hwang, Wook) (Entered: 08/06/2018) |
| 08/07/2018 | 64 | ORDER FOR LIMITED DISCOVERY CONCERNING THE AUTHENTICITY OF COMMUNICATIONS. IT IS HEREBY ORDERED, without prejudice to or limiting any existingduty to preserve relevant materials that has arisen in connection with this action, that Plaintiff and Defendants, and their respective counsel, shall immediately preserve each and every document constituting or containing any portion of any of the communications that are attached as: (i) Exhibits 2-11 to the Amended Complaint (Dkt. #40-1); (ii) Exhibit A to the Declaration of Darren Stein (Dkt. #56-2); or (iii) Exhibits 1-4 to the Declaration of James Kelshaw (Dkt. #56-3), including, without limitation, all earlier emails in any email chains constituting such communications (collectively, the "At-Issue Communications") and all email forwards of any and all such communications, in original native format as well as any and all electronic or paper copies thereof, and as further specified and set forth in this Order. IT IS FURTHER ORDERED that the parties' counsel shall appear for a status conference before the Court on |

https://ecf.nysd.uscourts.gov/cgi-bin/DktRpt.pl?428490269600361-L_1_0-1                                    12/24

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 221

SDNY CM/ECF NextGen Version 1.2

| | | |
|---|---|---|
| | | Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bcu) (Entered: 06/26/2018) |
| 06/26/2018 | 46 | ORDER FOR ADMISSION PRO HAC VICE granting 45 Motion for Kevin Aaron Landau to Appear Pro Hac Vice. So ordered. (Signed by Judge Katherine Polk Failla on 6/26/2018) (rjm) (Entered: 06/26/2018) |
| 06/26/2018 | 47 | ORDER: On June 4, 2018, the Court scheduled the initial pretrial conference for July 20, 2018. Due to a scheduling conflict, the Court hereby RESCHEDULES the conference to July 17, 2018, at 3:30 p.m., in Courtroom 618 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York. SO ORDERED. (Initial Conference set for 7/17/2018 at 03:30 PM in Courtroom 618, 40 Centre Steet, New York, NY 10007 before Judge Katherine Polk Failla.) (Signed by Judge Katherine Polk Failla on 6/26/2018) (rro) (Entered: 06/27/2018) |
| 07/02/2018 | 48 | LETTER MOTION for Leave to File Motion to Dismiss addressed to Judge Katherine Polk Failla from Stephen Fishbein dated July 2, 2018. Document filed by Paramount Pictures Corporation, Viacom Inc., Viacom International Inc..(Fishbein, Stephen) (Entered: 07/02/2018) |
| 07/02/2018 | 49 | LETTER MOTION for Conference re: 40 Amended Complaint, (Pre-Motion) in advance of "Grey Defendants" anticipated motion to dismiss addressed to Judge Katherine Polk Failla from Wook Hwang dated July 2, 2018. Document filed by Brad Alan Grey Trust, Brad Grey Estate, Brad Grey.(Hwang, Wook) (Entered: 07/02/2018) |
| 07/02/2018 | 50 | LETTER MOTION for Leave to File Motion to Dismiss addressed to Judge Katherine Polk Failla from Stanton L. Stein dated July 2, 2018. Document filed by Brian Graden Media, LLC, Brian Graden.(Stein, Stanton) (Entered: 07/02/2018) |
| 07/05/2018 | 51 | LETTER addressed to Judge Katherine Polk Failla from Kevin Landau dated July 5, 2018 re: Responsive Letter to Grey Defendants Pre-Motion Letter to Dismiss. Document filed by Rovier Carrington.(Landau, Zachary) (Entered: 07/05/2018) |
| 07/05/2018 | 52 | LETTER addressed to Judge Katherine Polk Failla from Kevin Landau dated July 5, 2018 re: Responsive Letter to Viacom Defendants Pre-Motion to Dismiss Letter. Document filed by Rovier Carrington.(Landau, Zachary) (Entered: 07/05/2018) |
| 07/05/2018 | 53 | LETTER addressed to Judge Katherine Polk Failla from Kevin Landau dated July 5, 2018 re: Responsive Letter to Graden Defendants Pre-Motion to Dismiss Letter. Document filed by Rovier Carrington.(Landau, Zachary) (Entered: 07/05/2018) |
| 07/06/2018 | 54 | ORDER granting 48 Letter Motion for Leave to File Document. The Court has carefully reviewed each of the Defendants' pre-motion letters, filed July 2, 2018 (Dkt. #48-50), as well as Plaintiff's replies thereto, filed July 5, 2018 (Dkt. #51-53). The Court finds that a premotion conference is warranted. Because an initial pretrial conference has already been scheduled in this matter, the Court declines to schedule the pre-motion conference at a new date. Instead, the Court will hold the pre-motion conference in lieu of the initial pretrial conference, on July 17, 2018, at 3:30 p.m., in Courtroom 618 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York. The Clerk of Court is directed to terminate Docket Entries 48, 49, and 50. SO ORDERED. (Signed by Judge Katherine Polk Failla on 7/6/2018) (ne) (Entered: 07/06/2018) |
| 07/06/2018 | | Set/Reset Hearings: Pre-Motion Conference set for 7/17/2018 at 03:30 PM in Courtroom 618, 40 Centre Street, New York, NY 10007 before Judge Katherine Polk Failla. (ne) (Entered: 07/06/2018) |
| 07/10/2018 | 55 | ORDER: Due to a scheduling conflict, the pre-motion conference, previously scheduled for July 17, 2018, at 3:00 p.m., is hereby ADJOURNED to July 17, 2018, at 4:00 p.m., in Courtroom 618 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York. (Pre-Motion Conference set for 7/17/2018 at 04:00 PM in Courtroom 618, 40 Centre Street, |

| | | |
|---|---|---|
| 06/20/2018 | 41 | **FILING ERROR - DEFICIENT DOCKET ENTRY - MOTION** for Kevin Aaron Landau to Appear Pro Hac Vice *Corrected per clerk's instruction.* **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Rovier Carrington. (Attachments: # 1 Affidavit K. Landau Aff., # 2 Exhibit Letter of Good Standing (NYS Sup. Ct.), # 3 Text of Proposed Order Proposed Pro Hac Vice Order)(Landau, Kevin) Modified on 6/20/2018 (ma). (Entered: 06/20/2018) |
| 06/20/2018 | 42 | MOTION for Zachary Ryan Landau to Appear Pro Hac Vice *Corrected per clerk's instruction.* **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Rovier Carrington. (Attachments: # 1 Affidavit Z. Landau Aff., # 2 Exhibit Letter of Good Standing (Mich. Sup. Ct), # 3 Text of Proposed Order Proposed Pro Hac Vice Order)(Landau, Kevin) (Entered: 06/20/2018) |
| 06/20/2018 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 42 MOTION for Zachary Ryan Landau to Appear Pro Hac Vice *Corrected per clerk's instruction.* Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies.** (ma) (Entered: 06/20/2018) |
| 06/20/2018 | | **>>>NOTICE REGARDING DEFICIENT MOTION TO APPEAR PRO HAC VICE. Notice to RE-FILE Document No. 41 MOTION for Kevin Aaron Landau to Appear Pro Hac Vice *Corrected per clerk's instruction.* Motion and supporting papers to be reviewed by Clerk's Office staff... The filing is deficient for the following reason(s): missing Certificate of Good Standing from THE SUPREME COURT OF MICHIGAN. http://www.nysd.uscourts.gov/file/forms/certificate-of-good-standing-contact-list; . Re-file the motion as a Motion to Appear Pro Hac Vice - attach the correct signed PDF - select the correct named filer/filers - attach valid Certificates of Good Standing issued within the past 30 days - attach Proposed Order..** (ma) (Entered: 06/20/2018) |
| 06/21/2018 | 43 | LETTER REPLY to Response to Motion addressed to Judge Katherine Polk Failla from Wook Hwang dated 6/21/2018 re: 34 LETTER MOTION for Conference *(Pre-Motion) in advance of "Grey Defendants" anticipated motion to dismiss* addressed to Judge Katherine Polk Failla from Wook Hwang dated 06/14/2018., 28 LETTER MOTION for Leave to File Motion to Dismiss addressed to Judge Katherine Polk Failla from Stephen Fishbein dated June 14, 2018., 31 LETTER MOTION for Leave to File Motion to Dismiss addressed to Judge Katherine Polk Failla from Stanton L. Stein dated June 14, 2018. *Requesting the withdrawal of all requests for a pre-motion conference regarding a motion to dismiss the complaint.* Document filed by Brad Alan Grey Trust, Brad Grey Estate, Brad Grey. (Hwang, Wook) (Entered: 06/21/2018) |
| 06/21/2018 | 44 | ORDER terminating 28 Letter Motion for Leave to File Document; terminating 31 Letter Motion for Leave to File Document; terminating 34 Letter Motion for Conference. The Court is in receipt of Defendants' letter, dated June 21, 2018, advising the Court that Defendants have withdrawn their requests for a pre-motion conference. In light of Defendants' letter, the Clerk of Court is directed to terminate Docket Entries 28, 31, and 34. (Signed by Judge Katherine Polk Failla on 6/21/2018) (rro) (Entered: 06/21/2018) |
| 06/25/2018 | 45 | MOTION for Kevin Aaron Landau to Appear Pro Hac Vice *(corrected per Clerk's instruction).* **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Rovier Carrington. (Attachments: # 1 Affidavit K. Landau Aff. in Support of Pro Hac Vice, # 2 Exhibit Letter of Good Standing (NYS Sup. Ct.), # 4 Text of Proposed Order Proposed Order for Pro Hac Vice)(Landau, Kevin) (Entered: 06/25/2018) |
| 06/26/2018 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 45 MOTION for Kevin Aaron Landau to Appear Pro Hac Vice *(corrected per Clerk's instruction).* Motion and supporting papers to be reviewed by** |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 223

| 06/14/2018 | 32 | NOTICE OF APPEARANCE by Sarah Schacter on behalf of Brad Alan Grey Trust, Brad Grey Estate, Brad Grey. (Schacter, Sarah) (Entered: 06/14/2018) |
|---|---|---|
| 06/14/2018 | 33 | NOTICE OF APPEARANCE by Wook J Hwang on behalf of Brad Alan Grey Trust, Brad Grey Estate, Brad Grey. (Hwang, Wook) (Entered: 06/14/2018) |
| 06/14/2018 | 34 | LETTER MOTION for Conference *(Pre-Motion)* in advance of "Grey Defendants" anticipated motion to dismiss addressed to Judge Katherine Polk Failla from Wook Hwang dated 06/14/2018. Document filed by Brad Alan Grey Trust, Brad Grey Estate, Brad Grey.(Hwang, Wook) (Entered: 06/14/2018) |
| 06/18/2018 | 35 | **FILING ERROR - DEFICIENT PLEADING - FILED AGAINST PARTY ERROR** FIRST AMENDED COMPLAINT against Rovier Carrington with JURY DEMAND.Document filed by Rovier Carrington. (Attachments: # 1 Exhibit Exhibits 1 to 11 of Am. Complaint)(Landau, Zachary) Modified on 6/19/2018 (sj). (Entered: 06/18/2018) |
| 06/19/2018 | | ***NOTICE TO ATTORNEY REGARDING DEFICIENT PLEADING. Notice to Attorney Zachary R Landau to RE-FILE Document No. 35 Amended Complaint. The filing is deficient for the following reason(s): the wrong party/parties whom the pleading is against were selected. Re-file the pleading using the event type Amended Complaint found under the event list Complaints and Other Initiating Documents - attach the correct signed PDF - select the individually named filer/filers - select the individually named party/parties the pleading is against. (sj) (Entered: 06/19/2018) |
| 06/19/2018 | 36 | **FILING ERROR - DEFICIENT PLEADING - FILED AGAINST PARTY ERROR** -FIRST AMENDED COMPLAINT amending 35 Amended Complaint, against All Defendants with JURY DEMAND.Document filed by Rovier Carrington. Related document: 35 Amended Complaint,. (Attachments: # 1 Exhibit Exhibits 1-11)(Landau, Kevin) Modified on 6/20/2018 (pc). (Entered: 06/19/2018) |
| 06/19/2018 | 37 | LETTER addressed to Judge Katherine Polk Failla from Kevin A. Landau dated June 19, 2018 re: Responsive Letter to Grey Defendants Pre-Motion Letter to Dismiss. Document filed by Rovier Carrington.(Landau, Zachary) (Entered: 06/19/2018) |
| 06/19/2018 | 38 | LETTER addressed to Judge Katherine Polk Failla from Kevin A. Landau dated June 19, 2018 re: Responsive Letter to Graden Defendants Pre-Motion to Dismiss Letter. Document filed by Rovier Carrington.(Landau, Zachary) (Entered: 06/19/2018) |
| 06/19/2018 | 39 | LETTER addressed to Judge Katherine Polk Failla from Kevin A. Landau dated June 19, 2018 re: Responsive Letter to Viacom Defendants Pre-Motion to Dismiss Letter. Document filed by Rovier Carrington.(Landau, Zachary) (Entered: 06/19/2018) |
| 06/20/2018 | | ***NOTICE TO ATTORNEY REGARDING DEFICIENT PLEADING. Notice to Attorney Kevin Landau to RE-FILE Document No. 36 Amended Complaint,. The filing is deficient for the following reason(s): the All Defendant radio button was selected. Re-file the pleading using the event type Amended Complaint found under the event list Complaints and Other Initiating Documents - attach the correct signed PDF - select the individually named filer/filers - select the individually named party/parties the pleading is against. (pc) (Entered: 06/20/2018) |
| 06/20/2018 | 40 | AMENDED COMPLAINT amending 35 Amended Complaint, 36 Amended Complaint, against Brad Alan Grey Trust, Brad Grey Estate, Brian Graden Media, LLC, Brian Graden, Brad Grey, Paramount Pictures Corporation, Viacom Inc., Viacom International Inc. with JURY DEMAND.Document filed by Rovier Carrington. Related document: 35 Amended Complaint, 36 Amended Complaint,. (Attachments: # 1 Exhibit Exs. 1 -11 of Am. Compl.)(Landau, Kevin) (Entered: 06/20/2018) |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 224

5/24/2019                                    SDNY CM/ECF NextGen Version 1.2

| | | |
|---|---|---|
| 06/12/2018 | 23 | MOTION for Stanton L. Stein to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number 0208-15189928. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Brian Graden Media, LLC, Brian Graden. (Attachments: # 1 Affidavit of Stanton L. Stein, # 2 Exhibit Certificate of Good Standing from Supreme Court of California, # 3 Text of Proposed Order Proposed Order Granting Pro Hac Vice Motion)(Stein, Stanton) (Entered: 06/12/2018) |
| 06/12/2018 | 24 | MOTION for Diana A. Sanders to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number 0208-15190097. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Brian Graden Media, LLC, Brian Graden. (Attachments: # 1 Affidavit of Diana A. Sanders, # 2 Exhibit Certificate of Good Standing from California Supreme Court, # 3 Exhibit Certificate of Good Standing from New York Supreme Court, # 4 Exhibit Certificate of Admission to SDNY, # 5 Text of Proposed Order Proposed Order Granting Pro Hac Vice Motion)(Sanders, Diana) (Entered: 06/12/2018) |
| 06/12/2018 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 23 MOTION for Stanton L. Stein to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number 0208-15189928. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies.** (ina) (Entered: 06/12/2018) |
| 06/13/2018 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 24 MOTION for Diana A. Sanders to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number 0208-15190097. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies.** (bcu) (Entered: 06/13/2018) |
| 06/13/2018 | 25 | ORDER FOR ADMISSION PRO HAC VICE granting 23 Motion for Stanton L. Stein to Appear Pro Hac Vice. (Signed by Judge Katherine Polk Failla on 6/13/2018) (ne) (Entered: 06/13/2018) |
| 06/13/2018 | 26 | ORDER FOR ADMISSION PRO HAC VICE granting 24 Motion for Diana A. Sanders to Appear Pro Hac Vice. (Signed by Judge Katherine Polk Failla on 6/13/2018) (ne) (Entered: 06/13/2018) |
| 06/14/2018 | 27 | NOTICE OF CHANGE OF ADDRESS by Stanton Lawrence Stein on behalf of Brian Graden Media, LLC, Brian Graden. New Address: Russ August & Kabat, 12424 Wilshire Blvd., 12th Floor, Los Angeles, California, United States 90025-1052, 3108267474. (Stein, Stanton) (Entered: 06/14/2018) |
| 06/14/2018 | 28 | LETTER MOTION for Leave to File Motion to Dismiss addressed to Judge Katherine Polk Failla from Stephen Fishbein dated June 14, 2018. Document filed by Paramount Pictures Corporation, Viacom Inc., Viacom International Inc..(Fishbein, Stephen) (Entered: 06/14/2018) |
| 06/14/2018 | 29 | NOTICE OF CHANGE OF ADDRESS by Diana Arielle Sanders on behalf of Brian Graden Media, LLC, Brian Graden. New Address: Russ August & Kabat, 12424 Wilshire Blvd., 12th Floor, Los Angeles, California, United States 90025-1052, 3108267474. (Sanders, Diana) (Entered: 06/14/2018) |
| 06/14/2018 | 30 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Brian Graden Media, LLC. (Stein, Stanton) (Entered: 06/14/2018) |
| 06/14/2018 | 31 | LETTER MOTION for Leave to File Motion to Dismiss addressed to Judge Katherine Polk Failla from Stanton L. Stein dated June 14, 2018. Document filed by Brian Graden Media, LLC, Brian Graden.(Stein, Stanton) (Entered: 06/14/2018) |

SDNY CM/ECF NextGen Version 1.2

| | | |
|---|---|---|
| | | Declaration in Support of Pro Hac Vice, # 2 Exhibit Cert of Good Standing, # 3 Text of Proposed Order Proposed Pro Hac Vice Order)(Landau, Zachary) Modified on 6/6/2018 (jc). (Entered: 06/06/2018) |
| 06/06/2018 | | >>>NOTICE REGARDING DEFICIENT MOTION TO APPEAR PRO HAC VICE. Notice to RE-FILE Document No. 14 MOTION for Kevin Aaron Landau to Appear Pro Hac Vice *for Plaintiff Rovier Carrington*. Filing fee $ 200.00, receipt number 0208-15163132. Motion and supporting papers to be reviewed by Clerk's Office staff.</FONT.. The filing is deficient for the following reason(s): missing Certificates of Good Standing from Michigan Supreme Court and New York Appellate Department (our court does not accept state bar certificates or computer printouts). Re-file the motion as a Motion to Appear Pro Hac Vice - attach the correct signed PDF - select the correct named filer/filers - attach valid Certificates of Good Standing issued within the past 30 days - attach Attorney Affidavit - attach Proposed Order. (jc) (Entered: 06/06/2018) |
| 06/06/2018 | | >>>NOTICE REGARDING DEFICIENT MOTION TO APPEAR PRO HAC VICE. Notice to RE-FILE Document No. 15 MOTION for Zachary Ryan Landau to Appear Pro Hac Vice *for Plaintiff Rovier Carrington*. Filing fee $ 200.00, receipt number 0208-15163273. Motion and supporting papers to be reviewed by Clerk's Office staff. The filing is deficient for the following reason(s): missing Certificate of Good Standing from Michigan Supreme Court (our court does not accept state bar certificates). Re-file the motion as a Motion to Appear Pro Hac Vice - attach the correct signed PDF - select the correct named filer/filers - attach valid Certificates of Good Standing issued within the past 30 days - attach Attorney Affidavit - attach Proposed Order. (jc) (Entered: 06/06/2018) |
| 06/09/2018 | 16 | AFFIDAVIT OF SERVICE. Viacom Inc. served on 5/9/2018, answer due 6/14/2018; Viacom International Inc. served on 5/9/2018, answer due 6/14/2018. Service was accepted by CSC Corp. (Registered Agent, Patricia Coleman, Process Receiving Agent for CSC). Document filed by Rovier Carrington. (Landau, Zachary) (Entered: 06/09/2018) |
| 06/09/2018 | 17 | AFFIDAVIT OF SERVICE of Summons and Complaint served on Paramount Pictures Corporation on May 10, 2018. Service was accepted by Michael Donegan, Legal Coordinator. Document filed by Rovier Carrington. (Landau, Zachary) (Entered: 06/09/2018) |
| 06/09/2018 | 18 | AFFIDAVIT OF SERVICE. Brian Graden served on 5/3/2018, answer due 5/24/2018. Service was accepted by L.B. Horschler, (Executive in Charge/Authorized to Accept Service). Service was made by MAIL. Document filed by Rovier Carrington. (Landau, Zachary) (Entered: 06/09/2018) |
| 06/09/2018 | 19 | AFFIDAVIT OF SERVICE. Brian Graden Media, LLC served on 5/3/2018, answer due 6/14/2018. Service was accepted by Ethan Cohan (Registered Agent). Document filed by Rovier Carrington. (Landau, Zachary) (Entered: 06/09/2018) |
| 06/09/2018 | 20 | AFFIDAVIT OF SERVICE of Summons and Complaint served on Cassandra Husentruyt-Grey on May 5, 2018. Service was accepted by Robert Westman, Personal Body Guard and Security. Service was made by MAIL. Document filed by Rovier Carrington. (Landau, Zachary) (Entered: 06/09/2018) |
| 06/09/2018 | 21 | AFFIDAVIT OF SERVICE. Brad Grey Estate served on 5/5/2018, answer due 5/29/2018; Brad Grey served on 5/5/2018, answer due 5/29/2018. Service was accepted by Robert Westman, Personal Body Guard and Security. Service was made by MAIL. Document filed by Rovier Carrington. (Landau, Zachary) (Entered: 06/09/2018) |
| 06/09/2018 | 22 | DEMAND for Trial by Jury. Document filed by Rovier Carrington(Landau, Zachary) (Entered: 06/09/2018) |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 226

5/24/2019                                    SDNY CM/ECF NextGen Version 1.2

| | | |
|---|---|---|
| | | the necessary form at the following link: http://nysd.uscourts.gov/forms.php. (jgo) (Entered: 05/25/2018) |
| 05/25/2018 | | Case Designated ECF. (jgo) (Entered: 05/25/2018) |
| 05/25/2018 | 8 | NOTICE OF REMOVAL from Supreme Court, County of New York. Case Number: 154060/2018..Document filed by Paramount Pictures Corporation, Viacom Inc., Viacom International Inc.. (Attachments: # 1 Exhibit A - Summons and Complaint)(Fishbein, Stephen) (Entered: 05/25/2018) |
| 05/25/2018 | 9 | LETTER addressed to Judge Katherine Polk Failla from Stanton L. Stein and Diana A. Sanders dated May 25, 2018 re: Request for Two Week Extension of Time to Respond to Complaint Made with Consent of All Defendants. Document filed by Brian Graden Media, LLC, Brian Graden.(Sanders, Diana) (Entered: 05/25/2018) |
| 05/25/2018 | 10 | MEMO ENDORSEMENT on re: 9 Letter, filed by Brian Graden Media, LLC, Brian Graden. Application GRANTED. Brian Graden Media, LLC answer due 6/14/2018; Brian Graden answer due 6/14/2018; Paramount Pictures Corporation answer due 6/14/2018; Viacom Inc. answer due 6/14/2018; Viacom International Inc. answer due 6/14/2018. (Signed by Judge Katherine Polk Failla on 5/25/2018) (rro) (Entered: 05/25/2018) |
| 05/29/2018 | 11 | CERTIFICATE OF SERVICE of Notice of Removal, Corporate Disclosure Statements, Notices of Appearance, SDNY ECF Rules and Instructions, and Judge Failla's Individual Rules of Practice in Civil Cases served on Kevin Landau attorney for plaintiff Rovier Carrington on May 24, 2018. Service was made by Overnight Mail. Document filed by Paramount Pictures Corporation, Viacom Inc., Viacom International Inc.. (Fishbein, Stephen) (Entered: 05/29/2018) |
| 05/29/2018 | 12 | CERTIFICATE OF SERVICE of Notice of Removal, Corporate Disclosure Statements, Notices of Appearance, SDNY ECF Rules and Instructions, and Judge Failla's Individual Rules of Practice in Civil Cases served on Stanton Stein attorney for Brian Garden and Brian Garden Media, LLC on May 24, 2018. Service was made by Email. Document filed by Paramount Pictures Corporation, Viacom Inc., Viacom International Inc.. (Fishbein, Stephen) (Entered: 05/29/2018) |
| 06/04/2018 | 13 | NOTICE OF INITIAL PRETRIAL CONFERENCE: This case has been assigned to me for all purposes. It is hereby ORDERED that counsel for all parties appear for an initial pretrial conference with the Court on July 20, 2018, at 3:00pm, in Courtroom 618 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York. IT IS FURTHER ORDERED that included with the Proposed Civil Case Management Plan and Scheduling Order, the parties jointly submit a letter, not to exceed five pages, providing the following information in separate paragraphs as further set forth in this Order. SO ORDERED. (Initial Conference set for 7/20/2018 at 03:00 PM in Courtroom 618, 40 Centre Street, New York, NY 10007 before Judge Katherine Polk Failla.) (Signed by Judge Katherine Polk Failla on 6/4/18) (yv) (Entered: 06/04/2018) |
| 06/06/2018 | 14 | **FILING ERROR - DEFICIENT DOCKET ENTRY** - MOTION for Kevin Aaron Landau to Appear Pro Hac Vice *for Plaintiff Rovier Carrington*. Filing fee $ 200.00, receipt number 0208-15163132. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Rovier Carrington. (Attachments: # 1 Affidavit Landau Declaration in Support of Pro Hac Vice, # 2 Exhibit Good Standing Cert., # 3 Text of Proposed Order Proposed Pro Hac Vice Order)(Landau, Kevin) Modified on 6/6/2018 (jc). (Entered: 06/06/2018) |
| 06/06/2018 | 15 | **FILING ERROR - DEFICIENT DOCKET ENTRY** - MOTION for Zachary Ryan Landau to Appear Pro Hac Vice *for Plaintiff Rovier Carrington*. Filing fee $ 200.00, receipt number 0208-15163273. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Rovier Carrington. (Attachments: # 1 Affidavit Zachary Landau |

| Date Filed | # | Docket Text |
|---|---|---|
| 05/24/2018 | 1 | **FILING ERROR - PDF ERROR -** NOTICE OF REMOVAL from Supreme Court, County of New York. Case Number: 154060/2018. (Filing Fee $ 400.00, Receipt Number 0208-15112108).Document filed by Paramount Pictures Corporation, Viacom Inc., Viacom International Inc.. (Attachments: # 1 Exhibit A)(Fishbein, Stephen) Modified on 5/25/2018 (jgo). (Entered: 05/24/2018) |
| 05/24/2018 | 2 | CIVIL COVER SHEET filed. (Fishbein, Stephen) (Entered: 05/24/2018) |
| 05/24/2018 | 3 | NOTICE OF APPEARANCE by Stephen Robert Fishbein on behalf of Paramount Pictures Corporation, Viacom Inc., Viacom International Inc.. (Fishbein, Stephen) (Entered: 05/24/2018) |
| 05/24/2018 | 4 | NOTICE OF APPEARANCE by Christopher Lloyd LaVigne on behalf of Paramount Pictures Corporation, Viacom Inc., Viacom International Inc.. (LaVigne, Christopher) (Entered: 05/24/2018) |
| 05/24/2018 | 5 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent Viacom Inc. for Paramount Pictures Corporation. Document filed by Paramount Pictures Corporation.(Fishbein, Stephen) (Entered: 05/24/2018) |
| 05/24/2018 | 6 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent No Parent Corporation for Viacom Inc.. Document filed by Viacom Inc..(Fishbein, Stephen) (Entered: 05/24/2018) |
| 05/24/2018 | 7 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent Viacom Inc. for Viacom International Inc.. Document filed by Viacom International Inc..(Fishbein, Stephen) (Entered: 05/24/2018) |
| 05/25/2018 | | ***NOTICE TO ATTORNEY REGARDING DEFICIENT PLEADING. Notice to Attorney Stephen Robert Fishbein to RE-FILE Document No. 1 Notice of Removal. The filing is deficient for the following reason(s): pursuant to Rule 13.3, exhibits to pleading must be labeled (i.e. Summons and Complaint). Re-file the pleading using the event type Notice of Removal found under the event list Complaints and Other Initiating Documents - attach the correct signed PDF - select the individually named filer/filers - select the individually named party/parties the pleading is against. (jgo) (Entered: 05/25/2018) |
| 05/25/2018 | | ***NOTICE TO ATTORNEY REGARDING CIVIL CASE OPENING STATISTICAL ERROR CORRECTION: Notice to attorney Stephen Robert Fishbein. The following case opening statistical information was erroneously selected/entered: Cause of Action code 15:2; Fee Status code due (due);. The following correction(s) have been made to your case entry: the Cause of Action code has been modified to 15:1; the Fee Status code has been modified to pd (paid);. (jgo) (Entered: 05/25/2018) |
| 05/25/2018 | | CASE OPENING INITIAL ASSIGNMENT NOTICE: The above-entitled action is assigned to Judge Katherine Polk Failla. Please download and review the Individual Practices of the assigned District Judge, located at http://nysd.uscourts.gov/judges/District. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Please download and review the ECF Rules and Instructions, located at http://nysd.uscourts.gov/ecf_filing.php. (jgo) (Entered: 05/25/2018) |
| 05/25/2018 | | Magistrate Judge Stewart D. Aaron is so designated. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 228

               SDNY CM/ECF NextGen Version 1.2

345 Park Avenue
New York, NY 10154
212-407-4000
Fax: 212-407-4990
Email: sschacter@loeb.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wook J Hwang**
Loeb & Loeb LLP
345 Park Avenue
New York, NY 10154
(212) 407-4967
Fax: (212) 202-5183
Email: whwang@loeb.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**
**Brad Grey Estate**          represented by **Sarah Schacter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wook J Hwang**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**
**Brad Alan Grey Trust**       represented by **Sarah Schacter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wook J Hwang**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

5/24/2019                                    SDNY CM/ECF NextGen Version 1.2

599 Lexington Avenue
New York, NY 10022
212 848-4424
Fax: 212 848-7179
Email: sfishbein@shearman.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher Lloyd LaVigne**
Shearman & Sterling LLP (NY)
599 Lexington Avenue
New York, NY 10022
(212) 848-4432
Fax: (646) 848-4432
Email: christopher.lavigne@shearman.com
*ATTORNEY TO BE NOTICED*

**Defendant**
**Viacom International Inc.**                represented by **Stephen Robert Fishbein**
                                             (See above for address)
                                             *LEAD ATTORNEY*
                                             *ATTORNEY TO BE NOTICED*

                                             **Christopher Lloyd LaVigne**
                                             (See above for address)
                                             *ATTORNEY TO BE NOTICED*

**Defendant**
**Paramount Pictures Corporation**          represented by **Stephen Robert Fishbein**
                                             (See above for address)
                                             *LEAD ATTORNEY*
                                             *ATTORNEY TO BE NOTICED*

                                             **Christopher Lloyd LaVigne**
                                             (See above for address)
                                             *ATTORNEY TO BE NOTICED*

**Defendant**
**Brad Grey**                               represented by **Sarah Schacter**
                                             Loeb & Loeb LLP

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 230

Email: zach@thelandaugroup.com
*TERMINATED: 10/12/2018*

V.

**Defendant**

**Brian Graden**      represented by **Stanton Lawrence Stein**
Russ August & Kabat
12424 Wilshire Blvd, 12th Floor
Los Angeles, CA 90025
(310) 826-7474
Fax: (310) 979-8222
Email: lstein@raklaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Diana Arielle Sanders**
Russ August & Kabat
12424 Wilshire Blvd, 12th Floor
Los Angeles, CA 90025
(310) 826-7474
Fax: (310) 979-8222
Email: dsanders@raklaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Brian Graden Media, LLC**      represented by **Stanton Lawrence Stein**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Diana Arielle Sanders**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Viacom Inc.**      represented by **Stephen Robert Fishbein**
Shearman & Sterling LLP (NY)

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 231

5/24/2019                                   SDNY CM/ECF NextGen Version 1.2

ECF

### U.S. District Court
### Southern District of New York (Foley Square)
### CIVIL DOCKET FOR CASE #: 1:18-cv-04609-KPF

Carrington v. Graden et al                                    Date Filed: 05/24/2018
Assigned to: Judge Katherine Polk Failla                     Jury Demand: Plaintiff
Case in other court: New York State Supreme Court, County of New York, 154060-2018    Nature of Suit: 410 Anti-Trust
Cause: 15:1 Antitrust Litigation (Monopolizing Trade)        Jurisdiction: Federal Question

**Plaintiff**
**Rovier Carrington**                       represented by   **Rovier Carrington**
                                                             5901 Encina Road
                                                             Suite C-2
                                                             Goleta, CA 93117
                                                             424-332-2488
                                                             PRO SE

                                                             **Kevin Landau**
                                                             The Landau Group, PC
                                                             1221 Ave. of The Americas, 42nd Floor
                                                             New York, NY 10020
                                                             (917)-584-2293
                                                             Fax: (248)-671-0884
                                                             Email: kevin@thelandaugroup.com
                                                             *TERMINATED: 10/12/2018*
                                                             *LEAD ATTORNEY*

                                                             **Zachary R Landau**
                                                             The Landau Group, PC
                                                             45 Rockefeller Plaza, Ste. 2000
                                                             New York, NY 10111
                                                             (248)-535-2869
                                                             Fax: (248)-671-0884

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 232

| | | | Graden Media, LLC, Brian Graden. (Stein, Stanton) (Entered: 07/16/2019) |
|---|---|---|---|
| 07/16/2019 | 134 | ☐ 86.47KB | CERTIFICATE OF SERVICE of (1) Reply Memorandum in Further Support of Defendants Motion for Terminating Sanctions and Attorneys Fees Against Plaintiff (Redacted); (2) Declaration of Brian Graden (3) Reply Memorandum in Further Support of Defendants Motion for Terminating Sanctions and Attorneys Fees Against Plaintiff (Un-Redacted) served on Rovier Carrington on July 8, 2019. Service was made by Mail. Document filed by Brian Graden Media, LLC, Brian Graden. (Stein, Stanton) (Entered: 07/16/2019) |
| 07/17/2019 | 135 | ☐ 179.94KB | MEMO ENDORSEMENT on re: 129 Letter, filed by Brian Graden Media, LLC, Brian Graden. ENDORSEMENT: Application GRANTED. Ms. Sanders shall be permitted to appear by telephone for the July 25, 2019, proceeding. The dial-in information for Ms. Sanders is as follows: At 3:15 p.m., Ms. Sanders shall call (888) 363-4749 and enter access code 6624801. Please note, the conference will not be available prior to 3:15 p.m. No other attorney or party shall be permitted to appear by telephone without prior approval from the Court. SO ORDERED. (Signed by Judge Katherine Polk Failla on 7/16/2019) Copies Mailed By Chambers. (rro) (Entered: 07/17/2019) |

[ View Selected ]
or
[ Download Selected ]

Total filesize of selected documents (MB): [                    ]
Maximum filesize allowed (MB): 10.1

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 07/18/2019 16:55:35 | | | |
| PACER Login: | AllenMatkins1 | Client Code: | 234000-00999 1234 |
| Description: | Docket Report | Search Criteria: | 1:18-cv-04609-KPF |
| Billable Pages: | 23 | Cost: | 2.30 |



| | | | |
|---|---|---|---|
| | | | Certificate of Service)(Stein, Stanton) Modified on 7/16/2019 (ldi). (Entered: 07/08/2019) |
| 07/16/2019 | 129 | ☐ 203.67KB | LETTER addressed to Judge Katherine Polk Failla from Diana A. Sanders dated July 16, 2019 re: Appearance for July 25, 2019 Motion for Terminating Sanctions and Attorneys' Fees Against Plaintiff. Document filed by Brian Graden Media, LLC, Brian Graden. (Attachments: # 1 Affidavit re Certificate of Service)(Sanders, Diana) (Entered: 07/16/2019) |
| 07/16/2019 | | | ***NOTICE TO ATTORNEY TO RE-FILE DOCUMENT - EVENT TYPE ERROR. Notice to Attorney Stanton Lawrence Stein to RE-FILE Document 124 JOINT MOTION for Sanctions , *MEMORANDUM OF LAW IN SUPPORT OF MOTION (Dkt no. 123).* Use the event type Memorandum of Law in Support of Motion found under the event list Replies, *Opposition and Supporting Documents.* Re-file and link to document # 123 Motion. NOTE: The Declaration in Support of Motion must be filed separately. The event type is also found under the event list Replies, Opposition and Supporting Documents. (ldi) (Entered: 07/16/2019) |
| 07/16/2019 | | | ***NOTICE TO ATTORNEY TO RE-FILE DOCUMENT - DEFICIENT DOCKET ENTRY ERROR. Notice to Attorney Stanton Lawrence Stein to RE-FILE Document 128 Reply Memorandum of Law in Support of Motion. ERROR(S): Supporting/opposing documents must be filed separately, each receiving their own document number. Declaration in Support of Motion is found under the event list Replies, Opposition and Supporting Documents. (ldi) (Entered: 07/16/2019) |
| 07/16/2019 | 130 | ☐ 302.54KB | MEMORANDUM OF LAW in Support re: 123 JOINT MOTION for Sanctions *Against Plaintiff.* . Document filed by Brian Graden Media, LLC, Brian Graden. (Stein, Stanton) (Entered: 07/16/2019) |
| 07/16/2019 | 131 | ☐ 15.48MB | DECLARATION of Stanton L. Stein in Support re: 123 JOINT MOTION for Sanctions *Against Plaintiff..* Document filed by Brian Graden Media, LLC, Brian Graden. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S)(Stein, Stanton) (Entered: 07/16/2019) |
| 07/16/2019 | 132 | ☐ 191.77KB | REPLY MEMORANDUM OF LAW in Support re: 123 JOINT MOTION for Sanctions *Against Plaintiff.* . Document filed by Brian Graden Media, LLC, Brian Graden. (Stein, Stanton) (Entered: 07/16/2019) |
| 07/16/2019 | 133 | ☐ 63.62KB | REPLY AFFIDAVIT of Brian Graden in Support re: 123 JOINT MOTION for Sanctions *Against Plaintiff..* Document filed by Brian |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 234

| | | | | |
|---|---|---|---|---|
| | | | | attorneys. The Court authorized subpoenas on Plaintiff's accounts with GoDaddy, Microsoft, and Google, with the returns to be delivered to Defendant Brian Graden's attorney, Mr. Stein, for transmission to FTI. Defendants do not appear to have exceeded the Court's prior orders or hidden evidence from the Court. The Court denies Plaintiff's requests for investigation into alleged misconduct by Defendants' attorneys, as it does not consider Plaintiff to have pointed to any evidence of misconduct. The Court denies all requests concerning contempt of court, disbarment, misconduct reports to various state bar associations, and disqualification of Defendants' attorneys. And the Court denies Plaintiff's request for sanctions. Another large section of Plaintiff's submission consists of his opposition to Defendants' interpretation of the subpoena returns and their description of the litigation history of this case. Plaintiff provides his own analysis of what the subpoena returns demonstrate. Plaintiff is certainly entitled to offer such arguments. The Court has provided Plaintiff until June 27, 2019, to provide his opposition to Defendants' motion for sanctions. If Plaintiff has not filed a separate document before that date, the Court will determine that he wishes for this to be his opposition brief and will accept it as such. Plaintiff asks the Court to rescind its Order of April 12, 2019, and the Court finds no grounds to rescind the Order. Plaintiff is still required to appear in person for a hearing on this issue on July 25, 2019, at 3:30 p.m. If Plaintiff has retained counsel, such counsel may of course accompany Plaintiff to this hearing. The scope of the hearing remains limited to Defendants' motion for sanctions. The Court denies Plaintiff's request for an order requiring the Defendants to appear personally for this hearing, as the Court does not find that Plaintiff has identified any misconduct by a particular Defendant in the course of this motion practice. Defendants' attorneys are required to attend this hearing, and the Court expects that they will appear, as further set forth in this Order. (Signed by Judge Katherine Polk Failla on 5/20/2019) Copies Mailed By Chambers. (mml) (Entered: 05/21/2019) |
| 05/21/2019 | | | | Mailed a copy of 126 Order, to Rovier Carrington, 5901 Encina Road, Suite C-2, Goleta, CA 93117. (tn) (Entered: 05/21/2019) |
| 05/22/2019 | 127 | ☐ 6.94MB | | LETTER addressed to Judge Katherine Polk Failla from R. Carrington, dated 5/20/19 re: Plaintiff requests that the Court consider in this letter Notice of Defendants' and Defendants' attorneys' Obstruction of 2/13/19 Court Order for Further Discovery(Dkt.#102; Request to hold Defendants' and Defendants' attorneys' in Contempt of the 2/13/19 Order etc. Document filed by Rovier Carrington.(sc) (Entered: 05/23/2019) |
| 07/08/2019 | 128 | ☐ 288.57KB | | **FILING ERROR - DEFICIENT DOCKET ENTRY** - REPLY MEMORANDUM OF LAW in Support re: 124 JOINT MOTION for Sanctions , *MEMORANDUM OF LAW IN SUPPORT OF MOTION (Dkt no. 123)*. . Document filed by Brian Graden Media, LLC, Brian Graden. (Attachments: # 1 Affidavit of Brian Graden, # 2 Affidavit re |

| | | | |
|---|---|---|---|
| | | | highlighting, as Defendants have also used highlighting to specify redacted material. (Signed by Judge Katherine Polk Failla on 5/13/2019) Copies Mailed By Chambers. (rro) (Entered: 05/13/2019) |
| 05/13/2019 | 123 | ☐ 83.21KB | JOINT MOTION for Sanctions *Against Plaintiff*. Document filed by Brian Graden Media, LLC, Brian Graden.(Stein, Stanton) (Entered: 05/13/2019) |
| 05/13/2019 | 124 | ☐ 15.05MB | **FILING ERROR - WRONG EVENT TYPE SELECTED FROM MENU - JOINT MOTION for Sanctions** *, MEMORANDUM OF LAW IN SUPPORT OF MOTION (Dkt no. 123)*. Document filed by Brian Graden Media, LLC, Brian Graden. (Attachments: # 1 Affidavit Declaration of Stanton L. Stein in Support of Motion for Sanctions, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit N, # 16 Exhibit O, # 17 Exhibit P, # 18 Exhibit Q, # 19 Exhibit R, # 20 Exhibit S)(Stein, Stanton) Modified on 7/16/2019 (ldi). (Entered: 05/13/2019) |
| 05/13/2019 | 125 | ☐ 78.13KB | CERTIFICATE OF SERVICE of (1) Notice of Defendants Motion for Terminating Sanctions and Attorneys Fees Against Plaintiff; (2) Memorandum of Law in Support of Defendants Motion for Terminating Sanctions and Attorneys Fees Against Plaintiff (with redactions); (3) Declaration of Stanton L. Stein in Support of Defendants Motion for Terminating Sanctions and Attorneys Fees Against Plaintiff, with Exhibits A through S (with redactions); (4) Memorandum of Law in Support of Defendants Motion for Terminating Sanctions and Attorneys Fees Against Plaintiff (UNREDACTED); (5) Declaration of Stanton L. Stein in Support of Defendants Motion for Terminating Sanctions and Attorneys Fees Against Plaintiff, with Exhibits A through S (UNREDACTED) served on Rovier Carrington on May 13, 2019. Service was made by Mail. Document filed by Brian Graden Media, LLC, Brian Graden. (Stein, Stanton) (Entered: 05/13/2019) |
| 05/14/2019 | | | Mailed a copy of 122 Endorsed Letter, 121 Order on Motion to Seal Document, to Rovier Carrington, 5901 Encina Road, Suite C-2, Goleta, CA 93117. (tn) (Entered: 05/14/2019) |
| 05/21/2019 | 126 | ☐ 251.67KB | ORDER: To begin with, Plaintiff is reminded that he is not permitted to file documents by email, and that he is to mail any documents to the Court's Pro Se Intake Unit, located at the Thurgood Marshall U.S. Courthouse, 40 Foley Square, Room 105, New York, New York 10007. The Court has reminded Plaintiff of this requirement on several occasions. (See Dkt. #91, 100). The Court may disregard any future submissions from Plaintiff that do not comply with this mailing requirement. However, having reviewed Plaintiff's submission, the Court denies his various requests. Much of Plaintiff's letter is occupied with allegations of misconduct against defense counsel regarding the Courts discovery orders. Having reviewed the letter and the docket, the Court does not see any evidence of misconduct by Defendants' |

| | | | |
|---|---|---|---|
| | | | by Brian Graden Media, LLC, Brian Graden. (Attachments: # 1 Affidavit Affidavit of Service)(Stein, Stanton) (Entered: 05/09/2019) |
| 05/10/2019 | 121 | ☐ 183.77KB | ORDER granting 120 Motion to Seal Document. Application GRANTED. Defendants are hereby permitted to file a redacted version of their forthcoming motion and supporting exhibits on the public docket. The Court ORDERS Defendants to submit an unredacted version to the Court both electronically and via regular mail. Defendants shall provide Plaintiff with redacted and unredacted versions of the letter and exhibits via regular mail to the address provided by the Plaintiff. (Signed by Judge Katherine Polk Failla on 5/10/2019) Copies Mailed By Chambers. (rro) Transmission to Sealed Records Clerk for processing. (Entered: 05/13/2019) |
| 05/13/2019 | 122 | ☐ 280.83KB | ENDORSED LETTER addressed to Judge Katherine Polk Failla from Rovier Carrington dated 5/13/2019 re: Objection/Response to Defendant Brian Gradens 5-9-19 Motion Letter [Dkct #120]. ENDORSEMENT: submissions of the Defendants. (Dkt. #112-114, 120-121). Plaintiff appears to object to the publication of certain material produced to the Defendants in response to a subpoena to GoDaddy, which is marked as Exhibit F to Defendants' April 10, 2019 letter motion. (Dkt. #114-6). However, the only material that is unredacted on the public docket from this exhibit is a cover letter from GoDaddy, describing the need for redaction. Specifically, Plaintiff objects to the publication of "GD Docs. 67-76". However, the items that have this Bates label are already redacted. Adding to the confusion, Plaintiff claims that Defendants have improperly redacted material in Exhibit C. (Dkt. #114-3). No material is redacted in Exhibit C, and the Court believes Plaintiff's confusion may stem from the fact that some material in the exhibit is highlighted in yellow. (Id. at 6-7). In this exhibit, this highlighting is not indicative of redactions. Finally, the Court does not consider Defendants to have wrongfully obtained the GoDaddy material, which was produced to them in response to subpoenas approved by the Court. In reviewing the unredacted material on the public docket, the Court does not find material containing "credit cards, phone numbers, personal residence, billing address,... [or] IP addresses." While Plaintiff's email addresses are unredacted, the Court does not find that Plaintiff's email addresses are sensitive personal information. Plaintiff has included an email address in several of his own submissions. (Dkt. #117-119). Nevertheless, to allay Plaintiff's concerns, the Court will limit the access of the public to certain documents. The Clerk of Court is directed to limit access to docket entry 114 and its accompanying exhibits to court users and case participants only. The Court will do the same for Defendants' forthcoming motion. At the hearing on July 8, 2019, the Court will address what items will remain restricted moving forward. Additionally, to alleviate further confusion, the Court ORDERS Defendants to more clearly delineate what material is redacted when providing Plaintiff unredacted versions of filings. Furthermore, Defendants are instructed to be careful in submitting text marked with |

| 04/12/2019 | 116 | ☐ 241.11KB | ORDER terminating 114 Letter Motion for Conference. The Court is in receipt of Defendants' joint letter requesting a pre-motion conference for an anticipated motion for sanctions due to the information returned from an examination of Plaintiff's phone and subpoenas to Plaintiff's email and website providers. (Dkt. #114). The Court has received both redacted and unredacted versions of this submission. The Court views this material with concern, particularly the material contained in the unredacted submission. Therefore, the Court will proceed directly to set a briefing schedule on Defendants' requested motion for sanctions, with a hearing to follow the briefing. Defendants' motion shall be due on or before May 13, 2019. Plaintiff's opposition shall be due on or before June 27, 2019, and Defendants' reply, if any, shall be due on or before July 8, 2019. The Court will hold a hearing on the motion on July 25, 2019, at 3:30 p.m. in Courtroom 618, Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York. Plaintiff will be required to appear in person for this hearing. (Signed by Judge Katherine Polk Failla on 4/12/2019) Copies Mailed By Chambers. (rro) (Entered: 04/12/2019) |
| --- | --- | --- | --- |
| 04/12/2019 | | | Set/Reset Deadlines: (Motions due by 5/13/2019., Responses due by 6/27/2019, Replies due by 7/8/2019.) (rro) (Entered: 04/12/2019) |
| 04/12/2019 | | | Set/Reset Deadlines as to Motion Hearing set for 7/25/2019 at 03:30 PM in Courtroom 618, 40 Centre Street, New York, NY 10007 before Judge Katherine Polk Failla. (rro) (Entered: 04/12/2019) |
| 04/15/2019 | | | Mailed a copy of 116 Order on Motion for Conference, to Rovier Carrington, 5901 Encina Road, Suite C-2, Goleta, CA 93117. (tn) (Entered: 04/15/2019) |
| 04/15/2019 | 117 | ☐ 2.27MB | LETTER addressed to Judge Katherine Polk Failla from R. Carrington, dated 4/4/19 re: NOTICE OF NO OBJECTION/OPPOSITION TO PLAINTIFF'S COMPLIANCE WITH DISCOVERY ORDER. NO EVIDENCE OF PLAINTIFF'S WRONGDOING. RENEWED REQUEST OF DISMISSAL WITHOUT PREJUDICE. Document filed by Rovier Carrington.(sc) (Entered: 04/16/2019) |
| 04/15/2019 | 118 | ☐ 2.41MB | LETTER addressed to Judge Katherine Polk Failla from R. Carrington, dated 2/27/19 re: COMPLIANCE WITH DISCOVERY ORDER OF 2/7/19(for iPhone X and Consent Form). Document filed by Rovier Carrington.(sc) (Entered: 04/16/2019) |
| 04/15/2019 | 119 | ☐ 371.31KB | LETTER addressed to Judge Katherine Polk Failla from R. Carrington, dated 4/1/19 re: FILING OF FTI REPORT REGARDING CONSENT/SUBPOENAS(Purs. to Court Discovery Order dated 2/17/19). Document filed by Rovier Carrington.(sc) (Entered: 04/16/2019) |
| 05/09/2019 | 120 | ☐ 287.71KB | LETTER MOTION to Seal Document addressed to Judge Katherine Polk Failla from Stanton L. Stein dated May 9, 2019. Document filed |

| | | | |
|---|---|---|---|
| | | | explanation of these costs, and ORDERS the retaining lien reduced to $14,295.00. The Court DENIES Plaintiff's request for a turnover order and for termination of the Landau Group's liens. SO ORDERED. (Signed by Judge Katherine Polk Failla on 2/25/2019) Copies Mailed By Chambers. (rro) (Entered: 02/25/2019) |
| 02/26/2019 | | | Mailed a copy of 109 Order Regarding Plaintiff's Request for Turnover Order, to Rovier Carrington, 5901 Encina Road, Suite C-2, Goleta, CA 93117. (tn) (Entered: 02/26/2019) |
| 03/08/2019 | 110 | ☐ 73.17KB | TRANSCRIPT of Proceedings re: CONFERENCE held on 2/7/2019 before Judge Katherine Polk Failla. Court Reporter/Transcriber: Karen Gorlaski, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 3/29/2019. Redacted Transcript Deadline set for 4/8/2019. Release of Transcript Restriction set for 6/6/2019.(McGuirk, Kelly) (Entered: 03/08/2019) |
| 03/08/2019 | 111 | ☐ 39.65KB | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 2/7/19 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(McGuirk, Kelly) (Entered: 03/08/2019) |
| 04/09/2019 | 112 | ☐ 1.51MB | LETTER MOTION to Seal Document addressed to Judge Katherine Polk Failla from Stanton L. Stein dated April 9, 2019. Document filed by Brian Graden Media, LLC, Brian Graden. (Attachments: # 1 Exhibit A, # 2 Affidavit of Service)(Stein, Stanton) (Entered: 04/09/2019) |
| 04/10/2019 | 113 | ☐ 183.85KB | ORDER granting 112 Motion to Seal Document, Application GRANTED. Defendants are hereby permitted to file a redacted version of their forthcoming letter and supporting exhibits on the public docket. The Court ORDERS Defendants to submit an unredacted version to the Court both electronically and via regular mail. Defendants shall provide Plaintiff with redacted and unredacted versions of the letter and exhibits via regular mail to the address provided by the Plaintiff. (Signed by Judge Katherine Polk Failla on 4/10/2019) Copies Mailed By Chambers. (rro) (Entered: 04/10/2019) |
| 04/10/2019 | 115 | ☐ 75.64KB | CERTIFICATE OF SERVICE of Letter and Exhibits served on Rovier Carrington on April 10, 2019. Service was made by Mail. Document filed by Brian Graden Media, LLC, Brian Graden. (Stein, Stanton) (Entered: 04/10/2019) |
| 04/11/2019 | | | Mailed a copy of 113 Order on Motion to Seal Document, to Rovier Carrington, 5901 Encina Road, Suite C-2, Goleta, CA 93117. (tn) (Entered: 04/11/2019) |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 239

| | | | |
|---|---|---|---|
| | | | DeGeorge, registered agent. Document filed by Brian Graden Media, LLC, Brian Graden. (Stein, Stanton) (Entered: 02/21/2019) |
| 02/21/2019 | 106 | ☐ 69.25KB | CERTIFICATE OF SERVICE of (1) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action; (2) Order for Further Discovery; and, (3) Written Consent to Access Contents of Email Communications served on MICROSOFT CORPORATION on 2/15/19. Service was accepted by Becky DeGeorge, registered agent. Document filed by Brian Graden Media, LLC, Brad Grey. (Stein, Stanton) (Entered: 02/21/2019) |
| 02/21/2019 | 107 | ☐ 69.25KB | CERTIFICATE OF SERVICE of (1) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action; (2) Order for Further Discovery; and, (3) Written Consent to Access Contents of Email Communications served on GOOGLE, LLC on 2/15/2019. Service was accepted by Becky DeGeorge, registered agent. Document filed by Brian Graden Media, LLC, Brian Graden. (Stein, Stanton) (Entered: 02/21/2019) |
| 02/21/2019 | 108 | ☐ 120.24KB | CERTIFICATE OF SERVICE of (1) Proofs of Service of GoDaddy, LLC Subpoena package; (2) Proof of Service of Microsoft Corporation Subpoena package; and, (3) Proof of Service of Google, LLC Subpoena package served on Rovier Carrington on 02/21/2019. Service was made by Mail. Document filed by Brian Graden Media, LLC, Brian Graden. (Sanders, Diana) (Entered: 02/21/2019) |
| 02/22/2019 | | | Mailed a copy of 102 Order on Motion for Discovery, to Rovier Carrington, 5901 Encina Road, Suite C-2, Goleta, CA 93117. (tn) (Entered: 02/22/2019) |
| 02/25/2019 | 109 | ☐ 294.33KB | ORDER REGARDING PLAINTIFF'S REQUEST FOR TURNOVER ORDER: In this case, the Court granted the Landau Group leave to withdraw. (Dkt. #82). As the Landau Group notes, the Court specifically made a finding that the termination was without cause in an ex parte hearing on the withdrawal motion. (Dkt. #104 (Exhibit 2, Transcript of Withdrawal Hearing, 10-5-18)). Plaintiff does not address the prior orders of the Court. Plaintiff's arguments are largely focused on a breakdown in communications of which the Court was aware when making findings at the October 5, 2018 hearing at which it granted the motion to withdraw. Therefore, the Court finds that the retaining lien remains, and the Landau Group is entitled to "reasonable value" for the costs incurred in litigating this case. Plaintiff also objects to the total cost breakdown provided by the Landau Group. The Court has reviewed the material provided by the Landau Group in response. (Dkt. 104, Exhibits 1-10). The Court finds that the Landau Group has adequately provided justification for the costs in their billing statement, with a single exception. The Landau Group's bill includes a line item of $250 for "meals and entertainment." Plaintiff objects to this cost, and the Landau Group's response does not address this item. Therefore, the Court finds that the Landau Group has not provided an adequate |

| | | | |
|---|---|---|---|
| | | | (Signed by Judge Katherine Polk Failla on 2/8/19) Copies Mailed By Chambers. (yv) (Entered: 02/08/2019) |
| 02/11/2019 | | | Mailed a copy of 100 Order, to Rovier Carrington, 5901 Encina Road, Suite C-2, Goleta, CA 93117. (tn) (Entered: 02/11/2019) |
| 02/11/2019 | | | NOTICE EXTENDING RESPONSE DEADLINE re: 100 Order: ~~Landau Group's time to respond to Plaintiff's February 7, 2019 email,~~ is extended to February 20, 2019. The Landau Group shall file its response with the Court and mail a copy of its response to Plaintiff at the address provided, as directed in the Court's Order dated February 8, 2019. (tn) Modified on 2/11/2019 (tn). ***No PDF is attached to this entry. (Entered: 02/11/2019) |
| 02/12/2019 | 101 | ☐ 181.11KB | CERTIFICATE OF SERVICE of Telephonic Conference Transcript served on Rovier Carrington on February 12, 2019. Service was made by Mail. Document filed by Paramount Pictures Corporation, Viacom Inc., Viacom International Inc.. (Fishbein, Stephen) (Entered: 02/12/2019) |
| 02/13/2019 | 102 | ☐ 0.84MB | ORDER FOR FURTHER DISCOVERY granting 75 Letter Motion for Discovery. IT IS HEREBY ORDERED that Defendants are permitted to serve Court- Ordered subpoenas on Google LLC ("Google"), Microsoft Corporation ("Microsoft"), and GoDaddy.com, LLC ("GoDaddy") for domain related information related to www.thecarringtondiaries.com and subscriber-related information for the following email accounts, as set forth in Exhibits A-C: (1) trendsetterrovheir@gmail.com; (2) roviercarrington@gmail.com; and (3) Rovier@thecarringtondiaries.com (the "Accounts"). IT IS FURTHER ORDERED that, within fourteen (14) days of receipt of the subpoenas, Google, Microsoft and GoDaddy shall provide responsive information for such accounts as further set forth in this order. (Signed by Judge Katherine Polk Failla on 2/13/2019) (ks) (Entered: 02/13/2019) |
| 02/20/2019 | 103 | ☐ 187.66KB | CERTIFICATE OF SERVICE of Order for Further Discovery (docket no. 102) served on Rovier Carrington on February 20, 2019. Service was made by Mail. Document filed by Brian Graden Media, LLC, Brian Graden. (Sanders, Diana) (Entered: 02/20/2019) |
| 02/20/2019 | 104 | ☐ 1.34MB | RESPONSE in Opposition to Motion re: 93 MOTION. *The Landau Group, PC opposition to Plaintiff's Letters (document filed by The Landau Group, PC)*.. Document filed by Rovier Carrington. (Attachments: # 1 Exhibit Exhibits 1-10 of Response to Plaintiff's Letters (with Ex. 2 not included))(Landau, Zachary) (Entered: 02/20/2019) |
| 02/21/2019 | 105 | ☐ 112.74KB | CERTIFICATE OF SERVICE of (1) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action; (2) Order for Further Discovery; and, (3) Written Consent to Access Contents of Email Communications served on GODADDY, LLC on 02/15/2019. Service was accepted by Becky |

| | | | |
|---|---|---|---|
| | | | Katherine Polk Failla.) (Signed by Judge Katherine Polk Failla on 1/23/19) Copies Mailed By Chambers. (yv) (Entered: 01/24/2019) |
| 01/29/2019 | | | Mailed a copy of 94 Order on Motion for Miscellaneous Relief, 97 Memo Endorsement, to Rovier Carrington, 5901 Encina Road, Suite C-2, Goleta, CA 93117. (tn) (Entered: 01/29/2019) |
| 02/01/2019 | 98 | ☐ 138.87KB | LETTER addressed to Judge Katherine Polk Failla from Wook Hwang dated 2/1/2019 re: February 7, 2019 teleconference. Document filed by Brad Alan Grey Trust, Brad Grey Estate, Brad Grey.(Hwang, Wook) (Entered: 02/01/2019) |
| 02/04/2019 | 99 | ☐ 169.19KB | MEMO ENDORSEMENT on re: 98 Letter filed by Brad Grey Estate, Brad Alan Grey Trust, Brad Grey. ENDORSEMENT: Application GRANTED. The Defendants are hereby granted leave to file a motion for sanctions at the conclusion of further investigation and discovery. The Court will address the next steps in relation to the predicted motion at the February 7, 2019 conference. SO ORDERED. (Signed by Judge Katherine Polk Failla on 2/1/2019) (jca) (Entered: 02/04/2019) |
| 02/07/2019 | | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Telephone Conference held on 2/7/2019. Pro se Plaintiff Rovier Carrington present. Attorneys Stanton Lawrence Stein and Diana Arielle Sanders representing Brian Graden and Brian Graden Media, LLC, present. Attorneys Stephen Robert Fishbein and Michelena Hallie representing Viacom Inc., Viacom International Inc., and Paramount Pictures Corporation present. Attorneys Sarah Schacter and Wook J. Hwang representing Brad Grey defendants present. Defendants' deadlines to answer complaint are stayed. Viacom defendants are to order a copy of the transcript, and send a copy to Plaintiff. (See transcript). (Court Reporter Karen Gorlaski) (tn) (Entered: 02/11/2019) |
| 02/08/2019 | 100 | ☐ 228.00KB | ORDER. Plaintiff is reminded that he is not permitted to file documents by email, and that he is to mail any documents to the Court's Pro Se Intake Unit, located at the Thurgood Marshall U.S. Courthouse, 40 Foley Square, Room 105, New York, New York 10007. Having reviewed Plaintiff's submission, the Court hereby ORDERS the Landau Group to file a response to it on or before February 15, 2019. The Landau Group shall file its response with the Court and mail a copy of its response to Plaintiff at the address provided. Because the Landau Group is no longer counsel of record, the Court will provide a copy of this Order to the Landau Group via email along with the unredacted version of Plaintiff's letter. The Court has reviewed the letter and does not consider the redacted material contained therein to be subject to the attorney-client privilege or any other privilege. That said, the Court also does not consider the redacted material to be relevant to any of the issues in this litigation, and will therefore not publicly docket the unredacted versions of any of Plaintiff's most recent submissions to the Court. SO ORDERED. |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 242

| 01/22/2019 | 94 120.49KB | MEMO ENDORSEMENT granting 93 Motion. ENDORSEMENT: Application GRANTED. Plaintiff's request to withdraw his motion to transfer venue is GRANTED. The Clerk of Court is directed to terminate the motion at docket entry 85. The Court understands Plaintiff's submission to be limited to this request to withdraw his motion to transfer and will for now ignore that portion of the caption suggesting that Plaintiff is requesting the Court voluntarily dismiss this case. If Plaintiff wishes to seek dismissal, he must file a specific motion to that effect. As Plaintiff's motion to transfer venue is hereby withdrawn, the Court must now address Defendants' outstanding demands for discovery. (Dkt. #80). The parties are hereby ORDERED to appear for a telephone conference on February 7, 2019, at 4:30 p.m (Eastern Time). At that time, a representative of each Defendant and Rovier Carrington shall call Chambers at (212) 805-0290, with all parties on a single line. (Signed by Judge Katherine Polk Failla on 1/22/2019) Copies Mailed By Chambers. (rro) Modified on 7/1/2019 (rro). (Entered: 01/22/2019) |
|---|---|---|
| 01/22/2019 | | Set/Reset Hearings: Telephone Conference set for 2/7/2019 at 04:30 PM before Judge Katherine Polk Failla. (rro) (Entered: 01/22/2019) |
| 01/23/2019 | | ***NOTICE TO COURT REGARDING NOTICE OF VOLUNTARY DISMISSAL Document No. 95 Notice of Voluntary Dismissal was reviewed and referred to Judge Katherine Polk Failla for approval for the following reason(s): the plaintiff(s) filed their voluntary dismissal in a Pro Se case. (km) (Entered: 01/23/2019) |
| 01/23/2019 | 96 212.78KB | LETTER addressed to Judge Katherine Polk Failla from Stephen Fishbein dated January 23, 2019 re: Defendants' response to Plaintiff's filing of a notice of voluntary dismissal of this action without prejudice. Document filed by Paramount Pictures Corporation, Viacom Inc., Viacom International Inc.. (Attachments: # 1 Certificate of Service)(Fishbein, Stephen) (Entered: 01/23/2019) |
| 01/23/2019 | 97 180.98KB | MEMO ENDORSEMENT on re: 96 Letter response to Plaintiff's filing of a notice of voluntary dismissal of this action without prejudice, filed by Viacom Inc., Viacom International Inc., Paramount Pictures Corporation. ENDORSEMENT: Application GRANTED. The Court is in receipt of Plaintiff's request to dismiss the case. (Dkt. #95). The Court will hold the telephone conference as scheduled on February 7, 2019, at 4:30 p.m. The Court will address the Plaintiff's request for a voluntary dismissal without prejudice, as well as the Defendants' outstanding discovery requests regarding the authenticity of the emails filed along with the Amended Complaint. The Court will mail a copy of this Order to Plaintiff at the address provided, and requests that the Defendants provide a copy of this Order to Plaintiff via email. A copy of this Order was mailed by Chambers to: Rovier Carrington, 5901 Encina Road, Suite C-2, Goleta, CA 93117. SO ORDERED., (Telephone Conference set for 2/7/2019 at 04:30 PM before Judge |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 243

| | | | |
|---|---|---|---|
| | | | 2018, Plaintiff was directed to file all communications by mail with the Court's pro se intake unit. (Dkt. 83). The Court reminds Plaintiff that he must comply strictly with the orders of the Court in litigating his case. Further communications must comply with the Court's orders, or they will be disregarded. Finally, the Court understands that Plaintiff expects to be represented by counsel moving forward. Given that his ~~request to transfer venue was based partly on the availability of~~ counsel in California and not the Southern District of New York, any new counsel should be prepared to address whether their appearance will moot the issue of venue. SO ORDERED. (Replies due by 1/11/2019.) (Signed by Judge Katherine Polk Failla on 1/2/2019) Copies Mailed By Chambers. (mml) (Entered: 01/02/2019) |
| 01/02/2019 | | | Mailed a copy of 91 Endorsed Letter, to Rovier Carrington, 5901 Encina Road, Suite C-2, Goleta, CA 93117. (tn) (Entered: 01/02/2019) |
| 01/17/2019 | 92 | ☐ 246.02KB | ORDER TO SHOW CAUSE: Accordingly, this Court ORDERS Plaintiff to show cause in writing why his claims should not be dismissed with prejudice for failure to prosecute. Plaintiff is hereby ORDERED to file a letter with the Court explaining his failure to comply with Court-ordered deadlines by February 6, 2019. To clarify, a dismissal of the case with prejudice would not necessarily resolve the outstanding applications by Defendants for sanction under Federal Rule of Civil Procedure 11. "It is well established that a federal court may consider collateral issues after an action is no longer pending.... [An] imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether [a party] has abused the judicial process, and, if so, what sanction would be appropriate." Willy v. Coastal Corp., 503 U.S. 131, 138 (1992) (quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 395-96 (1990)). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962). SO ORDERED. (Signed by Judge Katherine Polk Failla on 1/16/2019) Copies Mailed By Chambers. (rro) (Entered: 01/17/2019) |
| 01/18/2019 | 93 | ☐ 69.26KB | REQUEST TO TAKE MOTION TO TRANSFER VENUE OFF THE COURT'S CALENDAR. Document filed by Rovier Carrington.(vn) (Entered: 01/18/2019) |
| 01/18/2019 | 95 | ☐ 0.80MB | NOTICE OF VOLUNTARY DISMISSAL pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, the plaintiff(s) and or their counsel(s), hereby give notice that the above-captioned action is voluntarily dismissed, without prejudice against the defendant(s) Brad Alan Grey Trust, Brad Grey Estate, Brian Graden Media, LLC, Brian Graden, Brad Grey, Paramount Pictures Corporation, Viacom Inc., Viacom International Inc.. Document filed by Rovier Carrington. **Proposed document to be reviewed and processed by Clerk's Office staff (No action required by chambers).** (vn) (Entered: 01/23/2019) |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 244

| | | ☐<br>40.58KB | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a conference proceeding held on 9/18/18 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(McGuirk, Kelly) (Entered: 11/19/2018) |
| 11/30/2018 | 88 | ☐<br>477.19KB | MEMORANDUM OF LAW in Opposition re: 85 MOTION to Change Venue. . Document filed by Paramount Pictures Corporation, Viacom Inc., Viacom International Inc.. (Attachments: # 1 Certificate of Service)(LaVigne, Christopher) (Entered: 11/30/2018) |
| 12/07/2018 | 89 | ☐<br>0.56MB | JOINT LETTER addressed to Judge Katherine Polk Failla from Christopher LaVigne dated December 7, 2018 re: plaintiffs refusal to accept service. Document filed by Paramount Pictures Corporation, Viacom Inc., Viacom International Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Certificate of Service) (LaVigne, Christopher) (Entered: 12/07/2018) |
| 12/07/2018 | 90 | ☐<br>223.25KB | ORDER: The Court is in receipt of Defendants' joint letter regarding issues relating to service with respect to Plaintiff Rovier Carrington. (Dkt. #89). In connection with that motion, the parties are hereby ORDERED to appear for a telephonic conference on December 11, 2018, at 4:00 p.m. At that time, a representative of each Defendant, and Rovier Carrington shall call Chambers at (212) 805-0290, with all parties on a single line. (Telephone Conference set for 12/11/2018 at 04:00 PM before Judge Katherine Polk Failla.) (Signed by Judge Katherine Polk Failla on 12/7/2018) (rro) (Entered: 12/07/2018) |
| 12/11/2018 | | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Telephone Conference held on 12/11/2018. Pro se plaintiff Rovier Carrington present. Attorneys Stanton Lawrence Stein and Diana Arielle Sanders representing Brian Graden and Brian Graden Media, LLC present. Attorneys Stephen Robert Fishbein and Christopher Lloyd LaVigne representing Viacom Inc., Viacom International Inc., and Paramount Pictures Corporation present. Attorneys Sarah Schacter and Wook J. Hwang representing Brad Grey, Brad Grey Estate and Brad Alan Grey Trust present. Docket to reflect Plaintiff's address as listed on Document 85. (Court Reporter Alena Lynch) (tn) (Entered: 12/12/2018) |
| 01/02/2019 | 91 | ☐<br>109.35KB | ENDORSED LETTER addressed to Judge Katherine Polk Failla from Rovier Carrington dated 12/28/2018 re: Plaintiff requests an extension of time. ENDORSEMENT: Application GRANTED. Despite the late-filed and informal nature of the request, the Court takes into account Plaintiff's pro se status in granting this extension. Plaintiff's deadline to file a reply is hereby extended until January 11, 2019. No further extensions will be granted. While the Court grants Plaintiff's request for an extension, Plaintiff is reminded that by order of October 16, |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 245

| | | | |
|---|---|---|---|
| | | | and related entities present. Attorneys Stephen Fishbein and Christopher LaVigne representing Viacom Inc. and related entities present. Attorneys Sarah Schacter and Wook J. Hwang representing Brad Grey and related entities present. (Court Reporter Andrew Walker) (tn) (Entered: 10/05/2018) |
| 10/05/2018 | 82 | ☐ 246.29KB | ORDER granting 78 Motion to Withdraw as Attorney. Pursuant to the discussions at the telephonic conference on October 5, 2018, the Court GRANTS The Landau Group, PCs motion to withdraw as counsel for Plaintiff Rovier Carrington. (Dkt. #78). Kevin Landau and Zachary Landau are hereby instructed to remain on the docket and to transmit any communications to Plaintiff until October 12, 2018. By this date, new counsel for Mr. Carrington shall file a notice of appearance or Mr. Carrington will explain that he wishes to proceed pro se. The Court expects new counsel will proceed expeditiously to respond to Defendants' most recent letter regarding discovery dated September 28, 2018. SO ORDERED. (Signed by Judge Katherine Polk Failla on 10/5/2018) (jca) Modified on 10/9/2018 (jca). (Entered: 10/09/2018) |
| 10/16/2018 | 83 | ☐ 117.20KB | ENDORSED LETTER addressed to Judge Katherine Polk Failla from Rovier Carrington dated Undated re: Request to Proceed Pro Se in order to motion for change of venue. ENDORSEMENT: Application GRANTED. The Court has reviewed Plaintiff's submission and ORDERS the following briefing schedule for Plaintiff's proposed motion to change venue. Plaintiff's motion shall be due on November 16, 2018, and Defendant's Opposition to the motion shall be due on November 30, 2018. The Court ORDERS Plaintiff to submit his motion papers and any future communication by mail to this Court's Pro Se Intake Unit, 500 Pearl Street, Room 200, New York, NY 10007. The Court ORDERS Defendants to mail copies of their opposition memoranda and any cases cited therein to Plaintiff's address. The Clerk of Court is directed to update the docket to reflect Plaintiff's mailing address as provided in this letter. SO ORDERED. (Motions due by 11/16/2018, Responses due by 11/30/2018) (Signed by Judge Katherine Polk Failla on 10/12/2018) Copies Mailed By Chambers. (jca) (Entered: 10/16/2018) |
| 10/17/2018 | 84 | | SEALED DOCUMENT placed in vault.(mhe) (Entered: 10/17/2018) |
| 11/14/2018 | 85 | ☐ 421.18KB | MOTION FOR CHANGE OF VENUE. Document filed by Rovier Carrington.(sc) (Entered: 11/15/2018) |
| 11/19/2018 | 86 | ☐ 182.90KB | TRANSCRIPT of Proceedings re: conference held on 9/18/2018 before Judge Katherine Polk Failla. Court Reporter/Transcriber: Karen Gorlaski, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/10/2018. Redacted Transcript Deadline set for 12/20/2018. Release of Transcript Restriction set for 2/17/2019.(McGuirk, Kelly) (Entered: 11/19/2018) |
| 11/19/2018 | 87 | | |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 246

| | | | |
|---|---|---|---|
| | | | Withdrawal, # 3 Memorandum of Law in Support)(Landau, Zachary) Modified on 9/27/2018 (db). (Entered: 09/24/2018) |
| 09/24/2018 | 79 | ☐ 227.35KB | ORDER: The Court is in receipt of The Landau Group, PCs motion to withdraw as counsel for Plaintiff Rovier Carrington. (Dkt. #78). In connection with that motion, Kevin Landau and Zachary Landau are hereby ORDERED to appear with their client, Rovier Carrington, for a telephonic conference on October 5, 2018, at 2:30 p.m. At that time, Kevin Landau, Zachary Landau, and Rovier Carrington shall call Chambers at (212) 805-0290, with all parties on a single line. SO ORDERED. (Telephone Conference set for 10/5/2018 at 02:30 PM before Judge Katherine Polk Failla.) (Signed by Judge Katherine Polk Failla on 9/24/2018) (jca) Modified on 9/25/2018 (jca). (Entered: 09/24/2018) |
| 09/26/2018 | 80 | ☐ 1.60MB | LETTER addressed to Judge Katherine Polk Failla from Stanton L. Stein dated September 26, 2018 re: Order for Further Discovery. Document filed by Brad Alan Grey Trust, Brad Grey Estate, Brian Graden Media, LLC, Brian Graden, Brad Grey, Paramount Pictures Corporation, Viacom Inc.. (Attachments: # 1 Text of Proposed Order Proposed Order, # 2 Exhibit A - Google Subpoena, # 3 Exhibit B - Microsoft Subpoena, # 4 Exhibit C - Consent Order)(Stein, Stanton) (Entered: 09/26/2018) |
| 09/27/2018 | 81 | ☐ 189.42KB | MEMO ENDORSEMENT on re: 80 Letter, filed by Viacom Inc., Brian Graden Media, LLC, Paramount Pictures Corporation, Brad Grey Estate, Brad Alan Grey Trust, Brad Grey, Brian Graden. ENDORSEMENT: The Court is in receipt of Defendants' letter, dated September 26, 2018, as well as the proposed order and subpoenas attached thereto. (Dkt. #80). The Court shares Defendants' suspicion that the Landau Group, PC's motion to withdraw as Plaintiff's counsel may affect Plaintiff's compliance with the Court's discovery directives. Accordingly, the Court will permit Defendants to participate in the initial portion of the telephonic conference, scheduled for October 5, 2018. Defense counsel is advised that they will likely be required to drop off the call if the Court needs to discuss any privileged or sensitive matters with Zachary Landau, Kevin Landau, and Rovier Carrington. Given the present uncertainty around Plaintiff's representation by counsel, the Court will refrain from determining whether to issue, as presently drafted, the proposed order and subpoenas attached to Defendants' September 26 letter. Kevin Landau, Zachary Landau, and Rovier Carrington -- and any defense counsel wishing to participate in the initial portion of the telephonic conference -- are directed to call Chambers at (212) 805-0290 on October 5 at 2:30 p.m., with all parties on a single line. SO ORDERED. (Signed by Judge Katherine Polk Failla on 9/27/2018) (rro) (Entered: 09/28/2018) |
| 10/05/2018 | | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Telephone Conference held on 10/5/2018. Plaintiff Rovier Carrington with attorneys Kevin Landau and Zachary R. Landau present. Attorneys Stanton Stein and Diana Sanders representing Brian Graden |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 247

| | | | |
|---|---|---|---|
| | | | Conference. Document filed by Brian Graden Media, LLC, Brian Graden.(Stein, Stanton) (Entered: 09/13/2018) |
| 09/14/2018 | 74 | ☐ 179.23KB | MEMO ENDORSEMENT on re: 73 Letter filed by Brian Graden Media, LLC, Brian Graden. ENDORSEMENT: Application GRANTED. So long as Ms. Sanders appears at the conference on behalf of Defendants Brian Graden and Brian Graden Media, LLC, Mr. Stein will be permitted to listen in on the conference telephonically. However, Mr. Stein will not be permitted to participate in the conference. At the scheduled time, Mr. Stein is directed to call (212) 805-0166. SO ORDERED. (Signed by Judge Katherine Polk Failla on 9/14/2018) (anc) (Entered: 09/14/2018) |
| 09/17/2018 | 75 | ☐ 273.89KB | LETTER MOTION for Discovery addressed to Judge Katherine Polk Failla from Stephen Fishbein dated September 17, 2018. Document filed by Paramount Pictures Corporation, Viacom Inc., Viacom International Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C - Text of Proposed Order)(Fishbein, Stephen) (Entered: 09/17/2018) |
| 09/17/2018 | 76 | ☐ 2.85MB | LETTER addressed to Judge Katherine Polk Failla from Kevin A. Landau dated September 17, 2017 re: Order and Status Conference. Document filed by Rovier Carrington. (Attachments: # 1 Exhibit Exhibit 1 to 10 of Letter (incl. PTG Report, Texts, and Declarations), # 2 Affidavit Includes Ex A (Text Message with Graden))(Landau, Zachary) (Entered: 09/17/2018) |
| 09/18/2018 | | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Status Conference held on 9/18/2018. (Court Reporter Karen Gorlaski) (Lopez, Jose) (Entered: 09/18/2018) |
| 09/22/2018 | 77 | ☐ 0.84MB | **FILING ERROR - DEFICIENT DOCKET ENTRY** - MOTION for The Landau, P.C., Kevin A. Landau, and Zachary R. Landau to Withdraw as Attorney *for Plaintiff Rovier Carrington*. Document filed by Rovier Carrington. (Attachments: # 1 Affidavit Kevin A. Landau Affirmation, # 2 Text of Proposed Order Proposed Order of Withdrawal)(Landau, Zachary) Modified on 9/24/2018 (db). (Entered: 09/22/2018) |
| 09/24/2018 | | | **\*\*\*NOTICE TO ATTORNEY TO RE-FILE DOCUMENT - DEFICIENT DOCKET ENTRY ERROR. Notice to Attorney Zachary R Landau to RE-FILE Document 77 MOTION for The Landau, P.C., Kevin A. Landau, and Zachary R. Landau to Withdraw as Attorney *for Plaintiff Rovier Carrington*. ERROR(S): Supporting Documents are filed separately, each receiving their own document #'s. (db) (Entered: 09/24/2018)** |
| 09/24/2018 | 78 | ☐ 0.97MB | **FILING ERROR - DEFICIENT DOCKET ENTRY** - MOTION for The Landau, P.C., Kevin A. Landau, and Zachary R. Landau to Withdraw as Attorney *for Plaintiff Rovier Carrington (corrected)*. Document filed by Rovier Carrington. (Attachments: # 1 Affidavit K. Landau Affirmation, # 2 Text of Proposed Order Proposed Order of |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 248

| | | | |
|---|---|---|---|
| | | | Exhibit(s) 1-5, # 2 Exhibit Exhibit Six (Email))(Landau, Zachary) (Entered: 08/21/2018) |
| 08/22/2018 | 70 | ☐ 198.62KB | ORDER granting 68 LETTER MOTION for Conference Request for Expedited Teleconference re dispute in complying with Court's 8/7/18 Order addressed to Judge Katherine Polk Failla from Wook Hwang dated 8/21/2018. Document filed by Brad Alan Grey Trust, Bra d Grey Estate, Brad Grey. Application GRANTED. The Court is in receipt of Defendants' letter, dated August 21, 2018 (Dkt. #68), regarding the parties' ongoing dispute over the selection of a neutral e-discovery vendor pursuant to the Court's August 7, 2018 Order (Dkt. #64). The Court has carefully reviewed that letter, along with Plaintiff's response thereto, dated August 21, 2018. (Dkt. #69). Based on the parties' submissions, it is the Court's understanding that the parties had agreed -- perhaps only tentatively so -- to select FTI Consulting ("FTI") as the vendor, but that Plaintiff's counsel is now unwilling to move forward with FTI due to concerns over possible conflicts of interest. (Dkt. #68, 69). Having reviewed the parties' submissions, including each of the exhibits appended to Plaintiff's letter, the Court finds that there is no credible evidence of any actual or potential conflicts of interest. Accordingly, the parties are directed to proceed with FTI as the e-discovery vendor and to work expeditiously to comply with the August 7 Order. In light of the parties' delay in selecting the e-discovery vendor, the Court hereby EXTENDS the interim deadlines referenced in the August 7 Order -- i.e., those originally set for fourteen (14) days from the entry of the Order -- to August 24, 2018. All other deadlines in the August 7 Order shall remain unchanged. So ordered. (Signed by Judge Katherine Polk Failla on 8/22/2018) (rjm) (Entered: 08/22/2018) |
| 08/29/2018 | 71 | ☐ 176.55KB | TRANSCRIPT of Proceedings re: CONFERENCE held on 7/17/2018 before Judge Katherine Polk Failla. Court Reporter/Transcriber: Martha Martin, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 9/19/2018. Redacted Transcript Deadline set for 10/1/2018. Release of Transcript Restriction set for 11/27/2018.(McGuirk, Kelly) (Entered: 08/29/2018) |
| 08/29/2018 | 72 | ☐ 38.51KB | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 7/17/18 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(McGuirk, Kelly) (Entered: 08/29/2018) |
| 09/13/2018 | 73 | ☐ 130.11KB | LETTER addressed to Judge Katherine Polk Failla from Stanton L. Stein dated September 13, 2018 re: September 18, 2018 Status |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 249

| | | | |
|---|---|---|---|
| | | | immediately preserve each and every document constituting or containing any portion of any of the communications that are attached as: (i) Exhibits 2-11 to the Amended Complaint (Dkt. #40-1); (ii) Exhibit A to the Declaration of Darren Stein (Dkt. #56-2); or (iii) Exhibits 1-4 to the Declaration of James Kelshaw (Dkt. #56-3), including, without limitation, all earlier emails in any email chains constituting such communications (collectively, the "At-Issue Communications") and all email forwards of any and all such communications, in original native format as well as any and all electronic or paper copies thereof, and as further specified and set forth in this Order. IT IS FURTHER ORDERED that the parties' counsel shall appear for a status conference before the Court on September 11, 2018, at 2:00 p.m. SO ORDERED. (Status Conference set for 9/11/2018 at 02:00 PM before Judge Katherine Polk Failla.) (Signed by Judge Katherine Polk Failla on 8/7/2018) (rjm) (Entered: 08/08/2018) |
| 08/09/2018 | 65 | ☐ 214.25KB | ORDER: Due to a scheduling conflict, the conference, previously scheduled for September 11, 2018, is hereby ADJOURNED to September 18, 2018, at 2:00 p.m., in Courtroom 618 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York. SO ORDERED. (Status Conference set for 9/18/2018 at 02:00 PM in Courtroom 618, 40 Centre Street, New York, NY 10007 before Judge Katherine Polk Failla.) (Signed by Judge Katherine Polk Failla on 8/9/2018) (rro) (Entered: 08/09/2018) |
| 08/16/2018 | 66 | ☐ 0.51MB | LETTER MOTION for Conference *Request for Expedited Teleconference re dispute in complying with Court's 8/7/18 order* addressed to Judge Katherine Polk Failla from Wook Hwang dated 8/16/18. Document filed by Brad Alan Grey Trust, Brad Grey Estate, Brad Grey. (Attachments: # 1 Exhibit E-mail Chain)(Hwang, Wook) (Entered: 08/16/2018) |
| 08/17/2018 | 67 | ☐ 168.40KB | ORDER denying without prejudice 66 Letter Motion for Conference. After Defendants filed the above letter, the parties wrote to the Court, indicating that they have resolved the dispute. The Court therefore DENIES Defendants' request, without prejudice to its refiling at a later date. SO ORDERED. (Signed by Judge Katherine Polk Failla on 8/17/2018) (rro) (Entered: 08/20/2018) |
| 08/21/2018 | 68 | ☐ 1.22MB | LETTER MOTION for Conference *Request for Expedited Teleconference re dispute in complying with Court's 8/7/18 Order* addressed to Judge Katherine Polk Failla from Wook Hwang dated 8/21/2018. Document filed by Brad Alan Grey Trust, Brad Grey Estate, Brad Grey. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Hwang, Wook) (Entered: 08/21/2018) |
| 08/21/2018 | 69 | ☐ 2.71MB | LETTER addressed to Judge Katherine Polk Failla from Kevin A. Landau dated August 20, 2018 re: Neutral Discovery Vendor (Dkt. No. 64). Document filed by Rovier Carrington. (Attachments: # 1 Exhibit |

| | | | |
|---|---|---|---|
| 07/16/2018 | 57 | ☐ 240.33KB | LETTER addressed to Judge Katherine Polk Failla from Stanton L. Stein dated July 16, 2018 re: Joint Status Letter. Document filed by Brian Graden Media, LLC, Brian Graden. (Attachments: # 1 Exhibit F) (Stein, Stanton) (Entered: 07/16/2018) |
| 07/17/2018 | | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Pre-Motion Conference held on 7/17/2018. (Court Reporter Martha Martin) (Lopez, Jose) (Entered: 07/19/2018) |
| 07/24/2018 | 58 | ☐ 227.60KB | ORDER: Defendants are ORDERED to file a proposed order on or before August 1, 2018, in Word format, for the Court's consideration. The proposed order should reflect Plaintiff's request for reciprocal discovery obligations, as discussed at the July 17 conference. SO ORDERED. (Signed by Judge Katherine Polk Failla on 7/24/2018) (rro) (Entered: 07/24/2018) |
| 07/31/2018 | 59 | ☐ 137.28KB | LETTER addressed to Judge Katherine Polk Failla from Wook Hwang dated 7/31/2018 re: submission of Proposed Order permitting limited discovery into the authenticity of certain communications at issue in this action in compliance with Court's 7/24/18 Order. Document filed by Brad Alan Grey Trust, Brad Grey Estate, Brian Graden Media, LLC, Brian Graden, Brad Grey, Paramount Pictures Corporation, Viacom Inc., Viacom International Inc.. (Attachments: # 1 Proposed Order)(Hwang, Wook) (Entered: 07/31/2018) |
| 08/01/2018 | 60 | ☐ 1.37MB | LETTER addressed to Judge Katherine Polk Failla from Kevin A. Landau dated August 1, 2018 re: Proposed Order Submitted by Defendants (re Dkt. No. 58). Document filed by Rovier Carrington. (Landau, Zachary) (Entered: 08/01/2018) |
| 08/01/2018 | 61 | ☐ 0.53MB | MEMO ENDORSEMENT on re: 60 Letter filed by Rovier Carrington. Application GRANTED. (Signed by Judge Katherine Polk Failla on 8/1/2018) (cf) (Entered: 08/01/2018) |
| 08/03/2018 | 62 | ☐ 2.77MB | LETTER addressed to Judge Katherine Polk Failla from Kevin A. Landau dated August 3, 2018 re: Proposed Order. Document filed by Rovier Carrington. (Attachments: # 1 Text of Proposed Order Proposed Order, # 2 Exhibit Yahoo Compliance Guide for Law Enforcement, # 3 Exhibit Yahoo Article on Lost or Deleted Emails) (Landau, Kevin) (Entered: 08/03/2018) |
| 08/06/2018 | 63 | ☐ 0.94MB | LETTER addressed to Judge Katherine Polk Failla from Wook Hwang dated 8/6/2018 re: Response to Plaintiff's Letter dated 8/3/18. Document filed by Brad Alan Grey Trust, Brad Grey Estate, Brad Grey. (Attachments: # 1 Redline Enclosure)(Hwang, Wook) (Entered: 08/06/2018) |
| 08/07/2018 | 64 | ☐ 263.07KB | ORDER FOR LIMITED DISCOVERY CONCERNING THE AUTHENTICITY OF COMMUNICATIONS. IT IS HEREBY ORDERED, without prejudice to or limiting any existing duty to preserve relevant materials that has arisen in connection with this action, that Plaintiff and Defendants, and their respective counsel, shall |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 251

| 07/02/2018 | 50 | ☐ 249.26KB | LETTER MOTION for Leave to File Motion to Dismiss addressed to Judge Katherine Polk Failla from Stanton L. Stein dated July 2, 2018. Document filed by Brian Graden Media, LLC, Brian Graden.(Stein, Stanton) (Entered: 07/02/2018) |
| 07/05/2018 | 51 | ☐ 1.42MB | LETTER addressed to Judge Katherine Polk Failla from Kevin Landau dated July 5, 2018 re: Responsive Letter to Grey Defendants Pre-Motion Letter to Dismiss. Document filed by Rovier Carrington. (Landau, Zachary) (Entered: 07/05/2018) |
| 07/05/2018 | 52 | ☐ 1.39MB | LETTER addressed to Judge Katherine Polk Failla from Kevin Landau dated July 5, 2018 re: Responsive Letter to Viacom Defendants Pre-Motion to Dismiss Letter. Document filed by Rovier Carrington. (Landau, Zachary) (Entered: 07/05/2018) |
| 07/05/2018 | 53 | ☐ 1.43MB | LETTER addressed to Judge Katherine Polk Failla from Kevin Landau dated July 5, 2018 re: Responsive Letter to Graden Defendants Pre-Motion to Dismiss Letter. Document filed by Rovier Carrington. (Landau, Zachary) (Entered: 07/05/2018) |
| 07/06/2018 | 54 | ☐ 123.64KB | ORDER granting 48 Letter Motion for Leave to File Document. The Court has carefully reviewed each of the Defendants' pre-motion letters, filed July 2, 2018 (Dkt. #48-50), as well as Plaintiff's replies thereto, filed July 5, 2018 (Dkt. #51-53). The Court finds that a premotion conference is warranted. Because an initial pretrial conference has already been scheduled in this matter, the Court declines to schedule the pre-motion conference at a new date. Instead, the Court will hold the pre-motion conference in lieu of the initial pretrial conference, on July 17, 2018, at 3:30 p.m., in Courtroom 618 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York. The Clerk of Court is directed to terminate Docket Entries 48, 49, and 50. SO ORDERED. (Signed by Judge Katherine Polk Failla on 7/6/2018) (ne) (Entered: 07/06/2018) |
| 07/06/2018 | | | Set/Reset Hearings: Pre-Motion Conference set for 7/17/2018 at 03:30 PM in Courtroom 618, 40 Centre Street, New York, NY 10007 before Judge Katherine Polk Failla. (ne) (Entered: 07/06/2018) |
| 07/10/2018 | 55 | ☐ 216.26KB | ORDER: Due to a scheduling conflict, the pre-motion conference, previously scheduled for July 17, 2018, at 3:00 p.m., is hereby ADJOURNED to July 17, 2018, at 4:00 p.m., in Courtroom 618 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York. (Pre-Motion Conference set for 7/17/2018 at 04:00 PM in Courtroom 618, 40 Centre Street, New York, NY 10007 before Judge Katherine Polk Failla.) (Signed by Judge Katherine Polk Failla on 7/10/2018) (jwh) (Entered: 07/10/2018) |
| 07/12/2018 | 56 | ☐ 4.81MB | STATUS REPORT. Document filed by Paramount Pictures Corporation, Viacom Inc., Viacom International Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E) (Fishbein, Stephen) (Entered: 07/12/2018) |

|  |  |  | Document filed by Brad Alan Grey Trust, Brad Grey Estate, Brad Grey. (Hwang, Wook) (Entered: 06/21/2018) |
| 06/21/2018 | 44 | ☐ 141.04KB | ORDER terminating 28 Letter Motion for Leave to File Document; terminating 31 Letter Motion for Leave to File Document; terminating 34 Letter Motion for Conference. The Court is in receipt of Defendants' letter, dated June 21, 2018, advising the Court that Defendants have withdrawn their requests for a pre-motion conference. In light of Defendants' letter, the Clerk of Court is directed to terminate Docket Entries 28, 31, and 34. (Signed by Judge Katherine Polk Failla on 6/21/2018) (rro) (Entered: 06/21/2018) |
| 06/25/2018 | 45 | ☐ 1.58MB | MOTION for Kevin Aaron Landau to Appear Pro Hac Vice *(corrected per Clerk's instruction)*. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Rovier Carrington. (Attachments: # 1 Affidavit K. Landau Aff. in Support of Pro Hac Vice, # 2 Exhibit Letter of Good Standing (NYS Sup. Ct.), # 3 Exhibit Letter of Good Standing (Mich. Sup. Ct.), # 4 Text of Proposed Order Proposed Order for Pro Hac Vice)(Landau, Kevin) (Entered: 06/25/2018) |
| 06/26/2018 |  |  | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 45 MOTION for Kevin Aaron Landau to Appear Pro Hac Vice *(corrected per Clerk's instruction)*. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bcu)** (Entered: 06/26/2018) |
| 06/26/2018 | 46 | ☐ 218.51KB | ORDER FOR ADMISSION PRO HAC VICE granting 45 Motion for Kevin Aaron Landau to Appear Pro Hac Vice. So ordered. (Signed by Judge Katherine Polk Failla on 6/26/2018) (rjm) (Entered: 06/26/2018) |
| 06/26/2018 | 47 | ☐ 215.90KB | ORDER: On June 4, 2018, the Court scheduled the initial pretrial conference for July 20, 2018. Due to a scheduling conflict, the Court hereby RESCHEDULES the conference to July 17, 2018, at 3:30 p.m., in Courtroom 618 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York. SO ORDERED. (Initial Conference set for 7/17/2018 at 03:30 PM in Courtroom 618, 40 Centre Steet, New York, NY 10007 before Judge Katherine Polk Failla.) (Signed by Judge Katherine Polk Failla on 6/26/2018) (rro) (Entered: 06/27/2018) |
| 07/02/2018 | 48 | ☐ 59.32KB | LETTER MOTION for Leave to File Motion to Dismiss addressed to Judge Katherine Polk Failla from Stephen Fishbein dated July 2, 2018. Document filed by Paramount Pictures Corporation, Viacom Inc., Viacom International Inc..(Fishbein, Stephen) (Entered: 07/02/2018) |
| 07/02/2018 | 49 | ☐ 180.57KB | LETTER MOTION for Conference re: 40 Amended Complaint, *(Pre-Motion) in advance of "Grey Defendants" anticipated motion to dismiss* addressed to Judge Katherine Polk Failla from Wook Hwang dated July 2, 2018. Document filed by Brad Alan Grey Trust, Brad Grey Estate, Brad Grey.(Hwang, Wook) (Entered: 07/02/2018) |
|  |  |  |  |

| | | | |
|---|---|---|---|
| | | | (Attachments: # 1 Exhibit Exs. 1 -11 of Am. Compl.)(Landau, Kevin) (Entered: 06/20/2018) |
| 06/20/2018 | 41 | ☐ 1.23MB | **FILING ERROR - DEFICIENT DOCKET ENTRY - MOTION for** Kevin Aaron Landau to Appear Pro Hac Vice *Corrected per clerk's instruction*. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Rovier Carrington. (Attachments: # 1 Affidavit K. Landau Aff., # 2 Exhibit Letter of Good Standing (NYS Sup. Ct.), # 3 Text of Proposed Order Proposed Pro Hac Vice Order)(Landau, Kevin) Modified on 6/20/2018 (ma). (Entered: 06/20/2018) |
| 06/20/2018 | 42 | ☐ 0.66MB | MOTION for Zachary Ryan Landau to Appear Pro Hac Vice *Corrected per clerk's instruction*. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Rovier Carrington. (Attachments: # 1 Affidavit Z. Landau Aff., # 2 Exhibit Letter of Good Standing (Mich. Sup. Ct), # 3 Text of Proposed Order Proposed Pro Hac Vice Order)(Landau, Kevin) (Entered: 06/20/2018) |
| 06/20/2018 | | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 42 MOTION for Zachary Ryan Landau to Appear Pro Hac Vice *Corrected per clerk's instruction*. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (ma)** (Entered: 06/20/2018) |
| 06/20/2018 | | | **>>>NOTICE REGARDING DEFICIENT MOTION TO APPEAR PRO HAC VICE. Notice to RE-FILE Document No. 41 MOTION for Kevin Aaron Landau to Appear Pro Hac Vice *Corrected per clerk's instruction*. Motion and supporting papers to be reviewed by Clerk's Office staff... The filing is deficient for the following reason(s): missing Certificate of Good Standing from THE SUPREME COURT OF MICHIGAN. http://www.nysd.uscourts.gov/file/forms/certificate-of-good-standing-contact-list; . Re-file the motion as a Motion to Appear Pro Hac Vice - attach the correct signed PDF - select the correct named filer/filers - attach valid Certificates of Good Standing issued within the past 30 days - attach Proposed Order.. (ma)** (Entered: 06/20/2018) |
| 06/21/2018 | 43 | ☐ 83.04KB | LETTER REPLY to Response to Motion addressed to Judge Katherine Polk Failla from Wook Hwang dated 6/21/2018 re: 34 LETTER MOTION for Conference *(Pre-Motion) in advance of "Grey Defendants" anticipated motion to dismiss* addressed to Judge Katherine Polk Failla from Wook Hwang dated 06/14/2018., 28 LETTER MOTION for Leave to File Motion to Dismiss addressed to Judge Katherine Polk Failla from Stephen Fishbein dated June 14, 2018., 31 LETTER MOTION for Leave to File Motion to Dismiss addressed to Judge Katherine Polk Failla from Stanton L. Stein dated June 14, 2018. *Requesting the withdrawal of all requests for a pre-motion conference regarding a motion to dismiss the complaint.* |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 254

| | | | |
|---|---|---|---|
| | | | Complaint)(Landau, Zachary) Modified on 6/19/2018 (sj). (Entered: 06/18/2018) |
| 06/19/2018 | | | ***NOTICE TO ATTORNEY REGARDING DEFICIENT PLEADING. Notice to Attorney Zachary R Landau to RE-FILE Document No. 35 Amended Complaint. The filing is deficient for the following reason(s): the wrong party/parties whom the pleading is against were selected. Re-file the pleading using the event type Amended Complaint found under the event list Complaints and Other Initiating Documents - attach the correct signed PDF - select the individually named filer/filers - select the individually named party/parties the pleading is against. (sj) (Entered: 06/19/2018) |
| 06/19/2018 | 36 | ☐ 1.34MB | FILING ERROR - DEFICIENT PLEADING - FILED AGAINST PARTY ERROR -FIRST AMENDED COMPLAINT amending 35 Amended Complaint, against All Defendants with JURY DEMAND.Document filed by Rovier Carrington. Related document: 35 Amended Complaint,. (Attachments: # 1 Exhibit Exhibits 1-11) (Landau, Kevin) Modified on 6/20/2018 (pc). (Entered: 06/19/2018) |
| 06/19/2018 | 37 | ☐ 1.43MB | LETTER addressed to Judge Katherine Polk Failla from Kevin A. Landau dated June 19, 2018 re: Responsive Letter to Grey Defendants Pre-Motion Letter to Dismiss. Document filed by Rovier Carrington. (Landau, Zachary) (Entered: 06/19/2018) |
| 06/19/2018 | 38 | ☐ 2.82MB | LETTER addressed to Judge Katherine Polk Failla from Kevin A. Landau dated June 19, 2018 re: Responsive Letter to Graden Defendants Pre-Motion to Dismiss Letter. Document filed by Rovier Carrington.(Landau, Zachary) (Entered: 06/19/2018) |
| 06/19/2018 | 39 | ☐ 1.39MB | LETTER addressed to Judge Katherine Polk Failla from Kevin A. Landau dated June 19, 2018 re: Responsive Letter to Viacom Defendants Pre-Motion to Dismiss Letter. Document filed by Rovier Carrington.(Landau, Zachary) (Entered: 06/19/2018) |
| 06/20/2018 | | | ***NOTICE TO ATTORNEY REGARDING DEFICIENT PLEADING. Notice to Attorney Kevin Landau to RE-FILE Document No. 36 Amended Complaint,. The filing is deficient for the following reason(s): the All Defendant radio button was selected. Re-file the pleading using the event type Amended Complaint found under the event list Complaints and Other Initiating Documents - attach the correct signed PDF - select the individually named filer/filers - select the individually named party/parties the pleading is against. (pc) (Entered: 06/20/2018) |
| 06/20/2018 | 40 | ☐ 1.31MB | AMENDED COMPLAINT amending 35 Amended Complaint, 36 Amended Complaint, against Brad Alan Grey Trust, Brad Grey Estate, Brian Graden Media, LLC, Brian Graden, Brad Grey, Paramount Pictures Corporation, Viacom Inc., Viacom International Inc. with JURY DEMAND.Document filed by Rovier Carrington. Related document: 35 Amended Complaint, 36 Amended Complaint,. |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 255

| | | | |
|---|---|---|---|
| | | | ORDER FOR ADMISSION PRO HAC VICE granting 23 Motion for Stanton L. Stein to Appear Pro Hac Vice. (Signed by Judge Katherine Polk Failla on 6/13/2018) (nc) (Entered: 06/13/2018) |
| 06/13/2018 | 26 | ☐ 219.01KB | ORDER FOR ADMISSION PRO HAC VICE granting 24 Motion for Diana A. Sanders to Appear Pro Hac Vice. (Signed by Judge Katherine Polk Failla on 6/13/2018) (nc) (Entered: 06/13/2018) |
| 06/14/2018 | 27 | ☐ 21.42KB | NOTICE OF CHANGE OF ADDRESS by Stanton Lawrence Stein on behalf of Brian Graden Media, LLC, Brian Graden. New Address: Russ August & Kabat, 12424 Wilshire Blvd., 12th Floor, Los Angeles, California, United States 90025-1052, 3108267474. (Stein, Stanton) (Entered: 06/14/2018) |
| 06/14/2018 | 28 | ☐ 58.90KB | LETTER MOTION for Leave to File Motion to Dismiss addressed to Judge Katherine Polk Failla from Stephen Fishbein dated June 14, 2018. Document filed by Paramount Pictures Corporation, Viacom Inc., Viacom International Inc..(Fishbein, Stephen) (Entered: 06/14/2018) |
| 06/14/2018 | 29 | ☐ 21.41KB | NOTICE OF CHANGE OF ADDRESS by Diana Arielle Sanders on behalf of Brian Graden Media, LLC, Brian Graden. New Address: Russ August & Kabat, 12424 Wilshire Blvd., 12th Floor, Los Angeles, California, United States 90025-1052, 3108267474. (Sanders, Diana) (Entered: 06/14/2018) |
| 06/14/2018 | 30 | ☐ 77.78KB | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Brian Graden Media, LLC.(Stein, Stanton) (Entered: 06/14/2018) |
| 06/14/2018 | 31 | ☐ 254.96KB | LETTER MOTION for Leave to File Motion to Dismiss addressed to Judge Katherine Polk Failla from Stanton L. Stein dated June 14, 2018. Document filed by Brian Graden Media, LLC, Brian Graden.(Stein, Stanton) (Entered: 06/14/2018) |
| 06/14/2018 | 32 | ☐ 17.06KB | NOTICE OF APPEARANCE by Sarah Schacter on behalf of Brad Alan Grey Trust, Brad Grey Estate, Brad Grey. (Schacter, Sarah) (Entered: 06/14/2018) |
| 06/14/2018 | 33 | ☐ 17.03KB | NOTICE OF APPEARANCE by Wook J Hwang on behalf of Brad Alan Grey Trust, Brad Grey Estate, Brad Grey. (Hwang, Wook) (Entered: 06/14/2018) |
| 06/14/2018 | 34 | ☐ 57.62KB | LETTER MOTION for Conference *(Pre-Motion)* in advance of "Grey *Defendants*" anticipated motion to dismiss addressed to Judge Katherine Polk Failla from Wook Hwang dated 06/14/2018. Document filed by Brad Alan Grey Trust, Brad Grey Estate, Brad Grey.(Hwang, Wook) (Entered: 06/14/2018) |
| 06/18/2018 | 35 | ☐ 1.24MB | **FILING ERROR - DEFICIENT PLEADING - FILED AGAINST PARTY ERROR** FIRST AMENDED COMPLAINT against Rovier Carrington with JURY DEMAND.Document filed by Rovier Carrington. (Attachments: # 1 Exhibit Exhibits 1 to 11 of Am. |

| | | | |
|---|---|---|---|
| | | | Cohan (Registered Agent). Document filed by Rovier Carrington. (Landau, Zachary) (Entered: 06/09/2018) |
| 06/09/2018 | 20 | ☐ 58.66KB | AFFIDAVIT OF SERVICE of Summons and Complaint served on Cassandra Husentruyt-Grey on May 5, 2018. Service was accepted by Robert Westman, Personal Body Guard and Security. Service was made by MAIL. Document filed by Rovier Carrington. (Landau, Zachary) (Entered: 06/09/2018) |
| 06/09/2018 | 21 | ☐ 57.97KB | AFFIDAVIT OF SERVICE. Brad Grey Estate served on 5/5/2018, answer due 5/29/2018; Brad Grey served on 5/5/2018, answer due 5/29/2018. Service was accepted by Robert Westman, Personal Body Guard and Security. Service was made by MAIL. Document filed by Rovier Carrington. (Landau, Zachary) (Entered: 06/09/2018) |
| 06/09/2018 | 22 | ☐ 76.13KB | DEMAND for Trial by Jury. Document filed by Rovier Carrington (Landau, Zachary) (Entered: 06/09/2018) |
| 06/12/2018 | 23 | ☐ 448.64KB | MOTION for Stanton L. Stein to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number 0208-15189928. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Brian Graden Media, LLC, Brian Graden. (Attachments: # 1 Affidavit of Stanton L. Stein, # 2 Exhibit Certificate of Good Standing from Supreme Court of California, # 3 Text of Proposed Order Proposed Order Granting Pro Hac Vice Motion)(Stein, Stanton) (Entered: 06/12/2018) |
| 06/12/2018 | 24 | ☐ 1.59MB | MOTION for Diana A. Sanders to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number 0208-15190097. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Brian Graden Media, LLC, Brian Graden. (Attachments: # 1 Affidavit of Diana A. Sanders, # 2 Exhibit Certificate of Good Standing from California Supreme Court, # 3 Exhibit Certificate of Good Standing from New York Supreme Court, # 4 Exhibit Certificate of Admission to SDNY, # 5 Text of Proposed Order Proposed Order Granting Pro Hac Vice Motion)(Sanders, Diana) (Entered: 06/12/2018) |
| 06/12/2018 | | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 23 MOTION for Stanton L. Stein to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number 0208-15189928. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies.** (ma) (Entered: 06/12/2018) |
| 06/13/2018 | | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 24 MOTION for Diana A. Sanders to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number 0208-15190097. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies.** (bcu) (Entered: 06/13/2018) |
| 06/13/2018 | 25 | ☐ 218.97KB | |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 257

| | | | |
|---|---|---|---|
| | | | Pro Hac Vice Order)(Landau, Zachary) Modified on 6/6/2018 (jc). (Entered: 06/06/2018) |
| 06/06/2018 | | | **>>>NOTICE REGARDING DEFICIENT MOTION TO APPEAR PRO HAC VICE. Notice to RE-FILE Document No. 14 MOTION for Kevin Aaron Landau to Appear Pro Hac Vice *for Plaintiff Rovier Carrington*. Filing fee $ 200.00, receipt number 0208-15163132. Motion and supporting papers to be reviewed by Clerk's Office staff.</FONT.. The filing is deficient for the following reason(s): missing Certificates of Good Standing from Michigan Supreme Court and New York Appellate Department (our court does not accept state bar certificates or computer printouts). Re-file the motion as a Motion to Appear Pro Hac Vice - attach the correct signed PDF - select the correct named filer/filers - attach valid Certificates of Good Standing issued within the past 30 days - attach Attorney Affidavit - attach Proposed Order. (jc) (Entered: 06/06/2018)** |
| 06/06/2018 | | | **>>>NOTICE REGARDING DEFICIENT MOTION TO APPEAR PRO HAC VICE. Notice to RE-FILE Document No. 15 MOTION for Zachary Ryan Landau to Appear Pro Hac Vice *for Plaintiff Rovier Carrington*. Filing fee $ 200.00, receipt number 0208-15163273. Motion and supporting papers to be reviewed by Clerk's Office staff. The filing is deficient for the following reason(s): missing Certificate of Good Standing from Michigan Supreme Court (our court does not accept state bar certificates). Re-file the motion as a Motion to Appear Pro Hac Vice - attach the correct signed PDF - select the correct named filer/filers - attach valid Certificates of Good Standing issued within the past 30 days - attach Attorney Affidavit - attach Proposed Order. (jc) (Entered: 06/06/2018)** |
| 06/09/2018 | 16 | ☐ 101.35KB | AFFIDAVIT OF SERVICE. Viacom Inc. served on 5/9/2018, answer due 6/14/2018; Viacom International Inc. served on 5/9/2018, answer due 6/14/2018. Service was accepted by CSC Corp. (Registered Agent, Patricia Coleman, Process Receiving Agent for CSC). Document filed by Rovier Carrington. (Landau, Zachary) (Entered: 06/09/2018) |
| 06/09/2018 | 17 | ☐ 50.63KB | AFFIDAVIT OF SERVICE of Summons and Complaint served on Paramount Pictures Corporation on May 10, 2018. Service was accepted by Michael Donegan, Legal Coordinator. Document filed by Rovier Carrington. (Landau, Zachary) (Entered: 06/09/2018) |
| 06/09/2018 | 18 | ☐ 51.91KB | AFFIDAVIT OF SERVICE. Brian Graden served on 5/3/2018, answer due 5/24/2018. Service was accepted by L.B. Horschler, (Executive in Charge/Authorized to Accept Service). Service was made by MAIL. Document filed by Rovier Carrington. (Landau, Zachary) (Entered: 06/09/2018) |
| 06/09/2018 | 19 | ☐ 49.48KB | AFFIDAVIT OF SERVICE. Brian Graden Media, LLC served on 5/3/2018, answer due 6/14/2018. Service was accepted by Ethan |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 258

SDNY CM/ECF NextGen Version 1.2                                    Page 6 of 32

| | | | |
|---|---|---|---|
| | | | Viacom Inc. answer due 6/14/2018; Viacom International Inc. answer due 6/14/2018. (Signed by Judge Katherine Polk Failla on 5/25/2018) (rro) (Entered: 05/25/2018) |
| 05/29/2018 | 11 | ☐ 189.65KB | CERTIFICATE OF SERVICE of Notice of Removal, Corporate Disclosure Statements, Notices of Appearance, SDNY ECF Rules and Instructions, and Judge Failla's Individual Rules of Practice in Civil Cases served on Kevin Landau attorney for plaintiff Rovier Carrington on May 24, 2018. Service was made by Overnight Mail. Document filed by Paramount Pictures Corporation, Viacom Inc., Viacom International Inc.. (Fishbein, Stephen) (Entered: 05/29/2018) |
| 05/29/2018 | 12 | ☐ 189.65KB | CERTIFICATE OF SERVICE of Notice of Removal, Corporate Disclosure Statements, Notices of Appearance, SDNY ECF Rules and Instructions, and Judge Failla's Individual Rules of Practice in Civil Cases served on Stanton Stein attorney for Brian Garden and Brian Garden Media, LLC on May 24, 2018. Service was made by Email. Document filed by Paramount Pictures Corporation, Viacom Inc., Viacom International Inc.. (Fishbein, Stephen) (Entered: 05/29/2018) |
| 06/04/2018 | 13 | ☐ 386.45KB | NOTICE OF INITIAL PRETRIAL CONFERENCE: This case has been assigned to me for all purposes. It is hereby ORDERED that counsel for all parties appear for an initial pretrial conference with the Court on July 20, 2018, at 3:00pm, in Courtroom 618 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York. IT IS FURTHER ORDERED that included with the Proposed Civil Case Management Plan and Scheduling Order, the parties jointly submit a letter, not to exceed five pages, providing the following information in separate paragraphs as further set forth in this Order. SO ORDERED. (Initial Conference set for 7/20/2018 at 03:00 PM in Courtroom 618, 40 Centre Street, New York, NY 10007 before Judge Katherine Polk Failla.) (Signed by Judge Katherine Polk Failla on 6/4/18) (yv) (Entered: 06/04/2018) |
| 06/06/2018 | 14 | ☐ 1.47MB | **FILING ERROR - DEFICIENT DOCKET ENTRY -** MOTION for Kevin Aaron Landau to Appear Pro Hac Vice *for Plaintiff Rovier Carrington.* Filing fee $ 200.00, receipt number 0208-15163132. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Rovier Carrington. (Attachments: # 1 Affidavit Landau Declaration in Support of Pro Hac Vice, # 2 Exhibit Good Standing Cert., # 3 Text of Proposed Order Proposed Pro Hac Vice Order)(Landau, Kevin) Modified on 6/6/2018 (jc). (Entered: 06/06/2018) |
| 06/06/2018 | 15 | ☐ 1.29MB | **FILING ERROR - DEFICIENT DOCKET ENTRY -** MOTION for Zachary Ryan Landau to Appear Pro Hac Vice *for Plaintiff Rovier Carrington.* Filing fee $ 200.00, receipt number 0208-15163273. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Rovier Carrington. (Attachments: # 1 Affidavit Zachary Landau Declaration in Support of Pro Hac Vice, # 2 Exhibit Cert of Good Standing, # 3 Text of Proposed Order Proposed |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 259

| | | | |
|---|---|---|---|
| | | | FILE Document No. 1 Notice of Removal. The filing is deficient for the following reason(s): pursuant to Rule 13.3, exhibits to pleading must be labeled (i.e. Summons and Complaint). Re-file the pleading using the event type Notice of Removal found under the event list Complaints and Other Initiating Documents - attach the correct signed PDF - select the individually named filer/filers - select the individually named party/parties the pleading is against. (jgo) (Entered: 05/25/2018) |
| 05/25/2018 | | | ***NOTICE TO ATTORNEY REGARDING CIVIL CASE OPENING STATISTICAL ERROR CORRECTION: Notice to attorney Stephen Robert Fishbein. The following case opening statistical information was erroneously selected/entered: Cause of Action code 15:2; Fee Status code due (due);. The following correction(s) have been made to your case entry: the Cause of Action code has been modified to 15:1; the Fee Status code has been modified to pd (paid);. (jgo) (Entered: 05/25/2018) |
| 05/25/2018 | | | CASE OPENING INITIAL ASSIGNMENT NOTICE: The above-entitled action is assigned to Judge Katherine Polk Failla. Please download and review the Individual Practices of the assigned District Judge, located at http://nysd.uscourts.gov/judges/District. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Please download and review the ECF Rules and Instructions, located at http://nysd.uscourts.gov/ecf_filing.php. (jgo) (Entered: 05/25/2018) |
| 05/25/2018 | | | Magistrate Judge Stewart D. Aaron is so designated. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: http://nysd.uscourts.gov/forms.php. (jgo) (Entered: 05/25/2018) |
| 05/25/2018 | | | Case Designated ECF. (jgo) (Entered: 05/25/2018) |
| 05/25/2018 | 8 | ☐ 2.65MB | NOTICE OF REMOVAL from Supreme Court, County of New York. Case Number: 154060/2018..Document filed by Paramount Pictures Corporation, Viacom Inc., Viacom International Inc.. (Attachments: # 1 Exhibit A - Summons and Complaint)(Fishbein, Stephen) (Entered: 05/25/2018) |
| 05/25/2018 | 9 | ☐ 456.78KB | LETTER addressed to Judge Katherine Polk Failla from Stanton L. Stein and Diana A. Sanders dated May 25, 2018 re: Request for Two Week Extension of Time to Respond to Complaint Made with Consent of All Defendants. Document filed by Brian Graden Media, LLC, Brian Graden.(Sanders, Diana) (Entered: 05/25/2018) |
| 05/25/2018 | 10 | ☐ 497.87KB | MEMO ENDORSEMENT on re: 9 Letter, filed by Brian Graden Media, LLC, Brian Graden. Application GRANTED. Brian Graden Media, LLC answer due 6/14/2018; Brian Graden answer due 6/14/2018; Paramount Pictures Corporation answer due 6/14/2018; |

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Brad Alan Grey Trust**                        represented by **Sarah Schacter**
                                                (See above for address)
                                                ~~*LEAD ATTORNEY*~~
                                                *ATTORNEY TO BE NOTICED*

                                                **Wook J Hwang**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

| Date Filed | # | clear | Docket Text |
|---|---|---|---|
| 05/24/2018 | 1 | ☐ 2.65MB | **FILING ERROR - PDF ERROR** - NOTICE OF REMOVAL from Supreme Court, County of New York. Case Number: 154060/2018. (Filing Fee $ 400.00, Receipt Number 0208-15112108).Document filed by Paramount Pictures Corporation, Viacom Inc., Viacom International Inc.. (Attachments: # 1 Exhibit A)(Fishbein, Stephen) Modified on 5/25/2018 (jgo). (Entered: 05/24/2018) |
| 05/24/2018 | 2 | ☐ 155.99KB | CIVIL COVER SHEET filed. (Fishbein, Stephen) (Entered: 05/24/2018) |
| 05/24/2018 | 3 | ☐ 179.62KB | NOTICE OF APPEARANCE by Stephen Robert Fishbein on behalf of Paramount Pictures Corporation, Viacom Inc., Viacom International Inc.. (Fishbein, Stephen) (Entered: 05/24/2018) |
| 05/24/2018 | 4 | ☐ 179.53KB | NOTICE OF APPEARANCE by Christopher Lloyd LaVigne on behalf of Paramount Pictures Corporation, Viacom Inc., Viacom International Inc.. (LaVigne, Christopher) (Entered: 05/24/2018) |
| 05/24/2018 | 5 | ☐ 180.13KB | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent Viacom Inc. for Paramount Pictures Corporation. Document filed by Paramount Pictures Corporation.(Fishbein, Stephen) (Entered: 05/24/2018) |
| 05/24/2018 | 6 | ☐ 180.38KB | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent No Parent Corporation for Viacom Inc.. Document filed by Viacom Inc..(Fishbein, Stephen) (Entered: 05/24/2018) |
| 05/24/2018 | 7 | ☐ 180.57KB | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent Viacom Inc. for Viacom International Inc.. Document filed by Viacom International Inc..(Fishbein, Stephen) (Entered: 05/24/2018) |
| 05/25/2018 | | | **\*\*\*NOTICE TO ATTORNEY REGARDING DEFICIENT PLEADING. Notice to Attorney Stephen Robert Fishbein to RE-** |

**Defendant**

**Viacom International Inc.**                    represented by **Stephen Robert Fishbein**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

                                                **Christopher Lloyd LaVigne**
                                                (See above for address)
                                                *ATTORNEY TO BE NOTICED*

**Defendant**

**Paramount Pictures Corporation**              represented by **Stephen Robert Fishbein**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

                                                **Christopher Lloyd LaVigne**
                                                (See above for address)
                                                *ATTORNEY TO BE NOTICED*

**Defendant**

**Brad Grey**                                   represented by **Sarah Schacter**
                                                Loeb & Loeb LLP
                                                345 Park Avenue
                                                New York, NY 10154
                                                212-407-4000
                                                Fax: 212-407-4990
                                                Email: sschacter@loeb.com
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

                                                **Wook J Hwang**
                                                Loeb & Loeb LLP
                                                345 Park Avenue
                                                New York, NY 10154
                                                (212) 407-4967
                                                Fax: (212) 202-5183
                                                Email: whwang@loeb.com
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

**Defendant**

**Brad Grey Estate**                            represented by **Sarah Schacter**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

                                                **Wook J Hwang**

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 262

12424 Wilshire Blvd, 12th Floor
Los Angeles, CA 90025
(310) 826-7474
Fax: (310) 979-8222
Email: lstein@raklaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Diana Arielle Sanders**
Russ August & Kabat
12424 Wilshire Blvd, 12th Floor
Los Angeles, CA 90025
(310) 826-7474
Fax: (310) 979-8222
Email: dsanders@raklaw.com
*ATTORNEY TO BE NOTICED*

<u>Defendant</u>

**Brian Graden Media, LLC**          represented by **Stanton Lawrence Stein**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Diana Arielle Sanders**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Defendant</u>

**Viacom Inc.**          represented by **Stephen Robert Fishbein**
Shearman & Sterling LLP (NY)
599 Lexington Avenue
New York, NY 10022
212 848-4424
Fax: 212 848-7179
Email: sfishbein@shearman.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher Lloyd LaVigne**
Shearman & Sterling LLP (NY)
599 Lexington Avenue
New York, NY 10022
(212) 848-4432
Fax: (646) 848-4432
Email:
christopher.lavigne@shearman.com
*ATTORNEY TO BE NOTICED*

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 263

Query    Reports    Utilities    Help    Log Out

ECF

**U.S. District Court**
**Southern District of New York (Foley Square)**
**CIVIL DOCKET FOR CASE #: 1:18-cv-04609-KPF**

Carrington v. Graden et al
Assigned to: Judge Katherine Polk Failla
Case in other court: New York State Supreme Court,
            County of New York, 154060-2018
Cause: 15:1 Antitrust Litigation (Monopolizing Trade)

Date Filed: 05/24/2018
Jury Demand: Plaintiff
Nature of Suit: 410 Anti-Trust
Jurisdiction: Federal Question

**Plaintiff**

**Rovier Carrington**

represented by **Rovier Carrington**
5901 Encina Road
Suite C-2
Goleta, CA 93117
424-332-2488
PRO SE

**Kevin Landau**
The Landau Group, PC
1221 Ave. of The Americas, 42nd Floor
New York, NY 10020
(917)-584-2293
Fax: (248)-671-0884
Email: kevin@thelandaugroup.com
*TERMINATED: 10/12/2018*
*LEAD ATTORNEY*

**Zachary R Landau**
The Landau Group, PC
45 Rockefeller Plaza, Ste. 2000
New York, NY 10111
(248)-535-2869
Fax: (248)-671-0884
Email: zach@thelandaugroup.com
*TERMINATED: 10/12/2018*

V.

**Defendant**

**Brian Graden**

represented by **Stanton Lawrence Stein**
Russ August & Kabat

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 264



Reusable

USM...PS...

XA PCTA

TRK# 7885 5311 7140
0201

NEW YORK NY 10007
40 FOLEY SQ RM 105
IN PRO SE OFFICE
(555) 555-5555

FRI — 19 JUL 10:30A
PRIORITY OVERNIGHT

10007
EWR
NY-US

FedEx
Express

Align bottom of peel-and-stick airbill or pouch here.



**RUSS AUGUST & KABAT**
LAWYERS

Stanton L. Stein
lstein@raklaw.com

Diana A. Sanders
dsanders@raklaw.com

12424
Wilshire Boulevard
12th Floor
Los Angeles
California
90025

Tel 310.826.7474
Fax 310.826.6991
www.raklaw.com

April 10, 2019

***Via ECF and Email*** (Failla_NYSDChambers@nysd.uscourts.gov)

The Honorable Katherine Polk Failla
United States District Court
Southern District of New York
40 Foley Square, Courtroom 618

Re:   Carrington v. Graden et al, Case No. 1:18-cv-04609-KPF

Dear Judge Failla:

The undersigned counsel represent all Defendants in this action.  We write jointly to update Your Honor regarding the results of the subpoenas issued by the Court to GoDaddy.com LLC ("GoDaddy"), Microsoft Corporation ("Microsoft") and Google, Inc. ("Google"), as well as the analysis of FTI Consulting ("FTI") of Mr. Carrington's iPhone X and of emails produced to FTI by Google.  Each of these issues was covered by Order of this Court dated February 13, 2019.  Dkt. No. 102.  As the findings below show, it is now clearer than ever that the 39 disputed At-Issue Communications that form the foundation of this action never existed in the form forwarded by Plaintiff Rovier Carrington to his counsel, and attached and quoted extensively throughout the amended complaint.  As FTI's investigation already showed, *none* of the native emails could be located in Plaintiff's email accounts.  Now, further information obtained from Google, Microsoft, GoDaddy and FTI shows that the two email accounts from which virtually all of these communications were purportedly exchanged (trendsetterrovheir@gmail.com and rovier@thecarringtondiaries.com) were deleted *after* the authenticity issues were first raised in this action, in a campaign by Plaintiff to spoliate the digital record and thereby eliminate further proof that Plaintiff perpetrated a fraud on the Court.  No further proof is necessary beyond the fact that *none* of the disputed At-Issue Communications exist, Plaintiff's own spoliation campaign, and the declarations of Darren Stein, Reno Logan, and James Kelshaw establishing that these emails were never exchanged.  Accordingly, pursuant to Rule 11 and the Court's inherent authority, Defendants intend to file a motion for terminating sanctions and other appropriate relief based upon Plaintiff's fraud on the Court and spoliation, and respectfully request a pre-motion conference in advance of such motion.

I.   **The Evidence Was Already Clear that a Fraud on the Court Has Been Perpetrated**

The parties have now confirmed that, of the 40 separate At-Issue Communications included in the email chains that Plaintiff attached to his amended complaint [Dkt. No. 40-1], the only one found in Plaintiffs' email accounts is the single email as to which authenticity is not in dispute.  By contrast, not one of 39 contested emails that Plaintiff filed in support of his claims exists in native form in any of his accounts.

Two independent third parties, Darren Stein and Reno Logan, have submitted sworn declarations stating that the emails appended to Mr. Carrington's amended complaint purporting to be communications with them were never exchanged.  *See* Dkt. No. 56-2 (Declaration of Darren Stein); July 23, 2018 email from Graden Defendants' counsel to the Court and all counsel attaching letter enclosing Declaration of Reno Logan and Supplemental Declaration of Darren Stein.  Indeed, Mr. Stein attested that he sent only one single email ever to Mr. Carrington, which he attached to his





declaration, and which notably does not contain the alleged language against Brian Graden that the version offered by Mr. Carrington contains. *See* Dkt. No. 56-2, Ex. A. Further, TransPerfect Inc., a reputable digital forensics company, conducted a forensic analysis of Mr. Stein's email account, which confirmed that the email attached to Mr. Stein's declaration is identical to the one that exists in native form in his account and that there are no other emails with Mr. Carrington in the account. *See* Dkt. No. 56-3 (Declaration of James Kelshaw with exhibit); Dkt. No. 57-1 (Supplemental Declaration of James Kelshaw).

Moreover, the forensic analysis conducted of Mr. Graden's email account also showed that the emails offered by Plaintiff as exhibits to the amended complaint do not exist, but rather that fragments of actual emails Mr. Graden did send to Plaintiff were lifted from those real emails to create the fabricated emails appended as exhibits 9 and 10 to the amended complaint. *See* Dkt. No. 56-3 (Declaration of James Kelshaw). Accordingly, the *only* native documents retrievable in this litigation show fabrication by Plaintiff. The Court has inherent authority to impose sanctions on this basis. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 51 (1991); *ComLab, Corp. v. Kal Tire & Kal Tire Mining Tire Grp.*, No. 17-cv-1907 (KBF), 2018 U.S. Dist. LEXIS 154983, at *1, *20-25 (S.D.N.Y. Sep. 11, 2018) (sanctions granted for fraud on the court where plaintiff "cannot produce so-called 'native' versions of the contested e-mails because of an alleged virus that affected [its] computer," and the "story regarding a computer virus does not make sense").

## II.    Further Evidence Now Conclusively Shows that Plaintiff Has Engaged in a Mass Spoliation Campaign to Obstruct the Investigation into His Fraud

The evidence put forth by Defendants over the last nine months, the findings of the neutral e-discovery vendor FTI, and the findings from the subpoenas to Google, Microsoft and GoDaddy confirm that Plaintiff Rovier Carrington engaged in a total wipe-out campaign of his devices to prevent the parties and the Court from retrieving the natives of his emails and showing that the disputed At-Issue Communications never existed.

**Mr. Carrington's iPhone X**: Consistent with the Court's Order, FTI was finally able to perform an examination of Mr. Carrington's iPhone X and it delivered its inspection report to the parties on March 5, 2019. *See* Exhibit A. As can be seen from the report, FTI concluded that "[n]o instances of the At-Issue Communications were identified" in Mr. Carrington's iPhone X. However, FTI found that "Mr. Carrington's data was migrated from his previous iPhone." Exhibit A, page 2. Relatedly, FTI observed that multiple Apple ID accounts were linked to the iPhone X, including (1) trendsetterrovheir@gmail.com (the "Trendsetter Account") and (2) roviercarrington@gmail.com (the "Existing Account")—two of the three email accounts at issue in this litigation. FTI's findings directly contradict Mr. Carrington's representation to Your Honor during the February 7, 2019 telephonic conference that he *did not* migrate his data from his old iPhone 7 to his new iPhone X and did not have the aforementioned email accounts linked to it.[1] Based on FTI's findings, it appears that Mr. Carrington purged any and all data that may have been relevant in this litigation from his current and only available phone.

**Google**: Google produced non-content related information associated with the Trendsetter Account and Existing Account. Google also produced content-related information associated with the Existing

---

[1] In a letter from Plaintiff's former counsel to Your Honor dated September 17, 2018, Plaintiff represented that "the forwarded emails were forwarded from an I-Phone 10, which Mr. Carrington has in his possession." Dkt. No. 76, page 5.

2



Account to FTI but could not recover any content-related information associated with the Trendsetter Account.

**Trendsetter Account**: Critically, the Trendsetter Account is the one from which Plaintiff purportedly exchanged the emails most central to the claims and allegations in this action. *See* Amended Complaint [Dkt. No. 40, Exs. 1-7]. Mr. Carrington and his counsel have repeatedly represented to the Court and Defendants that the Trendsetter Account was "deactivated" several years ago, and that the original emails thus could not be recovered. *See* Transcript of Sept. 18, 2018 proceedings, 34:11-14; *see also* Affidavit of K. Gus Dimitrelos, ¶ 13 (submitted with letter from Mr. Carrington to the Court dated February 6, 2019); Exhibit C email from K. Landau to parties dated Aug. 24, 2018. As noted above, however, this account was linked to Plaintiff's iPhone X, which was released in November 2017, long after Plaintiff claims this account was "deactivated." More specifically, the Google-produced information shows this account was actually deactivated on June 19, 2018. *See* Exhibit B. To put that date into context, it is (1) *just one day after* Plaintiff filed the amended complaint, which attached as exhibits the explosive Trendsetter Account emails now at issue; (2) almost two months *after* the filing of this litigation; and (3) a month *after* issuance of a preservation letter, which was sent to Plaintiff's counsel twice, on May 21 and 22, 2018.

**Existing Account**: Following production to FTI of all content-related documents relating to the Existing Account, FTI conducted a search and delivered its report to the parties on March 28, 2019. *See* Exhibit D. As can be seen from the report, FTI's "search process did not identify any original instances of the At-Issue Communications." Mr. Carrington therefore also purged all emails that may have been relevant in this litigation from this account, the only one he continues to maintain.

**Microsoft**: Per Microsoft, the third email account at issue, rovier@thecarringtondiaries.com (the "Carrington Diaries Account"), does not currently exist in its system but was used through September 2018 before being closed. *See* Exhibit E (email from Microsoft counsel Drew Wilkinson). Microsoft further indicated that Office 365 accounts such as the Carrington Diaries Account are controlled completely by the user, who has the power to delete the accounts and the content therein. This information from Microsoft evidences that Mr. Carrington closed his Carrington Diaries Account in September 2018, *after* all of the issues and concerns regarding authenticity were raised and *after* Your Honor authorized further discovery into Plaintiff's evidence.

**GoDaddy**: GoDaddy, which hosts the domain for Plaintiff's website www.thecarringtondiaries.com and its associated Carrington Diaries Account, supplied data confirming that the www.thecarringdiaries.com domain was used through and terminated on September 26, 2018. GoDaddy's records further show that Plaintiff submitted his cancelation request for the domain and email address on September 8, 2018. *See* Exhibit F. The GoDaddy records also contain notes that show that Mr. Carrington contacted GoDaddy on September 20, 2018 asking if GoDaddy has backups of his emails, to which the representative responded "we dont." *Id.* at GD00008. Mr. Carrington contacted GoDaddy again on February 23, 2019 and the notes read: "involved in a matter where someone is trying to get a subpoena for the contents of an O365 account that was removed 5 months ago, wanted an email stating that the data wasn't recoverable at this point. Showed where to find subpoena info on the legal section of our site, advised to go there for anything official." *Id.* Again, these events occurred *after* the Court's orders for further discovery and specifically after the Court's authorization of subpoenas to Microsoft and GoDaddy.

It is significant to note that the GoDaddy records also reveal numerous instances of password change requests initiated by Mr. Carrington between 2016 and 2018. This puts to bed Mr. Carrington's

3



contention that Mr. Graden had "hacked" into his account in 2018, as it is now obvious that Mr. Carrington changed his password more than once between the time he allegedly shared the password with Mr. Graden in 2015 (which Mr. Graden denies in all events) and when the purported "hack" occurred.

In short, Plaintiff has affirmatively sought to delete *all* traces of the email records that he filed as exhibits to the amended complaint in this action. Not only did Plaintiff have a clear duty to preserve this data at all relevant times, but this spoliation campaign was in willful violation of the Court's August 7, 2018 Order [Dkt. No. 64] specifically directing all parties to "<u>immediately preserve each and every document constituting or containing any portion of any of the [At-Issue Communications]</u>." Such willful spoliation and violation of the Court's Order is alone sanctionable and, under the circumstances, sufficient to dismiss this action. *See* Fed. R. Civ. Pro. 37(b),(e); *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) ("a district court may impose sanctions for spoliation, exercising its inherent power to control litigation"). Considered with the fact that this spoliation was to obstruct an investigation into what is already clear to have been a fraud on the Court, terminating sanctions are fully warranted. *See, e.g., ComLab*, 2018 U.S. Dist. LEXIS 154983, at *1, *20-25 (granting terminating sanctions under analogous circumstances).

We thank the Court for its attention to this matter.

4

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 269



Respectfully submitted,

_/s/ Stanton L. Stein_____

RUSS AUGUST & KABAT
Stanton L. Stein (appearing *pro hac vice*)
Diana A. Sanders (appearing *pro hac vice*)
12424 Wilshire Blvd., 12th Floor
Los Angeles, CA 90025

*Attorneys for Defendants Brian Graden
and Brian Graden Media, LLC*


_/s/ Wook Hwang_____

LOEB & LOEB LLP
Wook Hwang
Sarah Schacter
345 Park Avenue
New York, New York 10154

*Attorneys for Brad Grey, Brad Grey Estate and
Brad Alan Grey Trust*


_/s/ Stephen Fishbein_____

SHEARMAN & STERLING LLP
Stephen Fishbein
Christopher LaVigne
599 Lexington Ave.
New York, NY 10022

*Counsel for Viacom Inc., Viacom International Inc.
and Paramount Pictures Corporation*


Enclosure

cc:     All Counsel of Record (via ECF)
        Rovier Carrington

5

EXHIBIT A



MARCH 5, 2019

# IPHONE INSPECTION REPORT

CASE NUMBER:  1:18-CV-04609-KPF

ROVIER CARRINGTON V. GRADEN BRIAN GRADEN MEDIA,
LLC, VIACOM INC., VIACOM INTERNATIONAL INC., PARAMOUNT
PICTURES CORPORATION, BRAD GREY, BRAD GREY ESTATE, BRAD
ALAN GREY TRUST

FTI MATTER NUMBER:  009223.0051

CARRINGTON V. GRADEN ET AL.



## Background and Scope

On February 13, 2019, the Honorable Katherine Polk Failla of the United States District Court, Southern District of New York issued an order further discovery in the case Carrington v. Graden et al. (Case 1:18-CV-04609-KPF) which included the imaging and analyzing Mr. Carrington's iPhone X for evidence pertaining to the At-Issue Communications, including the transmission and/or deletion thereof, as well as non-content user activity associated with the Accounts and/or concerning the dates of operation of such device.

## Information Considered

I relied on the following sources during this analysis:

1. Honorable Katherine Polk Failla's Order for Limited Discovery Concerning the Authenticity of Communications, Case 1:18-cv-04609-KPF Document 64 Filed 08/07/18

2. Honorable Katherine Polk Failla's Order for Further Discovery, Case 1:18-cv-04609-KPF Document 64 Filed 02/13/19

3. Exhibits 2-11 to the Amended Complaint (Dkt. #40-1), Case 1:18-cv-04609-KPF Document 35-1 Filed 06/18/18 Pages 4 – 35

4. Exhibit A to the Declaration of Darren Stein (Dkt. #56-2), Case 1:18-cv-04609-KPF Document 56-2 Filed 07/12/18 Page 5 of 5

5. Exhibits 1-4 to the Declaration of James Kelshaw (Dkt. #56-3), Case 1:18-cv-04609-KPF Document 56-3 Filed 07/12/18 Pages 6 – 15

6. PDF of email forward from Plaintiff to The Landau Group, "Ex. 10 Re Stolen Show, 8.7.17_Redacted 2 3.pdf"

7. PDF of email forward from Plaintiff to The Landau Group, "Ex. 2 re Business 10.29.10_Redacted 3 4.pdf"

8. PDF of email forward from Plaintiff to The Landau Group, "Ex. 8 re Build a Reality Show, 5.15.15_Redacted 2 3.pdf"

9. PDF of email forward from Plaintiff to The Landau Group, "Ex. 9 re Inheritance TV Project, 8.10.15_Redacted 2_Redacted 3.pdf"

10. Various communications with parties

11. Mr. Carrington's iPhone X, serial number F2MW2B7XJCLG

## Methodology and Findings

On February 27, 2019, Mr. Carrington came to the Los Angeles offices of FTI Consulting, Inc. located at 350 S. Grand Avenue, Suite 3000, Los Angeles, CA 90071 and presented his iPhone X for collection. I performed the image in one of our conference rooms using the Cellebrite software UFED Physical Analyzer v. 7.15.1.1 in the presence of Mr. Carrington, during which time input his screen code each time asked. Once the imaging process completed and I verified the data to be readable, I handed the device to Mr. Carrington and he departed.

1

CARRINGTON V. GRADEN ET AL.



I am unable to determine the initial date of use for this device. There are no inherent Apple iOS initialization logs or other artifacts on which to rely for this information. It appears that Mr. Carrington's data was migrated from his previous iPhone, which further complicates this determination. This is because user files such as AddressBook.sqlitedb and sms.db retained their creation dates of February 6, 2015 while the iPhone X was released around November 2017.

No email data was identified in this data collection by the Cellebrite UFED Physical Analyzer or Oxygen Forensic Detective applications. This is because Mr. Carrington uses the native iOS email application and that data is not exposed for collection with industry-leading tools such as Cellebrite UFED Physical Analyzer. I did observe multiple Apple ID accounts associated with this device, two of which are associated with the At-Issue Communications:

1. trendsetterrovheir@gmail.com
2. roviercarrington@gmail.com

I searched the iPhone data using terms selected from the At-Issue Communications. The terms were run as whole words without case-sensitivity due to limitations of the Cellebrite UFED Physical Analyzer software.

Those terms included:

1. Blacklist
2. Graden
3. Loftus
4. Petahmj
5. Raped
6. Sumner

No instances of the At-Issue Communications were identified.

2

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 274

# EXHIBIT B

**PERKINS**COIE

700 13th Street, NW
Suite 600
Washington, D.C. 20005-3960

☎ +1.202.654.6200
🖷 +1.202.654.6211
PerkinsCoie.com

March 13, 2019

John K. Roche
JRoche@perkinscoie.com
D.  +1.202.434.1627

**VIA EMAIL**

Stanton "Larry" Stein
Russ August & Kabat
12424 Wilshire Blvd, 12th Floor
Los Angeles, CA 90025
(310) 826-7474
Fax: (310) 979-8222
lstein@raklaw.com

**Re:    Subpoena in _Carrington v. Graden, et al._, No. 1:18-cv-04609-KPF (S.D.N.Y.)**

Dear Larry:

We represent Google LLC ("Google") and write regarding the subpoena Google received in the
above-referenced matter for records regarding trendsetterrovheir@gmail.com and
roviercarrington@gmail.com.  Google produced reasonably available non-content records for
trendsetterrovheir@gmail.com on March 11, 2019.  Google has provided notice to
roviercarrington@gmail.com regarding the subpoena, and will produce reasonably available and
responsive non-content records if the user does not file objections with the court by 10 a.m.
Pacific Time on March 21, 2019.  The user can expedite production if he or she responds to
Google before March 21st and confirms they have no objection.

As for the court-ordered consent form, Google does not possess any content for
trendsetterrovheir@gmail.com.  Moreover, Google cannot properly verify user consent via a
paper consent form and is not required to do so under federal law.[1]  Google does, however, have
a process for verifying user consent and we would be happy to discuss that process with you and
Plaintiff with respect to the existing account.  In sum, that process involves a consent order that
requires the user to verify their consent via email through the account in question and provide
electronic consent for production of the contents of their account.  Please contact me if you
would like to further discuss.

---

[1] _See United States v. Wenk_, 319 F. Supp. 3d 828, 829 (E.D. Va. 2017) ("under the [Stored Communications Act] a
[non-governmental entity] cannot couple user consent and a court ordered subpoena to compel disclosure from a
service provider."); _PPG Industries, Inc. v. Jiangsu Tie Mao Glass Co., Ltd.,_ 273 F. Supp. 3d 558, 561 (W.D. Pa.
2017) ("according to the language of the SCA, it is within the providers' discretion whether to disclose e-mails even
in cases where there is lawful consent."); _Schweickert v. Hunts Point Ventures, Inc._, No. 13–cv–675RSM, 2014 WL
6886630, at *13 (W.D. Wash. Dec. 4, 2014) (same).

Perkins Coie LLP

Page 2


Very truly yours,

/s/

John K. Roche

143511993.1
Perkins Coie LLP

Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043



google-legal-support@google.com
www.google.com

March 11, 2019

*Via Email Only*
lstein@raklaw.com

Stanton L. Stein
Russ August & Kabat
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
310-826-7474

> Re: *Rovier Carrington v. Brian Graden et al.*, United States District Court for the Southern District of New York, 18-cv-04609 (KPF) (Internal Ref. No. 2334878)

Dear Stanton L. Stein:

Pursuant to the subpoena issued in the above-referenced matter, we have conducted a diligent search for documents and information accessible on Google's systems that are responsive to your request. Without waiving, and subject to its objections, Google hereby produces the attached documents. Our response is made in accordance with state and federal law, including the Electronic Communications Privacy Act. See 18 U.S.C. § 2701 et seq. By this response, Google does not waive any objection to further proceedings in this matter.

We understand that you have requested customer information regarding the user account(s) specified in the subpoena, which includes the following information: (1) subscriber and recent login information for the Gmail account TRENDSETTERROVHEIR@GMAIL.COM.

Accompanying this letter is responsive information to the extent reasonably accessible from our system, a list of hash values corresponding to each file, and a signed Certificate of Authenticity. Google may not retain a copy of this production but does endeavor to keep a list of the files and their respective hash values.

Finally, Google requests reimbursement in the amount of $125 for reasonable costs incurred in processing your request. Please forward your payment to Google Custodian of Records, at the address above and please write the Internal Reference Number (2334878) on your check. The federal tax ID number for Google is 77-0493581.

Very truly yours,

Sara Plummer
Legal Investigations Support

Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043



google-legal-support@google.com
www.google.com

**Hash Values for Production Files (Internal Ref. No. 2334878)**

trendsetterrovheir.AccountInfo.txt:

MD5- 2a06281cecf468e8af7abdd12d190a5f
SHA512-
09ea0cecd6c5a0ddec77ac195fdb00ab90a55abb94464eda8d42096a3c9391eecab0f0bf4b72d3791fa3427dfb86f
a8817fab00d5f99a7cdab779fdd380eea4c

Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043



google-legal-support@google.com
www.google.com

**CERTIFICATE OF AUTHENTICITY**

I, Sara Plummer, certify:

1. I am a Custodian of Records for Google LLC ("Google"), located in Mountain View, California. I am authorized to submit this Certificate of Authenticity on behalf of Google in response to a subpoena dated February 13, 2019 (Google LLC Internal Reference No. 2334878) in the matter of *Rovier Carrington v. Brian Graden et al.*. I have personal knowledge of the following facts and could testify competently thereto if called as a witness.

2. The accompanying 1 file(s) contain true and correct copies of records pertaining to the email address TRENDSETTERROVHEIR@GMAIL.COM ("Document").

3. The documents attached hereto reflect records made and retained by Google. The records were made at or near the time the data was acquired, entered, or transmitted to or from Google; the records were kept in the course of a regularly conducted activity of Google; and the making of the records were a regular practice of that activity.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED: March 11, 2019

*Sara Plummer*

Sara Plummer, Custodian of Records for Google LLC

```
############## * Google Confidential and Proprietary * ##############

GOOGLE SUBSCRIBER INFORMATION
Name:
e-Mail: TrendsetterRovheir@gmail.com
End of Service Date: 2018/06/19-17:43:57-UTC
Services: Android, Blogger, Gmail, Google Calendar, Google Docs,
Google Drive, Google Friend Connect, Google Hangouts, Google Maps
Engine, Google Mobile, Google Payments, Google Photos, Google
Services, Google Subscribed Links, Google Voice, Google+, Has Google
Profile, Has Plusone, Location History, Web & App Activity, YouTube,
iGoogle
Created on: 2009/09/10-06:29:33-UTC
Terms of Service IP: -
Google Account ID: 190453201304

No user IP logs data.

############## * Google Confidential and Proprietary * ##############
```

# EXHIBIT C

**From:** Kevin Landau Kevin@TheLandauGroup.com
**Subject:** Re: Carrington v. Graden et al.
**Date:** August 24, 2018 at 2:17 PM
**To:** Wook Hwang whwang@loeb.com
**Cc:** Hammerquist, Erik Erik.Hammerquist@FTIConsulting.com, Shields, Steve Steve.Shields@FTIConsulting.com, Christopher LaVigne Christopher.LaVigne@shearman.com, Zach Landau zach@thelandaugroup.com, Larry Stein lstein@raklaw.com, Diana Sanders dsanders@raklaw.com, Stephen Fishbein SFishbein@shearman.com, Gabrielle Vidal gvidal@loeb.com, Sarah Schacter sschacter@loeb.com

This email has been deactivated for years. We indicated the same in email to FTI.

Sent from my iPhone

On Aug 24, 2018, at 4:13 PM, Wook Hwang <whwang@loeb.com> wrote:

Kevin – Why have you not provided the required login information for the third account, trendsetterrovheir@gmail.com?

Wook Hwang |Partner
**LOEB & LOEB LLP** | whwang@loeb.com
345 Park Avenue | New York, NY 10154
Direct 212.407.4035 | Fax 212.937.3847

**From:** Hammerquist, Erik <Erik.Hammerquist@FTIConsulting.com>
**Sent:** Friday, August 24, 2018 4:08 PM
**To:** Wook Hwang <whwang@loeb.com>; Kevin Landau <kevin@thelandaugroup.com>; Shields, Steve <Steve.Shields@fticonsulting.com>
**Cc:** Christopher LaVigne <Christopher.LaVigne@shearman.com>; Zach Landau <zach@thelandaugroup.com>; Larry Stein <lstein@raklaw.com>; Diana Sanders <dsanders@raklaw.com>; Stephen Fishbein <SFishbein@shearman.com>; Gabrielle Vidal <gvidal@loeb.com>; Sarah Schacter <sschacter@loeb.com>
**Subject:** RE: Carrington v. Graden et al.

No, just RovierCarrington@gmail.com and Rovier@TheCarringtonDiaries.com.

Erik

**Erik Hammerquist**
Senior Director, Digital Forensics & Investigations
+1.213.452.6440 T | +1.213.321.8842 M
erik.hammerquist@fticonsulting.com

**From:** Wook Hwang <whwang@loeb.com>
**Sent:** Friday, August 24, 2018 1:04 PM
**To:** Hammerquist, Erik <Erik.Hammerquist@FTIConsulting.com>; Kevin Landau <kevin@thelandaugroup.com>; Shields, Steve <Steve.Shields@fticonsulting.com>
**Cc:** Christopher LaVigne <Christopher.LaVigne@shearman.com>; Zach Landau <zach@thelandaugroup.com>; Larry Stein <lstein@raklaw.com>; Diana Sanders <dsanders@raklaw.com>; Stephen Fishbein <SFishbein@shearman.com>; Gabrielle Vidal <gvidal@loeb.com>; Sarah Schacter <sschacter@loeb.com>
**Subject:** RE: Carrington v. Graden et al.

Thanks for the update, Erik.  Did you receive the login information for all three accounts?  These are trendsetterrovheir@gmail.com, roviercarrington@gmail.com, and Rovier@thecarringtondiaries.com.

Wook Hwang |Partner
**LOEB & LOEB LLP** | whwang@loeb.com
345 Park Avenue | New York, NY 10154
Direct 212.407.4035 | Fax 212.937.3847

**From:** Hammerquist, Erik <Erik.Hammerquist@FTIConsulting.com>
**Sent:** Friday, August 24, 2018 4:00 PM
**To:** Kevin Landau <kevin@thelandaugroup.com>; Shields, Steve <Steve.Shields@fticonsulting.com>
**Cc:** Wook Hwang <whwang@loeb.com>; Christopher LaVigne <Christopher.LaVigne@shearman.com>; Zach Landau <zach@thelandaugroup.com>; Larry Stein <lstein@raklaw.com>; Diana Sanders <dsanders@raklaw.com>; Stephen Fishbein <SFishbein@shearman.com>; Gabrielle Vidal <gvidal@loeb.com>; Sarah Schacter <sschacter@loeb.com>
**Subject:** RE: Carrington v. Graden et al.

All,

We received the credentials at noon.  I'm contending with some unexpected continuing urgencies and will attempt to locate the messages at issue today, but cannot currently predict a completion time.  I will update this group as soon as I'm able.

With best regards,

Erik

**Erik Hammerquist**
Senior Director, Digital Forensics & Investigations
+1.213.452.6440 T | +1.213.321.8842 M
erik.hammerquist@fticonsulting.com

**From:** Kevin Landau <kevin@thelandaugroup.com>
**Sent:** Friday, August 24, 2018 7:31 AM
**To:** Shields, Steve <Steve.Shields@fticonsulting.com>
**Cc:** Wook Hwang <whwang@loeb.com>; Christopher LaVigne <Christopher.LaVigne@shearman.com>; Zach Landau <zach@thelandaugroup.com>; Larry Stein <lstein@raklaw.com>; Diana Sanders <dsanders@raklaw.com>; Stephen Fishbein <SFishbein@shearman.com>; Gabrielle Vidal <gvidal@loeb.com>; Sarah Schacter <sschacter@loeb.com>; Hammerquist, Erik <Erik.Hammerquist@FTIConsulting.com>
**Subject:** Re: Carrington v. Graden et al.

Zach is in the hospital.  He has the login information.
I will obtain and be in touch.

As I'm sure you are aware, the judge extended certain deadlines.

 **Kevin Landau**
Managing Partner
New York | 212.537.4025
Michigan | 248.247.1153
E: Kevin@TheLandauGroup.com
www.TheLandauGroup.com <image001.jpg> <image001.jpg>

This message, which contains information from a law firm, may be confidential and privileged. If you have received this communication in error (you are not the addressee or authorized to receive for the addressee), you may not use, copy or disclose the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail and delete the message.

On Fri, Aug 24, 2018 at 10:22 AM, Shields, Steve <Steve.Shields@fticonsulting.com> wrote:

> Kevin
> Just a reminder that we will require the login credentials ASAP if Erik is to complete this today. Thanks.
>
> Regards,
>
> Steve
> 949-280-1868
>
>
> On Aug 23, 2018, at 3:13 PM, Shields, Steve <Steve.Shields@fticonsulting.com> wrote:
>
>> Please see the attached fully executed LOE.
>>
>>
>> <attachment 1.pdf>
>>
>>
>> Regards,
>>
>> Steve
>> 949-280-1868
>>
>> On Aug 23, 2018, at 3:07 PM, Kevin Landau <kevin@thelandaugroup.com> wrote:
>>
>>> Steve,

Do you agree to strictly adhere to the confidentiality terms asserted in your LOE?  If so, the login information will be provided now under separate cover.  Please advise.  Thank you.

Kevin

**Kevin Landau**
Managing Partner

<image001.jpg>   New York | 212.537.4025
Michigan | 248.247.1153
E: Kevin@TheLandauGroup.com

www.TheLandauGroup.com <image001.jpg> <image001.jpg>

This message, which contains information from a law firm, may be confidential and privileged. If you have received this communication in error (you are not the addressee or authorized to receive for the addressee), you may not use, copy or disclose the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail and delete the message.

On Thu, Aug 23, 2018 at 5:47 PM, Kevin Landau <kevin@thelandaugroup.com> wrote:

Sign the LOE and the login information will be provided.  Not providing confidential information until they have been officially retained and our bound by such requirements.

**Kevin Landau**
Managing Partner

<image001.jpg>   New York | 212.537.4025
Michigan | 248.247.1153
E: Kevin@TheLandauGroup.com

www.TheLandauGroup.com <image001.jpg> <image001.jpg>

This message, which contains information from a law firm, may be confidential and privileged. If you have received this communication in error (you are not the addressee or authorized to receive for the addressee), you may not use, copy or disclose the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail and delete the message.

On Thu, Aug 23, 2018 at 5:45 PM, Wook Hwang <whwang@loeb.com> wrote:

Zach, Kevin – You advised FTI that they would have the login credentials by Tuesday, and represented to the Court on Tuesday that you had the information in your possession then.  What is the holdup?  The production deadline is tomorrow.

Wook Hwang |Partner
**LOEB & LOEB LLP** | whwang@loeb.com
345 Park Avenue | New York, NY 10154
Direct 212.407.4035 | Fax 212.937.3847

**From:** Shields, Steve <Steve.Shields@fticonsulting.com>
**Sent:** Thursday, August 23, 2018 5:20 PM
**To:** Wook Hwang <whwang@loeb.com>; Christopher LaVigne <Christopher.LaVigne@Shearman.com>; Zach Landau <zach@thelandaugroup.com>

**Cc:** Kevin Landau <kevin@thelandaugroup.com>; Larry Stein <lstein@raklaw.com>; Diana Sanders <dsanders@raklaw.com>; Stephen Fishbein <SFishbein@Shearman.com>; Gabrielle Vidal <gvidal@loeb.com>; Sarah Schacter <sschacter@loeb.com>; Hammerquist, Erik <Erik.Hammerquist@FTIConsulting.com>
**Subject:** RE: Carrington v. Graden et al.

We should be able to accommodate the invoicing per your note below. I will have the LOE countersigned and sent back asap. Neither Erik or I have received the login information from the Landau firm yet.

**From:** Wook Hwang <whwang@loeb.com>
**Sent:** Thursday, August 23, 2018 2:02 PM
**To:** Shields, Steve <Steve.Shields@fticonsulting.com>; Christopher LaVigne <Christopher.LaVigne@Shearman.com>; Zach Landau <zach@thelandaugroup.com>

Cc: Kevin Landau <kevin@thelandaugroup.com>; Larry Stein <lstein@raklaw.com>;
Diana Sanders <dsanders@raklaw.com>; Stephen Fishbein
<SFishbein@Shearman.com>; Gabrielle Vidal <gvidal@loeb.com>; Sarah Schacter
<sschacter@loeb.com>; Hammerquist, Erik
<Erik.Hammerquist@FTIConsulting.com>
**Subject:** RE: Carrington v. Graden et al.

Steve – Attached is the executed LOE.  You can send invoices allocating 1/3 of the
amounts due to each of the three defendants' firms.

Have you have received Mr. Carrington's login information from the Landau firm?

Wook Hwang IPartner
**LOEB & LOEB LLP** I whwang@loeb.com
345 Park Avenue I New York, NY 10154
Direct 212.407.4035 I Fax 212.937.3847

**From:** Shields, Steve <Steve.Shields@fticonsulting.com>
**Sent:** Wednesday, August 22, 2018 8:24 PM
**To:** Christopher LaVigne <Christopher.LaVigne@Shearman.com>; Zach Landau
<zach@thelandaugroup.com>
**Cc:** Wook Hwang <whwang@loeb.com>; Kevin Landau
<kevin@thelandaugroup.com>; Larry Stein <lstein@raklaw.com>; Diana Sanders
<dsanders@raklaw.com>; Stephen Fishbein <SFishbein@Shearman.com>; Gabrielle
Vidal <gvidal@loeb.com>; Sarah Schacter <sschacter@loeb.com>; Hammerquist,
Erik <Erik.Hammerquist@FTIConsulting.com>
**Subject:** RE: Carrington v. Graden et al.

Attached is the LOE (the word version with the accepted changes) as well as a PDF
version for signing. We will await the executed version and direction from Zach
regarding access to the gmail accounts.
Thanks
Steve

**From:** Christopher LaVigne <Christopher.LaVigne@Shearman.com>
**Sent:** Wednesday, August 22, 2018 4:20 PM
**To:** Shields, Steve <Steve.Shields@fticonsulting.com>; Zach Landau
<zach@thelandaugroup.com>
**Cc:** Wook Hwang <whwang@loeb.com>; Kevin Landau
<kevin@thelandaugroup.com>; Larry Stein <lstein@raklaw.com>; Diana Sanders
<dsanders@raklaw.com>; Stephen Fishbein <SFishbein@Shearman.com>; Gabrielle
Vidal <gvidal@loeb.com>; Sarah Schacter <sschacter@loeb.com>; Hammerquist,
Erik <Erik.Hammerquist@FTIConsulting.com>
**Subject:** Re: Carrington v. Graden et al.

Many thanks Steve.  No need for me to discuss this further and thanks for
considering.

Best,

Chris

_____

On: 22 August 2018 17:15, "Shields, Steve" <Steve.Shields@fticonsulting.com>
wrote:
We have received approval for 45 day payment terms. Our counsel has rejected the
changes/insertion to section 6 of the LOE. The attached redline version incorporates
both these points. Please let me know if you would like to discuss this with our
counsel.

Thanks
Steve

**From:** Christopher LaVigne <Christopher.LaVigne@Shearman.com>
**Sent:** Wednesday, August 22, 2018 9:29 AM

**Sent:** Wednesday, August 22, 2018 9:26 AM
**To:** Shields, Steve <Steve.Shields@fticonsulting.com>; Zach Landau
<zach@thelandaugroup.com>
**Cc:** Wook Hwang <whwang@loeb.com>; Kevin Landau
<kevin@thelandaugroup.com>; Larry Stein <lstein@raklaw.com>; Diana Sanders
<dsanders@raklaw.com>; Stephen Fishbein <SFishbein@Shearman.com>; Gabrielle
Vidal <gvidal@loeb.com>; Sarah Schacter <sschacter@loeb.com>; Hammerquist,
Erik <Erik.Hammerquist@FTIConsulting.com>
**Subject:** Re: Carrington v. Graden et al.

45 days is fine and this should not hold up the work.  Chris

On: 22 August 2018 12:08, "Shields, Steve" <Steve.Shields@fticonsulting.com>
wrote:
Hi Chris
I have sent this to our AGC for review. In addition, I am seeking executive approval
for the changes in payments terms. It is likely they will approve 45 day payment terms
but not sixty. Will 45 days work for you?

**From:** Christopher LaVigne <Christopher.LaVigne@Shearman.com>
**Sent:** Tuesday, August 21, 2018 8:25 PM
**To:** Shields, Steve <Steve.Shields@fticonsulting.com>; Zach Landau
<zach@thelandaugroup.com>
**Cc:** Wook Hwang <whwang@loeb.com>; Kevin Landau
<kevin@thelandaugroup.com>; Larry Stein <lstein@raklaw.com>; Diana Sanders
<dsanders@raklaw.com>; Stephen Fishbein <SFishbein@Shearman.com>; Gabrielle
Vidal <gvidal@loeb.com>; Sarah Schacter <sschacter@loeb.com>; Hammerquist,
Erik <Erik.Hammerquist@FTIConsulting.com>
**Subject:** RE: Carrington v. Graden et al.

Scott,

We are awaiting resolution of one issue before finalizing this engagement.  We
anticipate that will happen tomorrow.  In the meantime, we had two small suggestions
on the engagement letter, which I attach for your review in redline.  Could you let us
know if there is any objection to these modifications?

Thanks,

Chris

Christopher LaVigne

Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022-6069
D +1.212.848.4432  |  F +1.646.848.4432
christopher.lavigne@shearman.com  |  www.shearman.com

**From:** Shields, Steve [mailto:Steve.Shields@fticonsulting.com]
**Sent:** Tuesday, August 21, 2018 11:53 AM
**To:** Zach Landau
**Cc:** Wook Hwang; Kevin Landau; Larry Stein; Diana Sanders; Stephen Fishbein; Christopher
LaVigne; Gabrielle Vidal; Sarah Schacter; Hammerquist, Erik
**Subject:** RE: Carrington v. Graden et al.

Good morning Zach
My apologies for the delay in responding but I was awaiting a response from FTI's
conflict department to address your requests below. I have attached a copy of FTI's
conflict procedures for your review. I have also provided an abridged version in the
body of this email below:

FTI is a global firm with worldwide practices, providing services which range
from purely advisory and consultative services to litigation-based services
involving potential or actual adversarial proceedings.   In light of the breadth of
our client base, we often find clients on opposite or the same sides (i.e., as co-
defendants) of adversarial matters in which one client seeks to engage us in
some manner. Prior to accepting a new engagement, we conduct a case-by-
case evaluation which takes into consideration a number of criteria including:

- The nature of the engagement and the issues presented.
- The type of services being requested.
- The nature and extent of our relationship with the involved clients and which of our various business segments are used by those clients.
- The nature and subject matter relationship of prior engagements for the involved clients or on identical or closely related issues.
- The adequacy of FTI's ability to protect client information.

Additionally, both Compass Lexecon and FTI Technology are wholly-owned subsidiaries of FTI Consulting, Inc.  Except in unusual circumstances, we view these practice areas as separate, and absent a legal conflict of interest, available to all clients on any matters.

FTI may institute ethical screen procedures in situations where its experts or consultants are engaged in matters which may be perceived as either adverse to a client or related to another client matter.  These ethical screen procedures (which are recognized as appropriate tools by courts) protect sensitive client information from unauthorized access by, or disclosure to, persons who are not part of the client engagement team."

We are unbale to provide you with any additional information regarding previous engagements with Defendants firms as it is FTI's position that this information is privileged and confidential.

As to the clarification of the order below, I believe we understand the scope of this order. FTI has been asked to forensically collect and produce emails from specific custodian gmail accounts. The engagement documents do not reflect any additional work to be performed by FTI. I am aware that there will be a need to image specific devices and produce those images to Plaintiff at some point in the future. I am unaware at this time as to the quantity and timing of this work and therefore left it out of the engagement documents. If this is something that needs to  be added to the current Statement of Work, I am happy to make those changes provided I have some additional details as to the location, type and number of devices to be imaged. I will have to defer to Defense counsel on any additional changes to the scope of this engagement.

Erik and I would be happy to schedule a conference call to discuss this project with everyone if you feel this would be the most expeditious way to move forward.

Thanks
Steve

**From:** Zach Landau <zach@thelandaugroup.com>
**Sent:** Monday, August 20, 2018 3:12 PM
**To:** Shields, Steve <Steve.Shields@fticonsulting.com>
**Cc:** Wook Hwang <whwang@loeb.com>; Kevin Landau <kevin@thelandaugroup.com>; Larry Stein <lstein@raklaw.com>; Diana Sanders <dsanders@raklaw.com>; Stephen Fishbein <SFishbein@shearman.com>; Christopher LaVigne <Christopher.LaVigne@shearman.com>; Gabrielle Vidal <gvidal@loeb.com>; Sarah Schacter <sschacter@loeb.com>; Hammerquist, Erik <Erik.Hammerquist@FTIConsulting.com>
**Subject:** Re: Carrington v. Graden et al.

Steve -

Before we commence work on this project, a couple preliminary issues must be addressed:

1)  Please disclose FTI's conflicts policy and procedures, and the conflicts check and search undertaken in this case, including, any work, within the past five years, that FTI was retained or appointed to perform by any of the Defendants law firms, and the amount of any fees derived by FTI thereto. Likewise, please disclose if FTI has ever retained any of

the Defendants law firms to represent them in any matter, within the past 5 years.

2)  The Order underlying FTI's engagement must be clarified, and fully understood. The Order does not simply apply to Plaintiff, as represented by the Defendants. The Court also ordered as follows:

"IT IS FURTHER ORDERED that, within fourteen (14) days of the entry of this Order, Defendants shall produce each of the At-Issue Communications in Defendants' possession, custody or control, in original native format and with all accompanying metadata;"

"IT IS FURTHER ORDERED that, within fourteen (14) days of the entry of this Order, Plaintiff and Defendants shall identify to each of the parties' respective counsel any and all computers, hard drives, tablets, cellular phones or other electronic devices that Plaintiff or Defendants, as applicable, maintain in their possession, custody or control and that have been used to: (i) transmit any of the At-Issue Communications to the recipient(s) reflected therein; or (ii) forward or otherwise transmit any of the At-Issue Communications at any time to the party's counsel of record in this action, or to any other person on or after May 1, 2016, two years prior to the commencement of this action  (collectively, the "Devices");"

Therefore, Defendants must produce any of the At-Issue Communications in their possession, custody or control, in their original native format, with all accompanying metadata. Further, Defendants must identify any and all computers, hard drives, tablets, cellular phones or other electronic devices, maintained in their possession, custody or control, that have been used to transmit any of the at-issue communications to the recipient reflected, or forwarded or otherwise transmitted any of the at issue communications, at any time to the party's counsel of record in this action, or to any other person, on or after May 1, 2016.

Likewise, the Court ordered as follows:

"IT IS FURTHER ORDERED that, within twenty-one (21) days of the entry of this Order, Defendants shall, upon Plaintiff's request, make available to the Neutral E-Discovery Vendor all of the Devices within any Defendant's possession, custody or control, for such Neutral E-Discovery Vendor to create, at Plaintiff's expense, one or more mirror images of each such Device and return such Devices to Defendants upon the creation of such mirror-images;"

Plaintiff has requested that Defendants make available to the neutral e-discovery vendor, all of the devices within any Defendant's possession, custody or control, for such Neutral E-Discovery Vendor to create, one or more mirror images of each such Device.

Thank you.

Zach

On Mon, Aug 20, 2018 at 11:52 AM, Shields, Steve <Steve.Shields@fticonsulting.com> wrote:

Hi Wook
Any update on this? We have not heard from anyone and I believe you have a deadline of Tuesday 8/21. We will need the executed LOE and login credentials in order to get started.

Thanks
Steve

**From:** Shields, Steve
**Sent:** Friday, August 17, 2018 4:11 PM

**To:** 'Wook Hwang' <whwang@loeb.com>
**Cc:** Kevin Landau <kevin@thelandaugroup.com>; Zach Landau <zach@thelandaugroup.com>; Larry Stein <lstein@raklaw.com>; Diana Sanders <dsanders@raklaw.com>; Stephen Fishbein <SFishbein@shearman.com>; Christopher LaVigne <Christopher.LaVigne@shearman.com>; Gabrielle Vidal <gvidal@loeb.com>; Sarah Schacter <sschacter@loeb.com>; Hammerquist, Erik <Erik.Hammerquist@FTIConsulting.com>
**Subject:** RE: Carrington v. Graden et al.

Thank you Wook. We will need to LOE signed before we can commence work on this project. I have attached a PDF of the LOE for signature by all 3 defense counsels. We will plan on commencing work on Monday unless informed otherwise. I will touch base Monday morning If I do not hear from you sooner.
Thanks Steve

**From:** Wook Hwang <whwang@loeb.com>
**Sent:** Friday, August 17, 2018 1:14 PM
**To:** Shields, Steve <Steve.Shields@fticonsulting.com>
**Cc:** Kevin Landau <kevin@thelandaugroup.com>; Zach Landau <zach@thelandaugroup.com>; Larry Stein <lstein@raklaw.com>; Diana Sanders <dsanders@raklaw.com>; Stephen Fishbein <SFishbein@shearman.com>; Christopher LaVigne <Christopher.LaVigne@shearman.com>; Gabrielle Vidal <gvidal@loeb.com>; Sarah Schacter <sschacter@loeb.com>; Hammerquist, Erik <Erik.Hammerquist@FTIConsulting.com>
**Subject:** RE: Carrington v. Graden et al.

Thanks Steve, these look fine.  Kevin, Zach, please let FTI know whether you have any issues with these docs and when you will provide Mr. Carrington's login information, with copy to us.

Wook Hwang IPartner
**LOEB & LOEB LLP** | whwang@loeb.com
345 Park Avenue I New York, NY 10154
Direct 212.407.4035 I Fax 212.937.3847

**From:** Shields, Steve <Steve.Shields@fticonsulting.com>
**Sent:** Friday, August 17, 2018 12:55 PM
**To:** Wook Hwang <whwang@loeb.com>
**Cc:** Kevin Landau <kevin@thelandaugroup.com>; Zach Landau <zach@thelandaugroup.com>; Larry Stein <lstein@raklaw.com>; Diana Sanders <dsanders@raklaw.com>; Stephen Fishbein <SFishbein@shearman.com>; Christopher LaVigne <Christopher.LaVigne@shearman.com>; Gabrielle Vidal <gvidal@loeb.com>; Sarah Schacter <sschacter@loeb.com>; Hammerquist, Erik <Erik.Hammerquist@FTIConsulting.com>
**Subject:** RE: Carrington v. Graden et al.

Hi Wook
Attached are the engagement documents (LOE and Statement of Work). Erik and I are available up until 11:30AM PT this morning for a call if that is convenient for all. If that window of time does not work please suggest alternative times. Erik and I are both in meetings from 12PM – 2PM PT today.

Thanks
Steve

**From:** Wook Hwang <whwang@loeb.com>
**Sent:** Friday, August 17, 2018 8:43 AM
**To:** Shields, Steve <Steve.Shields@fticonsulting.com>
**Cc:** Kevin Landau <kevin@thelandaugroup.com>; Zach Landau <zach@thelandaugroup.com>; Larry Stein <lstein@raklaw.com>; Diana Sanders <dsanders@raklaw.com>; Stephen Fishbein <SFishbein@shearman.com>;

Christopher LaVigne <Christopher.LaVigne@shearman.com>; Gabrielle Vidal <gvidal@loeb.com>; Sarah Schacter <sschacter@loeb.com>
**Subject:** RE: Carrington v. Graden et al.

Thanks, Steve. I don't see Erik Hammerquist copied, so please feel free to forward this to him.

The first task required of your firm is to collect and produce the At-Issue Communications from Mr. Carrington's email accounts. The At-Issue Communications are defined by the Order to include all emails "constituting or containing any portion of any of the communications" that are shown in the attached pdf files. These include "all earlier emails in any email chains constituting such communications," and those earlier emails should be produced separately from the parent email chains. All production is to be in original native format and with all accompanying metadata. As far as this task is concerned, all that is required is the native email production, or for you to "advise Defendants that those communications cannot be located in [Mr. Carrington's] accounts, without further disclosure to Defendants of any other information concerning such accounts or the contents thereof."

The At-Issue Communications appear to show three email addresses for Mr. Carrington, as follows: trendsetterrovheir@gmail.com, roviercarrington@gmail.com, Rovier@thecarringtondiaries.com. Mr. Carrington or his counsel are required to provide you with access to these email accounts, and any others maintained by him reflected in the attached files that I may have inadvertently omitted. **In light of the imminent deadline, we request that the Landau Group ensure that this login information be provided to you today.** Other than the communication by which that login information is transmitted to you, please keep all counsel copied on any other communications.

For purposes of the engagement letter, Defendants will bear the cost of this work, split three ways amongst the three defendants' firms. The next task will be the mirror-imaging of the parties' respective "Devices" used to transmit (or, in certain circumstances, forward) any of the At-Issue Communications, and the cost of that work is to be borne by the other side – i.e. Defendants pay for mirror-imaging of Plaintiff's Devices, and vice versa. We will cross this bridge next week when the Devices are identified.

If you would like to discuss, let's schedule a time today that works for you, me and at least one of the Landaus. I am generally available. Thanks.

Wook Hwang |Partner
**LOEB & LOEB LLP** | whwang@loeb.com
345 Park Avenue I New York, NY 10154
Direct 212.407.4035 I Fax 212.937.3847

**From:** Shields, Steve <Steve.Shields@fticonsulting.com>
**Sent:** Friday, August 17, 2018 10:58 AM
**To:** Wook Hwang <whwang@loeb.com>
**Cc:** Kevin Landau <kevin@thelandaugroup.com>; Zach Landau <zach@thelandaugroup.com>; Larry Stein <lstein@raklaw.com>; Diana Sanders <dsanders@raklaw.com>; Stephen Fishbein <SFishbein@shearman.com>; Christopher LaVigne <Christopher.LaVigne@shearman.com>; Gabrielle Vidal <gvidal@loeb.com>; Sarah Schacter <sschacter@loeb.com>
**Subject:** RE: Carrington v. Graden et al.

Hi Wook
We have cleared conflicts. Please let me know if there are some convenient times for a scoping call with our forensic expert, Erik Hammerquist (copied here). I will start putting the engagement documents together.

**From:** Wook Hwang <whwang@loeb.com>
**Sent:** Thursday, August 16, 2018 12:18 PM
**To:** Shields, Steve <Steve.Shields@fticonsulting.com>
**Cc:** Kevin Landau <kevin@thelandaugroup.com>; Zach Landau
<zach@thelandaugroup.com>; Larry Stein <lstein@raklaw.com>; Diana Sanders

<dsanders@raklaw.com>; Stephen Fishbein <SFishbein@shearman.com>;
Christopher LaVigne <Christopher.LaVigne@shearman.com>; Gabrielle Vidal
<gvidal@loeb.com>; Sarah Schacter <sschacter@loeb.com>
**Subject:** RE: Carrington v. Graden et al.

Steve – Please keep all counsel copied on these communications.  To answer your
question, the parties and counsel are:

Plaintiff Rovier Carrington – Landau Group
Defendants Brad Grey, Brad Grey Estate and Brad Alan Grey Trust – Loeb & Loeb
Defendants Viacom Inc., Viacom International Inc. and Paramount Pictures
Corporation – Shearman and Sterling
Defendants Brian Graden and Brian Graden Media, LLC – Russ, August & Kabat

Wook Hwang IPartner
**LOEB & LOEB LLP** I whwang@loeb.com
345 Park Avenue I New York, NY 10154
Direct 212.407.4035 I Fax 212.937.3847

**From:** Shields, Steve <Steve.Shields@fticonsulting.com>
**Sent:** Thursday, August 16, 2018 2:29 PM
**To:** Wook Hwang <whwang@loeb.com>
**Subject:** RE: Carrington v. Graden et al.


Confirmed. Can you please identify defense counsel and their respective clients
along with which frim is representing plaintiffs? Thanks

**From:** Wook Hwang <whwang@loeb.com>
**Sent:** Thursday, August 16, 2018 11:18 AM
**To:** Shields, Steve <Steve.Shields@fticonsulting.com>
**Cc:** Kevin Landau <kevin@thelandaugroup.com>; Zach Landau
<zach@thelandaugroup.com>; Larry Stein <lstein@raklaw.com>; Diana Sanders
<dsanders@raklaw.com>; Stephen Fishbein <SFishbein@shearman.com>;
Christopher LaVigne <Christopher.LaVigne@shearman.com>; Gabrielle Vidal
<gvidal@loeb.com>; Sarah Schacter <sschacter@loeb.com>
**Subject:** Carrington v. Graden et al.

Steve – Per our discussion, attached is the order that requires the parties to
engage a Neutral E-Discovery Vendor for the tasks set forth in the order.  Please
run conflicts and let us know if there are any issues with respect to any of the
parties.  I have copied all counsel involved in the case.  Thank you.

Wook Hwang IPartner
**LOEB & LOEB LLP** I whwang@loeb.com
345 Park Avenue I New York, NY 10154
Direct 212.407.4035 I Fax 212.937.3847

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail
messages attached to it may contain confidential information that is legally privileged. If you are
not the intended recipient, or a person responsible for delivering it to the intended recipient, you
are hereby notified that any disclosure, copying, distribution or use of any of the information
contained in or attached to this transmission is STRICTLY PROHIBITED. If you have received this
transmission in error, please immediately notify the sender. Please destroy the original transmission
and its attachments without reading or saving in any manner. Thank you, Loeb & Loeb LLP.

**Confidentiality Notice:**
This email and any attachments may be confidential and protected by legal privilege. If you are not the intended
recipient, be aware that any disclosure, copying, distribution or use of the e-mail or any attachment is prohibited. If
you have received this email in error, please notify us immediately by replying to the sender and then delete this
copy and the reply from your system. Thank you for your cooperation.

| Zach Landau

Senior Associate
New York I 212.537.4025
Michigan I 248.247.1153
E: Zach@TheLandauGroup.com

www.TheLandauGroup.com <image001.jpg> <image001.jpg>

<image001.jpg>

This message, which contains information from a law firm, may be confidential and privileged. If you have received this communication in error (you are not the addressee or authorized to receive for the addressee), you may not use, copy or disclose the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail and delete the message.

This communication and any attachments may be privileged or confidential. If you are not the intended recipient, you have received this in error and any review, distribution or copying of this communication is strictly prohibited. In such an event, please notify us immediately by reply email or by phone (collect at 212-848-4000) and immediately delete this message and all attachments.

# EXHIBIT D



MARCH 28, 2018

# EMAIL SEARCH REPORT

CASE NUMBER: 1:18-CV-04609-KPF

ROVIER CARRINGTON V. GRADEN BRIAN GRADEN MEDIA,
LLC, VIACOM INC., VIACOM INTERNATIONAL INC., PARAMOUNT
PICTURES CORPORATION, BRAD GREY, BRAD GREY ESTATE, BRAD
ALAN GREY TRUST

FTI MATTER NUMBER: 009223.0051

CARRINGTON V. GRADEN ET AL.



## Background and Scope

On February 13, 2019, the Honorable Katherine Polk Failla of the United States District Court, Southern District of New York issued an order further discovery in the case Carrington v. Graden et al. (Case 1:18-CV-04609-KPF) which included instructions for Mr. Carrington to provide written consent to Google, Microsoft and GoDaddy to produce to FTI Consulting, Inc. the content of any and all available and/or recoverable email communications in the accounts: trendsetterrovheir@gmail.com; roviercarrington@gmail.com; and Rovier@thecarringtondiaries.com for the purposes of searching for the at-issue communications.

On March 20, 2019, FTI received a CD from Sara Plummer, Custodian of Records for Google LLC, containing the email data for the email address RovierCarrington@Gmail.com.  This report documents the search of that data.

## Information Considered

I relied on the following sources during this analysis:

1. Honorable Katherine Polk Failla's Order for Limited Discovery Concerning the Authenticity of Communications, Case 1:18-cv-04609-KPF Document 64 Filed 08/07/18

2. Exhibits 2-11 to the Amended Complaint (Dkt. #40-1), Case 1:18-cv-04609-KPF Document 35-1 Filed 06/18/18 Pages 4 – 35

3. Exhibit A to the Declaration of Darren Stein (Dkt. #56-2), Case 1:18-cv-04609-KPF Document 56-2 Filed 07/12/18 Page 5 of 5

4. Exhibits 1-4 to the Declaration of James Kelshaw (Dkt. #56-3), Case 1:18-cv-04609-KPF Document 56-3 Filed 07/12/18 Pages 6 – 15

5. PDF of email forward from Plaintiff to The Landau Group, "Ex. 10 Re Stolen Show, 8.7.17_Redacted 2 3.pdf"

6. PDF of email forward from Plaintiff to The Landau Group, "Ex. 2 re Business 10.29.10_Redacted 3 4.pdf"

7. PDF of email forward from Plaintiff to The Landau Group, "Ex. 8 re Build a Reality Show, 5.15.15_Redacted 2 3.pdf"

8. PDF of email forward from Plaintiff to The Landau Group, "Ex. 9 re Inheritance TV Project, 8.10.15_Redacted 2_Redacted 3.pdf"

9. Discussions on conference calls with parties

10. Honorable Katherine Polk Failla's Order for Further Discovery, Case 1:18-cv-04609-KPF Filed 02/13/19

1



CARRINGTON V. GRADEN ET AL.

## Methodology

I indexed the received data into Nuix Workstation for text-based searching. The email data was then searched using dates and terms selected from the At-Issue Communications. The terms were run as stems and without case-sensitivity.

Those terms included:

1. "Build a show"
2. "dramatic series"
3. "erase someone"
4. "Network error"
5. "Our Jewish bodies"
6. "Reality Show"
7. "TV Project"
8. Blacklist
9. darrenstein
10. Demands
11. Fix this
12. Genitals
13. Graden
14. Harvey bullshit

15. Inheritance
16. legally protectable
17. Loftus
18. Lombardo
19. Masterpiece
20. Obey
21. petahmj
22. Pounding
23. Raped
24. Reschedule
25. Stolen
26. Sumner
27. TieLonzo
28. Trendsetterrovheir

## Findings

This search process did not identify any original instances of the At-Issue Communications. This is summarized in the table below:

| Exhibit | Subject | Date | Observations |
|---|---|---|---|
| 2 | Business | 10/29/10 7:42:22 AM | No instances noted |
| 3 | Re: Grey | 1/17/11 10:18:00 AM | No instances noted |
| 4 | Re: Demands | 2/28/11 11:03:00 AM | No instances noted |
| 5 | Re: Mr. Rovheir | 4/19/11 10:12:43 AM | No instances noted |
| 6 | Re: Fix This | 6/10/11 11:08:00 AM | No instances noted |
| 7 | RE: Reschedule | 7/29/14 11:11:00 AM | No instances noted |
| 8 | Re: Build a Show "Reality Show" | 5/15/15 11:17:46 PM | No instances noted |
| 9 | Re: Inheritance "TV Project" | 8/10/15 12:52:47 AM | No instances noted |
| 10 | Re: Stolen show | 8/7/17 6:15:11 PM | No instances noted |
| 11 | Re: Darren Stein's Offer | 10/24/17 12:03:15 PM | No instances noted |
| Kelshaw 1 | Re: Darren Stein's Offer | 10/24/17 12:06:00 PM | No instances noted |
| Kelshaw 2 | Re: Inheritance "TV Project" | 8/10/15 12:49:00 AM | No instances noted |
| Kelshaw 3 | Re: Inheritance "TV Project" | 8/10/15 1:00:00 AM | No instances noted |
| Kelshaw 4 | Re: Network error | 8/8/17 7:07:00 PM | No instances noted |
| Stein Decl. A | Re: Darren Stein's Offer | 10/24/17 12:05:00 PM | No instances noted |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 297

# EXHIBIT E

From: **Drew Wilkinson (CELA)** anwilkin@microsoft.com
Subject: RE: Microsoft Objections - Rovier Carrington v. Brian Graden, et al
Date: March 11, 2019 at 2:40 PM
To: Larry Stein  lstein@raklaw.com
Cc: Diana Sanders  dsanders@raklaw.com, Cheryl Zive  czive@raklaw.com



Larry,

Per our phone conversation on 3/6/19, I am following up on your request to find out when the target account was opened and closed. Since the account does not exist in any of our systems, we have very limited data available. The only information we have is that the Office 365 domain was opened 10/12/15 and showed usage through 9/2018. I believe this concludes Microsoft's obligations to your subpoena, thank you.

Drew Wilkinson | Litigation Group
Microsoft

**From:** Larry Stein <lstein@raklaw.com>
**Sent:** Wednesday, March 6, 2019 9:22 AM
**To:** Drew Wilkinson (CELA) <anwilkin@microsoft.com>
**Cc:** Diana Sanders <dsanders@raklaw.com>; Cheryl Zive <czive@raklaw.com>
**Subject:** Re: Microsoft Objections - Rovier Carrington v. Brian Graden, et al

Dear Drew,

Are you available for a quick call today between 12:00 pm and 2:00 pm PT?

Best,
Larry

On Mar 4, 2019, at 10:52 AM, Drew Wilkinson (CELA) <anwilkin@microsoft.com> wrote:

Mr. Stein,

I've heard back from the technical team we rely on to access responsive data and they have confirmed that Microsoft has no data associated with the target account listed in your subpoena. Without data to produce, the consent form you provided won't be necessary and I believe this concludes Microsoft's obligations under the subpoena. Feel free to give me a call if you have further questions.
Drew Wilkinson | Litigation Group
<image001.jpg>

**From:** Larry Stein <lstein@raklaw.com>
**Sent:** Monday, March 4, 2019 9:51 AM
**To:** Drew Wilkinson (CELA) <anwilkin@microsoft.com>
**Cc:** Diana Sanders <dsanders@raklaw.com>
**Subject:** Re: Microsoft Objections - Rovier Carrington v. Brian Graden, et al

Dear Drew,

Attached please find the subscriber's signed written consent form allowing Microsoft to access and provide, in accordance with the subpoena served upon it, all recoverable content data from the relevant account.  This was part of the federal court order, which accompanied the federal court-issued subpoena that has been served on Microsoft.  I believe this moots the objections in the February 22 letter we received from you.  Should you have any questions or additional concerns about compliance with the subpoena, please give me a call.

Sincerely,

Larry Stein


On Feb 22, 2019, at 12:32 PM, Drew Wilkinson (CELA) <anwilkin@microsoft.com> wrote:

Please find Microsoft's objections to this subpoena attached; you should be receiving the signed originals shortly.

Drew Wilkinson I Litigation Group
<image001.jpg>

<Signed OBJ - Rovier Carrington v. Brian Graden, et al..pdf>


Stanton "Larry" Stein
RUSS AUGUST & KABAT I 12424 Wilshire Blvd., 12th Floor I Los Angeles, CA 90025
T: 310.826.7474 I F: 310.826.6991 I lstein@raklaw.com I www.raklaw.com

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
IRS Circular 230 Notice:  This communication is not intended to be used and cannot be used, for the purpose of avoiding U.S. federal tax-related penalties or promoting, marketing or recommending to another party any tax-related matter addressed herein.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
This communication shall not create, waive or modify any right, obligation or liability, or be construed to contain or be an electronic signature.
 This communication may contain information that is legally privileged, confidential or exempt from disclosure, and is intended only for the named addressee(s).  If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is prohibited

Stanton "Larry" Stein
RUSS AUGUST & KABAT I 12424 Wilshire Blvd., 12th Floor I Los Angeles, CA 90025
T: 310.826.7474 I F: 310.826.6991 I lstein@raklaw.com I www.raklaw.com

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
IRS Circular 230 Notice:  This communication is not intended to be used and cannot be
used, for the purpose of avoiding U.S. federal tax-related penalties or
promoting, marketing or recommending to another party any tax-related
matter addressed herein.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
This communication shall not create, waive or modify any right, obligation or liability, or
be construed to contain or be an electronic signature.  This communication may
contain information that is legally privileged, confidential or exempt from disclosure, and
is intended only for the named addressee(s).  If you are not the intended recipient, please
note that any dissemination, distribution, or copying of this communication is prohibited

# EXHIBIT F



Writer's Direct Line
480.624.2506
kwillis@godaddy.com

March 4, 2019

Stanton Stein
Russ August & Kabat
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025

Re:     *thecarringtondiaries.com...*
        GDG Reference No. 19-32881

Dear Mr. Stein:

Please consider this GoDaddy.com, LLC's official response to the Subpoena issued by the
United States District Court for the Southern District of New York.  In response to that
Subpoena, we are herewith producing approximately seventy-six (76) pages of documents which
have been Bates labeled as GD 000001 through GD 000076.  These documents contain
confidential, proprietary, trade secret, and/or private information that warrants special protection
from public disclosure and from use for any purpose other than prosecuting or defending the
action in which the subpoena is served.  It is imperative that any documents designated
"CONFIDENTIAL" receive confidential treatment.  Confidential treatment includes: (1) limiting
access to these documents to the parties in this litigation, their agents, and the court and its
personnel; (2) taking the procedural steps necessary to file under seal any portion of any
submission to the court that refers to or incorporates these documents; and (3) destroying all
CONFIDENTIAL documents included in this production, including copies thereof, within 60
days after the final disposition of the action in which the subpoena is served.  More information
can be found in GoDaddy's Subpoena Policy/Attorney Tips, available on our Legal page.  You
should assume that if categories of documents called for in the subpoena are not included in the
produced documents, GoDaddy.com has no responsive documents for such categories.  Please
note GoDaddy.com does not provide email service for the address
rovier@thecarringtondiaries.com.

We have also enclosed an executed Certificate of Authenticity.

If this case involves a domain name dispute, please provide courtdisputes@godaddy.com with a
file copy of the complaint so that they may place the domain name on registrar lock pending the
outcome of the case.

March 4, 2019
Page 2 of 2

Please remit your check in the amount of $24.90 to cover the cost of production.

Copying, printing and reproduction
      76 Pages x $0.25 per Page             $19.00
FedEx                                     $5.90
TOTAL                                   $24.90

If we can assist further, please give me a call.

           Very truly yours,

           GODADDY.COM, LLC

           Keena R. Willis
           Director, Global Subpoena Compliance

Enclosure
KRW/kag

14455 N. Hayden Rd., Suite 100 Scottsdale, AZ 85260              480-505-8800

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 304

### CERTIFICATE OF AUTHENTICITY
### OF
### BUSINESS RECORDS

I, Kimberly A. Groff, declare that I am employed by GoDaddy.com, LLC, and

that my office title or position is Admin-Legal II.  I further declare that I am a custodian

of records of said business and that each of the records attached hereto is the original or a

duplicate (exact photocopy) of an original record in the custody of GoDaddy.com, LLC.

I further state that:

1.  Such records were made, at or near the times of the occurrence of the
    matters set forth by (or from information transmitting by) a person with
    knowledge of those matters;

2.  such records are kept in the course of a regularly conducted business
    activity;

3.  the business activity made such records as a regular practice; and

4.  if such records are not the originals, such records are duplicates of the
    originals.

I declare under penalty of perjury the forgoing is true and correct.

Dated this 4th day of March 2019.

Kimberly A. Groff
Admin-Legal II
GoDaddy.com, LLC
14455 N. Hayden Road, Suite 219
Scottsdale, AZ 85260

Rec'd 15 Feb 2019

Case 1:18-cv-04609-KPF   Document 102   Filed 02/13/19       GDG Ref. No.
                                                             19-32881

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of New York

| Rovier Carrington | ) | |
|---|---|---|
| *Plaintiff* | ) | Civil Action No.   18-cv-04609 (KPF) |
| v. | ) | |
| Brian Graden et al. | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                          GoDaddy.com, LLC

*(Name of person to whom this subpoena is directed)*

☒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Schedule A attached hereto.

| Place: Russ August & Kabat<br>12424 Wilshire Boulevard, 12th Floor<br>Los Angeles, California 90025 | Date and Time:<br>· 02/26/2019 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      February 13, 2019

SO ORDERED.

*CLERK OF COURT*

                                    *Katherine Polk Failla*

                        OR     HON. KATHERINE POLK FAILLA
                               UNITED STATES DISTRICT JUDGE
_____                *Attorney's signature*
*Signature of Clerk or Deputy Clerk*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Brian Graden and Brian Graden Media, LLC               , who issues or requests this subpoena, are:

Stanton Stein; 12424 Wilshire Boulevard, 12th Floor Los Angeles, California 90025
(310) 826-7474; lstein@raklaw.com

## Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

# Shopper Info for Shopper ID 112120542

| | |
|---|---|
| Shopper ID: | 112120542 |
| Private Label ID: | 1 |
| Login Name: | RovierPrince |
| First Name: | Rovier |
| Middle Name: | |
| Last Name: | Carrington |
| Company: | Carrington Diaries |
| Address1: | ██████████ |
| Address2: | |
| City: | Beverly Hills |
| State/Prov: | CA |
| Postal Code: | 90210 |
| Country: | US |
| Phone Work: | ██████████ |
| Phone Home: | |
| Mobile: | ██████████ |
| Fax: | |
| Email: | Rovier@TheCarringtonDiaries.com |
| BirthDate: | |
| Gender: | |
| Date Created: | 9/14/2015 1:10:12 PM |
| Last Changed By: | pci.eCommClient.prod.intranet.gdg |
| Last Changed By Date: | 10/14/2018 1:04:57 AM |
| Status: | |
| Fraud: | Verified by Fraud Dept - Customer OK |
| Shopper Pin: | |
| Password Reminder: | |
| Twitter Handle: | |

CONFIDENTIAL

GD 000001

## Domain List - All for Shopper ID 112120542

| Domain Name | Status | Created | Expires | Order ID |
|---|---|---|---|---|
| carringtondiaries.com | 220 DNSInfo - Inactive | 9/20/2015 | n/a | |
| carringtondiaries.com | 165 Cancelled - Never Transferred | 9/24/2015 | n/a | 881234871 |
| thecarringtondiaries.com | 8 Cancelled | 9/26/2015 | 9/26/2018 | 881998014 |

CONFIDENTIAL

GD 000002

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 308

# Domain Information for Shopper ID 112120542

| | |
|---|---|
| Shopper ID: | 112120542 |
| Domain Name: | carringtondiaries.com |
| Registrar: | OffSite DNS |
| Registration Period: | 1 |
| Create Date: | 9/20/2015 8:25:01 PM |
| Expiration Date: | |
| Update Date: | |
| Transfer Away Eligibility Date: | |
| Status: | 220 DNSInfo - Inactive |
| Is Certified Domain: | False |
| Gaining Registrar Name: | |
| Transferred Away Date: | |
| Last Modified: | 8/9/2016 8:55:21 PM |
| Custom DNS: | No |
| Name Servers: | |
| Auto Renew: | No |
| Renew Period: | 0 |

## Registrant Contact
Name:
Company:
Email:
Address 1:
Address 2:
City:
State/Province:
Postal Code:
Country:
Phone:
Fax:
Modify Time:          1/1/0001 12:00:00 AM

## Technical Contact
Name:
Company:
Email:
Address 1:
Address 2:
City:
State/Province:
Postal Code:
Country:
Phone:
Fax:
Modify Time:          1/1/0001 12:00:00 AM

## Administrative Contact
Name:
Company:
Email:
Address 1:
Address 2:
City:
State/Province:
Postal Code:
Country:
Phone:
Fax:
Modify Time:          1/1/0001 12:00:00 AM

## Billing Contact
Name:
Company:
Email:
Address 1:
Address 2:
City:
State/Province:
Postal Code:
Country:
Phone:
Fax:
Modify Time:          1/1/0001 12:00:00 AM

CONFIDENTIAL

GD 000003

# Domain Information for Shopper ID 112120542

| | |
|---|---|
| Shopper ID: | 112120542 |
| Domain Name: | carringtondiaries.com |
| Registrar: | GoDaddy.com, LLC |
| Registration Period: | 1 |
| Create Date: | 9/24/2015 10:39:58 AM |
| Expiration Date: | |
| Update Date: | |
| Transfer Away Eligibility Date: | 11/23/2015 10:39:52 AM |
| Status: | 165 Cancelled - Never Transferred |
| Is Certified Domain: | False |
| Gaining Registrar Name: | |
| Transferred Away Date: | |
| Last Modified: | 10/26/2015 2:36:46 AM |
| Custom DNS: | No |
| Name Servers: | |
| Auto Renew: | Yes |
| Renew Period: | 0 |

### Registrant Contact

| | |
|---|---|
| Name: | Rovier Carrington |
| Company: | |
| Email: | roviercarrington@gmail.com |
| Address 1: | ▮▮▮▮▮▮▮ |
| Address 2: | |
| City: | Beverly Hills |
| State/Province: | California |
| Postal Code: | 90210 |
| Country: | United States |
| Phone: | +1.8188566417 |
| Fax: | |
| Modify Time: | 9/24/2015 10:39:58 AM |

### Technical Contact

| | |
|---|---|
| Name: | Rovier Carrington |
| Company: | |
| Email: | roviercarrington@gmail.com |
| Address 1: | ▮▮▮▮▮▮▮ |
| Address 2: | |
| City: | Beverly Hills |
| State/Province: | California |
| Postal Code: | 90210 |
| Country: | United States |
| Phone: | +1.8188566417 |
| Fax: | |
| Modify Time: | 9/24/2015 10:39:58 AM |

### Administrative Contact

| | |
|---|---|
| Name: | Rovier Carrington |
| Company: | |
| Email: | roviercarrington@gmail.com |
| Address 1: | ▮▮▮▮▮▮▮ |
| Address 2: | |
| City: | Beverly Hills |
| State/Province: | California |
| Postal Code: | 90210 |
| Country: | United States |
| Phone: | +1.8188566417 |
| Fax: | |
| Modify Time: | 9/24/2015 10:39:58 AM |

### Billing Contact

| | |
|---|---|
| Name: | Rovier Carrington |
| Company: | |
| Email: | roviercarrington@gmail.com |
| Address 1: | 13000 Mulholland Dr |
| Address 2: | |
| City: | Beverly Hills |
| State/Province: | California |
| Postal Code: | 90210 |
| Country: | United States |
| Phone: | +1.8188566417 |
| Fax: | |
| Modify Time: | 9/24/2015 10:39:58 AM |

CONFIDENTIAL

GD 000004

# Domain Information for Shopper ID 112120542

| | |
|---|---|
| Shopper ID: | 112120542 |
| Domain Name: | thecarringtondiaries.com |
| Registrar: | GoDaddy.com, LLC |
| Registration Period: | 2 |
| Create Date: | 9/26/2015 4:55:56 PM |
| Expiration Date: | 9/26/2018 4:55:56 PM |
| Update Date: | 11/7/2018 3:04:10 AM |
| Transfer Away Eligibility Date: | 11/10/2018 4:55:56 PM |
| Status: | 8 Cancelled |
| Is Certified Domain: | False |
| Gaining Registrar Name: | |
| Transferred Away Date: | |
| Last Modified: | 12/6/2018 4:04:28 AM |
| Custom DNS: | No |
| Name Servers: | ns05.domaincontrol.com |
| | ns06.domaincontrol.com |
| Auto Renew: | Yes |
| Renew Period: | 0 |

## Registrant Contact

| | |
|---|---|
| Name: | Rovier Carrington |
| Company: | Carrington Diaries |
| Email: | RovierCarrington@gmail.com |
| Address 1: | ███████████ |
| Address 2: | |
| City: | Beverly Hills |
| State/Province: | California |
| Postal Code: | 90210 |
| Country: | US |
| Phone: | +1.4243322488 |
| Fax: | |
| Modify Time: | 8/10/2018 6:37:55 AM |

## Technical Contact

| | |
|---|---|
| Name: | Rovier Carrington |
| Company: | Carrington Diaries |
| Email: | RovierCarrington@gmail.com |
| Address 1: | ███████████ |
| Address 2: | |
| City: | Beverly Hills |
| State/Province: | California |
| Postal Code: | 90210 |
| Country: | US |
| Phone: | +1.4243322488 |
| Fax: | |
| Modify Time: | 8/10/2018 6:37:55 AM |

## Administrative Contact

| | |
|---|---|
| Name: | Rovier Carrington |
| Company: | Carrington Diaries |
| Email: | RovierCarrington@gmail.com |
| Address 1: | ███████████ |
| Address 2: | |
| City: | Beverly Hills |
| State/Province: | California |
| Postal Code: | 90210 |
| Country: | US |
| Phone: | +1.4243322488 |
| Fax: | |
| Modify Time: | 8/10/2018 6:37:55 AM |

## Billing Contact

| | |
|---|---|
| Name: | Rovier Carrington |
| Company: | Carrington Diaries |
| Email: | RovierCarrington@gmail.com |
| Address 1: | ███████████ |
| Address 2: | |
| City: | Beverly Hills |
| State/Province: | California |
| Postal Code: | 90210 |
| Country: | US |
| Phone: | +1.4243322488 |
| Fax: | |
| Modify Time: | 8/10/2018 6:37:55 AM |

CONFIDENTIAL

GD 000005

# Contact Audit History

## thecarringtondiaries.com

| Modified | Origin | Note |
|---|---|---|
| 8/10/2018 6:37:55 AM | Contact update: Shopper-112120542 | Billing info updated from: Rovier\|Carrington\|RovierCarrington@gmail.com \|Carrington Diaries ██████████ Dr.\|\|Beverly Hills\|California\|90210\|United States\|+1.4245222401\|\| |
| 8/10/2018 6:37:55 AM | Contact update: Shopper-112120542 | Administrative info updated from: Rovier\|Carrington\|RovierCarrington@gmail.com \|Carrington Diaries ██████████ Dr.\|\|Beverly Hills\|California\|90210\|United States\|+1.4245222401\|\| |
| 8/10/2018 6:37:55 AM | Contact update: Shopper-112120542 | Technical info updated from: Rovier\|Carrington\|RovierCarrington@gmail.com \|Carrington Diaries ██████████ Dr.\|\|Beverly Hills\|California\|90210\|United States\|+1.4245222401\|\| |
| 8/10/2018 6:37:55 AM | Contact update: Shopper-112120542 | Registrant info updated from: Rovier\|Carrington\|RovierCarrington@gmail.com \|Carrington Diaries ██████████ Dr.\|\|Beverly Hills\|California\|90210\|United States\|+1.4245222401\|\| |
| 6/15/2018 1:59:53 PM | Contact update: Shopper-112120542 | Billing info updated from: Rovier\|Carrington\|RovierCarrington@gmail.com \|Carrington Diaries ██████████ Dr.\|\|Beverly Hills\|California\|90210\|United States\|+1.8188566417\|\| |
| 6/15/2018 1:59:53 PM | Contact update: Shopper-112120542 | Administrative info updated from: Rovier\|Carrington\|RovierCarrington@gmail.com \|Carrington Diaries\| ██████████ Dr.\|\|Beverly Hills\|California\|90210\|United States\|+1.8188566417\|\| |
| 6/15/2018 1:59:53 PM | Contact update: Shopper-112120542 | Technical info updated from: Rovier\|Carrington\|RovierCarrington@gmail.com \|Carrington Diaries ██████████ Dr.\|\|Beverly Hills\|California\|90210\|United States\|+1.8188566417\|\| |
| 6/15/2018 1:59:53 PM | Contact update: Shopper-112120542 | Registrant info updated from: Rovier\|Carrington\|RovierCarrington@gmail.com \|Carrington Diaries ██████████ Dr.\|\|Beverly Hills\|California\|90210\|United States\|+1.8188566417\|\| |
| 8/3/2017 8:30:04 PM | Contact update: Shopper-112120542 | Billing info updated from: Rovier\|Carrington\|RovierCarrington@gmail.com \|Carrington Diarie ██████████ Dr.\|\|Beverly Hills\|California\|90210\|United States\|+1.8188566417\|\| |
| 8/3/2017 8:30:04 PM | Contact update: Shopper-112120542 | Administrative info updated from: Rovier\|Carrington\|RovierCarrington@gmail.com \|Carrington Diaries ██████████ Dr.\|\|Beverly Hills\|California\|90210\|United States\|+1.8188566417\|\| |

CONFIDENTIAL

GD 000006

## Contact Audit History
### thecarringtondiaries.com

| Modified | Origin | Note |
|---|---|---|
| 8/3/2017 8:30:04 PM | Contact update: Shopper-112120542 | Technical info updated from: Rovier\|Carrington\|RovierCarrington@gmail.com \|Carrington Diaries\|███████\| Dr.\|\|Beverly Hills\|California\|90210\|United States\|+1.8188566417\|\| |
| 8/3/2017 8:30:04 PM | Contact update: Shopper-112120542 | Registrant info updated from: Rovier\|Carrington\|RovierCarrington@gmail.com \|Carrington Diaries\|███████\| Dr.\|\|Beverly Hills\|California\|90210\|United States\|+1.8188566417\|\| |
| 8/3/2017 8:28:14 PM | Contact update: Shopper-112120542 | Billing info updated from: Rovier\|Carrington\|RovierCarrington@gmail.com \|Carrington Diaries\|███████\| Dr.\|\|Beverly Hills\|California\|90210\|United States\|+1.8188566417\|\| |
| 8/3/2017 8:28:13 PM | Contact update: Shopper-112120542 | Administrative info updated from: Rovier\|Carrington\|RovierCarrington@gmail.com \|Carrington Diaries\|███████\| Dr.\|\|Beverly Hills\|California\|90210\|United States\|+1.8188566417\|\| |
| 8/3/2017 8:28:13 PM | Contact update: Shopper-112120542 | Technical info updated from: Rovier\|Carrington\|RovierCarrington@gmail.com \|Carrington Diaries\|███████\| Dr.\|\|Beverly Hills\|California\|90210\|United States\|+1.8188566417\|\| |
| 8/3/2017 8:28:12 PM | Contact update: Shopper-112120542 | Registrant info updated from: Rovier\|Carrington\|RovierCarrington@gmail.com \|Carrington Diaries\|███████\| Dr.\|\|Beverly Hills\|California\|90210\|United States\|+1.8188566417\|\| |
| 8/3/2017 8:27:22 PM | Domain Registration - Contact. : Updated by:ppp_writeDomainRegistration_sp;REQUEST EDBY:881998014 fulfillment;IP:P3PWGDCOMM001 | Billing info updated from: Rovier\|Carrington\|RovierCarrington@gmail.com \|Carrington Diaries\|███████\| Dr.\|\|Beverly Hills\|California\|90210\|United States\|+1.8188566417\|\| |
| 8/3/2017 8:27:22 PM | Domain Registration - Contact. : Updated by:ppp_writeDomainRegistration_sp;REQUEST EDBY:881998014 fulfillment;IP:P3PWGDCOMM001 | Administrative info updated from: Rovier\|Carrington\|RovierCarrington@gmail.com \|Carrington Diaries\|███████\| Dr.\|\|Beverly Hills\|California\|90210\|United States\|+1.8188566417\|\| |
| 8/3/2017 8:27:22 PM | Domain Registration - Contact. : Updated by:ppp_writeDomainRegistration_sp;REQUEST EDBY:881998014 fulfillment;IP:P3PWGDCOMM001 | Technical info updated from: Rovier\|Carrington\|RovierCarrington@gmail.com \|Carrington Diaries\|███████\| Dr.\|\|Beverly Hills\|California\|90210\|United States\|+1.8188566417\|\| |
| 8/3/2017 8:27:22 PM | Domain Registration - Contact. : Updated by:ppp_writeDomainRegistration_sp;REQUEST EDBY:881998014 fulfillment;IP:P3PWGDCOMM001 | Registrant info updated from: Rovier\|Carrington\|RovierCarrington@gmail.com \|Carrington Diaries\|███████\| Dr.\|\|Beverly Hills\|California\|90210\|United States\|+1.8188566417\|\| |

CONFIDENTIAL

GD 000007

## Notes for Shopper ID 112120542
## 9/13/2015 to 3/1/2019

| Entered Date / By | Note |
|---|---|
| 2/23/2019 2:46:01 PM / Volding, Aaron / Client IP: GoDaddy Internal | regarding O365 Email<br><br>Additional Comments:<br>Is involved in a matter where someone is trying to get a subpoena for the contents of an O365 account that was removed 5 months ago, wanted an email stating that the data wasn't recoverable at this point. Showed where to find subpoena info on the legal section of our site, advised to go there for anything official. |
| 2/23/2019 2:35:20 PM / Volding, Aaron / Client IP: GoDaddy Internal | Aaron Volding accessed account with reason "General/Research". Shopper PIN. |
| 2/23/2019 2:35:00 PM / Auth Platform / Client IP: GoDaddy Internal | Shopper 112120542 was impersonated by Aaron Volding, employee avolding |
| 9/20/2018 9:34:51 AM / Hossain, Mohammed / Client IP: GoDaddy Internal | spoke with Rovier Carrington CB# +1.4245222401 regarding Account Settings Account<br><br>Additional Comments:<br>needed to know if we have a back up of his deleted O365 email. we dont. |
| 9/20/2018 9:32:16 AM / Hossain, Mohammed / Client IP: GoDaddy Internal | Mohammed Hossain accessed account with reason "Interactions". Validation was skipped via Interaction Authorization. |
| 9/20/2018 9:32:00 AM / Auth Platform / Client IP: GoDaddy Internal | Shopper 112120542 was impersonated by Mohammed Hossain, employee mohammed5411 |
| 9/20/2018 9:32:00 AM / Auth Platform / Client IP: GoDaddy Internal | Shopper 112120542 was impersonated by Mohammed Hossain, employee mohammed5411 |
| 9/20/2018 9:32:00 AM / Auth Platform / Client IP: GoDaddy Internal | Shopper 112120542 was impersonated by Mohammed Hossain, employee mohammed5411 |
| 9/20/2018 9:32:00 AM / Auth Platform / Client IP: GoDaddy Internal | Shopper 112120542 was impersonated by Mohammed Hossain, employee mohammed5411 |
| 9/20/2018 9:32:00 AM / Auth Platform / Client IP: GoDaddy Internal | Shopper 112120542 was impersonated by Mohammed Hossain, employee mohammed5411 |
| 9/20/2018 9:32:00 AM / Auth Platform / Client IP: GoDaddy Internal | Shopper 112120542 was impersonated by Mohammed Hossain, employee mohammed5411 |
| 9/20/2018 9:19:15 AM / Service, Interaction / Client IP: GoDaddy Internal | Interaction Service accessed account with reason "Customer Called". Shopper PIN. |
| 9/20/2018 9:14:38 AM / Mesina, John Carlo / Client IP: GoDaddy Internal | helped  regarding unknown unknown<br><br>Additional Comments:<br>cx can't access the account |
| 9/20/2018 9:08:22 AM / Mesina, John Carlo / Client IP: GoDaddy Internal | Requested a 1-time validation code to be sent to mobile_sms |
| 9/20/2018 9:08:00 AM / Auth Platform / Client IP: GoDaddy Internal | Shopper 112120542 has been sent a temporary access code at mobile_sms by agent |
| 9/20/2018 8:53:07 AM / Principe, Eduard / Client IP: GoDaddy Internal | helped  regarding unknown unknown<br><br>Additional Comments:<br>not validated. |
| 9/20/2018 8:02:00 AM / Auth Platform / Client IP: GoDaddy Internal | Shopper 112120542 has been sent a pw reset email |
| 9/8/2018 5:02:36 PM / Customer / Client IP: 76.218.247.56 | wordpress: Deluxe Managed WordPress Websites (287140217) (6849adff-5b23-11e5-8b24-14feb5d9f2e6) entered account |

CONFIDENTIAL                    GD 000008

**Notes for Shopper ID 112120542**
**9/13/2015 to 3/1/2019**

| Entered Date / By | Note |
|---|---|
| 9/8/2018 4:58:47 PM / Customer / Client IP: 76.218.247.56 | Managed WordPress (Manage All) account accessed |
| 9/8/2018 4:58:03 PM / Customer / Client IP: 76.218.247.56 | Domains (Manage All) account accessed |
| 9/8/2018 4:57:15 PM / Customer / Client IP: 76.218.247.56 | wordpress: Deluxe Managed WordPress Websites (287140217) (6849adff-5b23-11e5-8b24-14feb5d9f2e6) entered account |
| 9/8/2018 10:16:31 AM / / Client IP: GoDaddy Internal | Cancellation Email Sent. ResourceID: 289596364, Namespace: prtnremail |
| 9/8/2018 10:16:29 AM / WorkspaceProvisioning / Client IP: GoDaddy Internal | request submitted to remove mailbox with email address: Rovier@thecarringtondiaries.com from account: 05f967f8-710a-11e5-8d27-14feb5d9f2e6 by FirstNameUnknown LastNameUnknown |
| 9/8/2018 10:16:28 AM / Customer / Client IP: 76.218.247.56 | Cancelling: Email Essentials - 1 year OrderID: 888255082 RowID: 0 Namespace:prtnremail ResourceID: 289596364 |
| 9/8/2018 10:15:28 AM / / Client IP: GoDaddy Internal | Cancellation Email Sent. ResourceID: 287140217, Namespace: wpaas |
| 9/8/2018 10:15:27 AM / Customer / Client IP: 76.218.247.56 | Cancelling: Deluxe Managed WordPress Websites - 1 Year OrderID: 877261042 RowID: 0 Namespace:wpaas ResourceID: 287140217 |
| 9/8/2018 10:14:30 AM / / Client IP: GoDaddy Internal | Cancellation Email Sent. ResourceID: 200166582, Namespace: domain |
| 9/8/2018 10:14:29 AM / Customer / Client IP: 76.218.247.56 | Cancelling: .COM Domain Name Registration - 1 Year (recurring) OrderID: 881998014 RowID: 0 Namespace:domain ResourceID: 200166582 |
| 9/8/2018 10:14:29 AM / Customer / Client IP: 76.218.247.56 | Cancelling: Email Forwarding - 100 Pack OrderID: 881998014 RowID: 0 Namespace:emailfwd ResourceID: 318364786 |
| 9/1/2018 2:36:34 AM / Customer / Client IP: 76.218.247.56 | emailAndOffice: Office 365 Email Essentials (289596364) (05f967f8-710a-11e5-8d27-14feb5d9f2e6) entered account |
| 8/31/2018 7:37:32 PM / WorkspaceProvisioning / Client IP: GoDaddy Internal | request submitted to update Office365 password for email address: Rovier@thecarringtondiaries.com by Rovier Carrington (112120542) |
| 8/15/2018 11:15:18 AM / WorkspaceProvisioning / Client IP: GoDaddy Internal | request submitted to update Office365 password for email address: Rovier@thecarringtondiaries.com by Rovier Carrington (112120542) |
| 8/13/2018 5:30:46 AM / Customer / Client IP: 76.218.247.56 | emailAndOffice: Office 365 Email Essentials (289596364) (05f967f8-710a-11e5-8d27-14feb5d9f2e6) entered account |
| 8/12/2018 10:31:18 PM / WorkspaceProvisioning / Client IP: GoDaddy Internal | request submitted to update Office365 password for email address: Rovier@thecarringtondiaries.com by Rovier Carrington (112120542) |
| 8/10/2018 10:11:35 PM / Customer / Client IP: 76.218.247.56 | emailAndOffice: Office 365 Email Essentials (289596364) (05f967f8-710a-11e5-8d27-14feb5d9f2e6) entered account |
| 8/10/2018 3:12:07 PM / WorkspaceProvisioning / Client IP: GoDaddy Internal | request submitted to update Office365 password for email address: Rovier@thecarringtondiaries.com by Rovier Carrington (112120542) |
| 8/10/2018 6:37:56 AM / Customer / Client IP: 76.218.247.56 | DCC domain contact update requested thecarringtondiaries.com (ID=200166582) |
| 8/9/2018 10:35:54 PM / Customer / Client IP: 76.218.247.56 | emailAndOffice: Office 365 Email Essentials (289596364) (05f967f8-710a-11e5-8d27-14feb5d9f2e6) entered account |
| 6/30/2018 12:01:10 AM / Customer / Client IP: 76.218.247.56 | emailAndOffice: Office 365 Email Essentials (289596364) (05f967f8-710a-11e5-8d27-14feb5d9f2e6) entered account |
| 6/29/2018 11:33:26 PM / Customer / Client IP: 76.218.247.56 | emailAndOffice: Office 365 Email Essentials (289596364) (05f967f8-710a-11e5-8d27-14feb5d9f2e6) entered account |
| 6/29/2018 10:55:44 PM / Customer / Client IP: 76.218.247.56 | emailAndOffice: Office 365 Email Essentials (289596364) (05f967f8-710a-11e5-8d27-14feb5d9f2e6) entered account |

CONFIDENTIAL

GD 000009

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 315

## Notes for Shopper ID 112120542
## 9/13/2015 to 3/1/2019

| Entered Date / By | Note |
|---|---|
| 6/29/2018 10:43:06 PM / Customer / Client IP: 76.218.247.56 | emailAndOffice: Office 365 Email Essentials (289596364) (05f967f8-710a-11e5-8d27-14feb5d9f2e6) entered account |
| 6/29/2018 3:56:18 PM / WorkspaceProvisioning / Client IP: GoDaddy Internal | request submitted to update Office365 password for email address: Rovier@thecarringtondiaries.com by Rovier Carrington (112120542) |
| 6/29/2018 3:43:38 PM / WorkspaceProvisioning / Client IP: GoDaddy Internal | request submitted to update Office365 password for email address: Rovier@thecarringtondiaries.com by Rovier Carrington (112120542) |
| 6/29/2018 2:37:04 PM / Customer / Client IP: 76.218.247.56 | emailAndOffice: Office 365 Email Essentials (289596364) (05f967f8-710a-11e5-8d27-14feb5d9f2e6) entered account |
| 6/20/2018 1:04:10 AM / Customer / Client IP: 76.218.247.56 | domains: .COM Domain Registration (288260632) (200166582) entered account |
| 6/20/2018 1:02:39 AM / Customer / Client IP: 76.218.247.56 | Managed WordPress (Manage All) account accessed |
| 6/20/2018 1:00:56 AM / Customer / Client IP: 76.218.247.56 | domains: .COM Domain Registration (288260632) (200166582) entered account |
| 6/15/2018 8:30:23 PM / Customer / Client IP: 76.218.247.56 | Domains (Manage All) account accessed |
| 6/15/2018 8:18:22 PM / Customer / Client IP: 76.218.247.56 | emailAndOffice: Office 365 Email Essentials (289596364) (05f967f8-710a-11e5-8d27-14feb5d9f2e6) entered account |
| 6/15/2018 1:59:54 PM / Customer / Client IP: 76.218.247.56 | DCC domain contact update requested thecarringtondiaries.com (ID=200166582) |
| 6/15/2018 1:28:00 PM / Customer / Client IP: 76.218.247.56 | New contact.address.address1: "13100 Mulholland Dr." I New preference.marketId: "en-US" I New preference.currency: "USD" |
| 6/15/2018 1:22:44 PM / Customer / Client IP: 76.218.247.56 | Email &amp; Office:289596364 (05f967f8-710a-11e5-8d27-14feb5d9f2e6) - Entered Account |
| 2/21/2018 5:28:14 PM / Customer / Client IP: 76.218.247.56 | emailAndOffice: Office 365 Email Essentials (289596364) (05f967f8-710a-11e5-8d27-14feb5d9f2e6) entered account |
| 2/21/2018 10:29:59 AM / WorkspaceProvisioning / Client IP: GoDaddy Internal | request submitted to update password for email address: Rovier@thecarringtondiaries.com by Rovier Carrington (112120542) |
| 10/12/2017 6:49:57 AM / gdBAEmail.Email / Client IP: GoDaddy Internal | Success Email for Order: 1201735345 sent to: rovier@thecarringtondiaries.com, using primary payment method. |
| 10/2/2017 12:35:03 PM / / Client IP: GoDaddy Internal | Sending renewal notice to shopper 112120542 for 1 NonDomain resource(s) set to expire on Oct. 12, 2017 |
| 9/26/2017 11:09:58 PM / RegHerculesSvc / Client IP: GoDaddy Internal | Setting AutoRenew = 1: .COM Domain Name Registration - 1 Year (recurring) OrderID: 881998014 RowID: 0 Namespace:domain resourceID: 200166582 |
| 9/26/2017 8:44:41 PM / RegAgentSvc / Client IP: GoDaddy Internal | Domain name thecarringtondiaries.com renewed by RegAgentSvc on 09/26/2017 20:44:41 |
| 9/26/2017 8:44:37 PM / Customer / Client IP: 76.218.247.56 | New preference.marketId: "en-US" |
| 9/21/2017 5:13:39 AM / GenerateRenewals / Client IP: GoDaddy Internal | Sending renewal notice to shopper 112120542 for 1 Domain resource(s) set to expire on Sep. 26, 2017 |
| 9/14/2017 3:24:24 AM / gdBAEmail.Email / Client IP: GoDaddy Internal | Success Email for Order: 1188647813 sent to: rovier@thecarringtondiaries.com;roviercarrington@gmail.com, using primary payment method. |
| 9/11/2017 5:22:56 AM / RenewalNotice / Client IP: GoDaddy Internal | [Namespace=Renewals/Type=DomainRenewalAllAuto] Sending renewal notice to shopper 112120542 for 1 Domain resource(s) set to expire around Sep. 26, 2017. Email BatchID=536868641. Payment profiles are current. |
| 9/4/2017 10:41:45 AM / / Client IP: GoDaddy Internal | Sending renewal notice to shopper 112120542 for 1 NonDomain resource(s) set to expire on Sep. 14, 2017 |

CONFIDENTIAL

GD 000010

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 316

# Notes for Shopper ID 112120542
## 9/13/2015 to 3/1/2019

| Entered Date / By | Note |
|---|---|
| 8/27/2017 3:53:28 AM / RenewalNotice / Client IP: GoDaddy Internal | [Namespace=Renewals/Type=DomainRenewalAllAuto] Sending renewal notice to shopper 112120542 for 1 Domain resource(s) set to expire around Sep. 26, 2017. Email BatchID=531971364. Payment profiles are current. |
| 8/3/2017 8:30:33 PM / Customer / Client IP: 76.218.247.56 | contact.phoneMobile Old: "+1.4243322383", New: "+1.4245222401" | contact.phoneWork Old: "+1.4243322383", New: "+1.4245222401" |
| 8/3/2017 8:30:04 PM / Customer / Client IP: 76.218.247.56 | DCC domain contact update requested thecarringtondiaries.com (ID=200166582) |
| 8/3/2017 8:28:14 PM / Customer / Client IP: 76.218.247.56 | DCC domain contact update requested thecarringtondiaries.com (ID=200166582) |
| 8/3/2017 8:27:23 PM / Customer / Client IP: 76.218.247.56 | DCC domain contact update requested thecarringtondiaries.com (ID=200166582) |
| 7/28/2017 3:58:41 AM / RenewalNotice / Client IP: GoDaddy Internal | [Namespace=Renewals/Type=DomainRenewalAllAuto] Sending renewal notice to shopper 112120542 for 1 Domain resource(s) set to expire around Sep. 26, 2017. Email BatchID=522051766. Payment profiles are current. |
| 6/28/2017 3:56:50 AM / RenewalNotice / Client IP: GoDaddy Internal | [Namespace=Renewals/Type=DomainRenewalAllAuto] Sending renewal notice to shopper 112120542 for 1 Domain resource(s) set to expire around Sep. 26, 2017. Email BatchID=512089003. Payment profiles are current. |
| 10/12/2016 5:34:57 AM / gdBAEmail.Email / Client IP: GoDaddy Internal | Success Email for Order: 1038524471 sent to: rovier@thecarringtondiaries.com;roviercarrington@gmail.com, using primary payment method. |
| 10/2/2016 11:27:27 AM / Customer / Client IP: 76.218.247.56 | Managed WordPress Websites:287140217 (6849adff-5b23-11e5-8b24-14feb5d9f2e6) - Entered Account |
| 10/2/2016 6:32:47 AM / RenewalNoticeSvc / Client IP: GoDaddy Internal | Sending renewal notice to shopper 112120542 for 1 NonDomain resource(s) set to expire on Oct. 12, 2016 |
| 9/27/2016 8:09:42 AM / RegHerculesSvc / Client IP: GoDaddy Internal | Setting AutoRenew = 1: THECARRINGTONDIARIES.COM OrderID: 881998014 RowID: 0 Namespace:domain ResourceID: 200166582 |
| 9/27/2016 8:09:33 AM / RegAgentSvc / Client IP: GoDaddy Internal | Domain name thecarringtondiaries.com renewed - minus 1 year(s) - by RegAgentSvc on 09/27/2016 08:09:33 |
| 9/27/2016 8:06:42 AM / gdBAEmail.Email / Client IP: GoDaddy Internal | Success Email for Order: 1032370178 sent to: rovier@thecarringtondiaries.com;roviercarrington@gmail.com, using primary payment method. |
| 9/23/2016 1:29:37 PM / Customer / Client IP: 76.218.247.56 | Domains:0 - Entered Account |
| 9/23/2016 1:25:56 PM / Customer / Client IP: 76.218.247.56 | Managed WordPress Websites:0 - Entered Account |
| 9/21/2016 5:22:52 AM / GenerateRenewals / Client IP: GoDaddy Internal | Sending renewal notice to shopper 112120542 for 1 Domain resource(s) set to expire on Sep. 26, 2016 |
| 9/14/2016 12:53:37 PM / Trenton S Fish / Client IP: GoDaddy Internal | A customer survey was automatically sent for Trenton S Fish |
| 9/14/2016 12:53:22 PM / Fish, Trent / Client IP: GoDaddy Internal | questions on hosting charge. |
| 9/14/2016 12:51:12 PM / Customer / Client IP: 76.218.247.56 | Domains:0 - Entered Account |
| 9/14/2016 12:50:43 PM / Fish, Trent / Client IP: GoDaddy Internal | Trent Fish accessed account with reason "General/Research". Shopper PIN. |
| 9/14/2016 12:41:22 PM / gdBAEmail.Email / Client IP: GoDaddy Internal | Success Email for Order: 1026785173 sent to: rovier@thecarringtondiaries.com;roviercarrington@gmail.com, using primary payment method. |
| 9/11/2016 5:00:20 AM / RenewalNotice / Client IP: GoDaddy Internal | [Namespace=Renewals/Type=DomainRenewalAllAuto] Sending renewal notice to shopper 112120542 for 1 Domain resource(s) set to expire around Sep. 26, 2016. Email BatchID=417630052. Payment profiles are current. |

CONFIDENTIAL

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 317

## Notes for Shopper ID 112120542
## 9/13/2015 to 3/1/2019

| Entered Date / By | Note |
|---|---|
| 9/4/2016 6:31:47 AM / RenewalNoticeSvc / Client IP: GoDaddy Internal | Sending renewal notice to shopper 112120542 for 1 NonDomain resource(s) set to expire on Sep. 14, 2016 |
| 8/27/2016 4:17:12 AM / RenewalNotice / Client IP: GoDaddy Internal | [Namespace=Renewals/Type=DomainRenewalAllAuto] Sending renewal notice to shopper 112120542 for 1 Domain resource(s) set to expire around Sep. 26, 2016. Email BatchID=413253629. Payment profiles are current. |
| 8/16/2016 8:17:13 AM / 112120542 / Client IP: | wpaas:287140217-Profile Update |
| 8/16/2016 8:17:13 AM / 112120542 / Client IP: | Billing:200166582-Profile Update |
| 8/16/2016 7:50:37 AM / Lance G Huber / Client IP: GoDaddy Internal | A customer survey was automatically sent for Lance G Huber |
| 8/16/2016 7:50:33 AM / lghuber / Client IP: GoDaddy Internal | Hosting Support - Service: Managed WordPress - GUID: 6849adff-5b23-11e5-8b24-14feb5d9f2e6 - Note: Caller: Rovier<br>Callback Number: (424) 332-2383<br><br>Notes: Customer reports they are being charged twice for their hosting.<br><br>Found they mean they were charged by another provider that they don't seem to be using<br><br>DID NOT OFFER: N/A |
| 8/16/2016 7:49:02 AM / Manager: Lance G Huber / Client IP: GoDaddy Internal | CRM user 10533 - Lance G Huber has entered DCC5 accessing shopper 112120542. |
| 8/16/2016 7:48:58 AM / Manager: Lance G Huber / Client IP: GoDaddy Internal | CRM user 10533 - Lance G Huber has entered DCC5 accessing shopper 112120542. |
| 8/16/2016 7:45:58 AM / Huber, Lance / Client IP: GoDaddy Internal | Lance Huber accessed account with reason "Interactions". Validation was skipped via Interaction Authorization. |
| 8/16/2016 7:45:14 AM / Service, Interaction / Client IP: GoDaddy Internal | Interaction Service accessed account with reason "Customer Called". Shopper PIN. |
| 8/15/2016 5:20:14 PM / Customer / Client IP: 76.218.247.56 | Managed WordPress:0 - Entered Account |
| 8/15/2016 1:01:39 PM / Customer / Client IP: 76.218.247.56 | Workspace Email:0 - Entered Account |
| 8/15/2016 12:34:07 PM / Customer / Client IP: 76.218.247.56 | Managed WordPress:287140217 (6849adff-5b23-11e5-8b24-14feb5d9f2e6) - Entered Account |
| 8/15/2016 12:32:49 PM / Customer / Client IP: 76.218.247.56 | Managed WordPress:287140217 (6849adff-5b23-11e5-8b24-14feb5d9f2e6) - Entered Account |
| 8/7/2016 2:37:12 AM / Customer / Client IP: 76.218.247.56 | Updated Shopper profile via Shopper API |
| 8/6/2016 7:46:22 PM / 112120542 / Client IP: | prtnremail:289596364-Profile Update |
| 8/6/2016 7:44:01 PM / PaymentProfile / Client IP: GoDaddy Internal | PaymentProfile: Deactivating credit_card account ending in 4174 (profile 56863607); |
| 8/6/2016 7:44:01 PM / 112120542 / Client IP: | prtnremail:289596364-Profile Update |
| 8/6/2016 7:35:02 PM / Customer / Client IP: 76.218.247.56 | Managed WordPress:0 - Entered Account |
| 8/6/2016 7:33:53 PM / Customer / Client IP: 76.218.247.56 | Domains:0 - Entered Account |
| 7/28/2016 7:10:09 AM / RenewalNotice / Client IP: GoDaddy Internal | [Namespace=Renewals/Type=DomainRenewalAllAuto] Sending renewal notice to shopper 112120542 for 1 Domain resource(s) set to expire around Sep. 26, 2016. Email BatchID=404221247. Payment profiles are current. |

CONFIDENTIAL

GD 000012

# Notes for Shopper ID 112120542
## 9/13/2015 to 3/1/2019

| Entered Date / By | Note |
|---|---|
| 6/28/2016 4:26:53 AM / RenewalNotice / Client IP: GoDaddy Internal | [Namespace=Renewals/Type=DomainRenewalAllAuto] Sending renewal notice to shopper 112120542 for 1 Domain resource(s) set to expire around Sep. 26, 2016. Email BatchID=395081781. Payment profiles are current. |
| 1/14/2016 1:36:40 AM / Customer / Client IP: 76.218.247.56 | Updated Shopper profile via Shopper API |
| 10/26/2015 2:37:29 AM / / Client IP: GoDaddy Internal | Cancellation Email Sent. ResourceID: 200039802, Namespace: domain |
| 10/26/2015 2:37:29 AM / / Client IP: GoDaddy Internal | Cancellation Email Sent. ResourceID: 200039802, Namespace: domain |
| 10/26/2015 2:37:25 AM / DomainNotificat / Client IP: GoDaddy Internal | Cancelling: CARRINGTONDIARIES.COM OrderID: 881234871 RowID: 0 Namespace:domain ResourceID: 200039802 |
| 10/26/2015 2:37:25 AM / RegHerculesSvc / Client IP: GoDaddy Internal | Cancelling: CARRINGTONDIARIES.COM OrderID: 881234871 RowID: 0 Namespace:domain ResourceID: 200039802 |
| 10/26/2015 2:36:46 AM / Expired Transfer Cancellation Job / Client IP: GoDaddy Internal | NOTE: carringtondiaries.com transfer failed and is over 30 days old.  CANNOT RETRY - Oct 26 2015  2:36:46:170AM |
| 10/12/2015 11:16:46 AM / Fraud Auto Verify - Service / Client IP: GoDaddy Internal | Marked as VERIFIED NO FRAUD. |
| 10/12/2015 10:59:42 AM / WorkspaceProvisioning / Client IP: GoDaddy Internal | request submitted to create mailbox with email address: Rovier@thecarringtondiaries.com from account: 05f967f8-710a-11e5-8d27-14feb5d9f2e6 by Rovier Carrington (112120542) |
| 10/12/2015 9:41:47 AM / Customer / Client IP: 76.218.247.56 | Managed WordPress:0 - Entered Account |
| 10/12/2015 9:39:23 AM / Customer / Client IP: 76.218.247.56 | Workspace Email:0 - Entered Account |
| 9/30/2015 2:44:37 PM / Stockstill, Jason / Client IP: GoDaddy Internal | ci-rovier-thecarringtondiaries.com-has wordpress widget for twitter feed, not sure if setup correctly. checked settings and has fields for consumer key and secret that are empty, adv may need to check with widget provider or wp.org for more info |
| 9/30/2015 2:43:22 PM / Jason L Stockstill / Client IP: GoDaddy Internal | A customer survey was automatically sent for Jason L Stockstill |
| 9/30/2015 2:37:44 PM / Jason L. Stockstill / Client IP: GoDaddy Internal | The wpaas control panel was accessed through ToolZilla. |
| 9/30/2015 2:37:11 PM / Stockstill, Jason / Client IP: GoDaddy Internal | Jason Stockstill accessed account with reason "General/Research". Shopper PIN. |
| 9/26/2015 9:24:50 PM / zhuether / Client IP: GoDaddy Internal | Hosting Support - Service: Managed WordPress - GUID: 6849adff-5b23-11e5-8b24-14feb5d9f2e6 - Note: Caller: Rovier<br>Callback Number: No Callback<br><br>Notes: issue with publish site - cust was publishing in the wrong area - cust gtg ended call<br><br>DID NOT OFFER: |
| 9/26/2015 9:22:00 PM / Zane Huether / Client IP: GoDaddy Internal | The wpaas control panel was accessed through ToolZilla. |
| 9/26/2015 9:21:34 PM / Edwards, Jennifer / Client IP: GoDaddy Internal | cci re wp site not publishing. just giving loading circle. cust domain is pointing. sup approved xfer to hosting. cust g2g |
| 9/26/2015 9:21:20 PM / Huether, Zane / Client IP: GoDaddy Internal | Zane Huether accessed account with reason "General/Research". Shopper PIN. |
| 9/26/2015 9:20:57 PM / Jennifer L Edwards / Client IP: GoDaddy Internal | A customer survey was automatically sent for Jennifer L Edwards |

CONFIDENTIAL

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 319

# Notes for Shopper ID 112120542
## 9/13/2015 to 3/1/2019

| Entered Date / By | Note |
|---|---|
| 9/26/2015 9:15:05 PM / Edwards, Jennifer / Client IP: GoDaddy Internal | Jennifer Edwards accessed account with reason "General/Research". Shopper PIN. |
| 9/26/2015 9:15:02 PM / Edwards, Jennifer / Client IP: GoDaddy Internal | Jennifer Edwards accessed account with reason "General/Research". Shopper PIN. |
| 9/26/2015 3:05:11 PM / RegBulkEmailSvc / Client IP: GoDaddy Internal | RegBulkEmailSvc: Sent DomainAddSuccess email for thecarringtondiaries.com to: shopper. |
| 9/26/2015 2:56:05 PM / RegHerculesSvc / Client IP: GoDaddy Internal | Setting AutoRenew = 1: THECARRINGTONDIARIES.COM OrderID: 881998014 RowID: 0 Namespace:domain ResourceID: 200166582 |
| 9/26/2015 2:55:56 PM / RegComEPPSvc / Client IP: GoDaddy Internal | domain name THECARRINGTONDIARIES.COM activated by RegComEPPSvc on 09/26/15 14:55:56 |
| 9/26/2015 7:01:50 PM / RegComEPPSvc / Client IP: GoDaddy Internal | RegComEPPSvc::ProcessTransferToUs: Error (teErrorType=2) trying to transfer domain to gaining registrar. Changing status from 5 (disPendtrans) to 17 (disTransFailedBadAuthInfo). REQUESTEDBY: Registrar Services |
| 9/25/2015 7:01:50 PM / RegComEPPSvc / Client IP: GoDaddy Internal | Sent TransferRequestFail email to shopper 112120542 email address and roviercarrington@gmail.com for carringtondiaries.com changes. |
| 9/25/2015 7:01:33 PM / Customer / Client IP: 172.249.227.204 | DCC domain transfer to retried requested carringtondiaries.com (ID=200039802) |
| 9/25/2015 6:48:07 PM / Smith, Zachary / Client IP: GoDaddy Internal | ci about transfers |
| 9/25/2015 6:48:05 PM / Zachary D Smith / Client IP: GoDaddy Internal | A customer survey was automatically sent for Zachary D Smith |
| 9/25/2015 6:47:38 PM / RegComEPPSvc / Client IP: GoDaddy Internal | RegComEPPSvc::ProcessTransferToUs: Error (teErrorType=2) trying to transfer domain to gaining registrar. Changing status from 5 (disPendtrans) to 17 (disTransFailedBadAuthInfo). REQUESTEDBY: Registrar Services |
| 9/25/2015 6:47:38 PM / RegComEPPSvc / Client IP: GoDaddy Internal | Sent TransferRequestFail email to shopper 112120542 email address and roviercarrington@gmail.com for carringtondiaries.com changes. |
| 9/25/2015 6:47:10 PM / Customer / Client IP: 172.249.227.204 | DCC domain transfer to retried requested carringtondiaries.com (ID=200039802) |
| 9/25/2015 6:45:18 PM / Manager: Zachary D Smith / Client IP: GoDaddy Internal | CRM user 17038 - Zachary D Smith has entered DCC5 accessing shopper 112120542. |
| 9/25/2015 6:44:51 PM / Customer / Client IP: 172.249.227.204 | Domains:0 - Entered Account |
| 9/25/2015 6:43:36 PM / Manager: Zachary D Smith / Client IP: GoDaddy Internal | CRM user 17038 - Zachary D Smith has entered DCC5 accessing shopper 112120542. |
| 9/25/2015 6:43:13 PM / Manager: Zachary D Smith / Client IP: GoDaddy Internal | CRM user 17038 - Zachary D Smith has entered DCC5 accessing shopper 112120542. |
| 9/25/2015 6:43:07 PM / Manager: Zachary D Smith / Client IP: GoDaddy Internal | CRM user 17038 - Zachary D Smith has entered DCC5 accessing shopper 112120542. |
| 9/25/2015 6:42:34 PM / Smith, Zachary / Client IP: GoDaddy Internal | Zachary Smith accessed account with reason "General/Research". Shopper PIN. |
| 9/24/2015 2:22:24 PM / Customer / Client IP: 172.249.227.204 | Managed WordPress:287140217 (6849adff-5b23-11e5-8b24-14feb5d9f2e6) - Entered Account |
| 9/24/2015 1:36:05 PM / Sean J Raya / Client IP: GoDaddy Internal | Marked as VERIFIED NO FRAUD. |
| 9/24/2015 12:11:56 PM / Jerry P Guadiana / Client IP: GoDaddy Internal | A customer survey was automatically sent for Jerry P Guadiana |
| 9/24/2015 12:11:55 PM / Guadiana, Jerry / Client IP: GoDaddy Internal | spke rovier.. complete transfer domain |

CONFIDENTIAL

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 320

## Notes for Shopper ID 112120542
## 9/13/2015 to 3/1/2019

| Entered Date / By | Note |
|---|---|
| 9/24/2015 12:11:27 PM / Manager: Jerry P Guadiana / Client IP: GoDaddy Internal | CRM user 17899 - Jerry P Guadiana has entered DCC5 accessing shopper 112120542. |
| 9/24/2015 12:11:19 PM / RegComEPPSvc / Client IP: GoDaddy Internal | Sent TransferRequestFail email to shopper 112120542 email address and roviercarrington@gmail.com for carringtondiaries.com changes. |
| 9/24/2015 12:11:19 PM / RegComEPPSvc / Client IP: GoDaddy Internal | RegComEPPSvc::ProcessTransferToUs: Error (teErrorType=2) trying to transfer domain to gaining registrar. Changing status from 5 (disPendtrans) to 17 (disTransFailedBadAuthInfo). REQUESTEDBY: Registrar Services |
| 9/24/2015 12:11:12 PM / Manager: Jerry P Guadiana / Client IP: GoDaddy Internal | CRM user 17899 - Jerry P Guadiana has entered DCC5 accessing shopper 112120542. |
| 9/24/2015 12:10:54 PM / Administrator-17899 (Jerry P Guadiana) / Client IP: GoDaddy Internal | DCC domain transfer to retried requested carringtondiaries.com (ID=200039802) |
| 9/24/2015 12:10:07 PM / RegComEPPSvc / Client IP: GoDaddy Internal | RegComEPPSvc::ProcessTransferToUs: Error (teErrorType=2) trying to transfer domain to gaining registrar. Changing status from 5 (disPendtrans) to 17 (disTransFailedBadAuthInfo). REQUESTEDBY: Registrar Services |
| 9/24/2015 12:10:07 PM / RegComEPPSvc / Client IP: GoDaddy Internal | Sent TransferRequestFail email to shopper 112120542 email address and roviercarrington@gmail.com for carringtondiaries.com changes. |
| 9/24/2015 12:09:48 PM / Administrator-17899 (Jerry P Guadiana) / Client IP: GoDaddy Internal | DCC domain transfer to retried requested carringtondiaries.com (ID=200039802) |
| 9/24/2015 12:09:02 PM / Manager: Jerry P Guadiana / Client IP: GoDaddy Internal | CRM user 17899 - Jerry P Guadiana has entered DCC5 accessing shopper 112120542. |
| 9/24/2015 12:08:56 PM / Manager: Jerry P Guadiana / Client IP: GoDaddy Internal | CRM user 17899 - Jerry P Guadiana has entered DCC5 accessing shopper 112120542. |
| 9/24/2015 12:08:55 PM / Manager: Jerry P Guadiana / Client IP: GoDaddy Internal | CRM user 17899 - Jerry P Guadiana has entered DCC5 accessing shopper 112120542. |
| 9/24/2015 12:08:32 PM / RegComEPPSvc / Client IP: GoDaddy Internal | Sent TransferRequestFail email to shopper 112120542 email address and roviercarrington@gmail.com for carringtondiaries.com changes. |
| 9/24/2015 12:08:32 PM / RegComEPPSvc / Client IP: GoDaddy Internal | RegComEPPSvc::ProcessTransferToUs: Error (teErrorType=2) trying to transfer domain to gaining registrar. Changing status from 5 (disPendtrans) to 17 (disTransFailedBadAuthInfo). REQUESTEDBY: Registrar Services |
| 9/24/2015 12:08:22 PM / Manager: Jerry P Guadiana / Client IP: GoDaddy Internal | CRM user 17899 - Jerry P Guadiana has entered DCC5 accessing shopper 112120542. |
| 9/24/2015 12:08:09 PM / Manager: Jerry P Guadiana / Client IP: GoDaddy Internal | CRM user 17899 - Jerry P Guadiana has entered DCC5 accessing shopper 112120542. |
| 9/24/2015 12:08:04 PM / Administrator-17899 (Jerry P Guadiana) / Client IP: GoDaddy Internal | DCC domain transfer to retried requested carringtondiaries.com (ID=200039802) |
| 9/24/2015 12:07:04 PM / Manager: Jerry P Guadiana / Client IP: GoDaddy Internal | CRM user 17899 - Jerry P Guadiana has entered DCC5 accessing shopper 112120542. |
| 9/24/2015 12:06:28 PM / Manager: Jerry P Guadiana / Client IP: GoDaddy Internal | CRM user 17899 - Jerry P Guadiana has entered DCC5 accessing shopper 112120542. |
| 9/24/2015 12:06:28 PM / Manager: Jerry P Guadiana / Client IP: GoDaddy Internal | CRM user 17899 - Jerry P Guadiana has entered DCC5 accessing shopper 112120542. |
| 9/24/2015 12:06:24 PM / Customer / Client IP: 172.249.227.204 | Managed WordPress:0 - Entered Account |
| 9/24/2015 12:05:38 PM / Manager: Jerry P Guadiana / Client IP: GoDaddy Internal | CRM user 17899 - Jerry P Guadiana has entered DCC5 accessing shopper 112120542. |
| 9/24/2015 12:05:33 PM / RegComEPPSvc / Client IP: GoDaddy Internal | RegComEPPSvc::ProcessTransferToUs: Error (teErrorType=2) trying to transfer domain to gaining registrar. Changing status from 5 (disPendtrans) to 17 (disTransFailedBadAuthInfo). REQUESTEDBY: Registrar Services |

CONFIDENTIAL

GD 000015

## Notes for Shopper ID 112120542
### 9/13/2015 to 3/1/2019

| Entered Date / By | Note |
|---|---|
| 9/24/2015 12:05:33 PM / RegComEPPSvc / Client IP: GoDaddy Internal | Sent TransferRequestFail email to shopper 112120542 email address and roviercarrington@gmail.com for carringtondiaries.com changes. |
| 9/24/2015 12:05:31 PM / Manager: Jerry P Guadiana / Client IP: GoDaddy Internal | CRM user 17899 - Jerry P Guadiana has entered DCC5 accessing shopper 112120542. |
| 9/24/2015 12:05:09 PM / Administrator-17899 (Jerry P Guadiana) / Client IP: GoDaddy Internal | DCC domain transfer to accepted requested carringtondiaries.com (ID=200039802) |
| 9/24/2015 12:02:27 PM / Manager: Jerry P Guadiana / Client IP: GoDaddy Internal | CRM user 17899 - Jerry P Guadiana has entered DCC5 accessing shopper 112120542. |
| 9/24/2015 12:02:20 PM / Manager: Jerry P Guadiana / Client IP: GoDaddy Internal | CRM user 17899 - Jerry P Guadiana has entered DCC5 accessing shopper 112120542. |
| 9/24/2015 12:02:19 PM / Manager: Jerry P Guadiana / Client IP: GoDaddy Internal | CRM user 17899 - Jerry P Guadiana has entered DCC5 accessing shopper 112120542. |
| 9/24/2015 12:01:47 PM / Guadiana, Jerry / Client IP: GoDaddy Internal | Jerry Guadiana accessed account with reason "General/Research". Shopper PIN. |
| 9/24/2015 10:40:46 AM / Seren Ozcan / Client IP: GoDaddy Internal | A customer survey was automatically sent for Seren Ozcan |
| 9/24/2015 10:40:36 AM / Ozcan, Seren / Client IP: GoDaddy Internal | Rovier

CI needing to setup a transfer. gtg |
| 9/24/2015 10:40:08 AM / VerifyWhoisSvc / Client IP: GoDaddy Internal | VerifyWhoisSvc: Sent General Transfer email for carringtondiaries.com to: shopper. |
| 9/24/2015 10:40:08 AM / VerifyWhoisSvc / Client IP: GoDaddy Internal | VerifyWhoisSvc: Sent pendAck email for carringtondiaries.com to: registrant, current admin: RovierCarrington@gmail.com. |
| 9/24/2015 10:34:10 AM / Ozcan, Seren / Client IP: GoDaddy Internal | Seren Ozcan accessed account with reason "General/Research". Shopper PIN. |
| 9/22/2015 2:46:38 PM / Trevor B Carr / Client IP: GoDaddy Internal | A customer survey was automatically sent for Trevor B Carr |
| 9/22/2015 2:46:31 PM / tcarr / Client IP: GoDaddy Internal | Hosting Support - Service: Managed WordPress - GUID: 6849adff-5b23-11e5-8b24-14feb5d9f2e6 - Note: Caller: Rovier
Callback Number: No Callback

Notes: Calling because domain is not working.  TOld to get domain out of wp.com to us.

DID NOT OFFER: |
| 9/22/2015 2:43:01 PM / Carr, Trevor / Client IP: GoDaddy Internal | Trevor Carr accessed account with reason "General/Research". Shopper PIN. |
| 9/22/2015 2:36:22 PM / Edmondson, Shelby / Client IP: GoDaddy Internal | Rovier
cci about domain not mapping correctly . He has correct nameservers , correct ip .
did a dns reconcile , tried turning domains NS back to standard and back here , still not working .
Customers trying to manage into wordpress and thats not working , advised to transfer to hosting . |
| 9/22/2015 2:33:32 PM / Manager: Shelby L Edmondson / Client IP: GoDaddy Internal | CRM user 16760 - Shelby L Edmondson has entered DCC5 accessing shopper 112120542. |
| 9/22/2015 2:33:28 PM / Manager: Shelby L Edmondson / Client IP: GoDaddy Internal | CRM user 16760 - Shelby L Edmondson has entered DCC5 accessing shopper 112120542. |
| 9/22/2015 2:33:27 PM / Manager: Shelby L Edmondson / Client IP: GoDaddy Internal | CRM user 16760 - Shelby L Edmondson has entered DCC5 accessing shopper 112120542. |
| 9/22/2015 2:29:17 PM / Manager: Shelby L Edmondson / Client IP: GoDaddy Internal | CRM user 16760 - Shelby L Edmondson has entered DCC5 accessing shopper 112120542. |

## Notes for Shopper ID 112120542
## 9/13/2015 to 3/1/2019

| Entered Date / By | Note |
|---|---|
| 9/22/2015 2:29:12 PM / Manager: Shelby L Edmondson / Client IP: GoDaddy Internal | CRM user 16760 - Shelby L Edmondson has entered DCC5 accessing shopper 112120542. |
| 9/22/2015 2:29:12 PM / Manager: Shelby L Edmondson / Client IP: GoDaddy Internal | CRM user 16760 - Shelby L Edmondson has entered DCC5 accessing shopper 112120542. |
| 9/22/2015 2:27:08 PM / Manager: Shelby L Edmondson / Client IP: GoDaddy Internal | CRM user 16760 - Shelby L Edmondson has entered DCC5 accessing shopper 112120542. |
| 9/22/2015 2:26:43 PM / Manager: Shelby L Edmondson / Client IP: GoDaddy Internal | CRM user 16760 - Shelby L Edmondson has entered DCC5 accessing shopper 112120542. |
| 9/22/2015 2:25:25 PM / Manager: Shelby L Edmondson / Client IP: GoDaddy Internal | CRM user 16760 - Shelby L Edmondson has entered DCC5 accessing shopper 112120542. |
| 9/22/2015 2:25:20 PM / Manager: Shelby L Edmondson / Client IP: GoDaddy Internal | CRM user 16760 - Shelby L Edmondson has entered DCC5 accessing shopper 112120542. |
| 9/22/2015 2:25:13 PM / Manager: Shelby L Edmondson / Client IP: GoDaddy Internal | CRM user 16760 - Shelby L Edmondson has entered DCC5 accessing shopper 112120542. |
| 9/22/2015 2:13:12 PM / Manager: Shelby L Edmondson / Client IP: GoDaddy Internal | CRM user 16760 - Shelby L Edmondson has entered DCC5 accessing shopper 112120542. |
| 9/22/2015 2:12:43 PM / Manager: Shelby L Edmondson / Client IP: GoDaddy Internal | CRM user 16760 - Shelby L Edmondson has entered DCC5 accessing shopper 112120542. |
| 9/22/2015 2:12:38 PM / Manager: Shelby L Edmondson / Client IP: GoDaddy Internal | CRM user 16760 - Shelby L Edmondson has entered DCC5 accessing shopper 112120542. |
| 9/22/2015 2:11:35 PM / Manager: Shelby L Edmondson / Client IP: GoDaddy Internal | CRM user 16760 - Shelby L Edmondson has entered DCC5 accessing shopper 112120542. |
| 9/22/2015 2:08:42 PM / Manager: Shelby L Edmondson / Client IP: GoDaddy Internal | CRM user 16760 - Shelby L Edmondson has entered DCC5 accessing shopper 112120542. |
| 9/22/2015 2:08:36 PM / Manager: Shelby L Edmondson / Client IP: GoDaddy Internal | CRM user 16760 - Shelby L Edmondson has entered DCC5 accessing shopper 112120542. |
| 9/22/2015 2:07:34 PM / Manager: Esteban Marquez / Client IP: GoDaddy Internal | CRM user 11602 - Esteban  Marquez has entered DCC5 accessing shopper 112120542. |
| 9/22/2015 2:07:28 PM / Manager: Esteban Marquez / Client IP: GoDaddy Internal | CRM user 11602 - Esteban  Marquez has entered DCC5 accessing shopper 112120542. |
| 9/22/2015 2:07:10 PM / Marquez, Esteban / Client IP: GoDaddy Internal | Esteban Marquez accessed account with reason "General/Research". Validation was skipped. |
| 9/22/2015 1:58:29 PM / Manager: Shelby L Edmondson / Client IP: GoDaddy Internal | CRM user 16760 - Shelby L Edmondson has entered DCC5 accessing shopper 112120542. |
| 9/22/2015 1:57:55 PM / Manager: Shelby L Edmondson / Client IP: GoDaddy Internal | CRM user 16760 - Shelby L Edmondson has entered DCC5 accessing shopper 112120542. |
| 9/22/2015 1:57:55 PM / Manager: Shelby L Edmondson / Client IP: GoDaddy Internal | CRM user 16760 - Shelby L Edmondson has entered DCC5 accessing shopper 112120542. |
| 9/22/2015 1:56:52 PM / Edmondson, Shelby / Client IP: GoDaddy Internal | Shelby Edmondson accessed account with reason "General/Research". Shopper PIN. |
| 9/22/2015 1:50:16 PM / Customer / Client IP: 172.249.227.204 | Managed WordPress:287140217 (6849adff-5b23-11e5-8b24-14feb5d9f2e6) - Entered Account |
| 9/21/2015 12:07:51 AM / Ramos, Karlos / Client IP: GoDaddy Internal | cci rovier wants to know how to change primary on mwp walked through cust adv of turn around time for ns change g2g |
| 9/21/2015 12:07:19 AM / Karlos  Ramos / Client IP: GoDaddy Internal | A customer survey was automatically sent for Karlos  Ramos |

CONFIDENTIAL

GD 000017

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 323

## Notes for Shopper ID 112120542
## 9/13/2015 to 3/1/2019

| Entered Date / By | Note |
|---|---|
| 9/20/2015 11:54:26 PM / Customer / Client IP: 172.249.227.204 | Managed WordPress:287140217 (6849adff-5b23-11e5-8b24-14feb5d9f2e6) - Entered Account |
| 9/20/2015 11:53:03 PM / Manager: Karlos Ramos / Client IP: GoDaddy Internal | CRM user 16856 - Karlos  Ramos has entered DCC5 accessing shopper 112120542. |
| 9/20/2015 11:53:00 PM / Manager: Karlos Ramos / Client IP: GoDaddy Internal | CRM user 16856 - Karlos  Ramos has entered DCC5 accessing shopper 112120542. |
| 9/20/2015 11:52:54 PM / Manager: Karlos Ramos / Client IP: GoDaddy Internal | CRM user 16856 - Karlos  Ramos has entered DCC5 accessing shopper 112120542. |
| 9/20/2015 11:47:09 PM / Ramos, Karlos / Client IP: GoDaddy Internal | Karlos Ramos accessed account with reason "General/Research". Shopper PIN. |
| 9/19/2015 2:09:26 PM / Christopher A Fierro / Client IP: GoDaddy Internal | A customer survey was automatically sent for Christopher A Fierro |
| 9/19/2015 2:03:16 PM / Fierro, Christopher / Client IP: GoDaddy Internal | Christopher Fierro accessed account with reason "Interactions". Validation was skipped via Interaction Authorization. |
| 9/19/2015 2:03:00 PM / Service, Interaction / Client IP: GoDaddy Internal | Interaction Service accessed account with reason "Customer Called". Shopper PIN. |
| 9/18/2015 8:05:18 PM / Adria  Hardesty / Client IP: GoDaddy Internal | A customer survey was automatically sent for Adria  Hardesty |
| 9/18/2015 8:04:03 PM / Hardesty, Adria / Client IP: GoDaddy Internal | tt javier; 3233709886; wp ?s; edu where to change domain on acc't so it can publish; |
| 9/18/2015 8:01:49 PM / Hardesty, Adria / Client IP: GoDaddy Internal | Adria Hardesty accessed account with reason "General/Research". Shopper PIN. |
| 9/18/2015 11:18:38 AM / Customer / Client IP: 172.249.227.204 | Managed WordPress:287140217 (6849adff-5b23-11e5-8b24-14feb5d9f2e6) - Entered Account |
| 9/15/2015 7:50:16 PM / Eric L Krust / Client IP: GoDaddy Internal | A customer survey was automatically sent for Eric L Krust |
| 9/15/2015 7:47:19 PM / HRC / Client IP: GoDaddy Internal | Sent customer article number 3560 to email on file. |
| 9/15/2015 7:42:44 PM / ekrust / Client IP: GoDaddy Internal | Hosting Support - Service: Managed WordPress - GUID: 6849adff-5b23-11e5-8b24-14feb5d9f2e6 - Note: Caller: Rovier<br>Callback Number: 3233709886<br><br>Notes: Needed help setting up his new managed wp account.  Walked him through the setup.  Gave him instructions to update his DNS at the registrar.<br><br>OFFERED: no need |
| 9/15/2015 7:34:39 PM / Customer / Client IP: 172.249.227.204 | Managed WordPress:287140217 (6849adff-5b23-11e5-8b24-14feb5d9f2e6) - Entered Account |
| 9/15/2015 7:31:10 PM / Krust, Eric / Client IP: GoDaddy Internal | Eric Krust accessed account with reason "General/Research". Shopper PIN. |
| 9/15/2015 7:18:34 PM / Customer / Client IP: 172.249.227.204 | Managed WordPress:287140217 (6849adff-5b23-11e5-8b24-14feb5d9f2e6) - Entered Account |
| 9/14/2015 10:02:19 PM / Hoyt, Timothy / Client IP: GoDaddy Internal | Called in cause he was at wordpress.com and he couldn&#39;t find his ftp credentials informed he would have to do a manual migration. |
| 9/14/2015 10:02:18 PM / Timothy R Hoyt / Client IP: GoDaddy Internal | A customer survey was automatically sent for Timothy R Hoyt |
| 9/14/2015 10:01:24 PM / HRC / Client IP: GoDaddy Internal | Sent customer article number 12371 to email on file. |

CONFIDENTIAL

GD 000018

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 324

## Notes for Shopper ID 112120542
## 9/13/2015 to 3/1/2019

| Entered Date / By | Note |
|---|---|
| 9/14/2015 9:59:40 PM / Hoyt, Timothy / Client IP: GoDaddy Internal | Timothy Hoyt accessed account with reason "Interactions". Validation was skipped via Interaction Authorization. |
| 9/14/2015 9:58:10 PM / Service, Interaction / Client IP: GoDaddy Internal | Interaction Service accessed account with reason "Customer Called". Shopper PIN. |
| 9/14/2015 9:50:33 PM / Customer / Client IP: 76.218.247.56 | Managed WordPress:0 - Entered Account |
| 9/14/2015 9:49:50 PM / Customer / Client IP: 76.218.247.56 | Domains:0 - Entered Account |
| 9/14/2015 1:10:32 PM / Customer / Client IP: 76.218.247.56 | Domains:0 - Entered Account |
| 9/14/2015 1:10:00 PM / Customer / Client IP: 76.218.247.56 | Shopper 112120542 accepted and agreed to the Universal Terms of Service |

CONFIDENTIAL                                          GD 000019

## Case Notes for ShopperId 112120542, 9/13/2015 to 3/1/2019
## Product:

| | | | |
|---|---|---|---|
| Created: | 2/23/2019 9:46:01 PM | Case#: | 39026624 |
| Created By: | avolding | Domain: | |
| Modified: | 2/23/2019 9:46:01 PM | Product Cancelled Date: | |
| Modified By: | avolding | | |

### Notes Section

| Entered Date / By | Note |
|---|---|
| 2/23/2019 9:46:01 PM / avolding | Is involved in a matter where someone is trying to get a subpoena for the contents of an O365 account that was removed 5 months ago, wanted an email stating that the data wasn't recoverable at this point. Showed where to find subpoena info on the legal section of our site, advised to go there for anything official. |

CONFIDENTIAL                    GD 000020

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 326

## Case Notes for ShopperId 112120542, 9/13/2015 to 3/1/2019
## Product:

| | | | |
|---|---|---|---|
| Created: | 9/20/2018 4:34:51 PM | Case#: | 30627419 |
| Created By: | mohammed5411 | Domain: | |
| Modified: | 9/20/2018 4:34:51 PM | Product Cancelled Date: | |
| Modified By: | mohammed5411 | | |

### Notes Section

| Entered Date / By | Note |
|---|---|
| 9/20/2018 4:34:51 PM / mohammed5411 | needed to know if we have a back up of his deleted 0365 email. we dont. |

CONFIDENTIAL

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 327

**Case Notes for ShopperId 112120542, 9/13/2015 to 3/1/2019**
**Product:**

| | | | | |
|---|---|---|---|---|
| Created: | 9/20/2018 4:14:38 PM | Case#: | | 30625754 |
| Created By: | v_johncarlo2233 | Domain: | | |
| Modified: | 9/20/2018 4:14:38 PM | Product Cancelled Date: | | |
| Modified By: | v_johncarlo2233 | | | |

**Notes Section**

| Entered Date / By | Note |
|---|---|
| 9/20/2018 4:14:38 PM / v_johncarlo2233 | cx can't access the account |

CONFIDENTIAL                    GD 000022

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 328

# Case Notes for ShopperId 112120542, 9/13/2015 to 3/1/2019
## Product:

| | | | |
|---|---|---|---|
| Created: | 9/20/2018 3:53:07 PM | Case#: | 30623977 |
| Created By: | v_eduard4199 | Domain: | |
| Modified: | 9/20/2018 3:53:07 PM | Product Cancelled Date: | |
| Modified By: | v_eduard4199 | | |

### Notes Section

| Entered Date / By | Note |
|---|---|
| 9/20/2018 3:53:07 PM / v_eduard4199 | not validated. |

CONFIDENTIAL

GD 000023

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 329

### DNS Audit Logs for Shopper ID 112120542
### 9/13/2015 to 3/1/2019

| logtime | owner | userip | userid | user type | domain | action | type | name | method | result | data |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2018-11-07T01:04:12 | 112120542 | 10.36.64.2 33 | 112120542 | 3 | thecarringtondiaries. com | delete | zonefile | thecarring tondiaries .com | v2-deleteV2DnsZ ones | success | Deleted Zone thecarringtondiaries.com |
| 2018-09-10T10:15:06 | 112120542 | | 112120542 | 2 | thecarringtondiaries. com | update | zonefile | thecarring tondiaries .com | removeNamese rvers | success | Removed Nameserver(s) [ns21.domaincontrol.com]. |
| 2018-09-08T10:15:35 | 112120542 | 72.167.234 .176 | 112120542 | 3 | thecarringtondiaries. com | delete | product | Godaddy-Shared | v2-deleteV2DnsZ onesProvidersS erv | success | Product not found in zone, Godaddy-Shared. |
| 2018-09-08T10:14:37 | 112120542 | 10.36.64.1 8 | 112120542 | 3 | thecarringtondiaries. com | update | zonefile | thecarring tondiaries .com | v2-patchV2DnsZo nes | success | Zone Updated thecarringtondiaries.com, reseller updated to 1, Copied zone to nameservers ns05.domaincontrol.com and ns06.domaincontrol.com |

CONFIDENTIAL

GD 000024

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 330

# Domain Appraisal for Shopper ID 112120542

No Domain Appraisal account information is available.

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 331

# Business Registration for Shopper ID 112120542

No Business Registration account information is available.

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 332

# Cold Fusion for Shopper ID 112120542

No Cold Fusion account information is available.

CONFIDENTIAL                    GD 000027

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 333

## Dedicated Hosting for Shopper ID 112120542

No Dedicated Hosting account information is available.

CONFIDENTIAL                              GD 000028

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 334

## Plesk Hosting for Shopper ID 112120542

No Plesk Hosting account information is available.

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 335

# cPanel Hosting for Shopper ID 112120542

No cPanel Hosting account information is available.

CONFIDENTIAL

GD 000030

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 336

## WordPress PaaS for Shopper ID 112120542

| | |
|---|---|
| Account Name: | NEW ACCOUNT |
| Product Type Name: | Wpaas |
| Product Name: | Deluxe Managed WordPress Websites - 1 Year |
| ExternalResourceId: | 6849adff-5b23-11e5-8b24-14feb5d9f2e6 |
| Billing Date: | 9/14/2018 12:00:00 AM |
| Last Renewal Date: | 9/14/2017 12:00:00 AM |

CONFIDENTIAL

GD 000031

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 337

## Domain Expiration Protection for Shopper ID 112120542

No Domain Expiration Protection account information is available.

CONFIDENTIAL                                    GD 000032

## Domain Reputation for Shopper ID 112120542

No Domain Reputation account information is available.

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 339

# Hosting Weblog for Shopper ID 112120542

No Hosting Weblog account information is available.

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 340

# Marketplace for Shopper ID 112120542

No Marketplace account information is available.

CONFIDENTIAL

GD 000035

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 341

# News-Blazer for Shopper ID 112120542

No News-Blazer account information is available.

CONFIDENTIAL

GD 000036

## Photo Album for Shopper ID 112120542

No Photo Album account information is available.

CONFIDENTIAL

GD 000037

## Power Content Plan for Shopper ID 112120542

No Power Content Plan account information is available.

CONFIDENTIAL

GD 000038

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT   p. 344

## Quick Podcast for Shopper ID 112120542

No Quick Podcast account information is available.

CONFIDENTIAL                    GD 000039

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 345

# Smart Domain for Shopper ID 112120542

No Smart Domain account information is available.

CONFIDENTIAL                                GD 000040

## SSL Support Pack for Shopper ID 112120542

No SSL Support Pack account information is available.

CONFIDENTIAL

GD 000041

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 347

## Total DNS for Shopper ID 112120542

No Total DNS account information is available.

CONFIDENTIAL

GD 000042

## Virtual Dedicated Hosting for Shopper ID 112120542

No Virtual Dedicated Hosting account information is available.

CONFIDENTIAL                    GD 000043

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 349

## Web Hosting for Shopper ID 112120542

No Web Hosting account information is available.

CONFIDENTIAL                              GD 000044

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 350

## Website Protection for Shopper ID 112120542

No Website Protection account information is available.

CONFIDENTIAL

GD 000045

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 351

# Website Tonight for Shopper ID 112120542

No Website Tonight account information is available.

CONFIDENTIAL                                        GD 000046

# Instant Page for Shopper ID 112120542

No Instant Page account information is available.

CONFIDENTIAL

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 353

## Cash Parking for Shopper ID 112120542

No Cash Parking account information is available.

CONFIDENTIAL

GD 000048

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 354

## Group Calendar for Shopper ID 112120542

No Group Calendar account information is available.

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 355

# Email Accounts for Shopper ID 112120542

No Email Accounts account information is available.

CONFIDENTIAL                                     GD 000050

## Email Forwarding for Shopper ID 112120542

| | |
|---|---|
| Account Name: | Free email forwarding with domain: THECARRINGTONDIARIES.COM |
| Product Type Name: | Email Forwarding |
| Product Name: | Email Forwarding - 100 Pack |
| ExternalResourceId: | a7f1acf2-6322-11e6-8332-14feb5d40b65 |
| Billing Date: | 8/15/2017 12:00:00 AM |
| Last Renewal Date: | 8/15/2016 12:58:39 PM |
| Status: | Unable to retrieve account status. |
| PPC: | Not Available |
| Number of Addresses: | Not Available |

This email plan does not have any email addresses configured.

CONFIDENTIAL

GD 000051

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 357

# Online Storage for Shopper ID 112120542

No Online Storage account information is available.

CONFIDENTIAL                    GD 000052

# Microsoft Outlook for Shopper ID 112120542

No Microsoft Outlook account information is available.

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 359

## SMTP Relaying for Shopper ID 112120542

No SMTP Relaying account information is available.

CONFIDENTIAL                    GD 000054

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 360

## No Workspace Emails Entries for Shopper ID 112120542

No WorkspaceAudit account information is available.

CONFIDENTIAL

GD 000055

# Iris Notes for Shopper ID 112120542

No Iris Notes account information is available.

CONFIDENTIAL

GD 000056

## Fax Thru Email for Shopper ID Fax Thru Email for Shopper ID 112120542

No Fax Thru Email account information is available.

CONFIDENTIAL                                         GD 000057

## Domain Auctions for Shopper ID 112120542

No Domain Auctions account information is available.

CONFIDENTIAL                     GD 000058

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 364

## Quick Shopping Cart for Shopper ID 112120542

No Quick Shopping Cart account information is available.

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 365

**Fraud Review Notes for Shopper ID 112120542**

**9/13/2015 to 3/1/2019**

| Date Created | Date Modified | Manager User ID | Fraud Note |
|---|---|---|---|
| 9/24/2015 | 9/24/2015 | 8060 | Checked Out |
| 9/24/2015 | 9/24/2015 | 8060 | New Shopper Fraud Rates at Time of Ticket Closure - Reseller: 0%, ISP:  0%, IP: (not checked), Affiliate: N/A, Non-CSR: 68 |
| 9/24/2015 | 9/24/2015 | 8060 | No Alerts |

CONFIDENTIAL                    GD 000060

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 366

## No OpenExchange Accounts for Shopper ID 112120542

No OpenExchangeAudit account information is available.

CONFIDENTIAL                                    GD 000061

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 367

## Search Engine Visibility for Shopper ID 112120542
## 9/13/2015 to 3/1/2019

No Search Engine Visibility account information is available.

CONFIDENTIAL                    GD 000062

# Office365 ShopperId 112120542

## SSO Logins for ShopperId: 112120542

### No SSO Logins for ShopperId: 112120542

## Account Details for AccountID: 1662891

| | |
|---|---|
| Account Status: | Deleted |
| Orion Account Status: | removed |
| Country Code for Billing: | us |
| Created Date (UTC): | 10/12/2015 5:52:41 PM |
| Last Modified Date (UTC): | 9/8/2018 5:16:45 PM |
| Subscription: | B0 |
| Description: | Office 365 Email Essentials |

## Mailboxes for AccountID: 1662891

| Email Address | Mailbox Status | Display Name | First/Last Name | Country Code | Create Date (UTC) | Last Modified Date (UTC) |
|---|---|---|---|---|---|---|
| Rovier@thecarringtondiaries.com | delete | Rovier Carrington | Rovier Carrington | USA | 10/12/2015 5:59:42 PM | 9/8/2018 5:16:43 PM |

CONFIDENTIAL                    GD 000063

## Search Engine Visibility v2 for Shopper ID 112120542

| | |
|---|---|
| Domain Name: | |
| SiteId: | 78760 |
| Business Name: | |
| Status: | Removed |
| ShopperId: | 112120542 |
| Integration Type: | WP |
| Sitemap Submit Status: | Not Submitted |
| Sitemap Submit URL: | |
| Orion AccountId: | 6849adff-5b23-11e5-8b24-14feb5d9f2e6 |
| AddressId: | |
| Create Date: | 2015-09-14 20:57:45.630942+00:00 |
| Activated Date: | |
| Update Date: | 2018-10-11 10:00:03.637652+00:00 |
| Cancel Date: | 2018-09-08 17:15:28.402383+00:00 |
| Is Local: | |
| Publish Method: | Unspecified |

CONFIDENTIAL

GD 000064

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 370

## Search Engine Visibility v2 for Shopper ID 112120542

| | |
|---|---|
| Domain Name: | |
| SiteId: | 78760 |
| Business Name: | |
| Status: | Removed |
| ShopperId: | 112120542 |
| Integration Type: | WP |
| Sitemap Submit Status: | Not Submitted |
| Sitemap Submit URL: | |
| Orion AccountId: | 6849adff-5b23-11e5-8b24-14feb5d9f2e6 |
| AddressId: | |
| Create Date: | 2015-09-14 20:57:45.630942+00:00 |
| Activated Date: | |
| Update Date: | 2018-10-11 10:00:03.637652+00:00 |
| Cancel Date: | 2018-09-08 17:15:28.402383+00:00 |
| Is Local: | |
| Publish Method: | Unspecified |

CONFIDENTIAL

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 371

## Shopper Contact Audit for Shopper ID 112120542

| Change Date | Requested By | IP Address | Value Changed | Previous Value | Changed To |
|---|---|---|---|---|---|
| 6/15/2018 1:28:00 PM | Shopper | 76.218.247.56 | street1 | 13111 Mulholland Dr. | 13100 Mulholland Dr. |
| 8/3/2017 8:30:33 PM | Shopper | 76.218.247.56 | mobilePhone | +1.4243322383 | +1.4245222401 |
| 8/3/2017 8:30:33 PM | Shopper | 76.218.247.56 | phone1 | +1.4243322383 | +1.4245222401 |
| 8/6/2016 7:37:12 PM | Employee | GoDaddy Internal IP | mobilePhone | +1.8188566417 | +1.4243322383 |
| 8/6/2016 7:37:12 PM | Employee | GoDaddy Internal IP | phone1 | +1.8188566417 | +1.4243322383 |
| 3/15/2016 11:12:41 AM | BackfillShopper Phones | M1PWSBEAPP 001 | mobilePhone | +1 8188566417 | +1.8188566417 |
| 3/15/2016 11:12:41 AM | BackfillShopper Phones | M1PWSBEAPP 001 | phone1 | +1 8188566417 | +1.8188566417 |
| 1/13/2016 6:36:41 PM | Employee | GoDaddy Internal IP | email | RovierCarrington@gmail.com | Rovier@TheCarringtonDiaries.com |
| 1/13/2016 6:36:41 PM | Employee | GoDaddy Internal IP | mobilePhone | +1.8188566417 | +1 8188566417 |
| 1/13/2016 6:36:41 PM | Employee | GoDaddy Internal IP | phone1 | +1.8188566417 | +1 8188566417 |
| 1/13/2016 6:36:41 PM | Employee | GoDaddy Internal IP | street1 | 13011 Mulholland Dr. | 13111 Mulholland Dr. |
| 9/14/2015 1:52:13 PM | Mobile MYA | GoDaddy Internal IP | city | | Beverly Hills |
| 9/14/2015 1:52:13 PM | Mobile MYA | GoDaddy Internal IP | company | | Carrington Diaries |
| 9/14/2015 1:52:13 PM | Mobile MYA | GoDaddy Internal IP | country | | US |
| 9/14/2015 1:52:13 PM | Mobile MYA | GoDaddy Internal IP | first_name | | Rovier |
| 9/14/2015 1:52:13 PM | Mobile MYA | GoDaddy Internal IP | last_name | | Carrington |
| 9/14/2015 1:52:13 PM | Mobile MYA | GoDaddy Internal IP | mobilePhone | | +1.8188566417 |
| 9/14/2015 1:52:13 PM | Mobile MYA | GoDaddy Internal IP | phone1 | | +1.8188566417 |
| 9/14/2015 1:52:13 PM | Mobile MYA | GoDaddy Internal IP | state | | CA |
| 9/14/2015 1:52:13 PM | Mobile MYA | GoDaddy Internal IP | street1 | | 13011 Mulholland Dr. |
| 9/14/2015 1:52:13 PM | Mobile MYA | GoDaddy Internal IP | zip | | 90210 |
| 9/14/2015 1:10:12 PM | CentralAuth | GoDaddy Internal IP | email | 112120542 | RovierCarrington@gmail.com |

CONFIDENTIAL

GD 000066

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 372

# Legal Receipt for Shopper ID 112120542

| | |
|---|---|
| Shopper ID: | 112120542 |
| Receipt ID: | 1201735345 |
| ProgId: | GoDaddy |
| SiteUrl: | http://registrar.godaddy.com |
| Date: | 10/12/2017 6:49:56 AM By billing agent via billing agent |
| Source Code: | ROHB from_app: wsc_dr |

**Shipping Information**



**Billing Information**



**Transaction Occurred as: United States Dollar (USD)**

*Payment 1: $59.88*

| | |
|---|---|
| Paid: | Credit Card (Trans ID: 59DF7303FD4691F063CC4AED441F8A2 C8D805452) |
| Processor: | Chase-GD |
| AVS Code: | N |
| Type: | Visa |
| Processor: | Chase-GD |

Our Charges will appear on their credit card statement in the name "GODADDY.COM"

| Row | Label | Name | Unit Price | Today's Price | ICANN Fee | Qty | Extra Disc. | Total Price |
|---|---|---|---|---|---|---|---|---|
| 1 | 31820-1 | Email Essentials - Renewal - 1 year Length: 1 Year(s) Domain: | $59.88 | $59.88 | $0.00 | 1 | $0.00 | $59.88 |

| Subtotal | Shipping & Handling | Tax | Total |
|---|---|---|---|
| $59.88 | $0.00 | $0.00 | $59.88 |

CONFIDENTIAL

GD 000067

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 373

# Legal Receipt for Shopper ID 112120542

| | |
|---|---|
| Shopper ID: | 112120542 |
| Receipt ID: | 1194593554 |
| ProgId: | GoDaddy |
| SiteUrl: | http://registrar.godaddy.com |
| Date: | 9/26/2017 8:44:36 PM By customer via Online |
| Source Code: | GDBBX3246 |

**Shipping Information**



**Billing Information**



| | |
|---|---|
| IP: | 76.218.247.56::76.218.247.56 |

**Transaction Occurred as: United States Dollar (USD)**

*Payment 1: $15.17*

| | |
|---|---|
| Paid: | Credit Card (Trans ID: 59CB1EA30CC939AF599103BD1538B75 3D155541D) |
| Processor: | Chase-GD |
| AVS Code: | N |
| Type: | Visa |
| Processor: | Chase-GD |

Our Charges will appear on their credit card statement in the name "GODADDY.COM"

| Row | Label | Name | Unit Price | Today's Price | ICANN Fee | Qty | Extra Disc. | Total Price |
|---|---|---|---|---|---|---|---|---|
| 1 | 10101-1 | .COM Domain Name Renewal - 1 Year (recurring)<br>Length: 1 Year(s)<br>Domain: thecarringtondiaries.com<br>This a service item. | $14.99 | $14.99 | $0.18 | 1 | $0.00 | $15.17 |

| Subtotal | Shipping & Handling | Tax | Total |
|---|---|---|---|
| $15.17 | $0.00 | $0.00 | $15.17 |

CONFIDENTIAL

GD 000068

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 374

# Legal Receipt for Shopper ID 112120542

| | |
|---|---|
| Shopper ID: | 112120542 |
| Receipt ID: | 1188647813 |
| ProgId: | GoDaddy |
| SiteUrl: | http://registrar.godaddy.com |
| Date: | 9/14/2017 3:24:20 AM By billing agent via billing agent |
| Source Code: | ROHB from_app: wsc_dr |

**Shipping Information**



**Billing Information**



**Transaction Occurred as: United States Dollar (USD)**

*Payment 1: $119.88*

| | |
|---|---|
| Paid: | |
| Processor: | Litle-GD |
| AVS Code: | Y |
| Type: | Visa |
| Processor: | Litle-GD |

Our Charges will appear on their credit card statement in the name "GODADDY.COM"

| Row | Label | Name | Unit Price | Today's Price | ICANN Fee | Qty | Extra Disc. | Total Price |
|---|---|---|---|---|---|---|---|---|
| 1 | 580996-1 | Deluxe Managed WordPress Websites - Renewal - 1 Year<br>Length: 1 Year(s)<br>Domain: | $119.88 | $119.88 | $0.00 | 1 | $0.00 | $119.88 |
| 2 | 562250-1 | Renewal Usage<br>Length: 1 Month(s)<br>Domain: | $0.00 | $0.00 | $0.00 | 1 | $0.00 | $0.00 |

| Subtotal | Shipping & Handling | Tax | Total |
|---|---|---|---|
| $119.88 | $0.00 | $0.00 | $119.88 |

CONFIDENTIAL

GD 000069

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 375

# Legal Receipt for Shopper ID 112120542

| | |
|---|---|
| Shopper ID: | 112120542 |
| Receipt ID: | 1038524471 |
| ProgId: | GoDaddy |
| SiteUrl: | http://registrar.godaddy.com |
| Date: | 10/12/2016 5:34:55 AM By billing agent via billing agent |
| Source Code: | ROHB from_app: wsc_dr |

**Shipping Information**



**Billing Information**



**Transaction Occurred as: United States Dollar (USD)**

*Payment 1: $59.88*

Paid:

| | |
|---|---|
| Processor: | Litle-GD |
| AVS Code: | Y |
| Type: | Visa |
| Processor: | Litle-GD |

Our Charges will appear on their credit card statement in the name "GODADDY.COM"

| Row | Label | Name | Unit Price | Today's Price | ICANN Fee | Qty | Extra Disc. | Total Price |
|---|---|---|---|---|---|---|---|---|
| 1 | 31820-1 | Email Essentials - Renewal - 1 year<br>Length: 1 Year(s)<br>Domain: | $59.88 | $59.88 | $0.00 | 1 | $0.00 | $59.88 |

| Subtotal | Shipping & Handling | Tax | Total |
|---|---|---|---|
| $59.88 | $0.00 | $0.00 | $59.88 |

CONFIDENTIAL

GD 000070

# Legal Receipt for Shopper ID 112120542

| | |
|---|---|
| Shopper ID: | 112120542 |
| Receipt ID: | 1032370178 |
| ProgId: | GoDaddy |
| SiteUrl: | http://registrar.godaddy.com |
| Date: | 9/27/2016 8:06:39 AM By billing agent via billing agent |
| Source Code: | ROHB from_app: wsc_dr |

**Shipping Information**



RovierCarrington@gmail.com

**Billing Information**

**Transaction Occurred as: United States Dollar (USD)**

*Payment 1: $15.17*

| | |
|---|---|
| Paid: | Credit Card Visa xxxxxxxxxx |
| Processor: | Litle-GD |
| AVS Code: | Y |
| Type: | Visa |
| Processor: | Litle-GD |

Our Charges will appear on their credit card statement in the name "GODADDY.COM"

| Row | Label | Name | Unit Price | Today's Price | ICANN Fee | Qty | Extra Disc. | Total Price |
|---|---|---|---|---|---|---|---|---|
| 1 | 10101-1 | .COM Domain Name Renewal - 1 Year (recurring)<br>Length: 1 Year(s)<br>Domain: thecarringtondiaries.com | $14.99 | $14.99 | $0.18 | 1 | $0.00 | $15.17 |

| Subtotal | Shipping & Handling | Tax | Total |
|---|---|---|---|
| $15.17 | $0.00 | $0.00 | $15.17 |

CONFIDENTIAL                              GD 000071

# Legal Receipt for Shopper ID 112120542

| | |
|---|---|
| Shopper ID: | 112120542 |
| Receipt ID: | 1026785173 |
| ProgId: | GoDaddy |
| SiteUrl: | http://registrar.godaddy.com |
| Date: | 9/14/2016 12:41:19 PM By billing agent via billing agent |
| Source Code: | ROHB from_app: wsc_dr |

### Shipping Information



### Billing Information



**Transaction Occurred as: United States Dollar (USD)**

*Payment 1: $119.88*

| | |
|---|---|
| Paid: | Credit Card (Trans ID: 57D9A7DFBB705B3291DD11C3628D06 D7A57853EC) |
| Processor: | Chase-GD |
| AVS Code: | A |
| Type: | Visa |
| Processor: | Chase-GD |

Our Charges will appear on their credit card statement in the name "GODADDY.COM"

| Row | Label | Name | Unit Price | Today's Price | ICANN Fee | Qty | Extra Disc. | Total Price |
|---|---|---|---|---|---|---|---|---|
| 1 | 580996-1 | Deluxe Managed WordPress Websites - Renewal - 1 Year Length: 1 Year(s) Domain: | $119.88 | $119.88 | $0.00 | 1 | $0.00 | $119.88 |
| 2 | 562250-1 | Renewal Usage Length: 1 Month(s) Domain: | $0.00 | $0.00 | $0.00 | 1 | $0.00 | $0.00 |

| Subtotal | Shipping & Handling | Tax | Total |
|---|---|---|---|
| $119.88 | $0.00 | $0.00 | $119.88 |

CONFIDENTIAL

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 378

# Legal Receipt for Shopper ID 112120542

| | |
|---|---|
| Shopper ID: | 112120542 |
| Receipt ID: | 888255082 |
| ProgId: | GoDaddy |
| SiteUrl: | http://registrar.godaddy.com |
| Date: | 10/12/2015 10:52:39 AM By customer via Online |
| Source Code: | GOFD2001AJ |

**Shipping Information**



**Billing Information**

| | |
|---|---|
| IP: | 76.218.247.56::76.218.247.56 |

**Transaction Occurred as: United States Dollar (USD)**

*Payment 1: $47.88*

| | |
|---|---|
| Paid: | Credit Card (Trans ID: 819892929382810566) |
| Processor: | Litle-GD |
| AVS Code: | Y |
| Type: | VISA |
| Processor: | Litle-GD |

Our Charges will appear on their credit card statement in the name "GODADDY.COM"

| Row | Label | Name | Unit Price | Today's Price | ICANN Fee | Qty | Extra Disc. | Total Price |
|---|---|---|---|---|---|---|---|---|
| 1 | 31805-1 | Email Essentials - 1 year<br>Length: 1 Year(s)<br>Domain:<br>This a service item. | $59.88 | $47.88 | $0.00 | 1 | $0.00 | $47.88 |

| Subtotal | Shipping & Handling | Tax | Total |
|---|---|---|---|
| $47.88 | $0.00 | $0.00 | $47.88 |

CONFIDENTIAL

GD 000073

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 379

# Legal Receipt for Shopper ID 112120542

| | |
|---|---|
| Shopper ID: | 112120542 |
| Receipt ID: | 881998014 |
| ProgId: | GoDaddy |
| SiteUrl: | http://registrar.godaddy.com |
| Date: | 9/26/2015 2:55:35 PM By customer via Online |
| Source Code: | CJC2OFF30 |

### Shipping Information



### Billing Information



| | |
|---|---|
| IP: | 172.249.227.204::172.249.227.204 |

**Transaction Occurred as: United States Dollar (USD)**

*Payment 1: $10.67*

| | |
|---|---|
| Paid: | paypal |
| Processor: | PayPal-GD |
| Account: | ##############1920 |

Our Charges will appear on their credit card statement in the name "GODADDY.COM"

| Row | Label | Name | Unit Price | Today's Price | ICANN Fee | Qty | Extra Disc. | Total Price |
|---|---|---|---|---|---|---|---|---|
| 1 | 101-1 | .COM Domain Name Registration - 1 Year (recurring)<br>Length: 1 Year(s)<br>Domain: thecarringtondiaries.com<br>This a service item. | $14.99 | $12.99 | $0.18 | 1 | $2.50 | $10.67 |

| Subtotal | Shipping & Handling | Tax | Total |
|---|---|---|---|
| $10.67 | $0.00 | $0.00 | $10.67 |

CONFIDENTIAL

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 380

## Legal Receipt for Shopper ID 112120542

| | |
|---|---|
| Shopper ID: | 112120542 |
| Receipt ID: | 881234871 |
| ProgId: | GoDaddy |
| SiteUrl: | http://registrar.godaddy.com |
| Date: | 9/24/2015 10:39:51 AM By Seren_Ozcan via Phone |
| Source Code: | ?SR from_app: crmcatalog |

**Shipping Information**




RovierCarrington@g___.com

**Billing Information**



| | |
|---|---|
| IP: | 172.30.9.182::172.30.9.182 |

**Transaction Occurred as: United States Dollar (USD)**

*Payment 1: $8.17*

| | |
|---|---|
| Paid: | paypal |
| Processor: | PayPal-GD |
| Account: | ##############1920 |

Our Charges will appear on their credit card statement in the name "GODADDY.COM"

| Row | Label | Name | Unit Price | Today's Price | ICANN Fee | Qty | Extra Disc. | Total Price |
|---|---|---|---|---|---|---|---|---|
| 1 | 111-1 | .COM Domain Name Transfer - 1 Year (recurring)<br>Length: 1 Year(s)<br>Domain: carringtondiaries.com<br>This a service item. | $14.99 | $7.99 | $0.18 | 1 | $0.00 | $8.17 |

| Subtotal | Shipping & Handling | Tax | Total |
|---|---|---|---|
| $8.17 | $0.00 | $0.00 | $8.17 |

CONFIDENTIAL

GD 000075

# Legal Receipt for Shopper ID 112120542

| | |
|---|---|
| Shopper ID: | 112120542 |
| Receipt ID: | 877261042 |
| ProgId: | GoDaddy |
| SiteUrl: | http://registrar.godaddy.com |
| Date: | 9/14/2015 1:58:54 PM By customer via Online |
| Source Code: | ??? |

**Shipping Information**



**Billing Information**



| | |
|---|---|
| IP: | 76.218.247.56::76.218.247.56 |

**Transaction Occurred as: United States Dollar (USD)**

*Payment 1: $71.88*

| | |
|---|---|
| Paid: | paypal |
| Processor: | PayPal-GD |
| Account: | ###############1920 |

Our Charges will appear on their credit card statement in the name "GODADDY.COM"

| Row | Label | Name | Unit Price | Today's Price | ICANN Fee | Qty | Extra Disc. | Total Price |
|---|---|---|---|---|---|---|---|---|
| 1 | 580978-1 | Deluxe Managed WordPress - 1 Year<br>Length: 1 Year(s)<br>Domain:<br>This a service item. | $107.88 | $71.88 | $0.00 | 1 | $0.00 | $71.88 |

| Subtotal | Shipping & Handling | Tax | Total |
|---|---|---|---|
| $71.88 | $0.00 | $0.00 | $71.88 |

CONFIDENTIAL

GD 000076

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 382



# EXHIBIT 008

SDNY CM/ECF NextGen Version 1.2                                                    https://ecf.nysd.uscourts.gov/doc1/127125149065

**Query**     **Reports**     **Utilities**     **Help**     **Log Out**

You do not have permission to view this document.

10/23/20, 3:36 PM

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT   p. 385

# EXHIBIT 009

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
:
ROVIER CARRINGTON,                                    :
:
                              Plaintiff,              :        18 Civ. 4609 (KPF)
:
              v.                                      :        ORDER
:
BRIAN GRADEN, BRIAN GRADEN MEDIA   :
LLC, VIACOM INC., VIACOM                              :
INTERNATIONAL INC., PARAMOUNT      :
PICTURES CORPORATION, BRAD GREY,   :
BRAD GREY ESTATE, BRAD ALAN GREY   :
TRUST,                                                :
:
                              Defendants.  :
:
------------------------------------------------------X

KATHERINE POLK FAILLA, District Judge:

On July 19, 2019, the Court received two submissions from Plaintiff.

(Dkt. #136, 137).  The first of these two submissions can be dealt with quickly.

Plaintiff objects to the absence of docket entry 114 from the docket and claims

that it has been removed without justification.  In fact, on May 13, 2019, the

Court had restricted docket entry 114 to court users and case participants only

to protect the privacy of parties to this case.  (Dkt. #122).  As Plaintiff disclaims

an interest in keeping the entry restricted, the Court hereby directs the Clerk of

Court to remove restrictions on docket entry 114 and restore it to the active

docket.

As for Plaintiff's second request, Plaintiff objects to the affidavit of Brian

Graden, submitted in conjunction with Defendants' reply memorandum of law

in support of their motion for terminating sanctions.  (Dkt. #133).  The Court

will address the substance of Plaintiff's objections at the conference on July 25,

2019.  However, given the sensitive nature of aspects of Plaintiff's second letter,

the Court deems it appropriate to temporarily restrict access to the document.

The Court will address what documents in the case shall remain restricted

moving forward at the forthcoming conference, but the Court considers the

privacy interests of Defendants and counsel to outweigh the need for

immediate disclosure.  *See Lugosch* v. *Pyramid Co. of Onondaga*, 435 F.3d 110,

119-20 (2d Cir. 2006) (holding that "the court must 'balance competing

considerations' ... [of the right of public access and] [s]uch countervailing

factors ... [as] 'the privacy interests of those resisting disclosure'") (internal

citations omitted).  The Clerk of Court is directed to restrict docket entry 137 to

court users and case participants only.

        SO ORDERED.

Dated:     July 23, 2019
          New York, New York

                                              KATHERINE POLK FAILLA
                                          United States District Judge

*A copy of this Order was mailed by Chambers to:*

Rovier Carrington
5901 Encina Road
Suite C-2
Goleta, CA 93117

# EXHIBIT 010



Stanton L. Stein                    Diana A. Sanders
lstein@raklaw.com                   dsanders@raklaw.com

12424
Wilshire Boulevard
12th Floor                          April 10, 2019
Los Angeles
California
90025                               ***Via ECF and Email*** (Failla_NYSDChambers@nysd.uscourts.gov)

Tel 310.826.7474                    The Honorable Katherine Polk Failla
Fax 310.826.6991                    United States District Court
www.raklaw.com                      Southern District of New York
                                    40 Foley Square, Courtroom 618

                        Re:    <u>Carrington v. Graden et al, Case No. 1:18-cv-04609-KPF</u>

          Dear Judge Failla:

          The undersigned counsel represent all Defendants in this action.  We write jointly to update Your Honor regarding the results of the subpoenas issued by the Court to GoDaddy.com LLC ("GoDaddy"), Microsoft Corporation ("Microsoft") and Google, Inc. ("Google"), as well as the analysis of FTI Consulting ("FTI") of Mr. Carrington's iPhone X and of emails produced to FTI by Google.  Each of these issues was covered by Order of this Court dated February 13, 2019.  Dkt. No. 102.  As the findings below show, it is now clearer than ever that the 39 disputed At-Issue Communications that form the foundation of this action never existed in the form forwarded by Plaintiff Rovier Carrington to his counsel, and attached and quoted extensively throughout the amended complaint.  As FTI's investigation already showed, *none* of the native emails could be located in Plaintiff's email accounts.  Now, further information obtained from Google, Microsoft, GoDaddy and FTI shows that the two email accounts from which virtually all of these communications were purportedly exchanged (trendsetterrovheir@gmail.com and rovier@thecarringtondiaries.com) were deleted *after* the authenticity issues were first raised in this action, in a campaign by Plaintiff to spoliate the digital record and thereby eliminate further proof that Plaintiff perpetrated a fraud on the Court.  No further proof is necessary beyond the fact that *none* of the disputed At-Issue Communications exist, Plaintiff's own spoliation campaign, and the declarations of Darren Stein, Reno Logan, and James Kelshaw establishing that these emails were never exchanged.  Accordingly, pursuant to Rule 11 and the Court's inherent authority, Defendants intend to file a motion for terminating sanctions and other appropriate relief based upon Plaintiff's fraud on the Court and spoliation, and respectfully request a pre-motion conference in advance of such motion.

          **I.    <u>The Evidence Was Already Clear that a Fraud on the Court Has Been Perpetrated</u>**

          The parties have now confirmed that, of the 40 separate At-Issue Communications included in the email chains that Plaintiff attached to his amended complaint [Dkt. No. 40-1], the only one found in Plaintiffs' email accounts is the single email as to which authenticity is not in dispute.  By contrast, not one of 39 contested emails that Plaintiff filed in support of his claims exists in native form in any of his accounts.

          Two independent third parties, Darren Stein and Reno Logan, have submitted sworn declarations stating that the emails appended to Mr. Carrington's amended complaint purporting to be communications with them were never exchanged.  *See* Dkt. No. 56-2 (Declaration of Darren Stein); July 23, 2018 email from Graden Defendants' counsel to the Court and all counsel attaching letter enclosing Declaration of Reno Logan and Supplemental Declaration of Darren Stein.  Indeed, Mr. Stein attested that he sent only one single email ever to Mr. Carrington, which he attached to his



declaration, and which notably does not contain the alleged language against Brian Graden that the version offered by Mr. Carrington contains. *See* Dkt. No. 56-2, Ex. A. Further, TransPerfect Inc., a reputable digital forensics company, conducted a forensic analysis of Mr. Stein's email account, which confirmed that the email attached to Mr. Stein's declaration is identical to the one that exists in native form in his account and that there are no other emails with Mr. Carrington in the account. *See* Dkt. No. 56-3 (Declaration of James Kelshaw with exhibit); Dkt. No. 57-1 (Supplemental Declaration of James Kelshaw).

Moreover, the forensic analysis conducted of Mr. Graden's email account also showed that the emails offered by Plaintiff as exhibits to the amended complaint do not exist, but rather that fragments of actual emails Mr. Graden did send to Plaintiff were lifted from those real emails to create the fabricated emails appended as exhibits 9 and 10 to the amended complaint. *See* Dkt. No. 56-3 (Declaration of James Kelshaw). Accordingly, the *only* native documents retrievable in this litigation show fabrication by Plaintiff. The Court has inherent authority to impose sanctions on this basis. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 51 (1991); *ComLab, Corp. v. Kal Tire & Kal Tire Mining Tire Grp.*, No. 17-cv-1907 (KBF), 2018 U.S. Dist. LEXIS 154983, at *1, *20-25 (S.D.N.Y. Sep. 11, 2018) (sanctions granted for fraud on the court where plaintiff "cannot produce so-called 'native' versions of the contested e-mails because of an alleged virus that affected [its] computer," and the "story regarding a computer virus does not make sense").

## II.   Further Evidence Now Conclusively Shows that Plaintiff Has Engaged in a Mass Spoliation Campaign to Obstruct the Investigation into His Fraud

The evidence put forth by Defendants over the last nine months, the findings of the neutral e-discovery vendor FTI, and the findings from the subpoenas to Google, Microsoft and GoDaddy confirm that Plaintiff Rovier Carrington engaged in a total wipe-out campaign of his devices to prevent the parties and the Court from retrieving the natives of his emails and showing that the disputed At-Issue Communications never existed.

**Mr. Carrington's iPhone X**:  Consistent with the Court's Order, FTI was finally able to perform an examination of Mr. Carrington's iPhone X and it delivered its inspection report to the parties on March 5, 2019. *See* Exhibit A. As can be seen from the report, FTI concluded that "[n]o instances of the At-Issue Communications were identified" in Mr. Carrington's iPhone X. However, FTI found that "Mr. Carrington's data was migrated from his previous iPhone." Exhibit A, page 2. Relatedly, FTI observed that multiple Apple ID accounts were linked to the iPhone X, including (1) trendsetterrovheir@gmail.com (the "Trendsetter Account") and (2) roviercarrington@gmail.com (the "Existing Account")—two of the three email accounts at issue in this litigation. FTI's findings directly contradict Mr. Carrington's representation to Your Honor during the February 7, 2019 telephonic conference that he *did not* migrate his data from his old iPhone 7 to his new iPhone X and did not have the aforementioned email accounts linked to it.[1] Based on FTI's findings, it appears that Mr. Carrington purged any and all data that may have been relevant in this litigation from his current and only available phone.

**Google**:  Google produced non-content related information associated with the Trendsetter Account and Existing Account. Google also produced content-related information associated with the Existing

---

[1] In a letter from Plaintiff's former counsel to Your Honor dated September 17, 2018, Plaintiff represented that "the forwarded emails were forwarded from an I-Phone 10, which Mr. Carrington has in his possession." Dkt. No. 76, page 5.

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 391



Account to FTI but could not recover any content-related information associated with the Trendsetter Account.

> Trendsetter Account: Critically, the Trendsetter Account is the one from which Plaintiff purportedly exchanged the emails most central to the claims and allegations in this action. *See* Amended Complaint [Dkt. No. 40, Exs. 1-7].  Mr. Carrington and his counsel have repeatedly represented to the Court and Defendants that the Trendsetter Account was "deactivated" several years ago, and that the original emails thus could not be recovered. *See* Transcript of Sept. 18, 2018 proceedings, 34:11-14; *see also* Affidavit of K. Gus Dimitrelos, ¶ 13 (submitted with letter from Mr. Carrington to the Court dated February 6, 2019); Exhibit C email from K. Landau to parties dated Aug. 24, 2018.  As noted above, however, this account was linked to Plaintiff's iPhone X, which was released in November 2017, long after Plaintiff claims this account was "deactivated."  More specifically, the Google-produced information shows this account was actually deactivated on June 19, 2018. *See* Exhibit B.  To put that date into context, it is (1) *just one day after* Plaintiff filed the amended complaint, which attached as exhibits the explosive Trendsetter Account emails now at issue; (2) almost two months *after* the filing of this litigation; and (3) a month *after* issuance of a preservation letter, which was sent to Plaintiff's counsel twice, on May 21 and 22, 2018.

> Existing Account:  Following production to FTI of all content-related documents relating to the Existing Account, FTI conducted a search and delivered its report to the parties on March 28, 2019. *See* Exhibit D.  As can be seen from the report, FTI's "search process did not identify any original instances of the At-Issue Communications."  Mr. Carrington therefore also purged all emails that may have been relevant in this litigation from this account, the only one he continues to maintain.

**Microsoft**:  Per Microsoft, the third email account at issue, rovier@thecarringtondiaries.com (the "Carrington Diaries Account"), does not currently exist in its system but was used through September 2018 before being closed. *See* Exhibit E (email from Microsoft counsel Drew Wilkinson).  Microsoft further indicated that Office 365 accounts such as the Carrington Diaries Account are controlled completely by the user, who has the power to delete the accounts and the content therein.  This information from Microsoft evidences that Mr. Carrington closed his Carrington Diaries Account in September 2018, *after* all of the issues and concerns regarding authenticity were raised and *after* Your Honor authorized further discovery into Plaintiff's evidence.

**GoDaddy**:  GoDaddy, which hosts the domain for Plaintiff's website www.thecarringtondiaries.com and its associated Carrington Diaries Account, supplied data confirming that the www.thecarringtondiaries.com domain ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████  Again, these events occurred *after* the Court's orders for further discovery and specifically after the Court's authorization of subpoenas to Microsoft and GoDaddy.

It is significant to note that the GoDaddy records also reveal ████████████████████████████████████████████████████████████████████

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 392



In short, Plaintiff has affirmatively sought to delete *all* traces of the email records that he filed as exhibits to the amended complaint in this action.  Not only did Plaintiff have a clear duty to preserve this data at all relevant times, but this spoliation campaign was in willful violation of the Court's August 7, 2018 Order [Dkt. No. 64] specifically directing all parties to "immediately preserve each and every document constituting or containing any portion of any of the [At-Issue Communications]."  Such willful spoliation and violation of the Court's Order is alone sanctionable and, under the circumstances, sufficient to dismiss this action.  *See* Fed. R. Civ. Pro. 37(b),(e); *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) ("a district court may impose sanctions for spoliation, exercising its inherent power to control litigation").  Considered with the fact that this spoliation was to obstruct an investigation into what is already clear to have been a fraud on the Court, terminating sanctions are fully warranted.  *See, e.g., ComLab*, 2018 U.S. Dist. LEXIS 154983, at *1, *20-25 (granting terminating sanctions under analogous circumstances).

We thank the Court for its attention to this matter.

4

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 393



Respectfully submitted,


  /s/ Stanton L. Stein            

RUSS AUGUST & KABAT
Stanton L. Stein (appearing *pro hac vice*)
Diana A. Sanders (appearing *pro hac vice*)
12424 Wilshire Blvd., 12th Floor
Los Angeles, CA 90025

*Attorneys for Defendants Brian Graden*
*and Brian Graden Media, LLC*


   /s/ Wook Hwang            

LOEB & LOEB LLP
Wook Hwang
Sarah Schacter
345 Park Avenue
New York, New York 10154

*Attorneys for Brad Grey, Brad Grey Estate and*
*Brad Alan Grey Trust*


  /s/ Stephen Fishbein            

SHEARMAN & STERLING LLP
Stephen Fishbein
Christopher LaVigne
599 Lexington Ave.
New York, NY 10022

*Counsel for Viacom Inc., Viacom International Inc.*
*and Paramount Pictures Corporation*


Enclosure

cc:     All Counsel of Record (via ECF)
        Rovier Carrington


5

# EXHIBIT A



MARCH 5, 2019

# IPHONE INSPECTION REPORT

CASE NUMBER:  1:18-CV-04609-KPF

ROVIER CARRINGTON V. GRADEN BRIAN GRADEN MEDIA,
LLC, VIACOM INC., VIACOM INTERNATIONAL INC., PARAMOUNT
PICTURES CORPORATION, BRAD GREY, BRAD GREY ESTATE, BRAD
ALAN GREY TRUST

FTI MATTER NUMBER:  009223.0051

CARRINGTON V. GRADEN ET AL.                                        

## Background and Scope

On February 13, 2019, the Honorable Katherine Polk Failla of the United States District Court, Southern District of New York issued an order further discovery in the case Carrington v. Graden et al. (Case 1:18-CV-04609-KPF) which included the imaging and analyzing Mr. Carrington's iPhone X for evidence pertaining to the At-Issue Communications, including the transmission and/or deletion thereof, as well as non-content user activity associated with the Accounts and/or concerning the dates of operation of such device.

## Information Considered

I relied on the following sources during this analysis:

1. Honorable Katherine Polk Failla's Order for Limited Discovery Concerning the Authenticity of Communications, Case 1:18-cv-04609-KPF Document 64 Filed 08/07/18

2. Honorable Katherine Polk Failla's Order for Further Discovery, Case 1:18-cv-04609-KPF Document 64 Filed 02/13/19

3. Exhibits 2-11 to the Amended Complaint (Dkt. #40-1), Case 1:18-cv-04609-KPF Document 35-1 Filed 06/18/18 Pages 4 – 35

4. Exhibit A to the Declaration of Darren Stein (Dkt. #56-2), Case 1:18-cv-04609-KPF Document 56-2 Filed 07/12/18 Page 5 of 5

5. Exhibits 1-4 to the Declaration of James Kelshaw (Dkt. #56-3), Case 1:18-cv-04609-KPF Document 56-3 Filed 07/12/18 Pages 6 – 15

6. PDF of email forward from Plaintiff to The Landau Group, "Ex. 10 Re Stolen Show, 8.7.17_Redacted 2 3.pdf"

7. PDF of email forward from Plaintiff to The Landau Group, "Ex. 2 re Business 10.29.10_Redacted 3 4.pdf"

8. PDF of email forward from Plaintiff to The Landau Group, "Ex. 8 re Build a Reality Show, 5.15.15_Redacted 2 3.pdf"

9. PDF of email forward from Plaintiff to The Landau Group, "Ex. 9 re Inheritance TV Project, 8.10.15_Redacted 2_Redacted 3.pdf"

10. Various communications with parties

11. Mr. Carrington's iPhone X, serial number F2MW2B7XJCLG

## Methodology and Findings

On February 27, 2019, Mr. Carrington came to the Los Angeles offices of FTI Consulting, Inc. located at 350 S. Grand Avenue, Suite 3000, Los Angeles, CA 90071 and presented his iPhone X for collection.  I performed the image in one of our conference rooms using the Cellebrite software UFED Physical Analyzer v. 7.15.1.1 in the presence of Mr. Carrington, during which time input his screen code each time asked.  Once the imaging process completed and I verified the data to be readable, I handed the device to Mr. Carrington and he departed.

1

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 397

CARRINGTON V. GRADEN ET AL.



I am unable to determine the initial date of use for this device.  There are no inherent Apple iOS initialization logs or other artifacts on which to rely for this information.  It appears that Mr. Carrington's data was migrated from his previous iPhone, which further complicates this determination.  This is because user files such as AddressBook.sqlitedb and sms.db retained their creation dates of February 6, 2015 while the iPhone X was released around November 2017.

No email data was identified in this data collection by the Cellebrite UFED Physical Analyzer or Oxygen Forensic Detective applications.  This is because Mr. Carrington uses the native iOS email application and that data is not exposed for collection with industry-leading tools such as Cellebrite UFED Physical Analyzer.  I did observe multiple Apple ID accounts associated with this device, two of which are associated with the At-Issue Communications:

1.  trendsetterrovheir@gmail.com

2.  roviercarrington@gmail.com

I searched the iPhone data using terms selected from the At-Issue Communications.  The terms were run as whole words without case-sensitivity due to limitations of the Cellebrite UFED Physical Analyzer software.

Those terms included:

1.  Blacklist

2.  Graden

3.  Loftus

4.  Petahmj

5.  Raped

6.  Sumner

No instances of the At-Issue Communications were identified.

2

# EXHIBIT B

March 13, 2019


**VIA EMAIL**

Stanton "Larry" Stein
Russ August & Kabat
12424 Wilshire Blvd, 12th Floor
Los Angeles, CA 90025
(310) 826-7474
Fax: (310) 979-8222
lstein@raklaw.com

**Re:     Subpoena in Carrington v. Graden, et al., No. 1:18-cv-04609-KPF (S.D.N.Y.)**

Dear Larry:

We represent Google LLC ("Google") and write regarding the subpoena Google received in the above-referenced matter for records regarding trendsetterrovheir@gmail.com and roviercarrington@gmail.com.  Google produced reasonably available non-content records for trendsetterrovheir@gmail.com on March 11, 2019.  Google has provided notice to roviercarrington@gmail.com regarding the subpoena, and will produce reasonably available and responsive non-content records if the user does not file objections with the court by 10 a.m. Pacific Time on March 21, 2019.  The user can expedite production if he or she responds to Google before March 21st and confirms they have no objection.

As for the court-ordered consent form, Google does not possess any content for trendsetterrovheir@gmail.com.  Moreover, Google cannot properly verify user consent via a paper consent form and is not required to do so under federal law.[1]  Google does, however, have a process for verifying user consent and we would be happy to discuss that process with you and Plaintiff with respect to the existing account.  In sum, that process involves a consent order that requires the user to verify their consent via email through the account in question and provide electronic consent for production of the contents of their account.  Please contact me if you would like to further discuss.

---

[1] *See United States v. Wenk*, 319 F. Supp. 3d 828, 829 (E.D. Va. 2017) ("under the [Stored Communications Act] a [non-governmental entity] cannot couple user consent and a court ordered subpoena to compel disclosure from a service provider."); *PPG Industries, Inc. v. Jiangsu Tie Mao Glass Co., Ltd.,* 273 F. Supp. 3d 558, 561 (W.D. Pa. 2017) ("according to the language of the SCA, it is within the providers' discretion whether to disclose e-mails even in cases where there is lawful consent."); *Schweickert v. Hunts Point Ventures, Inc.,* No. 13–cv–675RSM, 2014 WL 6886630, at *13 (W.D. Wash. Dec. 4, 2014) (same).

Perkins Coie LLP

Very truly yours,

/s/

John K. Roche

Perkins Coie LLP

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 401

Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043



google-legal-support@google.com
www.google.com

March 11, 2019

***Via Email Only***
*lstein@raklaw.com*

Stanton L. Stein
Russ August & Kabat
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
310-826-7474

**Re: *Rovier Carrington v. Brian Graden et al.*, United States District Court for the Southern District of New York, 18-cv-04609 (KPF) (Internal Ref. No. 2334878)**

Dear Stanton L. Stein:

Pursuant to the subpoena issued in the above-referenced matter, we have conducted a diligent search for documents and information accessible on Google's systems that are responsive to your request. Without waiving, and subject to its objections, Google hereby produces the attached documents. Our response is made in accordance with state and federal law, including the Electronic Communications Privacy Act. See 18 U.S.C. § 2701 et seq. By this response, Google does not waive any objection to further proceedings in this matter.

We understand that you have requested customer information regarding the user account(s) specified in the subpoena, which includes the following information: (1) subscriber and recent login information for the Gmail account TRENDSETTERROVHEIR@GMAIL.COM.

Accompanying this letter is responsive information to the extent reasonably accessible from our system, a list of hash values corresponding to each file, and a signed Certificate of Authenticity. Google may not retain a copy of this production but does endeavor to keep a list of the files and their respective hash values.

Finally, Google requests reimbursement in the amount of $125 for reasonable costs incurred in processing your request. Please forward your payment to Google Custodian of Records, at the address above and please write the Internal Reference Number (2334878) on your check. The federal tax ID number for Google is 77-0493581.

Very truly yours,

Sara Plummer
Legal Investigations Support

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 402

Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043



google-legal-support@google.com
www.google.com

**Hash Values for Production Files (Internal Ref. No. 2334878)**

trendsetterrovheir.AccountInfo.txt:

MD5- 2a06281cecf468e8af7abdd12d190a5f
SHA512-
09ea0cecd6c5a0ddec77ac195fdb00ab90a55abb94464eda8d42096a3c9391eecab0f0bf4b72d3791fa3427dfb86f
a8817fab00d5f99a7cdab779fdd380eea4c

Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043



google-legal-support@google.com
www.google.com

### CERTIFICATE OF AUTHENTICITY

I, Sara Plummer, certify:

1. I am a Custodian of Records for Google LLC ("Google"), located in Mountain View, California. I am authorized to submit this Certificate of Authenticity on behalf of Google in response to a subpoena dated February 13, 2019 (Google LLC Internal Reference No. 2334878) in the matter of *Rovier Carrington v. Brian Graden et al.*. I have personal knowledge of the following facts and could testify competently thereto if called as a witness.

2. The accompanying 1 file(s) contain true and correct copies of records pertaining to the email address TRENDSETTERROVHEIR@GMAIL.COM ("Document").

3. The documents attached hereto reflect records made and retained by Google. The records were made at or near the time the data was acquired, entered, or transmitted to or from Google; the records were kept in the course of a regularly conducted activity of Google; and the making of the records were a regular practice of that activity.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED: March 11, 2019

*Sara Plummer*

Sara Plummer, Custodian of Records for Google LLC

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 404

```
############## * Google Confidential and Proprietary * ##############

GOOGLE SUBSCRIBER INFORMATION
Name:
e-Mail: TrendsetterRovheir@gmail.com
End of Service Date: 2018/06/19-17:43:57-UTC
Services: Android, Blogger, Gmail, Google Calendar, Google Docs,
Google Drive, Google Friend Connect, Google Hangouts, Google Maps
Engine, Google Mobile, Google Payments, Google Photos, Google
Services, Google Subscribed Links, Google Voice, Google+, Has Google
Profile, Has Plusone, Location History, Web & App Activity, YouTube,
iGoogle
Created on: 2009/09/10-06:29:33-UTC
Terms of Service IP: -
Google Account ID: 190453201304


No user IP logs data.

############## * Google Confidential and Proprietary * ##############
```

# EXHIBIT C

**From:** **Kevin Landau** Kevin@TheLandauGroup.com
**Subject:** Re: Carrington v. Graden et al.
**Date:** August 24, 2018 at 2:17 PM
**To:** Wook Hwang  whwang@loeb.com
**Cc:** Hammerquist, Erik  Erik.Hammerquist@FTIConsulting.com, **Shields, Steve**  Steve.Shields@FTIConsulting.com,
Christopher LaVigne  Christopher.LaVigne@shearman.com, **Zach Landau**  zach@thelandaugroup.com, **Larry Stein**
lstein@raklaw.com, **Diana Sanders**  dsanders@raklaw.com, **Stephen Fishbein**  SFishbein@shearman.com, **Gabrielle Vidal**
gvidal@loeb.com, **Sarah Schacter**  sschacter@loeb.com

KL

This email has been deactivated for years. We indicated the same in email to FTI.

Sent from my iPhone

On Aug 24, 2018, at 4:13 PM, Wook Hwang <whwang@loeb.com> wrote:

Kevin – Why have you not provided the required login information for the third account,
trendsetterrovheir@gmail.com?

Wook Hwang |Partner
**LOEB & LOEB LLP** | whwang@loeb.com
345 Park Avenue | New York, NY 10154
Direct 212.407.4035 | Fax 212.937.3847

**From:** Hammerquist, Erik <Erik.Hammerquist@FTIConsulting.com>
**Sent:** Friday, August 24, 2018 4:08 PM
**To:** Wook Hwang <whwang@loeb.com>; Kevin Landau <kevin@thelandaugroup.com>; Shields, Steve
<Steve.Shields@fticonsulting.com>
**Cc:** Christopher LaVigne <Christopher.LaVigne@shearman.com>; Zach Landau <zach@thelandaugroup.com>;
Larry Stein <lstein@raklaw.com>; Diana Sanders <dsanders@raklaw.com>; Stephen Fishbein
<SFishbein@shearman.com>; Gabrielle Vidal <gvidal@loeb.com>; Sarah Schacter <sschacter@loeb.com>
**Subject:** RE: Carrington v. Graden et al.

No, just RovierCarrington@gmail.com and Rovier@TheCarringtonDiaries.com.

Erik

**Erik Hammerquist**
Senior Director, Digital Forensics & Investigations
+1.213.452.6440 T | +1.213.321.8842 M
erik.hammerquist@fticonsulting.com

**From:** Wook Hwang <whwang@loeb.com>
**Sent:** Friday, August 24, 2018 1:04 PM
**To:** Hammerquist, Erik <Erik.Hammerquist@FTIConsulting.com>; Kevin Landau <kevin@thelandaugroup.com>;
Shields, Steve <Steve.Shields@fticonsulting.com>
**Cc:** Christopher LaVigne <Christopher.LaVigne@shearman.com>; Zach Landau <zach@thelandaugroup.com>;
Larry Stein <lstein@raklaw.com>; Diana Sanders <dsanders@raklaw.com>; Stephen Fishbein
<SFishbein@shearman.com>; Gabrielle Vidal <gvidal@loeb.com>; Sarah Schacter <sschacter@loeb.com>
**Subject:** RE: Carrington v. Graden et al.

Thanks for the update, Erik.  Did you receive the login information for all three accounts?  These are
trendsetterrovheir@gmail.com, roviercarrington@gmail.com, and Rovier@thecarringtondiaries.com.

Wook Hwang |Partner
**LOEB & LOEB LLP** | whwang@loeb.com
345 Park Avenue | New York, NY 10154
Direct 212.407.4035 | Fax 212.937.3847

**From:** Hammerquist, Erik <Erik.Hammerquist@FTIConsulting.com>
**Sent:** Friday, August 24, 2018 4:00 PM
**To:** Kevin Landau <kevin@thelandaugroup.com>; Shields, Steve <Steve.Shields@fticonsulting.com>
**Cc:** Wook Hwang <whwang@loeb.com>; Christopher LaVigne <Christopher.LaVigne@shearman.com>; Zach
Landau <zach@thelandaugroup.com>; Larry Stein <lstein@raklaw.com>; Diana Sanders <dsanders@raklaw.com>;
Stephen Fishbein <SFishbein@shearman.com>; Gabrielle Vidal <gvidal@loeb.com>; Sarah Schacter
<sschacter@loeb.com>
**Subject:** RE: Carrington v. Graden et al.

All,

We received the credentials at noon.  I'm contending with some unexpected continuing urgencies and will attempt to locate the messages at issue today, but cannot currently predict a completion time.  I will update this group as soon as I'm able.

With best regards,

Erik

**Erik Hammerquist**
Senior Director, Digital Forensics & Investigations
+1.213.452.6440 T | +1.213.321.8842 M
erik.hammerquist@fticonsulting.com

**From:** Kevin Landau <kevin@thelandaugroup.com>
**Sent:** Friday, August 24, 2018 7:31 AM
**To:** Shields, Steve <Steve.Shields@fticonsulting.com>
**Cc:** Wook Hwang <whwang@loeb.com>; Christopher LaVigne <Christopher.LaVigne@shearman.com>; Zach Landau <zach@thelandaugroup.com>; Larry Stein <lstein@raklaw.com>; Diana Sanders <dsanders@raklaw.com>; Stephen Fishbein <SFishbein@shearman.com>; Gabrielle Vidal <gvidal@loeb.com>; Sarah Schacter <sschacter@loeb.com>; Hammerquist, Erik <Erik.Hammerquist@FTIConsulting.com>
**Subject:** Re: Carrington v. Graden et al.

Zach is in the hospital.  He has the login information.
I will obtain and be in touch.

As I'm sure you are aware, the judge extended certain deadlines.

| | |
|---|---|
| <image001.jpg> | **Kevin Landau**<br>Managing Partner<br><br>New York | 212.537.4025<br>Michigan | 248.247.1153<br>E: Kevin@TheLandauGroup.com<br>───────────────────<br>www.TheLandauGroup.com <image001.jpg> <image001.jpg> |

This message, which contains information from a law firm, may be confidential and privileged. If you have received this communication in error (you are not the addressee or authorized to receive for the addressee), you may not use, copy or disclose the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail and delete the message.

On Fri, Aug 24, 2018 at 10:22 AM, Shields, Steve <Steve.Shields@fticonsulting.com> wrote:

Kevin
Just a reminder that we will require the login credentials ASAP if Erik is to complete this today. Thanks.

Regards,

Steve
949-280-1868

On Aug 23, 2018, at 3:13 PM, Shields, Steve <Steve.Shields@fticonsulting.com> wrote:

Please see the attached fully executed LOE.

<attachment 1.pdf>

Regards,

Steve
949-280-1868

On Aug 23, 2018, at 3:07 PM, Kevin Landau <kevin@thelandaugroup.com> wrote:

Steve

Steve,

Do you agree to strictly adhere to the confidentiality terms asserted in your LOE?  If so, the login information will be provided now under separate cover.  Please advise.  Thank you.

Kevin



**Kevin Landau**
Managing Partner
New York | 212.537.4025
Michigan | 248.247.1153
E: Kevin@TheLandauGroup.com

www.TheLandauGroup.com <image001.jpg> <image001.jpg>

This message, which contains information from a law firm, may be confidential and privileged. If you have received this communication in error (you are not the addressee or authorized to receive for the addressee), you may not use, copy or disclose the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail and delete the message.

On Thu, Aug 23, 2018 at 5:47 PM, Kevin Landau <kevin@thelandaugroup.com> wrote:

Sign the LOE and the login information will be provided.  Not providing confidential information until they have been officially retained and our bound by such requirements.



**Kevin Landau**
Managing Partner
New York | 212.537.4025
Michigan | 248.247.1153
E: Kevin@TheLandauGroup.com

www.TheLandauGroup.com <image001.jpg> <image001.jpg>

This message, which contains information from a law firm, may be confidential and privileged. If you have received this communication in error (you are not the addressee or authorized to receive for the addressee), you may not use, copy or disclose the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail and delete the message.

On Thu, Aug 23, 2018 at 5:45 PM, Wook Hwang <whwang@loeb.com> wrote:

Zach, Kevin – You advised FTI that they would have the login credentials by Tuesday, and represented to the Court on Tuesday that you had the information in your possession then.  What is the holdup?  The production deadline is tomorrow.

Wook Hwang |Partner
**LOEB & LOEB LLP** | whwang@loeb.com
345 Park Avenue | New York, NY 10154
Direct 212.407.4035 | Fax 212.937.3847

**From:** Shields, Steve <Steve.Shields@fticonsulting.com>
**Sent:** Thursday, August 23, 2018 5:20 PM
**To:** Wook Hwang <whwang@loeb.com>; Christopher LaVigne <Christopher.LaVigne@Shearman.com>; Zach Landau <zach@thelandaugroup.com>

**Cc:** Kevin Landau <kevin@thelandaugroup.com>; Larry Stein <lstein@raklaw.com>; Diana Sanders <dsanders@raklaw.com>; Stephen Fishbein <SFishbein@Shearman.com>; Gabrielle Vidal <gvidal@loeb.com>; Sarah Schacter <sschacter@loeb.com>; Hammerquist, Erik <Erik.Hammerquist@FTIConsulting.com>
**Subject:** RE: Carrington v. Graden et al.

We should be able to accommodate the invoicing per your note below. I will have the LOE countersigned and sent back asap. Neither Erik or I have received the login information from the Landau firm yet.

**From:** Wook Hwang <whwang@loeb.com>
**Sent:** Thursday, August 23, 2018 2:02 PM
**To:** Shields, Steve <Steve.Shields@fticonsulting.com>; Christopher LaVigne <Christopher.LaVigne@Shearman.com>; Zach Landau <zach@thelandaugroup.com>

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 409

Cc: Kevin Landau <kevin@thelandaugroup.com>; Larry Stein <lstein@raklaw.com>;
Diana Sanders <dsanders@raklaw.com>; Stephen Fishbein
<SFishbein@Shearman.com>; Gabrielle Vidal <gvidal@loeb.com>; Sarah Schacter
<sschacter@loeb.com>; Hammerquist, Erik
<Erik.Hammerquist@FTIConsulting.com>
Subject: RE: Carrington v. Graden et al.

Steve – Attached is the executed LOE.  You can send invoices allocating 1/3 of the
amounts due to each of the three defendants' firms.

Have you have received Mr. Carrington's login information from the Landau firm?

Wook Hwang IPartner
**LOEB & LOEB LLP** | whwang@loeb.com
345 Park Avenue | New York, NY 10154
Direct 212.407.4035 | Fax 212.937.3847

From: Shields, Steve <Steve.Shields@fticonsulting.com>
Sent: Wednesday, August 22, 2018 8:24 PM
To: Christopher LaVigne <Christopher.LaVigne@Shearman.com>; Zach Landau
<zach@thelandaugroup.com>
Cc: Wook Hwang <whwang@loeb.com>; Kevin Landau
<kevin@thelandaugroup.com>; Larry Stein <lstein@raklaw.com>; Diana Sanders
<dsanders@raklaw.com>; Stephen Fishbein <SFishbein@Shearman.com>; Gabrielle
Vidal <gvidal@loeb.com>; Sarah Schacter <sschacter@loeb.com>; Hammerquist,
Erik <Erik.Hammerquist@FTIConsulting.com>
Subject: RE: Carrington v. Graden et al.

Attached is the LOE (the word version with the accepted changes) as well as a PDF
version for signing. We will await the executed version and direction from Zach
regarding access to the gmail accounts.
Thanks
Steve

From: Christopher LaVigne <Christopher.LaVigne@Shearman.com>
Sent: Wednesday, August 22, 2018 4:20 PM
To: Shields, Steve <Steve.Shields@fticonsulting.com>; Zach Landau
<zach@thelandaugroup.com>
Cc: Wook Hwang <whwang@loeb.com>; Kevin Landau
<kevin@thelandaugroup.com>; Larry Stein <lstein@raklaw.com>; Diana Sanders
<dsanders@raklaw.com>; Stephen Fishbein <SFishbein@Shearman.com>; Gabrielle
Vidal <gvidal@loeb.com>; Sarah Schacter <sschacter@loeb.com>; Hammerquist,
Erik <Erik.Hammerquist@FTIConsulting.com>
Subject: Re: Carrington v. Graden et al.

Many thanks Steve.  No need for me to discuss this further and thanks for
considering.

Best,

Chris

On: 22 August 2018 17:15, "Shields, Steve" <Steve.Shields@fticonsulting.com>
wrote:
We have received approval for 45 day payment terms. Our counsel has rejected the
changes/insertion to section 6 of the LOE. The attached redline version incorporates
both these points. Please let me know if you would like to discuss this with our
counsel.

Thanks
Steve

From: Christopher LaVigne <Christopher.LaVigne@Shearman.com>
Sent: Wednesday, August 22, 2018 9:29 AM

**To:** Shields, Steve <Steve.Shields@fticonsulting.com>; Zach Landau
<zach@thelandaugroup.com>
**Cc:** Wook Hwang <whwang@loeb.com>; Kevin Landau
<kevin@thelandaugroup.com>; Larry Stein <lstein@raklaw.com>; Diana Sanders
<dsanders@raklaw.com>; Stephen Fishbein <SFishbein@Shearman.com>; Gabrielle
Vidal <gvidal@loeb.com>; Sarah Schacter <sschacter@loeb.com>; Hammerquist,
Erik <Erik.Hammerquist@FTIConsulting.com>
**Subject:** Re: Carrington v. Graden et al.

45 days is fine and this should not hold up the work.  Chris

On: 22 August 2018 12:08, "Shields, Steve" <Steve.Shields@fticonsulting.com>
wrote:
Hi Chris
I have sent this to our AGC for review. In addition, I am seeking executive approval
for the changes in payments terms. It is likely they will approve 45 day payment terms
but not sixty. Will 45 days work for you?

**From:** Christopher LaVigne <Christopher.LaVigne@Shearman.com>
**Sent:** Tuesday, August 21, 2018 8:25 PM
**To:** Shields, Steve <Steve.Shields@fticonsulting.com>; Zach Landau
<zach@thelandaugroup.com>
**Cc:** Wook Hwang <whwang@loeb.com>; Kevin Landau
<kevin@thelandaugroup.com>; Larry Stein <lstein@raklaw.com>; Diana Sanders
<dsanders@raklaw.com>; Stephen Fishbein <SFishbein@Shearman.com>; Gabrielle
Vidal <gvidal@loeb.com>; Sarah Schacter <sschacter@loeb.com>; Hammerquist,
Erik <Erik.Hammerquist@FTIConsulting.com>
**Subject:** RE: Carrington v. Graden et al.

Scott,

We are awaiting resolution of one issue before finalizing this engagement.  We
anticipate that will happen tomorrow.  In the meantime, we had two small suggestions
on the engagement letter, which I attach for your review in redline.  Could you let us
know if there is any objection to these modifications?

Thanks,

Chris

Christopher LaVigne

Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022-6069
D +1.212.848.4432  |  F +1.646.848.4432
christopher.lavigne@shearman.com  |  www.shearman.com

**From:** Shields, Steve [mailto:Steve.Shields@fticonsulting.com]
**Sent:** Tuesday, August 21, 2018 11:53 AM
**To:** Zach Landau
**Cc:** Wook Hwang; Kevin Landau; Larry Stein; Diana Sanders; Stephen Fishbein; Christopher
LaVigne; Gabrielle Vidal; Sarah Schacter; Hammerquist, Erik
**Subject:** RE: Carrington v. Graden et al.

Good morning Zach
My apologies for the delay in responding but I was awaiting a response from FTI's
conflict department to address your requests below. I have attached a copy of FTI's
conflict procedures for your review. I have also provided an abridged version in the
body of this email below:

FTI is a global firm with worldwide practices, providing services which range
from purely advisory and consultative services to litigation-based services
involving potential or actual adversarial proceedings.   In light of the breadth of
our client base, we often find clients on opposite or the same sides (i.e., as co-
defendants) of adversarial matters in which one client seeks to engage us in
some manner. Prior to accepting a new engagement, we conduct a case-by-
case evaluation which takes into consideration a number of criteria including:

- The nature of the engagement and the issues presented.

- The type of services being requested.

- The nature and extent of our relationship with the involved clients and which of our various business segments are used by those clients.

- The nature and subject matter relationship of prior engagements for the involved clients or on identical or closely related issues.

- The adequacy of FTI's ability to protect client information.

Additionally, both Compass Lexecon and FTI Technology are wholly-owned subsidiaries of FTI Consulting, Inc.  Except in unusual circumstances, we view these practice areas as separate, and absent a legal conflict of interest, available to all clients on any matters.

FTI may institute ethical screen procedures in situations where its experts or consultants are engaged in matters which may be perceived as either adverse to a client or related to another client matter.  These ethical screen procedures (which are recognized as appropriate tools by courts) protect sensitive client information from unauthorized access by, or disclosure to, persons who are not part of the client engagement team."

We are unable to provide you with any additional information regarding previous engagements with Defendants firms as it is FTI's position that this information is privileged and confidential.

As to the clarification of the order below, I believe we understand the scope of this order. FTI has been asked to forensically collect and produce emails from specific custodial gmail accounts. The engagement documents do not reflect any additional work to be performed by FTI. I am aware that there will be a need to image specific devices and produce those images to Plaintiff at some point in the future. I am unaware at this time as to the quantity and timing of this work and therefore left it out of the engagement documents. If this is something that needs to  be added to the current Statement of Work, I am happy to make those changes provided I have some additional details as to the location, type and number of devices to be imaged. I will have to defer to Defense counsel on any additional changes to the scope of this engagement.

Erik and I would be happy to schedule a conference call to discuss this project with everyone if you feel this would be the most expeditious way to move forward.

Thanks
Steve

**From:** Zach Landau <zach@thelandaugroup.com>
**Sent:** Monday, August 20, 2018 3:12 PM
**To:** Shields, Steve <Steve.Shields@fticonsulting.com>
**Cc:** Wook Hwang <whwang@loeb.com>; Kevin Landau <kevin@thelandaugroup.com>; Larry Stein <lstein@raklaw.com>; Diana Sanders <dsanders@raklaw.com>; Stephen Fishbein <SFishbein@shearman.com>; Christopher LaVigne <Christopher.LaVigne@shearman.com>; Gabrielle Vidal <gvidal@loeb.com>; Sarah Schacter <sschacter@loeb.com>; Hammerquist, Erik <Erik.Hammerquist@FTIConsulting.com>
**Subject:** Re: Carrington v. Graden et al.

Steve -

Before we commence work on this project, a couple preliminary issues must be addressed:

1)  Please disclose FTI's conflicts policy and procedures, and the conflicts check and search undertaken in this case, including, any work, within the past five years, that FTI was retained or appointed to perform by any of the Defendants law firms, and the amount of any fees derived by FTI thereto. Likewise, please disclose if FTI has ever retained any of

the Defendants law firms to represent them in any matter, within the past 5 years.

2)  The Order underlying FTI's engagement must be clarified, and fully understood. The Order does not simply apply to Plaintiff, as represented by the Defendants. The Court also ordered as follows:

"IT IS FURTHER ORDERED that, within fourteen (14) days of the entry of this Order, Defendants shall produce each of the At-Issue Communications in Defendants' possession, custody or control, in original native format and with all accompanying metadata;"

"IT IS FURTHER ORDERED that, within fourteen (14) days of the entry of this Order, Plaintiff and Defendants shall identify to each of the parties' respective counsel any and all computers, hard drives, tablets, cellular phones or other electronic devices that Plaintiff or Defendants, as applicable, maintain in their possession, custody or control and that have been used to: (i) transmit any of the At-Issue Communications to the recipient(s) reflected therein; or (ii) forward or otherwise transmit any of the At-Issue Communications at any time to the party's counsel of record in this action, or to any other person on or after May 1, 2016, two years prior to the commencement of this action  (collectively, the "Devices");"

Therefore, Defendants must produce any of the At-Issue Communications in their possession, custody or control, in their original native format, with all accompanying metadata. Further, Defendants must identify any and all computers, hard drives, tablets, cellular phones or other electronic devices, maintained in their possession, custody or control, that have been used to transmit any of the at-issue communications to the recipient reflected, or forwarded or otherwise transmitted any of the at issue communications, at any time to the party's counsel of record in this action, or to any other person, on or after May 1, 2016.

Likewise, the Court ordered as follows:

"IT IS FURTHER ORDERED that, within twenty-one (21) days of the entry of this Order, Defendants shall, upon Plaintiff's request, make available to the Neutral E-Discovery Vendor all of the Devices within any Defendant's possession, custody or control, for such Neutral E-Discovery Vendor to create, at Plaintiff's expense, one or more mirror images of each such Device and return such Devices to Defendants upon the creation of such mirror-images;"

Plaintiff has requested that Defendants make available to the neutral e-discovery vendor, all of the devices within any Defendant's possession, custody or control, for such Neutral E-Discovery Vendor to create, one or more mirror images of each such Device.

Thank you.

Zach

On Mon, Aug 20, 2018 at 11:52 AM, Shields, Steve <Steve.Shields@fticonsulting.com> wrote:

Hi Wook
Any update on this? We have not heard from anyone and I believe you have a deadline of Tuesday 8/21. We will need the executed LOE and login credentials in order to get started.

Thanks
Steve

**From:** Shields, Steve
**Sent:** Friday, August 17, 2018 4:11 PM

**To:** 'Wook Hwang' <whwang@loeb.com>
**Cc:** Kevin Landau <kevin@thelandaugroup.com>; Zach Landau
<zach@thelandaugroup.com>; Larry Stein <lstein@raklaw.com>; Diana Sanders
<dsanders@raklaw.com>; Stephen Fishbein <SFishbein@shearman.com>;
Christopher LaVigne <Christopher.LaVigne@shearman.com>; Gabrielle Vidal
<gvidal@loeb.com>; Sarah Schacter <sschacter@loeb.com>; Hammerquist, Erik
<Erik.Hammerquist@FTIConsulting.com>
**Subject:** RE: Carrington v. Graden et al.

Thank you Wook. We will need to LOE signed before we can commence work on
this project. I have attached a PDF of the LOE for signature by all 3 defense
counsels. We will plan on commencing work on Monday unless informed otherwise.
I will touch base Monday morning If I do not hear from you sooner.
Thanks Steve

---

**From:** Wook Hwang <whwang@loeb.com>
**Sent:** Friday, August 17, 2018 1:14 PM
**To:** Shields, Steve <Steve.Shields@fticonsulting.com>
**Cc:** Kevin Landau <kevin@thelandaugroup.com>; Zach Landau
<zach@thelandaugroup.com>; Larry Stein <lstein@raklaw.com>; Diana Sanders
<dsanders@raklaw.com>; Stephen Fishbein <SFishbein@shearman.com>;
Christopher LaVigne <Christopher.LaVigne@shearman.com>; Gabrielle Vidal
<gvidal@loeb.com>; Sarah Schacter <sschacter@loeb.com>; Hammerquist, Erik
<Erik.Hammerquist@FTIConsulting.com>
**Subject:** RE: Carrington v. Graden et al.

Thanks Steve, these look fine.  Kevin, Zach, please let FTI know whether you have
any issues with these docs and when you will provide Mr. Carrington's login
information, with copy to us.

Wook Hwang IPartner
**LOEB & LOEB LLP** | whwang@loeb.com
345 Park Avenue | New York, NY 10154
Direct 212.407.4035 | Fax 212.937.3847

---

**From:** Shields, Steve <Steve.Shields@fticonsulting.com>
**Sent:** Friday, August 17, 2018 12:55 PM
**To:** Wook Hwang <whwang@loeb.com>
**Cc:** Kevin Landau <kevin@thelandaugroup.com>; Zach Landau
<zach@thelandaugroup.com>; Larry Stein <lstein@raklaw.com>; Diana Sanders
<dsanders@raklaw.com>; Stephen Fishbein <SFishbein@shearman.com>;
Christopher LaVigne <Christopher.LaVigne@shearman.com>; Gabrielle Vidal
<gvidal@loeb.com>; Sarah Schacter <sschacter@loeb.com>; Hammerquist, Erik
<Erik.Hammerquist@FTIConsulting.com>
**Subject:** RE: Carrington v. Graden et al.


Hi Wook
Attached are the engagement documents (LOE and Statement of Work). Erik and I
are available up until 11:30AM PT this morning for a call if that is convenient for all.
If that window of time does not work please suggest alternative times. Erik and I
are both in meetings from 12PM – 2PM PT today.

Thanks
Steve

---

**From:** Wook Hwang <whwang@loeb.com>
**Sent:** Friday, August 17, 2018 8:43 AM
**To:** Shields, Steve <Steve.Shields@fticonsulting.com>
**Cc:** Kevin Landau <kevin@thelandaugroup.com>; Zach Landau
<zach@thelandaugroup.com>; Larry Stein <lstein@raklaw.com>; Diana Sanders
<dsanders@raklaw.com>; Stephen Fishbein <SFishbein@shearman.com>;

Christopher LaVigne <Christopher.LaVigne@shearman.com>; Gabrielle Vidal <gvidal@loeb.com>; Sarah Schacter <sschacter@loeb.com>
**Subject:** RE: Carrington v. Graden et al.

Thanks, Steve.  I don't see Erik Hammerquist copied, so please feel free to forward this to him.

The first task required of your firm is to collect and produce the At-Issue Communications from Mr. Carrington's email accounts.  The At-Issue Communications are defined by the Order to include all emails "constituting or containing any portion of any of the communications" that are shown in the attached pdf files.  These include "all earlier emails in any email chains constituting such communications," and those earlier emails should be produced separately from the parent email chains.  All production is to be in original native format and with all accompanying metadata.  As far as this task is concerned, all that is required is the native email production, or for you to "advise Defendants that those communications cannot be located in [Mr. Carrington's] accounts, without further disclosure to Defendants of any other information concerning such accounts or the contents thereof."

The At-Issue Communications appear to show three email addresses for Mr. Carrington, as follows:  trendsetterrovheir@gmail.com, roviercarrington@gmail.com, Rovier@thecarringtondiaries.com.  Mr. Carrington or his counsel are required to provide you with access to these email accounts, and any others maintained by him reflected in the attached files that I may have inadvertently omitted.  **In light of the imminent deadline, we request that the Landau Group ensure that this login information be provided to you today.**  Other than the communication by which that login information is transmitted to you, please keep all counsel copied on any other communications.

For purposes of the engagement letter, Defendants will bear the cost of this work, split three ways amongst the three defendants' firms.  The next task will be the mirror-imaging of the parties' respective "Devices" used to transmit (or, in certain circumstances, forward) any of the At-Issue Communications, and the cost of that work is to be borne by the other side – i.e. Defendants pay for mirror-imaging of Plaintiff's Devices, and vice versa.  We will cross this bridge next week when the Devices are identified.

If you would like to discuss, let's schedule a time today that works for you, me and at least one of the Landaus.  I am generally available.  Thanks.

Wook Hwang |Partner
**LOEB & LOEB LLP** | whwang@loeb.com
345 Park Avenue | New York, NY 10154
Direct 212.407.4035 | Fax 212.937.3847

**From:** Shields, Steve <Steve.Shields@fticonsulting.com>
**Sent:** Friday, August 17, 2018 10:58 AM
**To:** Wook Hwang <whwang@loeb.com>
**Cc:** Kevin Landau <kevin@thelandaugroup.com>; Zach Landau <zach@thelandaugroup.com>; Larry Stein <lstein@raklaw.com>; Diana Sanders <dsanders@raklaw.com>; Stephen Fishbein <SFishbein@shearman.com>; Christopher LaVigne <Christopher.LaVigne@shearman.com>; Gabrielle Vidal <gvidal@loeb.com>; Sarah Schacter <sschacter@loeb.com>
**Subject:** RE: Carrington v. Graden et al.


Hi Wook
We have cleared conflicts. Please let me know if there are some convenient times for a scoping call with our forensic expert, Erik Hammerquist (copied here).  I will start putting the engagement documents together.

**From:** Wook Hwang <whwang@loeb.com>
**Sent:** Thursday, August 16, 2018 12:18 PM
**To:** Shields, Steve <Steve.Shields@fticonsulting.com>
**Cc:** Kevin Landau <kevin@thelandaugroup.com>; Zach Landau <zach@thelandaugroup.com>; Larry Stein <lstein@raklaw.com>; Diana Sanders

zach@thelandaugroup.com>; Larry Stein <lstein@raklaw.com>; Diana Sanders
<dsanders@raklaw.com>; Stephen Fishbein <SFishbein@shearman.com>;
Christopher LaVigne <Christopher.LaVigne@shearman.com>; Gabrielle Vidal
<gvidal@loeb.com>; Sarah Schacter <sschacter@loeb.com>
**Subject:** RE: Carrington v. Graden et al.

Steve – Please keep all counsel copied on these communications.  To answer your
question, the parties and counsel are:

Plaintiff Rovier Carrington – Landau Group
Defendants Brad Grey, Brad Grey Estate and Brad Alan Grey Trust – Loeb & Loeb
Defendants Viacom Inc., Viacom International Inc. and Paramount Pictures
Corporation – Shearman and Sterling
Defendants Brian Graden and Brian Graden Media, LLC – Russ, August & Kabat

Wook Hwang |Partner
**LOEB & LOEB LLP** | whwang@loeb.com
345 Park Avenue | New York, NY 10154
Direct 212.407.4035 | Fax 212.937.3847

---

**From:** Shields, Steve <Steve.Shields@fticonsulting.com>
**Sent:** Thursday, August 16, 2018 2:29 PM
**To:** Wook Hwang <whwang@loeb.com>
**Subject:** RE: Carrington v. Graden et al.

Confirmed. Can you please identify defense counsel and their respective clients
along with which frim is representing plaintiffs? Thanks

---

**From:** Wook Hwang <whwang@loeb.com>
**Sent:** Thursday, August 16, 2018 11:18 AM
**To:** Shields, Steve <Steve.Shields@fticonsulting.com>
**Cc:** Kevin Landau <kevin@thelandaugroup.com>; Zach Landau
<zach@thelandaugroup.com>; Larry Stein <lstein@raklaw.com>; Diana Sanders
<dsanders@raklaw.com>; Stephen Fishbein <SFishbein@shearman.com>;
Christopher LaVigne <Christopher.LaVigne@shearman.com>; Gabrielle Vidal
<gvidal@loeb.com>; Sarah Schacter <sschacter@loeb.com>
**Subject:** Carrington v. Graden et al.

Steve – Per our discussion, attached is the order that requires the parties to
engage a Neutral E-Discovery Vendor for the tasks set forth in the order.  Please
run conflicts and let us know if there are any issues with respect to any of the
parties.  I have copied all counsel involved in the case.  Thank you.

Wook Hwang |Partner
**LOEB & LOEB LLP** | whwang@loeb.com
345 Park Avenue | New York, NY 10154
Direct 212.407.4035 | Fax 212.937.3847

---

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail
messages attached to it may contain confidential information that is legally privileged. If you are
not the intended recipient, or a person responsible for delivering it to the intended recipient, you
are hereby notified that any disclosure, copying, distribution or use of any of the information
contained in or attached to this transmission is STRICTLY PROHIBITED. If you have received this
transmission in error, please immediately notify the sender. Please destroy the original transmission
and its attachments without reading or saving in any manner. Thank you, Loeb & Loeb LLP.

---

**Confidentiality Notice:**
This email and any attachments may be confidential and protected by legal privilege. If you are not the intended
recipient, be aware that any disclosure, copying, distribution or use of the e-mail or any attachment is prohibited. If
you have received this email in error, please notify us immediately by replying to the sender and then delete this
copy and the reply from your system. Thank you for your cooperation.

--
| Zach Landau

Senior Associate

New York l 212.537.4025
Michigan l 248.247.1153
E: Zach@TheLandauGroup.com

www.TheLandauGroup.com <image001.jpg> <image001.jpg>

This message, which contains information from a law firm, may be confidential and privileged. If
you have received this communication in error (you are not the addressee or authorized to receive
for the addressee), you may not use, copy or disclose the message or any information contained in
the message. If you have received the message in error, please advise the sender by reply e-mail
and delete the message.


This communication and any attachments may be privileged or confidential. If you are
not the intended recipient, you have received this in error and any review, distribution
or copying of this communication is strictly prohibited. In such an event, please notify
us immediately by reply email or by phone (collect at 212-848-4000) and immediately
delete this message and all attachments.

# EXHIBIT D



MARCH 28, 2018

# EMAIL SEARCH REPORT

CASE NUMBER:  1:18-CV-04609-KPF

ROVIER CARRINGTON V. GRADEN BRIAN GRADEN MEDIA,
LLC, VIACOM INC., VIACOM INTERNATIONAL INC., PARAMOUNT
PICTURES CORPORATION, BRAD GREY, BRAD GREY ESTATE, BRAD
ALAN GREY TRUST

FTI MATTER NUMBER:  009223.0051

CARRINGTON V. GRADEN ET AL.



## Background and Scope

On February 13, 2019, the Honorable Katherine Polk Failla of the United States District Court, Southern District of New York issued an order further discovery in the case Carrington v. Graden et al. (Case 1:18-CV-04609-KPF) which included instructions for Mr. Carrington to provide written consent to Google, Microsoft and GoDaddy to produce to FTI Consulting, Inc. the content of any and all available and/or recoverable email communications in the accounts: trendsetterrovheir@gmail.com; roviercarrington@gmail.com; and Rovier@thecarringtondiaries.com for the purposes of searching for the at-issue communications.

On March 20, 2019, FTI received a CD from Sara Plummer, Custodian of Records for Google LLC, containing the email data for the email address RovierCarrington@Gmail.com.  This report documents the search of that data.

## Information Considered

I relied on the following sources during this analysis:

1.  Honorable Katherine Polk Failla's Order for Limited Discovery Concerning the Authenticity of Communications, Case 1:18-cv-04609-KPF Document 64 Filed 08/07/18

2.  Exhibits 2-11 to the Amended Complaint (Dkt. #40-1), Case 1:18-cv-04609-KPF Document 35-1 Filed 06/18/18 Pages 4 – 35

3.  Exhibit A to the Declaration of Darren Stein (Dkt. #56-2), Case 1:18-cv-04609-KPF Document 56-2 Filed 07/12/18 Page 5 of 5

4.  Exhibits 1-4 to the Declaration of James Kelshaw (Dkt. #56-3), Case 1:18-cv-04609-KPF Document 56-3 Filed 07/12/18 Pages 6 – 15

5.  PDF of email forward from Plaintiff to The Landau Group, "Ex. 10 Re Stolen Show, 8.7.17_Redacted 2 3.pdf"

6.  PDF of email forward from Plaintiff to The Landau Group, "Ex. 2 re Business 10.29.10_Redacted 3 4.pdf"

7.  PDF of email forward from Plaintiff to The Landau Group, "Ex. 8 re Build a Reality Show, 5.15.15_Redacted 2 3.pdf"

8.  PDF of email forward from Plaintiff to The Landau Group, "Ex. 9 re Inheritance TV Project, 8.10.15_Redacted 2_Redacted 3.pdf"

9.  Discussions on conference calls with parties

10. Honorable Katherine Polk Failla's Order for Further Discovery, Case 1:18-cv-04609-KPF Filed 02/13/19

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 420

CARRINGTON V. GRADEN ET AL.



## Methodology

I indexed the received data into Nuix Workstation for text-based searching.  The email data was then searched using dates and terms selected from the At-Issue Communications.  The terms were run as stems and without case-sensitivity.

Those terms included:

1. "Build a show"
2. "dramatic series"
3. "erase someone"
4. "Network error"
5. "Our Jewish bodies"
6. "Reality Show"
7. "TV Project"
8. Blacklist
9. darrenstein
10. Demands
11. Fix this
12. Genitals
13. Graden
14. Harvey bullshit
15. Inheritance
16. legally protectable
17. Loftus
18. Lombardo
19. Masterpiece
20. Obey
21. petahmj
22. Pounding
23. Raped
24. Reschedule
25. Stolen
26. Sumner
27. TieLonzo
28. Trendsetterrovheir

## Findings

This search process did not identify any original instances of the At-Issue Communications.  This is summarized in the table below:

| Exhibit | Subject | Date | Observations |
|---|---|---|---|
| 2 | Business | 10/29/10 7:42:22 AM | No instances noted |
| 3 | Re: Grey | 1/17/11 10:18:00 AM | No instances noted |
| 4 | Re: Demands | 2/28/11 11:03:00 AM | No instances noted |
| 5 | Re: Mr. Rovheir | 4/19/11 10:12:43 AM | No instances noted |
| 6 | Re: Fix This | 6/10/11 11:08:00 AM | No instances noted |
| 7 | RE: Reschedule | 7/29/14 11:11:00 AM | No instances noted |
| 8 | Re: Build a Show "Reality Show" | 5/15/15 11:17:46 PM | No instances noted |
| 9 | Re: Inheritance "TV Project" | 8/10/15 12:52:47 AM | No instances noted |
| 10 | Re: Stolen show | 8/7/17 6:15:11 PM | No instances noted |
| 11 | Re: Darren Stein's Offer | 10/24/17 12:03:15 PM | No instances noted |
| Kelshaw 1 | Re: Darren Stein's Offer | 10/24/17 12:06:00 PM | No instances noted |
| Kelshaw 2 | Re: Inheritance "TV Project" | 8/10/15 12:49:00 AM | No instances noted |
| Kelshaw 3 | Re: Inheritance "TV Project" | 8/10/15 1:00:00 AM | No instances noted |
| Kelshaw 4 | Re: Network error | 8/8/17 7:07:00 PM | No instances noted |
| Stein Decl. A | Re: Darren Stein's Offer | 10/24/17 12:05:00 PM | No instances noted |

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 421

# EXHIBIT E

From: **Drew Wilkinson (CELA)** anwilkin@microsoft.com  📎
Subject: RE: Microsoft Objections - Rovier Carrington v. Brian Graden, et al
Date: March 11, 2019 at 2:40 PM
To: Larry Stein  lstein@raklaw.com
Cc: Diana Sanders  dsanders@raklaw.com, Cheryl Zive  czive@raklaw.com



Larry,

Per our phone conversation on 3/6/19, I am following up on your request to find out when the target account was opened and closed. Since the account does not exist in any of our systems, we have very limited data available. The only information we have is that the Office 365 domain was opened 10/12/15 and showed usage through 9/2018. I believe this concludes Microsoft's obligations to your subpoena, thank you.

Drew Wilkinson | Litigation Group


**From:** Larry Stein <lstein@raklaw.com>
**Sent:** Wednesday, March 6, 2019 9:22 AM
**To:** Drew Wilkinson (CELA) <anwilkin@microsoft.com>
**Cc:** Diana Sanders <dsanders@raklaw.com>; Cheryl Zive <czive@raklaw.com>
**Subject:** Re: Microsoft Objections - Rovier Carrington v. Brian Graden, et al

Dear Drew,

Are you available for a quick call today between 12:00 pm and 2:00 pm PT?

Best,
Larry

> On Mar 4, 2019, at 10:52 AM, Drew Wilkinson (CELA) <anwilkin@microsoft.com> wrote:
>
> Mr. Stein,
>
> I've heard back from the technical team we rely on to access responsive data and they have confirmed that Microsoft has no data associated with the target account listed in your subpoena. Without data to produce, the consent form you provided won't be necessary and I believe this concludes Microsoft's obligations under the subpoena. Feel free to give me a call if you have further questions.
> Drew Wilkinson | Litigation Group
> <image001.jpg>

**From:** Larry Stein <lstein@raklaw.com>
**Sent:** Monday, March 4, 2019 9:51 AM
**To:** Drew Wilkinson (CELA) <anwilkin@microsoft.com>
**Cc:** Diana Sanders <dsanders@raklaw.com>
**Subject:** Re: Microsoft Objections - Rovier Carrington v. Brian Graden, et al

Dear Drew,

Attached please find the subscriber's signed written consent form allowing Microsoft to access and provide, in accordance with the subpoena served upon it, all recoverable content data from the relevant account.  This was part of the federal court order, which accompanied the federal court-issued subpoena that has been served on Microsoft.  I believe this moots the objections in the February 22 letter we received from you.  Should you have any questions or additional concerns about compliance with the subpoena, please give me a call.

Sincerely,

Larry Stein

> On Feb 22, 2019, at 12:32 PM, Drew Wilkinson (CELA) <anwilkin@microsoft.com> wrote:
>
> Please find Microsoft's objections to this subpoena attached; you should be receiving the signed originals shortly.
>
> Drew Wilkinson ǀ Litigation Group
> <image001.jpg>
>
> <Signed OBJ - Rovier Carrington v. Brian Graden, et al..pdf>

Stanton "Larry" Stein
RUSS AUGUST & KABAT ǀ 12424 Wilshire Blvd., 12th Floor ǀ Los Angeles, CA 90025
T: 310.826.7474 ǀ F: 310.826.6991 ǀ lstein@raklaw.com ǀ www.raklaw.com

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
IRS Circular 230 Notice:  This communication is not intended to be used and cannot be used, for the purpose of avoiding U.S. federal tax-related penalties or promoting, marketing or recommending to another party any tax-related matter addressed herein.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
This communication shall not create, waive or modify any right, obligation or liability, or be construed to contain or be an electronic signature.
 This communication may contain information that is legally privileged, confidential or exempt from disclosure, and is intended only for the named addressee(s).  If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is prohibited

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 424

Stanton "Larry" Stein
RUSS AUGUST & KABAT I 12424 Wilshire Blvd., 12th Floor I Los Angeles, CA 90025
T: 310.826.7474 I F: 310.826.6991 I lstein@raklaw.com I www.raklaw.com

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

IRS Circular 230 Notice:  This communication is not intended to be used and cannot be used, for the purpose of avoiding U.S. federal tax-related penalties or promoting, marketing or recommending to another party any tax-related matter addressed herein.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
This communication shall not create, waive or modify any right, obligation or liability, or be construed to contain or be an electronic signature.  This communication may contain information that is legally privileged, confidential or exempt from disclosure, and is intended only for the named addressee(s).  If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is prohibited

# EXHIBIT F



Writer's Direct Line
480.624.2506
kwillis@godaddy.com

March 4, 2019


Stanton Stein
Russ August & Kabat
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025

Re:     *thecarringtondiaries.com…*
        GDG Reference No. 19-32881

Dear Mr. Stein:

Please consider this GoDaddy.com, LLC's official response to the Subpoena issued by the
United States District Court for the Southern District of New York.  In response to that
Subpoena, we are herewith producing approximately seventy-six (76) pages of documents which
have been Bates labeled as GD 000001 through GD 000076.  These documents contain
confidential, proprietary, trade secret, and/or private information that warrants special protection
from public disclosure and from use for any purpose other than prosecuting or defending the
action in which the subpoena is served.  It is imperative that any documents designated
"CONFIDENTIAL" receive confidential treatment.  Confidential treatment includes: (1) limiting
access to these documents to the parties in this litigation, their agents, and the court and its
personnel; (2) taking the procedural steps necessary to file under seal any portion of any
submission to the court that refers to or incorporates these documents; and (3) destroying all
CONFIDENTIAL documents included in this production, including copies thereof, within 60
days after the final disposition of the action in which the subpoena is served.  More information
can be found in GoDaddy's Subpoena Policy/Attorney Tips, available on our Legal page.  You
should assume that if categories of documents called for in the subpoena are not included in the
produced documents, GoDaddy.com has no responsive documents for such categories.  Please
note GoDaddy.com does not provide email service for the address
rovier@thecarringtondiaries.com.

We have also enclosed an executed Certificate of Authenticity.

If this case involves a domain name dispute, please provide courtdisputes@godaddy.com with a
file copy of the complaint so that they may place the domain name on registrar lock pending the
outcome of the case.


14455 N. Hayden Rd., Suite 100 Scottsdale, AZ 85260                    480-505-8800

March 4, 2019
Page 2 of 2

Please remit your check in the amount of $24.90 to cover the cost of production.

Copying, printing and reproduction
      76 Pages x $0.25 per Page              $19.00
FedEx                                    $5.90
TOTAL                                   $24.90

If we can assist further, please give me a call.

Very truly yours,

GODADDY.COM, LLC

p.p. Keena R. Willis
Director, Global Subpoena Compliance

Enclosure
KRW/kag

14455 N. Hayden Rd., Suite 100 Scottsdale, AZ 85260          480-505-8800

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 428

## CERTIFICATE OF AUTHENTICITY
## OF
## BUSINESS RECORDS

I, Kimberly A. Groff, declare that I am employed by GoDaddy.com, LLC, and that my office title or position is Admin-Legal II.  I further declare that I am a custodian of records of said business and that each of the records attached hereto is the original or a duplicate (exact photocopy) of an original record in the custody of GoDaddy.com, LLC.

I further state that:

1.    Such records were made, at or near the times of the occurrence of the matters set forth by (or from information transmitting by) a person with knowledge of those matters;

2.    such records are kept in the course of a regularly conducted business activity;

3.    the business activity made such records as a regular practice; and

4.    if such records are not the originals, such records are duplicates of the originals.

I declare under penalty of perjury the forgoing is true and correct.

Dated this 4ᵗʰ day of March 2019.

Kimberly A. Groff
Admin-Legal II
GoDaddy.com, LLC
14455 N. Hayden Road, Suite 219
Scottsdale, AZ 85260

Rec'd·15 Feb 2019

Case 1:18-cv-04609-KPF   Document 102   Filed 02/13/19

GDG Ref. No.
19-32881

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of New York

| | | |
|---|---|---|
| Rovier Carrington | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   18-cv-04609 (KPF) |
| Brian Graden et al. | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                 GoDaddy.com, LLC
_____
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Schedule A attached hereto.

| Place: Russ August & Kabat | Date and Time: |
|---|---|
| 12424 Wilshire Boulevard, 12th Floor Los Angeles, California 90025 | 02/26/2019 10:00 am |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.    SO ORDERED.

Date:      February 13, 2019

CLERK OF COURT

OR      *Katherine Polk Failla*

_____      HON. KATHERINE POLK FAILLA
*Signature of Clerk or Deputy Clerk*      UNITED STATES DISTRICT JUDGE
                                        *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Brian Graden and Brian Graden Media, LLC                                 , who issues or requests this subpoena, are:

Stanton Stein; 12424 Wilshire Boulevard, 12th Floor Los Angeles, California 90025
(310) 826-7474; lstein@raklaw.com

## Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 430



CONFIDENTIAL

GD 000001



CONFIDENTIAL                                        GD 000002

CONFIDENTIAL                                        GD 000003

CONFIDENTIAL

GD 000004

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 434

CONFIDENTIAL

GD 000005

CONFIDENTIAL                                    GD 000006



CONFIDENTIAL



CONFIDENTIAL                                        GD 000008

CONFIDENTIAL

GD 000009

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 439



CONFIDENTIAL GD 000010



CONFIDENTIAL

GD 000011



CONFIDENTIAL                                    GD 000012

CONFIDENTIAL

GD 000013



CONFIDENTIAL                              GD 000014

CONFIDENTIAL                              GD 000015



CONFIDENTIAL

GD 000016



CONFIDENTIAL                    GD 000017

CONFIDENTIAL                                          GD 000018



CONFIDENTIAL                    GD 000019



CONFIDENTIAL



CONFIDENTIAL

GD 000021



CONFIDENTIAL

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 452



CONFIDENTIAL                                    GD 000023



CONFIDENTIAL                                        GD 000024



CONFIDENTIAL

GD 000025



CONFIDENTIAL                              GD 000026

**CONFIDENTIAL**

GD 000027

CONFIDENTIAL                                    GD 000028

CONFIDENTIAL

GD 000029



**CONFIDENTIAL**

GD 000030



CONFIDENTIAL                    GD 000031

CONFIDENTIAL

GD 000032



CONFIDENTIAL

CONFIDENTIAL                                    GD 000034

CONFIDENTIAL                    GD 000035

CONFIDENTIAL                                    GD 000036

Case 1:18-cv-04609-KPF   Document 114-6   Filed 04/16/19   Page 42 of 81



CONFIDENTIAL                         GD 000037

Case 1:18-cv-04609-KPF   Document 114-6   Filed 04/10/19   Page 43 of 81

CONFIDENTIAL

GD 000038

CONFIDENTIAL                                        GD 000039

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 469

CONFIDENTIAL

GD 000040

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 470

Case 1:18-cv-04609-KPF Document 114-6 Filed 04/10/19 Page 46 of 81

CONFIDENTIAL

GD 000041

CONFIDENTIAL                          GD 000042

CONFIDENTIAL                                              GD 000043

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 473

**CONFIDENTIAL**                          GD 000044

Case 1:18-cv-04609-KPF   Document 114-6   Filed 04/10/19   Page 58 of 81



CONFIDENTIAL                    GD 000045

CONFIDENTIAL

GD 000046

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 476

CONFIDENTIAL                              GD 000047

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 477



CONFIDENTIAL                                    GD 000048

CONFIDENTIAL                         GD 000049

CONFIDENTIAL                                    GD 000050

Case 1:18-cv-04609-KPF Document 114-6 Filed 04/10/19 Page 56 of 81



CONFIDENTIAL

GD 000051

**CONFIDENTIAL**                                    GD 000052

CONFIDENTIAL                                        GD 000053

CONFIDENTIAL                                          GD 000054

CONFIDENTIAL                                GD 000055

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 485

Case 1:18-cv-04609-KPF   Document 114-6   Filed 04/10/19   Page 61 of 81



CONFIDENTIAL

GD 000056

**CONFIDENTIAL**                                        GD 000057

**CONFIDENTIAL**                                            GD 000058

CONFIDENTIAL                    GD 000059



**CONFIDENTIAL**

GD 000060

CONFIDENTIAL

GD 000061

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 491

CONFIDENTIAL

GD 000062



**CONFIDENTIAL**                    GD 000063



CONFIDENTIAL                                          GD 000064



CONFIDENTIAL

GD 000065

CONFIDENTIAL GD 000066

CONFIDENTIAL

GD 000067

CONFIDENTIAL

GD 000068



CONFIDENTIAL

GD 000069

CONFIDENTIAL                    GD 000070

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 500

Case 1:18-cv-04609-KPF   Document 114-6   Filed 04/10/19   Page 76 of 81



CONFIDENTIAL

CONFIDENTIAL

GD 000072

CONFIDENTIAL

GD 000073

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 503

CONFIDENTIAL                                    GD 000074

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 504

CONFIDENTIAL

GD 000075

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 505

CONFIDENTIAL

GD 000076

# EXHIBIT 011

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROVIER CARRINGTON,

                    Plaintiff,

          v.

BRIAN GRADEN, BRIAN GRADEN
MEDIA, LLC, VIACOM INC., VIACOM
INTERNATIONAL INC., PARAMOUNT
PICTURES CORPORATION, BRAD
GREY, BRAD GREY ESTATE, and
BRAD ALAN GREY TRUST,

                    Defendants.

18 Civ. 4609 (KPF)

ORDER REGARDING PLAINTIFF'S
REQUEST FOR TURNOVER ORDER

KATHERINE POLK FAILLA, District Judge:

On February 6, 2019, Plaintiff Rovier Carrington filed a letter with the
Court requesting an order requiring his former counsel, the Landau Group PC
(the "Landau Group"), to turn over files regarding his case in their possession.
Plaintiff further requested that the Court terminate the retaining and charging
liens that the Court placed on Mr. Carrington, when it granted the Landau
Group's motion to withdraw.  On February 20, 2019, the Court received the
Landau Group's brief in opposition.  (Dkt. #104).  Having reviewed both parties'
submissions, the Court finds that the Landau Group holds a retaining lien on
Mr. Carrington's file as well as a charging lien; Plaintiff's request for a turnover
order is DENIED.

The retaining lien exists under New York common law:  In this Circuit, "[i]t
is settled that an attorney may claim a lien for outstanding unpaid fees and
disbursements on a client's papers which came into the lawyer's possession as
the result of his professional representation of his client."  *Pomerantz* v.
*Schandler*, 704 F.2d 681, 683 (2d Cir. 1983) (citing *In re San Juan Gold Inc.*, 96 1

F.2d 60 (2d Cir. 1938)). The right to a retaining lien "is grounded in common law, and is enforced in federal courts unless a specific federal law alters the parties' rights." *See Katz* v. *Image Innovations Holdings, Inc.*, No. 06 Civ. 3707 (JGK), 2009 WL 1505174, at *1 (S.D.N.Y. May 27, 2009). "An attorney who has been discharged without cause [ — including where the attorney is relieved by the Court — ] is entitled to be paid a fee on a quantum meruit basis for the reasonable value of the legal services that were provided." *Viada* v. *Osaka Health Spa, Inc.*, No. 04 Civ. 2744 (VM) (KNF), 2005 WL 3481196, at *2 (S.D.N.Y. Dec. 19, 2005). "Unless a client can demonstrate exigent circumstances, counsel need not release papers subject to the lien until his fee has been paid or secured." *Kariman* v. *Time Equities, Inc.*, No. 10 Civ. 3773 (AKH) (JCF), 2011 WL 1900092, at *6 (S.D.N.Y. May 11, 2011) (citing *Allstate Ins. Co.* v. *Nandi*, 258 F. Supp. 2d 309, 312 (S.D.N.Y. 2003)).

In this case, the Court granted the Landau Group leave to withdraw. (Dkt. #82). As the Landau Group notes, the Court specifically made a finding that the termination was without cause in an *ex parte* hearing on the withdrawal motion. (Dkt. #104 (Exhibit 2, Transcript of Withdrawal Hearing, 10-5-18)). Plaintiff does not address the prior orders of the Court. Plaintiff's arguments are largely focused on a breakdown in communications of which the Court was aware when making findings at the October 5, 2018 hearing at which it granted the motion to withdraw. Therefore, the Court finds that the retaining lien remains, and the Landau Group is entitled to "reasonable value" for the costs incurred in litigating this case.

Plaintiff also objects to the total cost breakdown provided by the Landau Group.  The Court has reviewed the material provided by the Landau Group in response. (Dkt. 104, Exhibits 1-10).  The Court finds that the Landau Group has adequately provided justification for the costs in their billing statement, with a single exception.  The Landau Group's bill includes a line item of $250 for "meals and entertainment."  Plaintiff objects to this cost, and the Landau Group's response does not address this item.  Therefore, the Court finds that the Landau Group has not provided an adequate explanation of these costs, and ORDERS the retaining lien reduced to $14,295.00.  The Court DENIES Plaintiff's request for a turnover order and for termination of the Landau Group's liens.

      SO ORDERED.

Dated:     February 25, 2019
           New York, New York

                                        KATHERINE POLK FAILLA
                                        United States District Judge

*A copy of this Order was mailed by Chambers to:*

    Rovier Carrington
    5901 Encina Road
    Suite C-2
    Goleta, CA 93117

# EXHIBIT 012

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

| | |
|---|---|
| USDC SDNY | |
| DOCUMENT | |
| ELECTRONICALLY FILED | |
| DOC #: _____ | |
| DATE FILED: _August 7, 2018_ | |

ROVIER CARRINGTON,                                     :
                                                                        :
                               Plaintiff,              :
                                                                        :
               v.                                          :          18 Civ. 4609 (KPF)
                                                                        :
BRIAN GRADEN, BRIAN GRADEN MEDIA, :          ORDER FOR LIMITED
LLC, VIACOM INC., VIACOM                      :          DISCOVERY
INTERNATIONAL INC., PARAMOUNT        :          CONCERNING THE
PICTURES CORPORATION, BRAD GREY,  :          AUTHENTICITY OF
BRAD GREY ESTATE, BRAD ALAN GREY :          COMMUNICATIONS
TRUST,                                                      :
                                                                        :
                               Defendants.          :
                                                                        :
------------------------------------------------------X

KATHERINE POLK FAILLA, District Judge:

        Defendants Brian Graden, Brian Graden Media, LLC, Viacom Inc.,

Viacom International Inc., Paramount Pictures Corporation, Brad Grey, Brad

Grey Estate, and Brad Alan Grey Trust (collectively, "Defendants"), having

requested immediate discovery limited to the authenticity of the emails

attached as Exhibits 2-11 of the Amended Complaint (Dkt. #40) filed by

Plaintiff Rovier Carrington ("Plaintiff"), and this Court having found that

Defendants have presented sufficient evidence to warrant such immediate

discovery;

        NOW, in consideration of the materials submitted by Defendants in

regards thereto, and the entire record of this case;

        IT IS HEREBY ORDERED, without prejudice to or limiting any existing

duty to preserve relevant materials that has arisen in connection with this

action, that Plaintiff and Defendants, and their respective counsel, shall immediately preserve each and every document constituting or containing any portion of any of the communications that are attached as: (i) Exhibits 2-11 to the Amended Complaint (Dkt. #40-1); (ii) Exhibit A to the Declaration of Darren Stein (Dkt. #56-2); or (iii) Exhibits 1-4 to the Declaration of James Kelshaw (Dkt. #56-3), including, without limitation, all earlier emails in any email chains constituting such communications (collectively, the "At-Issue Communications") and all email forwards of any and all such communications, in original native format as well as any and all electronic or paper copies thereof;

IT IS FURTHER ORDERED that, within fourteen (14) days of the entry of this Order, Plaintiff shall produce each of the At-Issue Communications in Plaintiff's possession, custody or control, in original native format and with all accompanying metadata, with the assistance of a neutral electronic discovery vendor to be agreed upon by the parties (the "Neutral E-Discovery Vendor"), who shall be provided with access to Plaintiff's relevant email accounts in order to make the required production to Defendants and/or to advise Defendants that the At-Issue Communications cannot be located in such accounts, without further disclosure to Defendants of any other information concerning such accounts or the contents thereof, and with the costs of such production to be borne by Defendants;

IT IS FURTHER ORDERED that, within fourteen (14) days of the entry of this Order, Defendants shall produce each of the At-Issue Communications in

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 513

Defendants' possession, custody or control, in original native format and with all accompanying metadata;

IT IS FURTHER ORDERED that, within fourteen (14) days of the entry of this Order, Plaintiff and Defendants shall identify to each of the parties' respective counsel any and all computers, hard drives, tablets, cellular phones or other electronic devices that Plaintiff or Defendants, as applicable, maintain in their possession, custody or control and that have been used to: (i) transmit any of the At-Issue Communications to the recipient(s) reflected therein; or (ii) forward or otherwise transmit any of the At-Issue Communications at any time to the party's counsel of record in this action, or to any other person on or after May 1, 2016, two years prior to the commencement of this action (collectively, the "Devices");

IT IS FURTHER ORDERED that, within twenty-one (21) days of the entry of this Order, Plaintiff shall, upon Defendants' request, make available to the Neutral E-Discovery Vendor all of the Devices within Plaintiff's possession, custody or control, for such Neutral E-Discovery Vendor to create, at Defendants' expense, one or more mirror images of each such Device and return such Devices to Plaintiff upon the creation of such mirror-images;

IT IS FURTHER ORDERED that, within twenty-one (21) days of the entry of this Order, Defendants shall, upon Plaintiff's request, make available to the Neutral E-Discovery Vendor all of the Devices within any Defendant's possession, custody or control, for such Neutral E-Discovery Vendor to create,

at Plaintiff's expense, one or more mirror images of each such Device and return such Devices to Defendants upon the creation of such mirror-images;

IT IS FURTHER ORDERED that the contents of any of the Devices so made available, and the contents of any mirror-images so created, shall not be disclosed to any of the parties or to their counsel and shall otherwise be maintained in strict confidence by the Neutral E-Discovery Vendor, with no examination of any such mirror-images to be conducted by the Neutral E-Discovery Vendor or by anyone else until further Order of the Court; and

IT IS FURTHER ORDERED that the parties' counsel shall appear for a status conference before the Court on **September 11, 2018, at 2:00 p.m.**

SO ORDERED.

Dated:      August 7, 2018
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT   p. 515

# EXHIBIT 013

Thousands of U.S. judges who broke laws or oaths remained on th...                    https://www.reuters.com/investigates/special-report/usa-judges-mi...

PART 1 | OBJECTIONS OVERRULED

# Thousands of U.S. judges who broke laws or oaths remained on the bench



REUTERS ILLUSTRATION/Jason Schneider

In the past dozen years, state and local judges have repeatedly escaped public accountability for misdeeds that have victimized thousands. Nine of 10 kept their jobs, a Reuters investigation found – including an Alabama judge who unlawfully jailed hundreds of poor people, many of them Black, over traffic fines.

By MICHAEL BERENS and JOHN SHIFFMAN in MONTGOMERY, ALABAMA   |   Filed June 30, 2020, noon GMT

**J**udge Les Hayes once sentenced a single mother to 496 days behind bars for failing to pay traffic tickets. The sentence was so stiff it exceeded the jail time Alabama allows for negligent homicide.

Marquita Johnson, who was locked up in April 2012, says the impact of her time in jail endures today. Johnson's three children were cast into foster care while she was incarcerated. One daughter was molested, state records show. Another was physically abused.

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 517

Thousands of U.S. judges who broke laws or oaths remained on th...                https://www.reuters.com/investigates/special-report/usa-judges-mi...

"Judge Hayes took away my life and didn't care how my children suffered," said Johnson, now 36. "My girls will never be the same."

Fellow inmates found her sentence hard to believe. "They had a nickname for me: *The Woman with All the Days*," Johnson said. "That's what they called me: *The Woman with All the Days*. There were people who had committed real crimes who got out before me."

In 2016, the state agency that oversees judges charged Hayes with violating Alabama's code of judicial conduct. According to the Judicial Inquiry Commission, Hayes broke state and federal laws by jailing Johnson and hundreds of other Montgomery residents too poor to pay fines. Among those jailed: a plumber struggling to make rent, a mother who skipped meals to cover the medical bills of her disabled son, and a hotel housekeeper working her way through college.

Hayes, a judge since 2000, admitted in court documents to violating 10 different parts of the state's judicial conduct code. One of the counts was a breach of a judge's most essential duty: failing to "respect and comply with the law."



DAUGHTERS ABUSED: When Marquita Johnson couldn't afford to pay traffic fines that had accumulated for some eight years, Judge Les Hayes sentenced her to more than a year in jail. Her daughters were cast into foster care. One was physically abused, court records show, and another was molested. REUTERS/Chris Aluka Berry

Despite the severity of the ruling, Hayes wasn't barred from serving as a judge. Instead, the judicial commission and Hayes reached a deal. The former Eagle Scout would serve an 11-month unpaid suspension. Then he could return to the bench.

Until he was disciplined, Hayes said in an interview with Reuters, "I never thought I was doing something wrong."

This week, Hayes is set to retire after 20 years as a judge. In a statement to Reuters, Hayes said he was "very remorseful" for his misdeeds.

Community activists say his departure is long overdue. Yet the decision to leave, they say, should never have been his to make, given his record of misconduct.

"He should have been fired years ago," said Willie Knight, pastor of North Montgomery Baptist Church. "He broke the law and

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 518

wanted to get away with it. His sudden retirement is years too late."

Hayes is among thousands of state and local judges across America who were allowed to keep positions of extraordinary power and prestige after violating judicial ethics rules or breaking laws they pledged to uphold, a Reuters investigation found.

RELATED CONTENT

 The Teflon Robe: Read the series

 Reuters database: Judges who were publicly disciplined – and what they did

 Methodology and Q&A: How we examined misconduct

 How to use the searchable database to explore the disciplinary files of judges across America

Judges have made racist statements, lied to state officials and forced defendants to languish in jail without a lawyer – and then returned to the bench, sometimes with little more than a rebuke from the state agencies overseeing their conduct.

Recent media reports have documented failures in judicial oversight in South Carolina, Louisiana and Illinois. Reuters went further.

In the first comprehensive accounting of judicial misconduct nationally, Reuters identified and reviewed 1,509 cases from the last dozen years – 2008 through 2019 – in which judges resigned, retired or were publicly disciplined following accusations of misconduct. In addition, reporters identified another 3,613 cases from 2008 through 2018 in which states disciplined wayward judges but kept hidden from the public key details of their offenses – including the identities of the judges themselves.

All told, 9 of every 10 judges were allowed to return to the bench after they were sanctioned for misconduct, Reuters determined. They included a California judge who had sex in his courtroom chambers, once with his former law intern and separately with an attorney; a New York judge who berated domestic violence victims; and a Maryland judge who, after his arrest for driving drunk, was allowed to return to the bench provided he took a Breathalyzer test before each appearance.

The news agency's findings reveal an "excessively" forgiving judicial disciplinary system, said Stephen Gillers, a law professor at New York University who writes about judicial ethics. Although punishment short of removal from the bench is appropriate for most misconduct cases, Gillers said, the public "would be appalled at some of the lenient treatment judges get" for substantial transgressions.

Among the cases from the past year alone:

**PUBLIC WARNING (2019)**



EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 519

Thousands of U.S. judges who broke laws or oaths remained on th...            https://www.reuters.com/investigates/special-report/usa-judges-mi...

**JACK ROBISON**

District Court, Texas

Burst into a jury deliberation room, exclaiming that God told him the defendant was innocent.
The Herald-Zeitung/Handout via REUTERS

In Utah, a judge texted a video of a man's scrotum to court clerks. He was reprimanded but remains on the bench.

In Indiana, three judges attending a conference last spring got drunk and sparked a 3 a.m. brawl outside a White Castle fast-food restaurant that ended with two of the judges shot. Although the state supreme court found the three judges had "discredited the entire Indiana judiciary," each returned to the bench after a suspension.

In Texas, a judge burst in on jurors deliberating the case of a woman charged with sex trafficking and declared that God told him the defendant was innocent. The offending judge received a warning and returned to the bench. The defendant was convicted after a new judge took over the case.

"There are certain things where there should be a level of zero tolerance," the jury foreman, Mark House, told Reuters. The judge should have been fined, House said, and kicked off the bench. "There is no justice, because he is still doing his job."

Judicial misconduct specialists say such behavior has the potential to erode trust in America's courts and, absent tough consequences, could give judges license to behave with impunity.

"When you see cases like that, the public starts to wonder about the integrity and honesty of the system," said Steve Scheckman, a lawyer who directed Louisiana's oversight agency and served as deputy director of New York's. "It looks like a good ol' boys club."

That's how local lawyers viewed the case of a longtime Alabama judge who concurrently served on the state's judicial oversight commission. The judge, Cullman District Court's Kim Chaney, remained on the bench for three years after being accused of violating the same nepotism rules he was tasked with enforcing on the oversight commission. In at least 200 cases, court records show, Judge Chaney chose his own son to serve as a court-appointed defense lawyer for the indigent, enabling the younger Chaney to earn at least $105,000 in fees over two years.



**ORDER**

On proper filing of affidavit of hardship, the court finds the defendant partially indigent and able to contribute monetarily toward their defense.

**Attorney  Alex Chaney  is appointed to represent this defendant.**

It is further Ordered and Adjudged that the court reserves the right and may order the defendant to reimburse the State of Alabama for all the attorney fees, fines or any other costs as approved and ordered by the court.

DONE this 14th day of November, 2016.

/s/ KIM J. CHANEY
DISTRICT JUDGE

NEPOTISM BY WATCHDOG: While serving on a state board on judicial misconduct, Judge Kim Chaney violated the very nepotism rules he enforced on other judges, appointing his own son to more than 200 cases in his hometown.

In February, months after Reuters repeatedly asked Chaney and the state judicial commission about those cases, he retired from the bench as part of a deal with state authorities to end the investigation.

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 520

Thousands of U.S. judges who broke laws or oaths remained on th...                    https://www.reuters.com/investigates/special-report/usa-judges-mi...

Tommy Drake, the lawyer who first filed a complaint against Chaney in 2016, said he doubts the judge would have been forced from the bench if Reuters hadn't examined the case.

"You know the only reason they did anything about Chaney is because you guys started asking questions," Drake said. "Otherwise, he'd still be there."



# Bedrock of American justice

State and local judges draw little scrutiny even though their courtrooms are the bedrock of the American criminal justice system, touching the lives of millions of people every year.

The country's approximately 1,700 federal judges hear 400,000 cases annually. The nearly 30,000 state, county and municipal court judges handle a far bigger docket: more than 100 million new cases each year, from traffic to divorce to murder. Their titles range from justice of the peace to state supreme court justice. Their powers are vast and varied – from determining whether a defendant should be jailed to deciding who deserves custody of a child.



'GUT INSTINCT': Judge Les Hayes served on the Montgomery Municipal Court in Alabama since 2000. "With my years of experience, I can tell when someone is being truthful with me," he told Reuters. Courtesy Montgomery Advertiser/Handout via REUTERS

Each U.S. state has an oversight agency that investigates misconduct complaints against judges. The authority of the oversight

Thousands of U.S. judges who broke laws or oaths remained on th...          https://www.reuters.com/investigates/special-report/usa-judges-mi...

agencies is distinct from the power held by appellate courts, which can reverse a judge's legal ruling and order a new trial. Judicial commissions cannot change verdicts. Rather, they can investigate complaints about the behavior of judges and pursue discipline ranging from reprimand to removal.

**REPRIMANDED (2017)**



**SAM BENNINGFIELD**
General Sessions Court, Tennessee

Granted jail credit to women who received surgical implants for birth control and men who received vasectomies.
TNcourts.gov/Handout via REUTERS

Few experts dispute that the great majority of judges behave responsibly, respecting the law and those who appear before them. And some contend that, when judges do falter, oversight agencies are effective in identifying and addressing the behavior. "With a few notable exceptions, the commissions generally get it right," said Keith Swisher, a University of Arizona law professor who specializes in judicial ethics.

Others disagree. They note that the clout of these commissions is limited, and their authority differs from state to state. To remove a judge, all but a handful of states require approval of a panel that includes other judges. And most states seldom exercise the full extent of those disciplinary powers.

As a result, the system tends to err on the side of protecting the rights and reputations of judges while overlooking the impact courtroom wrongdoing has on those most affected by it: people like Marquita Johnson.

Reuters scoured thousands of state investigative files, disciplinary proceedings and court records from the past dozen years to quantify the personal toll of judicial misconduct. The examination found at least 5,206 people who were directly affected by a judge's misconduct. The victims cited in disciplinary documents ranged from people who were illegally jailed to those subjected to racist, sexist and other abusive comments from judges in ways that tainted the cases.

The number is a conservative estimate. The tally doesn't include two previously reported incidents that affected thousands of defendants and prompted sweeping reviews of judicial conduct.

**"If we have a system that holds a wrongdoer accountable but we fail to address the victims, then we are really losing sight of what a justice system should be all about."**

Arthur Grim, retired judge

In Pennsylvania, the state examined the convictions of more than 3,500 teenagers sentenced by two judges. The judges were convicted of taking kickbacks as part of a scheme to fill a private juvenile detention center. In 2009, the Pennsylvania Supreme Court appointed senior judge Arthur Grim to lead a victim review, and the state later expunged criminal records for 2,251

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 522

juveniles. Grim told Reuters that every state should adopt a way to compensate victims of judicial misconduct.

"If we have a system that holds a wrongdoer accountable but we fail to address the victims, then we are really losing sight of what a justice system should be all about," Grim said.

In another review underway in Ohio, state public defender Tim Young is scrutinizing 2,707 cases handled by a judge who retired in 2018 after being hospitalized for alcoholism. Mike Benza, a law professor at Case Western Reserve University whose students are helping identify victims, compared the work to current investigations into police abuse of power. "You see one case and then you look to see if it's systemic," he said.

The review, which has been limited during the coronavirus pandemic, may take a year. But Young said the time-consuming task is essential because "a fundamental injustice may have been levied against hundreds or thousands of people."



## 'Special rules for judges'

Most states afford judges accused of misconduct a gentle kind of justice. Perhaps no state better illustrates the shortcomings of America's system for overseeing judges than Alabama.

**CENSURED (2014)**



**SCOTT STEINER**
Superior Court, California

Had sex in his chambers with his intern and with an attorney practicing before his court.
Twitter/Handout via REUTERS

As in most states, Alabama's nine-member Judicial Inquiry Commission is a mix of lawyers, judges and laypeople. All are appointed. Their deliberations are secret and they operate under some of the most judge-friendly rules in the nation.

Alabama's rules make even filing a complaint against a judge difficult. The complaint must be notarized, which means that in theory, anyone who makes misstatements about the judge can be prosecuted for perjury. Complaints about wrongdoing must be made in writing; those that arrive by phone, email or without a notary stamp are not investigated, although senders are notified why their complaints have been summarily rejected. Anonymous written complaints are shredded.

These rules can leave lawyers and litigants fearing retaliation, commission director Jenny Garrett noted in response to written questions.

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 523

"It's a ridiculous system that protects judges and makes it easy for them to intimidate anyone with a legitimate complaint," said Sue Bell Cobb, chief justice of the Alabama Supreme Court from 2007 to 2011. In 2009, she unsuccessfully championed changes to the process and commissioned an American Bar Association report that offered a scathing review of Alabama's rules.

In most other states, commission staff members can start investigating a judge upon receiving a phone call or email, even anonymous ones, or after learning of questionable conduct from a news report or court filing. In Alabama, staff will not begin an investigation without approval from the commission itself, which convenes about every seven weeks.

By rule, the commission also must keep a judge who is under scrutiny fully informed throughout an investigation. If a subpoena is issued, the judge receives a simultaneous copy, raising fears about witness intimidation. If a witness gives investigators a statement, the judge receives a transcript. In the U.S. justice system, such deference to individuals under investigation is extremely rare.

---

**"It's a ridiculous system that protects judges and makes it easy for them to intimidate anyone with a legitimate complaint."**

Sue Bell Cobb, former chief justice of the Alabama Supreme Court

---

"Why the need for special rules for judges?" said Michael Levy, a Washington lawyer who has represented clients in high-profile criminal, corporate, congressional and securities investigations. "If judges think it's fair and appropriate to investigate others for crimes or misconduct without providing those subjects or targets with copies of witness statements and subpoenas, why don't judges think it's fair to investigate judges in the same way?"

Alabama judges also are given an opportunity to resolve investigations confidentially. Reuters interviews and a review of Alabama commission records show the commission has met with judges informally at least 19 times since 2011 to offer corrective "guidance." The identities of those judges remain confidential, as does the conduct that prompted the meetings. "Not every violation warrants discipline," commission director Garrett said.

Since 2008, the commission has brought 21 public cases against judges, including Hayes, charging two this year.

# 496

Number of days Judge Hayes sentenced Marquita Johnson to jail for unpaid traffic tickets.

Two of the best-known cases brought by the commission involved Roy Moore, who was twice forced out as chief justice of the Alabama Supreme Court for defying federal court orders.

Another Alabama justice fared better in challenging a misconduct complaint, however. Tom Parker, first elected to the state's high court in 2004, pushed back when the commission investigated him in 2015 for comments he made on the radio criticizing the U.S. Supreme Court's decision legalizing gay marriage.

Parker sued the commission in federal court, arguing the agency was infringing on his First Amendment rights. He won. Although the commission had dropped its investigation before the ruling, it was ordered to cover Parker's legal fees: $100,000, or about a fifth of the agency's total annual budget.

In 2018, the people of Alabama elected Parker chief justice.

These days, Parker told Reuters, Alabama judges and the agency that oversees them enjoy "a much better relationship" that's less politically tinged. "How can I say it? It's much more respectful between the commission and the judges now."

0:00 / 0:56

📹 David Sachar, director of the Arkansas Judicial Discipline & Disability Commission: "People can be scared for their life."



## "Gut instinct"

Montgomery, Alabama has a deep history of racial conflict, as reflected in the clashing concepts emblazoned on the city's great seal: "Cradle of the Confederacy" and "Birthplace of the Civil Rights Movement."

Jefferson Davis was inaugurated here as Confederate president after the South seceded from the Union in 1861, and his birthday is a state holiday. As was common throughout the South, the city was the site of the lynchings of Black men, crimes now commemorated at a national memorial based here. Police arrested civil rights icon Rosa Parks here in 1955 for refusing to give up her seat on a city bus to a white passenger.

Today, about 60% of Montgomery's 198,000 residents are Black, U.S. census records show. Even so, Black motorists account for about 90% of those charged with unpaid traffic tickets, a Reuters examination of court records found. Much of Judge Hayes' work in municipal court involved traffic cases and the collection of fines. Hayes, who is white, told Reuters that "the majority of people who come before the court are Black."

City officials have said that neither race nor economics have played a role in police efforts to enforce outstanding warrants, no matter how minor the offense.

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 525

Thousands of U.S. judges who broke laws or oaths remained on th...          https://www.reuters.com/investigates/special-report/usa-judges-mi...



CONFLICTING HISTORY: The great seal of Montgomery on the entrance to the city council chamber. Reuters/John Shiffman

In April 2012, Marquita Johnson was among them. Appearing before Hayes on a Wednesday morning, the 28-year-old single mother pleaded for a break.

Johnson had struggled for eight years to pay dozens of tickets that began with a citation for failing to show proof of insurance. She had insurance, she said. But when she was pulled over, she couldn't find the card to prove it.

Even a single ticket was a knockout blow on her minimum-wage waitress salary. In addition to fines, the court assessed a $155 fee to every ticket. Court records show that police often issued her multiple tickets for other infractions during every stop – a practice some residents call "stacking."

Under state law, failing to pay even one ticket can result in the suspension of a driver's license. Johnson's decision to keep driving nonetheless – taking her children to school or to doctor visits, getting groceries, going to work – led to more tickets and deeper debt.

"I told Judge Hayes that I had lost my job and needed more time to pay," she recounted.

By Hayes' calculation, Johnson owed more than $12,000 in fines. He sentenced Johnson to 496 days in jail. Hayes arrived at that sentence by counting each day in jail as $25 toward the outstanding debt. A different judge later determined that Johnson actually owed half the amount calculated by Hayes, and that Hayes had incorrectly penalized her over fines she had already paid. To shave time off her sentence, Johnson washed police cars and performed other menial labor while jailed.

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 526

○                                                                    0:00 / 1:07        ○

◼ Reiko Callner, director of the Washington state Commission on Judicial Conduct: Judges have unique power.

Hayes told Reuters that he generally found pleas of poverty hard to believe. "With my years of experience, I can tell when someone is being truthful with me," Hayes said. He called it "gut instinct" -- though he added, in a statement this week, that he also consulted "each defendant's criminal and traffic history as well as their history of warrants and failures to appear in court."

Of course, the law demands more of a judge than a gut call. In a 1983 landmark decision, Bearden v. Georgia, the U.S. Supreme Court ruled that state judges are obligated to hold a hearing to determine whether a defendant has "willfully" chosen not to pay a fine.

According to the state's judicial oversight commission, "Judge Hayes did not make any inquiry into Ms. Johnson's ability to pay, whether her non-payment was willful."

From jail, "I prayed to return to my daughters," Johnson said. "I was sure that someone would realize that Hayes had made a mistake."

She said her worst day in jail was her youngest daughter's 3rd birthday. From a jail telephone, she tried to sing "Happy Birthday" but slumped to the floor in grief.

"She was choking up and crying," said Johnson's mother, Blanche, who was on the call. "She was devastated to be away from her children so long."

When Johnson was freed after 10 months in jail, she learned that strangers had abused her two older children. One is now a teenager; the other is in middle school. "My kids will pay a lifetime for what the court system did to me," Johnson said. "My daughters get frantic when I leave the house. I know they've had nightmares that I'm going to disappear again."

Six months after Johnson's release, Hayes jailed another single Black mother. Angela McCullough, then 40, had been pulled over driving home from Faulkner University, a local community college where she carried a 3.87 grade point average. As a mother of four children, including a disabled adult son, she had returned to college to pursue her dream of becoming a mental health counselor.

Police ticketed her for failing to turn on her headlights. After a background check, the officer arrested McCullough on a warrant for outstanding traffic tickets. She was later brought before Hayes.

"I can't go to jail," McCullough recalled pleading with the judge. "I'm a mother. I have a disabled son who needs me."

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 527

Hayes sentenced McCullough to 100 days in jail to pay off a court debt of $1,350, court records show. Her adult son, diagnosed with schizophrenia, was held in an institution until her release.



HOPES DASHED: Before she was pulled over for failing to turn on her headlights, Angela McCullough carried a 3.87 grade point average at a local community college. Jailed by Judge Les Hayes, she put her tuition money toward fines she owed. "I don't think I'll ever be able to afford to go back" to college, she says today. REUTERS/Chris Aluka Berry

McCullough said she cleaned jail cells in return for time off her sentence. One day, she recalled, she had to clean a blood-soaked cell where a female inmate had slit her wrists.

She was freed after 20 days, using the money she saved for tuition to pay off her tickets, she said.

Jail was the darkest chapter of her life, McCullough said, a place where "the devil was trying to take my mind." Today, she has abandoned her pursuit of a degree. "I don't think I'll ever be able to afford to go back."

### SUSPENDED 6 MONTHS (2017)



**CHRIS KUNZA MENNEMEYER**
Circuit Court, Missouri

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 528

Deliberately postponed the appointment of public defenders in probation violation cases.
Pike County News/Handout via REUTERS

A clear sign that something was amiss in Montgomery courts came in November 2013, when a federal lawsuit was filed alleging that city judges were unlawfully jailing the poor. A similar suit was filed in 2014, and two more civil rights cases were filed in 2015. Johnson and McCullough were plaintiffs.

The lawsuits detailed practices similar to those that helped fuel protests in Ferguson, Missouri, after a white police officer killed a Black teenager in 2014. In a scathing report on the origins of the unrest, the U.S. Department of Justice exposed how Ferguson had systematically used traffic enforcement to raise revenue through excessive fines, a practice that fell disproportionately hard on Black residents.

"Montgomery is just like Ferguson," said Karen Jones, a community activist and founder of a local educational nonprofit. Jones has led recent protests in Montgomery in the wake of the killing of George Floyd, the Black man whose death under the knee of a cop in Minneapolis set off worldwide calls for racial justice.

In Montgomery, "everybody knew that the police targeted Black residents. And I sat in Hayes' court and watched him squeeze poor people for more money, then toss them in jail where they had to work off debts with free labor to the city."

It was years before the flurry of civil rights lawsuits against Hayes and his fellow judges had much impact on the commission. The oversight agency opened its Hayes case in summer 2015, nearly two years after plaintiffs' lawyers in the civil rights cases filed a complaint with the body. Hayes spent another year and a half on the bench before accepting the suspension.



OUTRAGED: Community activist Karen Jones says she watched Judge Les Hayes "squeeze poor people for more money, then toss them in jail where they had to work off debts with free labor to the city." REUTERS/Michael Berens

Under its own rules, the commission could have filed a complaint and told its staff to investigate Hayes at any time. Commission director Garrett said she is prohibited by law from explaining why the commission didn't investigate sooner. The investigation went slowly, Garrett said, because it involved reviewing thousands of pages of court records. The commission also was busy with

Thousands of U.S. judges who broke laws or oaths remained on th...          https://www.reuters.com/investigates/special-report/usa-judges-mi...

other cases from 2015 to early 2017, Garrett said, issuing charges against five judges, including Moore.



## "Slap in the face"

A few months after Judge Hayes' suspension ended, his term as a municipal judge was set to expire. So, the Montgomery City Council took up the question of the judge's future on March 6, 2018. On the agenda of its meeting: whether to reappoint Hayes to another four-year term.

> Judge Hayes failed to comply with the Constitution of the United States, the dictates of the United States Supreme Court, federal and state case law, the Alabama Constitution, Alabama statutes, and the Alabama Rules of Criminal Procedure.

UNLAWFUL RULINGS: The Alabama judicial oversight agency's determination on the wrongdoing of Judge Les Hayes.

Hayes wasn't in the audience that night, but powerful supporters were. The city's chief judge, Milton Westry, told the council that Hayes and his colleagues have changed how they handled cases involving indigent defendants, "since we learned a better way of doing things." In the wake of the suits, Westry said, Hayes and his peers complied with reforms that required judges to make audio recordings of court hearings and notify lawyers when clients are jailed for failing to pay fines.

As part of a settlement in the civil case, the city judges agreed to implement changes for at least two years. Those reforms have since been abandoned, Reuters found. Both measures were deemed too expensive, Hayes and city officials confirmed.

Residents who addressed the council were incredulous that the city would consider reappointing Hayes. Jones, the community activist, reminded council members that Hayes had "pleaded guilty to violating the very laws he was sworn to uphold."

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 530

0:00 / 0:48

🎥 Resident Phyllis Harvey-Hall told the Montgomery City Council that reappointing Judge Les Hayes was not fair.

The city council voted to rehire Hayes to a fifth consecutive term.

Marquita Johnson said she can't understand why a judge whose unlawful rulings changed the lives of hundreds has himself emerged virtually unscathed.

"Hiring Hayes back to the bench was a slap in the face to everyone," Johnson said. "It was a message that we don't matter."

On Thursday, Hayes will retire from the bench. In an earlier interview with Reuters, he declined to discuss the Johnson case. Asked whether he regrets any of the sentences he has handed out, he paused.

"I think, maybe, I could have been more sympathetic at times," Hayes said. "Sometimes you miss a few."

Additional reporting by Isabella Jibilian, Andrea Januta and Blake Morrison. Edited by Morrison.

# A watchdog accused, a pattern of rulings delayed, a repeat offender

By JOHN SHIFFMAN

*Three recent cases illustrate how Alabama judges who were cited for wrongdoing were able to remain on the bench for years.*

Thousands of U.S. judges who broke laws or oaths remained on th...          https://www.reuters.com/investigates/special-report/usa-judges-mi...

# Judge Chaney: Enforced, broke rules

*What happened when a trial judge who also served on the state's judicial oversight board was accused of misbehavior.*

Alex Chaney was just a year out of law school in 2015 when he started receiving lucrative appointments at taxpayer expense. A district judge began assigning him to represent people too poor to afford a lawyer.

That judge was his dad, Kim Chaney.

Judge Chaney is a powerful figure in rural Cullman County, where he was first elected to the bench in 1992. Chaney serves on a local bank board and has led several statewide justice associations.



Court of the Judiciary finds Judge Chaney guilty of nepotism (AUDIO)

In 2012, the governor honored Chaney by selecting him to also serve on Alabama's nine-member Judicial Inquiry Commission, which investigates misconduct by judges. While on the commission, Chaney broke its ethics laws in his own courtroom.

In 2016, local attorney Tommy Drake filed a complaint against Chaney, alleging that the judge was appointing his son to represent indigent defendants, violating ethics rules that prohibit nepotism. Alex Chaney was paid $105,000 from 2015 to 2017 by the state for such court-appointed work, accounting records show.

Because Judge Chaney served on the judicial commission, Drake sent his complaint to a different state watchdog agency, the Alabama Ethics Commission. On October 4, 2017, the Ethics Commission found that Judge Chaney violated ethics rules and referred the case to the state attorney general.

The following day, records show, Judge Chaney resigned from the Judicial Inquiry Commission. But he remained a trial judge in Cullman. Eighteen months passed.

Last summer, a Reuters reporter began asking state officials about the status of the case. The officials declined to comment.

In November, Reuters sent Judge Chaney and his son queries. They did not respond. The judge's lawyer, John Henig Jr, wrote to Reuters: "Judge Chaney is a person of remarkably good character and would never knowingly do anything unethical or wrong."

Henig said that Judge Chaney appointed his son from a rotating list of lawyers to represent indigent defendants. Henig called the appointments "ministerial" in nature.

"If Judge Chaney's son's name was the next name on the list for appointments, Judge Chaney would call out his son's name and thereafter immediately recuse himself from the case," Henig wrote.

A Reuters review of court records showed otherwise: Judge Chaney participated in several cases after appointing his son and issued substantive decisions. For example, records show that the judge reduced bond for one of his son's clients, and approved another's motion to plead guilty. Henig did not respond to questions about these records.

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 532

Thousands of U.S. judges who broke laws or oaths remained on th...          https://www.reuters.com/investigates/special-report/usa-judges-mi...

DOCUMENT 41

| State of Alabama Unified Judicial System | **CASE ACTION SUMMARY** | Case Number |
|---|---|---|
| Form C-7 Rev. 2/79 | **CONTINUATION** | DC 11-783 |
| | | ID    YR    Number |

Style: Justin Michael Smith

Page Number _____ of _____ Pages

| DATE | ACTIONS, JUDGMENTS, CASE NOTES |
|---|---|
| 2·15·17 | Def may be released $300 to clerk. Attorney Alex Chaney appointed to represent def. |

APPOINTED SON: This document shows how Judge Kim Chaney appointed his lawyer son to handle cases.

This February 7 – eight months after Reuters began inquiring about Chaney – the commission charged the judge with appointing his son to more than 200 cases and making rulings in some of them. Chaney struck a deal with the commission and retired from the bench, avoiding a trial.

During a hearing to approve the deal, commission lawyer Elizabeth Bern said Chaney should have known better than to appoint his son, especially given that he did so while a member of the oversight agency. During Chaney's tenure, the commission had disciplined two judges who abused their office to benefit a relative.

"The nepotism provision is clear and unequivocal without exception," she said.

Chaney did not speak during the hearing.

Drake, the lawyer who filed the complaint in 2016, said that absent the Reuters inquiries, he doubts Chaney would have retired from the bench because he is so politically powerful.

Indeed, shortly after the judge stepped down in disgrace for steering work to his son, the local bar association issued a resolution praising him.

Of Chaney, the local lawyers said, "He has always maintained the highest ethical and moral standards of the office and has been an example to all, what a judge should represent."

## Judge Kelly: "Callous indifference"

*How a judge left children in limbo by repeatedly failing to perform her most basic duty: ruling on cases.*

Montgomery Circuit Court Judge Anita Kelly hears time-sensitive family matters such as child custody, adoption and divorce – cases in which a child remains in limbo until she rules.

Starting in 2014, court and judicial commission records show, word of years-long delays in her cases began to emerge from foster parents, lawyers, social workers and appeals court judges. Commission officials are barred by law from discussing the case, but Reuters pieced together the scope of the investigation through juvenile court records, public documents and interviews with people involved.



FAMILY MATTERS: Montgomery Circuit Court Judge Anita Kelly. Courtesy Montgomery Advertiser/Handout via REUTERS

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 533

Thousands of U.S. judges who broke laws or oaths remained on th...                https://www.reuters.com/investigates/special-report/usa-judges-mi...

In May 2014, foster parents Cheri and Travis Norwood filed a complaint about Kelly with the judicial commission. They alleged the judge's incompetence led to a traumatic, years-long delay in which a foster child who began living with the Norwoods as an infant was taken away from them at age 3 ½ and returned to live with her teenage biological mother.

"If Judge Kelly thought they should have been together, fine," Travis Norwood said in an interview. "Why didn't this happen sooner? Because children can't wait. You can't freeze a child, hold her in suspended animation until her mother is ready."

Social workers who heard about the Norwood complaint forwarded their own concerns about Kelly's conduct in several other cases. Nonetheless, the commission dismissed the Norwood complaint in early 2015, finding "no reasonable basis to charge the judge."

Over the next year, more red flags emerged. State appeals court judges raised concerns about Kelly's "continued neglect of her duty," citing at least five cases that had untenable delays. In November 2015, a supreme court justice criticized the nearly three years it took to determine one child's fate.



YOUTHFUL INNOCENCE: A handprint by a 3-year-old girl whose foster parents filed a judicial complaint against Circuit Court Judge Anita Kelly. The complaint alleged incompetence in a case that lingered for years. REUTERS/John Shiffman

"I refuse to be another adult who has totally failed this child," Justice Tommy Bryan wrote.

Another 20 months passed before the judicial commission took action. In August 2017, it charged Kelly with delays that "manifest a callous indifference or lack of comprehension" to children's well-being. One child's case, it noted, had dragged on for five years.

Kelly took her case to trial before the Court of the Judiciary, the special tribunal that weighs charges against judges. Her attorney argued that the judge worked hard and had shown no ill intent.

Thousands of U.S. judges who broke laws or oaths remained on th...          https://www.reuters.com/investigates/special-report/usa-judges-mi...

In 2018, the tribunal found Kelly failed to "maintain professional competence." Kelly was suspended for 90 days. Still, she kept her job. The court said it likely would have removed Kelly from the bench if not for two factors: Voters re-elected her in 2016, and she exhibited "good character and the lack of evidence of scandal or corruption on her part."

Her lawyer, Henry Lewis Gillis, applauded her reinstatement and said the delays never affected the quality of her decisions.

"Judge Kelly cannot change yesterday," Gillis said. "Rather, she chooses to learn from her past experiences as she continues to handle the many, many, many cases that come before her today."

## Judge Wiggins: Give blood or go to jail

*A judge who is a repeat offender – four times over – remains on the bench.*

Circuit Judge Marvin Wiggins has been hit with misconduct charges by Alabama's judicial conduct commission four times over the past decade. In 2009, he was reprimanded and suspended for 90 days for failing to recuse himself from a voter fraud investigation involving his relatives.



"The public must be able to trust that our judges will dispense justice fairly and impartially," the Court of the Judiciary concluded. "Judge Wiggins, by his actions, disregarded that trust."

FAMILIAR FACE: Alabama Circuit Judge Marvin Wiggins. Courtesy Selma Times-Journal/Handout via REUTERS

In 2016 – in a case that made global headlines – Wiggins was censured for offering defendants the option of giving blood instead of going to jail for failing to pay fines. A local blood drive happened to be taking place at the courthouse that day.

"If you do not have any money and you don't want to go to jail, as an option to pay it, you can give blood today," Wiggins told dozens of defendants, according to a recording. "Consider that as a discount rather than putting you in jail, if you do not have any money."

Forty-one defendants gave blood that day, and the commission called Wiggins' conduct "reprehensible and inexcusable." Wiggins acknowledged that his comments were inappropriate, but noted he did not send anyone to jail that day for failure to pay fines.

ALERT US TO WRONGDOING



Not all judges who have violated their oaths of office, broken the law or misbehaved on the bench have been brought before their states' oversight commission. If you know of a judge who may have committed misconduct, please send us details at tips@thomsonreuters.com. Include the name of the judge, the state, details of what the judge may have done wrong, and a way for us to contact you. Reuters investigates such tips and will contact you before publishing.

Wiggins' lawyer, Joe Espy III, said that the judge "has always tried to cooperate" with authorities. Espy noted that Wiggins is a community leader, an ordained pastor and has been repeatedly re-elected to the bench for more than 20 years.

"He is not only a good judge but a good person," Espy said.

Last year, Wiggins was reprimanded for directly calling the father in a custody dispute – a conversation that violated a rule prohibiting a judge from discussing a case without both sides present. A recording of the call became a key piece of evidence against Wiggins.

In preparation for trial in that case, the commission said it found a "pattern and practice" of similar one-sided calls. The commission also said it found evidence that Wiggins was meeting with divorce litigants in his chambers without lawyers present.

In November, this prompted a new commission case against Wiggins – his fourth in 10 years.

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 535

Thousands of U.S. judges who broke laws or oaths remained on th...          https://www.reuters.com/investigates/special-report/usa-judges-mi...

"At a very minimum," the commission alleged, his track record indicates a "pattern of carelessness or indifferent disregard or lack of respect for the high standards imposed on the judiciary."

But at a pretrial hearing in January, and in a subsequent order, Wiggins scored a victory before the Alabama tribunal that issues final judgment on such cases, the Court of the Judiciary. The presiding judge raised questions about whether proper procedures had been followed in the case against Wiggins.

Three weeks later, the commission dropped the case. And Wiggins returned to the bench.

# Judges who were publicly disciplined – and what they did

In the first comprehensive accounting of judicial misconduct nationally, Reuters identified and reviewed 1,509 cases from the last dozen years – 2008 through 2019 – in which state or local judges resigned, retired or were publicly disciplined following accusations of misconduct. Explore judges in your STATE by using the dropdown menu on the left. To find a specific judge, type in the judge's LAST NAME. To read official records about the judge's conduct, click on a judge's name.

**FIND JUDGES BY STATE**

| Choose a state ▼ | OR | Search by last name 🔍 |

---

**The Teflon Robe**
By Michael Berens and John Shiffman
Contributing reporting: Andrea Januta and Caroline Monahan
Data: Michael Berens, John Shiffman and Isabella Jibilian
Graphic: Matthew Weber
Photo editing: Corinne Perkins
Video: Craig Hettich
Art direction: Troy Dunkley and Pete Hausler
Edited by Blake Morrison

ⓕ 🐦 in ⓡ ✉ 🖨

Follow Reuters Investigates  ⓕ 🐦

---

OTHER REUTERS INVESTIGATIONS

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 536

Thousands of U.S. judges who broke laws or oaths remained on th...                    https://www.reuters.com/investigates/special-report/usa-judges-mi...



**Death Sentence**

Dying Inside | Part 1: The U.S. government collects data on who's dying in which jails around the country – but won't let anyone see it. So, Reuters conducted its own tally.



**The Fighter**

Broadhurst Cona survived the indignities of apartheid. He wasn't going to let the coronavirus kill him. But his family wasn't spared the pandemic's grief.



**The Plastic Pandemic**

Recyclers struggle as oil world invests hundreds of billions to make new plastic



**Maritime Murder**

A deadly voyage reveals the ruin within Venezuela's maritime and defense agencies and alleged complicity of state agents in the very crimes they are meant to prevent.

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 537

# EXHIBIT 014

I9I9CARC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    ROVIER CARRINGTON,

4                    Plaintiff,

5              v.                          18 CV 4609 (KPF)

6    BRIAN GRADEN, ET AL,

7                    Defendants.           CONFERENCE

8    ------------------------------x
                                           New York, N.Y.
9                                          September 18, 2018
                                           2:10 p.m.
10
     Before:
11
                         HON. KATHERINE POLK FAILLA,
12
                                           District Judge
13
                              APPEARANCES
14
     THE LANDAU GROUP
15        Attorneys for Plaintiff
     BY:  KEVIN LANDAU
16
     RUSS AUGUST & KABAT
17        Attorneys for Defendants Brian Graden
           and Brian Graden Media, LLC
18   BY:  STANTON L. STEIN via Speakerphone
          DIANA A. SANDERS
19
     SHEARMAN & STERLING
20        Attorneys for Defendants Viacom Inc.,
           Viacom International, and Paramount Pictures Corporation
21   BY:  STEPHEN R. FISHBEIN
          CHRISTOPHER L. LaVIGNE
22
     LOEB & LOEB
23        Attorneys for Defendants Brad Grey, Brad Grey Estate,
           and Brad Alan Grey Trust
24   BY:  WOOK J. HWANG
          SARAH SCHACTER
25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

I9I9CARC

1           (Case called)

2           MR. LANDAU:  Good afternoon, your Honor.

3           Kevin Landau on behalf of plaintiff.

4           THE COURT:  Good afternoon, sir.

5           MR. LaVIGNE:  Good afternoon, your Honor.

6           Christopher LaVigne and Stephen Fishbein on behalf of

7     Viacom, Inc., Viacom International, and Paramount Pictures.

8           THE COURT:  Sir, to which of you should I be directing

9     my questions?

10          MR. LaVIGNE:  Myself, your Honor.

11          THE COURT:  Ms. Schacter.

12          MS. SCHACTER:  Yes.  Sarah Schacter from Loeb & Loeb

13    with Wook Hwang who will be addressing your Honor.

14          THE COURT:  OK.  Mr. Hwang, I should be directing

15    questions to you?

16          MR. HWANG:  Yes, your Honor.  Thank you.

17          THE COURT:  OK.  Thank you.

18          MS. SANDERS:  And Diana Sanders of Russ August & Kabat

19    on behalf of Brian Graden and Brian Graden Media, and my

20    colleague, Larry Stein, is on the phone.

21          THE COURT:  Mr. Stein, are you there, sir?

22          MR. STEIN:  I am, your Honor.

23          THE COURT:  Mr. Stein, I'm understanding that you are

24    participating by listening; is that correct?

25          MR. STEIN:  That's correct, your Honor, as I

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 540

I9I9CARC

1    understand the Court's instructions.

2            THE COURT:  Why I'm asking that is I have a microphone

3    that is directed to your phone and I'm actually going to move

4    it because it's the one that I would be using.

5            So if you have any problems hearing what's going on

6    you'll let me know, all right, sir?

7            MR. STEIN:  Thank you, your Honor.

8            THE COURT:  Thank you.  All right.  I've gotten two

9    letters.  Can I -- let me first be sure that I only have the

10   two letters.  I have a letter on Shearman & Sterling stationery

11   that I received yesterday in the morning; and then in the

12   afternoon I received a letter from Mr. Landau.

13           Was there anything else I should be expecting?

14           MR. LANDAU:  Not from plaintiffs, your Honor.

15           MR. LaVIGNE:  Not from the defendants, your Honor.

16           THE COURT:  Mr. LaVigne, let me begin with you, sir.

17           I'm a little surprised because I find that the two

18   what I'll call experts, the two forensic folk are not in

19   complete agreement.  What I think -- you may, sir.

20           I want to make sure I understand precisely what was

21   done by both experts so I want to hear about what FTI did and

22   I'm assuming, sir, you've seen what the plaintiff's expert from

23   Progressive has done; is that correct?

24           MR. LaVIGNE:  That's correct, your Honor.  I saw that

25   last night.

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 541

I9I9CARC

1          THE COURT:  Have you had an opportunity -- and I

2     understand if you haven't -- to share that report, the

3     Progressive report with your -- with the expert at FTI?

4          MR. LaVIGNE:  We have not, your Honor.

5          THE COURT:  OK.  Let me understand what you want me to

6     take away from the FTI report.

7          MR. LaVIGNE:  From the FTI report, which is confirmed

8     with the plaintiff's expert's report, is basically three

9     things, Judge.  Neither expert -- both experts cannot identify

10    any of the native at-issue communications that are in dispute.

11         THE COURT:  Let me make sure I understand what you

12    mean by that.  I'll think what I understand you to be saying is

13    there are in the world electronic -- there are e-mails in an

14    electronic format that were sent to Mr. Landau and the other

15    Mr. Landau and so at least these e-mails exist in an electronic

16    format but they appear to be a forwarded e-mail.  And what

17    you've been unable to find is the original version of the

18    e-mail that was forwarded to counsel.  Am I correct?

19         MR. LaVIGNE:  That's right, Judge.

20         Basically there are 40 e-mails in various chains that

21    are Exhibits 2 to 11 in plaintiff's amended complaint.

22         Out of those 40 e-mails, FTI could find one, one

23    e-mail that was in its what we call native original form.

24         THE COURT:  Let's make sure we're speaking from --

25    about the same thing.  Native and original means what?  It's in

I9I9CARC

1    the form -- it's in the -- for example, if it were Outlook, if

2    it were Gmail, it's in that format, and it is as it was when it

3    was sent?

4            MR. LaVIGNE:  Correct.  If you opened up your inbox,

5    Judge, and if a lawyer -- like the e-mail I sent you last night

6    if it's residing in that inbox, that's original native form.

7    So those 39 e-mails, none were found.

8            Now one reason is because what we found out literally

9    on the day that was the deadline for plaintiff to comply with

10   the order turning over all relative communications was that one

11   of the core accounts, the trendsetter@gmail account, and this

12   was the account that allegedly was used to correspond with Reno

13   Logan and encompasses e-mails that are Exhibits 2 to 7 of the

14   amended complaint, that e-mail account apparently, according to

15   plaintiff, was deactivated and nobody has been able to access

16   it.  So that's a second point on which both experts agree.

17   They cannot identify the at-issue communications.  They cannot

18   access this trendsetter account.

19           THE COURT:  Tell me again please, sir, which exhibits

20   are from the --

21           MR. LaVIGNE:  Two to seven.

22           Essentially all of those communications involve the

23   defendant Brad Grey and Paramount and Viacom by virtue of Brad

24   Grey's employment.

25           Now the third main takeaway I got from the FTI report,

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 543

I9I9CARC

1    and I certainly got from Mr. Landau's expert report, is they

2    can't explain why they cannot find these e-mails.

3           Judge, to put this in perspective.  This has been

4    going on now for seven weeks.  And I'm not trying to make light

5    of anything.

6           THE COURT:  Please don't.

7           MR. LaVIGNE:  I won't.

8           Our request has been very simple, what we've asked

9    from the Court.  We've been very, very measured.  Show us the

10   original e-mails.  That's what we have asked.  Show us the

11   natives.

12          They were important enough for Mr. Landau and his

13   client to append them to an amended complaint in July.  Show

14   them to us.

15          Because we have put forth good faith sworn testimony

16   that these are fake.  A nonparty, Darren Stein, came in; put in

17   an affidavit and said that e-mail, Exhibit 11, that e-mail has

18   language that I did not send.  That is false.

19          We have an affidavit from Reno Logan who also said he

20   didn't send those.

21          Our request has been simple.  Simply show us the

22   native e-mails.  And we have been unable to get those.

23          Now FTI gave three possibilities.  Number one --

24          THE COURT:  Let me stop you for a moment, sir.  These

25   are the three possibilities that are outlined in Mr. Landau's

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 544

I9I9CARC

1    letter, pages two and three, correct?

2              MR. LaVIGNE:  I believe that's right.  Mr. Landau did

3    allude to three possibilities that FTI set forth.  I believe

4    it's in page three to four of Mr. Landau's letter from last

5    night.

6              THE COURT:  OK.  But the three that are listed there

7    for Mr. Hammerquist are the same three that you're about to

8    tell me now.

9              MR. LaVIGNE:  Correct.  One possibility is they were

10   fabricated, all these e-mails.

11             This is not something that we can rule out or say

12   definitively.  These are just possibilities that FTI said as to

13   why they could not find the natives.

14             Possibility number two is that it's entirely possible

15   that these e-mails reside in a cloud or an external device such

16   that when plaintiff sent them from the two active accounts it

17   would appear as a forward.  So, in other words, if they were

18   stored in an alternate device, that was a possibility that FTI

19   said.  And that's one that we noted in our letter.

20             And the third possibility is that these e-mails truly

21   were forwarded from like a trendsetter account or another

22   account to one of plaintiff's active accounts and then from

23   there forwarded on to Mr. Landau.

24             Now the reason why that doesn't make sense --

25             THE COURT:  Wait.  One moment, please.  I thought that

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 545

I9I9CARC

1    that particular possibility as proposed by Mr. Hammerquist was

2    that upon being forwarded they were deleted from the original

3    account.

4             MR. LaVIGNE:  That's one of the reasons why we submit

5    that possibility does not make sense.  Because the natives

6    aren't there.

7             The natives aren't there so if they were forwarded to

8    one of the two active accounts from the trendsetter account,

9    for example, there is no evidence of that underlying forward,

10   nor is there evidence in the two active accounts of those

11   e-mails in original form.

12            THE COURT:  Well, we'll get to Mr. Landau's concerns

13   in a moment because I know you've read them.

14            I guess I want to understand the second -- well, which

15   you've now presented as the third, the idea of forwarding.

16            According to Mr. Hammerquist, because I wasn't on the

17   call, is the idea that Mr. Carrington forwarded the e-mails and

18   necessarily volitionally deleted them or is there some universe

19   in which merely by forwarding them they would have been

20   deleted?

21            MR. LaVIGNE:  Certainly not the latter.  Certainly not

22   the latter.  And FTI and Mr. Hammerquist can't speak to exactly

23   what happened.  These are just three possibilities.

24            One of the reasons, we submit, that later possibility

25   should be ruled out is because you have e-mails that are

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 546

I9I9CARC

 1    forwarded from plaintiff's two active accounts but you don't

 2    have the e-mail coming in that sends that underlying e-mail.

 3          So one would have to forward an e-mail into the two

 4    existing accounts, then delete that e-mail, and then forward it

 5    to Mr. Landau.

 6          Is it possible?  It's possible.

 7          THE COURT:  It's possible.

 8          MR. LaVIGNE:  It's possible.

 9          So we outlined those three possibilities and asked for

10    the devices because to the extent there was an external device

11    all plaintiff has to do, and all we've been asking is to give

12    us the device, consistent with the Court's order on August 7 as

13    amended on August 24.

14          THE COURT:  But we've now both been advised that these

15    devices are not in his possession.

16          MR. LaVIGNE:  We've now both been advised.

17          And as of last night the answer, after the six-week

18    odyssey, is there was a hack and that's the reason.

19          THE COURT:  I'm getting to the hack in a moment.  I'm

20    back at the devices.

21          Do you accept the explanation provided by Mr. Landau

22    that he can't give you the devices because his client no longer

23    has them?

24          MR. LaVIGNE:  Judge, I can't sit here and say that I

25    have a good faith basis that he -- that there's a

                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

I9I9CARC

1    misrepresentation going on.

2         I finally -- candidly I find it suspect that over the

3    last five to six years the only devices that were referenced in

4    plaintiff's letter are iPhones which notoriously are very

5    difficult to mirror image.  There's not one reference to a

6    computer on there.

7         THE COURT:  I thought one of the devices was a

8    BlackBerry.

9         MR. LaVIGNE:  BlackBerry, fine.  Not an actual

10   computer.

11        But I don't have a basis, I can't come in and say I

12   have evidence that that is a misrepresentation.

13        THE COURT:  Let me ask the question a little bit

14   differently, please.

15        At any point before last night were you or any of the

16   defense attorneys advised that these devices were no longer in

17   Mr. Carrington's possession?

18        MR. LaVIGNE:  No.

19        THE COURT:  I'll ask the follow-up question.

20        I issued the order some six, seven weeks ago, correct?

21        MR. LaVIGNE:  Correct.  August 7.

22        THE COURT:  When was the -- were there discussions

23   about turning over the devices for review at any time prior to

24   last night?

25        MR. LaVIGNE:  Yes.  There were discussions on I

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 548

I9I9CARC

1    believe it was August 28 where we had -- I can look at my

2    calendar for the exact day.  There were two discussions.  One

3    was on August, I believe, 28 and at that moment in time we had

4    not received a list of devices from the Landaus.  We asked for

5    it.  We were told that they thought they had already supplied

6    it.  We said they had not.  They said all right they'll look

7    into it.

8            And then on September 6, which was last week, we had a

9    follow-up discussion with Zach Landau.  And we asked Zach

10   Landau again:  We need these devices, any devices defined in

11   the order that was used to send an at-issue communication or

12   forward it to counsel, we need to have a list of those.

13           And Zach Landau said the same thing as Mr. Landau,

14   which is we thought we gave that to you; if we didn't give it

15   to you, we'll give it to you tomorrow.  We did not get it.

16           Eleven days has passed by.  We never got this.

17           I can say, in compliance with the Court order, I think

18   the deadline was August 24, myself, counsel for Viacom,

19   Mr. Hwang, counsel for Brad Grey and the estate, we advised

20   plaintiff that we did not have any at-issue communications in

21   our possession nor any devices.  Counsel for Graden did send

22   over native communications via e-mail to Mr. Landau, consistent

23   with the court order, and identified the one device in his

24   possession that was used to transmit or otherwise fall within

25   the parameters of the order.

I9I9CARC

1        So last night hearing about this iPhone was the first

2   time we had heard about it.

3        THE COURT:  Mr. Hwang, did you want to add something

4   to that?

5        MR. HWANG:  I can clarify the timeline.

6        THE COURT:  Please.

7        MR. HWANG:  The deadline to identify the devices was

8   August 24.  On that day all three of the defense counsel

9   advised, again Mr. Graden advised -- disclosed the identity of

10  the device he used to transmit the at-issue communications and

11  Viacom --

12       THE COURT:  Sir, I'm going to ask you to speak slower

13  and louder.  For some reason you're coming in very faintly.

14  Thank you.

15       MR. HWANG:  I apologize, your Honor.

16       THE COURT:  That's OK.  Go ahead.

17       MR. HWANG:  In essence, your Honor, on August 24 that

18  was the deadline to identify all of the devices as that term

19  was defined in the order.  All three sets of defense counsel

20  complied with that obligation on August 24.  We asked,

21  concomitant with our disclosure to the Landaus, that they

22  provide that information to us that day.  That request wasn't

23  complied with.  The deadline to actually produce the devices

24  was August 28.

25       We had e-mail communications on August 24.  We had

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 550

I9I9CARC

1      called on August 30, during which one of the Landaus advised

2      that they thought they already provided the identity devices to

3      us, which they hadn't, and that they would do it the next day.

4              On September 6 we had another call.  We reminded them

5      that that obligation hadn't been satisfied.  Again, they told

6      us they would provide that information the next day.  And,

7      again, we didn't get any of that information.  And the letter

8      submitted last night was the first time we've heard that there

9      is an iPhone that constitutes one of these devices that was

10     required to be mirror imaged weeks ago.  And it's the first

11     time they disclosed to us that all of these other devices that

12     were used to transmit the at-issue communications no longer

13     exist.

14             THE COURT:  Mr. LaVigne, I'm returning to you, please.

15             Mr. Hammerquist gave his alternatives, his theories as

16     to how this might have happened on the 6th of September; is

17     that correct?

18             MR. LaVIGNE:  That's correct, Judge.

19             THE COURT:  Between the 6th of September and

20     yesterday what did you and other defense counsel do to try and

21     figure out which one of these theories was the one that might

22     actually explain what was going on?

23             MR. LaVIGNE:  Well what we did was we looked at the

24     report.  We reviewed it.  It was a neutral e-discovery vendor.

25     So to the extent we're going to have discussions with the

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 551

I9I9CARC

1    vendor the Landaus participate.  We did have one discussion

2    with the vendor where these three possibilities were

3    hypothesized.  And the consensus, at least on our end, was

4    obviously fabrication is one possibility.

5              THE COURT:  Is one possibility, yes.

6              MR. LaVIGNE:  And I'm not jumping to conclusions,

7    Judge.  I'll summarize at the end my view on this.

8              The external devices is another possibility.  To the

9    extent these were stored in an external device we're entitled

10   to that under the order, which is why we had the call on

11   September 6 to see that and to actually test it, and we never

12   got a response.

13             THE COURT:  Let me understand what that means.  Does

14   that mean if somewhere there's a thumb drive where all these

15   exist or if it is in iCloud storage --

16             MR. LaVIGNE:  Both.

17             Let me emphasize.  This is an oral presentation that

18   FTI gave to both counsel for the plaintiff and myself.  And

19   Mr. Landau is right it's not in his report.  But I think we're

20   both in agreement on those three possibilities.

21             And the second one was these deleted e-mails.

22             Now the consensus we have -- and, Judge, what I feel

23   very strongly about -- is we're asking for these four

24   additional methods of discovery in order to get the answers to

25   that.  Because one of the difficulties we have here is, again,

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 552

I9I9CARC

1    at the eleventh hour we found out that the core -- one of the

2    three accounts, which I submit is really the core account from

3    my client's perspective, doesn't exist.  It's deactivated.  And

4    that's been known -- that's been known since the inception of

5    this case, apparently.

6           We have no mechanism of having FTI or any other vendor

7    get in there and look for the native communications.  So that's

8    a gap.

9           So what we want to do -- and, again, to get to the

10   truth and to find out if this is a red herring or not, and this

11   is a straightforward issue:  Do these e-mails exist?  Get a

12   subpoena to Google for the subscriber info and everything else.

13          THE COURT:  And it sounds like Mr. Landau is in

14   complete agreement with you on that.

15          MR. LaVIGNE:  He does not disagree with me based on

16   his last letter.

17          THE COURT:  So that's the easy one.  No one is

18   disagreeing.

19          MR. LaVIGNE:  That's the easy one.

20          And the second point is to direct Mr. Carrington, the

21   plaintiff, who has put these e-mails at issue, to sign a

22   consent so that if this account does exist Google will have the

23   necessary authorization so that they can go, get the content

24   and then send it to FTI.  We're happy to have this go to the

25   neutral e-discovery vendor and we're happy to use the exact

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 553

I9I9CARC

1    same protocols as we have in the past.  And then FTI can look

2    for this.

3            Because right now we have a situation, and I was

4    talking about those three possibilities, Judge, and I'll get to

5    this now, plaintiff took issue with my words that the logical

6    inference is that these were fabricated.  And I stand by that.

7    I stand by that yesterday.  I stand by that today.  I'm not

8    saying it's a finding.  I'm not saying it's a conclusion.  I'm

9    saying it's a logical inference because they can't identify the

10   e-mails, they can't access the key account, and they can't

11   explain it.  They can't explain it.  Basic things like this

12   trendsetter account, why was it deactivated.  And some of the

13   most important -- the core issue in this case, contemporaneous

14   communications that corroborate allegations that are explosive,

15   candidly and to be blunt, those are attached to the complaint

16   but they were never preserved.  And I alluded to the hack

17   before because the explanation now was there was a hack.  Well

18   that hack apparently occurred on May 24.

19            THE COURT:  The day the complaint was filed.

20            MR. LaVIGNE:  No.

21            THE COURT:  Within a day.

22            MR. LaVIGNE:  Three days after the complaint was

23   filed, Judge, but three days after -- in state court, your

24   Honor.

25            THE COURT:  Oh, in state court.  I see.

1          MR. LaVIGNE:  In state court it was filed May 2.

2          THE COURT:  That's right.  OK.  It came to me on the

3     24th of May.

4          MR. LaVIGNE:  That's right, Judge.  But if you take

5     the sequence and the undisputed facts and you accept that there

6     was a hack, that hack, plaintiff says occurred presumably by

7     Brian Graden, since he apparently had these credentials.  That

8     took place three days after Graden's counsel, Graden's counsel

9     sent a preservation request.  So there is this ghost out there

10    who is sophisticated, clever and cunning enough to go in and

11    delete e-mails to support a case, why would somebody do that

12    after a preservation request was sent?

13          Not only that but when they went in there and were

14    smart enough to delete all these natives, why would they not

15    delete e-mails that were forwarded to counsel?  In addition,

16    why would they not delete the one e-mail where there is no

17    dispute about authentication?  Candidly, it doesn't add up, I

18    submit.

19          In addition that hack only happened on one of the

20    three accounts, the roviercarrington@gmail which was in May.

21    If you take what plaintiff's expert said at face value, and I'm

22    purely arguing the inferences, undisputed facts, then in

23    mid-August you have to accept the fact that this expert went

24    in, tried to find some additional e-mails, found some purged

25    items, and that was deleted.  That was deleted.

I9I9CARC

1          THE COURT:  I want to understand.  Was the gentleman

2     from FTI not looking for purged e-mails?

3          I'm a little bit confused -- let me finish, please.

4          I want to be sure I'm understanding because I'm

5     reading Mr. Landau's submission and the report that goes with

6     it to suggest that his forensic person was able to find certain

7     things in purged e-mails.  I want to understand what they are

8     and whether the gentlemen or people from FTI were looking for

9     those things as well.

10          MR. LaVIGNE:  My understanding with FTI is, yes, they

11     were looking for purged e-mails.

12          My understanding also is that Mr. Landau's expert --

13     and this is one of the real issues we have with this disclosure

14     we read last night -- went into plaintiff's account, one of the

15     three accounts, thecarringtondiaries, and apparently never made

16     a mirror image or did anything else but went in and, for lack

17     of a better word, started sleuthing around trying to do all

18     this type of work, identified some e-mails that were purged.

19     And then if you take that report at face value, those findings,

20     that audit trail -- and the record is not entirely clear on

21     this, frankly -- was deleted before FTI was given access.  So

22     by the time FTI was given access to that account, plaintiff's

23     expert had already gone in there, had already apparently found

24     some items that were purged and all that stuff, if you accept

25     this proposition, was deleted.

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 556

I9I9CARC

1          I have no reason to dispute that something was

2     deleted.  The idea that some third-party actor did that and

3     that's why they can't identify, they can't access, they can't

4     explain, to me is highly suspect.

5          THE COURT:  I want to make sure I understand this.

6          I received your letter before I received Mr. Landau's

7     letter.  You are telling me that the progressive review of the

8     account took place immediately prior to FTI's review?

9          MR. LaVIGNE:  That's correct, Judge.

10         THE COURT:  So FTI would not be able to replicate what

11    this individual -- I guess it's PTG was able to do because the

12    deletion -- the purged e-mails had already been deleted.

13         I'm trying to figure -- I'll save that for Mr. Landau

14    because I'm trying to figure out whether what is lost here was

15    the fact of that search or the results of it.  If somewhere

16    there is a purged e-mail account that used to exist but now

17    doesn't, I'd like to understand that.

18         MR. LaVIGNE:  Certainly not an entire -- as I

19    understand it, an entire account has not been purged.

20         THE COURT:  OK.

21         MR. LaVIGNE:  We have three accounts.  The trendsetter

22    account, which, again, has some of the most explosive e-mails.

23    According to plaintiff, the reason why no e-mails are able to

24    be found, identified, or located is because that account was

25    deactivated.

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 557

I9I9CARC

1          THE COURT:  But did you say in your letter that there

2     were communications from the trendsetter account more recently

3     than would have been suggested by the date of its closure?

4          MR. LaVIGNE:  No, your Honor.

5          THE COURT:  When was the last account -- when was the

6     last time someone got something from the trendsetter account?

7          MR. LaVIGNE:  I believe the last e-mail from the

8     trendsetter account is 2014 or 2015.  I think it's Exhibit 7.

9          MR. HWANG:  Your Honor, there were forwards, just to

10    clarify, from Mr. Carrington's Microsoft account of e-mails

11    that resided in the trendsetter account to the Landaus as

12    recently as May 6 and May 7 after the filing of this action.

13         MR. LaVIGNE:  But those are forwards, Judge.  The last

14    time we have any evidence of the trendsetter being used

15    contemporaneously by the plaintiff was around 2014 and 2015.

16         THE COURT:  You and I are talking past each other.

17    I'm trying to figure out when the trendsetter account was

18    deactivated.  Mr. Hwang's answer to me suggests that

19    Mr. Carrington was able, in or about May of 2018, to access the

20    account in order to forward these e-mails to his attorney.

21    However, it may be, because I don't know, that these e-mails

22    were saved long, long ago and only more recently were

23    forwarded.  But Mr. Hwang is understanding what I'm trying to

24    say which is that the trendsetter account was invoked at least

25    in May of 20818.

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 558

I9I9CARC

1          MR. HWANG:  Your Honor, I have a couple examples that

2     were produced to us by FTI that I think it would be helpful for

3     your Honor to see for context.  And I'm happy to provide to

4     plaintiff's counsel a set as well.

5          THE COURT:  Yes.  Mr. Lopez, would you please get

6     those e-mails.

7          THE DEPUTY CLERK:  Yes, your Honor.

8          MR. HWANG:  Your Honor, if I could just clarify one

9     thing as far as the three scenarios that FTI posited to us.

10          THE COURT:  Yes.

11          MR. HWANG:  One scenario was did they reside on an

12     actual device or in the cloud as of the time these e-mails were

13     forwarded to the Landaus, then they would still exist and could

14     have been forwarded.

15          The second scenario as far as the forwards go was a

16     little more convoluted, that they were forwarded from one of

17     Mr. Carrington's account to another one of his accounts and

18     then forwarded to the Landaus.  But what FTI made clear, as

19     anybody who uses e-mail knows, is that when an e-mail is

20     forwarded -- if I e-mail -- if I forward an e-mail to

21     Mr. LaVigne, and then forwards it to Ms. Schacter, that second

22     forward will show my forward to Mr. LaVigne.  So there should

23     be an intermittent header below the top header showing that

24     initial forward.

25          THE COURT:  Yes.  Although to be -- just to give an

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 559

I9I9CARC

1   example.  I have in my lifetime deleted that intermediate

2   forward as for example if I am -- if something is coming into

3   my chambers inbox and I am responding to a particular judge,

4   I'll take out that intermediate part where a clerk sent to me

5   because that's not pertinent to the judge.  So you can delete

6   it.  I can at least think of a world where it can be deleted.

7         All right.  There is nothing in these e-mails to

8   suggest when they were first -- or whether Mr. Carrington had

9   downloaded them into some other format and then forwarded them

10  or whether he was, in fact, accessing the trendsetter account

11  in May of 2018.

12        MR. HWANG:  Well, you can rule out the possibility

13  that they reside somewhere locally because to the extent they

14  existed on some thumb drive or other device as of May 6 or

15  May 7, 2018 that device should have been preserved and

16  disclosed to us.  That was following the commencement of this

17  litigation.

18        Facially these e-mails, what's odd about them is they

19  are trendsetter e-mails exchanged with Reno Logan or some other

20  third party that were forwarded from Mr. Carrington's Microsoft

21  account, rovier@thecarringtondiaries.com, to the Landaus.  But

22  there is no intermittent forward.

23        And your Honor is absolutely correct.  That could have

24  been deleted.  But why in this scenario would you delete that?

25  That would show exactly when they were forwarded.  And did

I9I9CARC

1    Mr. Carrington forward these years ago before the trendsetter

2    account was deactivated to his carringtondiaries account?

3    That's possible.  But that initial forward was located nowhere

4    in the Microsoft account itself.  They should be there because

5    they were forwarded then the Landaus as of a couple of months

6    ago.

7            What the first e-mails from their report show are --

8    the only e-mail they reference in that report is a February 11,

9    2018 forward purportedly from the roviercarrington account to

10   thecarringtondiaries account.  But that itself was a forward of

11   the initial forward from the trendsetter account.  But none of

12   those original forwards exist anywhere.  Nor do the original

13   at-issue communications.

14           So all we have are forwards, upon forwards, upon

15   forwards in almost every instance.  The only plausible

16   scenario, the best case for them, is that there were two

17   forwards.  There is no evidence of the first forward.  There's

18   only evidence of the forward to their counsel.  And that's all

19   that's been purged.

20           So their report, your Honor, it's very confusing.  But

21   once you actually distill the essence of it, clear through the

22   smoke and mirrors, they reference one single e-mail that's a

23   forward of a forward that was supposed to be purged.  So we

24   would submit that that's not really relevant to what we're

25   dealing with here.  All we have, again, are compounded forwards

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 561

I9I9CARC

1    that, as anyone knows, are easily manipulated.

2              THE COURT:  Thank you, sir.

3              MR. LaVIGNE:  Judge, if I may just follow-up on that.

4    That's right.  We do not have, and I can't sit here and tell

5    the Court that I have evidence of when that trendsetter account

6    was used to forward an e-mail to the roviercarrington@gmail or

7    thecarringtondiaries.  As Mr. Hwang said, it's forwards to

8    forwards to forwards and we just don't know.

9              So to answer your Honor's question, May 2018 is the

10   last time we see forwards to the Landaus.  We can't say

11   May 2018 actually came from the trendsetter account onward.

12             THE COURT:  I want to talk about your remedies but I

13   also want to go back to the very disturbing allegation that

14   there's someone hacking into Mr. Carrington's accounts.

15             When is the first time that any of the defense

16   attorneys were made aware of the -- of this issue, of the

17   possibility that Mr. Carrington's accounts had been hacked?

18             MR. LaVIGNE:  When I got the this letter, Judge.  And

19   that's one of my real issues, candidly, with this.  Because if

20   you take this at face value, they were known of a purported

21   hack in May 2018.  Granted, that's based on an automatic

22   notification that Google sent about another device.

23             If you take that as true, that took place three days

24   after they got a preservation request.  And not once during

25   this whole rigmarole, for lack of a better word, the challenges

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 562

I9I9CARC

1    over discovery and challenges about authentication and going

2    through the -- having an e-discovery vendor.  We found out

3    about it yesterday when we got the letter.

4            And in addition --

5            THE COURT:  Am I understanding -- and I I'll talk to

6    Mr. Landau momentarily -- that there are two hacks.

7            MR. LaVIGNE:  Two.  On two different accounts.  So the

8    May 2018 they claim -- plaintiff's counsel claims was a

9    potential hack supposedly committed by Brian Graden associated

10   with the roviercarrington@gmail account.

11           THE COURT:  To be clear what they have is the same

12   thing I get when I sign up at a computer that is not my own.

13           MR. LaVIGNE:  Correct.

14           THE COURT:  There is no way yet to figure out where it

15   came from.

16           MR. LaVIGNE:  Correct.

17           THE COURT:  And you're not adverse, none of the

18   defense counsel are adverse to a subpoena to Google that might

19   identify the IP address.

20           MR. LaVIGNE:  Not at all, Judge.  We welcome that.

21           The second hack was on thecarringtondiaries account.

22   That supposedly took place in August.  And the basis for that

23   is that apparently somebody went into that account and

24   basically deleted some work product that plaintiff's counsel's

25   expert did.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 563

I9I9CARC

1              THE COURT:  But there is no comparable or at least

2    I've not been given a comparable notice from Google letting me

3    know about a sign-in from some other account.

4              MR. LaVIGNE:  Nor have we, Judge.  Nor have we.

5              THE COURT:  Let me understand, before I turn to

6    others, the remedies that you seek.

7              The first one you sought was a disclosure of the

8    devices but now it's been represented that most of the devices

9    are no longer in Mr. Carrington's possession.

10             MR. LaVIGNE:  That's true, Judge.

11             But they also represented that an iPhone 10 was used

12   to forward e-mail communications to the Landaus.  So consistent

13   with the order from August 7 and as amended on August 24, we

14   want FTI to be permitted to make a mirror image of that device.

15   We also want --

16             THE COURT:  One moment, sir.  Have I not ordered this

17   to happen already?

18             MR. LaVIGNE:  Yes, Judge, but it hasn't.  And that's

19   one of the reasons why I wrote my letter.  Because it's three

20   weeks after the fact and it took us writing a letter to the

21   Court to get this information.

22             THE COURT:  Please continue.

23             MR. LaVIGNE:  Related to that --

24             THE COURT:  You're also seeking the plaintiff's

25   deposition.  I'm not sure on what basis I'm giving you that.

I9I9CARC

1          MR. LaVIGNE:  Judge, on the basis that we need to have

2     the plaintiff under oath and answer questions about

3     authentication.

4          Right now the explanation as to why these three

5     experts and plaintiff can't identify, can't access, can't

6     explain is because there was a hack.  And we need to know when

7     this trendsetter account was set up, what the various ways were

8     that these accounts, e-mails were forwarded from trendsetter

9     accounts to others.  This goes to the heart of authentication.

10    And at the end of the day, getting an affidavit on paper which

11    simply says these are authentic does not do justice to this

12    issue.

13         There is a real concern here that there's been a fraud

14    on the court.  And we spent a lot of time and a lot of money

15    trying to get a simple answer which is:  Just send me the

16    original e-mail.

17         And, like I said, I submit it's been a six-week

18    odyssey.  And there's been obfuscation going on and delays

19    complying with the Court's order.  It's time to have the

20    plaintiff testify under oath on that limited issue.

21         Nobody wants to have this devolve into a mini-trial on

22    the merits.  This is a narrow issue and we've been as cabin as

23    we can, as cabin as we can.

24         And I submit once we get the process back, if your

25    Honor orders it from Google, for the Rule 45 subpoena and the

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 565

I9I9CARC

1    content of the account, then plaintiff is going to have to

2    answer and explain how these e-mails that he appended to his

3    complaint and put in public and cast a lot of aspersions on

4    different people, and now the two experts can't find them, and

5    plaintiff can't find them and says there's a hack, the logical

6    inference is there was a fabrication.  And I'm not saying it's

7    the conclusion but to get to that conclusion we have to have

8    plaintiff under oath and testify about it.  And it will be

9    limited deposition.

10            THE COURT:  I think I should direct to Mr. Graden's

11   counsel some questions I are have about Mr. Graden because I

12   believe plaintiff is asking as well for reciprocal discovery

13   from Mr. Graden.  Do you agree it is better that I direct that

14   to Mr. Graden's counsel?

15            MR. LaVIGNE:  For Mr. Graden, yes, Judge.

16            THE COURT:  Let me do that in a moment.

17            But I want to game this out with you for a moment.

18            How am I ever able going to be able to figure out what

19   happened here?

20            In a perfect world Google will give you IP addresses

21   and information that will allow us to figure out who accessed

22   what and we either will or will not be able to rule out

23   Mr. Graden or anyone else as the putative hacker.

24            Because what I don't relish is the prospect that a

25   couple of months from now we will be sitting here with these

I9I9CARC

1   same three alternatives and no way of knowing which is which.

2        MR. LaVIGNE:  We have a way, Judge.  We have a way.

3        And the way is, number one, we start with the basics.

4   If that account exists, if that account exists, Google knows

5   about it.  We get a subpoena to them.  We find out what the

6   dates were, who the subscriber was, what the IP addresses were,

7   and Mr. Carrington provides the necessary consent, Google can

8   look for it and tell us if there's content.  There either is or

9   there isn't.  If there is, and if those e-mails are gone,

10  that's telling.  That's very, very telling.

11       As part of this, and this is not going to boil down to

12  a credibility issue, this is a ground truth issue.  The e-mails

13  either existed or they did not.

14       The plaintiff, Mr. Carrington, has to be put under

15  oath and to explain how exactly it was that this account was

16  set up, why these were forwarded on, when he did it, all of

17  those specifics are things that can be corroborated by Google

18  or another internet service provider.

19       And at the end of the day, your Honor, I think the

20  truth is going to come out.  I think the truth is going to come

21  out.

22       Because we've been dancing around this for seven or

23  eight weeks, and it's not that hard.  It's not that hard.  If

24  these were important enough to be appended to an amended

25  complaint, how is it that nobody can show us what they are?

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 567

I9I9CARC

1          And I don't want to be standing before your Honor two

2    months from now making these same arguments.  I'm confident I

3    won't have to because if plaintiff is put under oath, which he

4    should have to be after making these accusations and after

5    submitting that we should have a neutral e-discovery vendor and

6    all this stuff when the e-mails supposedly were hacked and

7    deleted and we find out about it at the eleventh hour, I think

8    that deposition is going to be very telling.  And I think we

9    can test those answers with the information we get from Google

10   and other internet service providers.

11          THE COURT:  Thank you.  Let me speak, please, with

12   Mr. Graden's counsel.

13          Ms. Sanders, is that correct?

14          MS. SANDERS:  Yes.

15          THE COURT:  Ms. Sanders, you've seen last evening's

16   submission from Mr. Carrington's counsel; is that correct?

17          MS. SANDERS:  Yes.  That's correct.

18          THE COURT:  I'd like to -- I'd like you to respond to

19   what's in there because I want -- I'm saving Mr. Landau for

20   third because there are so many things we want to discuss and a

21   hack is such a -- I think I don't even want to contemplate, but

22   it's been suggested that your client had access to these

23   accounts; is that correct?

24          MS. SANDERS:  That is what has been suggested and it's

25   an explosive accusation and we were just as surprised as I

1    guess everybody else in this room about that.

2           THE COURT:  It may be that you haven't had enough time

3    and I'm not here -- let's be clear.  I'm saying this to all

4    counsel.  I don't want to intrude on privileged communications.

5    I do not.

6           But have you had occasion to speak with your client

7    about the contention that it was your client who had access?

8           MS. SANDERS:  I have had that opportunity to speak

9    with my client.  And he's advised that he has not had access to

10   any of these accounts and has not used any methods to access

11   any of these accounts at any time.

12          THE COURT:  I'll ask the question more pointedly.

13          At any time ever did your client have the ability to

14   access one of Mr. Carrington's e-mail accounts?

15          MS. SANDERS:  No.

16          THE COURT:  Never?  He never had the password?

17   Because I can figure out -- let's just -- let's just use my

18   husband, for example.  I can figure out his e-mail account.  I

19   don't know his password.  So I can figure out what an e-mail

20   account is but not necessarily be able to access it.

21          Your client would know just from looking at e-mails

22   what certain of the Gmail accounts that Mr. Carrington

23   possessed or used were.  But you're saying to me, as an officer

24   of the court, that he never, not ever, was given or otherwise

25   obtained the information that would permit him to access any of

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 569

I9I9CARC

1    Mr. Carrington's e-mail accounts?

2             MS. SANDERS:  Yes.  Based on my communications with my

3    client yesterday evening, I have been advised that he has never

4    accessed the account.  He doesn't believe he was ever provided

5    any access information.

6             I'm sure we can go back to all of these accounts and

7    check to see if there has ever been any e-mail communication or

8    text message where such information has been provided.  But he

9    has unequivocally stated to me that he never used any access

10   information of any kind whatsoever to access any of

11   Mr. Carrington's accounts.

12            THE COURT:  And by extension that he did not access

13   them on or about the 24th of May?

14            MS. SANDERS:  That is correct.

15            THE COURT:  And that he did not access them in August?

16            MS. SANDERS:  That is correct.

17            THE COURT:  And he knows now not to access them?

18            I suppose you'll tell me he can't because he doesn't

19   have the password information.

20            MS. SANDERS:  Exactly.

21            THE COURT:  Is your client -- what is your reaction or

22   your client's reaction to the request for reciprocal discovery

23   from your client?

24            MS. SANDERS:  So we understand the optics and the

25   desire for reciprocity and that's why we've been so open during

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 570

I9I9CARC

1    this entire process.  We have supplied all of the natives in

2    his possession, custody and control that even allude to any of

3    the at-issue communications.  We have done our due diligence to

4    get in contact with various witnesses who have supplied

5    declarations.  We have retained experts and forensic

6    professionals to do all of these things.

7            So, we believe we've done our due diligence.  And

8    there has been nothing that Mr. Graden has submitted to the

9    Court that has been questioned.  The authenticity of the native

10   e-mails that he submitted on August 24 was not even referenced

11   in plaintiff's submission.  So there is no reason to believe

12   that what he has done should be questioned.

13           So we would just submit that there is nothing to

14   warrant any additional discovery of Mr. Graden's devices.

15           We've also identified his device that he's used and

16   are ready, willing and able to supply that device.

17           But additional discovery whether it's a subpoena or

18   whether it's a deposition, I'm not sure I quite understand what

19   more that can show.

20           THE COURT:  All right.  Thank you.

21           Mr. Landau, I appreciate very much your patience.  I

22   candidly don't even know where to begin because there are so

23   many things you and I should be covering.

24           But I guess I'd like to understand, and with the same

25   proviso I said earlier about not wanting to intrude on

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 571

I9I9CARC

```
1    attorney-client communications, why is it that defense counsel

2    were only made aware yesterday that your client was not in

3    possession of a number of the devices at issue and is it --

4    first of all, is it correct that they were not told until your

5    letter of last evening?

6         MR. LANDAU:  Your Honor, we had a conversation on I

7    believe August 16 at which point I did indicate that the

8    trendrovheir account was deactivated prior to our involvement

9    in this case representing Mr. Carrington in any capacity

10   whatsoever.

11        THE COURT:  Tell me please, sir, when to the best of

12   your client's understanding was that account deactivated.

13        MR. LANDAU:  To my recollection, it was around 2014 or

14   '15, within that timeframe.

15        THE COURT:  How did he have the documents that he sent

16   to you in 2018?  Did he download them for some reason?

17        MR. LANDAU:  From what I understand he forwarded from

18   the trendrovheir account to either the roviercarrington@gmail

19   account or thecarringtondiaries account.

20        THE COURT:  So it's not as though he's printed them

21   out and kept them in a folder somewhere.  Before he deactivated

22   the trendsetter account, he forwarded these e-mails?

23        MR. LANDAU:  Yes, your Honor.

24        THE COURT:  And you knew that all along?

25        MR. LANDAU:  We knew that we were the recipient of
```

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 572

I9I9CARC

1    forwarded e-mails.

2              THE COURT:  I asked the wrong question.

3              In -- right after I issued my order you were aware

4    that the trendsetter account had been closed?

5              MR. LANDAU:  Yes, your Honor.  And we advised

6    accordingly.

7              THE COURT:  And you were also aware that any -- these

8    other e-mails had been forwarded from the trendsetter account

9    to one of two other accounts?

10             MR. LANDAU:  Yes, your Honor.  And we supplied all

11   three of the accounts, to our knowledge, the trendsetterrovheir

12   account we indicated was deactivated, the two other accounts

13   that were the recipient of the e-mails from the

14   trendsetterrovheir.

15             THE COURT:  When did you first come to understand that

16   your client had been hacked, his e-mail accounts had been

17   hacked?

18             MR. LANDAU:  I'm not certain the exact date, your

19   Honor, but we were made aware.  He did forward that

20   notification to us.  It was prior to the Court's order.

21             THE COURT:  It was prior to the Court's order?

22             MR. LANDAU:  It was prior to the Court's order.

23             THE COURT:  Was it prior to the conference where I

24   issued the order?

25             MR. LANDAU:  I need to doublecheck on that.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 573

I9I9CARC

1          THE COURT:  Am I correct, sir, that at that conference

2     you never once mentioned your client's concerns that his

3     e-mails had been compromised, his e-mail accounts had been

4     compromised?

5          I'm confident you didn't.

6          MR. LANDAU:  I don't believe so.

7          THE COURT:  Don't you think that's something we all

8     should have known?

9          Let me step backwards a moment, please.  We're trying

10    to figure out the bona fides of these e-mails.  If you had

11    reason to believe that we would never get to that point or that

12    we would be impaired in getting to that point because your

13    client's e-mail system had been hacked, why didn't you tell us

14    back then?

15         MR. LANDAU:  Your Honor, at that point in time we were

16    still figuring out what exactly was required from a discovery

17    standpoint.

18         THE COURT:  That's not a helpful answer to me.

19         Let me -- did you tell defense counsel at any time

20    prior to last evening or last -- yesterday afternoon that your

21    client believed his accounts had been hacked?

22         MR. LANDAU:  Yes.  We made them aware as well as FTI

23    was aware of it as well.

24         THE COURT:  You've told them in the conference --

25    there are multiple conferences that are being discussed.

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 574

I9I9CARC

1    You've actually said to them in these, what I'll call meet and

2    confers pursuant to my order, when they were asking for devices

3    and asking for other information, you said, in words or

4    substance, By the way, my client has had -- someone hacked into

5    his account?  You told them about -- you told them about the

6    May hack?

7           MR. LANDAU:  We didn't issue the fact that whether or

8    not it was hacked because I did not want to draw that

9    conclusion.

10          But the account was accessed on May 24 by an

11   unauthorized user.  Subsequent to that --

12          THE COURT:  Sir, please answer the question that I am

13   asking.

14          Did you tell any of the defense counsel prior to

15   yesterday's letter that your client had had an unauthorized

16   access of his e-mail accounts in May of 2018?

17          MR. LANDAU:  I believe we did, your Honor.

18          THE COURT:  You believe you did?

19          MR. LANDAU:  Yes.

20          THE COURT:  And you told them in words or in writing?

21          MR. LANDAU:  In words.

22          THE COURT:  And when did you tell them, if at all, or

23   did you tell them prior to yesterday's letter that your

24   client's account had been accessed a second time in August?

25          MR. LANDAU:  I don't know about that, your Honor.

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 575

I9I9CARC

1          But from what I understand with respect to the -- our

2    expert's report, PTG's report, they were able to preserve

3    everything so that shouldn't have made any technological

4    difference for FTI's evaluation.

5          THE COURT:  But that's what confuses me so, and I

6    really do need your help in understanding how the two forensic

7    organizations can work together.

8          Again, don't give me privileged communications that I

9    don't want to know.  But your client, in the early stages of

10   this case, said to you in words or substance:  I'm concerned I

11   may have been hacked?

12         MR. LANDAU:  Yes, your Honor.

13         THE COURT:  And he said:  I'm concerned I may have

14   been hacked by Brian Graden?  Or did he not --

15         MR. LANDAU:  That was one of -- yeah.  That was one.

16         THE COURT:  Well it wasn't Brad Grey?

17         MR. LANDAU:  Without, without --

18         THE COURT:  Yes.  Without.

19         MR. LANDAU:  Yes, your Honor.

20         THE COURT:  And all right.  I wish -- no, let me just

21   finish.

22         I wish you had said something to me, because I sent

23   people off on a seven-week frolic and detour that may

24   ultimately never get to the answer that we want because you

25   didn't tell me way back when that your client believed his

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 576

I9I9CARC

1    account was compromised at the outset.  And I can't understand

2    why you didn't think that was something that we'd want to know.

3    And you still can't explain it.  So let's understand what did

4    happen.

5               So PTG reviewed your client's e-mail accounts before

6    FTI did?

7               MR. LANDAU:  Yes, your Honor.

8               THE COURT:  And did the other side know that they were

9    going to do that preliminary review.

10              MR. LANDAU:  I advised the other side that we did have

11   an expert that was working on it.

12              THE COURT:  And so PTG, of course, wanted to look --

13   maybe get a sense of what FTI might encounter in their review?

14              MR. LANDAU:  However the experts do their e-discovery.

15              THE COURT:  May I understand why you felt PTG had to

16   do a review separate and apart from FTI before FTI got to it?

17              MR. LANDAU:  Your Honor, based upon the activity in

18   this case and based upon the manner in which our client's

19   correspondence were deleted by some unauthorized third party,

20   we wanted to get a better sense as to what was going on as

21   well.  And as a result of that we had a very qualified expert

22   go ahead and analyze the accounts to the extent that they

23   could.  And their analysis was such that we provided to the

24   Court.

25              THE COURT:  But I guess I still don't understand why.

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 577

I9I9CARC

1    I know that you and your client were disappointed that I

2    permitted FTI to be retained as the forensic provider in this

3    case because you believed that there might be some conflict,

4    which there was none.

5              Was it before or after I authorized FTI that you

6    retained PTG?

7              MR. LANDAU:  Before.

8              THE COURT:  And you wanted them to sort of get a sense

9    of the lay of the land before FTI started looking at the

10   account?

11             MR. LANDAU:  Absolutely, your Honor.

12             We had the affidavits.  We had the forwarded e-mails.

13   We take candor very seriously.  And as a result of that, we

14   wanted to make sure as well that we weren't having the

15   proverbial wool pulled over our eyes as well because of the

16   fact that the natives did not exist and the forwards from our

17   client to us did.

18             THE COURT:  So let me be clear.  So at the time that

19   PTG came onboard, you knew that there was at least a question

20   raised by the defendants about the validity of these e-mails

21   and so, of course, you wanted to get in there and see what was

22   what.

23             Your expert, PTG, themselves concluded that there were

24   no native original versions of most of the -- the vast majority

25   of the e-mails in question; is that correct?

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 578

I9I9CARC

1          MR. LANDAU:  Correct, your Honor.

2          THE COURT:  And this is where I get confused and I

3    really do need your help and you can take me along in baby

4    steps.

5          But your expert was able to find certain of these

6    e-mails in a purged e-mail account?  Let me understand that.

7          MR. LANDAU:  From what I understand, based on the

8    reports, there are different elements of an e-mail account.

9          THE COURT:  Yes.

10         MR. LANDAU:  There's your inbox, your sent box, and I

11   guess there's a deleted items or purged box as well.  I'm not

12   technologically sophisticated so I apologize if it's not the

13   right terminology.

14         But what they were able to detect from a purged e-mail

15   account were certain authentic headers that had been forwarded

16   from the original trendsetter account.

17         THE COURT:  But I have no knowledge of the contents.

18   I just have the header.  I would never be able to tell you what

19   was the content that was forwarded?

20         MR. LANDAU:  From what I understand, based upon them

21   tracing the lineage from the trendsetter through

22   thecarringtondiaries or roviercarrington Gmail account and then

23   the forwarded on perhaps to us, being his legal counsel at the

24   time, they were able to assess certain headers as to timestamps

25   upon which that original native was formed.

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 579

I9I9CARC

1          THE COURT:  This I understand.  And you might be able

2     to trace certain e-mails.  But you could not guarantee that the

3     very first e-mail was -- you couldn't guarantee or couldn't

4     ascertain from looking at the purged e-mail account that the

5     contents of the e-mail, the very earliest e-mail in the chain,

6     were the exact contents that were forwarded the first time and

7     maybe even the second time.

8          So you can't -- I'm assuming PTG could not and would

9     not be comfortable telling me that for sure the e-mails you

10    have, had received from your client, are the precise e-mails

11    that are -- for which there were headers found in the purged

12    e-mail account?

13          MR. LANDAU:  As far as the content of the e-mail?

14          THE COURT:  Indeed, sir.

15          MR. LANDAU:  I think that's fair.  Yes, your Honor.

16          THE COURT:  We may know if the Google subpoena helps

17    us out but right now today we don't know.

18          MR. LANDAU:  Yes.

19          THE COURT:  I want to understand better what happened

20    in August, that PTG was doing -- was working in the account but

21    then the very searches that it conducted, the very analysis

22    that it did, there is no record of?  It's lost?  What happened?

23          MR. LANDAU:  That's I think --

24          THE COURT:  That's what it says.

25          MR. LANDAU:  Yeah, yeah, and from what I understand

I9I9CARC

1      there is I guess they call it an e-discovery tool.  And the

2      e-discovery tool is such that it creates an audit over a period

3      of time.  I think it can go back as far as maybe 30 days

4      prior -- 30 days prior to when that mechanism was turned on

5      which means that from the moment that they were able to begin

6      conducting their search through the period of some other breach

7      that seems to have occurred, they were able to preserve all of

8      that information.  So nothing was lost from the period of time

9      when they began through FTI's investigation, primarily because

10     they turned this e-discovery tool which began in August.  So as

11     a result of their own expert analysis they were actually -- did

12     a service to FTI and everyone else in this room by preserving

13     whatever was attempted to be deleted in the first place because

14     they had some type of audit already in place.  To me, that's my

15     understanding.

16              THE COURT:  Does it not cause you a little bit of

17     concern --

18              MR. LANDAU:  It does.

19              THE COURT:  Let me finish -- that someone was trying

20     to delete what was there?

21              MR. LANDAU:  I don't know what they were doing but it

22     causes me concern that somebody was going back into the account

23     absolutely, yes.

24              THE COURT:  Your client is adamant that Mr. Graden was

25     given whatever information he needed to access these accounts;

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 581

I9I9CARC

1    is that correct.

2              MR. LANDAU:  Yes, your Honor.

3              THE COURT:  So that would be the password, right?

4    It's nothing else?

5              MR. LANDAU:  Yes.

6              THE COURT:  I just want to make sure there's nothing

7    else.

8              MR. LANDAU:  Yeah.

9              THE COURT:  There are certain -- I have certain

10   accounts that are two types of activation.

11             MR. LANDAU:  Oh, yeah.  I don't think so.

12             THE COURT:  So can I imagine that at some point --

13   well your client says he gave this information to Mr. Graden in

14   or about 2015, correct?

15             MR. LANDAU:  I'm sorry.  Can you rephrase?

16             THE COURT:  I understood, I thought, from your

17   submission and from your client's declaration that the

18   information -- the access information was given to Mr. Graden

19   in or about April of 2015.  That's paragraph two of his

20   supplemental declaration.

21             Is that correct?

22             MR. LANDAU:  Yes, your Honor.

23             THE COURT:  Does your client indicate -- has your

24   client indicated to you, and if you're willing to share, of any

25   other instances in which the password information was given to

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 582

I9I9CARC

1      Mr. Graden?

2              MR. LANDAU:  Your Honor, to my recollection, no.  I

3      don't recall having that conversation as to multiple times.

4              THE COURT:  So your client recalls an instance.

5              MR. LANDAU:  At least one, yes, your Honor.

6              THE COURT:  Well I hope you asked him about others but

7      I'll leave that to you.

8              There was at least an instance in April of 2015 when

9      Mr. Graden is alleged to have received this information.  Are

10     you telling me your client has not changed his Gmail passwords

11     since 2015?

12             MR. LANDAU:  So his trendsetterrovheir account was

13     deactivated right around that time.  And as a result of that,

14     he just had the Gmail and thecarringtondiaries.

15             THE COURT:  Yes, sir.

16             MR. LANDAU:  On which he used.

17             THE COURT:  Yes.

18             MR. LANDAU:  So from our understanding of the

19     conversations, he did not need to change his passwords.

20             THE COURT:  I should have asked a better question.

21     Excuse me.

22             The trendsetter account -- well, for which accounts

23     did Mr. Carrington give Mr. Graden access?  All three?

24             MR. LANDAU:  From my understanding it was the same

25     password for all three.

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 583

I9I9CARC

1          THE COURT:  OK.  That's unwise but that's another

2     issue.

3          When the trendsetter account was closed we were left

4     with two accounts, thecarringtondiaries account and the Gmail

5     account, correct?

6          MR. LANDAU:  Yes, your Honor.

7          THE COURT:  The password for the three has now become

8     the password for two extant accounts, correct?

9          MR. LANDAU:  Yes, your Honor.

10         THE COURT:  Did your client at that point change his

11    password?

12         MR. LANDAU:  At which point?

13         THE COURT:  In -- when the trendsetter account was

14    closed.

15         MR. LANDAU:  To my knowledge, no.

16         THE COURT:  So Mr. Graden shortly after April of 2015

17    in your client's recollection had the password for two of his

18    accounts, the two that still worked?

19         MR. LANDAU:  Yes, your Honor.

20         THE COURT:  In May of this year he received this

21    indication that there had been -- that it had been accessed

22    from an unusual location, I'll just say, a not usual location.

23    At that moment was he concerned?

24         MR. LANDAU:  Yes, your Honor.

25         THE COURT:  Did he change his password?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 584

I9I9CARC

```
1              MR. LANDAU:  I need to ask, your Honor.

2              THE COURT:  I'm trying to figure out.

3              MR. LANDAU:  I would suspect so.  I mean it would make

4     sense to me that he would, yes.

5              THE COURT:  Well then how did the August hack happen?

6              MR. LANDAU:  I don't know.

7              THE COURT:  Well isn't that our concern?

8              MR. LANDAU:  It is.

9              THE COURT:  I thought I read your letter to be saying

10    to me, you were outlining the three alternatives that

11    Mr. Hammerquist presented to the parties.  On your pages two

12    and three, this is your -- you believe this still to be an

13    accurate recollection of what happened, what the three

14    alternatives were, yes?

15             MR. LANDAU:  Yes, Judge.

16             THE COURT:  So I want to make sure -- I want to make

17    sure I understand this sentence, it's just two paragraphs down

18    on page three of your letter.  The e-mail contained in Exhibit

19    5 of plaintiff's complaint -- oh, it's -- I'm sorry.  I believe

20    the report states that it was able to recover a number of

21    previously deleted e-mails.  And from this you intuit that it

22    is the second scenario that must be the case?

23             I want to understand -- if I may, sir, what does that

24    paragraph mean?  If you could break it down for me, if you need

25    to dumb it down for me, please, go ahead.  But I want to
```

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 585

I9I9CARC

1   understand what it means.  Because I read it to mean that there

2   were three alternatives and you think it's alternatives two.

3          MR. LANDAU:  Yes, your Honor.  That's fair.

4          THE COURT:  Let me figure out what the yes means.  The

5   yes means that of the three alternatives presented -- I'm sure

6   you don't believe it's alternative three because that would be

7   a very bad thing.

8          MR. LANDAU:  Of course not.

9          THE COURT:  Of course.  So we have instead one and

10  two.  Have you explored the possibility of one?

11         MR. LANDAU:  We have, your Honor.  And we attempted to

12  have Google contacted.  And at this juncture it appears that

13  the only way that we would be able to obtain any in-depth

14  analysis would be based on subpoena.  So that's why we are in

15  full agreement with that.

16         THE COURT:  Let's make sure I understand what that

17  means.  You're fine with the disclosure of the IP addresses and

18  the contents too?

19         MR. LANDAU:  Well we want to keep the contents

20  confidential so we can provide it to the e-discovery vendor to

21  the extent that there is certain information that is irrelevant

22  to this case because if they go into the account they may, you

23  know, obtain more than just the at-issue communications.

24         THE COURT:  But I've got two allegations of hacking.

25  How can I ensure that any forensic computer person would have

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 586

I9I9CARC

1    this information and would be able -- I don't want anyone

2    touching what comes from Google.  Can I --

3             MR. LANDAU:  That's fine, your Honor.

4             THE COURT:  So what's coming from Google?

5             MR. LANDAU:  Nothing yet because.

6             THE COURT:  Let me be more clear.  What do you think

7    the subpoena is going to call for?

8             MR. LANDAU:  From our perspective?

9             THE COURT:  Yes.

10            MR. LANDAU:  We want the truth as well, your Honor.

11            THE COURT:  Of course.

12            MR. LANDAU:  So with respect to the Gmail for Google

13   or carringtondiaries or anything else that will help us arrive

14   at the truth, then we can make that subpoena as detailed as

15   your Honor would like and ensure that there is some type of

16   security around who receives it as opposed to the parties.

17            What we've also tried to do is, absent the natives and

18   trying to figure out exactly what the lineage of these e-mails

19   that were forwarded, what ended up happening to them, we have

20   provided some additional affidavits from nonparties as well as

21   text messages.

22            THE COURT:  But they don't help me at all in this

23   regard.  They are, if anything, corroborative of events and in

24   no way helpful to me on the issue of the validity or not of

25   these e-mails.  So I've read them all.

I9I9CARC

1          But other than the one from your client which, again,

2     speaks to the e-mails, having someone who may have shown up at

3     an event or may have been told about something does nothing for

4     me.

5          MR. LANDAU:  Understood.

6          THE COURT:  I saw them.  They don't move the needle

7     for me.

8          So I'll let you continue.

9          MR. LANDAU:  So to that point, short of deposing our

10    client, we are in full agreement with the subpoenas and

11    whatever is manifest based on that is manifest.

12         THE COURT:  Do you believe it's appropriate to comply

13    with court orders?

14         MR. LANDAU:  Yes, your Honor.

15         THE COURT:  Why haven't you turned over the iPhone X?

16         MR. LANDAU:  We had a discussion as to it and that was

17    only one discussion with FTI.  We still made scheduling

18    arrangements for some person to go.

19         THE COURT:  Did I not provide a schedule by which this

20    had to be done that you've now gone past?

21         Yes is the answer.

22         MR. LANDAU:  Yes, your Honor.

23         THE COURT:  Why do you think that I would allow that?

24         MR. LANDAU:  Your Honor, it was not us that was

25    preventing anyone from accessing the iPhone.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

I9I9CARC

 1                THE COURT:  Who has the iPhone?

 2                MR. LANDAU:  Our client.

 3                THE COURT:  So he was preventing?

 4                MR. LANDAU:  No, not at all.  It was the -- the

 5      schedule wasn't made between the two parties.  It was a

 6      conversation that didn't continue.

 7                THE COURT:  At what point did you come to me and say

 8      we cannot agree on a schedule for the production of the device?

 9                MR. LANDAU:  We did not, your Honor.

10                THE COURT:  Right.  So how was I to know prior to

11      yesterday's submissions from the parties that you had not, in

12      fact, abided by my order?

13                MR. LANDAU:  You were not.

14                THE COURT:  What possessed you to think that I was

15      going to be pleased to hear that you had not abided by my

16      order?  Because I'm not.  At all.  And I don't understand how

17      you think that it's -- if it's convenient for you it's

18      something that should be abided by.  Because I wanted this on a

19      compressed schedule because you yourself and your cocounsel

20      wanted this case to move forward, as do I.  We can't until we

21      get to the heart here.  And, sadly, we've opened up, I feel, a

22      Pandora's box -- this is not how I thought this was going to

23      turn out.  Never -- since you never told me that there was a

24      hack, this was the most surprising outcome for me.

25                The point is you have to turn it over.  When are you

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

I9I9CARC

1    turning it over?

2           MR. LANDAU:  Your Honor, we have been available to do

3    so.

4           THE COURT:  By the end of the month of September you

5    are turning it over to FTI.

6           MR. LANDAU:  Fine.  OK.

7           THE COURT:  There will be no further discussions about

8    it, correct?

9           MR. LANDAU:  That's fine.

10          THE COURT:  Fine.  You will find a mutually convenient

11   time between now and the end of September to do that.

12          Sir, let me hear from you.

13          You want discovery.  And I've spoken with Mr. Graden's

14   counsel and you've heard the representations that she has made

15   to me.

16          Let me understand what Mr. Graden's -- has Mr. Graden,

17   in fact, produced e-mails in original native format to you?

18          MR. LANDAU:  I believe the only e-mail that was

19   produced was from Mr. Stein; is that correct?

20          MS. SANDERS:  That's not correct.

21          MR. LANDAU:  I don't have those but I'm going to take

22   counsel at her word.

23          THE COURT:  Well why I care is it's in part important

24   that they be produced but it's also in part important that you

25   tell me if there's anything wrong with them.

I9I9CARC

1          I am assuming that since they were produced on or

2     about the 24th of August that you have found nothing wrong

3     with his e-mails.  You've done whatever searching you had to do

4     and there's nothing strange about them.

5          MR. LANDAU:  Well, your Honor, from what I do recall,

6     the e-mails produced were not from at-issue communications.  So

7     I don't know if those are all of the e-mails and I don't know

8     the relevance of them.  But, unfortunately, I don't have them

9     in front of me.

10          THE COURT:  Yes.  That is unfortunate.  I'm sorry.

11          Ms. Sanders, let me talk to you.  What did you

12     produce?

13          MS. SANDERS:  On August 24, in compliance with your

14     order, we produced ten e-mails.  One of them was the Darren --

15     the native Darren Stein e-mail and the remaining nine were

16     native e-mails from Brian Graden's e-mail account that

17     referenced any sort of test that was in the at-issue

18     communications appended to the complaint.

19          So, no, there were no, you know, Exhibit 8, 9, and 10

20     as they were appended to the complaint, because those e-mails

21     don't exist.  But portions of the text of those e-mails that

22     appeared in other e-mails that Mr. Graden had, those were

23     produced.

24          THE COURT:  Ms. Sanders, please tell me if I'm

25     remembering this incorrectly.  I thought I understood from our

I9I9CARC

1    prior conference that there was an argument that one of the

2    e-mails was an assemblage of prior e-mails.  There was a piece

3    taken from one -- it is alleged.  I don't know because I wasn't

4    there -- there is a sentence that or a portion of it that

5    appears in one e-mail, a sentence that appears in still another

6    e-mail and a sentence that appears -- they were, if you will,

7    picked from prior e-mails and put into an e-mail that is

8    attached as an exhibit to the complaint.  Is that correct?

9            MS. SANDERS:  That is correct.

10           THE COURT:  So when you talk about the ten that you're

11   producing, one of them is one that is, if you will, at issue,

12   part of an e-mail string and the others include -- are either

13   relevant because they speak to the issues of this case or

14   they -- speak to the issues of this antecedent issue of the

15   validity of the e-mails or they are important because they are,

16   in your reckoning, the constituent elements of another e-mail?

17           MS. SANDERS:  Yes.

18           And the ten also comprise of different e-mails within

19   all of the commune -- within the chain of communications that

20   all reference portions of the e-mails that have been appended

21   to the complaint.

22           THE COURT:  To the best of your knowledge,

23   Ms. Sanders, were these e-mails made available to FTI?

24           MS. SANDERS:  They have not been.  So they were

25   e-mailed on August 24 to all counsel in two different native

I9I9CARC

1      formats, in an MSG file and in an FTP file.

2              THE COURT:  Could they have been given to FTI?

3              MS. SANDERS:  Absolutely.  I'm more than happy to do

4      that today.

5              THE COURT:  I'm not asking you to.  I just want to

6      know what was done with them.

7              They went from you to the Landau firm, correct?

8              MS. SANDERS:  That's correct.

9              THE COURT:  And after that you don't know what

10     happened to them?

11             MS. SANDERS:  That's correct.

12             THE COURT:  To the best of your recollection, no one

13     representing plaintiff or plaintiff's counsel called you to

14     request further information about those e-mails?

15             MS. SANDERS:  That is correct.

16             THE COURT:  OK.  Thank you.

17             Mr. Landau -- I thank you very much -- come on back.

18     Thank you.

19             Sir, were you the individual to whom these e-mails

20     were sent?

21             MR. LANDAU:  I believe I was on that e-mail.

22             THE COURT:  Was it your -- what were you hoping to do

23     with them when you had them?

24             MR. LANDAU:  Well the e-mail in and of itself doesn't

25     necessarily tell the whole story unless we did have access to

                     SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300

I9I9CARC

1    that account.  What --

2              THE COURT:  Would you not have been able to give those

3    e-mails in original native format to FTI to look at and see if

4    there was anything strange about them, anything suggesting they

5    had been fabricated or manipulated in any way?

6              MR. LANDAU:  I'm sure we could have, your Honor.

7    But --

8              THE COURT:  I thought that's what you were doing.

9              My understanding was the reason for producing those

10   e-mails was so that you could counter Mr. Graden's claims that

11   these things had been fabricated by saying no, it is your

12   e-mails that have been fabricated and I don't know that you've

13   done that.

14             MR. LANDAU:  We have not, your Honor.

15             THE COURT:  I see.

16             All right.  What then do you want, sir, other than the

17   Google subpoena?  What do you think you need from Mr. Graden or

18   his attorneys?

19             MR. LANDAU:  Your Honor, given the aspersions on our

20   client as to the possibility of fabrication or as to the

21   possibility of doing something that he should not have done, in

22   response to that I think it would be logical to have the same

23   type of access through FTI, of course, not us, not our expert,

24   but through FTI to assess Mr. Graden's e-mails in the same

25   fashion that they assessed our client's as well, which may help

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 594

I9I9CARC

1   get closer to the truth.

2          THE COURT:  You're not asking today for a Google

3   subpoena for any of his accounts?

4          MR. LANDAU:  Yes, your Honor.

5          THE COURT:  You are?

6          MR. LANDAU:  We're asking for, to the extent that

7   Google is able to produce information relative to our client, I

8   think we start there.  And then -- I just don't know enough

9   about Mr. Graden's accounts.

10         THE COURT:  I don't know enough about what you're

11  asking me to do.

12         You're asking -- is it the same subpoena?  One would

13  be everything relating to the two Carrington accounts and one

14  related to, what, any of Mr. Graden's communications with

15  Mr. Carrington?

16         MR. LANDAU:  Yes, your Honor.

17         THE COURT:  How would Google be able to identify that,

18  sir?

19         MR. LANDAU:  I'm assuming that they can identify

20  correspondence between particular e-mail accounts perhaps

21  between particular dates.  So there is a variety of ways.

22         But the problem is, is if we were to start with the

23  timestamp in the original account, that's probably what we

24  would need to subpoena between the trendrovheir and the Gmail

25  account and thecarringtondiaries, not the most recent forwarded

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 595

I9I9CARC

1    accounts of course.  So I don't know how far back they'll go

2    but we'll agree and assert that if Mr. Graden's accounts are

3    subpoenaed in a similar fashion it will help all of us arrive

4    at the truth.

5         THE COURT:  All right.  What else would you like me to

6    know?

7         MR. LANDAU:  I think you've been pretty thorough, your

8    Honor.

9         THE COURT:  Thank you.

10        Ms. Sanders, I want to hear from you in reply and then

11   I'll hear from either Mr. Hwang or Mr. LaVigne in reply.

12        Thank you.

13        MS. SANDERS:  Do you mean as to the Google subpoena?

14        THE COURT:  Oh, yes.

15        MS. SANDERS:  Again --

16        THE COURT:  I presume you object but I want to

17   understand why.  Because he's making what, in the Failla

18   parlance, not crazy argument that if what we're trying to do is

19   figure out the truth a way of doing that is to look at both

20   sides.

21        MS. SANDERS:  Yes.  And, your Honor, we have been

22   trying to figure out the truth since this action was filed.

23   We've supplied the at-issue communications that Mr. Graden has

24   in his possession custody and control.  We have submitted an

25   affidavit from a forensic professional who acquired those

I9I9CARC

1     e-mails, who also submitted those with his declaration, and

2     that was from James Kelshaw.  That was in July of this year.

3     And plaintiff's counsel has not represented any reason to

4     believe that any of that information is inaccurate.  And so I

5     still don't quite understand what the purpose of a Google

6     subpoena on Mr. Graden would be other than for the sheer optics

7     of it because it's in the spirit of reciprocity.  The issue

8     here is whether Mr. Carrington's e-mails are authentic, not

9     whether Mr. Graden's e-mails are authentic.

10              THE COURT:  Anything else?

11              Mr. Hwang or Mr. LaVigne.

12              MR. LaVIGNE:  Thank you, Judge.

13              It sounds like there's not opposition to issuing these

14    subpoenas to the internet service providers.

15              It also sounds to get content I believe we're going to

16    need consent, and it sounds like Mr. Landau is not objecting to

17    consent for the trendsetter account.

18              The one issue where it sounds like there is dispute is

19    this deposition.

20              THE COURT:  I think the other issue where there's

21    dispute is to who would receive the contents of any subpoena.

22              MR. LaVIGNE:  What we propose in our letter, Judge,

23    and I'm sensitive to that, is that Google would be directed to

24    turn over the content to FTI and we handle it using the same

25    protocol.  So essentially FTI would conduct the same searches

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 597

I9I9CARC

1    as a neutral e-discovery vendor and would look in the

2    trendsetter account for any evidence of the at-issue

3    communications.  On our side we're fine with that.  Because all

4    we're looking to do is focus on authentication.  We want to

5    keep this as narrow as possible.

6              THE COURT:  Mr. Landau, disagree?

7              MR. LANDAU:  Your Honor is there a way that Google can

8    supply the Court directly?

9              THE COURT:  To me?

10             MR. LANDAU:  Well --

11             THE COURT:  No.

12             MR. LANDAU:  To the tech department here.

13             THE COURT:  No.  With all respect to our tech

14   department, I don't want them -- I don't know that they have

15   the capability of doing this.  And why would -- no --

16             MR. LANDAU:  OK.

17             THE COURT:  -- is the short answer.  We are not FTI

18   and I'm not going to make myself that.

19             MR. LANDAU:  Although I know that the Court did

20   determine that no conflicts exist and I respect the Court's

21   decision as to that, is there perhaps a different third party

22   that would be able to be the custodian of these e-mails so that

23   neither of the parties have access to them that could analyze

24   them accordingly.

25             THE COURT:  I don't understand -- I hear the words

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 598

I9I9CARC

1    that you're saying, sir.  But, if it's going to FTI neither

2    party is going to have access to them.  Isn't that the point?

3          MR. LANDAU:  Yes, your Honor.

4          It appears, though, that with FTI's analysis they

5    didn't go as expansive as our expert's analysis did.  And I

6    just want to make sure that if FTI or whomever else receives it

7    that it's very clear instructions as to what they should do as

8    opposed to what is perhaps convenient for them to otherwise

9    have done.

10         So, for instance, there is no reason why FTI couldn't

11   have performed the same analysis that our experts did and would

12   have determined similarly that an e-mail that was forwarded in

13   2011 maintained the same header, which is what our expert had

14   found.  So there is a little bit more investigation that, from

15   our perspective, does benefit the plaintiff's position.

16         So just so long as whoever the custodian will be

17   understands that there is an expectation that there needs to be

18   full analysis of these e-mails, not just for the purposes of

19   one or the other, but full analysis.  I would want to make sure

20   that that party, that company does do that thorough

21   investigation.

22         THE COURT:  Why couldn't you and defense counsel sit

23   in a room with the provider and explain or show them the

24   reports that were prepared in connection with this round and

25   make sure that they understand that all we care about is

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 599

I9I9CARC

1   figuring out an answer and not what is the answer that we

2   figure out.

3         MR. LANDAU:  That's fine, your Honor.

4         THE COURT:  Then it can be produced to FTI.

5         I'm assuming, perhaps incorrectly, that counsel

6   collectively can agree on the terms of a subpoena.  If you want

7   me to endorse it, I will.  Just send me something that you've

8   all agreed on.  If you can't agree, you'll send me both sides.

9         Mr. LaVigne, what else do you wish to say in reply?

10        I'm interested in Mr. Landau's representation to me as

11  an officer of the court that you were aware in or about August

12  or July that there was a May hack.

13        MR. LaVIGNE:  That's incorrect and false.

14        THE COURT:  OK.

15        MR. LaVIGNE:  I found out about a hack when I read

16  that letter last night.  I can represent to the Court on

17  September 6 there was a phonecall.  Everybody at this table was

18  on it.  FTI was laying out what it found.  And the exact words

19  from Kevin Landau's partner, Zach Landau, was this doesn't make

20  any sense.  How can there be forwards that he then forwarded to

21  his counsel to us and then the deleted them, that doesn't make

22  any sense.  And I distinctly remember that.  And jump in if I'm

23  misstating that, but the exact words used by Zach Landau were

24  that doesn't make any sense.  The first I learned about a hack

25  was when I read the letter yesterday.

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 600

I9I9CARC

1          THE COURT:  What's Mr. Kevin Landau present at this

2    meeting?

3          MR. LaVIGNE:  No.

4          THE COURT:  Is it possible that Mr. Kevin Landau was

5    aware of the hack and Mr. Zachary Landau was not?

6          MR. LaVIGNE:  I can't speak to what's going on at the

7    Landaus.  The first I heard about it was yesterday.

8          THE COURT:  Mr. Landau, did you want to be heard on

9    this?

10          MR. LANDAU:  Just note for the record that Zachary

11    Landau is not present, your Honor.

12          THE COURT:  Absolutely.

13          MR. LANDAU:  And it may be a mischaracterization.

14          THE COURT:  That may be but you just said to me

15    shortly, not that long ago, you said to me that they were made

16    aware.  So you knew that they were made aware.  I want to know

17    how you know that they were made aware.

18          MR. LANDAU:  We had a conversation about it.

19          THE COURT:  We, you, Kevin Landau spoke with any of

20    the three folks at the back table about the May 2018 hack?

21          MR. LANDAU:  As I indicated before, to my recollection

22    we did have a conversation as to the account being accessed by

23    an unauthorized third party.

24          THE COURT:  Is it maybe that you didn't use the word

25    hack?

I9I9CARC

1                MR. LANDAU:  Probably.

2                THE COURT:  You've said unauthorized access.

3                MR. LANDAU:  Yes.

4                THE COURT:  Mr. LaVigne, do you know that an

5     unauthorized access is the same thing as a hack?

6                MR. LaVIGNE:  I do.

7                THE COURT:  Had you been made aware of an unauthorized

8     access, would you have --

9                MR. LaVIGNE:  I had not.  I personally had not.

10               THE COURT:  Is there someone at your firm who might

11    have been aware of it when you were not?

12               MR. LaVIGNE:  Anything is possible but I think we

13    typically participate on phonecalls together and if my

14    partner --

15               MR. FISHBEIN:  I was on at least one of the phonecalls

16    and I was never made aware of unauthorized access, hack, or

17    anything else close to that.

18               THE COURT:  Mr. Hwang.

19               MR. HWANG:  Your Honor, I was on every single

20    phonecall that Mr. LaVigne or Mr. Fishbein was on.  I was

21    spearheading most of the communications with the Landaus during

22    this process.  And at no point was I made aware that there was

23    any unauthorized access or hack into any of these accounts.

24               And Mr. LaVigne's representation as to the September 6

25    call in which Zach Landau professed confusion as to how these

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 602

I9I9CARC

1    original e-mails would no longer reside in these accounts is an

2    accurate rendition of that call.

3              THE COURT:  Thank you.  Ms. Sanders, do you want to

4    chime in?

5              MS. SANDERS:  I was also on each one of those calls

6    that all the parties are alluding to and neither of the Landaus

7    represented to us that there was any unauthorized access of any

8    kind of any of Mr. Carrington's e-mail accounts.

9              THE COURT:  OK.  Thank you.

10             And, Mr. Stein, you've been very patient in listening

11   to this call if you are still -- listening to this meeting, if

12   you are still on the line, could you please let me know if you

13   have a recollection of any unauthorized accesses or hacks being

14   discussed in the last two-month period.

15             MR. STEIN:  I was on every call with the other

16   counsel.  I never heard anything about an unauthorized access

17   or hack or any explanation even close to that.

18             THE COURT:  All right.  Thank you.

19             Mr. LaVigne, something else?

20             MR. LaVIGNE:  Yes, Judge.  This is one of the reasons

21   why, I submit, a deposition is warranted, because for the

22   last -- I'm not trying to use fancy, catchy words like odyssey,

23   but this is a moving target.  We take two steps forward and

24   then there's a response like a hack, and it comes at the

25   eleventh hour.

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 603

I9I9CARC

1        We need to get the plaintiff under oath.  We need to

2   put these issues to him.  And they're straightforward issues.

3   This is not going to be a fishing expedition or long, but

4   basically:  Where did you get the e-mails you forwarded to your

5   counsel?  Why was this account deactivated?  When it was

6   deactivated, did you save them?  That's going to get to the

7   truth.  OK.

8        If we get more information from Google, I think it

9   will help.  It will advance the ball.  But at the end of the

10  day, we spent a lot of time and a lot of money and a lot of

11  energy, candidly, and we're paying for FTI, OK.  And we're

12  getting to the same answer.  You know, they can't explain, they

13  can't identify, they can't access.

14       So we need to get the plaintiff under oath to have him

15  layout exactly what happened, not -- so two months from now if

16  we get more information from Google, we can then get an

17  explanation that well there was a hack by somebody's brother or

18  sister.  Enough is enough.  It's time to get him under oath.

19       He put these -- he and his lawyer put these in public,

20  attached them to his complaint, and they're standing by them,

21  fine.  Then get him under oath and we'll ask him questions.

22  And they will be limited and cribbed and cabined, I can assure

23  the Court, but now is the time for that.

24       THE COURT:  All right.  Thank you all.

25       As should be apparent from this conference I am

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 604

I9I9CARC

1    disappointed on a number of fronts and I don't like finding out

2    about things at the last minute.  I never have.  Just know that

3    for future communications.  Don't tell me things at the

4    eleventh hour.

5         I also don't like and am concerned about the way in

6    which this is evolving, that I'm being given one explanation

7    and then being given another explanation, and then still

8    another.  They are not yet fantastical, but they are also

9    beginning to strain credulity.

10        I'm authorizing the subpoena to Google with the

11   contents to be delivered to FTI.  I am assuming, I'm

12   understanding that Mr. Landau is going to have his client make

13   whatever -- issue whatever consents he needs to so that the

14   content is released as well.

15        I'd ask you to get that subpoena to me if you want me

16   to issue it or sign it as early as possible and I will do so.

17   And let it go to FTI and have them look at it.

18        At the moment -- at the moment I'm not authorizing the

19   deposition of the plaintiff but I need to see what comes back

20   from Google and I may well do that.  If I do that, it will be

21   on a very short timeframe.

22        I am not authorizing or requiring discovery of

23   Mr. Graden.  Mr. Graden has produced ten e-mails.  No one has

24   yet complained about their bona fides so I'm not going to and I

25   don't think he needs to be deposed.

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 605

I9I9CARC

1          There is a possibility, there is a suggestion that he

2    may have access to this account.  But the evidence I have of

3    that is a recollection that he was given account access

4    information in 2015 and then the very fact that someone may

5    have accessed the account in 2018.  I'll just note for the

6    record I'm not -- I'm neither believing nor disbelieving that

7    the account was hacked.  I get those same Google alerts when I

8    use another computer in this courthouse and log in to my

9    network.  So I'm not yet ready to say that something has been

10   hacked.  But I also have an insufficient basis to warrant

11   additional discovery of Mr. Graden.  If things change, you will

12   all let me know but right now I don't have it.

13          So I want the subpoena.  I want the device to be

14   produced.  And I will listen to you all as soon as you get

15   something from FTI if it is worth my listening to.

16          Mr. Hwang, something you wanted to add?

17          MR. HWANG:  Yes, your Honor.  I think there was no

18   objection from Mr. Landau that the subpoenas should cover all

19   three of the accounts, especially in light of the explanation

20   we first received last night that the e-mails were forwarded to

21   the roviercarrington@gmail account and to thecarringtondiaries

22   Microsoft account, especially also in light of the purported

23   hacks of those two accounts.  I think there's agreement with

24   Mr. Landau that the subpoena should cover all three of those

25   accounts as to content and subscriber and IP information.

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 606

I9I9CARC

 1              MR. LANDAU:  Yes.  No objection, your Honor.

 2              THE COURT:  There is no objection.  And that is what

 3      it will be.  Thank you.

 4              Anything else today, counsel?

 5              MR. LaVIGNE:  Not from the defense, your Honor.

 6              MR. HWANG:  Nothing from us.

 7              MS. SANDERS:  Not from us.

 8              THE COURT:  And some day I do want an answer so you'll

 9      all get me to that point.

10              Mr. Stein, we're going to end this conference.  Thank

11      you very much for participating.

12              MR. STEIN:  Thank you for letting me, your Honor.

13              THE COURT:  We're adjourned on this conference.  I

14      will give the parties in the next case time to set up.  Thank

15      them for their patience and maybe you guys can apologize on

16      your way out.

17              (Adjourned)

18

19

20

21

22

23

24

25

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 607

# EXHIBIT 015



Stanton L. Stein
lstein@raklaw.com

Diana A. Sanders
dsanders@raklaw.com

12424

Wilshire Boulevard

12th Floor

Los Angeles

February 12, 2019

California

90025

*Via Email* (Failla_NYSDChambers@nysd.uscourts.gov)

Tel 310.826.7474

Fax 310.826.6991

www.raklaw.com

The Honorable Katherine Polk Failla
United States District Court
Southern District of New York
40 Foley Square, Courtroom 618
New York, New York 10007

**Re:** **Carrington v. Graden et al, Case No. 1:18-cv-04609-KPF**

Dear Judge Failla:

The undersigned counsel represent all Defendants in this action.

Following the February 7, 2019 telephonic conference, we respectfully enclose a proposed Order for Further Discovery, which (1) effectuates the issuance of Court-Ordered subpoenas to Google, Microsoft, and GoDaddy; (2) provides for Plaintiff's authorization to have Google, Microsoft, and GoDaddy turn over the available and recoverable emails in Plaintiff's three known email accounts to FTI, which in turn is directed to locate any At-Issue Communications in those emails and produce them in native format to the parties, together with a report of its findings; and (3) directs FTI to collect and review the mirror-image of Plaintiff's iPhone X for evidence relating to the At-Issue Communications, as well as non-content user activity associated with the relevant email accounts. Pursuant to the Court's direction at the February 7 conference, Defendants respectfully request that the subpoenas to Google, Microsoft, and GoDaddy (attached, respectively, as Exhibits A-C to the proposed order) be signed and so-ordered by the Court.

If Your Honor would like these documents to also be filed by ECF, we ask that your Clerk so advise and we will promptly file them.

Respectfully submitted,

RUSS AUGUST & KABAT

/s/ Stanton L. Stein
Stanton L. Stein (appearing *pro hac vice*)
Diana A. Sanders (appearing *pro hac vice*)

Attorneys for defendants Brian Graden and
Brian Graden Media, LLC



/s/ Wook Hwang

LOEB & LOEB LLP
Wook Hwang
Sarah Schacter
345 Park Avenue
New York, New York 10154

*Attorneys for Brad Grey, Brad Grey Estate and
Brad Alan Grey Trust*

/s/ Stephen Fishbein

SHEARMAN & STERLING LLP
Stephen Fishbein
Christopher LaVigne
599 Lexington Ave.
New York, NY 10022

*Counsel for Viacom Inc., Viacom International Inc.
and Paramount Pictures Corporation*

Enclosure

cc:   Rovier Carrington (via email and mail)
      Defendants' Counsel (via email)

EXHIBITS TO THE ROVIER CARRINGTON CIVIL RIGHTS COMPLAINT  p. 610