# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROVIER CARRINGTON,

      Plaintiff,

    -v.-

BRIAN GRADEN; BRIAN GRADEN MEDIA, LLC;
VIACOM, INC.; VIACOM INTERNATIONAL INC.;
PARAMOUNT PICTURES CORPORATION; BRAD
GREY; BRAD GREY ESTATE; and BRAD ALAN
GREY TRUST,

      Defendants.

18 Civ. 4609 (KPF)

**ORDER**

KATHERINE POLK FAILLA, District Judge:

  This litigation has generated a number of opinions of the Court, both oral and written, all of which are incorporated by reference. *See generally Carrington* v. *Graden*, No. 18 Civ. 4609 (KPF), 2020 WL 5503537 (S.D.N.Y. Sept. 21, 2020) ("*Carrington I*") (discussing, *inter alia*, prior oral decision of October 11, 2019); *Carrington* v. *Graden*, No. 18 Civ. 4609 (KPF), 2020 WL 5758916 (S.D.N.Y. Sept. 28, 2020) ("*Carrington II*"). What this procedural history makes clear is that Plaintiff Rovier Carrington had numerous opportunities to participate fully in this action, but instead elected to disengage once his spoliation and fabrication of documents came to light. The consequences of Plaintiff's actions now manifest themselves in two related motions: the first, a motion by Defendants for an order to show cause why Plaintiff and Plaintiff's new counsel, G. Scott Sobel, Esq., should not be held in civil contempt; and the second, a motion from Plaintiff requesting relief pursuant to Rule 60 of the Federal Rules of Civil Procedure. The arguments

made in Plaintiff's and Mr. Sobel's submissions in both motions overlap to a significant extent and stem from various misperceptions about this case. For this reason, the motions are addressed together in this Order. And for the reasons set forth in the remainder of this Order, Defendants' motion for an order to show cause is granted, while Plaintiff's Rule 60 motion is denied.

## BACKGROUND[1]

### A.     Procedural History

The facts and procedural history of this case have been previously, and exhaustively, detailed by the Court in its oral and written opinions. *See, e.g.*, *Carrington I*, 2020 WL 5503537, at *1-4; *Carrington II*, 2020 WL 5758916, at *1-8. The Court therefore focuses on facts relevant to resolving the instant motions.

On October 11, 2019, pursuant to an oral decision issued earlier that day (Dkt. #171), the Court issued an order dismissing this action because of Plaintiff's misconduct in the litigation (the "Order of Dismissal") (Dkt. #147). But as detailed in *Carrington I*, the fora changed, but Plaintiff's misconduct persisted. In consequence, in an Opinion and Order issued on September 11,

---

[1]     The facts stated herein are primarily drawn from filings on the public docket, including the Court's prior opinions. For ease of reference, the Court refers to the parties' submissions as follows: Defendants' Memorandum of Law in Support of Their Application for an Order to Show Cause is referred to as "Def. OSC Br." (Dkt. #193); Plaintiff's response to Defendants' application is referred to as "Pl. OSC Opp." (Dkt. #196); Mr. Sobel's respective responses to Defendants' application are referred to as "Sobel [1st/2d] OSC Opp." (Dkt. #198, 204); Defendants' Reply Memorandum of Law in Support of their Application for an Order to Show Cause is referred to as "Def. OSC Reply" (Dkt. #202); Plaintiff's Rule 60 Motion is referred to as "Pl. Rule 60 Motion" (Dkt. #197); and Defendants' opposition to Plaintiff's Rule 60 Motion is referred to as "Def. Rule 60 Opp." (Dkt. #201). In addition, the declarations of Christopher LaVigne are referred to as "LaVigne Decl." (Dkt. #194) and "LaVigne Reply Decl." (Dkt. #203).

2020, this Court found that Plaintiff's conduct both prior to and following the Court's Order of Dismissal — the more recent of which was accomplished with Mr. Sobel's assistance — provided the Court with sufficient justification to enjoin Plaintiff from filing any future suits in federal or state court arising from or relating to the subject matter in the instant action without the prior authorization of this Court (the "Injunction"). *See Carrington I*, 2020 WL 5503537, at *6.

Even this order did not engender compliance. To the contrary, on November 3, 2020, the Court received an application from Defendants for an order to show cause why Plaintiff and Mr. Sobel should not be held in civil contempt of court for violating the Injunction. (Dkt. #192-194). Defendants informed the Court that Plaintiff, represented by Mr. Sobel, had filed a complaint in the United States District Court for the Central District of California (the "CDCA Complaint") against Defendants and other parties (including this Court), asserting many of the same claims that Plaintiff had unsuccessfully advanced before this Court. (*Id.*; *see also* Dkt. #194-8). Plaintiff and Mr. Sobel submitted their respective oppositions to Defendants' application on November 20, 2020. (Pl. OSC Opp.; Sobel 1st OSC Opp.).[2] The same day, Plaintiff filed a motion requesting relief pursuant to Rule 60 of the Federal Rules of Civil Procedure from the Court's Order of Dismissal and

---

[2]  Mr. Sobel filed an additional and unsolicited response in opposition to Defendants' application on December 14, 2020. (Sobel 2d OSC Opp.). This submission largely reiterates the arguments made in Plaintiff's response, asserting that they apply as well to Mr. Sobel. (*Id.* at 3).

3

Injunction. (Pl. Rule 60 Motion). On December 11, 2020, Defendants submitted briefing in further support of their application and in opposition to Plaintiff's Rule 60 motion. (Def. OSC Reply; Def. Rule 60 Opp.).

**B.  Plaintiff and Mr. Sobel's Proffered Arguments and Assertions**

In their filings, Plaintiff and Mr. Sobel repeat claims that are at once unsupported and unsupportable. In fact, it disturbs the Court that these submissions were made with the assistance of counsel, given how closely they hew to the line of bad faith. Given the repetitive and interlocking nature of Plaintiff's submissions, the Court will address a few of Plaintiff's representative assertions at the outset.

*First*, Plaintiff belatedly challenges certain actions taken by the Court early on in the instant litigation, including the use of pre-motion letter briefing pursuant to the Court's Individual Rules of Practice in Civil Cases, as well as expedited discovery. Plaintiff now argues that these actions, in which his then-counsel participated, not only served to deprive the Court of subject matter jurisdiction, but also violated Plaintiff's right to legally sufficient notice. While Plaintiff's disaffection for expedited discovery and the occasional use of letter motions is duly noted, the legal ramifications he ascribes to these judicial tools are wholly without merit. The Court had jurisdiction over this action at its inception pursuant to the federal question that was presented in Plaintiff's Complaint. The Court also had the authority, and indeed the duty, to order targeted discovery on the *bona fides* of Plaintiff's evidence in this case prior to the entry of a case management plan. *See, e.g., Chambers* v. *NASCO, Inc.*, 501

4

U.S. 32, 44 (1991) (courts have inherent authority "to conduct an independent investigation in order to determine whether [they have] been the victim of fraud"). The Court has detailed the necessity of this decision in its prior opinions. *See Carrington I*, 2020 WL 5503537, at *2-4; *Carrington II*, 2020 WL 5758916, at *2-5. Lastly, Plaintiff was often represented by counsel in this case; he had notice of all court proceedings; and he made conscious and strategic decisions as to his participation in those proceedings. *See Carrington I*, 2020 WL 5503537, at *1-3; *Carrington II*, 2020 WL 5758916, at *6, 8.

*Second*, Plaintiff now challenges the Injunction on the basis that the Court was required to consider the merits of his pleadings before deeming him a "vexatious litigant." (Pl. OSC Opp. 15). Grossly misstating the law and the procedural history, he asserts repeatedly that he "does not have a history of vexatious litigation." (*Id.* at 17, 18). But as the Court detailed in its prior opinions, Plaintiff repeatedly "engaged in a pattern of filing outrageous claims, fabricating evidence, attempting to escape the consequences of such fabrication, and then refusing to appear in court." *Carrington I*, 2020 WL 5503537, at *5. Defendants' briefing summarizes representative instances of Plaintiff's fraud on counsel and the Court. (Def. Rule 60 Opp. 16-17). And not one, but two, judges have now dismissed Plaintiff's claims with prejudice upon the discovery of this egregious abuse of the judicial process — in both the instant litigation as well as in Plaintiff's subsequent Los Angeles Superior Court action. *Carrington I*, 2020 WL 5503537, at *4. Therefore, when this Court issued the Injunction on September 11, 2020, it carefully considered this

5

history of vexatious litigation, and properly enjoined Plaintiff from further litigation in accordance with the law of this Circuit. *Id.* at *5-6.

*Lastly*, Plaintiff attempts to compensate for the fatal deficiencies in his arguments with the newly-minted claim that the Court must have accepted a "bribe" from Defendants. (Pl. Rule 60 Motion 8-9; Pl. OSC Opp. 8-9). He argues that this "reasonable inference" robs the Court of judicial immunity and subject matter jurisdiction and, further, that it serves as a basis for Plaintiff's CDCA Complaint. (Pl. Rule 60 Motion 8; Pl. OSC Opp. 8). It does none of these things. It does, however, represent a troubling evolution in Plaintiff's history of misconduct before the Court, *viz.*, from fabricating evidence against Defendants to fabricating allegations of bribery against Defendants and this Court.

## DISCUSSION

**A. The Court Denies Plaintiff's Motion for Relief from Final Judgment**

### 1. Applicable Law

Rule 60(b) states that a "court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: [i] mistake, inadvertence, surprise, or excusable neglect; [ii] newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); [iii] fraud ... misrepresentation, or misconduct by an opposing party; [iv] the judgment is void; [v] the judgment has been satisfied ... or [vi] any other reason that justifies relief." Fed. R. Civ. P. 60(b). In the Second Circuit, relief

6

under Rule 60(b) is considered "extraordinary," *Nemaizer* v. *Baker*, 793 F.2d 58, 61 (2d Cir. 1986), and "generally not favored," *Ins. Co. of N. Am.* v. *Pub. Serv. Mut. Ins. Co.*, 609 F.3d 122, 131 (2d Cir. 2010). It is to be granted "upon a showing of exceptional circumstances," *id.*, that is, "'in the rare instance' where a judgment is fundamentally infirm on one of these bases." *Sanchez* v. *MTV Networks*, 525 F. App'x 4, 6 (2d Cir. 2013) (summary order) (quoting *United Student Aid Funds, Inc.* v. *Espinosa*, 559 U.S. 260, 271 (2010)). Relief under Rule 60(b) is warranted only when: "(i) there is highly convincing evidence in support of the motion[;] (ii) the movant shows good cause for failing to act sooner[;] and (iii) the movant shows that granting the motion will not impose an undue hardship on any party." *Delville* v. *Firmenich Inc.*, 23 F. Supp. 3d 414, 419 (S.D.N.Y. 2014) (citation and internal quotation marks omitted).

### 2. Analysis

Plaintiff makes three arguments as to why he is entitled to relief pursuant to Rule 60: (i) all prior Orders in the case are void for lack of subject matter jurisdiction and violations of due process; (ii) fraud upon the Court (and by the Court); and (iii) the interests of justice require it. For substantially the reasons set forth in Defendants' opposition brief, Plaintiff is simply not entitled to this extraordinary relief.

Plaintiff first argues that Rule 60(b)(4) provides him with grounds for relief. (Pl. Rule 60 Motion 4). A judgment can be deemed void under Rule 60(b)(4) in only two circumstances: "[t]he movant must demonstrate either

7

'a certain type of jurisdictional error' or 'a violation of due process that deprives a party of notice or the opportunity to be heard.'" *Sec. & Exch. Comm'n* v. *Allaire*, No. 03 Civ. 4087 (DLC), 2019 WL 6114484, at *2 (S.D.N.Y. Nov. 18, 2019) (quoting *Espinosa*, 559 U.S. at 270). Plaintiff has made neither showing here. As Defendants have stated, and as Plaintiff has previously conceded, the Court had subject matter jurisdiction over Plaintiff pursuant to the federal question that was presented in his Complaint, and any quarrels Plaintiff now has with the Court's Individual Rules of Practice and discovery decisions do not deprive the Court of jurisdiction. (*See, e.g.*, Dkt. #56 (joint letter stating "[t]he parties agree that the Court has original federal question jurisdiction over this matter pursuant to 15 U.S.C. § 4 and 28 U.S.C. § 1331 and that the Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a)")). Plaintiff argues that various purported failures by the Court to comport with the Federal Rules of Civil Procedure resulted in the "usurp[ing]" of jurisdiction. (Pl. Rule 60 Motion 5). However, even if Plaintiff's belatedly raised disputes with the Court's practices were meritorious (and the Court makes no such concession), they would still fail to establish any loss of the Court's jurisdiction. *See Nemaizer*, 793 F.2d at 65 (finding that courts do not "plainly usurp jurisdiction when [they] merely commit[] an error in the exercise of that power").

Further, as to the alleged due process violations, Plaintiff has not demonstrated that he was "deprive[d] [] of notice or the opportunity to be heard." *Espinosa*, 559 U.S. at 271. Firstly, Plaintiff has failed to identify, let

8

alone put forth any "highly convincing" evidence of any error in the proceedings. *Delville*, 23 F. Supp. 3d at 419. But also, as the record amply demonstrates, Plaintiff, who again was represented by counsel during much of the litigation, received actual notice of the proceedings and took full advantage of the opportunities to be heard, strategically absenting himself from conferences when it suited him to do so. *See Carrington I*, 2020 WL 5503537, at *2-4; *Carrington II*, 2020 WL 5758916, at *6. He cannot now use Rule 60(b)(4) as "a substitute for [] timely appeal[s]" of the Order of Dismissal and Injunction that he elected not to pursue. *Espinosa*, 559 U.S. at 270.

Plaintiff also argues that the Order of Dismissal and Injunction must be vacated due to "fraud on the court." (Pl. Rule 60 Motion 13-16). As Defendants note, while Plaintiff cites to Rule 60(b)(3) in support of this argument, he would do better to rely upon Rule 60(d)(3) of the Federal Rules of Civil Procedure, which empowers the Court to "set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d)(3).[3] While Plaintiff reiterates the same arguments addressed above, they are no more successful here, for Plaintiff can cite no fraud on the Court other than his own. (*See* Dkt. #170 at 48-49 (determining "under a clear and convincing evidence standard, that Mr. Carrington ha[d] sentiently set in motion some unconscionable scheme,

---

[3] In any event, if Plaintiff intends to rely on Rule 60(b)(3), as Defendants note, his claim was time-barred with respect to the Order of Dismissal, as his Rule 60 Motion was filed more than a year after the October 11, 2019 entry of the Court's Order of Dismissal. (Def. Rule 60 Opp. 19 n.10 (citing Fed. R. Civ. P. 60(c)(1)).

9

calculated to interfere with the judicial system's ability impartially to adjudicate the action")).

For essentially the same reasons, Plaintiff's pursuit of relief under Rule 60(b)(6), "in the interests of justice," also fails. In their briefing, Defendants outline a number of grounds for rejecting Plaintiff's Rule 60(b)(6) challenge (Def. Rule 60 Opp. 21-23), including that Plaintiff is endeavoring to use Rule 60 improperly to "relitigate matters already resolved by the court adversely to [Plaintiff]," *Batac Dev. Corp.* v. *B&R Consultants Inc.*, No. 98 Civ. 721 (CSH), 2000 WL 307400, at *3 (S.D.N.Y. Mar. 23, 2000); and that Plaintiff seeks relief from an Injunction that resulted from his own fraudulent conduct in this matter, *see Marshak* v. *Sheppard*, 381 F. Supp. 3d 261, 265 (S.D.N.Y. 2019) (finding that a party's "unclean hands … weigh[ed] against granting his [Rule 60] motion"). On this record, the Court easily concludes that Plaintiff has failed to meet his burden of showing "extraordinary circumstances justifying relief." *Nemaizer*, 793 F.2d at 63.

**B.     The Court Grants Defendants' Motion for an Order to Show Cause**

    **1.     Applicable Law**

"[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt." *Waterkeeper Alliance, Inc.* v. *Salt*, 829 F. App'x 541, 543 (2d Cir. 2020) (summary order) (quoting *Spallone* v. *United States*, 493 U.S. 265, 276 (1990)). That power "reaches both conduct before the court and that beyond the court's confines." *Chambers*, 501 U.S. at 44.

A court may hold a party in civil contempt for failure to comply with a court order if: "[i] the order the party failed to comply with is clear and unambiguous[;] [ii] the proof of noncompliance is clear and convincing[;] and [iii] the party has not diligently attempted to comply in a reasonable manner." *Al Hirschfeld Found.* v. *Margo Feiden Galleries Ltd.*, 438 F. Supp. 3d 203, 207 (S.D.N.Y. 2020) (quoting *CBS Broadcasting Inc.* v. *FilmOn.com, Inc.*, 814 F.3d 91, 98 (2d Cir. 2016)). "The contemnor need not willfully violate the order for contempt to be appropriate." *Jolen, Inc.* v. *Kundan Rice Mills, Ltd.*, No. 19 Civ. 1296 (PKC), 2019 WL 2949988, at *3 (S.D.N.Y. July 9, 2019) (citing *Paramedics Electromedicina Comercial, Ltda* v. *GE Med. Sys. Info. Techs. Inc.*, 369 F.3d 645, 655 (2d Cir. 2004)).

Civil contempt sanctions are used as a tool to "coerce the contemnor into future compliance with the court's order or to compensate the complainant for losses resulting from the contemnor's past noncompliance." *New York State Nat'l Org. for Women* v. *Terry,* 886 F.2d 1339, 1352 (2d Cir. 1989). A district court has "broad discretion to fashion an appropriate coercive remedy … based on the nature of the harm and the probable effect of alternative sanctions." *Equal Emp't Opportunity Comm'n* v. *Local 28, Sheet Metal Workers Int'l Ass'n*, 247 F.3d 333, 336 (2d Cir. 2001) (per curiam) (citation and internal quotation marks omitted).

11

### 2. Analysis

The Court finds Plaintiff and Mr. Sobel to be in contempt of the Court's Injunction. Contempt sanctions are an appropriate response to their deliberate noncompliance.

*First*, the Court's Injunction is "clear and unambiguous." *Al Hirschfeld Found.*, 438 F. Supp. 3d at 207 (citation and internal quotation marks omitted). The Injunction orders that Plaintiff "be forbidden from filing any future suits in federal or state court arising from or relating to the subject matter in the instant action without the prior authorization of this Court." *Carrington I*, 2020 WL 5503537, at *6. This clearly and unambiguously directs Plaintiff to refrain from filing suits related to this action without the Court's approval. *See Nat'l Basketball Assoc.* v. *Design Mgmt. Consultants, Inc.*, 289 F. Supp. 2d 373, 377 (S.D.N.Y. 2003) ("[An order is] clear and unambiguous where it is specific and definite enough to apprise those within its scope of the conduct that is being proscribed or required." (citation and internal quotation marks omitted)). Further, it is consistent with similar anti-filing orders imposed against vexatious litigants that have been upheld by the Second Circuit. *See, e.g.*, *Eliahu* v. *Jewish Agency for Israel*, 919 F.3d 709, 715-16 (2d Cir. 2019).

*Second*, Defendants have provided "clear and convincing" evidence of Plaintiff and Mr. Sobel's noncompliance with the Injunction. *Al Hirschfeld Found.*, 438 F. Supp. 3d at 207 (citation and internal quotation marks omitted). The CDCA Complaint, which names a number of the same

12

Defendants in this matter, Defendants' counsel, as well as this Court, clearly arises from and relates to the Injunction. Defendants have detailed much of the overlap in their submissions (*see* Def. OSC Br. 7), but in brief, Plaintiff again broadly alleges sexual abuse purportedly suffered due to the actions of Defendants and their agents (CDCA Complaint ¶¶ 16-18, 86-97, 113, 115, 116, 132-143, 253-73); a scheme to cover up this abuse through various measures, including the signing of non-disclosure agreements (*id.* at ¶¶ 129, 130, 137); and claims of retaliation, *quid pro quos*, and misappropriation (*id.* at ¶¶ 117, 130, 132, 273-86). Many of these allegations are direct excerpts from Mr. Sobel's demand letter that resulted in the issuance of the Injunction. (*Compare, e.g., id.* at ¶¶ 132-45, *with* Dkt. #174-3 at 9-12). Indeed, the CDCA Complaint itself highlights Plaintiff's and Mr. Sobel's noncompliance with the Injunction, conceding that "Judge Failla and Defendants placed an injunction against Carrington *filing the present action.*" (CDCA Complaint ¶ 221 (emphasis added)). Plaintiff and Mr. Sobel failed to seek the Court's approval prior to filing the CDCA Complaint. There is thus "clear and convincing" evidence of their noncompliance with the Injunction.

  *Lastly*, Plaintiff's and Mr. Sobel's deliberate failure to request the Court's permission prior to filing the CDCA Complaint demonstrates that they have not "diligently attempted to comply in a reasonable manner" with the Injunction. *Al Hirschfeld Found.*, 438 F. Supp. 3d at 207 (internal quotation marks and citation omitted). Accordingly, the Court may hold them in civil contempt of its Injunction.

In their responses to Defendants' motion, Plaintiff and Mr. Sobel raise a number of the same arguments already addressed both at the outset of this Order and in the context of Plaintiff's Rule 60 motion, asserting the Court's lack of jurisdiction and misstating the procedural history that resulted in the Injunction. (Pl. OSC Opp. 4-17; Sobel 2d OSC Opp. 3-17). The Court will briefly address those arguments that are specific to Plaintiff's and Mr. Sobel's briefing on Defendants' motion.

In his initial response to Defendants' motion, Mr. Sobel asserts that the Court lacks personal jurisdiction over him because: (i) he has not been, and is not now, a party to the instant litigation, and (ii) he has not received sufficient service of the contempt papers. (Sobel 1st OSC Opp. 2). However, neither argument exempts Mr. Sobel from a contempt finding.

Courts both within and outside this Circuit "routinely exercise personal jurisdiction in contempt proceedings over nonparties on the basis that nonparties may not assist, aid, or abet a violation of an order that directly binds a party ... over whom the court has personal jurisdiction." *Aviv* v. *Brainard*, No. 18 Civ. 5088 (PKC), 2018 WL 4927912, at *1 (S.D.N.Y. Oct. 11, 2018) (citing cases). Courts do so on the basis "that intentionally violating an injunction is conduct designed to have purpose and effect in the forum, and that the authority to force compliance is necessary to the proper enforcement and supervision of a court's injunctive authority and offends no precept of due process." *Id.* at *2 (citation, internal quotation marks, and alteration omitted). When faced with similar facts, the Second Circuit has found that a non-party

14

attorney submitted himself to the personal jurisdiction of a district court by aiding and abetting a violation of the court's order, as Mr. Sobel has done here. *See Eli Lily & Co.* v. *Gottstein*, 617 F.3d 186, 194-95 (2d Cir. 2010) (reasoning that "third parties who are in active concert or participation with the parties … can be enjoined" as this "gives force to injunctions and prevents parties from violating them by proxy" (citing Fed. R. Civ. P. 65(d) (internal quotation marks omitted)); *see also Hunt* v. *Enzo Biochem, Inc.*, 904 F. Supp. 2d 337, 347 (S.D.N.Y. 2012) (finding that a "nonparty who resides outside the territorial jurisdiction" of the court was nonetheless "subject to [the] court's jurisdiction because he had actual notice of the court's order, and actively aided and abetted a party in violating that order" (citation and alterations omitted)). *But cf. Gucci America, Inc.* v. *Weixing Li*, 768 F.3d 122, 137-38 (2d Cir. 2014) (declining to determine whether a district court had specific jurisdiction over a foreign nonparty bank with limited contacts in the forum). Given his representation of Plaintiff and "actual notice" of the Injunction, Mr. Sobel was no less bound to abide by the Injunction than was Plaintiff, pursuant to Rule 65(d) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 65(d)(2)(B) (stating that a court order granting an injunction binds "the parties' … attorneys" where they "receive actual notice of [the order] by personal service or otherwise").[4]

---

[4] There can be no argument that Mr. Sobel lacked notice of the Injunction, given his involvement in the conduct that led to the Injunction. (*See* Dkt. #174-3 (Mr. Sobel's August 28, 2020 "settlement demand" letter, which precipitated Defendants' request for, and the Court's ultimate entry of, the Injunction)). Mr. Sobel received Defendants' submissions requesting injunctive relief and informed Defendants that he would not

15

Furthermore, Mr. Sobel has received sufficient notice of the contempt proceedings. "A court must provide notice to an attorney facing a charge of contempt prior to convening to consider sanctions so the attorney may prepare and present a defense to the charges." *Fonar Corp.* v. *Magnetic Resonance Plus, Inc.*, 128 F.3d 99, 102 (2d Cir. 1997); *see also Int'l Union, United Mine Workers of Am.* v. *Bagwell*, 512 U.S. 821, 827 (1994) ("[C]ivil contempt sanctions … [may be] imposed in an ordinary civil proceeding upon notice and an opportunity to be heard."). Defendants' briefing and supporting papers outline their service attempts upon Mr. Sobel, demonstrating that in early November, service of Defendants' contempt papers and the Court's responsive November 4, 2020 Order (Dkt. #195), was conducted on Mr. Sobel by email, as well as upon an agent at Mr. Sobel's law office. (Def. OSC Reply 14; LaVigne Reply Decl. ¶¶ 3, 5, 6 & Ex. C). Defendants also subsequently arranged for personal service of all relevant papers on November 24, 2020, which Mr. Sobel acknowledged via email. (LaVigne Reply Decl. ¶¶ 8-9). Mr. Sobel has not only received adequate notice of the contempt proceedings, but he also took full advantage of the opportunity to present a defense. (*See* Sobel 1st OSC Opp.; Sobel 2nd OSC Opp.). As "a court is not obliged to give a formal warning that sanctions might be imposed for a violation of the court's orders," *Sterling Promotional Corp.* v. *General Acc. Ins. Co. of New York*, 86 F. App'x 441, 445 (2d

---

participate in the scheduled pre-motion conference, as he was not "represent[ing] [Plaintiff] in any currently pending or past matter". (LaVigne Decl., Ex. C). The Injunction was served on both Plaintiff and Mr. Sobel. (*Id.* at ¶ 14). And, of course, the Injunction is expressly referenced in the CDCA Complaint, drafted, signed, and filed by Mr. Sobel. (CDCA Complaint ¶ 221).

16

Cir. 2004) (summary order) (citation omitted), Mr. Sobel has received far more than that to which he is entitled.

Mr. Sobel retorts that the Court lacks jurisdiction to enforce an Order upon the United States District Court of the Central District of California. (Sobel 2nd OSC Opp. 17). It is of course correct that the Court cannot instruct a court in the Central District of California to dismiss Plaintiff's case, nor would this Court ever presume to do so. For avoidance of doubt, therefore, the Court confirms that it is instructing Mr. Sobel and Plaintiff — over whom it *does* have power — to withdraw the CDCA Complaint as to Defendants.

Lastly, both Mr. Sobel and Plaintiff argue that the Court must recuse itself. (Pl. OSC Opp. 2-3; Sobel 2nd Opp. 18). This is but a reiteration of Plaintiff's arguments belatedly challenging the Court's order of expedited discovery in this case. The circumstances that led to the Court's decision to order expedited discovery have been outlined in the Court's prior Opinions in this matter, and need not be revisited once again. *See Carrington I*, 2020 WL 5503537, at *1-3; *Carrington II*, 2020 WL 5758916, at *2-5. In sum, they were necessitated by Plaintiff's conduct alone, and they do not serve now as a basis for the Court's recusal. *See id.* Further, the fact that Plaintiff has named the Court as a defendant in his CDCA Complaint does not militate in favor of a different result. *See Penn* v. *City of New York*, No. 19 Civ. 2106 (JMF), 2019 WL 2085135, at *1 (S.D.N.Y. May 13, 2019) ("It is well settled that a party may not procure a judge's recusal merely by suing the judge"). "Such an easy method

17

for obtaining [a judge's] disqualification should not be encouraged or allowed." *United States* v. *Nagy*, 19 F. Supp. 2d 139, 140 (S.D.N.Y. 1998).

## CONCLUSION

For the reasons set forth in this Order, Plaintiff's Rule 60 motion is DENIED, and Defendants' motion for an order to show cause is GRANTED. Pursuant to the Injunction, Plaintiff and Mr. Sobel are ORDERED to withdraw the CDCA Complaint as to Defendants on or before **January 13, 2021**.[5] Should they fail to do so, Plaintiff and Mr. Sobel are ORDERED TO SHOW CAUSE, by videoconference, on **January 15, 2021, at 1:00 p.m.**, why they should not be held in civil contempt for violation of the Injunction and why sanctions should not be imposed against them. Instructions for accessing the videoconference will be provided at a later date.

The Clerk of Court is directed to terminate the motions at docket entries 197 and 204. The Clerk of Court is also directed to mail a copy of this Order to Plaintiff at his address of record. Counsel for Defendants is directed to serve a copy of this Order on Plaintiff's counsel.

SO ORDERED.

Dated: December 23, 2020
New York, New York

*[signature: Katherine Polk Failla]*

KATHERINE POLK FAILLA
United States District Judge

---

[5] On December 17, 2020, Mr. Sobel represented to the Court that he anticipates that he will be unavailable through January 11, 2021, due to a surgery scheduled for December 18, 2020. (Dkt. #205). As such, the Court has provided Plaintiff and Mr. Sobel with more than sufficient time to allow them to coordinate the withdrawal of the CDCA Complaint.

18